RANDALL W. EDWARDS (S.B. #179053) redwards@omm.com
BRYNLY LLYR (S.B. #235926) bllyr@omm.com
JEAN B. NIEHAUS (S.B. #254891) jniehaus@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center, 28th Floor
San Francisco, CA  94111-3823
Telephone:     (415) 984-8700
Facsimile:     (415) 984-8701

Attorneys for Defendant
Google Inc.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| PALOMA GAOS, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE INC., a Delaware Corporation,<br><br>Defendant. | Case No.  5:10-cv-04809-JW<br><br>CLASS ACTION<br><br>**GOOGLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**<br><br>Hearing Date:   April 11, 2011<br>Time:               9:00 a.m.<br>Place:              Courtroom 8, 4th Floor<br>Judge:             Hon. James Ware |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 2

I.    PLAINTIFF DOES NOT ALLEGE SUFFICIENT FACTS TO CONFER
ARTICLE III STANDING FOR ANY OF HER CLAIMS ................................... 2

    A.    Allegations of Statutory Violations Still Require Injury-in-Fact to
Satisfy Article III Standing Requirements .................................................. 2

    B.    Plaintiff's Theory of Hypothetical Harm Does Not Constitute
Sufficient Injury Under Article III .............................................................. 4

II.    PLAINTIFF FAILS TO ADDRESS THE CLEAR STATUTORY
LANGUAGE PREEMPTING HER STATE ACTIONS ....................................... 7

III.    PLAINTIFF FAILS TO ALLEGE ANY PUBLIC DISCLOSURE OF
ANY PRIVATE FACT ......................................................................................... 9

IV.    PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD ................................ 11

V.    PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT ...... 14

CONCLUSION ........................................................................................................................ 14

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

# TABLE OF AUTHORITIES

Page

## CASES

*Baur v. Veneman*,
   352 F.3d 625 (2d Cir. 2003) ........................................................................... 5

*Beneficial Nat'l Bank v. Anderson*,
   539 U.S. 1  (2003) ........................................................................................... 9

*Bunnell v. Motion Picture Ass'n of Am.*,
   567 F. Supp. 2d 1148 (C.D. Cal. 2007) ......................................................... 8

*California v. Levi Strauss & Co.*,
   41 Cal. 3d 460 (1986) ................................................................................... 14

*Carter v. Welles-Bowen Realty*,
   553 F.3d 979 (6th Cir. 2009) .......................................................................... 3

*City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983) .......................................................................................... 5

*City of Ontario, Cal. v. Quon*,
   130 S. Ct. 2619 (2010) .................................................................................... 8

*Clegg v. Cult Awareness Network*,
   18 F.3d 752 (9th Cir. 1994) .......................................................................... 13

*Cnty. of San Bernardino v. Walsh*,
   158 Cal. App. 4th 553 (2008) ....................................................................... 14

*Daly v. Viacom, Inc.*,
   238 F. Supp. 2d 1118 (N.D. Cal. 2002) ....................................................... 10

*Doe 1 v. AOL, LLC*,
   719 F. Supp. 2d 1102 (N.D. Cal. 2010) ......................................................... 7

*Doe v. Dep't of Veterans Affairs of United States*,
   474 F. Supp. 2d 1100 (D. Minn. 2007) .......................................................... 5

*Edwards v. First Am. Corp.*,
   610 F.3d 514 (9th Cir. 2010) .......................................................................... 3

*Fernandez v. Brock*,
   840 F.2d 622 (9th Cir. 1988) .......................................................................... 4

*FMC Corp. v. Holliday*,
   498 U.S. 52 (1990) .......................................................................................... 8

*Friends of Earth v. Gaston Copper Recycling Corp.*,
   204 F.3d 149 (4th Cir. 2000) .......................................................................... 5

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*,
  528 F.3d 614 (9th Cir. 2008)..........................................................................................3

4

*Gerlinger v. Amazon.com, Inc.*,
  311 F. Supp. 2d 838 (N.D. Cal. 2004) .........................................................................14

5

6

*Gladstone Realtors v. Vill. of Bellwood*,
  441 U.S. 91 (1979)..........................................................................................................3

7

*Hale v. Sharp Healthcare*,
  183 Cal. App. 4th 1373 (2010) .....................................................................................12

8

9

*Hartman v. Summers*,
  120 F.3d 157 (9th Cir. 1997).........................................................................................4

10

*Hepting v. AT&T Corp.*,
  439 F. Supp. 2d 974 (N.D. Cal. 2006) ......................................................................6, 7

11

12

*Hirsch v. Bank of Am.*,
  107 Cal. App. 4th 708 (2003) .......................................................................................14

13

*Hoang v. Reunion.com, Inc.*,
  No. C-08-3518 MMC, 2010 WL 1340535, at *2 (N.D. Cal. Mar. 31, 2010)..............4

14

*In re Am. Airlines, Inc. Privacy*,
  370 F. Supp. 2d 552 (N.D. Tex. 2005)..........................................................................13

15

16

*In re Apple iPhone 3G Prods. Liab. Litig.*,
  728 F. Supp. 2d 1065 (N.D. Cal. 2010) .........................................................................9

17

18

*In re Jetblue Airways Corp. Privacy Litig.*,
  379 F. Supp. 2d 299 (E.D.N.Y. 2005) ..........................................................................13

19

*In re Nat'l Sec. Agency Telecomms. Records Order Litig.*,
  483 F. Supp. 2d 934 (N.D. Cal. 2007) ............................................................................9

