1  RANDALL W. EDWARDS (S.B. #179053) redwards@omm.com
   JEAN B. NIEHAUS (S.B. #254891) jniehaus@omm.com
2  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
3  San Francisco, CA  94111-3823
   Telephone:    (415) 984-8700
4  Facsimile:    (415) 984-8701

5  Attorneys for Defendant
   Google Inc.
6

7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10                  **SAN JOSE DIVISION**

11

12  PALOMA GAOS, an individual, on behalf      Case No.  5:10-cv-04809-EJD
    of herself and all others similarly situated,
13                                             CLASS ACTION
                    Plaintiff,
14                                             **GOOGLE INC.'S MOTION TO DISMISS
          v.                                   PLAINTIFF'S FIRST AMENDED
15                                             COMPLAINT PURSUANT TO RULES
    GOOGLE INC., a Delaware Corporation,       12(b)(1) AND 12(b)(6)**
16
                    Defendant.                 Hearing Date:  October 28, 2011
17                                             Time:          9:00 a.m.
                                               Place:         Courtroom 1, 5th Floor
18                                             Judge:         Hon. Edward J. Davila

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 2

INTRODUCTION ................................................................................................................. 2

FACTUAL ALLEGATIONS ................................................................................................ 4

ARGUMENT ......................................................................................................................... 6

I.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE SHE LACKS STANDING UNDER ARTICLE III OF THE UNITED STATES CONSTITUTION ........................................................................................ 6

    A.    Plaintiff Does Not Allege Facts Establishing That Any User Suffered An Injury-In-Fact ............................................................................. 7

    B.    Plaintiff Has Not Alleged An Injury To Herself ...................................... 10

II.    THE COURT SHOULD DISMISS PLAINTIFF'S STATE-LAW CLAIMS BECAUSE SHE FAILS TO STATE A CLAIM UNDER THOSE CAUSES OF ACTION ............................................................................................. 11

    A.    Plaintiff's State-Law Claims Are Preempted By The Stored Communications Act.............................................................................. 11

    B.    Plaintiff Has Failed To Allege Facts Sufficient To Support Her Privacy Claim........................................................................................... 13

    C.    Plaintiff Has Failed To Allege Facts Sufficient To Support A Claim For Breach Of Contract........................................................................... 15

    D.    Plaintiff's Fraud-Based Claims Fail As A Matter Of Law For Many Reasons ................................................................................................... 17

        1.    Plaintiff's Claims Do Not Satisfy The Particularity Requirement Of Rule 9(b)............................................................ 17

        2.    Plaintiff's Common Law Claims For Fraudulent And Negligent Misrepresentation Fail As A Matter Of Law............... 18

        3.    Plaintiff's Claim For Actual Fraud Under Section 1572 Fails Because She Fails To Allege Facts Demonstrating The Existence Of A Contract ............................................................ 19

        4.    Plaintiff's Constructive Fraud Claim Under Section 1573 Fails Because She Fails To Allege A Confidential Or Fiduciary Relationship With Google ........................................... 20

    E.    Plaintiff Cannot State A Claim For Unjust Enrichment .......................... 21

CONCLUSION................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abels v. Bank of Am.*,
No. C 11-0208-PJH, 2011 WL 1362074 (N.D. Cal. Apr. 11, 2011) ..................................... 18

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ................................................................................................. 16

*Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co.*,
116 Cal. App. 4th 1375 (2004) ................................................................................................ 15

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ...................................................................................................... 11, 15

*Beijing Tong Ren Tang (USA), Corp. v. TRT USA Corp.*,
No. C-09-00882 RMW, 2010 WL 890048 (N.D. Cal. Mar. 8, 2010) ..................................... 20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................... 11, 15

*Beverage Distribs., Inc. v. Olympia Brewing Co.*,
440 F.2d 21 (9th Cir. 1971) ..................................................................................................... 16

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ..................................................................................................... 7

*Bunnell v. Motion Picture Ass'n of Am.*,
567 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................................ 11, 13

*C.A. v. William S. Hart Union High Sch. Dist.*,
189 Cal. App. 4th 1166 (2010) ................................................................................................ 20

*Cherny v. Emigrant Bank*,
604 F. Supp. 2d 605 (S.D.N.Y. 2009) ....................................................................................... 7

*Daly v. Viacom, Inc.*,
238 F. Supp. 2d 1118 (N.D. Cal. 2002) ................................................................................... 15

*Doe 1 v. AOL LLC*,
719 F. Supp. 2d 1102 (N.D. Cal. 2010) ..................................................................................... 8

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ................................................................................................ 21

*Dyer v. Nw. Airlines Corp.*,
334 F. Supp. 2d 1196 (D.N.D. 2004) ...................................................................................... 16

*Flynn v. Highman*,
149 Cal. App. 3d 677 (1983) .................................................................................................... 13

**TABLE OF AUTHORITIES**
(continued)

Page

*FMC Corp. v. Holliday,*
   498 U.S. 52 (1990) ................................................................................. 12

*Forsher v. Bugliosi,*
   26 Cal. 3d 792 (1980) ..................................................................... 10, 13

*Hartman v. Summers,*
   120 F.3d 157 (9th Cir. 1997) ................................................................... 7

*Hashimoto v. Clark,*
   264 B.R. 585 (D. Ariz. 2001) ................................................................ 19

*In re Brocade Commc'ns Sys., Inc. Deriv. Litig.,*
   615 F. Supp. 2d 1018 (N.D. Cal. 2009) ................................................. 18

*In re Facebook Privacy Litig.,*
   No. 10-cv-02389-JW (N.D. Cal. May 12, 2011) ...................................... 9

*In re National Security Agency Telecommunications Records Order Litigation,*
   633 F. Supp. 2d 892 (N.D. Cal. 2007) ................................................... 12

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ........................................................................... 20

*Jermy v. Jones,*
   No. 99-35044, 2000 WL 1685031 (9th Cir. Nov. 9, 2000) .................... 14

*Jogani v. Superior Court,*
   165 Cal. App. 4th 901 (2008) ................................................................ 21

*Jurin v. Google Inc.,*
   --- F. Supp. 2d ----, 2011 WL 572300 (E.D. Cal. Feb. 15, 2011) .......... 15

*Levine v. Blue Shield of Cal.,*
   189 Cal. App. 4th 1117 (2010) .............................................................. 21

*Lierboe v. State Farm Mut. Auto. Ins. Co.,*
   350 F.3d 1018 (9th Cir. 2003) ............................................................... 10

*Lorenzo v. United States,*
   719 F. Supp. 2d 1208 (S.D. Cal. 2010) ................................................. 14

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) ........................................................................... 6, 10

*Marolda v. Symantec Corp.,*
   672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................... 17

*Masters v. San Bernardino Cnty. Emps. Ret. Ass'n,*
   32 Cal. App. 4th 30 (1995) .................................................................... 19

**TABLE OF AUTHORITIES**
(continued)

Page

*Mazur v. eBay, Inc.*,
No. C 07-03967-MHP, 2008 WL 618998 (N.D. Cal. Mar. 4, 2008) ....................................... 17

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004) ............................................................................ 21

*McKell v. Wash. Mut., Inc.*,
142 Cal. App. 4th 1457 (2006) .......................................................................... 21

*Melchior v. New Line Prods., Inc.*,
106 Cal. App. 4th 779 (2003) ............................................................................ 21

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ........................................................................................... 12

