1  RANDALL W. EDWARDS (S.B. #179053)
   redwards@omm.com
2  JEAN B. NIEHAUS (S.B. #254891)
   jniehaus@omm.com
3  O'MELVENY & MYERS LLP
   Two Embarcadero Center, 28th Floor
4  San Francisco, California  94111-3823
   Telephone:    (415) 984-8700
5  Facsimile:    (415) 984-8701

6  Attorneys for Defendant
   Google Inc.
7

8            UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                SAN JOSE DIVISION

11

12  PALOMA GAOS and ANTHONY              Case No. 5:10-CV-04809-EJD
    ITALIANO, individually and on behalf of all
13  others similarly situated,           **GOOGLE INC.'S MOTION TO
                                         DISMISS PLAINTIFFS' SECOND
14                  Plaintiffs,          AMENDED COMPLAINT PURSUANT
                                         TO RULES 12(b)(1) AND 12(b)(6);
15         v.                            MEMORANDUM OF POINTS AND
                                         AUTHORITIES**
16  GOOGLE INC., a Delaware Corporation,
                                         Hearing Date:   September 21, 2012
17                  Defendant.           Time:           9:00 a.m.
                                         Place:          Courtroom 1, 5th Floor
18                                       Judge:          Hon. Edward J. Davila

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

    I.      INTRODUCTION .............................................................................................. 2

    II.    FACTUAL ALLEGATIONS ............................................................................ 3

          A.     Google Search ........................................................................................ 4

          B.     Ruling on Plaintiffs' Deficient Allegations of Injury in the FAC ......................................................................................................... 5

          C.     Plaintiffs' Amended Personalized Allegations ............................................ 5

    III.   ARGUMENT ..................................................................................................... 6

          A.     The Court Should Dismiss Plaintiffs' State-Law Claims Because They Lack Standing Under Article III of the United States Constitution ................................................................................ 6

                 1.     Plaintiffs Still Do Not Allege Facts Establishing Actual Injury ....................................................................... 7

                 2.     Plaintiffs Still Fail to Allege Facts to Establish Imminent Harm ....................................................................... 8

                 3.     Plaintiffs Also Fail to Establish Standing for Their SCA Claim ......................................................................... 10

          B.     The Court Should Dismiss Plaintiffs' State-Law Claims Because They Fail to State a Claim Under Those Causes of Action ...................................................................................................... 11

                 1.     Plaintiffs' State-Law Claims Are Preempted by the Stored Communications Act ..................................................... 11

                 2.     Plaintiffs Have Failed to Allege Facts to Support a Claim for Breach of Contract ..................................................... 13

                       a.     Plaintiffs Do Not Allege Any Damages from a Breach ................................................................ 13

                       b.     Plaintiffs Have Not Alleged Facts Showing the Breach of Any Contractual Obligations .................................................................. 14

                 3.     The Complaint Fails to State a Claim Under the UCL .................................................................................... 15

                       a.     Plaintiffs Lack Standing Under the UCL Because They Fail to Allege the Requisite Injury ............................................................................ 16

**TABLE OF CONTENTS**
**(continued)**

**Page**

b.   Plaintiffs Fail to Allege Reliance ................................. 16

c.   Plaintiffs' UCL Claim Also Fails Because the Alleged Disclosure of Information Does Not Constitute "Unlawful," "Unfair," or Fraudulent Business Practices.................. 17

4.   Plaintiffs Cannot State a Claim for Unjust Enrichment ..................................................................... 19

IV.   CONCLUSION ................................................................. 20

## TABLE OF AUTHORITIES

Page

### CASES

*Aguilera v. Pirelli Armstrong Tire Corp.*,
   223 F.3d 1010 (9th Cir. 2000) ......................................................................................... 13

*Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co.*,
   116 Cal. App. 4th 1375 (2004) ........................................................................................ 13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................................................................... 14

*Barnes & Noble, Inc. v. LSI Corp.*,
   --- F. Supp. 2d ---, 2012 WL 359713 (N.D. Cal. Feb. 2, 2012) ...................................... 19

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................................................... 14

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) .............................................................................................. 8

*Bunnell v. Motion Picture Ass'n of Am.*,
   567 F. Supp. 2d 1148 (C.D. Cal. 2007) ............................................................................ 12

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ...................................................................................................... 17

*Charles Schwab & Co. v. Bank of Am.*,
   No. C-10-4913-JL, 2011 WL 1753805 (N.D. Cal. May 9, 2011)...................................... 19

*Cherny v. Emigrant Bank*,
   604 F. Supp. 2d 605 (S.D.N.Y. 2009) ................................................................................ 8

*City of Ontario, Cal. v. Quon*,
   130 S. Ct. 2619 (2010) ...................................................................................................... 12

*Delacruz v. Cytosport, Inc.*,
   2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) .................................................................. 18

*Denney v. Deutshe Bank AG*,
   443 F.3d 253 (2d Cir. 2006).............................................................................................. 10

*Doe I v. AOL LLC*,
   719 F. Supp. 2d 1102 (N.D. Cal. 2010) ............................................................................ 10

*Drum v. San Fernando Valley Bar Ass'n*,
   182 Cal. App. 4th 247 (2010) .......................................................................................... 18

*Edwards v. First Am. Corp.*,
   610 F.3d 514 (9th Cir. 2010)............................................................................................... 3

*First Am. Fin. Corp. v. Edwards*,
   SC Case No. 10-708............................................................................................................ 10

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Fortaleza v. PNC Fin. Servs. Grp., Inc.*,
   642 F. Supp. 2d 1012 (N.D. Cal. 2009) ........................................................ 18

*Hartman v. Summers*,
   120 F.3d 157 (9th Cir. 1997)...................................................................... 8

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ................................................................. 19

*In re Apple In-App Purchase Litig.*,
   --- F. Supp. 2d ---, 2012 WL 1123548 (N.D. Cal. Mar. 31, 2012) .................... 18, 20

*In re Facebook Privacy Litig.*,
   791 F. Supp. 2d 705 (N.D. Cal. 2011) ......................................... 13, 14, 16, 20

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
   794 F. Supp. 2d 1067 (N.D. Cal. 2011) ...................................................... 13

*In re iPhone Application Litig.*,
   No. 5:11-md-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ............... 8

*In re Nat'l Sec. Agency Telecomms. Records Litig.*,
   633 F. Supp. 2d 892 (N.D. Cal. 2007) ........................................................ 13

*In re Tobacco Cases*,
   46 Cal. 4th 298 (2009) ........................................................................... 16

*In re Zynga Privacy Litig.*,
   No. C 10-04680, 2011 WL 7479170 (JWW) (N.D. Cal. June 15, 2011)................. 13

*Jogani v. Superior Court*,
   165 Cal. App. 4th 901 (2008) .................................................................. 19

*Krottner v. Starbucks Corp.*,
   628 F.3d 1139 (9th Cir. 2010)................................................................... 10

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ........................................................................... 16

*LaCourt v. Specific Media, Inc.*,
   No. SACV 10-1256-GW (JCGx), 2011 WL 1661532 (C.D. Cal. Apr. 28, 2011).......... 8

*Laster v. T-Mobile USA, Inc.*,
   407 F. Supp. 2d 1181 (S.D. Cal. 2005) ....................................................... 17

*Leong v. Carrier IQ Inc.*,
   No. CV 12-01562, 2012 WL 1463313 (C.D. Cal. Apr. 27, 2012)......................... 13

