KASSRA P. NASSIRI (215405)
(knassiri@nassiri-jung.com)
NASSIRI & JUNG LLP
47 Kearny Street, Suite 700
San Francisco, California 94108
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

MICHAEL J. ASCHENBRENER (277114)
(mja@aschenbrenerlaw.com)
ASCHENBRENER LAW, P.C.
795 Folsom Street, First Floor
San Francisco, CA 94107
Telephone: (415) 813-6245
Facsimile: (415) 813-6246

ILAN CHOROWSKY (*Admitted Pro Hac Vice*)
(ilan@progressivelaw.com)
PROGRESSIVE LAW GROUP, LLC
1 N LaSalle Street, Suite 2255
Chicago, IL 60602
Tel: (312) 787-2717
Fax: (888) 574-9038

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re GOOGLE REFERRER HEADER PRIVACY LITIGATION<br><br>_____<br><br>This Document Relates To: All Actions | Case No. 5:10-cv-04809-EJD<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: August 23, 2013<br>Time: 9:00 a.m.<br>Place: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that the Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of the proposed class action settlement entered into by the Parties, on Friday, August 23, 2013 at 9:00 a.m., or at such other time as may be set by the Court, at 280 South 1st Street, San Jose, California, Courtroom 4, 5th Floor, before the honorable Edward J. Davila.

Plaintiffs seek preliminary approval of this class action settlement, certification of the proposed Class, appointment of the Plaintiffs as Class Representatives, and appointment of their counsel as Class Counsel. The Motion is based on this Notice of Motion, the Brief in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter raised or submitted at the hearing, and all of the documents in the record.

1

## **TABLE OF CONTENTS**

2   MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

3   I.   INTRODUCTION ............................................................................................................ 1

4   II.  LITIGATION HISTORY ................................................................................................ 2

5   III. SUMMARY OF SETTLEMENT TERMS ....................................................................... 4

6        1.   Class Definition .................................................................................................. 4

7        2.   Settlement Fund Payments ................................................................................. 4

8        3.   Injunctive or Prospective Relief ........................................................................ 5

9        4.   Cy Pres ............................................................................................................... 5

10       5.   Other Relief ........................................................................................................ 6

11       6.   Release ................................................................................................................ 7

12  IV. ARGUMENT ................................................................................................................... 7

13  A.   The Court Should Certify the Proposed Settlement Class ........................................ 8

14       1.   The Numerosity Requirement Is Satisfied .......................................................... 8

15       2.   The Commonality Requirement Is Satisfied ...................................................... 9

16       3.   The Typicality Requirement Is Satisfied ............................................................ 10

17       4.   The Adequate Representation Requirement Is Satisfied .................................... 11

18       5.   The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements ......................... 12

19  B.   The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate, and Falls Well

20       Within the Range of Preliminary Approval ............................................................ 15

21       1.   A Number of Uncertainties Inherent in this Litigation Make the Settlement the Best

22            Recovery Attainable by the Settlement Class ............................................................ 16

23       2.   The Cy Pres Donations Are the Best Means of Providing a Monetary Benefit to the Class

24            ............................................................................................................................ 17

25  C.   The Court Should Approve the Proposed Plan for Class Notice ....................................... 19

26  V.  PROPOSED SCHEDULE ............................................................................................. 22

27  VI. CONCLUSION ............................................................................................................... 23

28

1

## TABLE OF AUTHORITIES

2

CASES

3   *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005) ................................................ 13

4   *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). ...................................................... 8, 12

5   *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ................................................................ 9, 10, 11

6   *Celano v. Marriott Int'l, Inc.,* 242 F.R.D. 544 (N.D. Cal. 2007) ........................................................ 8

7   *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ............................................ 7, 8

8   *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008) .................. 13

9   *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) .............................. 8, 9, 11, 12, 13, 14, 16

10   *In re Abbott Labs. Norvir Antitrust Litig.,* 2007 WL 1689899 (N.D. Cal. June 11, 2007) .............. 8

11   *In re Facebook Privacy Litig.*, No. 5:10-cv-2389 (N.D. Cal.) ...................................................... 12

12   *In re Google Buzz Privacy Litig.*, No. 5:10-cv-672-JW (N.D. Cal. Sept. 3, 2010) ........................... 1

13   *In re Google Buzz Privacy Litig.*, No. 5-10-cv-672-JW (N.D. Cal. June 2, 2011) ........................ 18

14   *In re Indep. Energy Holdings PLC*, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .................... 16

15   *In re MetLife Demutualization Litig.*, 262 F.R.D. 205 (E.D.N.Y. 2009) ........................................ 20

16   *In re Netflix Privacy Litig.*, No. 5:11-cv-379-EJD (N.D. Cal. March 18, 2013) ........................ 1, 8

17   *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) ........................................................ 16

18   *In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) .................................................. 15, 16

19   *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ................................ 15, 16

20   *In re Zynga Privacy Litig.*, No. 5:10-cv-4680 ............................................................................ 12

21   *LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985) .......................................................................... 9

22   *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ............................................................. 1, 18

23   *Menagerie Productions v. Citysearch*,
     No. CV 08-4263 CAS (FMO), 2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009) 13

24   *Mullane v. Central Hanover Bank Trust Co.*, 339 U.S. 306 (1950) ........................................ 19, 20

25   *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .................................... 15

26   *Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) .................................................................... 9

27   *Reynoso v. South County Concepts,* 2007 WL 4592119 (C.D. Cal. Oct. 15, 2007) ..................... 14

28

*Von Collin v. County of Ventura,* 189 F.R.D. 583 (C.D. Cal. 1999)..................................... 8

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011)......................................... 9, 10

*Wolin v. Jaguar Land Rover N. Am. LLC,* 617 F.3d 1168 (9th Cir. 2010) .................................... 10

*Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180 (9th Cir. 2001)............................................ 12

STATUTES

18 U.S.C. § 2510 .......................................................................................... 16

18 U.S.C. § 2702 ..................................................................................... 2, 16

18 U.S.C. § 2707 ........................................................................................... 17

28 U.S.C. § 1715 ........................................................................................... 21

Cal. Bus. & Prof. Code § 17200.................................................................... 2

Cal. Bus. & Prof. Code § 17500.................................................................... 2

Cal. Civ. Code § 1572 .................................................................................. 2

Cal. Civ. Code § 1573 .................................................................................. 2

Cal. Civ. Code § 1638 ................................................................................ 13

Cal. Civ. Code § 1639 ................................................................................ 13

Cal. Civ. Code § 1750 .................................................................................. 2

OTHER AUTHORITIES

5 JAMES WM. MOORE, *ET AL.*, MOORE'S FEDERAL PRACTICE (3d ed. 1999)..................................... 9

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.25 (3rd ed. 1992).... 15

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 3.3 (4th ed. 2002) .......... 8

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004)........................................... 8

MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995)............................................. 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.   INTRODUCTION

3   This proposed nationwide class action Settlement seeks to resolve two putative class

4 actions filed against Google, Inc., the nation's most popular Internet search engine. In each action,

5 Plaintiffs allege Google divulged user search queries to third parties without user knowledge or

6 consent.

