```
 1                    UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF CALIFORNIA
 2                         SAN JOSE DIVISION

 3

 4

      IN RE: GOOGLE REFERRER HEADER     CASE NO.  CV-10-4809-EJD
 5    PRIVACY LITIGATION.
                                        SAN JOSE, CALIFORNIA
 6
                                        AUGUST 23, 2013
 7
                                        PAGES 1 - 49
 8

 9
                        TRANSCRIPT OF PROCEEDINGS
10          BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE
11

12                   A-P-P-E-A-R-A-N-C-E-S

13

      FOR THE PLAINTIFFS:   NASSIRI & JUNG
14                          BY:   KASSRA P. NASSIRI
                            47 KEARNEY STREET, SUITE 700
15                          SAN FRANCISCO, CALIFORNIA 94108

16                          ASCHENBRENER LAW, P.C.
                            BY:  MICHAEL ASCHENBRENER
17                          795 FOLSOM STREET, FIRST FLOOR
                            SAN FRANCISCO, CALIFORNIA 94107
18
                            PROGRESSIVE LAW GROUP
19                          BY:  ILAN CHOROWSKY
                            1 N. LASALLE STREET, SUITE 2255
20                          CHICAGO, ILLINOIS 60602

21        (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22
      OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR
23                               CERTIFICATE NUMBER 8074

24
          PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
25    TRANSCRIPT PRODUCED WITH COMPUTER.
```

1

A P P E A R A N C E S: (CONT'D)

2

3

4    FOR THE DEFENDANTS:          MAYER BROWN
                                     BY:  EDWARD D. JOHNSON
                                     TWO PALO ALTO SQUARE, SUITE 300

5                                     PALO ALTO, CALIFORNIA 94306

6

7                                     O'MELVENY & MYERS
                                     BY:  RANDALL W. EDWARDS
                                     28TH FLOOR

8                                     TWO EMBARCADERO CENTER
                                     SAN FRANCISCO, CALIFORNIA 94111

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1    SAN JOSE, CALIFORNIA                    AUGUST 23, 2013

2                      P R O C E E D I N G S

3        (COURT CONVENED.)

