United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE<br>GOOGLE REFERRER HEADER PRIVACY LITIGATION<br><br>_____/ | CASE NO. 5:10-cv-04809 EJD<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Docket Item No(s). 52] |

Presently before the court in this consolidated internet privacy litigation is the unopposed Motion for Preliminary Approval of Class Action Settlement filed by representative Plaintiffs Paloma Gaos, Anthony Italiano and Gabriel Priyev ("Plaintiffs"). See Docket Item No. 52. Federal jurisdiction arises pursuant to 28 U.S.C. § 1331. Having carefully considered Plaintiffs' motion and additional filings as well as the arguments of counsel at the hearing on this matter, the court has determined the motion should be granted for the reasons stated below.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

According to the Consolidated Class Action Complaint ("CCAC"), "searching" is one of the "most basic activities performed in the Internet," and Defendant Google, Inc.'s ("Defendant") website offers the most-used search engine in the world." See CCAC, Docket Item No. 50, at ¶¶ 15, 16.  This case focuses on that proprietary search engine.  Plaintiffs allege Defendant operated the search engine in such a manner that violated their Internet privacy rights by disclosing personal

information to third parties.

Specifically, Plaintiffs allege that Defendant's search engine intentionally and by default included the user's search terms in the resulting URL of the search results page. Id. at ¶ 56. Thus, when a user of Defendant's search engine clicked on a link from the search results page, the owner of the website subject to the click received the user's search terms in the "referrer header"[1] from Defendant. Id. at ¶ 57. Several web analytics services parse the search query information from web server logs, or otherwise collect the search query from the referrer header transmitted by each user's web browser. Id. at ¶ 58. Indeed, Defendant's own analytics product provide webmasters with this information in the aggregate. Id.

According to Plaintiffs, the problem with Google's disclosure of search information to these third parties is that the referrer header - which displays the user's search terms - can sometimes contain certain personal information often subject to search queries, including:

> users' real names, street addresses, phone numbers, credit card numbers, social security numbers, financial account numbers and more, all of which increases the risk of identity theft. User search queries can also contain highly-personal and sensitive issues, such as confidential medical information, racial or ethnic origins, political or religious beliefs or sexuality, which are often tied to the user's personal information.

Id. at ¶ 3.

Based on these allegations, Plaintiffs assert the following causes of action: (1) violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) breach of implied contract; (5) unjust enrichment; and (6) declaratory and injunctive relief. They seek to represent the following proposed class:

> All persons in the United States who submitted a search query to Google at any time between October 25, 2006 and the date of notice to the class of certification. Excluded from the Class are Google, its officers and directors, legal representatives, successors or assigns, any entity in which Google has or had a controlling interest, any judge before whom this case is assigned and the judge's immediate family.

---

[1] In the simplest of terms, the "referrer" or referring page is the URL of the previous webpage from which a link was followed. HTTP referer, Wikipedia, http://en.wikipedia.org/wiki/HTTP_referer (last visited Mar. 24, 2013).

2
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

As to the relevant procedural history, Gaos initiated the action in this court on October 25, 2010. See Docket Item No. 1. Judge James Ware granted Defendant's Motion to Dismiss the original complaint with leave to amend on April 7, 2011. See Docket Item No. 24. The case was then reassigned to the undersigned on April 25, 2011, and Defendant's second Motion to Dismiss was granted with leave to amend on March 29, 2012. See Docket Item Nos. 25, 38. Gaos filed a Second Amended Complaint on May 1, 2012, adding Italiano as an additional representative plaintiff and which Defendant, once again, moved to dismiss. See Docket Item Nos. 39, 44.

Meanwhile, Priyev filed his action on February 29, 2012, in the Northern District of Illinois. See Docket Item No. 1 in Case No. 5:13-cv-00093 EJD. That court transferred the action to this district on January 8, 2013. See Docket Item No. 48 in Case No. 5:13-cv-00093 EJD. On April 30, 2013, the undersigned granted the parties' stipulation to relate and consolidate the actions for the purpose of settlement proceedings. See Docket Item No. 51. This motion followed.

## II. LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). At the preliminary stage, the court must first assess whether a class exists. Id. (citing Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997)). Second, the court must determine whether the proposed settlement "is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). If the court preliminarily certifies the class and finds the proposed settlement fair to its members, the court schedules a fairness hearing where it will make a final determination of the class settlement. Okudan v. Volkswagen Credit, Inc., No. 09-CV-2293-H (JMA), 2011 U.S. Dist. LEXIS 84567, at *6 (S.D. Cal. Aug. 1, 2011).

