UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PALOMA GAOS, ANTHONY ITALIANO, and GABRIEL PRIYEV individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:10-CV-4809-EJD<br><br>CLASS ACTION<br><br>**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS TO CLASS REPRESENTATIVES**<br><br>Judge: Edward J. Davila |

On August 29, 2014 the Court held a final fairness hearing. Having reviewed the unopposed papers filed in support of the Plaintiffs' Motion for Final Approval of the Class Action Settlement and Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards, and hearing argument of counsel, the Court GRANTS Plaintiffs' Motions as set forth below.

**I.   BACKGROUND**

The proposed Settlement is a successful outcome for the Class and for advocates of Internet user privacy. In exchange for dismissal of the Class's claims, the Settlement requires Defendant Google, Inc. ("Defendant" or "Google"), the Internet's most visited website, to make permanent changes to the way it discloses its practices, as well as a non-reversionary payment of $8.5 million.

Under the terms of the Settlement, Google will be obligated to inform users as to when and under what circumstances the content of users' search queries are disclosed to third parties. These disclosures represent a critical and long overdue transition to informed consent between Google and its users.

1  The Settlement also contains a monetary component in the form of an $8.5 million Common Fund, out of which money will be distributed to *cy pres* recipients dedicated to privacy-focused education, advocacy, and technology that prevents the use of private information without appropriate disclosure. (*See* Settlement Agreement, Dkt. 52-3, ¶ 3.2.)

**FINAL APPROVAL OF SETTLEMENT AGREEMENT**

**I.   LEGAL STANDARD**

The law strongly favors parties voluntarily resolving their disputes. "Unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004). Settlements avoid the time, cost, and inconvenience of complex litigation. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Srv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Under Federal Rule of Civil Procedure 23(e), parties must obtain court approval for any settlement, voluntary dismissal, or compromise of the claims, issues or defenses of a certified class. The court may only approve a settlement "after a hearing and on finding that [the settlement] is fair, reasonable, and adequate." *Id.*; *see In re OmniVision Tech, Inc.*, 559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008). A settlement is fair, reasonable, and adequate where, as here, "the interests of the class are better served by the settlement than by further litigation." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 16877832 at *8 (N.D. Cal. Apr. 22, 2010) (quoting *Manual for Complex Litig. (4th)* § 21.61 (2004)).

While "the decision to approve or reject a settlement [under Rule 23(e)] is committed to the sound discretion of the trial [j]udge[,]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988), the Court should nonetheless limit its inquiry to a determination "that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. *See also Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120 at *5 (N.D. Cal. Sept. 26, 2013). In exercising such discretion, courts give "proper deference to the private

consensual decision of the parties[,]" and avoid substituting their own judgment of what is fair for what the parties have deemed fair during arms-length negotiations. *Garner*, 2010 WL 16877832, at *8 (citing *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

## II.   THE SETTLEMENT AGREEMENT

The Ninth Circuit employs several factors to determine whether a settlement proposal is fair, adequate, and reasonable. These factors include:

> "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."

*Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Ralston v. Mortg. Investors Grp., Inc.*, 09-cv-00536 (Dkt. 426) at *3 (N.D. Cal., Sept. 19, 2013).

### A.   The Strength of Plaintiffs' Case.

The first step in assessing the fairness of a class action settlement is to examine the strength of the plaintiff's case. Analysis of this first factor is not rigid or beholden to any "particular formula by which the outcome must be tested," nor is the Court meant to "reach any ultimate conclusions of the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Garner*, 2010 WL 1687832 at *9 (quoting *Rodriguez*, 563 F.3d at 965).

Litigation is inherently risky. That is even more so where Defendant may raise credible substantive and/or procedural defenses to the Class's claims, including express defenses under the Stored Communications Act ("SCA"). These potential defenses make this Settlement all the more reasonable.

Proceeding to trial would carry significant risks, including the danger that a jury might not properly grasp the technical concepts implicated by Plaintiffs' claims, or that key expert testimony might be excluded. Moreover, at the time Plaintiffs filed this action, some of Plaintiffs' allegations

and legal theories were matters of first impression within the Ninth Circuit. Since then, the Ninth Circuit held in *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014), that the plaintiffs' claims under the SCA against defendants for using plaintiffs' personal information were not actionable. The *In re Zynga* SCA allegations are similar to the SCA allegations proffered by Plaintiffs here, and thus put the viability of some of Plaintiffs' claims at risk.