20

*In re National Security Agency Telecommunications Records Order Litigation*,
  633 F. Supp. 2d 892 (N.D. Cal. 2007) ............................................................................8

21

22

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ..................................................................................................12

23

*Jenson v. Fiserv Trust Co.*,
  No. 07-55613, 2007 WL 4163889, at **1 (9th Cir. Nov. 26, 2007)............................12

24

25

*Jogani v. Superior Court*,
  165 Cal. App. 4th 901 (2008) .......................................................................................14

26

*Jonah R. v. Carmona*,
  446 F.3d 1000 (9th Cir. 2006).........................................................................................8

27

28

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

**TABLE OF AUTHORITIES**
(continued)

Page

*Kearney v. Salomon Smith Barney, Inc.*,
   39 Cal. 4th 95 (2006) ........................................................................................................... 9

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010)............................................................................................ 5, 6

*Lee v. Chase Manhattan Bank*,
   No. C07-04732 MJJ, 2008 WL 698482, at *5 (N.D. Cal. Mar. 14, 2008) .............................. 4

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................................................... 3

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................................. 11

*Mazur v. eBay, Inc.*,
   No. C 07-03967-MHP, 2008 WL 618988, at *13 (N.D. Cal. Mar. 4, 2008) ........................ 11

*McKell v. Wash. Mut., Inc.*,
   142 Cal. App. 4th 1457 (2006) ........................................................................................... 14

*Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003) ............................................................................................. 14

*Meyer v. Christie*,
   No. 07-2230, 2007 WL 3120695, at *4 (D. Kan. Oct. 24, 2007) .......................................... 13

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) ....................................................................................................... 12

*Moreno v. Hanford Sentinel, Inc.*,
   172 Cal. App. 4th 1125 (2009) ........................................................................................... 10

*Navarra v. Bache Halsey Stuart Shields Inc.*,
   510 F. Supp. 831 (E.D. Mich. 1981)..................................................................................... 9

*Papasan v. Allain*,
   478 U.S. 265 (1986)............................................................................................................. 13

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) ........................................................................................... 14

*Pisciotta v. Old Nat'l Bancorp*,
   499 F.3d 629 (7th Cir. 2007)............................................................................................. 5, 6

*Quon v. Arch Wireless Operating Co.*,
   445 F. Supp. 2d 1116 (C.D. Cal. 2006), *rev'd on other grounds by Quon v.*
   *Arch Wireless Operating Co.*, 529 F.3d 892 (9th Cir. 2008)................................................. 8

*Raines v. Byrd*,
   521 U.S. 811 (1997)............................................................................................................. 3

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
    279 F.3d 817 (9th Cir. 2002)................................................................. 4

4

*Schwartz v. Thiele*,
    242 Cal. App. 2d 799 (1966).............................................................. 10

5

6

*Shulman v. Grp. W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ........................................................................ 9

7

*Sisley v. Sprint Commc'ns. Co., L.P.*,
    2008 WL 2607921 (9th Cir. July 2, 2008) .......................................... 4

8

9

*Smith v. Trusted Universal Standards in Electronic Transactions, Inc.*,
    No. 09-4567, 2010 WL 1799456, at *8 (D.N.J. May 4, 2010) ........... 13

10

*Summers v. Earth Island Inst.*,
    129 S. Ct. 1142 (2009) ......................................................................... 3

11

12

*United States v. Kennedy*,
    81 F. Supp. 2d 1103 (D. Kan. 2000) .................................................... 8

13

*United States v. Sherr*,
    400 F. Supp. 2d 843 (D. Md. 2005) ...................................................... 8

14

15

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998)............................................................... 8

16

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003)........................................................ 11, 12

17

18

*Villager Franchise Sys., Inc. v. Dhami, Dhami & Virk*,
    No. CVF046393RECSMS, 2006 WL 224425 (E.D. Cal. Jan. 26, 2006) .............................. 14

19

*Ward v. Taggart*,
    51 Cal. 2d 736 (1959) ........................................................................ 14

20

21

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................ 3, 4

22

*Whitaker v. Garcetti*,
    291 F. Supp. 2d 1132 (C.D. Cal. 2003) *rev'd in part by Whitaker v. Garcetti*,
    486 F.3d 572 (9th Cir. 2007)................................................................ 9

23

24

**STATUTES**

25

18 U.S.C. § 1030........................................................................................ 9

26

18 U.S.C. § 2518(10)(c).............................................................................. 8

27

18 U.S.C. § 2708.................................................................................. 7, 8, 9

28

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

**TABLE OF AUTHORITIES**
(continued)

Page

47 U.S.C. § 222 ................................................................................................................... 9

Civ. Code § 1572 ....................................................................................................... 11, 12

Civ. Code § 1573 ............................................................................................................. 11

**RULES**

Fed. R. Civ. P. 9(b) .................................................................................................... 11, 12

**LEGISLATIVE HISTORY**

Senate Report No. 99-541 (1986) ..................................................................................... 8

1

### INTRODUCTION

Plaintiff's Opposition fails to address many of Google's arguments and authorities supporting dismissal of each of her claims.  Plaintiff does not dispute that she failed to allege facts establishing actual injury; instead, she argues that the law does not require it and also that she may suffer injury in the future if a series of speculative acts by third parties occurs.  But Supreme Court case law holds that Article III standing requires an actual injury or a concrete, imminent threat of injury.  Plaintiff does not meet this standard.  Her claim stands on nothing more than a speculative possibility that a third party could aggregate her discrete searches and conclude that it was Plaintiff who had searched her own name.  As Plaintiff has now clarified in her Opposition, it is merely this act of searching her own name that is the ostensibly private fact at issue in this case.  This claim, and her generalized allegations about what might happen to unnamed "users," does not establish that she has standing under Article III.