*Moreno v. Hanford Sentinel, Inc.*,
172 Cal. App. 4th 1125 (2009) .......................................................................... 13

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .............................................................................. 11

*Mulato v. WMC Mortg. Corp.*,
No. C 09-03443-CW, 2010 WL 1532276 (2010) ......................................... 15, 16

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs.*,
171 Cal. App. 4th 35 (2009) .............................................................................. 18

*Patriot Scientific Corp. v. Korodi*,
504 F. Supp. 2d 952 (S.D. Cal. 2007) ................................................................ 20

*Quon v. Arch Wireless Operating Co.*,
445 F. Supp. 2d 1116 (C.D. Cal. 2006) .............................................................. 11

*Quon v. Arch Wireless Operating Co.*,
529 F.3d 892 (9th Cir. 2008) .............................................................................. 11

*Ruiz v. Gap, Inc.*,
622 F. Supp. 2d 908 (N.D. Cal. 2009) ............................................................. 9, 19

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
279 F.3d 817 (9th Cir. 2002) ............................................................................ 7, 8

*Schwartz v. Thiele*,
242 Cal. App. 2d 799 (1966) .............................................................................. 14

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ........................................................................... 19

*Shulman v. Grp. W Prods., Inc.*,
18 Cal. 4th 200 (1998) ....................................................................................... 13

- iv -

**TABLE OF AUTHORITIES**
(continued)

Page

*Silvas v. E\*Trade Mortg. Corp.*,
514 F.3d 1001 (9th Cir. 2008) .......................................................................................... 11

*Sipple v. Chronicle Publ'g Co.*,
154 Cal. App. 3d 1040 (1984) ........................................................................................... 13

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) .............................................................................................. 5

*Taus v. Loftus*,
40 Cal. 4th 683 (2007) ...................................................................................................... 14

*Tecza v. Univ. of S.F.*,
No. C 09-03808 RS, 2010 WL 1838778 (N.D. Cal. May 3, 2010) ...................................... 14

*Valentine v. NebuAd, Inc.*,
No. C08-05113-TEH, 2011 WL 1296111 (N.D. Cal. Apr. 4, 2011) ...................................... 12

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........................................................................................... 17

*Warren v. Merrill*,
143 Cal. App. 4th 96 (2006) .............................................................................................. 19

*Warth v. Seldin*,
422 U.S. 490 (1975) .......................................................................................................... 10

*Watts v. Enhanced Recovery Corp.*,
No. 10-cv-02606-LHK, 2010 WL 4117452 (N.D. Cal. Oct. 19, 2010) ................................. 18

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ........................................................................................................ 7, 9

*Whitson v. Bumbo*,
No. C 07-05597, 2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ............................................ 7

*Wilkins v. Nat'l Broad. Co.*,
71 Cal. App. 4th 1066 (1999) ............................................................................................ 19

*Wolf v. Superior Court*,
107 Cal. App. 4th 25 (2003) .............................................................................................. 20

**STATUTES**

18 U.S.C. § 2510 *et seq.* ................................................................................................... 13

18 U.S.C. § 2518(10) .................................................................................................... 11, 12

18 U.S.C. § 2701 *et seq.* ................................................................................................... 11

18 U.S.C. § 2708 ............................................................................................................... 11

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

18 U.S.C. §§ 2510 *et seq.* ........................................................................................................... 9

Cal. Bus. & Prof. Code § 17200 *et seq.* ...................................................................................... 3

Cal. Bus. & Prof. Code §§ 17500 *et seq.* .................................................................................... 3

Cal. Civ. Code § 1572 ................................................................................................................ 19

Cal. Civ. Code § 1573 ................................................................................................................ 20

Cal. Civ. Code § 1750 *et seq.* ...................................................................................................... 3

**OTHER AUTHORITIES**

Restatement (Second) of Torts § 652D cmt. a ........................................................................... 14

**RULES**

Fed. R. Civ. P. 12(b)(1)................................................................................................................ 1

Fed. R. Civ. P. 12(b)(6).......................................................................................................... 1, 11

**CONSTITUTIONAL PROVISIONS**

Cal. Const. art. I, § 1 ................................................................................................................. 13

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 28, 2011, at 9:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled court, located at 280 South First Street, San Jose, California, in Courtroom 1, Defendant Google Inc. will, and hereby does, move to dismiss the First Amended Complaint filed by Plaintiff Paloma Gaos.  Google's Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Jean B. Niehaus and attached Exhibits, and such other matters, both oral and documentary, as may properly come before the Court.

Google seeks an order, pursuant to Federal Rule of Civil Procedure 12(b)(1), dismissing Plaintiff's First Amended Complaint for lack of subject matter jurisdiction.  Google also seeks an order dismissing the First Amended Complaint's six state-law causes of action for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The First Amended Complaint ("FAC") of Plaintiff Paloma Gaos does not cure her failure to allege facts establishing cognizable injury, as is required by Article III of the United States Constitution.  Plaintiff again asserts federal and state claims based on conclusory allegations that she was injured, in an unspecified manner, by a standard Internet practice whereby URL information is passed from one Internet webpage to another in the Referrer Header as a user navigates from page to page.  In particular, she blames Google, a free search engine, for allowing the URL to reflect her Google search query, making that query viewable to the particular landing page that she selected.  As alleged, the Court held that this does not constitute cognizable injury, and Plaintiff thus lacks standing.  Chief Judge Ware granted Google's prior motion to dismiss but allowed Plaintiff leave to try to plead facts that would cure the original Complaint's fatal problems.  *See* Order Granting Defendant's Motion To Dismiss With Leave To Amend ("April 7 Order") at 5, Dkt. No. 24 (Apr. 7, 2011).  Although the FAC adds allegations about when Plaintiff used Google Search, it does not remedy her failure to allege anything other than conclusory allegations of unspecified harm.  The FAC also does not remedy the many problems with Plaintiff's state-law claims; to the contrary, the FAC only adds to them.

Plaintiff's allegations center on the transmission of users' search queries as part of the information sent in what is known as the Referrer Header.  (*See* FAC ¶¶ 39-41.)  When a user submits a search query to Google Search, Google returns a search results page to the user's browser, which contains website addresses whose content matches the users' search terms.  (*Id.* ¶ 12.)  The URL of the search results page includes information about the search query used to generate that web page.  (*Id.* ¶ 39.)  If the user clicks on a link to one of the search results on the search results page, the user is redirected to that web page.  (*Id.* ¶ 40.)  The FAC acknowledges, as it must, that when the user clicks a link on **any** web page to visit any other web page on the Internet, the user's web browser (such as Internet Explorer) transmits Referrer Header information to that destination web page.  (*Id.* ¶ 36.)  This is not unique to Google; it is a standard and default web browser function to transmit Referrer Header information, which includes the

URL of the last web page the user viewed before clicking the link to the currently viewed web page.  (*Id.*)  Plaintiff contends, however, that Google should not have passed on the actual URL of the search results page and instead should have truncated the search-query information from the URL transmitted by the user's browser.