*Levine v. Blue Shield of Cal.*,
   189 Cal. App. 4th 1117 (2010) ................................................................. 19

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................ 7

**TABLE OF AUTHORITIES**
(continued)

Page

*McKell v. Wash. Mut., Inc.*,
142 Cal. App. 4th 1457 (2006) ........................................................................................... 19

*Melchior v. New Line Prods., Inc.*,
106 Cal. App. 4th 779 (2003) ............................................................................................. 19

*Mulato v. WMC Mortg. Corp.*,
No. C 09-03443-CW, 2010 WL 1532276 (N.D. Cal. 2010) ......................................... 13, 14

*Quon v. Arch Wireless Operating Co.*,
445 F. Supp. 2d 1116 (C.D. Cal. 2006), *rev'd on other grounds*, 529 F.3d 892
(9th Cir. 2008), *rev'd on other grounds*, *City of Ontario, Cal. v. Quon*, 130 S.
Ct. 2619 (2010) ..................................................................................................................... 12

*Quon v. Arch Wireless Operating Co.*,
529 F.3d 892 (9th Cir. 2008) .............................................................................................. 12

*Raines v. Byrd*,
521 U.S. 811 (1997) ............................................................................................................. 11

*Ruiz v. Gap, Inc.*,
622 F. Supp. 2d 908 (N.D. Cal. 2009) ............................................................................... 14

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................................... 10

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
279 F.3d 817 (9th Cir. 2002) ................................................................................................ 8

*Silvas v. E*Trade Mortg. Corp.*,
514 F.3d 1001 (9th Cir. 2008) ............................................................................................ 12

*Smith v. Ford Motor Co.*,
No. 10-17321, 2011 WL 6322200 (9th Cir. Dec. 19, 2011) ......................................... 18, 19

*Stearns v. Select Comfort Retail Corp.*,
No. 08-2749 JF, 2009 WL 1635931 (N.D. Cal. June 5, 2009) ........................................... 17

*Suzlon Energy Ltd. v. Microsoft Corp.*,
671 F.3d 726 (9th Cir. 2011) .............................................................................................. 13

*Thompson v. Home Depot, Inc.*,
No. 07-cv-1058 IEG (WMC), 2007 WL 2746603 (S.D. Cal. Sept. 18, 2007) ................... 16

*Valentine v. NebuAd, Inc.*,
804 F. Supp. 2d 1022 (N.D. Cal. 2011) ............................................................................. 13

*Van Slyke v. Capital One Bank*,
No. C 07-00671 WHA, 2007 WL 3343943 (N.D. Cal. Nov. 7, 2007) ................................ 17

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ............................................................................................ 18

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Vt. Agency of Natural Res. v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) ................................................................................................. 7

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) ................................................................................................. 7

*Wozniak v. Align Tech., Inc.*,
  --- F. Supp. 2d ---, 2012 WL 368366 (N.D. Cal. Feb. 3, 2012) ........................... 19

**<u>STATUTES</u>**

11 U.S.C. § 107(a) ......................................................................................................... 9

18 U.S.C. § 2518(10) ................................................................................................... 12

18 U.S.C. § 2701 *et seq.* .............................................................................................. 11

18 U.S.C. § 2708 ........................................................................................... 11, 12, 17

Cal. Bus. & Prof. Code § 17200 ................................................................................. 16

Cal. Bus. & Prof. Code § 17204 ................................................................................. 16

Fla. Stat. § 119.01 ......................................................................................................... 9

Fla. Stat. § 28.2221 ....................................................................................................... 9

Fla. Stat. § 695.22 ......................................................................................................... 9

Fla. Stat. § 695.26 ......................................................................................................... 9

Fla. Stat. § 702.01 ......................................................................................................... 9

Fla. Stat. § 702.02 ......................................................................................................... 9

Fla. Stat. § 702.03 ......................................................................................................... 9

Fla. Stat. § 741.09 ......................................................................................................... 9

**<u>OTHER AUTHORITIES</u>**

*Oxford English Dictionary* (2012 ed.) ....................................................................... 15

**<u>RULES</u>**

Fed. R. Civ. P. 12(b)(1) ................................................................................................. 1

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1

Fed. R. Civ. P. 23(c)(3) ............................................................................................... 10

Fed. R. Civ. P. 9(b) ..................................................................................................... 18

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

**TABLE OF AUTHORITIES**
(continued)

Page

Fla. R. Jud. Admin. 2.420(a) ................................................................................. 9

**CONSTITUTIONAL PROVISIONS**

Fla. Const. art. I, § 24 .......................................................................................... 9

U.S. Const. art. III ........................................................................................ passim

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 21, 2012, at 9:00 a.m., or as soon thereafter as this motion may be heard in the above-entitled court located at 280 South First Street, San Jose, California, in Courtroom 1, Defendant Google Inc. will, and hereby does, move to dismiss the Second Amended Complaint filed by Plaintiffs Paloma Gaos and Anthony Italiano. Google's Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declaration of Randall W. Edwards and the attached exhibits, and such other arguments and matters as may properly come before the Court.

Google seeks an order, pursuant to Federal Rule of Civil Procedure 12(b)(1), dismissing Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction. Google also seeks an order dismissing the Second Amended Complaint's three state-law causes of action for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

In their third attempt, Plaintiffs have once again failed to allege facts establishing any cognizable injury, as required by Article III of the United States Constitution.  In its March 29, 2012 Order, the Court ruled that Paloma Gaos—at the time the only plaintiff in this action— failed to allege either actual or imminent concrete injury from disclosure of search queries as part of the Referrer Header.  The Court therefore dismissed each of Ms. Gaos's state-law claims, although it granted leave to amend to provide another opportunity to attempt to identify any cognizable injury.  Plaintiffs' Second Amended Complaint ("SAC") does not include any new allegations regarding Ms. Gaos.  Instead, it attempts to address the standing deficiency by adding a second plaintiff, Anthony Italiano, who alleges that he submitted several search queries to Google that contained his name in combination with his address or words like "forensic accounting."  Even with these additional allegations, the SAC repeats the same inadequate and conclusory assertions of unspecified harm.  Dismissal remains appropriate for the same reasons that doomed their state-law claims in First Amended Complaint ("FAC").

Plaintiffs did not cure the problems with the prior complaint by alleging that Mr. Italiano searched his name in conjunction with the following terms:  his home address, "bankruptcy," "foreclosure proceedings," "short sale proceedings," "Facebook," the name of his ex-wife, and "forensic accounting."  (*See* SAC ¶¶ 92.a-f.)  The new allegations lack any facts showing that Mr. Italiano suffered any economic loss or other actual harm of any kind as a result of the Referrer Header being transmitted to the destination web pages that he visited from the Google Search result page.  Moreover, the supposedly "private" facts in his search queries almost always reflect information in the public domain.  His address and Facebook page, and any formal bankruptcy and foreclosure proceedings, are publicly available.  Marriages and divorces also are a matter of public record.  And it is not clear that linking his name to the term "forensic accounting," without more, discloses any private fact.  In addition, Mr. Italiano never alleges a single instance where he entered a search term that, if disclosed to a third party, would reveal to the third party that Mr. Italiano was the one who ran the search.  While the SAC again includes allegations about

2

"The Science of Reidentification" (*id.* ¶¶ 68-74), the Court already rejected this flawed theory of imminent harm in the prior complaints.  In sum, Plaintiffs still fail to allege any facts establishing cognizable injury under Article III.  The Court therefore should dismiss the state-law claims with prejudice.