7   The non-reversionary Settlement was achieved through mediation, through arm's-length

8 negotiations over four separate days, and after three contested motions to dismiss and discovery.

9 Additionally, the cash component of the Settlement—$8.5 million—is squarely within the range

10 of similar class action settlements, including: *In re Google Buzz Privacy Litig.*, No. 5:10-cv-672-

11 JW (N.D. Cal. Sept. 3, 2010), Dkt. 41 ($8.5 million *cy pres* fund); *In re Netflix Privacy Litig.*,

12 5:11-cv-379-EJD (N.D. Cal. Mar. 18, 2013), Dkt. 256 ($9 million *cy pres* fund); and *Lane v.*

13 *Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ($9.5 million *cy pres* fund). In light of the minimal

14 monetary recovery that would have been realistically recovered by individual Class Members and

15 the immediate benefits offered to the Class by injunctive relief and *cy pres* donations, the

16 Settlement is deserving of preliminary approval.

17   In addition to the cash component, the proposed Settlement also requires Google to post

18 disclosures on its website concerning user search queries. As a result of this Settlement, users will

19 be given information about whether their search queries are transmitted to third parties and have

20 the opportunity to make informed decisions about their privacy choices.

21   In determining whether preliminary approval is warranted, the issue before the Court is

22 whether the Settlement is within the range of what might be found to be fair, reasonable and

23 adequate, so that notice of the Settlement should be given to Class Members, and a hearing

24 scheduled to consider final approval. The Court is not required at this time to make a final

25 determination as to the fairness of the Settlement.

26   The parties here have made the showing necessary for preliminary approval. The

27 Settlement was reached through serious, informed, non-collusive arm's-length bargaining, creates

28

real benefits for the class, and is within the range of an acceptable settlement. Furthermore, the proposed notice to Class Members is more than adequate under the applicable standards. Accordingly, Plaintiffs hereby move the Court for preliminary approval.

## II. LITIGATION HISTORY

Plaintiff Paloma Gaos filed suit in October 2010 alleging that Google transmitted user search queries to third parties without knowledge or consent in order to enhance advertising revenue and profitability. (Dkt. 1 ¶ 1.) Plaintiff further alleged that Google's practice violated the Stored Communications Act ("SCA"), 18 U.S.C. § 2702(a), the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and Cal. Civ. Code §§ 1572 and 1573, and constituted unjust enrichment and public disclosure of private facts. (Dkt. 1.)

Google moved to dismiss all claims under Rule 12(b)(1). The Court dismissed Plaintiff Gaos's Complaint with leave to amend. In her First Amended Complaint, Plaintiff Gaos alleged violations of the SCA, violations of Cal. Civ. Code §§ 1572-73, fraudulent misrepresentation, negligent misrepresentation, public disclosure of private facts, breach of contract, and, in the alternative, unjust enrichment. (Dkt. 26.)

Upon Google's Rule 12 Motion to dismiss, the Court dismissed Plaintiff Gaos's First Amended Complaint with leave to amend. Plaintiff Italiano joined the Second Amended Complaint, and together, Plaintiffs alleged Google's conduct violated the SCA and the UCL, and also constituted breach of contract, or, in the alternative, unjust enrichment. (Dkt. 39.) Google again moved to dismiss the Second Amended Complaint, which the Court terminated as moot when it consolidated the *Gaos* and *Priyev* actions. (Dkt. 51.) Also, throughout the litigation, Plaintiffs propounded written discovery upon Google. (Exhibit 1, Aschenbrener Decl. ¶ 2.)

From the beginning and while actively litigating, the Parties attempted to resolve the matter without further litigation, but did not find success until mediating with Randall Wulff. (*Id.* ¶ 3.) First, counsel for the Parties met in person in San Francisco in January 2011 to discuss

possible resolution; the meeting was not successful. (*Id*. ¶ 4.) Counsel for the Parties met again in San Francisco in February 2011, but were again unsuccessful. (*Id*. ¶ 5.) Counsel for the Parties met a third time to discuss resolution in June 2012, this time for an all-day negotiating session, but were once again unsuccessful in coming to terms despite extensive post-meeting discussions throughout the summer of 2012. *(Id*. ¶ 6.)

Plaintiff Gabriel Priyev filed a case, alleging claims inclusive of the conduct at issue in *Gaos*, in the Northern District of Illinois in February 2012. *Priyev v. Google, Inc.*, No. 12-cv-1467 (N.D. Ill.). Priyev's allegations and causes of action related to Google's sharing of search queries via referrer headers and, among other things, Google's resulting breach of its own express contract terms related to Google's Web History service. (Exhibit 2, Chorowsky Decl. ¶ 8). On March 6, 2012 Plaintiff Priyev moved to certify the class as alleged in his Complaint. (*Id*. ¶ 3). On March 23, 2012 the Parties agreed by motion to allow Google additional time to respond to the complaint. (*Id*. ¶ 4). Ultimately, Google moved to dismiss on April 30, 2012. (*Id*. ¶ 5). On July 13, 2012, Priyev moved to transfer. (*Id*. ¶ 6). On August 3, 2012 Priyev voluntarily amended his Complaint and on August 10, 2012 Priyev filed a Second Amended Complaint. (*Id*. ¶ 7). On August 28, 2012 the Court in the Northern District of Illinois granted Priyev's contested and fully briefed Motion to transfer and ordered his case transferred to the Northern District of California. (*Id*. ¶ 10). On December 18, 2013 Priyev's case file was electronically transferred to the Northern District of California. (*Id*. ¶ 11.) On January 8, 2013 the *Priyev* action was officially transferred to the Northern District of California's docket. (*Id*. ¶ 12.)