4            THE CLERK:  CALLING CASE NUMBER 10-4809, IN RE:

5    GOOGLE REFERRER HEADER PRIVACY LITIGATION.  ON FOR MOTION FOR

6    PRELIMINARY APPROVAL.

7        COUNSEL, COME FORWARD AND STATE YOUR APPEARANCES.

8            MR. JOHNSON:  GOOD MORNING, YOUR HONOR.  EDWARD

9    JOHNSON FROM MAYER BROWN FOR GOOGLE.

10           MR. EDWARDS:  GOOD MORNING, YOUR HONOR.  RANDALL

11   EDWARDS FROM O'MELVENY & MYERS ALSO FOR GOOGLE.

12           MR. ASCHENBRENER:  GOOD MORNING, YOUR HONOR.

13   MICHAEL ASCHENBRENER ON BEHALF OF PLAINTIFFS AND THE PUNITIVE

14   CLASS.

15           THE COURT:  THANK YOU.  GOOD MORNING.

16           MR. NASSIRI:  GOOD MORNING, YOUR HONOR.  KASSRA

17   NASSIRI FOR NASSIRI & JUNG ON BEHALF OF THE PLAINTIFFS.

18           THE COURT:  THANK YOU.

19           MR. CHOROWSKY:  GOOD MORNING, YOUR HONOR.  ILAN

20   CHOROWSKY FOR PROGRESSIVE LAW GROUP FOR PLAINTIFFS.

21           THE COURT:  THANK YOU.  GOOD MORNING.  PLEASE BE

22   SEATED.  THANK YOU.

23       WELL, I HAVE YOUR DOCUMENTS HERE REGARDING THIS

24   PRELIMINARY APPROVAL, AND I DO HAVE SOME QUESTIONS I WANTED TO

25   ASK YOU.
```

1    FIRST OF ALL, LET ME THANK YOU FOR YOUR EFFORTS IN PUTTING

2    THIS TOGETHER.  THIS IS AN INTERESTING LAWSUIT.  AND IT SOUNDS

3    LIKE, MR. NASSIRI, I DON'T KNOW HOW YOU WOULD FIT ALL OF YOUR

4    CLIENTS IN YOUR OFFICE.  YOU MIGHT HAVE TO RENT A FEW STADIUMS

5    TO ACCOMPLISH THAT.  IT SOUNDS LIKE THAT'S THE SIZE OF THE --

6             MR. NASSIRI:  IT'S ENORMOUS, YOUR HONOR.

7             THE COURT:  SO I WANTED TO GO THROUGH SOME OF THE

8    ASPECTS OF THIS SETTLEMENT HERE.  AND I GUESS IT LOOKS LIKE

9    THIS IS AN OVERVIEW, AND I'LL INVITE COUNSEL TO TELL ME ABOUT

10   THIS IN A COUPLE OF MINUTES.  IT SOUNDS LIKE BECAUSE OF THE

11   SIZE OF THE CLASS ACTUAL REMUNERATION, IF YOU WILL, TO AN

12   INDIVIDUAL CLASS MEMBER IS VIRTUALLY IMPOSSIBLE.  IT CAN'T

13   HAPPEN EVEN IF YOU SENT THEM ONE CENT, A PENNY.  THE COST OF

14   ADMINISTRATION OF THAT WOULD DWARF ANY POSSIBLE SETTLEMENT.

15   AND I GUESS WHAT WE'RE SEEING IS THESE LARGE CLASSES AND

16   HOW TO RESOLVE THEM IN SUCH A WAY THAT THERE'S SOME BENEFIT TO

17   THE CLASS MEMBERS, OR AS IN THIS CASE IS SUGGESTED A PURE

18   CY PRES RESOLUTION, THAT THERE'S SOME BENEFIT TO THE CLASS THAT

19   IS SOMEWHAT RELATED TO THE ISSUES IN THE LAWSUIT.  AND I'D LIKE

20   TO FOCUS ON SOME OF THOSE ISSUES INITIALLY.

21   SO, MR. NASSIRI, WHY DON'T I GIVE YOU TWO MINUTES TO GIVE

22   ME A SYNOPSIS OF THIS LAWSUIT AND WHAT IT IS ABOUT AND WHY YOU

23   FEEL THAT THIS RESOLUTION IS APPROPRIATE.

24             MR. NASSIRI:  WOULD YOU LIKE ME TO STEP UP, YOUR

25   HONOR?

1            THE COURT:  I WOULD, YES.  THANK YOU.

2            MR. NASSIRI:  THANK YOU FOR THE OPPORTUNITY.  THIS

3     IS, AS YOUR HONOR NOTED, AN INTERESTING LAWSUIT AND IT SEEMS TO

4     BE KIND OF SUBJECT MATTER THAT IS OF GREATER AND GREATER

5     INTEREST.

6        THE LAWSUIT IS -- TECHNICALLY IT'S ABOUT THE DISCLOSURE OF

7     SEARCH QUERIES TO THIRD PARTIES.

8        MORE BROADLY SPEAKING IT'S KIND OF ABOUT SOME OF THE

9     PRIVACY CONCERNS IN GENERAL AND THE INNOVATIONS IN TECHNOLOGY

10    THAT HAVE BEEN OCCURRING AT A TREMENDOUS PACE THAT MAKES THINGS

11    THAT JUST FIVE YEARS AGO DISCLOSURES OF INFORMATION AND DATA

12    THAT JUST FIVE YEARS AGO SEEMED PRETTY INNOCUOUS LIKE IT IS

13    ANONYMIZED HAS TURNED IT INTO SOMETHING ELSE COMPLETELY AND IT

14    HAS BEEN REIDENTIFIED AND BECAUSE OF ADVANCES IN COMPUTER

15    SCIENCE AND ALL OF THE MONEY AND ATTENTION THAT HAS BEEN GIVEN

16    TO THESE EFFORTS PRIVACY IS REALLY AT ISSUE NOW IN ALMOST

17    EVERYTHING WE DO ON LINE.

18            THE COURT:  THAT'S WHY YOU FILED THIS LAWSUIT ON

19    BEHALF OF YOUR CLIENTS I PRESUME BECAUSE YOU FELT THERE WAS AN

20    INVASION OF THEIR PRIVACY, THEY FELT THERE WAS AN INVASION OF

21    THEIR PRIVACY AND THEY SEEK REMEDIES IN THE COURT.  THAT'S WHAT

22    IT WAS ABOUT, RIGHT?

23            MR. NASSIRI:  THAT'S RIGHT, YOUR HONOR.

24            THE COURT:  OKAY.

25            MR. NASSIRI:  AND EVERY TIME THE NATURE OF THE

1   SCIENCE IS THAT ANY PIECE OF INFORMATION, WHETHER IT SEEMS

2   ANONYMOUS OR NOT ON ITS OWN, WHEN YOU START AGGREGATING DATA IT

3   GETS POSSIBLE TO REIDENTIFY INFORMATION AND TO CREATE PRETTY

4   DETAILED PROFILES.  THE INFORMATION NEVER GOES AWAY.  THE

5   STORAGE IS PRACTICALLY FREE, AND YOU HAVE THIS GIANT DATABASE

6   IN THE SKY.

7        AND I HAVE TO SAY, YOUR HONOR, WHEN WE FILED THIS CASE AND

8   I WOULD TALK TO PEOPLE ABOUT IT, THEY WOULD LOOK AT ME LIKE

9   WHERE IS YOUR TINFOIL HAT TO PREVENT THE RAYS, YOU KNOW,

10  THEY'RE HACKING INTO YOUR BRAIN.

11       BUT I THINK NOW PEOPLE ARE STARTING TO REALIZE THAT THIS

12  IS REAL STUFF.  AND EVERY LITTLE BIT OF DATA THAT IS RELEASED

13  ABOUT PEOPLE AND IS ASSOCIATED WITH PEOPLE, WHETHER IS SEEMS

14  ANONYMOUS OR NOT, WHETHER IT'S ASSOCIATED WITH AN IP ADDRESS OR

15  ASSOCIATED WITH AN ISP SERVER, IF THERE'S ANY INFORMATION IN

16  THE SEARCH QUERY AT ALL, IT CAN BE CONNECTED TO SOMETHING ELSE

17  THAT WILL EVENTUALLY LEAD YOU BACK TO THE INDIVIDUAL PERSON.

18       SO THAT WAS KIND OF THE BASIS AND IN A VERY GENERAL WAY

19  FOR WHY WE FILED THE LAWSUIT.

20            THE COURT:  AND YOU FELT THAT, AND YOU TELL ME IF

21  I'M WRONG HERE, BUT YOU FELT, AS YOUR CLIENTS FELT, THAT THIS

22  WAS WRONG, AND IT NEEDED TO BE CORRECTED?

23            MR. NASSIRI:  THAT'S RIGHT, YOUR HONOR.  IT NEEDED

24  TO BE ADDRESSED PARTICULARLY AT THE TIME AND STILL TODAY.

25            THE COURT:  THERE'S A DIFFERENCE BETWEEN ADDRESSING

1      IT AND CORRECTING IT.

2           MR. NASSIRI:  AND IT NEEDED TO BE CORRECTED.  AND

3      ONE OF THE -- AND PARTICULARLY WHAT WE FOCUSSED ON IN THE

4      LAWSUIT AND IN OUR CLAIMS AND IN PARTICULAR THAT 2702 CLAIM

5      UNDER THE STORED COMMUNICATIONS ACT WAS THIS IDEA OF CONSENT,

6      THAT PEOPLE NEEDED TO KNOW -- IT'S NOT NECESSARILY ILLEGAL OR

7      WRONG FOR GOOGLE OR ANYBODY ELSE TO DO WHAT THEY DO WITH

8      PEOPLE'S DATA.  AND THERE ARE CERTAINLY A LOT OF BENEFITS TO

9      THE WORK THAT THEY'RE DOING.

10          BUT WHAT WE FELT WAS WRONG AND NEEDED TO BE ADDRESSED WAS

11     THAT PEOPLE NEEDED TO KNOW, AND THEY NEEDED TO OPT IN.  THEY

12     NEEDED TO UNDERSTAND, HEY, WHEN I USE GOOGLE AND I TYPE MY NAME

13     OR ANYTHING INTO A SEARCH QUERY BOX, THERE'S A GOOD CHANCE THAT

14     SOMEBODY IS GOING TO KNOW IT WAS ME THAT DID THAT AND AM I OKAY

15     WITH THAT OR NOT?

16          AND SO THIS ISSUE OF CONSENT AND INFORMED CONSENT IS ONE

17     THAT WE BELIEVE IS VERY IMPORTANT.

18          THIS SHOULDN'T BE TAKING PLACE KIND OF WITHOUT THE

19     KNOWLEDGE OF THE PEOPLE WHO ARE USING THE SERVICES.

20          AND PART OF OUR EFFORTS IN STRUCTURING THE SETTLEMENT TO

21     CREATE REAL VALUE AND BENEFIT FOR THE CLASS WAS AIMED AT THAT

22     KIND OF AN ISSUE, EDUCATION, TRANSPARENCY, ACCOUNTABILITY, AND

23     MAKING SURE THAT PEOPLE HAVE AN IDEA THAT WHEN THEY USE THESE

24     KINDS OF SERVICES AND THEY SUBMIT THEIR PERSONAL INFORMATION,

25     WHETHER THEY THINK IT'S ANONYMOUS OR NOT, THAT, HEY, THERE'S A

1    GOOD CHANCE THAT THIS IS GOING TO BE ATTACHED TO ME DOWN THE

2    ROAD.

3            THE COURT:  SO THE LAWSUIT WAS NOT DESIGNED TO STOP

4    THE PRACTICE BECAUSE THE SETTLEMENT DOESN'T.

5            MR. NASSIRI:  IT IS NOT DESIGNED TO STOP THE

6    PRACTICE, YOUR HONOR.

7            THE COURT:  THE SETTLEMENT SAYS THEY CAN KEEP GOING

8    AND THEY ARE GOING TO KEEP DOING WHAT THEY'RE DOING, BUT AS I

9    STAND HERE AS CHAMPION OF MY CLIENTS, WHAT WE HAVE DONE FOR

10   YOU, AS YOU SPEAK TO THOSE STADIUMS UP AND DOWN THE BAY AREA

11   WHERE YOUR CLIENTS ARE SITUATED IN LOUD SPEAKERS SUFFICIENT SO

12   THEY CAN ALL HEAR YOU, WHAT WE HAVE DONE FOR YOU IS WE HAVE

13   BEEN ABLE -- YOU NOW KNOW THAT THIS IS WHAT GOOGLE DOES AND

14   THIS IS WHAT WE HAVE DONE FOR YOU IN THIS LAWSUIT.

15        IS THAT IN ESSENCE WHAT IS HAPPENING HERE?

16           MR. NASSIRI:  THAT'S NOT THE EXTENT OF IT.  THAT'S A

17   MAJOR PIECE OF IT BECAUSE, AS YOU POINTED OUT, YOUR HONOR, THIS

18   IS NOT SOMETHING -- ONLY CONGRESS COULD LEGISLATE TO STOP THE

19   PRACTICE AND SAY CONSENT OR NO CONSENT, GOOGLE, YOU CANNOT DO

20   THIS.

21        THAT'S NOT FOR US.  FOR US WE BELIEVE THAT WE CAN AND DO

22   HAVE THE TOOLS AND HAVE THE DESIRE TO MAKE SURE THAT PEOPLE

23   CONSENTED BECAUSE THAT IS THE LAW UNDER THE STORED

24   COMMUNICATIONS ACT.

25        THESE THINGS CANNOT BE DISCLOSED WITHOUT CONSENT.  CONSENT

1       WAS LACKING.

2               THE COURT:  SO CONSENT IS PROVIDING INFORMATION TO

3       YOUR CLIENTS, TO THE PUBLIC?

4               MR. NASSIRI:  YES.

5               THE COURT:  IF THERE IS ANY PUBLICITY ABOUT THIS

6       LAWSUIT, I DON'T KNOW IF THERE IS OR NOT, BUT PEOPLE WHO ARE

7       INVOLVED IN TECHNOLOGY SEEM TO FOLLOW THOSE THINGS, MY SENSE IS

8       THAT THE WORD IS ALREADY OUT, ISN'T IT?

9               MR. NASSIRI:  THE WORD IS OUT, YOUR HONOR.  AND

10      YOU'LL SEE AND YOU'LL HEAR FROM US, IF YOU WOULD LIKE TO AND

11      IT'S IN OUR PAPERS, THAT THE PUBLICATION PLAN THAT WE HAVE WILL

12      HIT EVERYBODY.  EVERYBODY WHO IS ON LINE IS GOING TO SEE NOTICE

13      OF THIS AND JUST BY SEEING NOTICE OF THIS AND KIND OF ASKING

14      WHAT THE CASE IS ABOUT I THINK, YOU KNOW, PEOPLE WILL START TO

15      SAY, OH, THAT WILL INTEREST ME, I WANT TO KNOW AND WHAT IS

16      GOING ON WITH MY DATA.

17          SO THAT IS A BIG PART OF WHAT WE ARE DOING.  I THINK, YOU

18      KNOW, THIS IS ONE OF THOSE INTERESTING CASES WHERE, WHERE THE

19      NOTICE PLAN ITSELF IS GOING TO DO A LOT OF GOOD.  THE NOTICE

20      PLAN BY ITSELF IS A GREAT BENEFIT BECAUSE IT BRINGS ATTENTION

21      TO WHAT IS GOING ON AND IT'S ALMOST IN A SENSE A WAY OF TELLING

22      PEOPLE, HEY, WAKE UP AND SEE WHAT IS HAPPENING WITH YOUR DATA,

23      WHEN YOU USE GOOGLE UNDER THESE CIRCUMSTANCES, YOUR SEARCH

24      QUERIES WILL BE TRANSMITTED TO THIRD PARTIES.

25              THE COURT:  IS THAT KNOWLEDGE PRETTY MUCH COMMON

1   KNOWLEDGE IN THE INTERNET NOW?

2          MR. NASSIRI:  NO.

3          THE COURT:  YOU HEAR ABOUT AND WE READ ABOUT

4   ARTICLES AND ABOUT THERE IS NO PRIVACY ANY MORE, THE LOSS OF

5   PRIVACY AND THIS META DATA AND ALL OF THESE THINGS.  ISN'T THAT

6   BECOMING COMMON KNOWLEDGE THAT PARENTS TELL THEIR FIVE-YEAR-OLD

7   KIDS, WHEN YOU DO SEARCHES, YOU WILL BE DISCOVERED AND ALL OF

8   THESE THINGS?  ISN'T IT COMMON KNOWLEDGE NOW?

9          MR. NASSIRI:  I WOULD SAY SINCE THE EDWARD SNOWDEN

10  AFFAIR IT'S MORE PREVALENT.  PEOPLE TALK ABOUT IT AND I THINK

11  THEY PAY LIP SERVICE TO IT, BUT EVEN THE PEOPLE IN THIS ROOM

12  WHO HAVE STUDIED IT, I WOULD SAY THE EXTENT TO WHAT IS GOING

13  ON, THE DEVIL IS IN THE DETAILS HERE, IT REALLY IS.  AND MOST

14  PEOPLE I TALK TO KIND OF REALLY DON'T UNDERSTAND THE MECHANISMS

15  FOR IT AND THE CONSEQUENCES.

16      AND IN PARTICULAR THE QUESTION THAT YOU ASK THAT IS

17  DIRECTLY RELEVANT HERE IS DO PEOPLE KNOW THAT WHEN THEY TYPE

18  THEIR SEARCH QUERIES INTO GOOGLE, THAT THOSE SEARCH QUERIES MAY

19  END UP BEING ASSOCIATED WITH THEM IN THE FUTURE?  I WOULD SAY

20  ANECDOTALLY PROBABLY NOT FOR MOST PEOPLE.

21          THE COURT:  AND YOU THINK THAT THIS LAWSUIT WOULD

22  CURE THAT LACK OF KNOWLEDGE?

23          MR. NASSIRI:  I WISH I COULD BE --

24          THE COURT:  YOUR COLLEAGUE IS NODDING HIS HEAD UP

25  AND DOWN WHICH IS A UNIVERSAL SIGN FOR AGREEMENT I THINK.

1        MR. NASSIRI:  YES.  WELL, YOUR HONOR, THAT CERTAINLY

2   IS THE GOAL AND I THINK WE ARE PUTTING TOGETHER A REALLY GOOD

3   PROGRAM TO DO THAT, AND I THINK WE'RE GOING TO GO A LONG WAYS

4   IN DOING THAT.

5        THE COURT:  AND THE PIECE THAT ACCOMPLISHES THAT, I

6   GUESS IT'S SPECIFIC TO GOOGLE IS THE FAQ THAT THEY'RE GOING TO

7   ADD, I SUPPOSE?

8        MR. NASSIRI:  SPECIFIC TO GOOGLE, YOUR HONOR, YES,

9   IN TERMS OF THE BUSINESS PRACTICE CHANGE.

10       AS WE ALREADY DISCUSSED, THEY'RE NOT GOING TO CHANGE THEIR

11   PRACTICES PER SE, AND WE DON'T BELIEVE THAT THAT WOULD BE

12   APPROPRIATE FROM THE SCOPE OF THE CLAIMS THAT WE BROUGHT.

13       BUT THEY ARE GOING TO MAKE THEIR DISCLOSURES MORE ROBUST

14   AND MORE PROMINENT AND THAT IN CONJUNCTION WITH THE NOTICE

15   PROGRAM AND THE CY PRES EFFORTS AND GENERALLY THE CLIMATE IN