## III. DISCUSSION

### A. Class Certification

The court first examines whether this action is appropriate for class treatment keeping in

3
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

mind the rules that control such an inquiry. The Federal Rules of Civil Procedure describe four preliminary requirements for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. See Fed. R. Civ. P. 23(a)(1)-(4). If these are satisfied, the court must then examine whether the requirements of Rule 23(b)(1), (b)(2), or (b)(3) are satisfied. Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2548-49 (2011).

The Rule 23 requirements are more than "a mere pleading standard." Id. The class representations are subjected to a "rigorous analysis" which compels the moving party to "affirmatively demonstrate . . . compliance with the rule - that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id.

### 1. Rule 23(a)

As to the issue of numerosity, Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable." Fed. R. Civ. P. 23(a)(1). In this context, "impracticability" is not equated with impossibility; it is only an apparent difficulty or inconvenience from joining all members of the class. Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913-14 (9th Cir. 1964). Moreover, satisfaction of the numerosity requirement is not dependent upon any specific number of proposed class members, but "where the number of class members exceeds forty, and particularly where class members number in excess of one hundred, the numerosity requirement will generally be found to be met." Int'l Molders' & Allied Workers' Local 164 v. Nelson, 102 F.R.D. 457, 461 (N.D. Cal. 1983).

In their motion, Plaintiffs are unable to provide an exact estimate of the size of the purported class. But that does not necessarily defeat a favorable determination of numerosity. "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." Orantes-Hernandez v. Smith, 541 F. Supp. 351, 370 (C.D. Cal. 1982). Indeed, it is often the case that "[t]he sheer number of potential class members justifies [a] Court's finding" of numerosity. Tchoboian v. Parking Concepts, Inc., No. SACV 09-422 JVS (ANX), 2009 U.S. Dist. LEXIS 62122, at *13, 2009 WL 2169883 (C.D. Cal. July 16, 2009). Here, that "sheer number" supports satisfaction of the numerosity requirement since Plaintiffs represent

that notice of this settlement will be potentially communicated to over 129 million visitors of Defendant's website.[2] Based on that representation, the court finds that Plaintiffs have made an adequate showing of numerosity.

Turning to Rule 23(a)(2), this section requires there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In the wake of Wal-Mart, commonality now requires "the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Wal-Mart, 131 S. Ct. at 2551 (quoting Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 (1982)). The claims of all class members "must depend on a common contention . . . of such a nature that it is capable of classwide resolution - which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Here, Plaintiffs contend the commonality requirement is met because the claims of all class members arise from one critical allegation: that Defendant's system-wide practice and policy of storage and disclosure of their search query information was unlawful. The court agrees, since confirmation of this allegation would resolve an issue essential to the validity of all causes of action for all members of the class. Thus, having considered the issue in light of Wal-Mart, the court finds this case meets the commonality requirement of Rule 23(a)(2).

Rule 23(a)(3) requires that the representative party's claim be "typical of the claim . . . of the class." Fed. R. Civ. P. 23(a)(3). "Under this rule's permissive standards, representative claims are typical if they are reasonably co-extensive with those absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Here, Plaintiffs' personal claims are similar, if not identical, to those of any and all absent class members since Plaintiffs were subjected to Defendant's storage and disclosure policies as users of Defendant's search engine. These policies applied to anyone who conducted a search on Defendant's website, and the ensuing damage to all

---

[2] This estimation is based on information obtained from comScore, which Plaintiffs describe as a "global Internet information provider" that "maintains a proprietary database capturing more than 1 trillion transactions monthly, equal to almost 40% of the monthly page views of the entire internet." See Decl. of Richard W. Simmons, Docket Item No. 52, at ¶ 22 n. 6. Information from comScore revealed that 129,979,000 individuals visited Defendant's search website in the six months preceding the filing of this motion. Id. at ¶ 24.

5
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

class members flows from this uniform application. For this reason, Plaintiffs have satisfied the typicality requirement.

Finally, Rule 23(a)(4) requires a showing that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a)(4). Constitutional due process is central to this determination. "[A]bsent class members must be afforded adequate representation before entry of judgment which binds them." Hanlon, 150 F.3d at 1020 (citing Hansberry v. Lee, 311 U.S. 32, 42-43 (1940)). Two questions must therefore be resolved by the court: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Id. Based on the information presented, the court answers the first question in the negative, since Plaintiffs share the desire of all class members to be compensated for the violations alleged in the CCAC. As to the second question, the court is satisfied that Plaintiffs' counsel has and will continue to pursue this action vigorously on behalf of the class considering counsel's reputation and qualifications in the area of complex internet privacy litigation.