Even a verdict in Plaintiffs' favor would bring additional challenges. Calculation of actual damages suffered by class members would be inordinately difficult, while a full award of statutory damages might reach into the trillions of dollars, a sum that would far exceed the value of the Google. Google would then be inclined to seek *remittitur*, on constitutional due process grounds, again multiplying the risk to the Class.

Viewed against this backdrop, Plaintiffs' counsel justifiably accepted the Settlement, which offers an immediate and certain award for the Class.

### B.  The Risk, Expense, Complexity, and Likely Duration of Further Litigation.

When a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability posed a risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability). Further, the court acknowledged that "even with a strong case, litigation entails expense." *See Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789062 at *4 (N.D. Cal. Apr. 26, 2013).

Similarly here, the terms of the Proposed Settlement include Defendant's absolute denial of any liability. (Dkt. 52-3 at 2.) Defendant's absolute denial of liability, paired with its concerted efforts to dismiss this case (Dkts. 19, 29, and 44), favor granting final approval to the proposed Settlement Agreement. Otherwise, the Class is certain to face significant procedural hurdles, including anticipated motions for summary judgment, class certification, and possible appeals. *Rodriguez*, 563 F.3d at 966.

The degree of complex issues or facts facing the parties also favors settlement. The use of

referrer headers is a highly technical, complex area of the law. This complexity, in conjunction with the now challenged viability of some of Plaintiffs' claims, counsels in favor of a certain and immediate settlement.

### C. The Risk of Maintaining Class Action Status.

This factor favors final approval where a Court grants preliminary approval to a class certification for settlement purposes, and no developments occur between preliminary approval and final approval that warrant reexamining the certification. *See In re HP Laser Printer Litig.*, 2011 WL 3861703, at *2 (C.D. Cal. Aug. 31, 2011) (holding that where court previously granted plaintiffs' request to certify class for purposes of settlement, and where nothing changed since granting preliminary approval, final approval was appropriate.) Moreover, a district court has the ability to decertify a class at any time. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.")

Here, the Class has been certified for purposes of settlement only. (Dkt. 63 at 7.) As in *In re HP Laser Printer Litig.*, there have not been any substantive changes to this Class's satisfaction of the numerosity, commonality, typicality, or adequacy of representation elements pursuant to Fed. R. Civ. P. 23. There is no need to reexamine certification of this Class for settlement purposes.

Because Defendant has forcefully litigated this matter, filing three separate Motions to Dismiss in an effort to terminate Plaintiffs' case, the amount offered in the Settlement is the best means of providing a benefit to the Class.

### D. The Amount Offered in the Settlement.

This Settlement contemplates both monetary relief ($8.5 million distributed via a Common Fund as *cy pres* awards) and prospective relief (via Google's Agreed-Upon Disclosures). (Dkt. 52-3, ¶¶ 3.1-3.2.) In combination, the terms of this Settlement provide the best means of conveying a benefit to the Class that directly addresses the substance of Plaintiffs' complaint: protecting consumers' privacy online and informing consumers of their rights.

1. **Cy Pres Distribution.**

A *cy pres* class action settlement is appropriate where "the proof of individual claims would be burdensome or distribution of damages costly." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011); *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *7 (Dec. 19, 2013); *Lane v. Facebook, Inc.*, 696 F.3d 811, 825 (9th Cir. 2012). Here, since the amount of potential Class Members likely exceeds one hundred million individuals, requiring proofs of claim from this many people would impose a significant burden to distribute, review, and then verify. (Dkt. 63 at 10–11.)

The size of the *cy pres* recovery obtained by Class Counsel ($8.5 million) also strongly supports final approval. (Dkt. 52-3, ¶ 3.2). The substantial monetary value of the *cy pres* donations compare favorably to settlement in other Internet consumer privacy class action settlements. *See, e.g. In re Google Buzz Privacy Litig*, 2011 WL 7460099, at *3-4 (N.D. Cal. June 2, 2011) (unauthorized disclosure of email contact lists; $8.5 million settlement fund with *cy pres* payments); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) (unauthorized disclosure of personal information; *cy pres* distribution of $9.5 million); and in *In re Netflix Privacy Litig.*, 2013 WL 1120801 at *6 (March 18, 2013) (unauthorized storage of personal information; *cy pres* distribution of $9 million).