Plaintiff also fails to address the plain statutory language of the Stored Communications Act ("SCA") that preempts Plaintiff's state claims—and she entirely ignores Google's law on that topic too.  In addition, she simply ignores the directly relevant authorities that preclude each of her California privacy, fraud, and unjust enrichment claims on the merits, even assuming her factual allegations were true.[1]

Plaintiff's Opposition seeks to divert attention from these numerous failings by arguing that Google has changed positions since opposing a government subpoena five years ago in the *Gonzales* case before this Court.  That contention is both incorrect and irrelevant to the legal arguments Google's Motion presents.  In this case, Plaintiff has alleged the discrete disclosure of Referrer Header information to a website when a user searches and clicks on a search result to view that website.  This alleged conduct is very different from the request to produce the extensive and aggregated search data that was at issue in *Gonzales*, and from Google's concern

---

[1] Plaintiff has withdrawn her claims under the Consumers Legal Remedies Act, the False Advertising Law, and the Unfair Competition Law, and the Court need not rule on the merits with respect to those claims.  Nonetheless, the Order on this motion should reflect that these claims are no longer part of the case.  Google accordingly submits a revised Proposed Order reflecting Plaintiff's withdrawal.

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

1    with placing billions of user searches in the hands of the government.  Nothing in *Gonzales*

2    comes close to an admission by Google that users' privacy interests are infringed by the routine

3    transmission of Referrer Header information to a particular website that the user selects.  This

4    basic aspect of web browsers was never at issue in the *Gonzales* motion.  Plaintiff's discussion of

5    *Gonzales* is a very bright red herring.

6           Without an answer to Google's arguments, Plaintiff's claims cannot survive, and the

7    action should be dismissed in its entirety with prejudice.

8                                    **ARGUMENT**

9    **I.   PLAINTIFF DOES NOT ALLEGE SUFFICIENT FACTS TO CONFER ARTICLE**

10   **III STANDING FOR ANY OF HER CLAIMS.**

11          Plaintiff's Opposition fails to provide any legal or factual grounds to satisfy the

12   constitutional requirement of injury-in-fact traceable to Google's conduct.  Plaintiff first wrongly

13   argues that because she alleged that Google violated a statute, she need not establish that she

14   suffered injury-in-fact.  (Opp. 6:3-5.)  Abundant case law holds that a plaintiff must satisfy

15   Article III's requirements, including injury-in-fact, to state a claim.  Plaintiff then tries to show

16   injury-in-fact by pointing to speculative allegations of potential harm in the future.  (Opp. 9:14-

17   10:1-2.)  That effort fails because her allegations do not identify a credible and imminent threat of

18   future injury.  Plaintiff continues to rely on the assumed conduct of unidentified class members

19   who purportedly searched personal "harmful facts" (*see* Opp. 11:2, 11:8), rather than allegations

20   of injury to herself.  She also relies on the potential conduct of unidentified third parties who

21   allegedly will aggregate Google's searches, identify Google users, and exploit their identities.

22   (*See* Opp. 10:20-21.)  Altogether, Plaintiff's failure to allege a credible and imminent threat of

23   harm to herself demonstrates that she lacks standing.

24        **A.   Allegations of Statutory Violations Still Require Injury-in-Fact to Satisfy**

25   **Article III Standing Requirements.**

26          Contrary to Plaintiff's contention, she must establish injury-in-fact to satisfy Article III's

27   standing requirement, regardless of whether she alleges that Google violated the SCA.  The

28   United States Supreme Court consistently has held that "the requirement of injury in fact is a hard

- 2 -

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1151 (2009); *see also Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) ("In no event, however, may Congress abrogate the Art. III minima:  A plaintiff must always have suffered 'a distinct and palpable injury to himself, that is likely to be redressed if the requested relief is granted." (citation omitted)).

Even Plaintiff's principal authority, *Warth v. Seldin*, 422 U.S. 490 (1975), supports Google's position.  Contrary to Plaintiff's depiction, *Warth* held that even when alleging a violation of a statute conferring a private right of action, a plaintiff still must satisfy Article III:  "Of course, Art. III's requirement remains:  the plaintiff still must allege a distinct and palpable injury to himself."  422 U.S. at 501.  Although the *Warth* plaintiffs alleged that zoning ordinances violated constitutional and civil rights laws, the Court affirmed the dismissal of the case because the plaintiffs could not satisfy the Article III standing requirement of a demonstrable, particularized injury to them.  *Id.* at 506-07 (finding that plaintiffs' allegations of harm "rely on little more than the remote possibility, unsubstantiated by allegations of fact").  Plaintiff quotes *Warth* for the proposition that injury may exist solely by virtue of a violation of a statutorily-conferred right.  (Opp. 6:10-12.)  But the Supreme Court has limited that language in *Warth* as only recognizing that Congress may "broaden[] the categories of injury that may be alleged in support of standing," which "is a different matter from abandoning the requirement that the party seeking review must himself have suffered any injury."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992).  The other authorities cited by Plaintiff all found injury in this context, where the relevant statutory schemes created statutory rights, the invasion of which resulted in concrete injury to the plaintiffs.  *See Edwards v. First Am. Corp.*, 610 F.3d 514, 517 (9th Cir. 2010) (plaintiff sought return of fee deemed unlawful by the Real Estate Settlement Procedures Act of 1974); *Carter v. Welles-Bowen Realty*, 553 F.3d 979, 989 (6th Cir. 2009) (same); *Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 619 (9th Cir. 2008) (plaintiff sought