But even in her amended Complaint, Plaintiff does not make a single allegation that any of her private information was disclosed to a third party through the transmission of Referrer Header information.  The only individualized allegations Plaintiff makes are that she performed searches for her name and her family members' names —facts which are not private—on Google Search and clicked on links contained in the search results web page.  In an attempt to show harm to Google Search users in general, the FAC discusses at length what it calls "The Science of Reidentification," through which Plaintiff contends the admittedly anonymous data disclosed through Referrer Header information could be aggregated and mined by someone to obtain "data fingerprints," which in turn allegedly could be used to identify individuals and, potentially, could result in harm.  This general discussion, removed from any injury actually suffered by Plaintiff, was insufficient in the first Complaint, and is insufficient now.  At most, Plaintiff recites a theory under which someone **might** be injured some day in the future.  But she again alleges no actual harm to herself.  Nor does she allege that Google acquired any money from her, wrongfully or not.  Of course, she cannot make such an allegation, because Google Search is free.  Plaintiff therefore still lacks Article III standing to maintain her claim.

Plaintiff unsuccessfully attempts to force-fit her contentions about Google Search into a framework of inapplicable laws.  Plaintiff's FAC abandons her original claims under the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; but she continues to assert claims for alleged violations of a constitutional right to privacy, statutory fraud and unjust enrichment (a cause of action unrecognized under California law).  She also adds new claims for breach of contract and fraudulent and negligent misrepresentation.  But Plaintiff still does not plead facts sufficient and necessary to satisfy the elements of **any** of her state-law claims:  her name is not a private fact; she fails to allege that she

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

1   entered into a contract with Google; the FAC does not plead fraud with the necessary

2   particularity; and she does not and cannot allege that Google has a fiduciary relationship with her

3   or its users.  Moreover, the state-law claims are preempted by federal law.  Plaintiff's hopeless

4   attempt to fit her grievances into the framework of these state laws fails as a matter of law.

5       If necessary, Google will present additional reasons to reject Plaintiff's claims based on

6   the evidence, but the Court has ample justification to warrant dismissal on the pleadings based on

7   defects that exist as a matter of law.  Plaintiff's FAC should be dismissed with prejudice.

8                              **FACTUAL ALLEGATIONS**[1]

9       Google operates one of the world's most popular Internet search engines, with over one

10  billion user-generated search requests every day.  (FAC ¶¶ 2, 12-13.)  The FAC does not (and

11  cannot) allege that users pay any fee to use Google Search because Google Search is free.  The

12  FAC also does not and cannot allege that any contract or subscriber agreement is required to

13  conduct searches on Google Search.

14      To use Google Search, users enter search terms into the search box and then submit the

15  search request to Google by hitting Enter on the keyboard or clicking the Search button.  (*Id.*

16  ¶ 12.)  Within a fraction of a second, Google Search uses its sophisticated technology to match

17  users' search terms to websites containing those terms, and returns a list of those matching

18  websites to the user in a new web page, referred to as "the search results page."  (*See id.* ¶¶ 12,

19  39-40.)  Each Google search results page has a unique URL[2] that includes the search terms used

20  to generate the search results.  (*See id.* ¶¶ 39-40.)  Users then can go to the desired web page by

21  clicking one of the links provided on the search results page, which will redirect the user to the

22  desired destination web page.  (*Id.* ¶ 12.)  In the normal course of operation, the user's web

23  browser (*e.g.*, Internet Explorer) transmits what is known as Referrer Header information to the

24  operator of every destination webpage the user visits.  (*See id.* ¶¶ 36, 40.)  The FAC concedes that

25  the transmission of Referrer Header information is a standard and default web browser function.

26  _____

[1] The Factual Allegations are based on the allegations in the Complaint, which Google assumes as
true for purposes of this motion but which Google does not thereby admit.

27  [2] A Uniform Resource Locator ("URL") specifies where on the Internet an identified resource is
available and the mechanism for retrieving it.  One type of URL is the addresses of web pages on

28  the World Wide Web, such as http://www.google.com.  (*See* FAC ¶ 39.)

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

1    (*Id.* ¶ 36.)  The Referrer Header information includes the URL of the web page the user last

2    visited, and by doing so informs the requested website how the user got to the page.  (*Id.*)

3    Additionally, the user's web browser transmits the user's IP address (*see id.* ¶ 72), which may be

4    static or changing (dynamic) and does not specify the user's name.

5          As is plainly disclosed in Google's Privacy Center, Google analyzes and uses search

6    queries in a variety of ways.  Google's Privacy Policy sets forth the types of information collected

7    by Google and the security, use, and sharing of that information.  (Declaration of Jean B. Niehaus

8    in Support of Motion to Dismiss, Ex. 1 at 1-3.[3])  As defined by Google's Privacy Policy and

9    Google's Privacy FAQ, search queries are not "personal information."  (*See id.*, Ex. 1 at 1; Ex. 2

10   at 4.)  Under the Privacy Policy, "personal information" is the type of information provided

11   "[w]hen you sign up for a Google Account."  (*Id.*, Ex. 1 at 1; *see also id.*, Ex. 2 at 4.)  Search

12   terms, unlike personal information, may be used by Google in a variety of ways, as expressly

13   stated by Google's Privacy FAQ.  (*Id.*, Ex. 2 at 2.)  Moreover, the Google Privacy FAQ discloses

14   that the search results page URL contains the search query.  (*Id.*, Ex. 2 at 5.)  Whether third-party

15   websites record the page requests made when a user visits those sites is outside of Google's

16   control, as explained by Google's Privacy Policy.  (*Id.*, Ex. 1 at 3 (Google does "not exercise

17   control over the sites displayed as search results. . . .These other sites may . . . collect data . . .

18   from you.").)

19         Despite Google's truthful disclosures regarding search-query information, Plaintiff asserts

20   generalized allegations that Google disclosed her "private" search queries.  (FAC ¶¶ 102, 108,

21   113, 131, 134.)  Plaintiff alleges no particularized facts of public disclosure of that information,

22   however.  The only disclosure alleged is that the Referrer Header, which a user's web browser

23   passes on to websites accessed from Google search results pages, contains information that would

24   reveal the search query used by Google to generate a particular results page.

25         Plaintiff has added few personalized allegations to those found deficient in her initial

26   Complaint.  She alleges merely that she has, "at all material times been a user of Google's search

27   ─────────────
     [3] On a Rule 12 motion, the Court may consider documents whose contents are alleged in the
28   Complaint and whose authenticity no party questions.  *Sprewell v. Golden State Warriors*, 266
     F.3d 979, 988 (9th Cir. 2001).

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

1   engine services." (*Id.* ¶ 76.)  She alleges that, during time periods other than those in which

2   Google's testing of AJAX technologies temporarily eliminated search queries from Referrer

3   Headers, she conducted "vanity searches" for her name and the names of her family members,

4   and clicked on links on the resulting Google search results pages.  (*Id.* ¶ 77.)  Plaintiff further

5   alleges that each time she clicked on a link on her Google search results page, the owner of the

6   single website to which she was redirected received Plaintiff's search terms through the Referrer

7   Header.  (*Id.* ¶ 79.)  Notably, Plaintiff has not added any allegations that she ever read any of

8   Google's privacy disclosures, including the Privacy Policy, or that she personally relied on any of

9   those disclosures in her decision to use Google Search.