Plaintiffs also plead no facts showing injury in fact sufficient to support their Stored Communications Act ("SCA") claim.  In its March 29, 2012 Order, the Court followed the Ninth Circuit decision in *Edwards v. First American Corp.*[1] to find standing based on the allegation that Plaintiff's statutory rights were invaded.  (*See* 3/29/2012 Order at 4.)  The United States Supreme Court is reviewing the *Edwards* case, and a ruling is expected by late June 2012.  Should the Supreme Court reverse the *Edwards* decision, the Court should dismiss Plaintiffs' SCA claim based on the same lack of standing as for the state-law claims.

Even apart from their fatal standing deficiencies, the Court also should dismiss Plaintiffs' state-law claims because they are preempted by federal law.  Moreover, the Court also should dismiss the state-law claims because they fail to state a claim under those causes of action.  Plaintiffs' breach of contract claim fails because Plaintiffs do not identify any contractual term allegedly breached by Google, nor do they allege any facts showing "appreciable and actual damages" that resulted from that breach.  Plaintiffs' Unfair Competition Law ("UCL") claim— which they withdrew from the Complaint and did not renew in the FAC—fails, because Google's conduct was not unlawful, fraudulent or unfair.  Plaintiffs also assert a claim for unjust enrichment while simultaneously alleging the existence of a valid contract, which California law does not permit.  Given these failures, the state-law claims in the SAC should be dismissed with prejudice.[2]

## II.     FACTUAL ALLEGATIONS[3]

The core allegations in the SAC remain the same as those in the FAC, except now

---

[1] 610 F.3d 514, 517 (9th Cir. 2010).

[2] Google also believes that Plaintiffs' SCA claim suffers from multiple deficiencies.  But Google believes those deficiencies are more appropriately addressed in a later motion.

[3] The Factual Allegations are based on the allegations in the Second Amended Complaint, which Google does not challenge in this motion, but which Google does not thereby admit.

1   Mr. Italiano, and not Ms. Gaos, brings the state-law claims.  The SAC contains no new factual

2   allegations showing any actual or imminent harm either to him or to Ms. Gaos.

3   **A.      Google Search**

4       Google operates a free Internet search engine, with over one billion user-generated search

5   requests every day.  (SAC ¶¶ 2, 14-15.)  To use Google Search, users enter search terms into the

6   search box and then submit the search request to Google by hitting the Enter key on the keyboard

7   or clicking the Google Search button.  (*Id.* ¶ 14.)  Google Search uses its advanced technology to

8   match users' search terms to websites containing those terms, and within a fraction of a second

9   returns a list of those matching websites to the user in a new web page, referred to as "the search

10  results page."  (*See id.* ¶¶ 14, 42-43.)  The URL of each search results page includes information

11  about the search query used to generate that web page.  (*Id.* ¶¶ 42-43.)  Users then can go to the

12  desired web page by clicking one of the links provided on the search results page, which will

13  redirect the user to the desired destination web page.  (*Id.* ¶ 14.)  In the normal course of

14  operation, the user's web browser (*e.g.*, Internet Explorer) transmits what is known as Referrer

15  Header information to the operator of every destination webpage the user visits.  (*See id.* ¶¶ 39,

16  43.)  The SAC concedes that the transmission of Referrer Header information is a standard and

17  default web browser function.  (*Id.* ¶ 39.)  The Referrer Header information includes the URL of

18  the web page the user last visited and by doing so informs the requested website how the user got

19  to the page.  (*Id.*)  Additionally, the user's web browser transmits the user's IP address (*see id.*

20  ¶ 80), which may be static or changing (dynamic) and does not specify the user's name.

21      As is plainly disclosed in Google's Privacy Policy and its support web pages, Google

22  analyzes and uses search queries in a variety of ways.  Google's Privacy Policy sets forth the

23  types of information collected by Google and the security, use, and sharing of that information.

24  (Declaration of Randall W. Edwards in Support of Motion to Dismiss ("Edwards Decl."), Ex. 1.)[4]

---

[4] Google recently adopted a new privacy policy (*see* SAC ¶ 26), and for simplicity the references
contained in this motion are to that operative policy.  The relevant terms and information
referenced and described herein, however, apply with equal force to the October 3, 2010 Privacy
Policy, which the Plaintiffs cite in paragraph 25 of the SAC and which is attached hereto as
Exhibit 4 to the Edwards Declaration.  Google's earlier Privacy Policy FAQs—which previously
contained the Google Key Terms now contained in a stand-alone page—are also attached as
Exhibit 5 to the Edwards Declaration.  *See also* Decl. of Jean B. Niehaus in Supp. of Google

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

Search queries are not "Personal Information" as defined by Google's Privacy Policy and its Key Terms.  (*See id.*, Ex. 1 at 2; Ex. 2 at 1.)  Rather, the term "Personal Information" in that context is the type of information provided to Google that "personally identifies you."  (*Id.*, Ex. 2 at 1.) Even a search term that contains a name or other information about a person may have been entered by a different person, and Google Search does not identify in the Referrer Header who conducted the search.  Moreover, as expressly stated by Google's Privacy FAQs, search terms, unlike "Personal Information," may be used by Google in a variety of ways.  (*Id.*, Ex. 3 at  2-3.) The Google Privacy Key Terms expressly disclose that the search results page URL contains the search query.  (*Id.*, Ex. 2 at 2-3.)

**B.      Ruling on Plaintiffs' Deficient Allegations of Injury in the FAC**

The SAC simply repeats Plaintiffs' prior conclusory allegations that Google disclosed their "private search queries."  (*Compare* SAC ¶¶ 119, 125, 134, 137 *with* FAC ¶¶ 101, 108, 113, 131, 134.)  The FAC did not plead economic loss or imminent injury.  It also did not make any factual allegation that any third party used Ms. Gaos's information in any way to her detriment. Rather, the FAC simply alleged that the harm was the fact of dissemination of her "sometimes" personal search queries.  (FAC ¶ 80.)  In dismissing that harm as insufficient under Article III to establish cognizable injury for Plaintiffs' state-law claims, the Court held that it was insufficient to allege injury for non-statutory causes of action based on alleged dissemination of search terms alone.  (3/29/12 Order at 4.)  The Court did not reach Google's other challenges to the state-law claims, because they were moot in light of the dismissal for lack of standing.  (*Id.* at 4 n.1.)

**C.      Plaintiffs' Amended Personalized Allegations**

In an attempt to cure the defect identified by the Court, the SAC adds Mr. Italiano as a second plaintiff and includes allegations concerning several of his purportedly "private" searches. Whereas Ms. Gaos alleged only searches of her name and her family members' names, Mr. Italiano alleges that he searched his name plus each of these terms:  his home address, "bankruptcy," "foreclosure proceedings," "short sale proceedings," "Facebook," the name of his

---

Inc.'s Mot. to Dismiss Pl.'s Compl. Pursuant to Rules 12(b)(1) and 12(b)(6), filed in this action on Feb. 10, 2011, and available at ECF No. 20.