In an effort to advance the putative class's interests most efficiently and effectively, counsel for Plaintiffs Gaos and Italiano and for Plaintiff Priyev decided to work cooperatively to again attempt to resolve the matter. (Asch. Decl. ¶ 7.) On January 28, 2013, in Oakland, California, the Parties mediated the case before Randall Wulff, an experienced and well-respected mediator of class action disputes. (*Id*. ¶ 8.) The arms-length negotiation went all day and long into the night, and based upon his review of the facts and applicable law in this case, Mr. Wulff proposed a settlement amount in the form of a "mediator's proposal" to the Parties, which the

Parties accepted and which formed material terms of the Settlement. (*Id.* ¶ 9.) Later that week, the parties began negotiating a settlement agreement. (*Id.* ¶ 10.) Over the span of nearly two months, the Parties exchanged numerous drafts of the agreement and related documents. (*Id.* ¶ 11.) On March 16, 2013, the Parties executed the Settlement Agreement, attached hereto as Exhibit 3. (*Id.* ¶ 12.)

On April 26, 2013 the parties jointly stipulated and requested that this Court approve their Stipulation to consolidate the cases and filed a Proposed Consolidated Class Action Complaint, 5:10-cv-04809 EJD, Dkt. No. 50, which counsel for the parties drafted in unison in light of the settlement of both cases. The Stipulation was granted on April 30, 2013. (Chor. Decl. ¶ 17). The Consolidated Complaint, now the operative Complaint in this matter, incorporates claims and allegations from both the *Priyev* and *Gaos* matters. (*Id.* ¶ 18.)

At all times, Google has denied and continues to deny any wrongdoing act or violation of the law whatsoever. (Ex. 3 Recitals.)

**III.   SUMMARY OF SETTLEMENT TERMS**

The Parties seek preliminary Settlement approval. The terms of the Settlement are set forth in the Settlement Agreement and briefly summarized here as follows:

*1.   Class Definition*

The Settlement Agreement provides for a single Settlement Class, defined as follows:

> "Class" means all Persons in the United States who submitted a search query to Google at any time during the period commencing on October 25, 2006, up to and including the date of the Notice of Proposed Class Action Settlement pursuant to the Notice Plan. This term wholly encompasses, but is not limited to, the Classes set forth in Paragraph 72 of the Priyev Complaint and in Paragraphs 97, 98, and 99 of the Gaos Complaint, respectively.

(Ex. 3 § 1.4.)

*2.   Settlement Fund Payments*

Google has agreed to pay the total amount of eight million five hundred thousand dollars ($8.5 million USD) in cash into a Settlement Fund—none of which will revert to Google under any circumstances—to be used for the payment of Settlement Administration Expenses, *Cy Pres*

distributions to the proposed *Cy Pres* Recipients, any Fee Award or costs awarded to Class

Counsel, and any incentive awards awarded to the Class Representatives and named Plaintiffs in

the Related Actions. (Ex. 3 § 3.2.)

### 3.  Injunctive or Prospective Relief

Plaintiffs have maintained throughout the litigation and negotiations that any settlement

would need to include injunctive relief designed to notify users as to Google's conduct so that

users can make informed choices about whether and how to use Google Search. (Asch. Decl.

¶ 13.) The instant Settlement Agreement provides such relief. (Asch. Decl. ¶ 14.)

Specifically,

> Google agrees to make certain Agreed-Upon Disclosures concerning
> search queries on or before the date of Notice of Proposed Class Action
> Settlement pursuant to the Notice Plan. These Agreed-Upon Disclosures
> will appear on Google's "FAQs" webpage currently located at
> http://www.google.com/policies/privacy/faq/, "Key Terms" webpage
> currently located at http://www.google.com/policies/privacy/key-terms/,
> and the "Privacy FAQ for Google Web History" webpage currently
> located at https://support.google.com/accounts
> /bin/answer.py?hl=en&answer=54050, as further described in Exhibit A.
> If a subsequent change to Google's services renders the Agreed-Upon
> Disclosures inaccurate, Google may make future changes to its disclosures
> to ensure continued accuracy. Likewise, Google may change the form or
> placement of the disclosures as part of future changes to its privacy
> policies, provided that the substance remains substantially the same and
> that it is incorporated into the applicable terms of service or privacy policy
> and is reasonably accessible to the user.

(Ex. 3 § 3.1.)

### 4.  Cy Pres

After payment of Settlement Administration Expenses, the Fee Award, and the collective

Incentive Award, the balance of the Settlement Fund shall be distributed to *Cy Pres* Recipients

selected by the Parties and approved by the Court.

The Parties have, as of the time of this filing, agreed to propose the following entities as *Cy*

*Pres* Recipients: World Privacy Forum, Carnegie-Mellon, Chicago-Kent College of Law Center

for Information, Society, and Policy, Berkman Center for Internet and Society at Harvard

University, Stanford Center for Internet and Society, MacArthur Foundation, and AARP, Inc. (Ex. 3 § 1.11.)

As a condition to receiving the payment, each *Cy Pres* Recipient, including those mentioned above, must agree to devote the funds to promote public awareness and education, and/or to support research, development, and initiatives, related to protecting privacy on the Internet. If any *Cy Pres* Recipient does not agree to these conditions, then its portion will be distributed *pro rata* to the other identified Recipients; if no Recipient agrees to the conditions, or if the Court so requires, the Parties shall meet and confer to identify other appropriate recipients. The Class Administrator shall make payments to the *Cy Pres* Recipients within sixty days after the Effective Date. (Ex. 3 § 3.3.)

No later than fourteen (14) days before the Objection Deadline, Class Counsel will make public, via the Settlement Website and direct notice to the *Cy Pres* Recipients, any additional *Cy Pres* Recipients and the allocations of *Cy Pres* disbursements. (Asch. Decl. ¶ 15.)

The Settlement Agreement creates a common fund of $8,500,000.00, from which, after deductions for any attorneys' fees and expenses and costs of settlement administration as approved by the Court, money will be distributed to *Cy Pres* Recipients that will "promote public awareness and education, and/or to support research, development, and initiatives, related to protecting privacy on the Internet." (Ex. 3 § 3.3.) No portion of the Settlement Amount or interest thereon will revert to Google. (Ex. 3 § 3.4.)