16   THE MEDIA THESE DAYS I THINK WILL GO A LONG WAY IN KIND OF

17   REALLY QUALITATIVELY INCREASING THE PUBLIC'S AWARENESS.

18       THE COURT:  WHAT DO THE STUDIES TELL US AND THE

19   RESEARCH TELL US ABOUT LEADERSHIP OF FAQ'S?

20       MR. NASSIRI:  WELL, THAT'S A GOOD QUESTION, YOUR

21   HONOR.

22       THE COURT:  THANK YOU.

23       MR. NASSIRI:  THAT'S WHY YOU SIT THERE.  I DON'T

24   HAVE SPECIFIC NUMBERS FOR YOU.  I KNOW THAT THERE ARE A LOT OF

25   COMMENTATORS OUT THERE AND CRITIQUES WHO SAY IT'S PRACTICALLY

1    NIL AND IT'S NOT GOING TO DO ANYTHING.

2              THE COURT:  WHAT DO YOU THINK?

3              MR. NASSIRI:  I THINK IT'S A MIXED BAG, AND I DON'T

4    THINK THAT THAT BY ITSELF WOULD BE SUFFICIENT TO MAKE SURE THAT

5    PEOPLE HAVE INFORMED CONSENT AND THAT THEY KNOW WHAT THEY'RE

6    DOING WHEN THEY ENTER SEARCH QUERIES.

7              THE COURT:  WHAT WOULD BE THE BEST WAY TO ACCOMPLISH

8    THAT?  THAT'S THE GOAL OF THE LAWSUIT.  WHAT IS THE BEST WAY TO

9    ACCOMPLISH THAT?

10             MR. NASSIRI:  HYPOTHETICALLY SPEAKING?  YOU KNOW,

11   GOOGLE IS VERY, VERY, VERY PROTECTIVE OF THE REAL STATE ON ITS

12   SEARCH PAGE.  IT HAS BEEN FOR A LONG TIME.  IT'S VERY BLANK.

13   THERE'S NOT MUCH THERE.

14        IF WE HAD REALLY, REALLY BIG FLASHING NEON WORDS THAT SAID

15   YOUR DISCLOSURES MAY BE TRANSMITTED, YOUR SEARCH QUERIES MAY BE

16   TRANSMITTED, THAT WOULD PROBABLY BE THE BEST RIGHT THERE AT THE

17   TIME THE PEOPLE ARE GOING TO MAKE THIS DECISION, DO I WANT TO

18   PUT THIS IN THE SEARCH BOX, THAT WOULD BE THE BEST.

19        I DON'T THINK THAT WE CAN --

20             THE COURT:  I'LL ASK MR. JOHNSON ABOUT GIVING HIM A

21   PREVIEW OF WHAT IS TO COME HERE.  IT'S LIKE THE PITCHER TELLING

22   YOU I'M GOING TO THROW YOU A FAST BALL AND IT'S A CURVE BALL

23   AND SO YOU'LL HAVE THE BENEFIT OF THE STRIKE ZONE.

24             MR. NASSIRI:  WELL, YOUR HONOR, YOU KNOW, WE DO HAVE

25   THE SECOND BEST.  GOOGLE DOES HAVE ON ITS SEARCH PAGE A LINK TO

1    THE PRIVACY POLICY AND WITH THE ROBUST PUBLICATION AND NOTICE

2    PLAN ALONG WITH THE EDUCATION AND THE OUTREACH --

3              THE COURT:  I WANT TO TALK TO YOU ABOUT THAT IN A

4    MINUTE, TOO.

5              MR. NASSIRI:  OKAY.  -- WE EXPECT THAT A LOT MORE

6    PEOPLE WILL CLICK ON THE PRIVACY POLICY AND WHEN THEY DO THAT,

7    IT WILL BE A LOT EASIER FOR THEM TO FIND THE FAQ'S AND SEE

8    EXACTLY WHAT IT IS THAT GOOGLE DOES WITH SEARCH QUERIES.

9              THE COURT:  OKAY.  YOU KNOW, THE EDUCATIONAL

10   PROGRAMS, WE SEE THESE A LOT IN THESE CASES -- NOT A LOT BUT

11   IT'S BECOMING WITH MORE FREQUENCY THAT RESOLUTIONS IN CASES

12   RESULT IN CY PRES TO VARIOUS ORGANIZATIONS AND THINK TANKS AND

13   STUFF LIKE THAT, THAT SUPPORT GREATER INFORMATION FOR CONSUMERS

14   FOR THE PUBLIC.

15        AND I'M CURIOUS, IT SEEMS LIKE THE STUDENTS SHOULD BE THE

16   RECIPIENT OF THAT INFORMATION.  SHOULDN'T THAT BE THE CORPORATE

17   WORLD?  SHOULDN'T YOU BE EDUCATING THEM AS TO WHAT THEY

18   SHOULDN'T DO?  I MEAN, YOUR CLIENTS PART COMPANY WITH THIS

19   PRIVACY LAW AND SHOULDN'T THERE BE AN EDUCATION FOR THE

20   CORPORATE WORLD AS TO WHAT THEY'RE DOING?

21             MR. NASSIRI:  CAN YOU -- I'M NOT SURE I UNDERSTAND

22   THE IMPORT OF THE QUESTION.

23             THE COURT:  YES, SURE.  YOU KNOW, THESE PROGRAMS,

24   THESE INITIATIVES, THESE INDIVIDUALS THAT YOU HAVE IDENTIFIED

25   HERE, THEY'RE GOING TO CREATE, I GUESS, RESEARCH AND EDUCATE

1      THE PUBLIC.

2                MR. NASSIRI:  AND SOME TECHNOLOGY AS WELL, YOUR

3      HONOR.

4                THE COURT:  AND THE THOUGHT OCCURS TO ME, WELL,

5      OKAY, BUT DON'T WE REALLY NEED TO EDUCATE THE CORPORATE WORLD

6      OF GOOGLES AND WHOEVER DOES THIS THAT THIS IS WRONG?  ISN'T

7      THAT WHAT YOUR PREMISE IS?

8                MR. NASSIRI:  WELL, THAT'S A LOADED QUESTION.

9                THE COURT:  THAT'S WHY I ASKED IT.

10                MR. NASSIRI:  WE WANTED TO STAY WITHIN THE CONFINES

11      OF THE LAWSUIT.  AND, I MEAN, THERE ARE A LOT OF ANSWERS TO

12      THAT, AND I'M NOT SURE EXACTLY HOW TO STRUCTURE MY RESPONSE.

13          BUT ONE IS THAT THAT SEEMS A LITTLE BIT BEYOND THE SCOPE

14      OF WHAT WE'RE DOING HERE.  AGAIN, OUR PRIMARY CONCERN IS MAKING

15      SURE THAT PEOPLE ARE INFORMED AND GIVE INFORMED CONSENT.

16          ALSO THAT IS -- BY THE WAY, YOUR HONOR, I THINK ONE OF

17      THE -- MAY I BRIEFLY EXPLAIN WHAT WE'RE DOING WITH CY PRES SO

18      THAT --

19                THE COURT:  SURE, SURE.

20                MR. NASSIRI:  IT'S RELEVANT TO YOUR QUESTION.

21                THE COURT:  PLEASE.  THANK YOU.

22                MR. NASSIRI:  I BELIEVE WE'RE DOING SOMETHING NEW

23      HERE AND SOME OF THE CRITIQUES ARE MISINFORMED ABOUT WHAT WE'RE

24      DOING.

25          WE ARE RAISING THE BAR, AND I THINK RAISING THE BAR FOR

1      ALL CY PRES SETTLEMENTS LIKE THIS TO FOLLOW.

2          WE'RE TREATING THE CY PRES ALLOCATION MORE LIKE A GRANT

3      MAKING ORGANIZATION WOULD TREAT GRANT -- PROSPECTIVE GRANT

4      RECIPIENTS.

5              THE COURT:  ISN'T THAT WHAT THEY TRIED TO DO IN

6      LANE?

7              MR. NASSIRI:  IT'S WHAT THEY TRIED TO DO, BUT I

8      THINK WE'RE TAKING IT FURTHER.

9          AND SO -- AND I DON'T WANT TO MAKE -- OR I DON'T WANT TO

10     HAVE MY MOUTH WRITE CHECKS THAT WE CAN'T CASH ULTIMATELY, BUT I

11     THINK WE'LL GET THERE.

12         THE MONEY WILL TO SPECIFIC PROJECTS.  THIS MONEY THAT GOES

13     TO CY PRES RECIPIENTS IS NOT GOING TO DISAPPEAR INTO THEIR

14     GENERAL OVERHEAD.  AND NOT ONLY WILL THE MONEY GO TO SPECIFIC

15     PROJECTS, THOSE PROJECTS ARE BEING VETTED BY US VERY CAREFULLY

16     BEFORE WE EVEN PRESENT THEM TO THE COURT AND THE CLASS TO MAKE

17     SURE THAT THEY KIND OF ARE WITHIN THE CONFINES OF THE LAWSUIT

18     AND MEET SOME OF THE OBJECTIVES THAT WE HAVE FRAMED BY THE

19     LAWSUIT.

20         ONE OF THEM THAT MAY OR MAY NOT END UP BEFORE YOU, YOUR

21     HONOR, IS AN INITIATIVE BY THE BERKMAN CENTER AT HARVARD LAW

22     SCHOOL TO BRING TOGETHER --

23             THE COURT:  IT'S YOUR ALMA MATER.

24             MR. NASSIRI:  IT IS MY ALMA MATER AND SOME PEOPLE

25     HAVE RAISED AN OBJECTION TO THAT, AND I'M HAPPY TO DISCUSS

1    THAT.

2         BUT WHAT ONE OF THE PROPOSALS THAT THEY HAVE BROUGHT TO

3    THE TABLE DOES HAVE A CORPORATE ANGLE TO IT, A

4    CORPORATE EDUCATION ANGLE.  AN EDUCATION, BY THE WAY, NOBODY

5    KNOWS MORE ABOUT THIS THAN GOOGLE SO THEY SHOULD BE EDUCATING

6    US NOT VICE VERSA.

7         SO -- BUT THIS KIND OF MULTIDISCIPLINARY DIALOGUE I THINK

8    IS IMPORTANT, AND IT'S SOMETHING THAT WE HOPE TO COVER AMONG

9    THE PROJECTS THAT WE'RE LOOKING AT FOR CY PRES WHERE YOU WOULD

10   BRING TOGETHER LEADERS FROM INDUSTRY LIKE GOOGLE, YOU WOULD

11   BRING TOGETHER PRIVACY ADVOCATES, AND LEGAL PROFESSIONALS AND

12   ENFORCEMENT, REGULATORY PEOPLE, AND SIT THEM DOWN IN A ROOM AND

13   GET EVERYBODY'S INPUT INTO WHAT IS GOING ON BECAUSE, AGAIN,

14   IT'S NOT A SIMPLE QUESTION TO JUST SAY, WELL, GOOGLE, YOU HAVE

15   TO STOP DOING THIS BECAUSE THERE'S A LOT OF BENEFIT TO WHAT

16   THEY'RE DOING.

17        ANOTHER PROJECT THAT WE'RE LOOKING AT --

18            THE COURT:  SO THAT MIGHT ALSO -- I COULD ENVISION A

19   CONFERENCE WHERE A CLASS ACTION, PLAINTIFF'S CLASS ACTION

20   LAWYERS MEET WITH CORPORATE EXECUTIVES OF GOOGLE AND WHOEVER

21   ELSE, YAHOO AND THESE FOLKS, AND YOU TALK ABOUT THIS IS WHY WE

22   SUE YOU AND THESE ARE THE ISSUES THAT WE SEE OUR CLIENTS BRING

23   TO US, WE WANT TO BRING THIS TO YOUR ATTENTION AND HAVE THIS

24   KIND OF CONVERSATION IN SOME CONFERENCE LEVEL.

25        IS THAT WHAT YOU'RE SUGGESTING?

1          MR. NASSIRI:  YOU KNOW WHAT, WE'RE NOT GOING TO

2     ALLOW ANY CLASS ACTION LAWYERS WITHIN MILES OF THAT ROOM.  I

3     DON'T THINK THEY'RE THE RIGHT KIND OF PEOPLE TO HAVE INVOLVED

4     IN THESE KINDS OF DISCUSSIONS.

5          NOW, THERE ARE A LOT OF PRIVACY ADVOCATES WHO SHARE THE

6     SAME KINDS OF INTERESTS THAT LAWYERS DO WHO BRING CASES LIKE

7     THIS, LIKE ME, AND I WOULDN'T CALL MYSELF A CLASS ACTION LAWYER

8     OR ANYTHING, THAT PUTS ME IN A BOX.

9          BUT, YOU KNOW, THIS IS NOT ABOUT LAWSUITS FROM MY

10    PERSPECTIVE OR FROM OUR PERSPECTIVE.  THIS IS MORE ABOUT

11    SOLVING A VERY COMPLICATED PROBLEM.

12         YOU KNOW, ANOTHER INITIATIVE WE ARE LOOKING AT IS --

13    BECAUSE THESE DATA SETS, HAVING UNRESTRICTED ACCESS TO DATA

14    SETS IS REALLY IMPORTANT FOR RESEARCH AND ADVANCING TECHNOLOGY

15    AND DEVELOPING THINGS THAT BENEFIT ALL OF US.  SO THERE'S A

16    BALANCING THAT NEEDS TO TAKE PLACE.

17         HOW DO YOU USE THIS STUFF AND PROTECT PEOPLE'S PRIVACY AT

18    THE SAME TIME?  SO THAT'S ONE INITIATIVE THAT WE'RE LOOKING AT.

19         ANOTHER ONE IS A TECHNOLOGY BASE.  SO THAT WOULD BE MORE

20    POLICY, YOU KNOW, POLICY ORIENTED.

21         ANOTHER INITIATIVE WE'RE CONSIDERING IS TECHNOLOGICAL AS

22    WELL, YOUR HONOR.  BUT THIS ONE IN PARTICULAR WOULD SAY THERE'S

23    A PROGRAM WHERE YOU HAVE HEALTH DATA, WHICH IS EXTREMELY

24    SENSITIVE, YOU HAVE THESE HUGE DATA SETS ON PEOPLE'S HEALTH

25    RECORDS AND HISTORY AND HOW DO YOU MAKE THAT DATA AVAILABLE TO

1    PUBLIC HEALTH AND MEDICAL PROFESSIONALS IN A WAY THAT DOESN'T

2    VIOLATE PEOPLE'S PRIVACY WHERE NO ONE WOULD DOUBT THAT THOSE

3    ARE REALLY SENSITIVE DATA POINTS.

4         THE COURT:  AND THANK YOU FOR SHARING THOSE IDEAS

5    WITH ME.  AND THESE ARE IDEAS THAT YOU AND YOUR COLLEAGUES HAVE

6    THOUGHT OF?

7         MR. NASSIRI:  WE ARE WORKING COLLABORATIVELY TO

8    DESIGN PROGRAMS THAT WE THINK ARE GOING TO BE KIND OF RIGHT

9    SQUARELY ON POINT HERE FOR THIS LAWSUIT, BUT CERTAINLY THE

10   PEOPLE WE'RE TALKING TO ARE MUCH SMARTER THAN WE ARE AND KNOW A

11   LOT MORE ABOUT THIS STUFF.

12        THE COURT:  SO THAT WAS THE NEXT AREA OF INQUIRY I

13   HAVE.

14      DO YOU HAVE A WHITE BOOK OF PEOPLE THAT YOU WOULD LIKE TO

15   CONSULT OR CY PRES RECIPIENTS THAT YOU LOOK TO FOR THESE

16   ISSUES?

17        MR. NASSIRI:  IN THIS CASE IN PARTICULAR, YOUR

18   HONOR?

19        THE COURT:  YES.

20        MR. NASSIRI:  WELL -- SO IN THIS CASE IN PARTICULAR

21   WE DID -- SO CHRIS SOGHOIAN WHO PROVIDED A LOT OF THE

22   INFORMATION FOR THE COMPLAINT, HE'S A WELL-KNOWN PRIVACY

23   ADVOCATE WHO WORKS WITH A LOT OF THE INSTITUTIONS THAT

24   TYPICALLY RECEIVE CY PRES FUNDING, HE WEIGHED IN ON THIS AND HE

25   TALKED ABOUT KIND OF SOME OF THE PEOPLE THAT HE THOUGHT WOULD

1    BE REALLY USEFUL FOR US TO SPEAK WITH AND THE UNIVERSE OF KIND

2    OF KNOWN INSTITUTIONS WHO DO THIS KIND OF WORK IS NOT THAT

3    LARGE.

4         SO WE HAD A KIND OF UNIVERSE, A WHITE BOOK, IF YOU WILL,

5    YOUR HONOR, BUT ALSO THIS WAS -- THERE WAS A NEGOTIATING ASPECT

6    TO THIS.  WE HAD TO REACH AGREEMENT BETWEEN ALL PARTIES,

7    BETWEEN THE PLAINTIFFS AND GOOGLE.

8              THE COURT:  WITH THE RECIPIENTS OR AS TO THE

9    RECIPIENTS?

10             MR. NASSIRI:  ABOUT, ABOUT -- THAT'S RIGHT.  NOW, I

11   WANT TO BE CLEAR, YOUR HONOR, WHILE GOOGLE DID -- WE DID HAVE

12   TO AGREE ON THE POTENTIAL POOL OF RECIPIENTS, GOOGLE'S

13   INVOLVEMENT GOES NO FURTHER THAN THAT.

14        SO THERE'S NO SITUATION HERE IN WHICH, YOU KNOW, LIKE IN

15   SOME OF THE PRIOR CLASS ACTIONS, CY PRES SETTLEMENTS WHERE

16   PEOPLE WILL CRITICIZE THEM BECAUSE THE DEFENDANTS KIND OF SAT

17   ON THE BOARDS OR WERE SOMEHOW CLOSELY AFFILIATED WITH THE

18   RECEIVING INSTITUTIONS.

19        THAT'S NOT THE CASE HERE, YOUR HONOR.

20             THE COURT:  OKAY.  SO THANK YOU, THANK YOU FOR THAT.

21        SO I'M CURIOUS ALSO, THE THOUGHT OCCURS TO ME, ARE WE

22   LOOKING AT YOU INDICATED INDIVIDUALS WHO TYPICALLY RECEIVE

23   CY PRES I THINK WERE THE WORDS YOU USED.

24        AND SO ARE WE LOOKING AT THE USUAL SUSPECTS THEN?

25             MR. NASSIRI:  I THINK EVERYONE ON OUR LIST HAS, HAS

1    BEEN A RECIPIENT.

2           THE COURT:  I'M SURE SOMEONE KEEPS RECORDS AND

3    SOMEONE KEEP NOTES ABOUT WHAT INSTITUTION RECEIVES WHAT AND

4    WHAT THEY HAVE DONE WITH THOSE MONIES.

5           MR. NASSIRI:  WELL, IN THE CLASS ACTION CONTEXT

6    CERTAINLY, YOUR HONOR, IT'S ALL A MATTER OF RECORD BECAUSE

7    THEY'RE CLASS ACTIONS.

8       AND TO THE EXTENT THAT THERE IS KIND OF LESS PUBLIC