### 2.   Rule 23(b)

Under subsection (b)(3) of Rule 23, the court must find "that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The predominance inquiry focuses on the relationship between the common and individual issues and tests whether the proposed class [is] sufficiently cohesive to warrant adjudication by representation." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009) (internal citations omitted).

As already discussed with regard to the Rule 23(a)(2) commonality requirement, the fact that the claims of all proposed class members arise from an allegation based on a uniform policy applied to all users of Defendant's search engine weighs in favor of a finding that common issues will predominate over individual issues. See Gutierrez v. Wells Fargo Bank, N.A., No. C 07-05923 WHA, 2008 U.S. Dist. LEXIS 70124, at *48, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008) (finding

6
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

predominance when "[t]he challenged practice is a standardized one applied on a routine basis to all customers."). Accordingly, the court finds the predominance requirement satisfied.

For superiority, the court must consider "whether maintenance of this litigation as a class action is efficient and whether it is fair," such that litigating this case as a class action is superior to other methods of adjudicating the controversy. Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175-76 (9th Cir. 2010). As Plaintiffs note, the alternatives to class certification are either millions of separate, individual proceedings, which would certainly be time-consuming and inefficient, or an abandonment of claims by most class members since the amount of individual recovery could be relatively small - an outcome which is certainly not desirable. Moreover, it is fair to allow this case to proceed as a class action because Defendant's policy was directed at all of its users as whole, rather than at particular users of its search engine. For these reasons, the court finds that a class action is the superior method of resolving the claims of all class members. This requirement is therefore satisfied.

Since a sufficient showing has been made as to all of the requirements contained in Federal Rule of Civil Procedure 23, the class will be conditionally certified for the purposes of settlement.

**B.    Preliminary Fairness Determination**

The court now examines the fairness of the proposed settlement, beginning with the major terms of the parties' agreement. Here, the parties propose a settlement consisting purely of payments to cy pres recipients without direct payments to the class members. It contains the following components:

- Defendant will pay the total amount of $8.5 million, which will constitute the entirety of the settlement fund. All payments will be made from this fund, including: (1) distributions to cy pres recipients, (2) attorney fees and costs awards, (3) incentive awards to named plaintiffs, and (4) administration costs, including the costs due to the claims administrator.
- Cy pres recipients will receive proportional payments of the amount of the fund that remains after all other payments have been made. As a condition of receiving

7
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

    payment, all cy pres recipients must agree to devote the funds to protecting privacy on the internet.

- The parties have proposed the following entities as potential cy pres recipients: World Privacy Forum; Carnegie-Mellon; Chicago-Kent College of Law Center for Information, Society and Policy; Berkman Center for Internet and Society at Harvard University; Stanford Center for Internet and Society; and AARP, Inc.[3]

- As to particular payments, incentive awards the representative plaintiffs have been capped at $5,000 each, subject to court approval. The parties have allotted up to $1 million as costs to the Claims Administrator for the notice plan.

- In addition, Defendant will maintain information on its website under the "FAQs" to advise search users of its conduct and policies so that users can make an informed choice about whether and how to use Defendant's search engine.

    As previously noted, the details of this settlement are scrutinized to ensure they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(C). The burden to demonstrate fairness falls upon the proponents of the settlement. Staton, 327 F.3d at 959; see also Officers for Justice v. Civil Svc. Comm'n. of the City and Cnty. of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982). The relevant factors for consideration include: the strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; and the experience and views of counsel. Staton, 327 F.3d at 959.

    When, as here, settlement occurs before formal class certification, settlement approval requires a higher standard of fairness in order to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the class. Lane v. Facebook, Inc., 696 F.3d 811, 819 (9th Cir. 2012).

    The court has carefully reviewed the settlement agreement and the circumstances leading up

---

[3] This takes into account the decision of the MacArthur Foundation to withdraw from cy pres consideration after this motion was filed. See Supplemental Decl., Docket Item No. 53, at ¶ 2.

8
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  to it and finds several characteristics support a finding of fairness. First, the settlement was reached
2  after an extensive amount of motion practice and document exchange; thus, this case was not at an
3  early stage when a compromise was reached. Second, the parties engaged the services of an
4  experienced private mediator to assist them in their efforts to resolve this action at arms-length, a
5  fact which undermines any possible collusion between Plaintiffs' counsel and Defendant. Third,
6  Plaintiffs' counsel - as experienced class action litigators - support the settlement. Fourth, it is
7  apparent the parties thoughtfully considered the risk, expense and complexity of further litigation in
8  reaching a compromise. Indeed, as Plaintiffs point out, Defendant's arguments and affirmative
9  defenses in opposition to liability were viable and presented issues of first impression for the Ninth
10 Circuit. Thus, it was entirely possible that Defendant could ultimately prevail at some point, if not
11 on the next motion to dismiss which was pending at the time this motion was filed, which would
12 have resulted in further time and expense to obtain final resolution for the class. Moreover, full
13 compensation for the class would be unlikely even if Plaintiffs received a favorable verdict at trial.[4]
14 Settlement at this point avoids an adverse result and saves both parties the burden of funding what
15 could very well have been protracted litigation for many years.