Finally, there is an appropriate nexus between the interests of the class and the *cy pres* recipients. Here, the recipients of the *cy pres* donations are organizations with track records that have identified specific uses for the distributed funds, ensuring that each *cy pres* distribution accounts for the natures of Plaintiffs' lawsuit (protecting consumer privacy), the objectives of the underlying statutes (protecting consumer privacy), and the interest of the Class (having their privacy protected).

2. **Google's Disclosures are Appropriate Prospective Relief for the Class.**

Noneconomic, prospective relief is appropriate where it provides a remedy to the violations alleged in a class action. *See Dennings v. Clearwire Corp.*, 2013 WL 1859797 (W.D. Wash. May 3, 2013), *aff'd* (Sept. 9, 2013) (granting final approval where settlement provided non-monetary, programmatic relief to class members regarding defendant's deceptive advertising);

*Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 4155361, at *9 (S.D. Cal. Sept. 5, 2008) (requiring that injunction requiring defendant to implement company-wide training program to prevent collectors from making unwanted calls was appropriate settlement relief); *LaGarde v. Support.com, Inc.*, 2013 WL 1994703 (N.D. Cal. May 13, 2013) (granting final approval to settlement with terms proscribing noneconomic relief directing the defendant to create documentation for its product that more clearly and concisely described terms) .

In addition to the *cy pres* award, this Settlement also contemplates non-monetary, permanent prospective relief. Specifically, Defendant agrees to make certain "Agreed-Upon Disclosures" concerning search queries. Defendant will post these disclosures on Google's "FAQs" webpage, "Key Terms" webpage, and "Privacy FAQ for Google Web History" webpage. (Dkt. 52-3, ¶ 3.1.)  These disclosures alert Google users to the ways in which their personal information or Google search web history could be used or compromised via referrer headers. This permanent prospective relief, paired with the *cy pres* distributions, favors final approval.

### E.    Extent of Discovery and Stage of Proceedings.

The fifth *Churchill* factor requires the Court to consider both the extent of the discovery conducted to date and the stage of the litigation as indicators of class counsel's familiarity with the case and ability to make informed decisions. *OmniVision*, 559 F. Supp. 2d at 1042 (citing *In re Mego Fin. Corp.*, 213 F.3d at 459). A compromise based on an understanding of the legal and factual issues with a genuine arm's-length negotiation is "presumed fair." *Nat'l Rural Telecomms. Corp*, 221 F.R.D. at 528.

Final approval is appropriate here because Class Counsel have engaged in extensive motion practice and document exchange. Plaintiffs have fully briefed, argued, and opposed three motions to dismiss. (Dkts. 19, 29, and 44.) Furthermore, this Settlement is the of product arms-length, serious, and extensive discussion amongst the Parties. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Rodriguez*, 563 F.3d at 963; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 445 (E.D. Cal. 2013). *See also Tijero v. Aaron Bros., Inc.*, 2013 WL 6700102, at *7 (N.D. Cal. Dec. 19, 2013) (where settlement reached after parties participated in private mediation, settlement was

appropriate for final approval.)

### F. Experience and Views of Class Counsel.

Where the attorneys have such experience, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness." *OmniVision*, 559 F. Supp. 2d at 1043 (quoting *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quoting *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). *See also Garner*, 2010 WL 1687832 at *14 (considering views of plaintiff's and defendant's counsel that the settlement was fair); *OmniVision*, 559 F. Supp. 2d at 1043.

Class Counsel have adequately demonstrated that they regularly engaged in major complex litigation and have extensive experience in consumer class action lawsuits that are similar in size, scope, and complexity to the present case. This factor favors final approval.

### G. Presence of a Governmental Participant.

"Although CAFA does not create an affirmative duty for either the state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *LaGarde v. Support.com, Inc.*, 2013 WL 1283325, at *7 (N.D. Cal. March 26, 2013).

Here, the Parties directed the Class Administrator to comply with CAFA's notice requirement and the Class Administrator provided the appropriate notice on August 8, 2013. (Class Administrator Declaration ("Class Admin. Decl.") attached hereto as Exhibit 4, ¶ 48.) A copy of the CAFA notice substantially similar to the notice sent is attached to the Declaration of the Class Administrator as Exhibit 4-6. To date, no state or federal officials have raised any objection to the Settlement. *Id*. Therefore, this factor favors final approval of the Settlement.