1    restitution for an unlawful tariff under the Motor Carrier Act that subjected plaintiff to certain

2    pricing arrangements).[2]

3         In this case, Plaintiff's allegations that Google violated the SCA do not, standing alone,

4    confer Article III standing; Plaintiff must allege a concrete injury-in-fact to herself.  *Warth*, 422

5    U.S. at 500 ("[S]tanding in no way depends on the merits of the plaintiff's contention that

6    particular conduct is illegal."); *Fernandez v. Brock*, 840 F.2d 622, 630 (9th Cir. 1988) (stating

7    that "a plaintiff who merely claims that a defendant violated a statutory duty does not necessarily

8    satisfy the requirement of injury in fact in article III"); *Lee v. Chase Manhattan Bank*, No. C07-

9    04732 MJJ, 2008 WL 698482, at *5 (N.D. Cal. Mar. 14, 2008) ("[T]he mere allegation of a

10   violation of a [] statutory right, without more, does not confer Article III standing.").  Unlike the

11   inherent harm in the statutory violations in the cases she cites, Plaintiff fails to identify any

12   deprivation of rights or harm to her inherent in the alleged SCA violation.  As discussed below,

13   Plaintiff has failed to allege sufficient facts that Google's purported violation of the SCA (or any

14   other claim) caused cognizable injury.

15       **B.    Plaintiff's Theory of Hypothetical Harm Does Not Constitute Sufficient
                 Injury Under Article III.**
16

17        Plaintiff does not argue that she already has suffered injury.  Instead, she argues that she

18   can satisfy Article III standing by alleging the possibility of future harm.  (Opp. 8:23-25; 9:7-9;

19   9:14-10:3.)  But Plaintiff's allegations of the possibility of future injury are insufficient to confer

20   standing because she has not alleged facts that show that possibility is either imminent or

21   credible.  *See Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir.

22   2002); *Hartman v. Summers*, 120 F.3d 157, 160 (9th Cir. 1997) (threatened harm must be

23   credible, not remote or hypothetical).

24        Plaintiff cites several cases for the basic proposition that threatened injury can satisfy

25   Article III requirements, but these cases all present different facts that involve a credible,

26   _____

27   [2] Neither *Sisley v. Sprint Commc'ns. Co., L.P.*, 2008 WL 2607921 (9th Cir. July 2, 2008), nor
     *Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535, at *2 (N.D. Cal. Mar. 31,
     2010), both unpublished cases addressing state statutory rights, purport to—or could—change the
28   binding authority that Article III demands injury-in-fact.

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

1   imminent harm unlike the speculative harm here.  *See Friends of Earth v. Gaston Copper*

2   *Recycling Corp.*, 204 F.3d 149, 158 (4th Cir. 2000) (holding that owner of waterway four miles

3   downstream from toxic chemical discharge showed sufficient injury-in-fact where those

4   chemicals had already been found in his lake); *Baur v. Veneman*, 352 F.3d 625, 638-40 (2d Cir.

5   2003) (holding that plaintiff's claim that USDA's regulatory policy permitted exposure to

6   potentially dangerous food product posed credible threat of injury because plaintiff's allegations

7   were supported by government studies and statements, and the threat was attributable to current

8   USDA practices).[3]  Unlike the alleged injury in these cases, Plaintiff's theory of future injury

9   relies on the independent actions of third parties not before the Court (Compl. ¶¶ 59, 61), which

10  as a matter of law renders her claims too speculative for standing purposes.  *See Baur*, 352 F.3d at

11  640; *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 106 (1983) (finding future threat of harm

12  not credible where it required court to assume future actions by third parties); Mot. 7:3-16

13  (summarizing the five events that must occur between today and Plaintiff's potential future

14  injury).

15      Likewise, the "lost data" cases Plaintiff cites present very different facts that underscore

16  the deficiencies of Plaintiff's speculative allegation of potential future injury.  In *Pisciotta v. Old*

17  *Nat'l Bancorp*, plaintiffs alleged that a sophisticated and malicious third-party hacker sought and

18  obtained plaintiffs' personal data.  499 F.3d 629, 632 (7th Cir. 2007).  But unlike Plaintiff's

19  generic allegations that the disclosure involved "private information" (*see, e.g.*, Compl. ¶ 95), the

20  plaintiffs in *Pisciotta* alleged that the hacker obtained their names, social security numbers,

21  drivers' license numbers, dates of birth, mothers' maiden names, and credit card and financial

22  account numbers.  *Id*. at 631.  Similarly, *Krottner v. Starbucks Corp*., 628 F.3d 1139 (9th Cir.

23  2010), involved the theft of a laptop computer that contained the unencrypted names, addresses

24  and social security numbers of nearly 100,000 Starbucks employees.  *Id*. at 1140.  The Ninth

25  Circuit in *Krottner* cautioned that less particular allegations—such as those here—would not have

26  _____

27  [3] Plaintiff also cites *Doe v. Dep't of Veterans Affairs of United States* for this proposition, but that
    case addresses neither Article III standing nor its injury-in-fact requirement.  474 F. Supp. 2d
    1100, 1105 (D. Minn. 2007) (granting defendant's motion for summary judgment against

28  plaintiff's Privacy Act claim).