10                                              **ARGUMENT**

11  I.      THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS BECAUSE SHE LACKS
            STANDING UNDER ARTICLE III OF THE UNITED STATES CONSTITUTION.
12

13          Despite Plaintiff's additional allegations, the FAC still fails to plead facts showing an

14  injury-in-fact sufficient to confer standing under Article III, Section 2 of the United States

15  Constitution.  In his Order granting Google's motion to dismiss Plaintiff's original Complaint,

16  Chief Judge Ware noted two separate deficiencies in Plaintiff's factual allegations.  April 7 Order

17  at 5.  First, Judge Ware found that Plaintiff "failed to plead that she clicked on a link from the

18  Google search page during the same time period that Defendant allegedly released search terms

19  via referrer headers."  *Id.* at 5.  Second, Judge Ware found that "Plaintiff's conclusory allegations

20  of disclosures of communications resulting in unspecified harm in violation of the ECPA, not

21  supported by any facts, are insufficient to allege violation of Plaintiff's statutory rights."  *Id.*

22          Plaintiff failed to add allegations sufficient to overcome the second fundamental and fatal

23  problem with her allegations.  Instead, Plaintiff has merely added a conclusory assertion that she

24  "has suffered actual harm" because of the passing on of her search queries in the Referrer Header.

25  Thus, even though Plaintiff added allegations aimed at addressing the first deficiency (FAC ¶¶

26  76-79), the FAC remains deficient.

27          Federal jurisdiction under Article III is limited to actual cases and controversies.  *Lujan v.*

28  *Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  The party invoking federal jurisdiction bears

                                              - 6 -

the burden of establishing that it suffered an "injury in fact"—that is, an invasion of a legally

protected interest which is (a) concrete and particularized, and (b) actual and imminent, not

conjectural or hypothetical. *Id.* (citations omitted).  In this case, dismissal is appropriate because

Plaintiff again fails to allege facts sufficient to show injury or an actual and imminent threat of

harm to herself. *See also Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990) (To plead standing,

plaintiff "must clearly and specifically set forth facts sufficient to satisfy [the] Article III standing

requirements.").

      A.     <u>Plaintiff Does Not Allege Facts Establishing That Any User Suffered An Injury-In-Fact.</u>

The only harm Plaintiff alleges is the "disclosure of [users'] private search queries."

(FAC ¶ 101; *see also* ¶¶ 108, 113, 131, 134.)  She does not allege any harm to herself as a result

of the alleged disclosure of her vanity searches.  Courts have held that the release of potentially

sensitive information, without more, is insufficient to meet Article III's injury-in-fact

requirement. *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 608 (S.D.N.Y. 2009) (release of e-

mail address does not constitute an injury sufficient to state a claim).

To have standing, the alleged "injury must have actually occurred or must occur

imminently; hypothetical, speculative or other 'possible future' injuries do not count in the

standings calculus." *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th

Cir. 2002) (rejecting argument that an injury occurring "some day" in the future can satisfy the

injury-in-fact requirement); *see also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir.

2009) (stating that hypothetical injury was insufficient for Article III standing).  A threat of future

harm may give rise to an injury-in-fact, but only if that threat is "credible rather than remote or

hypothetical." *Hartman v. Summers*, 120 F.3d 157, 160 (9th Cir. 1997) (holding that future harm

must be "a very significant possibility").

Even on her second try, Plaintiff simply does not plead facts showing that any harm is

actual or imminent, as required.  She does not claim that she has suffered or is substantially

certain to suffer any loss from the disclosure of "private" search queries. *See Whitson v. Bumbo*,

No. C 07-05597, 2009 WL 1515597, at *5-6 (N.D. Cal. Apr. 16, 2009) (dismissing claim for lack

of Article III standing where plaintiff failed to allege any actual injury as a result of defendant's

alleged misrepresentations).  To the contrary, the FAC reveals the conjectural and hypothetical

nature of the alleged injury.  It merely asserts that a capability exists that, if exploited, may lead to

future harm to users generally.  According to Plaintiff's allegations, Google transmits individual

search queries each time a Google user clicks on a link in a Google search results page.  (FAC

¶ 70.)  Plaintiff admits that these discrete, serial disclosures are anonymized.  (*See id.*)  But she

alleges that a threat of future harm allegedly arises because some yet-to-be identified other

individual or individuals (not Google) may (1) retrieve and amalgamate these anonymized search

queries from Google, (2) identify "data fingerprints" within that data, (3) combine those

fingerprints with yet-to-be-identified other data, (4) discern individuals' identities and their

personal information from within this combined data, and, finally, (5) exploit individuals'

identities to their detriment.  (*See id.* ¶¶ 60-63.)  Thus, Plaintiff has merely identified a

speculative manner in which she ***might*** be injured in the future.  The Supreme Court and the

Ninth Circuit have repeatedly rejected the position that an alleged potential injury "occurring

'some day' can satisfy the injury-in-fact requirement of the standing doctrine."  *Schmier*, 279

F.3d at 822.

     The alleged harm here is far more remote and hypothetical than in other "lost data" cases.

In *Doe 1 v. AOL LLC*, cited in footnote 20 of the FAC, AOL posted on its website a database of

approximately twenty million AOL Internet search records.  *See* 719 F. Supp. 2d 1102, 1105

(N.D. Cal. 2010).  Critically, AOL had a business practice of storing searches in a manner that

uniquely correlated the search query with the member who made it.  *Id.*  Accordingly, the court

found that plaintiffs' allegations were sufficient to demonstrate standing because AOL had made

no effort to retrieve the data it inadvertently disseminated, and AOL continued to collect and

disseminate in the same manner.  *Id.* at 1109.  Because individual members' searches were

discernible and identifiable in the AOL data, due to AOL's practices, there was no need to allege

or rely on the "Science of Reidentification" to postulate some future potential injury.  Here, in

contrast, there is no allegation that Google disseminates users' searches in a manner that

inherently identifies the user, or that Google has disclosed an aggregated database of users'

searches.  Instead, Plaintiff claims that the billions of individual disclosures of Referrer Header information **might** be aggregated and then analyzed by someone else so as to identify some individuals and their personal information.  This prospect does not create a present right of action against Google.

Likewise, *Ruiz v. Gap, Inc.*, provides no support for Plaintiff.  In *Ruiz*, the court found that an increased risk of identity theft is sufficient to confer Article III standing, but the different facts present in *Ruiz* highlight what is missing here.  622 F. Supp. 2d 908, 912 (N.D. Cal. 2009).  Unlike Plaintiff here, the *Ruiz* plaintiffs submitted employment applications that required personal and personally-identifying information, including social security numbers, which were stored on a laptop that was later stolen by a thief alleged to be seeking that information.  *Id.* at 913.  Thus, the future threat of identity theft in that case was a significant possibility, not hypothetical or remote.  *See also* April 7 Order at 5 ("Plaintiff's conclusory allegations of disclosures of communications resulting in unspecified harm in violation of the ECPA, not supported by any facts, are insufficient to allege violation of Plaintiff's statutory rights."); *but see* May 12, 2011 Order in *In re Facebook Privacy Litig.*, No. 10-cv-02389-JW at 7-8, Dkt. No. 91 (N.D. Cal. May 12, 2011) ("*Facebook Order*") (*See* Niehaus Decl. Ex. 3) (holding that plaintiffs established Article III standing where they alleged facts sufficient to make out a potential violation of their statutory rights under the Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*).  In this case, in contrast, there is no allegation that Plaintiff's personal information has been stolen, or that it has been stolen for purposes of identify theft.  In fact, there is not even an allegation that Plaintiff's personal information has been disclosed.