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1   ex-wife, and "forensic accounting." (*See* SAC ¶¶ 86, 92.a-f.)  But like Ms. Gaos, Mr. Italiano

2   includes no factual allegation that Google disclosed to any of the destination web pages that he

3   was the searcher.  He does not allege that he was even logged into his Google account when he

4   conducted the searches, or that Google was aware of his identity.  At most, both Plaintiffs allege

5   that, through the "Science of Reidentification," presently unknown third parties in the future

6   "could" cause harm to an individual after "link[ing] at least one fact" to that individual.  (*See*

7   SAC ¶ 74.)  But Plaintiffs do not allege that any third-party website ever used their unspecified

8   "private information" to gather any personally identifiable information specific to Plaintiffs.  And

9   they do not allege that they suffered any loss or other actionable harm from any such use.

10      Nonetheless, the SAC repeatedly asserts that Plaintiffs have "suffered damages,"

11   "suffered injury," and "suffered injury in fact," as a result.  (*See* SAC ¶¶ 119, 126, 134.)  The

12   alleged harm in the SAC is identical—word for word—with the alleged harm found insufficient

13   in the FAC:  that Plaintiffs suffered "harm in the form of Google's unauthorized and unlawful

14   dissemination of Ms. Gaos's [or Mr. Italiano's] search queries, which sometimes contained

15   sensitive personal information, to third parties." (*Compare* SAC ¶¶ 88, 96 *with* FAC ¶ 80.)  Thus,

16   under the Court's prior ruling, Plaintiffs still "do[] not identify what injury resulted from this

17   dissemination." (3/29/12 Order (discussing FAC).)

18      Furthermore, Plaintiffs did not add any allegations that they ever read any of Google's

19   Terms of Service or privacy disclosures, including the Privacy Policy, or that they personally

20   relied on any of those disclosures in their decisions to use Google Search.

21   **III.    ARGUMENT**

22          **A.    The Court Should Dismiss Plaintiffs' State-Law Claims Because They Lack
              Standing Under Article III of the United States Constitution**

23

24      The Court dismissed the state-law claims in the FAC because Plaintiff "did not allege[]

25   injury sufficient for Article III standing." (3/29/12 Order at 4.)  Plaintiffs' SAC again fails to

26   allege facts showing sufficient injury in fact to confer standing under Article III.  Regarding their

27   state-law claims, Plaintiffs have not cured the two separate deficiencies identified by the Court:

28   (1) Plaintiff did not identify any actual injury resulting from the alleged disclosure; and

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1   (2) Plaintiff did not plead facts sufficient to show that the alleged disclosure resulted in imminent

2   harm.  (*Id.*)  Google further submits that, because Plaintiffs have not alleged any injury in fact,

3   they also should be deemed to lack standing to bring their federal SCA claim.

**1.      Plaintiffs Still Do Not Allege Facts Establishing Actual Injury**

5           Standing under Article III of the U.S. Constitution requires that a plaintiff allege a

6   concrete and particularized injury to himself or herself.  *E.g.*, *Lujan v. Defenders of Wildlife*, 504

7   U.S. 555, 560-61 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a

8   personal and individual way.").  The "injury in fact" element requires plaintiffs to allege "a harm

9   that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.'"  *Vt. Agency of*

10  *Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quoting *Whitmore v.*

11  *Arkansas*, 495 U.S. 149, 155 (1990)).  Like the prior deficient versions of the complaint, the SAC

12  does nothing to identify any actual harm caused by Google's alleged practices.  The Court should

13  again find no facts alleged establish actual injury.

14          Plaintiffs did not add any allegations with respect to Ms. Gaos to overcome the Court's

15  conclusion that she has suffered no actual injury.  The only new factual allegations added to the

16  SAC concern the search terms Mr. Italiano submitted to Google in conjunction with his name:

17  his home address, "bankruptcy," "foreclosure proceedings," "short sale proceedings,"

18  "Facebook," the name of his ex-wife, and "forensic accounting."  (SAC ¶¶ 92.a-f.)  Plaintiffs

19  presumably added Mr. Italiano and his allegations to make the searches appear at least a little bit

20  more sensitive than those searches that Ms. Gaos allegedly ran for her name and her family

21  members' names.

22          But that approach misses the crux of the Article III standing analysis and the Court's

23  March 29, 2012 Order.  As a threshold matter, Plaintiffs have made no factual allegations to show

24  that Mr. Italiano's search terms have been linked to his performing the search.  Anyone could

25  have typed in a search with another person's name.  More fundamentally, Mr. Italiano does not

26  allege any facts showing he suffered actual harm resulting from the inclusion of his search queries

27  as part of the Referrer Header sent to the destination web pages he selected from Google's search

28  result list.  He does not allege any physical injury.  He does not allege any economic loss.  He

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1   does not allege any facts showing any other compensable loss.  To the contrary, the SAC merely

2   asserts the conclusion that he "suffered injury" as a result of Google's purported disclosure.

3   (SAC ¶¶ 96, 126, 134.)

4         As the Court already has held, the bare allegation that Google disclosed Plaintiffs'

5   purported personal information does not constitute an injury sufficient to confer Article III

6   standing based on actual injury.  The SAC does not even try to add new factual allegations of

7   actual injury Mr. Italiano (or anyone else) experienced.  Thus, Plaintiffs still have not

8   "identif[ied] what injury resulted from this dissemination," which the Court recognized was

9   required in order to satisfy Article III.  (3/29/12 Order at 4.)  The Court joined other courts in

10  dismissing state-law claims based on this failing.  (*See* 3/29/2012 Order at 4); *see also In re*

11  *iPhone Application Litig.*, No. 5:11-md-02250-LHK, 2011 WL 4403963, at *6 (N.D. Cal.

12  Sept. 20, 2011) (dismissing claims under Article III because no harm resulted from alleged

13  collection and tracking of plaintiffs' personal information); *LaCourt v. Specific Media, Inc.*, No.

14  SACV 10-1256-GW (JCGx), 2011 WL 1661532, at *4-5 (C.D. Cal. Apr. 28, 2011) (dismissing

15  claims under Article III because no injury resulted from alleged sharing of personally identifiable

16  information obtained using Adobe Flash LSOs); *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605,

17  608-09 (S.D.N.Y. 2009) (release of e-mail address does not constitute injury sufficient to state

18  claim).  Dismissal of Plaintiffs' state-law claims is again warranted on the same basis.

19              **2.      Plaintiffs Still Fail to Allege Facts to Establish Imminent Harm**

20        The new allegations about Mr. Italiano's search terms also fail to establish standing based

21  on a concrete risk of imminent harm.  A threat of future harm may give rise to an injury in fact,

22  but only if that threat is "credible rather than remote or hypothetical."  *Hartman v. Summers*, 120

23  F.3d 157, 160 (9th Cir. 1997) (holding future harm must be "a very significant possibility").  And

24  the alleged "injury must have actually occurred or must occur imminently; hypothetical,

25  speculative or other 'possible future' injuries do not count in the standing calculus."  *Schmier v.*

26  *U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002) (rejecting argument

27  that an injury occurring "some day" in the future can satisfy the injury-in-fact requirement); *see*

28  *also Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009) (stating that hypothetical

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1   injury is insufficient for Article III standing).

2          Even after three attempts, Plaintiffs still do not plead facts showing that any harm is

3   imminent.  The SAC contains no factual allegations showing that Mr. Italiano (or Ms. Gaos) is

4   substantially certain to suffer any loss from the disclosure of purportedly private search queries.