As a condition of the Settlement, Google shall deposit, in an interest-bearing bank account designated and controlled by the Class Administrator, in two installments, the total sum of $8,500,000.00, which is intended to inure to the benefit of the Class. (Ex. 3 § 3.2.)

### 5.  *Other Relief*

In addition to the individual and injunctive relief described above, Google has agreed to provide the following relief:

### a.   *Payment of Notice and Administration Fees*

The Settlement Agreement includes payment for all notice and administration costs, which will be paid out of the Settlement Fund. (Ex. 3 § 3.2.)

### b.   *Compensation for the Class Representatives*

Google has agreed to pay out of the Settlement Fund, subject to Court approval, incentive awards for each Class Representative up to five thousand dollars ($5,000 USD) each. (Ex. 3 § 10.2.) It is not a condition of this Settlement that any particular amount of incentive awards be approved. (Ex. 3 § 10.1.)

### c.   *Payment of Attorneys' Fees and Expenses*

Plaintiffs may apply to the Court seeking a reasonable proportion of the Settlement Amount as payment of any reasonable attorneys' fees and costs ("Fee Award"). The Fee Award will be paid from the Settlement Fund. It is not a condition of this Settlement that any particular amount of attorneys' fees, costs, or expenses be approved by the Court, or that such fees, costs, or expenses be approved at all. (Ex. 3 § 10.1.) Plaintiffs have not negotiated, and do not intend to negotiate, a clear sailing provision for Plaintiffs' attorneys' fees and costs request. (Asch. Decl. ¶ 16.)

### 6.  **Release**

In exchange for the relief described herein, and upon entry of a Final Order approving this Settlement, Google will be released from "any and all claims that any Class Member may now or at any time have up to the date of preliminary approval of this Agreement, whether or not known or existing at the time of this Agreement, arising out of the subject matter giving rise to the claims in the Actions." (Ex. 3 §§ 1.34, 9.1-9.3.)

## IV. ARGUMENT

The law favors settlement. *See, e.g., Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004). To grant *preliminary* approval, this Court need find only that the proposed Settlement falls within the range of possible final approval. The *final* approval hearing calls on the Court to consider several factors, including the strength of plaintiffs' case, the risk, expense,

1  complexity and likely duration of further litigation, the risk of maintaining class action status

2  through trial, the amount offered in settlement, the extent of discovery completed and the stage of

3  the proceedings, and the experience and views of counsel. *Id*. at 575.

4       Generally, settlements are presumed fair and reasonable where the settlement was the

5  product of non-collusive, arm's length negotiations conducted by capable and experienced

6  counsel. *See, e.g., Netflix* at 7. The proposed Settlement satisfies these requirements, and Plaintiffs

7  respectfully request that the Court grant preliminary approval and order that notice be issued to the

8  Settlement Class.

9       **A.  The Court Should Certify the Proposed Settlement Class**

10       The Court must determine that the proposed Settlement Class is proper for settlement

11  purposes and thus appropriate for certification before granting preliminary approval of the

12  settlement. Manual for Complex Litigation § 21.632 (4th ed. 2004); *Amchem Prods., Inc. v.*

13  *Windsor*, 521 U.S. 591, 620 (1997). Class certification is appropriate when the following elements

14  are met: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are

15  questions of law or fact common to the class; (3) the claims or defenses of the representative

16  parties are typical of the claims or defenses of the class; and (4) the representative parties will

17  fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

18       ***1.  The Numerosity Requirement Is Satisfied***

19       "The prerequisite of numerosity is discharged if 'the class is so large that joinder of all

20  members is impracticable.'" *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998)

21  (quoting Fed. R. Civ. P. 23(a)(1)). "Where 'the exact size of the class is unknown, but general

22  knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *In*

23  *re Abbott Labs. Norvir Antitrust Litig.,* 2007 WL 1689899, 6 (N.D. Cal. June 11, 2007) (quoting

24  ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 3.3 (4th ed. 2002)). *See*

25  *also Von Collin v. County of Ventura,* 189 F.R.D. 583, 590 (C.D. Cal. 1999). Generally, the

26  numerosity requirement is satisfied when the class comprises more than forty members. *Celano v.*

27  *Marriott Int'l, Inc.,* 242 F.R.D. 544, 549 (N.D. Cal. 2007). Here, the proposed Class consists of

28

MOTION FOR PRELIMINARY APPROVAL
5:10-CV-04809

1  over 100 million persons. (Exhibit 4, Simmons Decl. ¶¶ 18, 24.) Accordingly, the proposed Class

2  is so numerous that joinder of all claims is impracticable.

3              ***2.   The Commonality Requirement Is Satisfied***

4       The second threshold to certification requires that "there are questions of law or fact

5  common to the class." Fed. R. Civ. P. 23(a)(2); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir.

6  2001). Commonality may be demonstrated when the claims of all class members "depend upon a

7  common contention" and "even a single common question will do." *Wal-Mart Stores, Inc. v.*

8  *Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal quotation omitted); *see also Hanlon*, 150 F.3d at

9  1019 ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a

10  common core of salient facts coupled with disparate legal remedies within the class").

11  Commonality exists where, as here, a "lawsuit challenges a system-wide practice or policy that

12  affects all of the putative class members." *Armstrong*, 275 F.3d at 868 (citing *LaDuke v. Nelson*,

13  762 F.2d 1318, 1332 (9th Cir. 1985); 5 James Wm. Moore, *et al.*, Moore's Federal Practice

14  ¶ 23.23[5][f] (3d ed. 1999)).

15       The common contention must be of such a nature that it is capable of class-wide

16  resolution, and that the "determination of its truth or falsity will resolve an issue that is central to

17  the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. Moreover, the

18  permissive standard of commonality provides that "[w]here the circumstances of each particular

19  class member vary but retain a common core of factual or legal issues with the rest of the class,

20  commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

21       In the instant case, all Members of the Class share common claims arising out of Google's

22  alleged system-wide practice and policy of unlawful storage and disclosure of their search queries.