9    FUNDING GOING ON WITH THESE INSTITUTIONS, WE ARE REQUIRING THEM

10   TO PROVIDE US WITH THAT INFORMATION SO WE CAN PRESENT TO THE

11   COURT AND THE CLASS SO THAT YOUR HONOR AND THE CLASS CAN MAKE

12   THEIR OWN JUDGMENT ABOUT WHETHER THESE ARE INDEPENDENT

13   INSTITUTIONS THAT CAN BE RELIED UPON TO USE THE MONEY

14   OBJECTIVELY.

15          THE COURT:  YOU KNOW, THE THOUGHT -- THANK YOU.  THE

16   THOUGHT OCCURRED TO ME ALSO THAT THERE MAY BE SOME -- AND I

17   DON'T KNOW, I DON'T HAVE ANY PARTISAN FOR ANY SCHOOL.  I'LL

18   JUST MENTION A SMALL SCHOOL, THE UNIVERSITY OF VERMONT, LET'S

19   SAY, OR SOME SMALL SCHOOL, THAT IS -- HAS STUDENTS AND HAS

20   PROFESSORS WHO ARE JUST REALLY INCHING TO START -- THEY'RE

21   EAGER TO GO, THEY HAVE GOT STUDENTS WHO ARE WILLING TO DEVOTE

22   RESEARCH, TIME, AND PROFESSORS, BUT THEY JUST DON'T HAVE THE

23   FUNDING.

24      HAVE YOU LOOKED OUT FOR THOSE TYPE OF SCHOOLS OR

25   INSTITUTION TO SAY, GEE, MAYBE WE SHOULD -- WE'RE IN SILICON

1    VALLEY AND MAYBE WE SHOULD ACT AS ANGELS HERE AND MAYBE WE

2    SHOULD CEDE SOME OF THOSE PROGRAMS?

3                    MR. NASSIRI:  WE TOOK A BROAD LOOK, YOUR HONOR,

4    INCLUDING AT SOME OF KIND OF UPSTARTS, UNKNOWN STARTUPS IF YOU

5    WILL IN THE SPACE, AND A COUPLE OF THE POTENTIAL PROPOSED

6    RECIPIENTS I WOULD SAY RELATIVELY SPEAKING WOULD FALL INTO THAT

7    CATEGORY.

8                    THE COURT:  THESE THAT YOU HAVE ON THE LIST HERE?

9                    MR. NASSIRI:  YEAH.  I MEAN, I WOULDN'T CALL THEM

10   UNKNOWNS BUT THEY'RE RELATIVELY COMPARED TO AARP OR THE BERKMAN

11   CENTER, THEY'RE KIND OF NEWER PLAYERS.

12                   THE COURT:  I HAVE TO CONFESS, AARP, I HAVE NEVER

13   SEEN AN AARP IDENTIFIED AS A RECIPIENT IN ONE OF THESE

14   LAWSUITS.  SO THAT WAS VERY INNOVATIVE.

15                   MR. NASSIRI:  I BELIEVE THEY HAVE BEEN RECIPIENTS

16   BEFORE, BUT I DON'T HAVE THAT SPECIFIC INFORMATION AT MY

17   FINGERTIPS.

18      BUT WE FOCUSSED ON -- WE BELIEVE THE CASE LAW AND COURTS

19   BEFORE THIS HAVE WANTED SOME KIND OF REPUTATION AND TRACK

20   RECORD TO HELP KIND OF JUDGE WHETHER OR NOT.

21                   THE COURT:  RIGHT.

22                   MR. NASSIRI:  BUT BEYOND THAT, THESE -- THE ENTITIES

23   THAT WE'VE SELECTED AND MORE WELL-KNOWN ESTABLISHED ENTITIES,

24   THEY CAN DO MORE NOT JUST BECAUSE OF THE MONEY BUT BECAUSE OF

25   THEIR EXPERIENCE, THEIR CONNECTIONS, THEIR TRACK RECORD.

1          THE COURT:  NO DOUBT ABOUT IT.  I UNDERSTAND.

2          MR. NASSIRI:  AND EVEN, YOU KNOW, FOR EXAMPLE,

3    HAVING STANFORD CIS ON THE LIST, YOU KNOW, THOSE PEOPLE ARE

4    VERY WELL CONNECTED AND ARE -- I THINK THAT THEY STAND A BETTER

5    CHANCE, WITHIN THE TECH WORLD, AND -- BUT THEY STILL HAVE --

6    THEIR INTERESTS ARE IN THE RIGHT PLACE AND THEIR MISSION.

7          THE COURT:  I APPRECIATE THAT.  AND I GUESS WHAT I

8    WAS SUGGESTING IS WHAT ABOUT THE LITTLE GUY?

9          MR. NASSIRI:  YOU KNOW, WE HAVE A COUPLE OF LITTLE

10   GUYS ON THE LIST, AND THEY'LL PROBABLY RECEIVE LESS MONEY THAN

11   THE OTHERS BECAUSE THEY HAVEN'T PROVEN THEMSELVES TO THE EXTENT

12   THAT SOME OF THE OTHERS HAVE.

13         THE COURT:  AND THE OBSERVATION I'M LOOKING AT IT

14   FROM 30,000 FEET, HOW DO YOU GET STARTED?

15         MR. NASSIRI:  YEAH.

16         THE COURT:  YOU CAN'T EXPECT SOMEBODY FROM THE SMALL

17   SCHOOL WHO HAS ALL OF THE ENERGY OF STUDENTS AND PROFESSORS,

18   YOU CAN'T EXPECT THEM TO PRODUCE LIKE A STANFORD OR SOMEBODY

19   ELSE, BUT YOU HAVE TO GIVE THEM A CHANCE.

20         MR. NASSIRI:  TO BE SURE, YOUR HONOR, EVERYTHING

21   YOU'RE SAYING RESONATES WITH ME, AND I HAVE A LOT I WOULD DO IF

22   I HAD THE BILL GATES FOUNDATION KIND OF MONEY UNDER MY FINGERS.

23   BUT HERE --

24         THE COURT:  WELL, THIS IS A GOOD START.  THIS IS A

25   SETTLEMENT.

1        MR. NASSIRI:  WELL, HERE WE FEEL LIKE WE HAVE A

2  RESPONSIBILITY TO THE CLASS.  WE HAVE TO STICK WITHIN

3  APPLICABLE NINTH CIRCUIT PRECEDENT, AND I THINK THAT, YOU KNOW,

4  WE CAN'T GO OUT AND DO ALL OF THE THINGS THAT WE WOULD LIKE TO

5  DO.  IT WOULDN'T BE APPROPRIATE.

6        THE COURT:  OF COURSE, OF COURSE.  I UNDERSTAND

7  THAT.

8      BUT IT'S A SIGNIFICANT AMOUNT OF MONEY COMING FROM A

9  PUBLIC EMPLOYEE.  THIS IS A LOT OF MONEY.

10        MR. NASSIRI:  I AGREE, YOUR HONOR, THIS IS A LOT OF

11  MONEY, AND WE'RE EXCITED ABOUT IT.  I CAN'T WAIT TO PRESENT TO

12  YOU THE PROPOSAL AND TO THE PUBLIC.  AND I THINK IT'S GOING TO

13  BE A QUANTUM LEAP FROM WHAT HAS BEEN DONE IN THE PAST.

14        THE COURT:  SO LET ME -- THANK YOU FOR THAT.  I

15  APPRECIATE THAT.  I APPRECIATE THE COLLOQUY HERE AND THAT HELPS

16  ME AS FAR AS THE CY PRES ISSUES.

17      THERE ARE SOME OTHER THINGS THAT I WOULD LIKE TO GO

18  THROUGH THE DOCUMENT WITH YOU.  I KNOW YOUR COLLEAGUE OPPOSITE

19  IS DYING TO GET UP HERE AND TALK TO ME ABOUT HIS COMMENTS TO

20  THIS, BUT LET ME GO THROUGH SOME OF THESE ITEMS THAT I HAVE

21  IDENTIFIED IF I MAY, PLEASE.

22      I'M LOOKING AT THE SETTLEMENT AGREEMENT.  I'M LOOKING

23  AT -- YES, 3.1 IS THE RELIEF PARAGRAPH, PAGES 6 AND 7.  AND I'M

24  JUST LOOKING AT MY NOTES.  I THINK YOU HAVE ANSWERED THE

25  QUESTION HERE AND MY NOTES ASK MYSELF, DOES THIS MEAN -- I'M

1    LOOKING ON PAGE 7, THE LAST SENTENCE -- THIS TELLS US THEN THAT

2    THIS POLICY, THIS PRACTICE WILL NOT CHANGE, THE CURRENT

3    PRACTICE WILL NOT CHANGE; IS THAT RIGHT?

4            MR. NASSIRI:  IN TERMS OF WHAT GOOGLE DECIDES TO DO

5    WITH SEARCH QUERIES, THAT'S RIGHT.  NOW, TO GIVE IT SOME

6    CONTEXT, YOUR HONOR, I DON'T REMEMBER THE EXACT DATE NOW, BUT

7    RIGHT AROUND THE TIME THAT THE SECOND MOTION TO DISMISS WAS

8    FILED IN THIS CASE GOOGLE DID MAKE SOME CHANGES, IMPORTANT

9    CHANGES.  WHETHER OR NOT OUR LAWSUIT HAD ANYTHING TO DO WITH

10   IT, I DON'T KNOW.

11     BUT GOOGLE CHANGED ITS POLICY ON DISCLOSING SEARCH QUERIES

12   SO THAT FOR GOOGLE ACCOUNTHOLDERS WHO ARE SIGNED IN AND DO

13   SEARCHES, SO LONG AS THEY DON'T CLICK ON PAID ADVERTISEMENTS,

14   THEIR SEARCH QUERIES ARE NO LONGER DISCLOSED.

15           THE COURT:  AND HOW DO THEY KNOW THAT?  HOW DO

16   CONSUMERS KNOW THAT?  IS THAT ON THE FAQ PAGE?

17           MR. NASSIRI:  IT IS, YOUR HONOR.  I BELIEVE THERE

18   WAS A BLOG POST THAT GOT A LOT OF PRESS AT LEAST IN THE TECH

19   COMMUNITY THAT REPORTED THIS CHANGE.

20           THE COURT:  IS THERE A -- CAN YOU TELL ME, IN THE

21   INTERNET SPHERE, IS THERE A CERTAIN OR IDENTIFIABLE PAGES THAT

22   PEOPLE GO TO REGARDING PRIVACY ISSUES?

23           MR. NASSIRI:  THERE ARE.  SOME OF -- SO TECHCRUNCH

24   DOES A LOT OF REPORTING ON PRIVACY ISSUES.  REDDIT, WHICH IS A

25   HUGE SITE, ALSO DOES A LOT OF REPORTING AND THERE ARE OTHERS.

1      THE COURT:  SO THIS INFORMATION HAS PROBABLY BEEN

2  POSTED ON THOSE SITES?

3      MR. NASSIRI:  ABSOLUTELY, ABSOLUTELY.  ERIC

4  GOLDMAN -- YOU'RE PROBABLY FAMILIAR WITH ERIC GOLDMAN.  THERE

5  ARE A LOT OF PEOPLE WHO ARE WELL PUBLISHED ON THE INTERNET, AND

6  THEY'RE REPUBLISHED AND THEIR STORIES ARE PICKED UP AND THIS

7  WAS ONE OF THEIR STORIES.

8      THE COURT:  THIS GETS BACK TO MY POINT, MAYBE IF NOT

9  COMMON KNOWLEDGE, IT AT LEAST HAS GREATER KNOWLEDGE NOW ABOUT,

10  THE PUBLIC HAS GREATER KNOWLEDGE ABOUT THIS ISSUE AND ABOUT

11  WHAT GOOGLE DOES AND DOESN'T DO.

12      MR. NASSIRI:  WELL, YES AND NO, YOUR HONOR.  I

13  BELIEVE THAT THAT UNIVERSE IS KIND OF A SUBUNIVERSE OF KIND OF

14  TECHY GEEK ORIENTED PEOPLE.  MY WIFE, FOR EXAMPLE, WOULD HAVE

15  NEVER SEEN THAT STORY.

16      THE COURT:  SURE.  SO SOMEBODY'S 72 YOUNG GREAT AUNT

17  WHO LIVES IN GRINNELL, IOWA IN A LOVELY RANCH HOUSE AND SHE

18  GETS INTERNET FOR THE FIRST TIME AND SHE HAS THIS LOVELY 486

19  COMPUTER THAT HER GRANDSON, PERHAPS, GAVE HER AND SAID, NO, NO,

20  LET ME UPDATE YOU AND LET ME GET YOU SOMETHING NEW AND ALL YOU

21  HAVE TO DO IS PUSH THE BUTTON AND SHE GETS THIS AND CLICKS ON

22  IT, SHE'S NOT GOING TO GO TO AN FAQ.

23      MR. NASSIRI:  SHE MIGHT NOT, YOUR HONOR.  BUT,

24  AGAIN, SOME OF THE PROPOSALS WE'RE LOOKING AT WILL TARGET

25  PEOPLE WHO ARE LESS LIKELY TO RECEIVE THE MESSAGE THROUGH OTHER

1    CHANNELS.  SO YOUNG PEOPLE AND OLDER PEOPLE IS WHO I'M

2    REFERRING TO.

3            THE COURT:  AARP, THAT'S WHY AARP IS IN THERE.

4            MR. NASSIRI:  I'M NOT ACTUALLY NOT TALKING TO AARP.

5    WE'VE KIND OF DIVIDED.  SO I'M NOT SURE OF ALL OF THE PROPOSALS

6    THAT THEY HAVE PUT ON THE TABLE.

7        BUT, YEAH, EVEN HARVARD OR THE BERKMAN CENTER HAS DONE

8    SOME WORK THAT IS AIMED AT THOSE DEMOGRAPHICS.

9            THE COURT:  SO LET ME -- THANK YOU.  SO LET ME TURN

10   TO THE CLASS NOTICE FOR A MOMENT.  AND JUST GOING THROUGH THIS,

11   I'M AT PAGE 3 AND AT THE BOTTOM IT'S UNDER THE BASIC

12   INFORMATION TITLE, I THINK, AND THE LAST SENTENCE AND IT TALKS

13   ABOUT MORE INFORMATION.  THERE'S REFERENCE TO ABOUT THESE

14   REFERRER HEADERS.

15       AGAIN, YOU REFER THE INDIVIDUAL TO THE FAQ AND KEY TERM

16   PAGES, I GUESS, IS THAT -- WHAT IS THE PURPOSE OF HAVING THIS

17   HERE?

18           MR. NASSIRI:  WELL, ANY OPPORTUNITY TO GIVE PEOPLE

19   INFORMATION BECAUSE, ADMITTEDLY, I MEAN, REALLY WHEN YOU USE

20   THE TERM "REFERRER HEADERS," EVEN MORE PEOPLE ARE GOING TO TUNE

21   OUT.  THEY'RE NOT GOING TO KNOW WHAT THAT IS.

22       SO BECAUSE "REFERRER HEADER" IS A TECHNICAL TERM THAT

23   APPEARS THROUGHOUT THE COMPLAINT AND HERE IN THE NOTICE WE

24   WANTED TO GIVE PEOPLE AN OPPORTUNITY WHO ARE INTERESTED AT THIS

25   STAGE TO GET MORE INFORMATION ABOUT IT.

1          THE COURT:  OKAY.  THANK YOU.  AND I'M TURNING TO

2     PAGE 4 UNDER PARAGRAPH 3, WHY IS THERE A SETTLEMENT?

3          MR. NASSIRI:  UH-HUH.

4          THE COURT:  THE LAST SENTENCE THERE DESCRIBES COSTS,

5     I GUESS.  THAT WAY THEY AVOID THE COSTS AND RISKS OF A TRIAL

6     AND THE CLASS WILL RECEIVE RELIEF WHEN THE SETTLEMENT IS FINAL

7     RATHER THAN YEARS FROM NOW, IF AT ALL.

8          IS THAT KIND OF MISLEADING?

9          MR. NASSIRI:  NO.

10          THE COURT:  "THE CLASS WILL RECEIVE RELIEF," I READ

11     THAT AND AT FIRST BLUSH I THOUGHT, AND I'M TRYING TO PUT MYSELF

12     LIKE A GREAT AUNT WHO LIVES IN GRINNELL OR SOMETHING LIKE THAT.

13          WELL, AM I GOING TO GET RELIEF FROM THIS?  IS THERE

14     SOMETHING IN THE AGREEMENT THAT SAYS YOU WILL NOT RECEIVE

15     ANYTHING, BUT WHAT YOU WILL RECEIVE IS ACCESS TO AN ENHANCED

16     FAQ?  NOT IN THAT LANGUAGE I'M CERTAIN BUT --

17          MR. NASSIRI:  WELL, YOUR HONOR, SO THERE'S NOTHING

18     IN HERE THAT SAYS THAT YOU WILL NOT RECEIVE DIRECT

19     REMUNERATION.

20          THE COURT:  IS THAT SOMETHING THAT YOU THINK THE

21     CLASS SHOULD KNOW?

22          MR. NASSIRI:  YES, IT IS.

23          THE COURT:  I THOUGHT SO.  IT SEEMED TO ME THAT TO

24     BE A FULL NOTICE, MAYBE A CLASS MEMBER SHOULD KNOW THAT I'M NOT

25     GOING TO RECEIVE ANYTHING AS A CLASS MEMBER.  HOWEVER, FOR THE

1    GREATER GOOD, THE CY PRES IS RECEIVING THIS AMOUNT AND THIS IS

2    WHAT IS HOPEFULLY WILL HAPPEN FROM THOSE RECIPIENTS.

3        BUT AS AN INDIVIDUAL MEMBER, AS AN INDIVIDUAL PLAINTIFF

4    I'M NOT GOING TO RECEIVE ANYTHING.  I WON'T GET REMUNERATION,

5    AND UNLESS, AND I'LL HEAR FROM MR. JOHNSON ABOUT THIS, UNLESS

6    PERHAPS ONE OF THE MEASURES OF SETTLEMENT IS THAT GOOGLE HAS AN

7    EPIPHANY AND SAID YOU KNOW WHAT, WE'RE GOING TO EITHER STOP

8    DOING THIS OR WE'LL STOP DOING THIS FOR SIX MONTHS.  AND THAT'S

9    THE NEXT SETTLEMENT AGREEMENT.

10       I'M NOT TRYING TO MESS WITH YOUR DEAL.  I'M JUST TRYING TO

11   SUGGEST THAT THAT IS SOMETHING ELSE THAT MIGHT COME UP.

12       BUT THEY SHOULD KNOW, SHOULDN'T THEY?

13           MR. NASSIRI:  I CAN THINK OF A LOT OF THINGS THAT I

14   WOULD LIKE THEM TO DO.

15           THE COURT:  I'M TALKING ABOUT YOUR CLIENTS,

16   SHOULDN'T THEY KNOW THAT THEY'RE NOT GOING TO RECEIVE ANYTHING

17   SPECIFICALLY?

18           MR. NASSIRI:  WELL, IT'S HERE BECAUSE THE -- WHERE

19   THAT IS DISCLOSED IS IN THE NEXT SECTION OF THE SETTLEMENT

20   BENEFITS.

21           THE COURT:  RIGHT.

22           MR. NASSIRI:  SO I BELIEVE WHAT YOU'RE SAYING, YOUR

23   HONOR, IS THAT IT SHOULD BE KIND OF SIMPLER AND KIND OF STATED

24   MORE DIRECTLY.

25           THE COURT:  I THINK SO, I THINK SO.  JUST IN, YOU