At the same time, there are certain aspects of the settlement which could weigh against a finding of fairness. Most importantly, the court observes that Defendant's challenged practices will not change as a result of this settlement. Instead, Defendant will be obligated to make certain "agreed-upon disclosures," or changes to certain portions of its website, which better informs users how their search terms could be disclosed to third parties through a referrer header. This disclosure, as Plaintiffs indicate, will allow potential users of Defendant's search engine to know in advance how their search terms might be provided to third parties. This is not the best result when compared to the injunctive relief sought in the CCAC since such an order would have required Defendant to

---

[4] On that note, Plaintiffs point out that the full amount of statutory damages available through the CCAC is likely in the trillions of dollars considering the size of the class. This is an amount in excess of what Defendant could ever pay considering it is much more than it's value as a company.

9
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

stop disclosing users' search terms for profit.[5] But class action settlements do not need to embody the best result for preliminary approval. At this point, the court's role is to determine whether the settlement terms fall within a reasonable range of possible settlements, with "proper deference to the private consensual decision of the parties" to reach an agreement rather than to continue litigating. Hanlon, 150 F.3d at 1027; see also In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Considering all of the circumstances which led to a compromise here, the relief obtained for the class does fall within a reasonable range of possible settlements since it was entirely possible that nothing would be obtained if the case were dismissed or if Defendant received a favorable verdict at trial - two entirely possible scenarios that would have allowed Defendant to continue its practice without any further comment. Under this settlement, that results is avoided by providing a means for future users of Defendant's website to know the disclosure practices before conducting a search.

The court must also be mindful of the Ninth Circuit's recent direction concerning pure cy pres settlements like this one. In Lane v. Facebook, Inc., the Court clarified that the cy pres distribution must be the "next best" remedy to direct payments to the class either because proof of individual claims would be burdensome or distribution of damages too costly. 696 F.3d at 819 (citing Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990)). The Court further advised that the district court "should not find the settlement fair, adequate, and reasonable unless the cy pres remedy 'accounts for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members.'" Id. at 821 (quoting Nachshin v. AOL, LLC, 663 F.3d 1034, 1036 (9th Cir. 2011)).

In this case, a settlement providing for cy pres payments rather than direct payments to class members is the "next best" remedy for both reasons identified in Lane. Since the amount of potential class members exceeds one hundred million individuals, requiring proofs of claim from

---

[5] "As a result of [Defendant's] above-described conduct in violation of applicable law, Plaintiffs and the Class are also entitled to an order requiring [Defendant] not to use or store preexisting Web History for purposes of profiting by transmitting their information to third parties." See CCAC, at ¶ 171.

10
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

this many people would impose a significant burden to distribute, review and then verify. Similarly, the cost of sending out what would likely be very small payments to millions of class members would exceed the total monetary benefit obtained by the class.

Furthermore, Plaintiffs have demonstrated how distributing settlement funds to the proposed cy pres recipients accounts for the nature of this suit, meets the objectives of the SCA claim,[6] and furthers the interests of class members. All of the cy pres recipients were chosen only after they met certain qualifying criteria[7] tailored to the claims in this case and submitted detailed proposals aimed at resolving issues in the area of Internet privacy. The executive summaries submitted after the hearing on this motion confirm that the proposed cy pres recipients certainly have the capabilities to carry out Plaintiffs' goals. The court therefore finds, for the purposes of preliminary approval,[8] that the proposed cy pres distribution "bears a substantial nexus to the interests of the class members," as required by Lane. Id.

On balance, the factors favoring approval of the settlement outweigh those that could support a finding to the contrary. Accordingly, for the reasons described, the court will approve the settlement terms as fair, reasonable and adequate.

---

[6] "The SCA was enacted because the advent of the Internet presented a host of potential privacy breaches that the Fourth Amendment does not address." Quon v. Arch Wireless Operating Co., Inc., 529 F.3d 892, 900 (9th Cir. 2008), rev'd on other grounds by City of Ontario v. Quon, 560 U.S. 746 (2010). "Generally, the SCA prevents 'providers' of communication services from divulging private communications to certain entities and/or individuals." Id.