### H. Reaction of the Class to the Settlement.

Courts in the Ninth Circuit consider the number of class members who object to a proposed settlement when determining whether to grant final approval to a settlement agreement.

*Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). Where the vast majority of class members have not objected to the terms of a proposed settlement, this factor weighs in favor of the court granting final approval. *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526 (holding that "in the absences of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members.")

To date, the number of objections have been minimal. This strongly indicates a favorable class reaction, especially in a class that likely exceeds 100,000,000 individuals. (Dkt. 63 at 12.) *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving settlement where no objections raised to settlement).

Where exclusions and opt-outs are low, there is also a presumption of a favorable class reaction. *Id.* at 850 (granting final approval where sixteen out of 329 class members excluded themselves from the settlement). Here, the exclusion period has passed, and the total number of exclusions pales in comparison to the number of class members who have opted to remain within the class. The Class Administrator received only twelve exclusion forms by the opt-out deadline of June 24, 2014. This minimal number of exclusions paired with absolutely no objections, demonstrates a favorable class reaction.

## I.     Absence of Collusion.

Because collusion is not always evident on the face of a settlement, the Ninth Circuit has instructed courts to carefully scrutinize cases that are settled without adversarial certification for possible collusion. *Hanlon*, 150 F.3d at 1026. In particular, courts are to be aware of certain signs that warrant heightened scrutiny of the negotiation process, including: (1) where class counsel receives a disproportionate distribution of the settlement or when the class receives no monetary distribution; (2) where unawarded attorneys' fees revert to defendants rather than the settlement fund for the class; and, (3) where there is a "clear sailing" fee arrangement. *Laguna v. Coverall N. Am., Inc.*, 2014 WL 2465049, *5 (9th Cir. June 3, 2014).

Here, the Class was certified for purposes of settlement only, and therefore was not the product of adversarial certification. (Dkt. 63 at 7.) Nonetheless, even when examined under heightened scrutiny, this Settlement is wholly free of collusion. First, the terms of the Settlement

do not raise the concern that counsel is receiving a disproportionate distribution of the settlement. Here, Class Counsel seek the Ninth Circuit's "benchmark" twenty-five percent (25%) fee award of the $8.5 million common fund earmarked for *cy pres* distributions. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have . . . established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"). Further, while it is true that the Settlement does not involve a direct cash distribution to Class members, such a distribution would produce only *de minimis* cash payments, which would be reduced even further after applying administrative and distribution costs. (Dkt. 63 at 11.) Instead, the terms of the Settlement ensure that each Class member enjoys an actual indirect benefit through the sizeable *cy pres* distributions. (Dkt. 52-3, ¶ 3.2.)

Second, this Settlement does not provide for payment of attorneys' fees separate and apart from funds paid to the Class. (Dkt. 52-3, ¶ 10.1). Rather Class Counsel seek a percentage of the common fund from which *cy pres* distributions will be made – and any funds not awarded in fees will simply be distributed to the approved *cy pres* recipients rather than reverting to Google. (Dkt. 52-3, ¶ 10.1); *compare In re HP Laser Printer Litigation*, 2011 WL 3861703, at *4 (C.D. Cal. Aug. 31, 2011) (It is a sign of collusion "when the parties arrange for fees to revert to the defendant instead of to the class fund or a *cy pres* fund.").

Third, this Settlement does not contain a "clear sailing" provision.[1] (*See generally*, Dkt. 52-3.) The absence of a "clear sailing" provision supports a finding of non-collusion. In fact, the Settlement is not contingent on the Court awarding a specific fee to Class Counsel. Rather, the Parties have agreed to an overall Settlement Fund and have left the division of that fund as between the Class and counsel to the district court, as is usual in common fund cases. (Dkt. 52-3, ¶ 10.1); *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

Finally, although not dispositive, the presence of a mediator supports a finding of non-

---

[1] A "clear sailing" provision refers to a settlement term in which a defendant agrees not to challenge class counsels' fee request up to an agreed amount.