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

1   been enough:  "Were Plaintiff-Appellants' allegations more conjectural or hypothetical—for

2   example, if no laptop had been stolen, and Plaintiffs had sued based on the risk that it would be

3   stolen at some point in the future—we would find the threat far less credible."  *Id.* at 1143.  That

4   is exactly the circumstance in this case.  Plaintiff's bald conclusion that she is in "immediate"

5   danger of "privacy harm," (Opp. 9:8), is not supported by her factual allegations.  Even assuming

6   the validity of Plaintiff's "Science of Reidentification," the anonymized search queries have not

7   yet been amalgamated; the "data fingerprints" in that body of data have not yet been identified;

8   individual identities have not yet been discerned; and, of course, no individual identities have

9   been exploited.  (*See* Compl. ¶¶ 58-61.)  This threat is far less imminent and credible than the

10  alleged injury threatened in *Pisciotta* and *Krottner*.

11          Plaintiff cannot mask her deficient allegations by referring to her introductory allegation

12  that Google purportedly disclosed search queries "to marketers, data brokers, and numerous other

13  third parties."  (Opp. 4:5-6, 7:6-8.)  Regardless of how Plaintiff labels or construes the recipients

14  of the alleged disclosure (*see* Compl. ¶ 2), there is only ***one*** alleged mechanism of disclosure:

15  one-off disclosures of the Referrer Header.  (*See* Compl. ¶ 38.)  The Complaint is devoid of any

16  allegation that the purported disclosure occurs in any other manner.  (*See*, *e.g.*, Opp. 11:8-10.)

17  And whether a particular website owner is characterized as a "website owner" or "marketer" is

18  irrelevant because Google's Privacy Policy clearly states that "[w]e do not exercise control over

19  the sites displayed as search results."  (Decl. of J. Niehaus ISO Mot. to Dismiss, Docket 20, Ex. 1

20  at 2-3.)

21          This one-off alleged disclosure is also far different from the cases relied on by Plaintiff

22  involving already existing collections of data that easily could be mined and exploited.  In

23  *Hepting v. AT&T Corp.*, plaintiffs made highly specific allegations that AT&T intercepted and

24  disclosed their telephone communications to the government, permitted the government access to

25  a database of millions of communications, and the government used this information to detect and

26  investigate terrorist activity.  439 F. Supp. 2d 974, 987-88, 1000 (N.D. Cal. 2006).  Unlike the

27  one-off disclosures in this case, which require theories of reidentification to explain the

28  threatened harm, the information in *Hepting* was made available to the government in a manner

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

1    ready for exploitation.  *Id.*  And Plaintiff's attempt to align her factual allegations with *Doe 1 v.*

2    *AOL, LLC*, similarly fails.  719 F. Supp. 2d 1102 (N.D. Cal. 2010).  *Doe 1* involved the disclosure

3    of approximately twenty million search records in a downloadable package, which contained

4    information that allowed correlation between the identifiable AOL user and his or her Internet

5    searches.  *Id.* at 1105.  (*See also* Mot. 7:18-8:5.)  The AOL database of searches assigned each

6    AOL member a unique identification number, which was linked to any search made by that

7    member.  Compl. ¶ 20, *Doe 1 v. AOL, LLC*, 06-CV-05866, Docket 1 (Sept. 22, 2006).  This

8    permitted any user of the database to isolate a single AOL member and aggregate that member's

9    searches.  *Id.*  The threat posed by AOL's use of unique numbers to identify users is much more

10   concrete and credible than the speculative harm Plaintiff alleges.  Additionally, plaintiffs in both

11   *Doe 1* and *Hepting* were paying customers of AOL's and AT&T's services, respectively, which

12   implicates additional monetary losses that could satisfy Article III standing requirements..  *Doe 1*,

13   719 F. Supp. 2d at 1105 (noting that data collection and disclosure was "not something that

14   [plaintiffs] bargained for when they signed up and paid fees for AOL's services"); *see Hepting*,

15   439 F. Supp. 2d at 1000.

       Nor does the fact that Plaintiff seeks injunctive relief in any way establish standing.  The

17   conduct at issue with regard to injunctive relief is the same conduct at issue with regard to all

18   other relief sought.  (*See* Compl. ¶¶ 95-97.)  If Plaintiff lacks Article III standing for Google's

19   past conduct, then Plaintiff also lacks Article III standing to seek injunctive relief against Google.

20   **II.    PLAINTIFF FAILS TO ADDRESS THE CLEAR STATUTORY LANGUAGE**
        **PREEMPTING HER STATE ACTIONS.**

22       Plaintiff's Opposition fails to address the clear statutory language or the case law cited by

23   Google that establishes that the SCA expressly preempts her state law claims.  Section 2708 states

24   that "[t]he remedies and sanctions described in this chapter are ***the only judicial remedies*** and

25   sanctions for nonconstitutional violations of this chapter."  18 U.S.C. § 2708 (emphasis added).

26   Courts have held that within the preemptive scope of § 2708 are "state law claims for conduct . . .

27   touched upon by the statute."  *Quon v. Arch Wireless Operating Co.*, 445 F. Supp. 2d 1116, 1138

28

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

(C.D. Cal. 2006)[4]; *cf. Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007) (holding that parallel provision in federal Wiretap Act, 18 U.S.C. § 2518(10)(c), expressly preempted claim under California Privacy Act). Plaintiff also does not dispute Google's showing that each of Plaintiff's state law claims are premised on the same conduct prohibited by the SCA, and thus preempted by the language of the statute. (Mot. 10-11.)