The Supreme Court has "emphasized repeatedly" that the alleged injury must be "distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical."  *Whitmore*, 495 U.S. at 155 (citations omitted).  In this case, Plaintiff does not—and cannot—allege that any injury is imminent.  There is no allegation that her personal information has been discerned through the "Science of Reidentification," that her personal identity has been compromised, or that her personal information has been fraudulently used.  For any particular individual who used Google, including Plaintiff, the likelihood of this

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

1    injury is speculative, and the time when any such occurrence would come to pass (if ever) is

2    entirely uncertain.  When timing and type of injury cannot be determined, such abstract injuries

3    cannot constitute the injury-in-fact required for Article III standing.  *Lujan*, 504 U.S. at 565 n.2

4    (citations omitted).

5            B.      <u>Plaintiff Has Not Alleged An Injury To Herself.</u>

6            A further problem exists beyond the hypothetical nature of Plaintiff's alleged harm to

7    users from the general use of Google Search.  That Plaintiff attempts to bring her claims in a class

8    action makes no difference.  To have standing, Plaintiff must allege a concrete and particularized

9    risk of injury to ***herself***.  *See Lujan*, 504 U.S. at 561 n.1 ("By particularized, we mean that the

10   injury must affect the plaintiff in a personal and individual way."); *Warth v. Seldin*, 422 U.S. 490,

11   501 (1975) ("[T]he plaintiff still must allege a direct and palpable injury to himself."); *Lierboe v.*

12   *State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1020 (9th Cir. 2003) (holding that named plaintiff

13   must establish that she "personally, ha[s] been injured") (citation omitted).

14           This deficiency was a centerpiece of the Court's Order granting Google's motion to

15   dismiss in the first instance, April 7 Order at 5, yet the FAC does nothing to remedy this problem.

16   The FAC alleges only that Plaintiff used Google Search to conduct "'vanity searches,' for her

17   actual name and the names of her family members."  (FAC ¶ 77.)  The FAC does not allege that

18   Plaintiff entered search queries that would reveal personally identifiable information that could

19   cause harm upon public disclosure by someone who may re-aggregate the data and link it to her,

20   nor does it allege that she suffered or imminently will suffer any harm from the disclosure of her

21   name or her family members' names.  *Cf. Forsher v. Bugliosi*, 26 Cal. 3d 792, 812-13 (1980)

22   (finding that individual's name is not a "private fact" for purposes of California privacy tort).

23   The FAC does not even allege that any purported disclosure exposed Plaintiff herself to the risk

24   of future harm.  Thus, although the FAC makes generalized statements about what user search

25   queries can contain (*see* FAC ¶ 3), there is no allegation that the named Plaintiff herself submitted

26   to Google searches that contained private or personal information, as is discussed in more detail

27

28

                                            - 10 -

1    in Section II.B, below.  Plaintiff therefore lacks Article III standing, and the Court must dismiss

2    each of Plaintiff's claims.

3    II.      **THE COURT SHOULD DISMISS PLAINTIFF'S STATE-LAW CLAIMS BECAUSE
             SHE FAILS TO STATE A CLAIM UNDER THOSE CAUSES OF ACTION.**

4

5           The FAC also should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for

6    failure to state a claim.  Although factual allegations in Plaintiff's FAC are assumed to be true for

7    purposes of this motion, "a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment]'

8    to relief requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

9    555 (2007).  An unadorned recitation of the elements of the claims will not suffice, and the court

10   need not assume the truth of conclusory allegations unsupported by facts.  *Ashcroft v. Iqbal*, 129

11   S. Ct. 1937, 1950 (2009).  Rather, a complaint must allege a factual basis for each element of a

12   cause of action entitling a plaintiff to relief.  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th

13   Cir. 2009).

14          A.      Plaintiff's State-Law Claims Are Preempted By The Stored Communications Act.

15          The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq.*, contains an express

16   preemption clause:  "The remedies and sanctions described in this chapter are the only judicial

17   remedies and sanctions for nonconstitutional violations of this chapter."  18 U.S.C. § 2708; *see*

18   *also Quon v. Arch Wireless Operating Co.*, 445 F. Supp. 2d 1116, 1138 (C.D. Cal. 2006), *rev'd*

19   *on other grounds by Quon v. Arch Wireless Operating Co.*, 529 F.3d 892 (9th Cir. 2008).  Federal

20   law may, of course, expressly preempt state-law claims.  *Silvas v. E*Trade Mortg. Corp.*, 514

21   F.3d 1001, 1004 (9th Cir. 2008).

22          In this case, the statutory language is clear:  for any nonconstitutional violation of the

23   SCA, the remedies and sanctions described in the SCA provide "the ***only*** judicial remedies and

24   sanctions."  18 U.S.C. § 2708 (emphasis added).  Several courts have also held that Section 2708

25   and the analogous Wiretap Act provision expressly preempt private civil claims brought under

26   state law.  *See, e.g., Quon*, 445 F. Supp. 2d at 1138; *and Bunnell v. Mot. Picture Ass'n of Am.*,

27   567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007) (holding that 18 U.S.C. § 2518(10) expressly

28   preempts state law claims).  The court in *Quon*, relying on the plain language of Section 2708,

- 11 -

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

1  held that "[t]he SCA . . . displaces state law claims for conduct that is touched upon by the statute,

2  such as in divulging stored electronic communications to third parties."  445 F. Supp. 2d at 1138.

3  Thus, under the Act, all the state-law claims asserted here are preempted to the extent that they

4  seek to impose liability based on the same conduct that forms the basis for Plaintiff's SCA claim.

5       Although one court did not follow these decisions, instead finding that an analogous

6  provision in the federal Wiretap Act, 18 U.S.C. § 2518(10), did not expressly preempt two claims

7  under the California Penal Code, that case does not control here.  *Valentine v. NebuAd, Inc.*,

8  No. C08-05113-TEH, 2011 WL 1296111, at *6 (N.D. Cal. Apr. 4, 2011) (finding that the Wiretap

9  Act "does not explicitly provide for the preemption of state law, which is the bar that must be met

10  before express preemption may be found").  The express preemption standard used by the

11  *Valentine* court misapplies the Supreme Court language on that issue.  A proper express

12  preemption analysis "begin[s] with the language employed by Congress and the assumption that

13  the ordinary meaning of that language accurately expresses the legislative purpose."  *Morales v.*

14  *Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (quoting *FMC Corp. v. Holliday*, 498 U.S.

15  52, 57 (1990)).  Here, the statute's plain language provides that the SCA provides the ***only***

16  judicial remedies and sanctions for conduct covered by that Act.  Likewise, *In re National*

17  *Security Agency Telecommunications Records Order Litigation* does not defeat preemption in this

18  case because that decision did not even consider a private civil claim at all.  633 F. Supp. 2d 892,

19  905 (N.D. Cal. 2007).

20       In this case, the SCA preempts any state-law claims premised on the same alleged

21  wrongful disclosure—that is, information about search queries contained in the Referrer Header.

22  (FAC ¶¶ 92-93.)  Plaintiff's state-law claims are premised on just this alleged conduct.  For her

23  common law public disclosure of private facts and breach of contract claims, Plaintiff alleges that

24  Google disclosed users' search queries to third parties.  (*Id.* ¶¶ 118, 131.)  Similarly, for her

25  common law claims for fraudulent misrepresentation and negligent misrepresentation, Plaintiff

26  alleges that Google "sent and made available to third parties" users' search queries.  (*Id.* ¶¶ 108,

27  113.)  Finally, Plaintiff's claims for actual and constructive fraud pursuant to California Civil

28  Code §§ 1572 and 1573 are also premised on Google's alleged disclosure of search queries.  (*Id.*

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

¶¶ 125-126.)  Thus, the core of all these state-law claims is Google's purported disclosure of Plaintiff's communications—conduct that supposedly violates the SCA as well.  Because federal law is the exclusive avenue for relief for any claims regarding such conduct, the state-law claims are preempted.  *See, e.g.*, *Bunnell*, 567 F. Supp. 2d at 1154 (holding that 18 U.S.C. § 2518(10) preempted claim under California Privacy Act, Cal. Const. art. I, § 1).  This is true even if Plaintiff is ultimately unable to state a claim under the SCA.  *See id.* (holding that state-law claim was preempted by Wiretap Act despite finding no violation of Act).