5   Instead, the SAC merely recycles, with no substantive changes, the same conjectural and

6   hypothetical theory of the purported injury based on the risk from the so-called "Science of

7   Reidentification."  (*See* SAC ¶¶ 68-74.)  According to Plaintiffs, the threat of future harm

8   allegedly arises because some yet-to-be identified individual or individuals (not Google) may (1)

9   retrieve and amalgamate these anonymized search queries; (2) identify "data fingerprints" within

10  that data; (3) combine those fingerprints with yet-to-be-identified other data; (4) discern

11  individuals' identities and their personal information from within this combined data; and, finally,

12  (5) exploit individuals' identities to their detriment.  (*See id.*)  The Court already ruled that that

13  theory "does not plead facts sufficient to show that the disseminated information is of a nature

14  that places [Plaintiffs] in imminent danger of harm."  (3/29/12 Order at 4.)

15         The SAC's new allegations related to Mr. Italiano's search terms, such as "Facebook,"

16  "foreclosure proceedings" and the like, do not make the Science of Reidentification less

17  speculative.  Virtually all of the alleged searches involve public facts.  An address is a public fact;

18  marriages and divorces are memorialized in the public records, bankruptcy is a public legal

19  proceeding; and foreclosures and short sales are public events.[5]  Further, the link of a name and

20  the word "Facebook" can hardly be considered private.[6]

21         None of these search terms discloses facts similar to those in *AOL* or *Krottner*, the two

---

[5] The law of Mr. Italiano's state of residence and the federal Bankruptcy Code confirm the public
nature of these facts.  Addresses are public information, required by Florida law to be recorded.
*See, e.g.*, Fla. Stat. §§ 695.22, 695.26.  The same is true of foreclosures and short sales, which are
public events recorded in court records, *see* Fla. Stat. §§ 702.01, 702.2, 702.3, and also of
marriages and divorces, *see* Fla. Stat. § 741.09.  Florida's constitution and laws evince a strong
policy of having all such records available to the public, including via the Internet.  *See* Fla.
Const. art. I, § 24; Fla. Stat. §§ 119.01 ("[A]ll state, county, and municipal records are open to
personal inspection and copying by any person."); 28.2221; Fla. R. Jud. Admin. 2.420(a).
Similarly, federal law provides that information relating to bankruptcy proceedings, and any
related documents, be available on the public docket.  *See* 11 U.S.C. § 107(a).

[6] It is not clear what private information is gleaned, or what imminent risk of harm exists, because
of the appearance in a search of a person's name and the phrase "forensic accounting."

9

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1   lost-data cases in which sufficient imminent harm was alleged to establish standing.  Plaintiffs in

2   *AOL* alleged that AOL disclosed an aggregated database that correlated search queries with

3   particular identified users.  *See Doe I v. AOL LLC*, 719 F. Supp. 2d 1102, 1109 (N.D. Cal. 2010).

4   Likewise, the plaintiffs in *Krottner* alleged that the theft of a laptop containing names, addresses

5   and social security numbers resulted in an appreciable threat of future identity theft.  *Krottner v.*

6   *Starbucks Corp.*, 628 F.3d 1139, 1140 (9th Cir. 2010).  Here, in contrast, no allegations establish

7   that Google discloses information of that nature creating a concrete risk of imminent identity

8   theft.  Thus, the Court should again conclude that Plaintiffs' factual allegations are unlike those in

9   *AOL* and *Krottner*, and that the state-law claims in the SCA lack the alleged injury in fact that is

10   necessary for Article III standing.  (*See* 3/29/12 Order at 4.)[7]

11               **3.      Plaintiffs Also Fail to Establish Standing for Their SCA Claim**

12         Plaintiffs' claim for alleged violations of the SCA also lack any factual allegations of

13   actual or imminent injury.  Google recognizes that the Court previously followed the Ninth

14   Circuit's decision in *Edwards v. First American* to find standing based on the alleged violation of

15   a statutory right.  But the *Edwards* decision is pending before the United States Supreme Court,

16   presenting the question of whether Article III's standing requirement can be satisfied by an

17   alleged statutory violation absent factual allegations of injury in fact.  *First Am. Fin. Corp. v.*

18   *Edwards*, SC Case No. 10-708.  The matter was argued on November 28, 2011, and Google

19   anticipates that the Supreme Court will rule by the end of its term in June 2012.  Should the

20   Supreme Court hold in *Edwards* that standing cannot be created by statute in the absence of

21   actual or imminent harm, then Google submits that Plaintiffs' SCA claim should be dismissed for

22

23   _____

[7] Even assuming Mr. Italiano's particular searches were somehow adequate to establish a
concrete, imminent risk of harm (and they are not), the claim could never be certified on a class-

24   wide basis.  To adjudicate a class action based on Plaintiffs' theories, the Court would need to
engage in an individualized analysis of the search queries entered by each putative class member

25   to see whether they more closely resemble the searches of Mr. Italiano—who under Plaintiffs'
theory has standing—or those of Ms. Gaos, whose claims the Court has already found lack

26   standing due to a lack of harm.  *See, e.g.*, Fed. R. Civ. P. 23(c)(3) (requiring predominance of
common questions for class treatment); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D.

27   Cal. 2009) (classes must be constructed in such a way that each individual member has Article III
standing); *Denney v. Deutshe Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006).  This issue will be

28   addressed more thoroughly, if needed, in opposition to any class certification motion.

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

lack of standing.  *See also, e.g.*, *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997) ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.")

**B.** **The Court Should Dismiss Plaintiffs' State-Law Claims Because They Fail to State a Claim Under Those Causes of Action**

Plaintiffs have once again failed to allege any viable state-law claims.  As a threshold matter, each of the state-law causes of action in the SAC are preempted, because those claims are premised on alleged conduct that Congress has expressly indicated will be exclusively governed by federal law.  Plaintiffs' breach of contract claim also fails, because they have not plead that they sustained any actual injury,[8] nor have they identified any contractual provision that Google allegedly breached.  The UCL claims also fail, both because Plaintiffs cannot establish standing under the UCL, and because they fail to allege facts necessary to support the requisite elements. The alleged use of Plaintiffs' "personal information" is insufficient to establish the requisite injury for UCL standing.  Moreover, Plaintiffs do not allege reliance on any misrepresentation or omission made by Google, nor do they allege that Google engaged in any unlawful, unfair, or fraudulent business practices that are not preempted.  Finally, Plaintiffs cannot maintain a claim for unjust enrichment because, even if such an independent cause of action were available in California, such claims cannot be brought in conjunction with claims alleging the existence of a valid contract.

**1.** **Plaintiffs' State-Law Claims Are Preempted by the Stored Communications Act**

The SCA, 18 U.S.C. § 2701 *et seq.*, contains an express preemption clause: "The remedies and sanctions described in this chapter are the ***only*** judicial remedies and sanctions for nonconstitutional violations of this chapter."  18 U.S.C. § 2708 (emphasis added).  This preempts state-law claims premised on the same factual allegations.  *See Quon v. Arch Wireless Operating*

---

[8] For reasons that are further indicative of the recurring shortcomings in Plaintiffs' claims, the state-law claims are brought in Mr. Italiano's name alone.

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1   *Co.*, 445 F. Supp. 2d 1116, 1138 (C.D. Cal. 2006).[9]  When a federal statute expressly states that it

2   is to be the exclusive remedy for alleged violations under that law, state-law claims based on the

3   conduct proscribed by such statutes are preempted.  *See Silvas v. E*Trade Mortg. Corp.*, 514 F.3d

4   1001, 1004 (9th Cir. 2008) ("Congress may preempt state law by so stating in express terms.")

5   (internal quotation marks and citation omitted).