23  As Plaintiffs allege, Google uniformly divulges the search queries of Google Search users to third

24  parties via referrer headers—affecting all Search users in the same way. Such allegations show

25  that Plaintiffs and the proposed Settlement Class share common statutory claims under the SCA,

26  as well as various state law claims, that likewise result in common and shared factual and legal

27  questions, such as:

28

MOTION FOR PRELIMINARY APPROVAL
5:10-CV-04809

a.   whether and to what extent Google has disclosed its users' search queries to third parties, and whether the disclosure is ongoing;

b.   whether Google continues to use or store information that is part of Web History after users choose to delete, remove or no longer store with Google such information;

c.   whether Google's conduct described herein violates Google's Terms of Service, Privacy Policy, Web History policy and representations to Plaintiffs and the Class;

d.   whether Google's conduct described herein violates the Electronic Communications Privacy Act, 18 U.S.C. § 2702, *et seq.*;

e.   whether Google's conduct described herein constitutes a breach of contract or implied contract;

f.   whether Google's conduct breached its duty of good faith and fair dealing;

g.   whether Google is unjustly enriched as a result of its conduct described herein; and

h.   whether Plaintiffs and members of the Class are entitled to injunctive and other equitable relief.

In accordance with the Supreme Court's recent holding in *Wal-Mart*, answering these legal questions would resolve the claims of all Class Members of the Class in one stroke. *Wal-Mart*, 131 S. Ct. at 2551. Thus, considering the nature of the issues and facts that bind each class member together, the proposed settlement class satisfies the commonality requirement.

### 3.   The Typicality Requirement Is Satisfied

Rule 23 next requires that the representative plaintiff's claims are typical of those of the putative class he or she seeks to represent. Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that "the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The typicality requirement is met if the claims of each class member arise from the same course of conduct, and the defendant's liability turns on similar legal arguments. *Armstrong*, 275 F.3d at 868. The typicality determination is similar to the commonality inquiry; however, typicality focuses on a

comparison of the named plaintiffs' claims with those of the class. *Id.* at 868-69. Typicality is measured under a permissive standard and does not require that the representative's claims be identical, but only that they are "reasonably co-extensive with [the claims] of absent class members. *Hanlon*, 150 F.3d at 1020.

Plaintiffs Paloma Gaos, Anthony Italiano, and Gabriel Priyev (collectively, "Plaintiffs") are Google Search users. (Dkt. 50, Ex. A, ¶¶ 7-9.) Plaintiffs, like the putative Class Members, each conducted Google searches during the class period; and during this time Google disclosed their search queries to third-parties, which Plaintiffs allege was contrary to Google's promises to its users and without their authorization, per Google's standardized course of conduct. (Dkt. 50, Ex. A, ¶¶ 100-118.)

Plaintiffs and the putative Class allege they were uniformly subjected to Google's storage and disclosure of users' search queries without user consent. Plaintiffs allege that such conduct violates both the SCA and state law, with respect to Plaintiffs and the Class as a whole. And such conduct would provide identical statutory damages to all Members of the proposed Class under the SCA. Plaintiffs' representation of the Settlement Class is thus appropriate because they were subjected to the same alleged unlawful conduct flowing from that uniform conduct. As such, Plaintiffs' claims for relief are typical of, if not identical to, those of the proposed Class, and thus meet Rule 23(a)(3)'s requirements for typicality.

### *4.   The Adequate Representation Requirement Is Satisfied*

The final Rule 23(a) prerequisite is that the proposed class representatives have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To determine if representation is adequate, the Court must ask "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Because the named Plaintiffs share the same interests of putative Class Members in seeking relief for the alleged misconduct, and have no conflicts with putative Members of the

Class, they are adequate Class Representatives. Plaintiffs' interests are entirely representative of and consistent with the interests of the proposed Settlement Class; Plaintiffs have lodged representative claims for Google's alleged unlawful storage and disclosure of their search queries to third parties. Also, Plaintiffs' active participation throughout the litigation demonstrates that they have and will continue to protect the interests of the proposed Settlement Class.

Further, proposed Class Counsel have regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits that are similar in size, scope, and complexity to the present case. (Asch. Decl. ¶ 17); *see, e.g., In re Facebook Privacy Litig.*, No. 5:10-cv-2389 (N.D. Cal.); *In re Zynga Privacy Litig.*, No. 5:10-cv-4680; Firm Resumes of Nassiri & Jung LLP (attached as Exhibit 5-A), Aschenbrener Law, P.C. (attached as Exhibit 1-A), and Progressive Law Group LLC (attached as Exhibit 2-A). Accordingly, both Plaintiffs and proposed Class Counsel have and will continue to adequately represent the interests of the proposed Settlement Class.

### 5. The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements

In addition to meeting the requirements of Rule 23(a), Plaintiffs must also meet one of the three requirements of Rule 23(b) to certify the proposed Class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001). Class certification pursuant to Rule 23(b)(3) requires that "the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and that a class action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is appropriate and encouraged "whenever the actual interests of the parties can be served best by settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

#### a.   Common Questions of Law or Fact Predominate Over Individual Issues

"The Rule 23(b)(3) predominance inquiry tests whether the proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Predominance exists "[w]hen common questions present a significant aspect of the case and they

1  can be resolved for all members of the proposed class in a single adjudication." *Hanlon*, 150 F.3d

2  at 1022. "In addressing the questions of law or fact common to the members, the Court looks at

3  common factual link[s] between all class members and the defendants for which the law provides

4  a remedy." *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005).

5      Here, common questions predominate because there are few, if any, individualized factual

6  issues, and because the operative facts involve Google's standardized conduct, which is uniformly

7  applicable to the class as a whole. The primary factual issue concerns whether Google divulged

8  the search queries of the proposed Class Members to third parties.

9      The primary legal issues concern whether Google's disclosures were unlawful—e.g.,

10  whether Google's alleged misconduct gives rise to liability under the SCA or breached its

11  promises or duty of good faith and fair dealing to its users.

12      Here too, the contractual writings at issue giving rise to Plaintiffs' claims for breach of

13  contract, duty of good faith and fair dealing, and authorization to disclose search queries

14  consistent with the SCA are applicable to the Class as a whole and the interpretation of these

15  writings predominate. *See, e.g.,* Cal. Civ. Code § 1639 (when a contract is reduced to writing, the

16  intention of the parties is to be ascertained from the writing alone, if possible); Cal. Civ. Code

17  § 1638 (the "language of a contract is to govern its interpretation"). *See also Menagerie Prods. v.*

18  *Citysearch*, No. CV 08-4263 CAS (FMO), 2009 U.S. Dist. LEXIS 108768, at *36 (C.D. Cal. Nov.