```
1    KNOW, KIND OF LANGUAGE THAT A LAYPERSON MIGHT GRASP.

2         AND I AGREE WITH YOU, IT IS CAPTURED, ON PAGE 4, THE NEXT

3    BOLD TITLE IS THE SETTLEMENT OF BENEFITS AND WHAT DOES THIS

4    SETTLEMENT PROVIDE AND YOU START OFF WITH THE EIGHT AND A HALF

5    MILLION DOLLARS.

6         AND IF SOMEONE, YOU KNOW, READS THAT, THEY THINK, WOW, YOU

7    KNOW, I'M GOING TO ORDER THE MASERATI RIGHT NOW.

8              MR. NASSIRI:  AND THEN THEY REALIZE THAT THERE'S

9    ABOUT 300 OTHER MILLION PEOPLE THAT THEY ARE GOING TO SHARE?

10             THE COURT:  THAT'S RIGHT.

11             MR. NASSIRI:  AND, OH, MAYBE I SHOULD PUT THAT ORDER

12   ON HOLD.

13             THE COURT:  THAT'S RIGHT.  I'M SUGGESTING THAT IS,

14   YOU KNOW, SOME -- AND WE'RE NOT GOING TO WORD SMITH IT NOW, BUT

15   I'M SUGGESTING THAT MAYBE SOMETHING COULD BE INSERTED THAT

16   LET'S THE INDIVIDUAL CLASS MEMBER KNOW THAT YOU WILL NOT BE

17   RECEIVING OR YOUR SHARE OF THIS BECAUSE OF THE SIZE OF THE

18   CLASS, I DON'T WANT TO WORD SMITH AND TELL YOU WHAT TO DO, BUT

19   SOME INFORMATION THAT LET'S THEM KNOW THAT THERE IS NOT GOING

20   TO BE, THERE'S NOT AN EXPECTATION OF REMUNERATION, PERSONAL

21   REMUNERATION.

22             MR. NASSIRI:  I UNDERSTAND THAT, YOUR HONOR.

23             THE COURT:  AND YOU DO CAPTURE THAT IN WHAT I TURN

24   INTO A BULLET POINT IN MY NOTES, TO PROMOTE PUBLIC AWARENESS,

25   ET CETERA.  BUT I THINK A NEXUS, JUST TO LET THE INDIVIDUALS
```

```
1       KNOW.