[7] According to Plaintiffs' counsel, cy pres recipients had to (1) be independent and free from conflict; (2) be qualified organizations with exemplary service records, and they must promote public awareness and education, and/or support research, development and initiatives related to protecting privacy on the Internet, with an emphasis on consumer-facing efforts; (3) reach and target internet users of all demographics across the country; (4) be willing to provide detailed proposals to the court and the class; and (5) be capable of using the funds to educate the class about risks attendant with disclosing personal information to internet service providers; or inform policy makers about the challenges associated with internet privacy and possible solutions; or develop tools allowing consumers to understand and control the flow of their personal information to third parties; or develop tools to prevent third parties from exploiting consumer data. See Supplemental Decl., Docket Item No. 61, at ¶ 21.

[8] It is important to emphasize that the court may reach another conclusion when determining whether to finally approve this settlement since, by that time, the detailed proposals of the cy pres recipients will have been released for comment.

11
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

### C.      Class Notices and Settlement Administration

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." However, individual notice is not always practical. When that is the case, publication or something similar is sufficient to provide notice to the individuals that will be bound by the judgment. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950).

As to the content of the notice, it must explain in easily understood language the nature of the action, definition of the class, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and the binding nature of a class judgment. Fed. R. Civ. P. 23(c)(2)(B).

This case is somewhat unique in that the size and nature of the class renders it nearly impossible to determine exactly who may qualify as a class member. In fact, due to popularity of Defendant's search engine and its rather ubiquitous position in American culture, this class potentially covers all internet users in the United States. That being the case, direct notice to class members by mail, e-mail or other electronic individualized means is impractical.

Faced with similar circumstances, other courts have approved indirect notice to potential class members in a manner similar to notice by publication. See In re MetLife Demutualization Litig., 262 F.R.D. 205, 208 (E.D.N.Y. 2009) ("The best practicable notice under the circumstances is notice by publication in newspapers. In view of the millions of members of the class, notice to class members by individual postal mail, email, or radio or television advertisements, is neither necessary nor appropriate."). That is what the parties propose here. The plan includes four media channels: (1) internet-based notice using paid banner ads targeted at potential class members (in English and in Spanish on Spanish-language websites); (2) notice via "earned media" or, in other words, through articles in the press; (3) a website decided solely to the settlement (in English and Spanish versions); and (4) a toll-free telephone number where class members can obtain additional information and request a class notice. There will also be a dedicated post office box for class members to correspond with the settlement administrator. Plaintiffs approximate this advertising campaign will

12
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  reach approximately 73.1% of likely class members. In light of the size of the class, the court finds
2  that this plan meets the goals Rule 23(c)(2)(B).
3      Plaintiffs have also included copies of the class notice, request for exclusion and objection
4  form, each of which have been amended to account for the concerns identified by the court at the
5  hearing. The court has reviewed these documents and approves them as amended.[9]

### IV.   ORDER

In light of the preceding discussion, the Motion for Preliminary Approval of Class Settlement (Docket Item No. 52) is GRANTED as follows:

1. This action is certified as a class action for settlement purposes only pursuant to subsections (a) and (b)(3) of Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b).

2. The settlement agreement and release is preliminarily approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e).

3. Named plaintiffs Paloma Gaos, Anthony Italiano and Gabriel Priyev are appointed as adequate class representatives for settlement purposes only.

4. Kassra Nassiri of Nassiri & Jung, LLP, Michael Aschenbrenner of Aschenbrenner Law, P.C. and Ilan Chorowsky of Progressive Law Group LLC are appointed as co-lead counsel for the settlement class pursuant to Federal Rule of Civil Procedure 23(g).

5. The Notice Plan and the content and form of Notice to the Settlement Class as set forth in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and the Supplemental Declaration filed September 13, 2013, are approved.

6. A hearing on the final approval of class action settlement shall be held before this court on **August 29, 2014 at 9:00 a.m.**, at the United States District Court, Northern District of California, San Jose Division, 280 South 1st Street, Courtroom 4, 5th

---

[9] Although it raised the issue at the hearing, the court declines to impose a page limit on written objections.

13
CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Floor, San Jose, California 95113.  Class Counsel may file brief(s) requesting final approval of the Settlement Agreement, Fee Award, and Incentive Award, no later than 35 calendar days before the final approval hearing.  Objections must be filed no later than **August 8, 2014.**  All other applicable dates shall be established by the Settlement Agreement and Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

**IT IS SO ORDERED.**

Dated:  March 26, 2014



EDWARD J. DAVILA
United States District Judge

CASE NO. 5:10-cv-04809 EJD
ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

14