1  collusion. *Vincent v. Reser*, 2013 WL 621865 at *4 (N.D. Cal. Feb. 19, 2013). As described *supra*,
2  the complete process resulting in the Settlement was done at arms-length, by well-represented
3  parties, and under the supervision of a neutral mediator. Accordingly, the non-collusive nature of
4  this Settlement, reached after a series of arms-length negotiations and a contested mediation
5  should dispel any concern of the signs of collusion that appear in some class actions but are
6  completely absent here

7  **III.    NOTICE AND DUE PROCESS**

8        For a settlement to achieve final approval the class must be provided with notice of the
9  settlement that complies both with the requirements of due process and Federal Rule of Civil
10 Procedure ("Rule") 23(e)(1). Class notice satisfies these requirements where the notice states in
11 plain, easily understood language "the nature of the action; the definition of the class certified; the
12 claims, issues or defense; that a class member may enter an appearance through an attorney if the
13 member so desires; that the court will exclude from the class any member who requests exclusion;
14 the time and manner for requesting exclusion; and the binding effect of a class judgment on
15 members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). *See also, Four in One Co., Inc. v. S.K.*
16 *Foods, L.P.*, 2014 WL 28808, *12-13 (E.D. Cal. Jan. 2, 2014); *Hanlon v. Chrysler Corp.*, 150
17 F.3d 1011, 1024 (9th Cir. 1998).

18       Here, notice requirements have been appropriately satisfied. The Notice Plan that was
19 proposed, approved, and implemented, was appropriate. The Class Administrator and Class
20 Counsel responded to 179 inquiries posted on the Settlement Website and fielded 63 telephone
21 calls. (Class Admin. Decl., ¶¶ 67-68.) Furthermore, per Rule 23, the notice language used simple,
22 plain language regarding the nature of the lawsuit and the operative complaint, the terms of the
23 Settlement, and how a Class Member could participate in, object to, or be excluded from the
24 Settlement. (Class Admin. Decl., ¶ 62.) Notice also provided the dates and deadlines for
25 responding to the Notice and informed Class Members that the Settlement would be binding.
26 (Class Admin. Decl., ¶ 56.)

27       Notice on the Settlement Website was also supplemented with paid banner advertising and
28 earned media. There were 221,668,171 views of these ads by an estimated 95,014,649 individuals.

Copies of these banner ads are attached to Dkt. 65 as Exhibit 4-5.

The notice terms fall in line with other, similar, class action notice plans. *See, e.g. Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) (finding proposed settlement notice appropriate where it generally described the nature of the litigation, the essential terms of the Settlement, how to make a claim, object to or comment on or elect not to participate in the settlement, and where notice was additionally provided via newspaper publication). Because notice to the Class complied with the Preliminary Approval Order (Dkt. 63), Rule 23, and Due Process, it comprised the best practicable notice under the circumstances.

## APPROVAL OF REQUEST FOR ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS

### I. ATTORNEYS' FEES

Courts in the Ninth Circuit use "two separate methods for determining attorneys' fees, depending on the case": the percentage-of-recovery method and the lodestar/multiplier method. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Class Counsel's request for fees and expenses is reasonable and appropriate under both methods.

#### A. Percentage-of-Recovery Method.

The attorneys' fees sought here total 25% of the Settlement Fund. A fee award totaling 25% of the Settlement Fund equals the "benchmark" set by the Ninth Circuit for reasonable attorneys' fees in common fund cases. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)). More generally, percentage-based attorneys' fees commonly range from twenty to fifty percent. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6 (4th ed. 2002).

The award sought by Class Counsel is also reasonable when evaluated according to the non-exhaustive list of factors employed by Ninth Circuit courts. These factors include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.*, 2009 WL 3720872 at *4 (N.D. Cal. Nov. 3, 2009) (citing *Vizcaino*, 290 F.3d at 1048–50).

### 1.  *Class Counsel Achieved Excellent Results for an Enormous Class.*

The Settlement provides significant, permanent relief for the Class. The Settlement provides both (1) prospective relief that directly addresses—and corrects—the very conduct challenged by this case; and (2) indirect relief to the Class through an $8,500,000 Common Fund, which will be predominately distributed to approved *cy pres* recipients.

As briefed extensively in the Motion for Final Approval, filed concurrently, the prospective relief component of the Settlement has already resulted in permanent changes to Google's Privacy Policy and Terms of Service. To supplement Google's disclosures, the bulk of the Settlement's $8.5 million Common Fund will distributed to *cy pres* recipients to create and maintain research, advocacy, and outreach projects targeted at search engine users.