The plain statutory language, and the cases applying it, should end the inquiry. It is well settled that the court must "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *FMC Corp. v. Holliday*, 498 U.S. 52, 57 (1990). But instead of addressing the statutory language, Plaintiff tries to avoid its impact by pointing to legislative history. Legislative history is not relevant in the face of the plain language of § 2708. *See Jonah R. v. Carmona*, 446 F.3d 1000, 1005 (9th Cir. 2006). In any event, the only legislative history relevant to the preemption inquiry relates to the parallel preemption provision in the Wiretap Act, 18 U.S.C. § 2518(10)(c), and states simply that the exclusionary rule does not apply to non-constitutional violations of the statute. S. Rep. No. 99-541, at 23 (1986). This means that in a criminal case, evidence need not be suppressed if collected in violation of the SCA, assuming the collection did not independently violate the Fourth or Fourteenth amendments.

But Plaintiff identifies no case stating that the ***sole*** purpose of § 2708 was to foreclose suppression, and none of the cases she cites on this point discusses the statute's preemptive effect. *See United States v. Smith*, 155 F.3d 1051, 1056 (9th Cir. 1998); *United States v. Sherr*, 400 F. Supp. 2d 843, 848 (D. Md. 2005); *United States v. Kennedy*, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000). *Quon* and *Bunnell*, which postdate all of these cases, and which Plaintiff does not address, establish that § 2708 is not so limited.

Nor does *In re National Security Agency Telecommunications Records Order Litigation* defeat preemption. *National Security* held that § 2708 did not expressly preempt state laws that

---

[4] *Quon* was reversed on other grounds by *Quon v. Arch Wireless Operating Co.*, 529 F.3d 892 (9th Cir. 2008), which was itself reversed and remanded by *City of Ontario, Cal. v. Quon*, 130 S. Ct. 2619 (2010).

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

1    authorized state officials to investigate telecommunications carriers' alleged disclosure of

2    customer telephone records to the National Security Agency.  633 F. Supp. 2d 892, 905 (N.D.

3    Cal. 2007).  It did not consider whether § 2708 did, or did not, apply to private civil claims under

4    state law.

5            The remaining cases on which Plaintiff relies fail to address the express preemption

6    argument Google raises because they focus on different types of preemption.[5]  Complete

7    preemption is a different and higher standard that arises in the jurisdictional context, and field and

8    conflict preemption have different standards and are irrelevant when, as here, there is an express

9    preemption clause.  *See generally In re Apple iPhone 3G Prods. Liab. Litig.*, 728 F. Supp. 2d

10   1065, 1070, 1075-76 (N.D. Cal. 2010) (discussing differences between express, complete, field,

11   and conflict preemption analyses).

12           Finally, Plaintiff's argument about whether the SCA could preclude actions under other

13   federal laws is irrelevant.  Plaintiff does not allege a violation of either the Communications Act

14   of 1934, 47 U.S.C. § 222, or the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.  Regardless,

15   the appropriate question is whether the plain language of the statute preempts the state laws at

16   issue here.  The statutory language is clear, and Google has presented case law holding that

17   § 2708 preempts Plaintiff's state law claims.

18   **III.    PLAINTIFF FAILS TO ALLEGE ANY PUBLIC DISCLOSURE OF ANY
             PRIVATE FACT.**

19

20           Plaintiff's Opposition unsuccessfully attempts to recast her allegations to create the

21   missing support for the three required elements of a public disclosure of private facts claim:  (1) a

22   public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the

23   reasonable person.  *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 214 (1998).  But she fails to

24

_____

25   [5] *See, e.g., In re Nat'l Sec. Agency Telecomms. Records Order Litig.*, 483 F. Supp. 2d 934, 939
     (N.D. Cal. 2007) (complete preemption); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 n.5
26   (2003) (complete preemption); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 105-06
     (2006) (field preemption); *Whitaker v. Garcetti*, 291 F. Supp. 2d 1132, 1142 (C.D. Cal. 2003),
27   *aff'd in part, vacated in part, rev'd in part by Whitaker v. Garcetti*, 486 F.3d 572 (9th Cir. 2007)
     (field and conflict preemption); *Navarra v. Bache Halsey Stuart Shields Inc.*, 510 F. Supp. 831,
28   833 (E.D. Mich. 1981) (field and conflict preemption).

1   overcome Google's arguments regarding these three elements, and therefore her public disclosure

2   of private facts claim must be dismissed.

3       First, Plaintiff does not dispute Google's argument that names are not private facts.

4   Plaintiff herself cites to a case that holds this.  *See Moreno v. Hanford Sentinel, Inc.*, 172 Cal.

5   App. 4th 1125, 1130 (2009) ("[plaintiff's] last name was not a private fact").  She attempts to

6   bootstrap that admittedly non-private fact into an ostensibly private one by stating that "what is

7   being revealed is not just her name, but rather the fact that she searched for it." (Opp. 18.)

8   However, the Complaint never alleges that Google passes on its users' identities along with their

9   searches, which is what Plaintiff now wrongly suggests.  Even if Plaintiff argues that the "Science

10  of Reidentification" supports such a claim, she herself notes that de-anonymization techniques

11  require the use of publicly available "outside information," including social networking websites.

12  (Compl. ¶¶ 61-63.)  And identification that is obtained from a public source is not private.  *See*

13  *Moreno*, 172 Cal. App. 4th at 1130 (finding plaintiff's identity public, because it was likely

14  ascertained from her MySpace page and "[t]here is no allegation that [defendant] obtained

15  [plaintiff's] information from a private source").

16      Second, even assuming that a search for one's own name was a "private fact," Plaintiff

17  cannot establish that Google's alleged disclosure of her search terms is the type of disclosure that

18  would be offensive and objectionable to a reasonable person.  Plaintiff does not allege that she

19  searched for anything other than her name and her family members' names.  (*See* Compl. ¶ 6.)