B.      Plaintiff Has Failed To Allege Facts Sufficient To Support Her Privacy Claim.

Plaintiff does not state a cause of action for public disclosure of private facts.  To state such a claim, Plaintiff must plead sufficient facts to establish that there was (1) public disclosure, (2) of a private fact, (3) which would be offensive and objectionable to the reasonable person, and (4) which is not of legitimate public concern.  *Shulman v. Grp. W Prods., Inc.*, 18 Cal. 4th 200, 214 (1998).  The absence of any of these elements bars recovery.  *Moreno v. Hanford Sentinel, Inc.*, 172 Cal. App. 4th 1125, 1130 (2009).

It is well-established that "there can be no privacy with respect to a matter which is already public" and that "there is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public or when the further publicity relates to matters which the plaintiff leaves open to the public eye."  *Sipple v. Chronicle Publ'g Co.*, 154 Cal. App. 3d 1040, 1047 (1984).  Besides generalized statements regarding the potential disclosure of unspecified users' "private search queries" (FAC ¶¶ 102, 108, 113, 131) and hypothetical statements regarding information that could be disclosed (*id.* ¶¶ 3, 18), the ***only*** identified "private fact" that was allegedly disclosed is Plaintiff's name.[4]  (*Id.* ¶ 76.)  But for purposes of this tort, an individual's name is not a "private fact."  *Forsher*, 26 Cal. 3d at 812-13 (affirming that plaintiff failed to state a claim for public disclosure of private fact where plaintiff's name was disclosed in book); *Moreno*, 172 Cal. App. 4th at 1130 ("[plaintiff's] last

---

[4] The allegation that Plaintiff searched the names of others, like her family members, does not give her a right of action.  "It is well settled that the right of privacy is purely a personal one; it cannot be asserted by anyone other than the person whose privacy has been invaded."  *Flynn v. Highman*, 149 Cal. App. 3d 677, 683 (1983).

1    name was not a private fact"); *Lorenzo v. United States*, 719 F. Supp. 2d 1208, 1215 (S.D. Cal.

2    2010); *cf. Tecza v. Univ. of S.F.*, No. C 09-03808 RS, 2010 WL 1838778, at *2 (N.D. Cal. May 3,

3    2010) (finding that facts that are readily observable are not private).

4            In addition, Plaintiff's claim fails because it does not sufficiently allege ***public*** disclosure.

5    Plaintiff's bald assertion that Google's conduct constituted a public disclosure (*see* FAC ¶¶ 118-

6    119) is belied by her other allegations.  Indeed, as Plaintiff very clearly articulates, any alleged

7    disclosure of her search terms was discrete—to a single destination website owner, and only when

8    Plaintiff clicked on an individual link on a Google search results page.  (*Id.* ¶ 79.)  Further, as

9    Plaintiff alleges, the links on the Google search results page would only have been to websites

10   whose content actually matched the search terms she entered.  (*Id.* ¶ 12.)  Thus, the only entity to

11   whom Google allegedly disclosed Plaintiff's search query would be a website whose content

12   already matched that query.  This does not constitute "public" disclosure.  The Restatement

13   defines public disclosure as communication to the "public at large, or to so many persons that the

14   matter must be regarded as substantially certain to become one of public knowledge," further

15   noting "it is not an invasion to communicate a fact concerning the plaintiff's private life to a

16   single person or even to a small group of persons."  Restatement (Second) of Torts § 652D cmt. a;

17   *see also Jermy v. Jones*, No. 99-35044, 2000 WL 1685031, at *2 (9th Cir. Nov. 9, 2000) (noting

18   that "publicity" for invasion of privacy purposes is a higher standard than "publication" for

19   defamation purposes, which requires only communication with a third person).  This tort "must

20   be accompanied by publicity in the sense of communication to the public in general or to a large

21   number of persons distinguished from one individual or a few."  *Schwartz v. Thiele*, 242 Cal.

22   App. 2d 799, 805 (1966) (citation omitted).  Here, the requisite allegation of publicity is absent.

23           Additionally, despite a conclusory allegation that search queries "are facts that a

24   reasonable person would not wish disclosed," Plaintiff has failed to allege that the disclosure of

25   her name constitutes the kind of disclosure that would be offensive and objectionable to the

26   reasonable person.  To the contrary, this tort protects against the disclosure of intimate details that

27   would cause mental suffering, shame or humiliation if disclosed.  *See Taus v. Loftus*, 40 Cal. 4th

28   683, 717-18 (2007) (expressing doubt that statements that individual engaged in "destructive

1   behavior" or that individual had served in the Navy constituted disclosures that would be

2   offensive and objectionable to the reasonable person); *Daly v. Viacom, Inc.*, 238 F. Supp. 2d

3   1118, 1125 (N.D. Cal. 2002) (holding that, as a matter of law, disclosure of the fact that plaintiff

4   kissed someone is not offensive or objectionable to the reasonable person).  Plaintiff has not

5   alleged sufficient facts to conclude that she suffered disclosure of information that would be

6   offensive and objectionable to the reasonable person.

7       C.      Plaintiff Has Failed To Allege Facts Sufficient To Support A Claim For Breach Of
                Contract.

8

9           Plaintiff cannot state a claim for breach of contract premised on the conclusory assertion

10   that Google did not follow its Privacy Policy.  To state a claim for breach of contract under

11   California law, a plaintiff must plead "(1) existence of a contract; (2) the plaintiff's performance

12   or excuse for nonperformance; (3) the defendant's breach; and (4) damages to the plaintiff as a

13   result of the breach."  *Mulato v. WMC Mortg. Corp.*, No. C 09-03443-CW, 2010 WL 1532276, at

14   *4 (citing *Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.

15   6 (2004)).  Plaintiff fails to allege facts sufficient to show the first, third, or fourth elements of this

16   cause of action.

17           Plaintiff makes a conclusory legal assertion that "Google's Privacy Policy constitutes a

18   valid and enforceable agreement with Plaintiff."  (FAC ¶ 129.)  This assertion of a legal

19   conclusion is insufficient to meet the pleading standard in *Twombly* and *Iqbal*.  *See also Mulato*,

20   2010 WL 1532276, at *3 (finding insufficient plaintiff's conclusory allegations that "loan

21   documents, Deeds of Trust and related documents" constituted contracts with defendants).  In a

22   very similar case, the court rejected an attempt to state breach-of-contract claim where Plaintiff

23   "allege[d] no facts to support its contention that [Google's AdWords policy] was a contract

24   between Plaintiff and [Google] and not just a general policy statement on [Google's] website."

25   *See Jurin v. Google Inc.*, --- F. Supp. 2d ----, 2011 WL 572300, at *6 (E.D. Cal. Feb. 15, 2011).