6   The SCA's language is clear:  for any non-constitutional violation of the SCA, the

7   remedies and sanctions described in the SCA provide "the only judicial remedies and sanctions."

8   18 U.S.C. § 2708.  By unequivocally expressing its intent for the SCA to provide the exclusive

9   remedies for conduct regulated thereunder, Congress preempted private civil claims brought

10  under state law.  *See, e.g.*, *Quon*, 445 F. Supp. 2d at 1138; *Bunnell v. Motion Picture Ass'n of*

11  *Am.*, 567 F. Supp. 2d 1148, 1154 (C.D. Cal. 2007) (holding that analogous provision of the

12  federal Wiretap Act, 18 U.S.C. § 2518(10), expressly preempts state-law claims).  Relying on the

13  plain language of Section 2708, the court in *Quon* held that "[t]he SCA . . . displaces state law

14  claims for conduct that is touched upon by the statute, such as in divulging stored electronic

15  communications to third parties."  445 F. Supp. 2d at 1138.

16  In this case, Plaintiffs premise their SCA claim and state-law claims on the same alleged

17  wrongful conduct:  that Google disclosed information about Plaintiffs' search queries in the

18  Referrer Header.  (SAC ¶¶ 116-17.)  Plaintiffs' breach of contract claim alleges harm based on

19  Google's purported disclosure of their "private search queries to third parties."  (*Id*. ¶ 125.)

20  Similarly, for their claim under the UCL, Plaintiffs allege that Google is liable because the

21  conduct allegedly violated the SCA and misled Plaintiffs regarding Google's alleged disclosure of

22  search queries.  (*Id*. ¶¶ 131-33.)  Finally, Plaintiffs premise their claim for unjust enrichment on

23  Google's "sharing [of] its users' search queries to third parties."  (*Id*. ¶ 137.)  Because federal law

24  is the exclusive avenue for relief for any claims regarding such conduct, each of these state-law

25  claims is preempted.  *See Quon*, 445 F. Supp. 2d at 1138.

26

27  [9] *Quon* was reversed on other grounds by *Quon v. Arch Wireless Operating Co.*, 529 F.3d 892
    (9th Cir. 2008), which was itself reversed on other grounds by *City of Ontario, Cal. v. Quon*, 130
28  S. Ct. 2619 (2010).

1    Last year, the Ninth Circuit ruled that where the plain language of the SCA is clear, the

2    court should not reach a different conclusion based on an interpretation of excerpts from the

3    legislative history.  *Suzlon Energy Ltd. v. Microsoft Corp.*, 671 F.3d 726, 729 (9th Cir. 2011)

4    (rejecting attempt to use legislative history to interpret the SCA where the plain language of the

5    provision was clear).  The SCA thus preempts state-law claims to the extent that the state-law

6    claims seek to impose liability based on the same conduct that forms the basis for the SCA

7    claim.[10]

8                    **2.      Plaintiffs Have Failed to Allege Facts to Support a Claim for Breach of
                            Contract**
9

10    A contract claim requires a breach of some contractual obligation and resulting damages.[11]

11    *Mulato v. WMC Mortg. Corp.*, No. C 09-03443-CW, 2010 WL 1532276, at *4 (N.D. Cal. Apr.

12    16, 2010) (citing *Armstrong Petrol. Corp. v. Tri Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375,

13    1391 n.6 (2004)).  The SAC lacks factual allegations establishing these requirements.

14                    **a.      Plaintiffs Do Not Allege Any Damages from a Breach**

15    A breach of contract claim requires a showing of some "appreciable and actual damage"

16    beyond the mere fact of breach.  *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015

17    (9th Cir. 2000) (applying California law).  Bare allegations of harm devoid of any specific facts

18    describing an injury actually suffered are insufficient.  *See, e.g.*, *In re Facebook Privacy Litig.*,

19    791 F. Supp. 2d 705, 717 (N.D. Cal. 2011) (dismissing breach of contract claim where plaintiffs

20    alleged only that they "suffered injury" but no "actual damages" as a result of breach of contract);

21    *In re Zynga Privacy Litig.*, No. C 10-04680, 2011 WL 7479170 (JWW), at *2 (N.D. Cal. June 15,

22    2011) (dismissing breach of contract claim where plaintiffs alleged they suffered "damages and

23

---

24    [10] None of the cases declining application of a similar preemption provision in the Federal
      Wiretap Act analyzed the plain meaning of the SCA's language or the principle reinforced in
25    *Suzlon* that the statutory language is the determinant.  *See Valentine v. NebuAd, Inc.*, 804 F. Supp.
      2d 1022, 1029 (N.D. Cal. 2011); *In re Nat'l Sec. Agency Telecomms. Records Litig.*, 633 F. Supp.
26    2d 892, 905 (N.D. Cal. 2007); *Leong v. Carrier IQ Inc.*, No. CV 12-01562, 2012 WL 1463313, at
      *4 (C.D. Cal. Apr. 27, 2012).  In the decision of *In re Google Inc. Street View Electronic
27    Communications Litigation*, 794 F. Supp. 2d 1067, 1085 (N.D. Cal. 2011), the court found some
      but not all state-law claims preempted.

28    [11] Ms. Gaos apparently does not assert this, or any other, state-law claim.

GOOGLE'S MOT. TO DISMISS
                                                                                   NO. 5:10-CV-04809-EJD

1   losses" but failed to plead "appreciable and actual damage").  Speculative harm or fear of future

2   harm will not satisfy the damage requirement for breach of contract claims.  *Ruiz v. Gap, Inc.*,

3   622 F. Supp. 2d 908, 917 (N.D. Cal. 2009).

4            As explained above, the SAC does not allege any actual damages due to Google's

5   purported conduct.  Plaintiff's breach of contract claim contains the bare allegation that "Plaintiff

6   Italiano and the State Law Class suffered injury."  (SAC ¶ 126.)  The harm alleged is nothing

7   more than the "mere breach."  (*Id.* ¶ 96 (alleging that harm is in the form of the disclosure of the

8   queries in the Referrer Header).)  No other appreciable damage is alleged, let alone quantified.

9   The conclusory recital of damage does not satisfy the requirements of *Twombly* and *Iqbal*[12] to

10  plead particular facts giving rise to an entitlement to relief.  *See Facebook*, 791 F. Supp. 2d at

11  717.  The SAC's hollow claims of harm are exactly the sort that this District rejected in

12  dismissing the contract claims in the *Facebook* and *Zynga* litigations.

13              **b.       Plaintiffs Have Not Alleged Facts Showing the Breach of Any**
                          **Contractual Obligations**
14

15           Plaintiffs allege that Google breached its Terms of Service and Privacy Policy "through its

16  unlawful conduct alleged herein, including the disclosure of Mr. Italiano's and the State Law

17  Class's private search queries to third parties."  (SAC ¶ 125.)  This allegation, however, fails to

18  identify any provisions of the Terms of Service and Privacy Policy that Google breached.  The

19  failure is unsurprising, because there are no provisions prohibiting Google's alleged conduct.  To

20  the contrary, the Privacy Policy's Key Terms expressly provide that Google's server logs embed

21  search terms in the URL.  (*See* Edwards Decl. Ex. 2 at 2-3.)  Plaintiffs' failure to identify any

22  contractual obligations that were breached is fatal to their breach of contract claim.  *See, e.g.*,

23  *Mulato*, 2010 WL 1532276, at *3 (dismissing action based in part on plaintiff's failure to identify

24

25  [12] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007) ("Because the plaintiffs here have not
    nudged their claims across the line from conceivable to plausible, their complaint must be
26  dismissed."); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8
    announces does not require 'detailed factual allegations,' but it demands more than an unadorned,
27  the-defendant-unlawfully-harmed-me accusation. . . .  A pleading that offers 'labels and
    conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")
28  (citations omitted).