19  9, 2009) (certification of breach of contract claim where the plaintiffs' breach of contract claim

20  "arises from a standard form contract prepared by [defendant] to which all advertisers in the class

21  agreed.").

22      These issues can be resolved for all Members of the proposed Class in a single

23  adjudication. These common questions predominate because, in each case, "[t]he challenged

24  practice is a standardized one applied on a routine basis to all [Google users]." *Gutierrez v. Wells*

25  *Fargo Bank, N.A.*, 2008 WL 4279550, at *17 (N.D. Cal. Sept. 11, 2008). Thus, the alleged

26  wrongdoing predominates over any individual issues.

27

28

MOTION FOR PRELIMINARY APPROVAL
5:10-CV-04809

1

                                   **b.   Class Treatment of These Claims Is a Superior Method of Adjudication**

2        A class action must be "superior to other available methods for the fair and efficient

3  adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "A class action is the superior method

4  for managing litigation if no realistic alternative exists." *Reynoso v. South County Concepts,* 2007

5  WL 4592119, at *4 (C.D. Cal. Oct. 15, 2007) (quotations omitted). In addition, a class action is

6  superior where, as here, classwide litigation of common issues "reduces litigation costs and

7  promotes greater efficiency."  *Orvis v. Spokane County,* 281 F.R.D. 469, 475 (E.D. Wash. 2012)

8  (citation, quotations omitted).

9        In this matter, there is no realistic alternative to a class action, in large part because the

10  proposed Class consists of tens of millions of Members. Moreover, most Members would find the

11  cost of litigating individual claims to be prohibitive, and our court system could not handle

12  millions of additional cases. Also, because the action will now settle, the Court need not consider

13  issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 (citation omitted)

14  ("Confronted with a request for settlement-only class certification, a district court need not inquire

15  whether the case, if tried, would present intractable management problems, for the proposal is that

16  there would be no trial.") Accordingly, common questions predominate and a class action is the

17  superior method of adjudicating this controversy.

18        The following matters may also be considered: "(A) the interest of members of the class in

19  individually controlling the prosecution or defense of separate actions; (B) the extent and nature of

20  any litigation concerning the controversy already commenced by or against members of the class;

21  (C) the desirability or undesirability of concentrating the litigation of the claims in the particular

22  forum." Fed. R. Civ. P. 23(b)(3); *see also Hanlon*, 150 F.3d at 1023. These factors favor

23  certification. First, because Google's conduct affected the Class as a whole and was not directed at

24  particular Members of the Class, and because affected consumers similarly used Google's search

25  functionality, no single Class Member has an interest in controlling the prosecution of the

26  litigation. Second, other than the consolidated actions, Plaintiffs are aware of no other pending

27

28

1    litigation involving the controversy. Third, the Class is dispersed throughout the country, and it is

2    desirable that litigation of the claims involved be concentrated in a single forum.

3         **B.   The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate, and**

4              **Falls Well Within the Range of Preliminary Approval**

5         After certifying the proposed Class for the purpose of settlement, the Court should

6    preliminarily approve the Settlement. The procedure for review of a proposed class action

7    settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); *see also* ALBA CONTE &

8    HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25, at 3839 (3d ed. 1992) (*quoting*

9    MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995) *In re Syncor ERISA Litig.*, 516 F.3d

10   1095, 1100 (9th Cir. 2008). The purpose of this hearing is not to determine the ultimate fairness of

11   the Settlement; instead, its purpose is to determine whether there is any reason to notify the

12   putative Class Members of the proposed Settlement and to proceed with a fairness hearing. *In re*

13   *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Notice of a settlement

14   should be sent out where "the proposed settlement appears to be the product of serious, informed,

15   non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential

16   treatment to class representatives or segments of the class, and falls within the range of possible

17   approval." (*Id.*, *quoting* NEWBERG ON CLASS ACTIONS § 11.25 (3d ed. 1992)).

18        The Manual for Complex Litigation characterizes the preliminary approval stage as an

19   "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of

20   written submissions and informal presentation from the settling parties. MANUAL FOR COMPLEX

21   LITIGATION § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of

22   possible approval," it then proceeds to the second step in the review process, which is the final

23   approval hearing. NEWBERG, § 11.25, at 3939.

24        Judicial policy strongly favors voluntary conciliation and settlement of complex class

25   action litigation. *In re Syncor*, 516 F.3d at 1101 (*citing Officers for Justice v. Civil Serv. Comm'n*,

26   688 F.2d 615 (9th Cir. 1982)). While the district court has discretion regarding the approval of a

27   proposed settlement, it should give "proper deference to the private consensual decision of the

28

parties." *Hanlon*, 150 F.3d at 1027. In fact, when a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is fair and reasonable. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Further, a settlement negotiated with the assistance of an experienced private mediator is further proof that the settlement was reached fairly and provides adequate relief. *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003). Ultimately, though, the court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

In this case, the Settlement is fair, reasonable, and adequate, especially in light of the uncertainties detailed below. Under this Settlement, Google will properly notify its users about its search query disclosure practices and pay millions of dollars to recipients that will provide the Settlement Class Members—and the public at large—with privacy protection, education, and services. (Exhibit 3 § 3.3.) Not only is the Settlement adequate on its own terms, but it compares favorably with the recoveries in similar nationwide privacy class actions reached against Facebook, Google, and Netflix.

### 1. *A Number of Uncertainties Inherent in this Litigation Make the Settlement the Best Recovery Attainable by the Settlement Class*

Given the substantial relief obtained for the Class, and the uncertainties that would accompany continued litigation, there is little question that the proposed Settlement is at least "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.

Congress enacted the SCA as part of the Electronic Communications Privacy Act of 1986. 18 U.S.C. §§ 2510-22 and 2701-12. Section 2702(a) of the SCA prohibits companies that provide electronic communications services and remote computing services from divulging the contents of its users' communications without user consent. 18 U.S.C. § 2702(a).

Plaintiffs allege that Google is liable under the SCA, and Google denies this. Plaintiffs allege that under the SCA, Google is liable to all aggrieved persons for "the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation,

1   but in no case shall a person entitled to recover receive less than the sum of $1,000. If the violation

2   is willful or intentional, the court may assess punitive damages. In the case of a successful action

3   to enforce liability under this section, the court may assess the costs of the action, together with

4   reasonable attorney fees determined by the court." 18 U.S.C. § 2707(c).