2            I THINK IN YOUR SUPPLEMENTAL THAT YOU ANSWERED THE OTHER

3       QUESTION I HAD WHICH WAS NUMBER 12, PARAGRAPH 12, UNDER LAWYERS

4       REPRESENTING YOU AND THE TRIPLE X FOR THE FEES AND THINGS,

5       YOU'LL INSERT THAT APPROPRIATELY.

6                 MR. NASSIRI:  YES, YOUR HONOR.

7                 THE COURT:  THE NEXT ITEM THAT I HAD WAS THE NOTICE

8       AND SPECIFICALLY THE OBJECTING, ANY OBJECTORS.

9            YOU'RE GOING TO PROVIDE, I THINK, DOCUMENTS FOR PLAINTIFFS

10      TO, OR CLASS MEMBERS TO SIGN AND JOIN THE CLASS, I THINK.  IS

11      THAT RIGHT?  IS THERE PREPRINTED FORMS OR SOMETHING?

12                MR. NASSIRI:  DID YOU SAY TO JOIN THE CLASS?

13                THE COURT:  YES, TO BECOME MEMBERS OR NOT TO OPT

14      OUT?  EXCUSE ME.

15                MR. NASSIRI:  WELL, THIS IS NOT AN OPT IN.  TO

16      OPT OUT, YES, YOUR HONOR.

17                THE COURT:  RIGHT.

18                MR. NASSIRI:  YES, WE WILL PROVIDE THAT ON THE

19      WEBSITE.

20                THE COURT:  AND THE THOUGHT OCCURRED TO ME THAT WHAT

21      MIGHT BE HELPFUL IS THAT IF THERE ARE THOSE OPT OUT FORMS, AND

22      THEN AS TO OBJECTORS, ARE YOU GOING TO PROVIDE A FORM FOR

23      OBJECTORS TO FILL OUT AND PREPARE?

24                MR. NASSIRI:  I DON'T BELIEVE WE PLANNED ON THAT,

25      YOUR HONOR.
```

```
 1              THE COURT:  AND I WAS THINKING, JUST BECAUSE OF THE
 2     SIZE OF THE CLASS, BUT IT MIGHT BE HELPFUL TO THE COURT, AND I
 3     HOPE IT WOULD BE HELPFUL TO THE PARTIES, THAT IF THOSE
 4     OBJECTIONS WERE RECEIVED, IF THEY WERE IN SOME KIND OF A
 5     UNIFORM TYPE OF FORMAT, PARDON ME, AND IF THAT COULD BE
 6     PREPARED AND PROVIDED FOR OBJECTOR'S USE, IF THERE ARE ANY, I
 7     THINK THAT'S BETTER THAN RECEIVING THREE-BY-FIVE CARDS THAT ARE
 8     IN HANDWRITTEN AND IN SMALL, SMALL TYPE -- THAT WOULD BE
 9     HELPFUL TO ME SHOULD THAT --
10              MR. NASSIRI:  I DON'T ANTICIPATE ANY OBJECTIONS BUT,
11     YES, YOUR HONOR.
12              THE COURT:  ALL RIGHT.  GREAT.
13              MR. NASSIRI:  ONE QUESTION ABOUT THAT, YOUR HONOR.
14     SO THE FORM, DID YOU ENVISION THAT IT WOULD BE MANDATORY OR
15     OPTIONAL?
16              THE COURT:  FOR AN OBJECTION?
17              MR. NASSIRI:  TO USE THE OBJECTION FORM?
18              THE COURT:  I THINK MANDATORY.  I WOULD LIKE
19     OBJECTIONS TO BE PROVIDED IN A FORM THAT IS PROVIDED BY YOU.
20          NOW, IF THERE ARE OBJECTORS, WE KNOW WE WILL RECEIVE
21     LETTERS OUTSIDE OF THIS, AND THAT'S JUST NORMAL, BUT I'D LIKE
22     AT LEAST THE ATTEMPT TO BE MADE SO THAT WE CAN KIND OF PROVIDE
23     SOME TYPE OF A UNIVERSAL, UNIVERSAL FORM, IF YOU WILL.
24              MR. NASSIRI:  AND SHOULD THERE BE A RESTRICTION IN
25     TERMS OF LENGTH?  BECAUSE I WAS BEING A LITTLE FACETIOUS ABOUT
```

1      NOT EXPECTING ANY OBJECTORS WITH A CLASS THIS SIZE.

2              THE COURT:  I KNEW THAT.

3              MR. NASSIRI:  RIGHT.  AND SO WOULD IT BE USEFUL TO

4      THE COURT --

5              THE COURT:  WELL, I DON'T THINK THAT WE SHOULD SAY

6      IN 25 WORDS OR LESS.

7              MR. NASSIRI:  ALL RIGHT, 30.

8              THE COURT:  BUT YOU ARE TOO YOUNG TO KNOW, BUT THERE

9      USED TO BE THESE CONTESTS ALL OF THE TIME AND THEY'D SAY IN

10     25 WORDS OR LESS, TELL US WHY PROCTOR AND GAMBLE WOULD GIVE

11     AWAY WASHING MACHINES, OR SOMETHING.

12         IN 25 WORDS OR LESS TELL US WHY YOU THINK -- WHO YOUR

13     FAVORITE FIGURE IS ON MOUNT RUSHMORE AND WHY.  AND PEOPLE ALL

14     OVER THE COUNTRY WOULD SEND IN AND SOMEHOW THEY WOULD GIVE

15     WASHERS AWAY THAT WAY.

16         NO, NO.  I THINK THAT THE FORM CAN BE PRESENTED.  YOU CAN

17     -- I DON'T KNOW, IN AN 8-AND-A-HALF-BY-AN-11 PAGE ENTER YOUR

18     COMMENTS HERE.

19         AND THEN THE NEXT QUESTION IS AT THE BOTTOM RIGHT-HAND

20     CORNER, JUDGE, DO WE PUT IN -- ATTACH ADDITIONAL PAGES IF

21     NECESSARY.

22              MR. NASSIRI:  YOU READ MY MIND.

23              THE COURT:  AND SHOULD THERE BE ADDITIONAL LANGUAGE

24     THAT SAYS LIMITED TO INSERT NUMBER HERE?

25              MR. NASSIRI:  RIGHT.

1        THE COURT:  THERE PROBABLY SHOULD BE SOME

2    LIMITATION, I SUPPOSE.

3        AND WE COULD LOOK TO THE LOCAL RULES OF COURT THAT LIMIT

4    THE NUMBER OF PAGES FOR PLEADINGS.  I SUPPOSE THAT'S A START

5    AND FOR YOUR POSITION, I EXPECT YOU WOULD LIKE TO SAY YOU WOULD

6    LIKE TO BACK OFF FROM THAT?

7        MR. NASSIRI:  I DON'T WANT TO GET IN THE WAY OF DUE

8    PROCESS, YOUR HONOR, AND THAT'S, YOU KNOW, I THINK IT'S

9    PROBABLY A DECISION THAT I WOULD LIKE FOR THE COURT TO MAKE.

10        THE COURT:  OKAY.  BUT I'D LIKE IT TO BE KEPT IN

11    SOME KIND OF A FORM LIKE THAT SO THAT WE CAN, WE CAN LOOK AT

12    THAT AND THEN I'LL MAKE THAT DECISION.  THANK YOU.

13        MR. NASSIRI:  OKAY.

14        THE COURT:  GOOD. ALL RIGHT.  ALL RIGHT.  WELL,

15    THAT'S -- I THINK THAT WAS HELPFUL TO ME.

16        WHY DON'T I HEAR FROM MR. JOHNSON FOR JUST A MOMENT.

17        MR. NASSIRI:  THANK YOU.

18        THE COURT:  YOU'RE WELCOME.  GOOD MORNING.

19        MR. JOHNSON:  GOOD MORNING, YOUR HONOR.

20        THE COURT:  WELL, ARE YOU READY TO HIT THE FAST BALL

21    OR CURVE WHEN I TOLD YOU IT WAS COMING?

22        MR. JOHNSON:  I HAVE BEEN HIM LIMBERING UP AT

23    COUNSEL TABLE, YOUR HONOR.

24        THE COURT:  SO LET'S TALK ABOUT THE NOTICE FIRST AND

25    THE THOUGHT OCCURRED TO ME THAT THE BEST FORM OF NOTICE FOR

1    THIS, SHOULDN'T THAT BE FOR GOOGLE TO PUT IT ON THEIR, WHATEVER

2    IT IS, THEIR HOME PAGE, CLICK HERE FOR INFORMATION ABOUT

3    EXCITING LAWSUIT THAT YOU MAY BE A PARTY TO?

4         MR. JOHNSON:  WELL, YOUR HONOR, I THINK THAT THERE

5    ARE -- THERE WOULD BE MANY COMPETING, YOU KNOW, INTEREST GROUPS

6    WHO WOULD LOVE TO DO THAT.

7         I THINK THAT THE QUESTION BEFORE THE COURT AND THAT THE

8    QUESTION THAT THE PARTIES NEGOTIATED AT LEAST HOW CAN WE LET

9    PEOPLE KNOW ABOUT THIS?

10        AND IT'S NOT JUST THE FAQ SECTION AND IT'S NOT JUST THE

11   KEY TERM, BUT THERE'S AN ELABORATE ADVERTISING CAMPAIGN WITH

12   BANNER ADS ON THE MOST POPULAR WEBSITES THAT ARE DESIGNED TO

13   LET PEOPLE KNOW, AND EXACTLY THE WAY THAT THE PEOPLE ARE USING

14   THE INTERNET AND SEARCHING THE INTERNET, WHERE ARE THEY LIKELY

15   TO BE.  AND IT WOULDN'T EVEN BE JUST GOOGLE, AND IT'S GOING TO

16   BE ON A VARIETY, IF THEY'RE TAKING OUT ADVERTISING ON A VARIETY

17   OF SITES, TO LET PEOPLE KNOW ABOUT THE SETTLEMENT.

18        AND WITH RESPECT TO THE PEOPLE WHO CARE ABOUT, YOU KNOW,

19   THESE ISSUES IN PARTICULAR, THEY ARE FREQUENT VISITORS AND

20   FREQUENT COMPARERS OF CHANGERS IN FACTS AND TERMS AND THOSE

21   PEOPLE GET A LOT OF PUBLICITY AND THIS LAWSUIT HAS ALREADY

22   GOTTEN A LOT OF PUBLICITY.

23        SO TO THE EXTENT THAT IT WAS THE GOAL OF PLAINTIFFS IN THE

24   FIRST PLACE, YOU KNOW, IT'S A GOAL THAT HAS PARTLY BEEN

25   ACCOMPLISHED BUT WILL BE FURTHER ACCOMPLISHED THROUGH THE, YOU

1     KNOW, PROVIDED AD CAMPAIGN WHICH IS DESIGNED TO CREATE I THINK

2     200 MILLION IMPRESSIONS.

3             THE COURT:  SO YOU THINK THAT THE -- WHAT YOU'RE

4     TELLING US, MR. JOHNSON, WHAT YOU HAVE NEGOTIATED WITH COUNSEL

5     IS FAIR NOTICE AND IT PROVIDES FAIR NOTICE AND CAPTURES THE

6     WIDEST POSSIBLE UNIVERSES THAT YOU CAN?

7             MR. JOHNSON:  YEAH, IT'S DESIGNED -- I MEAN, THE

8     HEART OF THEIR LAWSUIT, YOUR HONOR, AND SINCE WE'RE HERE TO

9     TALK ABOUT SETTLEMENT, I WON'T GO INTO THE MERITS, BUT THE

10    HEART OF THEIR LAWSUIT IS THAT THESE REFERRER HEADERS, WHICH

11    ARE VISIBLE, THE SEARCH QUERIES WHICH ARE VISIBLE AND THE TERMS

12    ARE VISIBLE IN THE LITTLE WHITE LINE, YOU KNOW, THAT THAT

13    WASN'T DISCLOSED, THAT PEOPLE DIDN'T KNOW THAT WHEN THEY WERE

14    CLICKING THAT THE PAGE THAT THEY CLICKED TO COULD SEE IT.

15        THIS SETTLEMENT PROCESS, NOT TO MENTION ALL OF THE

16    PUBLICITY ASSOCIATED WITH THE LAWSUIT, IS DESIGNED TO

17    ACCOMPLISH THAT, TO LET PEOPLE KNOW.

18            THE COURT:  SO IT'S A NOTICE LAWSUIT FROM YOUR

19    PERSPECTIVE?

20            MR. JOHNSON:  YES, YOUR HONOR.

21            THE COURT:  THAT IS WHAT IT IS ABOUT?

22            MR. JOHNSON:  AND THEY SAY THAT.  YOU KNOW, ASIDE

23    FROM, YOU KNOW, QUESTIONS OF HARM, I DON'T THINK ANYONE IS

24    ALLEGING ECONOMIC HARM.

25        I THINK THE COURT FOUND IN ONE OF ITS OPINIONS IN GAOS

1    THAT THERE WAS NO IMMINENT THREAT TO PEOPLE.  I MEAN, PARAGRAPH

2    4 OF THE CONSOLIDATED COMPLAINT SAYS THAT, YOU KNOW, TYPICALLY

3    THERE'S NOT A WAY OF SEEING WHO MADE THE SEARCH IN THE FIRST

4    PLACE, HENCE A PRIVACY ISSUE.

5         I THINK THAT THE LAWSUIT AND THE NOTICE AND THE RELIEF

6    PROVIDED FOR MORE THAN ACCOMPLISHES THE, THE GOAL THAT THE

7    PLAINTIFFS HAD IN THE FIRST PLACE.

8              THE COURT:  WHAT ABOUT THESE -- YOU HEARD ME SPEAK

9    WITH YOUR COLLEAGUE OPPOSITE ABOUT THESE CHANGES AND AT LEAST

10   OBSERVATIONS THAT I HAVE.

11             ANY COMMENT YOU WANT TO MAKE AS TO ANY OF THOSE?

12             MR. JOHNSON:  WELL, YOUR HONOR, I THINK THAT JUST

13   WITH RESPECT TO THE RELIEF REQUESTED, I THINK THOSE WOULD BE

14   THINGS THAT WE WOULD BE, YOU KNOW, HAPPY TO DISCUSS AND COME UP

15   WITH SOMETHING THAT FULLY SATISFIES THE COURT.

16        I THINK YOUR HONOR FOCUSSED ON PARAGRAPH 3.  PARAGRAPH 5

17   OF THE NOTICE TALKS ABOUT WHAT THE RELIEF IS, AND I THINK THE

18   COURT ALLUDED TO THAT A MOMENT AGO.

19        I THINK THAT WITH RESPECT TO THE FORM FOR OBJECTORS, I

20   THINK THAT I WILL SAY, NOT HAVING HAD A CHANCE TO TALK WITH MY

21   CLIENT, IT STRIKES ME AS CERTAINLY A PRACTICAL THING AND A

22   THING THAT I WOULD UNDERSTAND THE COURT WOULD WANT.

23        THE ONLY QUESTION I WOULD RAISE ABOUT THAT IS, YOU KNOW,

24   WOULD AN OBJECTOR USE IT AS A POSSIBLE APPEAL POINT THAT THE

25   COURT LIMITED ME TO A FIVE PAGE, YOU KNOW?  AS THE COURT KNOWS,

1    PEOPLE CAN BE VERY CREATIVE NOT JUST IN BRINGING LAWSUITS BUT

2    IN OBJECTING TO SETTLEMENTS OF LAWSUITS.

3            THE COURT:  WELL, THAT'S WHY I WAS SUGGESTING

4    PERHAPS IF THERE'S A PAGE LIMIT, IF IT IS CREATED AND THERE IS

5    A FORM.

6       AND MAYBE I'M GOING TO ASK YOU TO CREATE THE FORM, JUST SO

7    THAT I CAN LOOK AT IT AND SEE AND THINK ABOUT IT IF THERE IS A

8    PAGE LIMIT ON IT, MAYBE IT WOULD MEET THE LOCAL RULES FOR

9    PLEADING PURPOSES AND YOU'RE RIGHT TO POINT OUT ANY DUE PROCESS

10    ISSUES.  I CERTAINLY DON'T WANT TO LIMIT PEOPLE TO THE 25 WORDS

11    OR LESS.

12            MR. JOHNSON:  I THINK THAT'S HOW THELMA RITTER MADE

13    HER WAY TO HOLLYWOOD, YOUR HONOR, THE GREAT CHARACTER ACTOR,

14    SHE WON ONE OF THOSE.

15            THE COURT:  SOMEONE HAS GOT TO WIN.  AND SOMEONE

16    DOES ALWAYS.

17       THAT'S A GOOD SUGGESTION, AND I THINK I WOULD LIKE YOU TO

18    CREATE THOSE FORMS SO WE CAN LOOK AT THEM AND SEE IF IT'S

19    PRACTICAL TO ACTUALLY DO THAT.

20       LET'S SEE, AND THE ESTIMATE FOR THIS NOTICE IS UP TO A

21    MILLION DOLLARS; IS THAT RIGHT?

22            MR. JOHNSON:  I BELIEVE THAT'S WHAT THE

23    ADMINISTRATOR PROVIDED.

24            THE COURT:  AND IS THAT A -- DO YOU KNOW ANYTHING

25    ABOUT THAT FIGURE?  IS THAT A HARD FIGURE OR IS THAT KIND OF A

1    MUSHY FIGURE?  I MEAN, A MILLION DOLLARS FOR NOTICE?

2             MR. JOHNSON:  IT WAS PREPARED BY PROFESSIONALS WHO