As in another recent common fund case, *In re Netflix*, 2013 WL 1120801, the Settlement's *cy pres* distributions work in concert with the contemplated prospective relief to reshape the landscape of Internet privacy protections. The size of the class here is even larger. The Class Administrator estimates that more than 100,000,000 Americans are potential class members (Class Administrator Declaration ("Class Admin. Decl."), attached here as Exhibit 4, ¶ 70). Cash payments to this many individuals would be minute in the extreme, and individual distribution would be overly burdensome and costly.

This combination of both prospective relief and monetary relief serves as an excellent recovery for the Class. Pursuant to the Settlement, the Class will have the tools necessary to determine whether and how to use Google Search. Class Members will also benefit from the efforts of organizations that share in the mission of protecting consumer privacy.

### 2.  *Class Counsel Assumed Substantial Risk by Litigating This Difficult and Complex Case on a Purely Contingent Basis.*

Class Counsel accepted and pursued Plaintiffs' claims on a purely contingent basis and invested considerable resources towards litigation of this matter in spite of substantial risk. This investment justifies the requested fee. *See Vizcaino*, 290 F.3d at 1051 ("In common fund cases, 'attorneys whose compensation depending on their winning the case [] must make up in compensation in the cases they win for the lack of compensation in the cases they lose.'") (*quoting*

*In re Wash. Power Litig.*, 19 F.3d at 1300–01).

"Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award." *In re Heritage Bond Litig*. 2005 WL 1594403 at *20 (C.D. Cal. June 10, 2005). Novel theories of liability require more time and effort, and counsel "should not be penalized for undertaking a case which may 'make new law' [but] appropriately compensated for accepting the challenge." *See id*. (*quoting Johnson v. Ga. Hwy. Express, Inc*., 488 F.2d 714, 718 (5th Cir. 1974)).

While attorneys always face the prospect of non-payment when working on contingency, these Plaintiffs' claims were particularly risky. This case presents complex issues in a highly technical field. Moreover the variety of factual and legal defenses available to Google increased the risk faced by Class Counsel. Even if successful at trial, Plaintiffs' claims would likely result in damages against Defendant Google worth many times the value of the company itself. (*See* Dkt. 52 at 17.) An excessive damages award could trigger *remittitur* and Due Process concerns. These Due Process concerns would complicate the recovery process and further multiply the risk of an inadequate recovery, in the absence of settlement.

To overcome these pitfalls, Class Counsel has dedicated extensive time to both litigating and ultimately settling this case. Class Counsel has expended 2,085.6 hours, with a value of $966,598.75, all while in the face of a potential zero recovery. Class Counsel collectively fronted $21,643.16 in expenses with no guarantee of reimbursement. Class Counsel are entitled to reimbursement of fees and expenses.

    3.  ***Litigating This Case and Negotiating Settlement Terms Required Substantial Skill and High Quality Representation from Class Counsel.***

Prosecuting a complex, nationwide class action against a large, international corporation "requires unique skills and abilities." *Knight v. Red Door Salons, Inc.* 2009 WL 248367, *6 (N.D. Cal. Feb. 2, 2009) (quoting *Edmonds v. United States*, 658 F.Supp. 1126, 1137 (D.S.C. 1987)). In a case with a class that likely exceeds more than 100 million Internet users asserted highly technical claims for recovery against Google, a massive corporation with vast resources and a highly skilled legal team, the litigation and negotiation skills demanded of Class Counsel were

high.

Achieving a settlement required Class Counsel to litigate the complex intricacies of online privacy. This required copious hours spent meeting with Defendant's counsel, exchange of numerous drafts of the Settlement Agreement and its related documents, and dozens of other attorney tasks performed over the span of several months. (Asch. Decl., ¶ 11.)

Finally, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *In re Heritage Bond Litig.*, 2005 WL 1594389 at *12 (internal quotations omitted). Despite three separate motions to dismiss (Dkts. 19, 29, and 44), and lengthy negotiations, Class Counsel obtained a substantial recovery for the Class. The Settlement provides vital information about online privacy to millions of individuals, and permanently transforms the nature of Google's communications with its users.