20  The fact that other users' search queries *may* contain medical or sexual information is therefore

21  irrelevant to Plaintiff's claim.  Furthermore, Plaintiff fails to establish that *any* of the categories of

22  information she allegedly searched are "beyond the limits of decency" such that Google "should

23  have realized it would be offensive to persons of ordinary sensibilities."  *See Daly v. Viacom,*

24  *Inc.*, 238 F. Supp. 2d 1118, 1125 (N.D. Cal. 2002) (holding that plaintiff who failed to make such

25  a showing failed, as a matter of law, to meet "offensive and objectionable" prong).

26      Finally, Plaintiff does not dispute that disclosure to "one individual or a few" does not

27  satisfy the "public disclosure" prong.  *Schwartz v. Thiele*, 242 Cal. App. 2d 799, 805 (1966).

28  Instead, she now argues that the prong is satisfied because "Google disclosed her search queries

- 10 -

1   to countless third parties," an argument that obscures the fact that Plaintiff herself pled that each

2   individual query—as opposed to the "queries" to which Plaintiff refers—is disclosed to a single

3   website owner.  (Compl. ¶ 38.)  Plaintiff's allegation in Paragraph 2 of the Complaint does not

4   allege widespread disclosure of any single query, let alone any query of hers, instead alleging that

5   "user search queries" are "routinely transferred."  (*See* Compl. ¶ 2.)  The allegation that web

6   analytics services can access Referrer Header information does not establish that Google

7   disclosed search queries to them.  (Compl. ¶ 39.)  Thus, Plaintiff's arguments, not Google's, are

8   wrong, and the claim should be dismissed.

9   **IV.      PLAINTIFF FAILS TO STATE A CLAIM FOR FRAUD.**

10      Plaintiff did not oppose Google's arguments demonstrating the fatal deficiencies of

11  Plaintiff's claim for constructive fraud under Civil Code § 1573.  (Mot. at 18:16-22, 19:15-20:7.)

12  That claim should be dismissed.  And Plaintiff's attempt to defend her actual fraud claim under

13  Civil Code § 1572 fails both because her allegations do not satisfy Rule 9(b) and because her

14  Opposition does not establish the existence of the required contract that is a predicate for a fraud

15  claim under § 1572.

16      Plaintiff concedes that she must allege "the who, what, when, where and how" of the

17  alleged fraudulent conduct with Rule 9(b) particularity, as held in *Vess v. Ciba-Geigy Corp. USA*,

18  317 F.3d 1097, 1102-03 (9th Cir. 2003).  (Opp. 15:2-6.)  But her assertion that she did so is not

19  supported by a review of the Complaint.  Although Plaintiff identifies a list of Google's alleged

20  misrepresentations (Opp. 15:9-18), her Opposition does not address Google's showing that she

21  failed to plead with particularity that she relied on (or even read) Google's alleged

22  misrepresentations or that she incurred any harm or damage as a result.  (*See* Mot. 18:16-22.)  She

23  also cannot dispute the authorities establishing that this is fatal to her claim.  *See, e.g.*, *Marolda v.*

24  *Symantec Corp.*, 672 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2009) (dismissing fraud claim where

25  plaintiff failed to allege reliance on alleged misrepresentations); *Mazur v. eBay, Inc.*, No. C 07-

26  03967-MHP, 2008 WL 618988, at *13 (N.D. Cal. Mar. 4, 2008) (dismissing fraud claim where

27  plaintiff failed to allege reliance because "the same level of specificity is required with respect to

28  [pleading] reliance" as with respect to misrepresentations).  At best, Plaintiff alleged that she used

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

1   Google Search, at some point in time, to search her name.  (*See* Compl. ¶ 6.)  This fact, which is

2   the *only* fact particularized to Plaintiff, is neither connected nor linked to any allegation regarding

3   *any* representation made by Google.  The Ninth Circuit has held that "[a] plaintiff [asserting

4   fraud] must set forth *more* than the neutral facts necessary to identify the transaction" to survive

5   under Rule 9(b).  *Vess*, 317 F.3d at 1106 (citation omitted).

6         Plaintiff cannot salvage her actual fraud claim by arguing that the Court should simply

7   infer reliance.  (*See* Opp. 16:4-11.)  The cases cited by Plaintiff in support of this contention hold

8   the exact opposite.  The California Supreme Court in *In re Tobacco II Cases*, 46 Cal. 4th 298

9   (2009), which involved claims under the Unfair Competition Law ("UCL") that Plaintiff has

10  abandoned, explicitly held "a class representative proceeding on a claim of misrepresentation as

11  the basis of his or her . . . action must demonstrate **actual reliance** on the allegedly deceptive or

12  misleading statements, in accordance with well-settled principles regarding the element of

13  reliance in ordinary fraud actions."  *Id*. at 306 (emphasis added); *see also id.* at 328 ("a plaintiff

14  must plead and prove actual reliance," and is "required to provide individualized reliance on

15  specific misrepresentations or false statements."); *Hale v. Sharp Healthcare*, 183 Cal. App. 4th

16  1373, 1384 (2010).  A class representative cannot establish reliance based on an inference of

17  reliance with regard to absent class members, as Plaintiff's own authority holds:  "While . . .

18  actual reliance can be proved on a class-wide basis when each class member has read or heard the

19  same misrepresentation, nothing . . . so much as hints that a plaintiff may plead a cause of action

20  for deceit without alleging actual reliance." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993)

21  (dismissing class representatives who failed to plead reliance on misrepresentations); *see also*

22  *Jenson v. Fiserv Trust Co.*, No. 07-55613, 2007 WL 4163889, at **1 (9th Cir. Nov. 26, 2007)

23  (discussing inference of reliance with regard to class members, not class representatives).