26   In *Jurin*, the court held that "[a] broadly stated promise to abide by its own policy does not hold

27   [Google] to a contract."  This case is no different.  Here, as in *Jurin*, a unilateral statement of

28   policy cannot form the basis for a contract claim.  *See Beverage Distribs., Inc. v. Olympia*

- 15 -

1  *Brewing Co.*, 440 F.2d 21, 29 (9th Cir. 1971) (statement of policy does not constitute a contract);

2  *see also Dyer v. Nw. Airlines Corp.*, 334 F. Supp. 2d 1196, 1200 (D.N.D. 2004) (broad statements

3  of company policy do not give rise to contract claims).

4        Plaintiff also fails to identify which provisions of the Privacy Policy Google breached.

5  *See Mulato*, 2010 WL 1532276 at *3 (dismissing action based in part on plaintiff's failure to

6  identify the provisions of the alleged contracts that were breached).  Absent any factual

7  allegations showing a breach, no contract claim exists.  Finally, the harm Plaintiff alleges as to

8  herself—the disclosure of her name in the Referrer Header—does not constitute "damages"

9  sufficient to support a breach of contract claim.  Under California law, Plaintiff must show

10  "actual and appreciable damage" to assert a breach of contract claim.  *Aguilera v. Pirelli*

11  *Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000).  Thus, in *Ruiz*, the court found that

12  the theft of two laptops containing plaintiff's personal information, even if it resulted in an

13  increased risk of identity theft, was insufficient on its own to show the "appreciable and actual

14  damage" required for a breach of contract claim.  622 F. Supp. 2d at 917.  Likewise, Chief Judge

15  Ware recently rejected plaintiffs' attempt to satisfy the "appreciable and actual damages" element

16  of their breach of contract claim based on an allegation that they had "suffered injury" when their

17  personally-identifying information was disclosed in the Referrer Header when they clicked on

18  advertisements from their Facebook accounts.  *See Facebook Order* at 15.  In this case, as in

19  *Facebook*, Plaintiff fails to allege appreciable and actual damage because she does not allege any

20  damages beyond the mere disclosure of search queries to individual webpage owners in the

21  Referrer Header.

22        Because Plaintiff has failed to allege the existence of a contract, the provisions that were

23  breached, or appreciable and actual damage resulting from a breach, her breach of contract claim

24  must be dismissed.

25

26

27

28

D.      Plaintiff's Fraud-Based Claims Fail As A Matter Of Law For Many Reasons

1.      Plaintiff's Claims Do Not Satisfy The Particularity Requirement Of Rule 9(b).

Plaintiff's statutory and common-law fraud claims all fail because they are not pled with the particularity required by Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  "Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).  Plaintiff's FAC contains several alleged representations by Google (*see, e.g.*, FAC ¶¶ 19, 20, 22-25, 49-50, 54, 56-57), but does not specifically identify which of these statements were actually false or misleading, so as to form the basis for Plaintiff's fraud claims.

Further, Plaintiff never alleges that she read or viewed any of these alleged representations, or that she relied on any of these representations before using Google Search. Plaintiff's failure to plead with particularity that she relied on (or even read) Google's alleged misrepresentations or that she incurred any harm or damage as a result is fatal to her claim.  *See, e.g., Facebook Order* at 15 (dismissing fraud claim where plaintiffs "fail[ed] to allege that they relied upon any allegedly fraudulent misrepresentations by Defendant"); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2009) (same); *Mazur v. eBay, Inc.*, No. C 07-03967-MHP, 2008 WL 618998, at *13 (N.D. Cal. Mar. 4, 2008) (dismissing fraud claim where plaintiff failed to allege reliance because "the same level of specificity is required with respect to [pleading] reliance" as with respect to misrepresentations).

At best, Plaintiff alleges that she used Google Search to search her name, and that she clicked through to various search results pages.  (FAC ¶¶ 77-78.)  These allegations are neither connected nor linked to any allegation regarding ***any*** representation made by Google.  Thus, Plaintiff has failed to "set forth ***more*** than the neutral facts necessary to identify the transaction," *Vess*, 317 F.3d at 1106 (citation omitted), and the absence of necessary facts pled with particularity requires dismissal under Rule 9(b).

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

2.   <u>Plaintiff's Common Law Claims For Fraudulent And Negligent Misrepresentation Fail As A Matter Of Law.</u>

Plaintiff has not alleged sufficient facts to state a claim for either fraudulent or negligent misrepresentation under the common law.  Under California law, the elements of fraudulent misrepresentation are (1) misrepresentation of a past or existing material fact; (2) knowledge of falsity; (3) intent to defraud; (4) reasonable reliance; and (5) resulting damage.  *In re Brocade Commc'ns Sys., Inc. Deriv. Litig.*, 615 F. Supp. 2d 1018, 1045 (N.D. Cal. 2009).  Negligent misrepresentation is similar, but for its second element requires a lack of reasonable grounds for believing the represented fact as true, rather than requiring actual knowledge of falsity or an intent to defraud.  *Watts v. Enhanced Recovery Corp.*, No. 10-cv-02606-LHK, 2010 WL 4117452, at *2 (N.D. Cal. Oct. 19, 2010) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs.*, 171 Cal. App. 4th 35, 50 (2009)).  Here, stripping away the conclusory legal assertions, the FAC fails to allege facts sufficient to establish these elements.

First, the alleged misrepresentation Plaintiff puts forth is not supported by the facts she alleges.  Plaintiff suggests that Google "represented in its Privacy Policy and elsewhere that it would not make users' personal information and search queries available ***to any third party***" (FAC ¶¶ 106, 112 (emphasis added)).  Not only does Plaintiff fail to identify any such representation in the FAC, Plaintiff herself points to language in Google's Privacy Policy identifying circumstances in which Google ***would*** share personal information (*id.* ¶ 20) and search queries (*id.* ¶ 22) with third parties.  Further, Google's Privacy FAQ, cited multiple times by Plaintiff (*see id.* ¶¶ 21-22) explains that the search results page URL contains the search query.  (Niehaus Decl., Ex. 2 at 5.)  *See also Abels v. Bank of Am.*, No. C 11-0208-PJH, 2011 WL 1362074, at *1 (N.D. Cal. Apr. 11, 2011) (dismissing fraudulent misrepresentation claim where plaintiff neither alleged the particular misrepresentation or false statements made, nor alleged what was false or misleading about the statement, or why it was false).

Second, as discussed with respect to the statutory fraud claims below, Plaintiff has not alleged facts establishing any reliance.  She fails to allege that she personally read Google's Privacy Policy or any other representation by Google—a necessary precursor to any possible

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

1    reliance on them.  Such a failure to plead facts showing actual and justifiable reliance requires

2    that a claim for fraudulent or negligent misrepresentation must be dismissed.  *See Facebook*

3    *Order* at 15-16 (dismissing plaintiffs' claims under §§ 1572 and 1573 for failure to allege reliance

4    upon any allegedly fraudulent misrepresentations); *Shroyer v. New Cingular Wireless Servs., Inc.*,

5    622 F.3d 1035, 1043 (9th Cir. 2010) (affirming district court's dismissal of fraud claim where

6    plaintiff failed to allege actual or justifiable reliance); 2010 WL 4117452, at *2.

7        Third, Plaintiff has not alleged any actual damage resulting from the alleged

8    misrepresentations.  Plaintiff makes the conclusory assertion that the harm she and the putative

9    class have suffered is "the disclosure of their sensitive personal information."  (FAC ¶¶ 110, 116.)