1  provisions of the alleged contracts that were breached).

2  Plaintiffs cannot salvage their breach of contract claim by construing Mr. Italiano's search

3  queries to be "Personal Information" as defined under the Privacy Policy. The policy language

4  itself defeats this claim. Google's Key Terms defines "personal information" as "information

5  which you [the user] provide to [Google] *which personally identifies you*, such as your name,

6  email address or billing information, or other data which can be reasonably linked to such

7  information by Google." (Edwards Decl. Ex. 2 at 1 (emphasis added).) Referrer headers are not

8  personal information. They reveal bare search terms without linking them to the identity of the

9  user who entered them.

10  Plaintiffs, allege, however, that it is *possible* for search terms to reveal purported private

11  information when users reveal themselves through Google searches. For instance, Mr. Italiano

12  purportedly searched "Anthony Italiano + Facebook." (SAC ¶ 92.) But this does not establish

13  breach of contract: Plaintiffs failed to allege a single instance where a search term they entered

14  would later enable a third party to identify the user who entered the term. This search (with a

15  particular person's name) could have been entered by anyone. "Googling" other peoples' names

16  is such a ubiquitous practice that the term appears in many dictionaries.[13] And Mr. Italiano's

17  inclusion of the search terms "bankruptcy," "foreclosure proceedings," "short sale proceedings,"

18  the name of his ex-wife, and his address does not make his purported searches necessarily unique

19  to him, because all of these terms reflect facts in the public domain. (*See supra* Section III.A.2.)

20  Plaintiffs have failed to identify any provision whereby Google promised not to disclose

21  search queries, and they cannot maintain that Mr. Italiano's search queries constituted "personal

22  information" under the alleged contracts. Thus, he cannot establish the required elements of

23  breach for his contract claim.

24  ### 3. The Complaint Fails to State a Claim Under the UCL

25  The UCL claim against Google fails as a matter of law. Although Ms. Gaos brought a

26

---

27  [13] *See, e.g.*, *Oxford English Dictionary* (2012 ed.) (defining the verb "google" as "To search for information about (a person or thing) using the Google search engine . . . [*e.g.*,] I met this woman

28  last night . . . and I came right home and googled her").

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1    UCL claim in her initial Complaint, she withdrew this claim in response to Google's initial

2    Motion to Dismiss and failed to renew the claim in her First Amended Complaint.  (*See* Pl. Opp.

3    to Google's Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6), Docket No. 22, at 5 n.2.)

4           No new allegations in the SAC, and no events in the intervening 15 months, have

5    improved this defective claim.  To state a UCL claim, Mr. Italiano must allege facts showing that

6    (1) he "suffered injury in fact and . . . lost money or property as a result"; (2) he relied on a

7    misrepresentation or omission by Google; and (3) Google engaged in a business act or practice

8    that is "unlawful, fraudulent or unfair."  *See* Cal. Bus. & Prof. Code §§ 17200, 17204; *In re*

9    *Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).  The SAC does not satisfy any of these

10   requirements.

### a.    Plaintiffs Lack Standing Under the UCL Because They Fail to Allege the Requisite Injury

13          Plaintiffs' conclusory, unsupported assertion of harm not only fails to establish Article III

14   standing, but it also fails to meet the stringent standing requirements of the UCL.  UCL standing

15   requires "injury in fact and . . . lost money or property as a result of the unfair competition."  Cal.

16   Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322

17   (2011) (requiring "loss or deprivation of money or property").

18          Mr. Italiano alleges that he "suffered injury in fact and lost valuable property in the form

19   of [his] private, sensitive search query data."  This allegation does not suffice to establish

20   standing for purposes of a UCL claim.  A plaintiff's "personal information does not constitute

21   property for purposes of a UCL claim."  *Facebook*, 791 F. Supp. 2d at 714 (dismissing UCL

22   claim with prejudice where plaintiff alleged that defendant disclosed personally identifiable

23   information); *see also Thompson v. Home Depot, Inc.*, No. 07-cv-1058 IEG (WMC), 2007 WL

24   2746603, at *3 (S.D. Cal. Sept. 18, 2007).  Moreover, because Mr. Italiano used Google's

25   services for free, "as a matter of law, Plaintiff[] cannot state a UCL claim."  *Facebook*, 791 F.

26   Supp. 2d at 715.  Plaintiffs therefore lack standing to bring a UCL claim.

### b.    Plaintiffs Fail to Allege Reliance

28          Plaintiffs also fail to allege facts to establish the required element of reliance.  *Tobacco II*,

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1   46 Cal. 4th at 326 (the UCL "imposes an actual reliance requirement on plaintiffs prosecuting a

2   private enforcement under the UCL's fraud prong").  Plaintiffs do not allege that Mr. Italiano

3   relied on any misrepresentation or omission by Google.  *Laster v. T-Mobile USA, Inc.*, 407 F.

4   Supp. 2d 1181, 1194 (S.D. Cal. 2005) (dismissing plaintiffs' UCL claim due to their "fail[ure] to

5   allege that they actually relied on false or misleading advertisements").  They do not even allege

6   that Mr. Italiano read or was aware of Google's Privacy Policy.  Their UCL claim fails for this

7   reason as well.

8              **c.**       **Plaintiffs' UCL Claim Also Fails Because the Alleged**

                             **Disclosure of Information Does Not Constitute "Unlawful,"**

9                                **"Unfair," or Fraudulent Business Practices**

10        Plaintiffs' UCL claim also fails because the alleged disclosure of search terms in Referrer

11   Headers is not an "unlawful," "unfair," or "fraudulent" business practice.

12                            **(1)**       **Google's Alleged Conduct Was Not "Unlawful"**

13        Under the "unlawful" prong, Plaintiffs allege only one predicate violation:  Google's

14   purported violation of the SCA.  (SAC ¶ 131.)  A claim under the "unlawful" prong requires

15   factual allegations to support the statutory elements of the alleged predicate violations.  *See*

16   *Stearns v. Select Comfort Retail Corp.*, No. 08-2749 JF, 2009 WL 1635931, at *16 (N.D. Cal.

17   June 5, 2009).  Here, the alleged SCA violation cannot serve as a predicate for a UCL violation

18   because, as discussed in Section III.B.1, *supra*, the SCA is "the only judicial remed[y] and

19   sanction[]" available for violations of that statute.  *See* 18 U.S.C. § 2708.  Accordingly, Plaintiffs

20   fail to state a claim under the "unlawful" prong of the UCL.

21                            **(2)**       **Google's Alleged Conduct Was Not Unfair**

22        Plaintiffs also fail to state a claim under the "unfair" prong of the UCL.  The California

23   Supreme Court has cautioned that, in construing a claim under the "unfair" prong of the UCL,

24   "[c]ourts may not simply impose their own notions of the day as to what is fair or unfair."

25   *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999); *see also Van*

26   *Slyke v. Capital One Bank*, No. C 07-00671 WHA, 2007 WL 3343943, at *11 (N.D. Cal. Nov. 7,

27   2007) (the "unfairness" prong cannot be an invitation for courts to "roam across the landscape of

28   consumer transactions picking and choosing which they like and which they dislike").