5          Google also denies liability for any of Plaintiffs' state law claims. Upon Google's Motions

6   to dismiss, Plaintiff Gaos' state law claims were dismissed (with leave to amend). (Dkt. Nos. 24,

7   38.) The likelihood of success of Plaintiffs' state law claims is uncertain.

8          Although Plaintiffs and proposed Class Counsel are confident in the strength of their

9   claims and in their ability to prevail ultimately at trial, they recognize that litigation is inherently

10  risky. (Asch. Decl. ¶ 19.) If the litigation were to proceed, Google would raise multiple defenses,

11  including express defenses under the SCA, making this Settlement all the more reasonable.

12         Plaintiffs also anticipate that even if they win at trial that Google would have a strong

13  argument that awarding full statutory damages—likely trillions of dollars—far in excess of the

14  value of the company would trigger constitutional Due Process concerns, thus requiring remittitur.

15  Plaintiffs believe they would be more likely than not to succeed on the merits and that even with

16  the possibility of remittitur, they would come away with a significant judgment that could be

17  enforced. Nevertheless, the viability of Google's factual and legal defenses to Plaintiffs' claims,

18  many of which would create issues of first impression within this Circuit counsels in favor of the

19  instant settlement. (*Id*. ¶ 20.)

20         In light of the uncertainty inherent in this litigation and the time value of money, the

21  Settlement Agreement represents a significant recovery under the circumstances for the proposed

22  Class.

23         **2.   The Cy Pres *Donations Are the Best Means of Providing a Monetary Benefit to***

24              ***the Class***

25         *Cy pres* distribution is a distribution for the indirect prospective benefit of a class.

26  NEWBERG ON CLASS ACTIONS § 10:17 (4th ed. 2002.) The Settlement's *Cy Pres* distribution will

27  give the Class the greatest benefit of any form of monetary relief that could have been realized

28

here. Given the size of the Settlement Class, any realistically obtainable monetary award would result in payments to Class Members that would be negligible on an individual level. (Asch. Decl. ¶ 21.) But under the terms of the instant Settlement, the Settlement Class will benefit from millions of dollars in donations to qualified organizations that promote public awareness and education, and/or to support research, development, and initiatives, related to protecting privacy on the Internet. (Ex. 3 § 3.3.) The donations to these organizations will benefit the Class by aiding consumers in protecting themselves and their privacy online in the future. *Id.*

Further, the substantial *cy pres* donations compare favorably to settlements in other Internet consumer privacy cases. *See, e.g. In re Google Buzz Privacy Litig.*, No. 5-10-cv-672-JW (N.D. Cal. June 2, 2011) (unauthorized disclosure of email contact lists; $8.5 million settlement fund with *cy pres* payments); *Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) (unauthorized disclosure of personal information; *cy pres* distribution of $9.5 million); and *In re Netflix Privacy Litig.*, No. 5:11-cv-379-EJD (Dkt. Nos. 80, 256) (unauthorized storage of personal information; *cy pres* distribution of $9 million).

Because of the sheer size of the Class, it would be burdensome and inefficient at best to pay directly to the Class the *cy pres* funds that remain after costs directly because each Class Member's recovery under a direct distribution would be, at best, *de minimis*. *Lane*, 696 F.3d at 824-25. And even if there was some positive amount that could be paid directly to Class Members, it would likely prove to be nullified by distribution costs. *Id.* at 825. Unlike *Lane*, which essentially returned the *cy pres* funds back to the defendant for the purpose of having the defendant set up a privacy-related organization, the present agreement provides for distribution to already existing third-party organizations. The list of *Cy Pres* Recipient organizations includes leading consumer and privacy advocacy groups and academic institutions. The organizations are located throughout the country so as to best benefit the far-reaching Class in order to promote public awareness and education, and/or support research, development, and initiatives, related to protecting privacy on the Internet. (Exhibit 3 § 3.3.)

In light of the uncertainties of litigation, the minimal monetary recovery that would be realistically recoverable by individual Settlement Class Members even if they obtained a judgment on the merits, and the immediate benefits offered to the Class by the proposed Settlement, the Settlement Agreement offers the Class the greatest relief possible, and thus is deserving of preliminary approval.

### C.   The Court Should Approve the Proposed Plan for Class Notice

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

"The means (of notice) employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected." *Mullane v. Central Hanover Bank Trust Co.*, 339 U.S. 306, 315 (1950). "This Court has not hesitated to approve of resort to publication as a customary substitute in another class of cases where it is not reasonably possible or practicable to give more adequate warning."

Here, the proposed Class likely numbers **over one hundred million**, making any form of direct notice impracticable. Indeed, courts have interpreted Rule 23 and *Mullane* so as not to require any form of direct notice—explicitly not requiring email notice—in much smaller cases (with millions of class members):

> The best practicable notice under the circumstance is notice by publication in newspapers. In view of the millions of members of the class, notice to class members by individual postal mail, email or radio or television advertisements, is neither necessary nor appropriate. The publication notice ordered is appropriate and sufficient in the circumstances. The timeline for notice provides reasonable, appropriate and ample opportunity for class members to oppose the settlement if they wish to do so.

*In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y. 2009). Plaintiffs propose a comprehensive Internet publication notice plan that is designed expressly "to inform those affected." *Mullane*, 339 U.S. 306 at 315.

As in *MetLife*, the best practicable notice given the enormous class size here is publication notice. The proposed notice plan in this case goes several steps beyond the approved notice plan in *MetLife*, though. Rather than notifying the Class of the Settlement through mere newspaper publication, Plaintiffs propose a comprehensive Internet Notice Plan designed to notify at least 70% of the Class more than two times each. (Simmons Decl. ¶ 43.) Additionally, ***the proposed plan is designed to reach over 90% of security conscious Internet users more than two times each***. (*Id.* ¶ 37.) This plan meets or exceeds the requirements of due process and the guidelines set forth by the Federal Judicial Center. And because the proposed notice plan uses the Internet as its medium, the plan's implementation can be measured in real-time and adjustments to the placements can be made to meet its goals. (*Id.* FN 8.) As a result, this plan is more than "reasonably certain to inform those affected" because all Class Members are by definition, Internet users, and in fact search for content online. *Mullane*, 339 U.S. at 315. Thus, the proposed Notice Plan is appropriate for this specific Class.