3    WERE IN THE BUSINESS OF ENGAGING IN THESE KINDS OF NOTICES.

4        IT'S MY UNDERSTANDING THAT IT WAS A WELL VETTED FIGURE AND

5    WE'LL ACCOMPLISH THEIR 200 MILLION IMPRESSIONS GOAL.

6             THE COURT:  OKAY.

7             MR. EDWARDS:  YOUR HONOR, I APOLOGIZE FOR

8    INTERRUPTING BUT I JUST WANTED TO COMMENT.

9             THE COURT:  NO PROBLEM AT ALL.

10            MR. EDWARDS:  IN EXHIBIT 4(C) OF THE SUBMISSION THAT

11   THE PLAINTIFFS MADE ON THE MOTION FOR A PRELIMINARY APPROVAL,

12   THERE'S AN ITEMIZATION OF HOW THAT FIGURE IS DERIVED AND

13   MR. ASCHENBRENER HAS HAD THE MOST CLOSE COMMUNICATIONS WITH THE

14   NOTICE ADMINISTRATOR ABOUT THAT.

15       I BELIEVE THE MILLION DOLLAR FIGURE IN THE SETTLEMENT

16   AGREEMENT ITSELF IS SORT OF AN INITIAL FUNDING BY GOOGLE

17   BECAUSE IT WILL COVER THE PROJECTED COST OF NOTICE AND SOME

18   OTHER ADMINISTRATIVE ISSUES.

19       AND SO WE JUST WANTED TO CLARIFY THAT POINT, THERE IS SOME

20   BACKUP.  AND TO THE EXTENT THAT THERE ARE REALLY DETAILED

21   QUESTIONS, I THINK MR. ASCHENBRENER CAN PROBABLY ADDRESS THEM.

22            THE COURT:  GREAT.  OKAY.  ALL RIGHT.  THANK YOU.

23   THANK YOU FOR THAT.

24       ANYTHING ELSE, MR. JOHNSON, YOU WOULD LIKE ME TO KNOW IN

25   SUPPORT OF THIS?

1      MR. JOHNSON:  NO, YOUR HONOR.  I THINK OTHER THAN

2  THE FACT THAT WE -- THAT IT WAS THE PRODUCT OF A HEAVILY

3  NEGOTIATED SETTLEMENT WHICH WE HAD THE ASSISTANCE OF RANDY

4  WOLF, WHO I BELIEVE THE COURT IS FAMILIAR WITH, WHO BELIEVED

5  UNDER THE CIRCUMSTANCES THIS WAS THE FAIR PROPOSAL.

6      THE COURT:  YES, I THINK -- AND I NEGLECTED TO

7  MENTION THAT AT THE OUTSET HOW YOU GOT HERE.

8      AND THE LAWSUIT WAS FILED, AND I KNOW THERE WAS SOME

9  MOTION PRACTICE, AND THEN AS YOU SUGGEST, YOU MET WITH A

10  PROFESSIONAL MEDIATOR.

11      MR. JOHNSON:  YES, YOUR HONOR.  YES, YOUR HONOR.

12      THE COURT:  AND YOU HASHED OUT THE ISSUES AND YOU

13  HAVE COME TO THIS RESOLUTION AND WHAT YOU'RE ASKING THE COURT

14  TO FIND AS FAIR, ADEQUATE, AND REASONABLE?

15      MR. JOHNSON:  ABSOLUTELY, YOUR HONOR.

16      THE COURT:  AND I THINK YOU INDICATED IN YOUR

17  PLEADINGS THE RISK FOR BOTH SIDES AS TO THE LAWSUIT PROGRESSING

18  AND GOING FORWARD AND MEMBERS OF THE COMMUNITY MIGHT GO ONE WAY

19  OR THE OTHER AS THEY SAT AS A JURY AND LISTENED TO BOTH SIDES

20  AND BOTH OF YOU FELT THAT IT WAS AND IN BOTH OF YOUR BEST

21  INTERESTS TO RESOLVE THE CASE AS YOU HAVE BROUGHT TO THE COURT

22  HERE THIS MORNING.

23      MR. JOHNSON:  YES, YOUR HONOR, GIVEN THE

24  UNCERTAINTIES AND THE ISSUES OF FIRST IMPRESSION THAT ARE

25  MENTIONED IN THE PAPERS, YES, YOUR HONOR.

1          THE COURT:  GREAT.  THANK YOU VERY MUCH.

2          MR. JOHNSON:  THANK YOU.

3          THE COURT:  YOU'RE WELCOME.  THANK YOU.

4      SO I DID HAVE SOME OTHER -- WE WERE TALKING, MR. NASSIRI,

5  ABOUT THE POOL OF IDENTIFIED INDIVIDUALS, AND I APPRECIATE THAT

6  COLLOQUY.  AS I UNDERSTAND IT THE MACARTHUR FOUNDATION --

7          MR. NASSIRI:  DO YOU WANT ME TO STEP UP?

8          THE COURT:  YES, THANK YOU.  THE MACARTHUR

9  FOUNDATION HAS TAKEN THEMSELVES OUT OF THIS LIST?

10          MR. NASSIRI:  THEY HAVE.

11          THE COURT:  RIGHT.  AND I DON'T KNOW IF YOU WERE --

12  PARDON ME -- THINKING OF REPLACING THEM WITH SOMEONE ELSE, BUT

13  I THINK IT'S -- WHAT I WOULD LIKE TO HAVE YOU DO IS GIVE ME --

14  I'D LIKE YOU TO DO A LITTLE MORE WORK ON THIS.  PARDON ME.

15      AND WHAT I'D LIKE YOU TO DO IS I'D LIKE SOME MORE

16  INFORMATION ABOUT THE SELECTION PROCESS AND THE IDENTIFICATION

17  OF THE POOL OF CY PRES RECIPIENTS.

18      AND WHAT IS IT SPECIFICALLY, AS SPECIFIC AS YOU CAN, CAN

19  YOU TELL ME WHAT IS IT THAT THEY'RE GOING TO DO?

20      YOU'VE TALKED ABOUT THE DIFFERENT CONFERENCES, PERHAPS, OR

21  WHATEVER THERE WAS GOING TO BE, MEETINGS WITH GROUPS.

22      IF YOU COULD BE MORE SPECIFIC FOR ME TO GIVE ME GUIDANCE

23  AS TO WHAT THE PUBLIC AND I CAN EXPECT THE WORK PRODUCT TO BE.

24      AND, OF COURSE, IN THESE CASES WE CAN'T POLICE THEM AND I

25  DON'T SIT HERE AS A PROFESSOR TO HAVE THEM COME IN HERE AND

1    GRADE THEIR WORK.

2         BUT I THINK IT IS APPROPRIATE FOR ME TO, WHEN I LOOK, OR

3    WHEN I LOOK AT THIS SETTLEMENT, TO SPECIFICALLY LOOK AT THE

4    TASK THAT THEY'RE GOING TO ACCOMPLISH, OR LOOK AT THE GOALS

5    THAT THIS SETTLEMENT SETS FOR THEM.  I THINK THAT'S APPROPRIATE

6    FOR ME TO LOOK AT.  I KNOW YOU PUT IT IN YOUR PLEADINGS.

7              MR. NASSIRI:  WELL, I HAVE SOMETHING TO SAY ABOUT

8    THAT NOW, YOUR HONOR.

9              THE COURT:  OKAY.

10             MR. NASSIRI:  A FEW THINGS.  FIRST, WITH RESPECT TO

11   GRADING THEM, I ACTUALLY THINK THAT WHAT WE'RE DOING WILL MOVE

12   YOU A BIG STEP CLOSER, AND EVERYBODY ELSE, CLOSER TO GRADING

13   THEM BOTH IN MAKING A DECISION ABOUT WHETHER OR NOT TO GIVE

14   THEM THE MONEY AND THEN DOWN THE ROAD HOW THEY DID WITH IT.

15        I DON'T KNOW IF YOUR HONOR IS AWARE THAT LIKE MAYBE

16   SIX MONTHS AGO THERE WAS A LOT OF PRESS ABOUT CERTAIN CHARITIES

17   THAT WERE WASTING MONEY THAT WAS GIVEN TO THEM AND THERE

18   WERE -- THERE WERE THESE CHARITY WATCHDOG FOUNDATIONS THAT

19   PUBLISHED STATISTICS SAYING THAT CHARITY X FOR EVERY DOLLAR YOU

20   GIVE THEM, ONLY SIX CENTS OF IT ACTUALLY GOES TO THE TARGET

21   COMMUNITY.

22        SO STARTING ON THAT TRAIL I KIND OF TOOK A LOOK AT THOSE

23   WATCHDOGS, AND THEY HAVE DONE SOME REALLY GOOD WORK IN COMING

24   UP WITH CRITERIA FOR INCREASING TRANSPARENCY AND ACCOUNTABILITY

25   WITH RESPECT TO CHARITIES.  IT'S PERFECTLY APPLICABLE HERE.  WE

1    HAVE SENT, AND I'LL BE HAPPY TO SHARE WITH THE COURT IN A

2    SUPPLEMENTAL FILING, WE HAVE SENT KIND OF A TEMPLATE.  IT'S NOT

3    ACTUALLY A TEMPLATE.

4        BUT WE HAVE SENT OUR REQUIREMENTS TO ALL OF THE PROPOSED

5    RECIPIENTS AND SAID WE WANT A WRITTEN PROPOSAL FROM YOU THAT

6    ADDRESSES THESE POINTS.  AND INCLUDED IN WHAT WE ARE EXPECTING

7    TO GET BACK AND HAVE ALREADY STARTED TO GET BACK, YOUR HONOR,

8    ARE DETAILED DESCRIPTIONS OF EXACTLY WHAT THEY'RE GOING TO DO,

9    WHO IS ON STAFF, AND HOW THE BUDGET WILL BE ALLOCATED WITHIN

10   THE PROJECT.

11       WE HAVE ALSO ASKED FOR THESE ENTITIES TO GIVE US A SET OF

12   METRICS THAT THEY CAN USE TO MEASURE THE SUCCESS OF THE

13   PROGRAM, AND WE ARE GOING TO REQUIRE THEM TO PUBLISH TO THE

14   CLASS AND TO THE COURT DOWN THE ROAD THE RESULTS.

15       SO THIS IS KIND OF TRACKING PERFECTLY WHAT SOME OF THE

16   FORWARD THINKERS IN THESE CHARITY WATCHDOGS ARE DOING.

17       SO THAT WILL BRING YOU A LOT CLOSER AND EVERYBODY ELSE TO

18   ACTUALLY GRADING THEM.

19       AND IT WILL, KIND OF OVER THE BIGGER PICTURE, NOT JUST

20   THIS LAWSUIT BUT FOR THE NEXT LAWSUIT, YOU'LL HAVE SOMETHING TO

21   LOOK AT.

22            THE COURT:  IS MORE COMING?

23            MR. NASSIRI:  THERE'S PROBABLY MORE COMING.  I DON'T

24   THINK WE'RE READY TO RETIRE HERE YET AS A GROUP.

25       SO NEXT TIME YOU'LL HAVE A TRACK WORD.  WELL, YOU WERE A

1    CY PRES RECIPIENT IN THE GAOS CASE AND THIS IS WHAT HAPPENED.

2         WITH RESPECT TO TIMING, WE HAVE PUT IN OUR CALENDAR, OUR

3    PROPOSED CALENDAR, HERE A DATE FOR PROVIDING THAT INFORMATION,

4    THE INITIAL PROPOSALS THAT INCLUDE THE METRICS AND THE PROPOSED

5    ALLOCATION.

6         WE HAVE A DATE IN HERE THAT IS 60 DAYS, NOT BEING

7    PRESUMPTIVE, FROM THE DATE THAT YOU APPROVE THE PRELIMINARY

8    APPROVAL WHERE WE WOULD FILE IT WITH THE COURT AND PUBLISH IT

9    ON THE WEBSITE.

10        AND THAT GIVES -- I DON'T HAVE THE EXACT NUMBER HERE, BUT

11   THAT GIVES MONTHS, I BELIEVE, OF TIME FOR THE COURT TO CONSIDER

12   IT AND FOR THE CLASS TO CONSIDER IT BEFORE THEY HAVE TO SUBMIT

13   OBJECTIONS IF THEY SO CHOOSE.

14        SO IF WE WERE TO TRY AND DO ALL OF THAT PRIOR TO GETTING

15   PRELIMINARY APPROVAL, I THINK THIS WOULD PUSH THIS OUT A LITTLE

16   FAR BECAUSE WE WANT TO HAVE SOME BREATHING ROOM TO WORK THESE

17   PROPOSALS UP AND THEN PRESENT THEM TO THE CLASS AND THEN KIND

18   OF HAVE THEM JUDGED ON FINAL APPROVAL.

19             THE COURT:  DO YOU HAVE A PROBLEM WITH THAT?

20             MR. NASSIRI:  DO I HAVE A PROBLEM WITH TRYING TO GET

21   IT DONE BEFORE PRELIMINARY APPROVAL?

22             THE COURT:  RIGHT.

23             MR. NASSIRI:  IT'S LOGISTICALLY DIFFICULT.  IT WOULD

24   PUSH THINGS OUT OR IT WOULD --

25             THE COURT:  I GUESS THE QUESTION IS, IS THAT A

1    PROBLEM IF IT GETS PUSHED OUT AND, IF SO, WHOSE PROBLEM IS IT?

2            MR. NASSIRI:  WELL, IT IS A PROBLEM GENERALLY IF WE

3    WANT RELIEF SOONER RATHER THAN LATER.  AND, YOU KNOW, THE

4    STANDARDS FOR PRELIMINARY APPROVAL HERE ARE THAT, YOU KNOW,

5    IT'S WITHIN THE SCOPE.  AND HERE IT'S NOT SO MUCH THE

6    IDENTITY -- WELL, I'LL JUST LEAVE IT AT THAT.

7        I HAVE DESCRIBED TO YOU WHAT THE PROCESS IS.  I THINK IT

8    GOES FAR BEYOND WHAT HAS EVER BEEN DONE BEFORE, AND WE'RE GOING

9    TO PRESENT MORE INFORMATION TO THE COURT AND THE CLASS FOR

10   FINAL APPROVAL THAT HAS EVER BEEN DONE BEFORE.

11       SO IN TERMS OF PRECEDENT, I THINK WE'RE WAY BEYOND WHAT WE

12   NEED TO DO FOR PRELIMINARY APPROVAL.

13           THE COURT:  WE HAD A CONVERSATION EARLIER ABOUT THE

14   LITTLE GUY, I'LL CALL HIM, AND PARDON ME FOR BEING COLLOQUIAL,

15   BUT DOES THAT GIVE YOU ANY THOUGHT THAT YOU MIGHT WANT TO

16   REVISIT AND LOOK FOR THOSE TYPES OF ENTITIES THAT MIGHT RECEIVE

17   ANGEL FUNDING FROM THIS LAWSUIT?

18           MR. NASSIRI:  WELL, IT DOES GIVE ME A THOUGHT, YOUR

19   HONOR.  I DON'T THINK IT'S THE RIGHT WAY TO GO.  HAVING -- I'VE

20   BEEN THINKING ABOUT THIS SINCE WE HAVE FILED THE LAWSUIT.  AND

21   I HAVE BEEN VERY INVOLVED OVER THE PAST FEW YEARS, AND I

22   BELIEVE THE ENTITIES THAT WE HAVE SELECTED ARE THE BEST TO

23   ACHIEVE THE OBJECTIVES TO DO SOMETHING GOOD FOR THE CLASS ON

24   THE SUBJECT MATTER.

25       YOU KNOW, GOING TO LITTLE GUYS I JUST DON'T -- THE BENEFIT

1    THERE WOULD BE THAT YOU HAVE GOT MORE PEOPLE WHO COULD GET

2    THERE -- WHO CAN ESTABLISH A FOOTHOLD AND DO THIS KIND OF WORK

3    AND THAT'S A REAL BENEFIT, YOUR HONOR, BUT I BELIEVE IT'S JUST

4    ONE STEP REMOVED FROM WHAT WE'RE REQUIRED TO DO WITHIN THE

5    CONTEXT OF A CY PRES SETTLEMENT IN A CLASS ACTION.

6        I THINK IT'S A LITTLE TOO POLICY ORIENTED.

7            THE COURT:  SO WHEN WE LOOK AT A PURE CY PRES, AND

8    IF WE FOLLOW THAT LOGIC THEN, THERE WILL ALWAYS BE THE USUAL

9    SUSPECTS.

10            MR. NASSIRI:  WELL, NO, YOUR HONOR.  PEOPLE ARE

11   ENTERING THE SPACE MORE AND MORE.  THERE IS MORE INTEREST IN

12   FUNDING FOR IT.  AND WE HAVE A FEW NEW PLAYERS, LIKE I SAID,

13   CHICAGO-KENT AND THE WORLD PRIVACY ORGANIZATION, THOSE ARE NEW

14   PLAYERS.

15            THE COURT:  DID YOU GIVE ME INFORMATION ABOUT THAT

16   SELECTION PROCESS, WHY YOU IDENTIFIED THOSE INDIVIDUALS?  I

17   GUESS WHAT I'M SAYING IS PERHAPS I WOULD LIKE TO -- AND I THINK

18   YOU'RE VERY CLOSE, I AGREE WITH YOU, FOR PRELIMINARY APPROVAL.

19   YOU'RE VERY CLOSE.  THESE ARE JUST SOME LITTLE MINUTIA, BUT I

20   WOULD LIKE ADDITIONAL INFORMATION AS TO THAT THOUGHT PROCESS.

21       YOU HAVE ARTICULATED IT VERY WELL THIS MORNING.  AND YOU

22   HAVE GIVEN ME A LOT OF ANSWERS TO MY QUESTIONS, BUT I THINK I

23   WOULD BENEFIT FROM THAT INFORMATION.

24       YOUR COLLEAGUE IS STANDING BEHIND YOU.

25            MR. ASCHENBRENER:  YOUR HONOR, MAY I BE HEARD ON