### 4. Class Counsel Expended Considerable Time and Expense, with No Guarantee of Any Recovery.

A contingent fee arrangement allows skilled counsel to accept cases and provide professional representation in class actions for plaintiffs "who could not otherwise afford competent attorneys." *Knight,* 2009 WL 248367 at *6. The importance of assuring representation in these cases justifies providing contingent-fee attorneys a "larger fee than if they were billing by the hour or on a flat fee." *Id*.

Class Counsel and supporting counsel submitted a fee request for $2,125,000.00, representing 2,085.6 hours without compensation, forgoing other paying work in order to do so. In connection with that representation Class Counsel and supporting counsel have advanced $21,643.16 in out-of-pocket litigation expenses, with considerable risk of non-return. The Court grants Class Counsel's petition for fees and expenses. The Court will distribute the awarded fees proportionally among Class Counsel as follows: 39% of the fees to Nassiri & Jung, LLP; 39% of the fees to Aschenbrener Law, P.C.; and 22% of the fees to Progressive Law Group, LLC.

### 5. The Requested Fee Award Is Consistent with Awards in Similar Cases.

Courts in the Ninth Circuit consistently approve attorney's fee awards at and above the 25% benchmark for common fund cases. *See, e.g., In re Netflix*, 2013 WL 1120801 at *15

(awarding class counsel fees amounting to 25% of settlement fund); *In re Google Buzz*, 2011 WL 7460099, at *4 (awarding class counsel attorney fees amounting to 25% of an $8,500,000 fund involving *cy pres* recipients arising from consumer privacy claims); *Lane v. Facebook, Inc.*, 2010 WL 2076916 at *2 (N.D. Cal. May 24, 2010) (awarding class counsel attorney fees of approximately 25% of a $9,500,000 fund involving *cy pres* recipients arising from consumer privacy claims); *Nobles v. MBNA Corp.*, 2009 WL 1854965 (N.D. Cal. June 29, 2009) (awarding class counsel attorney fees amounting to 25% of an approximately $9.3 million fund arising from a consumer fraudulent solicitation claim); *see also In re Informix Corp. Sec. Litig.*, No. 97-cv-1289, Dkt. 471 (N.D. Cal. Nov. 23, 1999) (30% of $137 million fund).

### B. Lodestar Cross-Check

Under the lodestar/multiplier method, courts calculate attorneys' fees by multiplying the number of hours that the class counsel reasonably expended on litigation by an hourly rate that takes into consideration both the region and the experience of the lawyer. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts award fees for past work at present rates to compensate for the delay in receipt of payment, *Vizcaino*, 290 F.3d at 1051, and apply a multiplier or enhancement to the lodestar to account for the substantial risk that class counsel undertook by accepting a case where no payment would be received if the lawsuit did not succeed. *Id.* at 1051.

#### 1. *Class Counsel's Current Lodestar of $966,598.75 Is Reasonable and Supports the Requested Fee Award.*

When calculating a reasonable hourly rate, the Supreme Court has held that hourly rates should be determined by the "prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). For purposes of lodestar calculations, the "relevant community" is generally considered the forum in which the district court sits. *Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034, 1054 (N.D. Cal. 2012). Courts should be guided by the prevailing community rate for similar work performed by attorneys of comparable skill, experience, and reputation." *Id*.

Here, the Bay Area rates for class action litigation can be upwards of $1,000 per hour, with the average hourly rate for a partner resting at $617.50 per hour. (*See* 2013 National Law Journal

Billing Survey, attached to Dkt. 65 as Exhibit 1-2.) Similarly, the hourly rate for associates averages $379.16 per hour. *Id*.

The Adjusted Laffey Matrix is also a helpful mechanism for determining a reasonable hourly rate. It is often used by the District of Columbia to determine reasonable hourly rates, but it has also been used by the Northern District of California to confirm that proposed hourly rates are reasonable. *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013), appeal dismissed (Sept. 18, 2013) (finding that applying the Adjusted Laffey Matrix to an attorney with over twenty years of experience confirmed that his requested hourly rate of $700 was reasonable.) *See also Bankston v. Patenaude & Felix*, 2008 WL 4078451 at *1 (N.D. Cal. Aug. 29, 2008).

In light of the Adjusted Laffey Matrix and median Bay Area rates, Class Counsel's hourly rates are well within reason and are appropriate for calculating the lodestar.