24        Plaintiff also fails to overcome the second, independent problem that there is no contract,

25  required as a predicate to § 1572.  Plaintiff's legal conclusion that Google's Privacy Policy

26  constitutes a "valid and enforceable agreement" does not plead the facts required.  Legal

27  conclusions cast in the form of factual allegations need not be accepted as true on a motion to

28  dismiss where those conclusions cannot reasonably be drawn from the facts alleged.  *Papasan v.*

- 12 -

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW

1    *Allain*, 478 U.S. 265, 286 (1986); *see also Clegg v. Cult Awareness Network*, 18 F.3d 752, 755

2    (9th Cir. 1994).  And Plaintiff fails to rebut that she has not alleged any facts supporting a

3    reasonable inference that the Privacy Policy constitutes an enforceable contract between Plaintiff

4    and Google.  (*See* Mot. 19:4-9.)  Plaintiff argues only that privacy concerns "are major factors in

5    the attraction of users" (*see* Opp. 17:12-20), but this fact does not transform unilateral statements

6    of policy into binding and enforceable agreements.  Plaintiff's own authority supports Google.  In

7    *Smith v. Trusted Universal Standards in Electronic Transactions, Inc.*, the court dismissed

8    plaintiff's breach of contract claims that were premised on Cisco's and Microsoft's online privacy

9    policies because "those policies are insufficient to form a contract because they are not definite

10   and no consideration was given."  *See* No. 09-4567, 2010 WL 1799456, at *8 (D.N.J. May 4,

11   2010).  Given that Plaintiff has not even alleged that she read the Privacy Policy, let alone offered

12   any consideration, Plaintiff has not shown that Google's Privacy Policy constitutes a valid and

13   enforceable agreement between them.

14           The other cases cited by Plaintiff further highlight the deficiencies in her allegations.

15   Those cases find that privacy policies may constitute enforceable agreements where they involve

16   bargained-for member or service agreements, which incorporate privacy policies by reference.

17   *Smith*, 2010 WL 1799456, at *9 (finding that plaintiff alleged facts that Comcast's Subscriber

18   Agreement incorporated Comcast's Privacy Policy); *Meyer v. Christie*, No. 07-2230, 2007 WL

19   3120695, at *4 (D. Kan. Oct. 24, 2007) (finding that plaintiff alleged facts that bank's privacy

20   policy constituted "part" of his bargained-for exchange with his longtime bank); *In re Jetblue*

21   *Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 325 (E.D.N.Y. 2005) (finding that plaintiff

22   alleged facts that online privacy policy constituted a term in the contract of carriage between

23   passengers and airline); *In re Am. Airlines, Inc. Privacy*, 370 F. Supp. 2d 552, 556 (N.D. Tex.

24   2005) (same).  In contrast, there is no bargained-for agreement between Plaintiff and Google that

25   could have, theoretically, incorporated the terms of the Google Privacy Policy.  For these reasons,

26   Plaintiff's sole remaining fraud-based claim must be dismissed.

27

28

- 13 -

1

## V.        PLAINTIFF CANNOT STATE A CLAIM FOR UNJUST ENRICHMENT.

2

3          Plaintiff entirely fails to address the recent California cases put forth by Google which

4   expressly hold that the law does not recognize a claim for unjust enrichment in this state.  *Jogani*

5   *v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is not a cause of

6   action."); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006) (same); *Melchior v.*

7   *New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) (same).  Instead, Plaintiff cites federal

8   cases that predate *Jogani* to argue that such a cause of action is viable.  *Cf. Villager Franchise*

9   *Sys., Inc. v. Dhami, Dhami & Virk*, No. CVF046393RECSMS, 2006 WL 224425 (E.D. Cal.

10  Jan. 26, 2006); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838 (N.D. Cal. 2004).  But these

11  holdings cannot trump California law.  And the older California cases cited by Plaintiff show that

12  unjust enrichment is a remedy, not a separate cause of action.  *Ward v. Taggart*, 51 Cal. 2d 736,

13  741-42 (1959) (discussing plaintiff's theory of recovery); *California v. Levi Strauss & Co.*, 41

14  Cal. 3d 460 (1986).

15         Even if the Court were to find, against California case law, that such a cause of action

16  exists, Plaintiff has failed to allege there was a benefit conferred on Google at the expense of

17  Plaintiff.  As Plaintiff's own cases explain, this is a necessary requirement for unjust enrichment

18  as a remedy.  *See Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008); *Cnty. of San*

19  *Bernardino v. Walsh*, 158 Cal. App. 4th 553 (2008); *Hirsch v. Bank of Am.*, 107 Cal. App. 4th

20  708, 722 (2003).  As discussed above, Plaintiff has failed to put forth any facts that support that

21  she lost money as a result of Google's alleged enrichment.  For these reasons, Plaintiff's claim

fails as a matter of law.

22

### CONCLUSION

23         Google respectfully requests that the Court dismiss each remaining cause of action in

24  Plaintiff's Complaint with prejudice.

25         Dated:   March 28, 2011                    O'MELVENY & MYERS LLP

26                                                    By:___/s/ Randall W. Edwards_____
                                                         Randall W. Edwards
27                                                    Attorneys for Defendant Google Inc.

28  SF1:817055.4

GOOGLE INC.'S REPLY ISO MTD
5:10-CV-04809-JW