10   As discussed in Sections I.A and I.B above, the mere disclosure of search queries does not

11   constitute damage.  Moreover, Plaintiff fails to explain how the alleged disclosure of her name—

12   the only disclosure she alleges as to herself—actually caused her any damage.  *Cf. Ruiz*, 622 F.

13   Supp. 2d at 913-14 (finding misappropriation of personal information and increased risk of future

14   identity theft were insufficient damages to support California tort claims).

15       Because Plaintiff fails to allege facts sufficient to support her claims for fraudulent or

16   negligent misrepresentation, both claims should be dismissed.

17       3.    Plaintiff's Claim For Actual Fraud Under Section 1572 Fails Because She
             Fails To Allege Facts Demonstrating The Existence Of A Contract.
18

19       Plaintiff's claim for actual fraud under Civil Code Section 1572 fails because she has not

20   adequately alleged the existence of a contract, which is necessary to maintain such a claim.  A

21   claim for actual fraud requires (1) representation; (2) falsity; (3) knowledge of falsity; (4) intent to

22   deceive; and (5) reliance and resulting damage.  *Warren v. Merrill*, 143 Cal. App. 4th 96, 110

23   (2006).  Importantly, Section 1572 applies only to fraud "committed by a party to the ***contract*** . . .

24   with the intent to deceive another party thereto, or to induce him to enter into the contract."  Cal.

25   Civ. Code § 1572 (emphasis added); *see also Wilkins v. Nat'l Broad. Co.*, 71 Cal. App. 4th 1066,

26   1083-84 (1999) (Section 1572 limited to acts committed by party to a contract); *Masters v. San*

27   *Bernardino Cnty. Emps. Ret. Ass'n*, 32 Cal. App. 4th 30, 41 (1995) (same); *Hashimoto v. Clark*,

28   264 B.R. 585, 597 (D. Ariz. 2001) (applying California law) (same).  Thus, "[t]o establish fraud

- 19 -

1   under § 1572, the promisor and promisee must both be parties to a contract." *Beijing Tong Ren*

2   *Tang (USA), Corp. v. TRT USA Corp.*, No. C-09-00882 RMW, 2010 WL 890048, at *2 (N.D.

3   Cal. Mar. 8, 2010).

4        Plaintiff alleges that the Google Privacy Policy "constitutes a valid and enforceable

5   agreement."  (FAC ¶ 124.)  However, as outlined in Section II.C, above, Plaintiff has not alleged

6   facts sufficient to show that the Google Privacy Policy constitutes a contract, and therefore she

7   has failed to state a claim under Section 1572.

8        Furthermore, as outlined in Sections II.D.1 and II.D.2 above, Plaintiff fails to allege that

9   she actually relied on any representation by Google.  Plaintiff cannot rely on an inference of

10  reliance; rather, "a class representative proceeding on a claim of misrepresentation as the basis of

11  his or her . . . action must demonstrate ***actual reliance*** on the allegedly deceptive or misleading

12  statements, in accordance with well-settled principles regarding the element of reliance in

13  ordinary fraud actions."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (emphasis added).

14       Therefore, Plaintiff's claim for actual fraud must be dismissed.

15           4.   <u>Plaintiff's Constructive Fraud Claim Under Section 1573 Fails Because</u>
<u>She Fails To Allege A Confidential Or Fiduciary Relationship With</u>
16              <u>Google.</u>

17       Plaintiff's limited factual allegations do not satisfy the elements of constructive fraud

18  under Section 1573.  Constructive fraud "arises on a breach of duty by one in a confidential or

19  fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice."

20  *Patriot Scientific Corp. v. Korodi*, 504 F. Supp. 2d 952, 966 (S.D. Cal. 2007) (quoting *Tyler v.*

21  *Children's Home Soc'y*, 29 Cal. App. 4th 511, 548 (1994)); *see also C.A. v. William S. Hart*

22  *Union High Sch. Dist.*, 189 Cal. App. 4th 1166, 1176 (2010) ("Constructive fraud is a unique

23  species of fraud applicable only to a fiduciary or confidential relationship.") (citation omitted).

24       As a matter of law, Plaintiff does not and cannot allege facts to show that Google and

25  Plaintiff somehow have a fiduciary relationship.  Inherent in a fiduciary relationship is the duty of

26  loyalty the fiduciary owes to its beneficiary, imposing on the fiduciary obligations far more

27  stringent than those required of ordinary contractors.  *Wolf v. Superior Court*, 107 Cal. App. 4th

28  25, 30 (2003) (listing examples of fiduciary relationships in the commercial context, such as

1   trustee/beneficiary, business partners, joint venturers, directors and majority shareholders); *see*

2   *also Berryman*, 152 Cal. App. 4th at 1558 (a commercial relationship alone does not give rise to

3   fiduciary relationship).  Likewise, Plaintiff has not alleged facts that show the existence of a

4   "confidential relationship" recognized under the law.  *See, e.g.*, *Tyler*, 29 Cal. App. 4th at 549 ("A

5   confidential relation exists between two ***persons*** when one has gained the confidence of the other

6   and purports to act or advise with the other's interest in mind." (emphasis added)).  Google did

7   not create a confidential relationship with Plaintiff—or the millions of other Google Search

8   users—when it processed her search queries, and Plaintiff puts forth no facts to the contrary in her

9   FAC.

10        Because Plaintiff and Google do not have a fiduciary or confidential relationship,

11   Plaintiff's claim for constructive fraud must be dismissed.

12        E.        Plaintiff Cannot State A Claim For Unjust Enrichment.

13        Plaintiff's unjust enrichment claim fails because there is no distinct cause of action for

14   unjust enrichment under California law.  *See Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th

15   1117, 1138 (2010) ("[T]here is no cause of action in California for unjust enrichment."); *Jogani v.*

16   *Superior Court*, 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment is not a cause of

17   action."); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006) (same); *Melchior v.*

18   *New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003) (same).  "Unjust enrichment is not a

19   cause of action . . . or even a remedy, but rather a general principle, underlying various legal

20   doctrines and remedies."  *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (quoting

21   *Melchior*, 106 Cal. App. 4th at 793).  Plaintiff's claim for unjust enrichment therefore is not

22   viable under California law.

23        Furthermore, Plaintiff has failed to properly plead an entitlement to restitution based on

24   the allegation that Google has been "unjustly enriched."  "Under the law of restitution, '[a]n

25   individual is required to make restitution if he or she is unjustly enriched ***at the expense of***

26   ***another***."  *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010) (emphasis added)

27   (internal citations omitted).  Plaintiff does not—and cannot—allege that any "benefit" was

28   conferred upon Google at ***any expense*** to Plaintiff.  Plaintiff's conclusory allegation that Google

GOOGLE INC.'S MOTION TO DISMISS
5:10-CV-04809-EJD

1    "received and retained valuable information belonging to Plaintiff" (FAC ¶ 134) is empty of

2    facts—Plaintiff has not identified this information or alleged that Plaintiff lost any value in it.

3    Therefore, Plaintiff has failed to establish entitlement to restitution, and her unjust enrichment

4    claim cannot be saved by viewing it as a mis-pled claim for restitution.

5    **<u>CONCLUSION</u>**

6        Google respectfully requests that the Court dismiss each cause of action in Plaintiff's First

7    Amended Complaint with prejudice.

8       Dated:   May 16, 2011            O'MELVENY & MYERS LLP

9                                     By:____/s/ *Randall W. Edwards*_____

10                                        Randall W. Edwards
                                             Attorneys for Defendant Google Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28