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1    In determining whether conduct is "unfair" under the UCL, courts have applied several

2  different tests, including a "tethering" test, which requires that the underlying offense violate a

3  public policy "tethered to specific constitutional, statutory, or regulatory provisions" or a

4  "balancing" test that "weigh[s] the utility of the defendant's conduct against the gravity of the

5  harm to the alleged victim." *See Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247,

6  256-57 (2010); *In re Apple In-App Purchase Litig.*, --- F. Supp. 2d ---, 2012 WL 1123548, at *7

7  n.8 (N.D. Cal. Mar. 31, 2012) (Davila, J.); *Smith v. Ford Motor Co.*, No. 10-17321, 2011 WL

8  6322200, at *3 (9th Cir. Dec. 19, 2011); *see also Delacruz v. Cytosport, Inc.*, 2012 WL 1215243,

9  at *10 (N.D. Cal. Apr. 11, 2012).

10   The FTC test is most appropriate, and Plaintiffs cannot meet it.  Plaintiffs have not alleged

11  any injury, let alone a substantial injury, and Plaintiffs could have avoided any purported injury

12  by not using Google's free search service.  Further, Plaintiffs' claim fails under the other two

13  older UCL tests for "unfairness."  Plaintiffs do not allege any violation of a non-preempted,

14  specifically enunciated public policy "tethered" to a specific constitutional, statutory or regulatory

15  provision.  *Drum*, 182 Cal. App. 4th at 256.  Nor do they plead any specific facts in support of

16  their conclusory claim that "the gravity of the consequences to Plaintiff Italiano" outweigh the

17  utility of the alleged conduct.  Thus, Google's conduct is not "unfair" under the UCL.

18   **(3)    Google's Alleged Conduct Was Not Fraudulent**

19   Plaintiffs also fail to state a claim under the "fraudulent" prong of the UCL.  Claims

20  brought under this prong must be pled with particularity pursuant to Federal Rule of Civil

21  Procedure 9(b).  *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003);

22  *Fortaleza v. PNC Fin. Servs. Grp., Inc.*, 642 F. Supp. 2d 1012, 1020 (N.D. Cal. 2009).  Plaintiffs'

23  allegations do not meet this heightened standard.  Plaintiffs fail to allege what (if any) Google

24  statements or representations Mr. Italiano read that were allegedly false or misleading.  Moreover,

25  as noted in Section III.B.3.b., *supra*, Plaintiffs never allege that Mr. Italiano (or any class

26  member) relied on any representations by Google.  Nor do Plaintiffs allege specific facts

27  concerning the damages that Mr. Italiano purportedly suffered as a result of Google's fraudulent

28  conduct.  (*See* SAC ¶ 134.)

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1    At most, Plaintiffs allege that Google purportedly failed to make two disclosures.  (SAC

2    ¶¶ 133.a, 133.c.)  Google's purported omissions cannot serve as a basis for a fraud claim, because

3    Plaintiffs failed to allege facts establishing that Google had any duty to make those disclosures.

4    *See Barnes & Noble, Inc. v. LSI Corp.*, --- F. Supp. 2d ---, 2012 WL 359713, at *9 (N.D. Cal.

5    Feb. 2, 2012) ("Where a fraud claim is based on the omission of information, a party must

6    generally demonstrate that there was a duty to disclose such information.")  And, contrary to

7    Plaintiffs' minimal allegations, the Privacy Policy's Key Terms expressly provide that Google's

8    server logs embed search terms in the URL.  (*See* Edwards Decl. Ex. 2 at 2-3.)  Finally, Plaintiffs'

9    vague claim that Google "tout[s]" trust and privacy (SAC ¶ 133.b) does not satisfy the heightened

10   particularity standard.  *See, e.g.*, *Wozniak v. Align Tech., Inc.*, --- F. Supp. 2d ---, 2012 WL

11   368366, at *4 (N.D. Cal. Feb. 3, 2012) (dismissing fraud claim premised on vague, generalized

12   and unspecific statements).

### 4.   Plaintiffs Cannot State a Claim for Unjust Enrichment

14   Plaintiffs' unjust enrichment claim fails for two reasons.  First, the majority view is that

15   there is no distinct cause of action for unjust enrichment under California law.  *See, e.g.*, *Hill v.

16   Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011) ("Unjust enrichment is not a cause of

17   action, just a restitution claim."); *Smith*, 2011 WL 6322200, at *3; *Levine v. Blue Shield of Cal.*,

18   189 Cal. App. 4th 1117, 1138 (2010) ("[T]here is no cause of action in California for unjust

19   enrichment"); *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008) ("[U]njust enrichment

20   is not a cause of action"); *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006)

21   (dismissing unjust enrichment claim but allowing UCL and breach of contract claims); *Charles

22   Schwab & Co. v. Bank of Am.*, No. C-10-4913-JL, 2011 WL 1753805, at *5 (N.D. Cal. May 9,

23   2011).  Rather, the concept of unjust enrichment describes "a general principle, underlying

24   various legal doctrines and remedies."  *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779,

25   793 (2003) (dismissing unjust enrichment claim but allowing claims for breach of contract,

26   declaratory relief, and accounting).  The few courts that allow unjust enrichment claims to go

27   forward are in the minority.  *Charles Schwab*, 2011 WL 1753805, at *5.

28   Second, even if the Court follows the minority view, Plaintiffs' unjust enrichment theory

GOOGLE'S MOT. TO DISMISS
NO. 5:10-CV-04809-EJD

1   is untenable.  The minority of cases that have permitted an unjust enrichment claim to proceed in

2   a contract case have done so only because the contract at issue is alleged to be void or otherwise

3   invalid.  *E.g.*, *Facebook*, 791 F. Supp. 2d at 718 ("Although Rule 8 of the Federal Rules of Civil

4   Procedure allows a party to state multiple, even inconsistent claims, the rule does not allow a

5   plaintiff invoking state law to assert an unjust enrichment claim while also alleging an express

6   contract."); *Apple In-App*, 2012 WL 1123548, at *3, *8.  That is not the case here, where

7   Plaintiffs allege a breach of contract claim based on Google's Terms of Service and Privacy

8   Policy, which they characterize as "a valid and enforceable contract."  *See* SAC ¶¶ 123-26.

9   Plaintiffs' unjust enrichment and breach of contract claims arise from the same alleged conduct.

10  *Compare* SAC ¶¶ 124-25 (alleging that Google breached contractual obligation by disclosing

11  search queries without users' consent) *with* ¶ 137 (alleging that Google enriched itself by

12  disclosing search queries without users' consent).  Plaintiffs therefore cannot simultaneously

13  allege a claim for breach of contract and unjust enrichment.  *See Facebook*, 791 F. Supp. 2d at

14  718.

15          For this reason, and in light of the prevailing trend of courts not to recognize an

16  independent cause of action for what is, at most, a theory of recovery based on some other claim,

17  no purpose is served by permitting Plaintiffs to maintain a claim for unjust enrichment.

18  **IV.    CONCLUSION**

19          Google requests that the Court dismiss Plaintiffs' state-law claims with prejudice.

20

21          Dated:  June 15, 2012

22                                                      O'MELVENY & MYERS LLP

23

24                                                      By:   _/s/ Randall W. Edwards_
                                                              Randall W. Edwards
25                                                      Attorneys for Defendant
                                                        Google Inc.

26

27

28