In this case, the Class Administrator will be allocated up to $1 million out of the Settlement Amount to implement the following Notice Plan. (Ex. 3 § 5.1.)

**Settlement Website.** The Settlement Administrator shall create and maintain a Settlement Website until at least thirty days after Effective Date of the Settlement, which is roughly sixty days after the Court enters an order granting final approval of the Settlement. The Settlement Website shall (i) post, without limitation, the operative Complaint(s), this Settlement Agreement, and Long Form Notice and Opt-Out Form; (ii) notify Class Members of their rights to object or opt out; (iii) inform Class Members that they should monitor the Settlement Website for developments; and (iv) notify Class Members that no further notice will be provided to them once the Court enters the Final Order and Judgment, other than through updates on the Settlement Website. The Class Administrator will establish an email account and P.O. Box to which Class

Members may submit questions regarding the Settlement. The Class Administrator will monitor the email account and P.O. Box and respond promptly to administrative inquiries from Class Members and may direct substantive inquiries to Class Counsel. (Ex. 3 § 5.5.)

The Settlement Website will go live within thirty days of the entry of an order granting preliminary approval. (Ex. 3 § 5.4.)

**Publication Notice.** The Parties shall also implement a comprehensive publication plan that conforms to all applicable rules and guidelines. (Simmons Decl. ¶ 20.) More specifically, the plan is projected to include more than 200 million impressions of online advertisements linking to the Settlement Website, including more than 70 million displays on Facebook and more than 130 million displays on the 2000 most trafficked websites on the Internet. As a result, over 70% of the proposed Class will see the advertisements an average of 2.2 times. (Exhibit 4-C.)

The Notice Plan will be established and publication will begin within thirty days of the entry of an order by the Court granting preliminary approval of the proposed Settlement. (Ex. 3 § 5.4.) All costs associated with implementing the Notice Plan, including the fees and costs of the Class Administrator, will be paid out of the Settlement Fund. Within ten days after the filing of this Agreement with the Court, Google will have the Class Administrator notify the appropriate state and federal officials of this Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. (Ex. 3 § 5.6.)

The Settlement Website and publication plan represent a cross section of media specifically chosen by the parties to target likely Class Members and attain the widest reach possible. (Simmons Decl. ¶¶ 25, 31.) The format and language of each form of notice has been drafted so that it is in plain language, is easy to read, and will be readily understood by the Members of the proposed Class, thus satisfying the requirements of Rule 23 and Due Process. (*Id*. ¶ 42.)

Under the circumstances of this case, the proposed Notice Plan constitutes the best notice practicable. (*Id*. ¶ 53.)

1

## V.  PROPOSED SCHEDULE

2

In connection with preliminary approval of the Settlement, the Court must set dates for a

3

final fairness hearing, for mailing the Notice, for Class Members to object to the Settlement, for

4

Class Members to exclude themselves from the Class, and for briefing related to the final approval

5

of the Settlement and for Class Counsel to submit its motion for attorneys' fees and

6

reimbursement of expenses. Class Counsel propose the following schedule:

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| Event | Timing |
|---|---|
| Deadline for Class Administrator to implement the Notice Plan, including the Settlement Website and the Publication Plan | Within thirty (30) days of entry of the Preliminary Approval Order |
| Deadline for Plaintiffs to Publish Final Cy Pres Distribution | Within sixty (60) days of entry of the Preliminary Approval Order |
| Deadline to submit Requests for Exclusion (the "Opt-Out Deadline") | Within ninety (90) days of entry of the Preliminary Approval Order |
| Deadline for Class Administrator to provide the Parties with a list of all Persons who opted out by validly requesting exclusion | Within ten (10) calendar days after the Opt-Out Deadline |
| Deadline to apply for an award of Attorneys' Fees and Costs | Not later than thirty-five (35) calendar days before the Final Approval Hearing |
| Deadline to submit objections to the Settlement | Not later than twenty-one (21) calendar days before the Final Approval Hearing |
| Deadline to respond to any objections to the Settlement or Attorneys' Fees and Costs and to submit briefing in support of final approval of the Settlement | Not later than seven (7) days before the Final Approval Hearing |
| Final Approval Hearing | Not less than one hundred twenty (120) calendar days after entry of the Preliminary Approval Order |

26

27

28

MOTION FOR PRELIMINARY APPROVAL
5:10-CV-04809

1   **VI. CONCLUSION**

2       For the foregoing reasons, Plaintiffs respectfully ask that the Court grant Plaintiffs' Motion

3   for Preliminary Approval of the Class Action Settlement Agreement, certify the Settlement Class,

4   appoint, Paloma Gaos, Anthony Italiano, and Gabriel Priyev as Class Representatives, appoint

5   Kassra P. Nassiri of Nassiri & Jung LLP, Michael Aschenbrener of Aschenbrener Law, P.C., and

6   Ilan Chorowsky of Progressive Law Group LLC as Class Counsel, approve the form and manner

7   of Notice described above, and award such other and further relief as the Court deems equitable

8   and just.

9   Dated: July 19, 2013                    ASCHENBRENER LAW, P.C.

10

11                           s/ Michael J. Aschenbrener
                        Michael J. Aschenbrener

12                           KASSRA P. NASSIRI (215405)
                        (knassiri@nassiri-jung.com)

13                           NASSIRI & JUNG LLP
                        47 Kearny Street, Suite 700

14                           San Francisco, California 94108
                        Telephone: (415) 762-3100

15                           Facsimile: (415) 534-3200

16

17                           MICHAEL J. ASCHENBRENER
                        (mja@aschenbrenerlaw.com) (277114)

18                           ASCHENBRENER LAW, P.C.
                        795 Folsom Street, First Floor

19                           San Francisco, CA 94107
                        Telephone: (415) 813-6245

20                           Facsimile: (415) 813-6246

21

22                           ILAN CHOROWSKY
                        (ilan@progressivelaw.com)

23                           PROGRESSIVE LAW GROUP, LLC
                        1 N LaSalle Street, Suite 2255

24                           Chicago, IL 60602
                        Tel: (312) 787-2717

25                           Fax: (888) 574-9038

26

27                           ATTORNEYS FOR PLAINTIFFS AND THE
                        PROPOSED PUTATIVE CLASS

28

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on July 19, 2013, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: July 19, 2013                         ASCHENBRENER LAW, P.C.


                                             By: s/ Michael Aschenbrener
                                             Michael Aschenbrener