```
1     THAT ISSUE VERY BRIEFLY?

2             THE COURT:  SURE.

3             MR. ASCHENBRENER:  JUST TO RESPOND AND GIVE A LITTLE

4     MORE COLOR TO MY COLLEAGUE'S THOUGHTFUL RESPONSE AS IT RELATES

5     TO THE COURT'S INQUIRY REGARDING, QUOTE, "THE LITTLE GUY."  WE

6     CERTAINLY DID ACTUALLY GIVE THAT A LOT OF THOUGHT, AND I DON'T

7     WANT TO SAY TOO MUCH WITHOUT CONSENT FROM GOOGLE ABOUT THE

8     NEGOTIATION PROCESS AND THE MEDIATION PROCESS.

9             THE COURT:  AND I SHOULDN'T KNOW ABOUT THAT.

10            MR. ASCHENBRENER:  BUT WHAT I CAN TELL YOU I BELIEVE

11    WITHOUT VIOLATING ANY CONFIDENCES THERE IS THAT A LOT OF

12    ORGANIZATIONS WERE CONSIDERED WELL BEYOND THE USUAL SUSPECTS

13    THAT ADDRESS THE -- THAT WOULD ADDRESS THE COURT'S LINE OF

14    QUESTIONING HERE.

15        AND WHILE I CANNOT SPEAK FOR GOOGLE, I IMAGINE THAT THEY

16    GAVE GREAT THOUGHT TO THAT AS WELL.

17        AND THE LIST PRESENTED TO THE COURT OF PROPOSED RECIPIENTS

18    REFLECTS, AS WAS DISCUSSED EARLIER, A NEGOTIATED LIST, BUT IT

19    DID INCLUDE, THROUGH THE NEGOTIATION AND MEDIATION PROCESS, A

20    FULL LOOK AT A VARIETY OF RECIPIENTS BEYOND THE USUAL SUSPECTS.

21        SO I BELIEVE THAT THE LIST PROVIDED TO THE COURT HAS

22    ALREADY TAKEN THAT INTO ACCOUNT.

23        IF THE COURT WISHES TO SEE MORE, OF COURSE, WE'LL BE HAPPY

24    TO PROVIDE MORE, BUT I THINK IT'S IMPORTANT FOR THE COURT TO

25    KNOW AT THIS TIME A LOT OF CONSIDERATION WAS GIVEN TO THAT
```

1  ALREADY AND THE LIST PROVIDED TO THE COURT REFLECTS THAT

2  THINKING AND THAT PROCESS.

3          THE COURT:  I GUESS -- AND THAT'S THE INFORMATION

4  THAT I GUESS I WAS LOOKING FOR.

5      IF YOU COULD, IN AN ADDITIONAL PLEADING JUST, YOU KNOW,

6  LET ME KNOW WHAT YOU DID IN THAT REGARD AND WHY THESE FOLKS

7  WERE IDENTIFIED.  I THINK SOME OF THESE ARE PERHAPS

8  SELF-IDENTIFYING, YOU KNOW, AS YOU SAY.

9          MR. NASSIRI:  THEY'RE SOMEWHAT OBVIOUS CHOICES.

10          THE COURT:  THANK YOU.

11          MR. NASSIRI:  AND I DON'T WANT TO OVERSTATE THE

12  INNOVATION I THINK WE HAVE GOT HERE.  THE FACT THAT ANY CONCERN

13  THAT THESE ARE KIND OF, YOU KNOW, THE USUAL GUYS AND PEOPLE

14  JUST THROW MONEY AT THEM AND MAYBE WE SHOULD BE MORE

15  THOUGHTFUL, I REALLY BELIEVE THAT, ONE, THE FACT THAT WE'RE

16  REQUIRING THEM TO SPEND THE MONEY ON SPECIFIC PROJECTS AND NOT

17  LETTING THEM DECIDE AFTER THEY GET THE MONEY HOW THEY'RE GOING

18  TO SPEND THE MONEY IS A BIG DIFFERENCE BETWEEN WHAT HAS BEEN

19  DONE IN THE PAST AND WHAT IS GOING TO BE DONE NOW.

20      AND THAT BY ITSELF I THINK WOULD ALLEVIATE SOME CONCERNS

21  ABOUT, HEY, YOU'RE JUST GIVING MONEY TO THE USUAL SUSPECTS.

22          THE COURT:  NO.  THIS IS A CREATIVE LOOK AT IT AND

23  TREATMENT OF IT AND I APPRECIATE IT.

24      AND IN MY CONVERSATION, I SHOULD SAY THIS, I DON'T MEAN TO

25  DISPARAGE ANY OF THESE INSTITUTIONS IN ANY WAY.  I'M NOT

1      ATTEMPTING TO DO THAT.  I'M NOT SUGGESTING THAT THEIR WORK IS

2      LESS THAN SUCCESSFUL OR THOUGHTFUL AT ALL.

3           I'M NOT GRADING.  I'M JUST ASKING THESE QUESTIONS AND IN

4      AN EFFORT TO PERHAPS EXPAND THE POOL.  THAT'S WHAT MY GOAL IS

5      HERE.  SO I WANT TO BE CLEAR ON THAT.

6           ALL RIGHT.  WELL, THANK YOU VERY MUCH.  WHAT I WOULD LIKE

7      YOU TO DO THEN -- I THINK WE HAVE HAD A PRETTY THOROUGH

8      CONVERSATION ABOUT YOUR GOOD WORK, BOTH SIDES GOOD WORKS THIS

9      MORNING.

10          ANYTHING FURTHER, MR. JOHNSON?

11              MR. JOHNSON:  NO, YOUR HONOR.

12              THE COURT:  WELL, WHAT I WOULD LIKE TO DO, IF YOU

13     COULD PLEASE PROVIDE FOR ME THESE FOLLOW UP, THE FORMS, THE OPT

14     OUT -- THESE OTHER FORMS, SUGGESTED FORMS OF OBJECTORS.  IF YOU

15     CAN ALSO PROVIDE ME SOME INFORMATION REGARDING THE SELECTION

16     PROCESS IN A PLEADING TYPE FORM, I THINK THAT WOULD BE HELPFUL

17     TO ME ALSO, ANYTHING YOU WANT TO ADD AS TO THE GRADING PROCESS

18     AS YOU HAVE DESCRIBED IT, THAT REVIEW PROCESS, THAT WOULD BE

19     HELPFUL ALSO.

20          I THINK THE MORE, BECAUSE THIS IS INNOVATIVE AS YOU

21     SUGGEST, SIR, I THINK THE MORE INFORMATION THAT IS PUT IN THE

22     PLEADINGS AND IN THE ACTUAL SETTLEMENT ITSELF WOULD BE HELPFUL

23     FOR THIS CASE AND ALSO AS YOU SUGGEST FOR FUTURE CASES FOR

24     OTHER LITIGANTS TO LOOK AT FOR, PERHAPS, GUIDANCE.

25              MR. NASSIRI:  I ACTUALLY LOOK FORWARD TO THE

1     OPPORTUNITY.  I'M EXCITED ABOUT THIS.

2               THE COURT:  RIGHT.  GREAT, AS AM I.

3          SO CAN WE HAVE THIS INFORMATION -- LET'S SEE, WHAT DO YOU

4     THINK, SEPTEMBER 6TH?

5               MR. NASSIRI:  EASILY, YES.

6               MR. JOHNSON:  YES, YOUR HONOR.

7               THE COURT:  OKAY.  GREAT.  AND AT THAT TIME THE

8     MATTER WILL BE DEEMED SUBMITTED.

9          THANK YOU VERY MUCH FOR THE CONVERSATION THIS MORNING.

10              MR. JOHNSON:  THANK YOU, YOUR HONOR.

11              MR. NASSIRI:  THANK YOU, YOUR HONOR.

12              THE COURT:  AND WE'LL TAKE A RECESS.

13         (COURT CONCLUDED AT 10:50 A.M.)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16                         _____
                           IRENE RODRIGUEZ, CSR, CRR
                           CERTIFICATE NUMBER 8076
17

18                         DATED:  AUGUST 26, 2013
19

20

21

22

23

24

25