### 2. *Given the High-Risk and Complex Nature of this Action, Class Counsel is Entitled to a Multiplier of 2.2.*

The lodestar analysis is not limited to the initial mathematical calculation of class counsel's base fee. In the Ninth Circuit, multipliers at or above 2.0 are frequently awarded to compensate attorneys who bring contingency fee suits in high-risk areas of law such as consumer class actions. *See, e.g. Lane*, 2010 WL 2076916, at *2 (applying multiplier of 2). *See also In re Infospace, Inc.*, 330 F. Supp. 2d 1023, 1216 (W.D. Wash. 2004) (awarding a multiplier of 3.5 in a securities fraud class action) *In re HPL Tech., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 922–925 (N.D. Cal. 2005) (awarding multiplier of 2.87 in a securities action); *Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997) (affirming multiplier of 2.0 in 19 environmental contamination suites brought on behalf of residential property owners); *Ozga v. U.S. Remodelers, Inc.*, 2010 WL 3186971 at *3 (N.D. Cal. Aug. 9, 2010) (awarding a multiplier of 2.3 in a wage-and-hour action); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) (awarding multiplier of 3 to attorneys who oversaw and were involved in every aspect of the litigation); *In re Patriot Am. Hospitality Inc. Sec. Litig.*, MDL C-00-1300 VRW, 2005 WL 3801595 at *5 (N.D. Cal. Nov. 30, 2005) (holding multiplier of 2.63 appropriate where class members were satisfied with the settlement and counsel performed well on behalf of class).

Here, a multiplier of 2.2 appropriately reflects the risk, complexity, and time involved, and comports with multipliers awarded in similar cases.

## II.   COSTS

Reimbursement of taxable costs is governed by 28 U.S.C. § 1920 and Fed. R. Civ. P. 54. Awards of expenses "should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal 2007). "The reimbursement for travel expenses, both under 28 U.S.C. § 1920 and [Rule] 54(d) is within the broad discretion of the Court." *Id*. at 1177 (*quoting In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1369 (N.D. Cal. 1996)). It is also proper to provide reimbursement for reasonable mediation expenses. *Id*.

Here, Class Counsel requests reimbursement for $21,643.16 in expenses. The Court finds these requests reasonable and grants reimbursement for these incurred costs.

## III.   INCENTIVE AWARDS.

In the Ninth Circuit, incentive awards for Class Representatives are "fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Incentive awards are intended to "compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 at *17 (N.D. Cal. Apr. 22, 2010) (*quoting Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118, 143 (S.D.N.Y. 2001)). In the Northern District, an incentive award of $5,000 is "presumptively reasonable." *Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 2009 WL 3562871 at * 5 (N.D. Cal. Oct. 27, 2009).

Each of the three Class Representatives—Plaintiff Gaos, Plaintiff Italiano, and Plaintiff Priyev—seeks an incentive award of $5,000, for a total of $15,000 in incentive awards. (Dkt. 52-3, ¶ 10.2.) The Settlement Agreement provides that the Incentive Award will be paid out of the Common Fund of $8.5 million dollars. *Id*. This request, as indicated above in *Jacobs*, is presumptively reasonable. The requested incentive award is further justified because each Class Representative has admirably stood up to Google, the world's most popular search engine. None of the Class Representatives were promised an incentive award and the requested award is in no

way tied to the relief obtained for the Class. Rather, the requested reward is solely designed to compensate the three representatives for their efforts in this case and willingness to serve as Class Representatives despite any associated reputational risks. As such, the Court should approve the agreed-upon cumulative incentive award of $15,000 to these individuals.

## CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the Settlement Agreement and Class Counsel's Motion for Attorneys' Fees, Expenses, and Incentive Awards, are fair, adequate, and reasonable. The Settlement Agreement satisfies Federal Rule of Civil Procedure 23(e) as well as the fairness and adequacy factors of this Circuit. The Settlement Agreement is approved and shall be implemented as set forth in this Court's Final Order and Judgment. The Final Approval Motion and the Motion for Attorneys' Fees, Expenses, and Incentive Awards is therefore GRANTED.

Since this Order effectively disposes of the entire case, the Clerk shall close this file upon entry of Judgment.

IT IS SO ORDERED

Dated:

_____

EDWARD J. DAVILA

UNITED STATES DISTRICT JUDGE