KASSRA P. NASSIRI (215405)
(knassiri@nassiri-jung.com)
CHARLES H. JUNG (217909)
(cjung@nassiri-jung.com)
NASSIRI & JUNG LLP
47 Kearny Street, Suite 700
San Francisco, California 94108
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

ILAN CHOROWSKY (*Admitted Pro Hac Vice*)
(ilan@progressivelaw.com)
PROGRESSIVE LAW GROUP, LLC
1 N LaSalle Street, Suite 2255
Chicago, IL 60602
Telephone: (312) 787-2717
Facsimile: (888) 574-9038

MICHAEL J. ASCHENBRENER (277114)
(mja@aschenbrenerlaw.com)
ASCHENBRENER LAW, P.C.
795 Folsom Street, First Floor
San Francisco, CA 94107
Telephone: (415) 813-6245
Facsimile: (415) 813-6246

*Attorneys for Plaintiffs and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PALOMA GAOS, ANTHONY ITALIANO, and GABRIEL PRIYEV individually and on behalf of all others similarly situated,<br><br>                              Plaintiffs,<br><br>          v.<br><br>GOOGLE INC., a Delaware corporation,<br><br>                              Defendant. | Case No. 5:10-CV-4809-EJD<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, EXPENSES, AND COSTS**<br><br>Date: August 29, 2014<br>Time: 9:00 a.m.<br>Place: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that the Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of the proposed motion for fees, expenses, and incentive awards entered into by the Parties on August 29, 2014 at 9:00 a.m., or at such other time as set by the Court, at 289 South 1st Street, Courtroom 4, 5th Floor in San Jose, California before the Honorable Judge Davila.

Plaintiffs seek an order granting approval of the fees, costs, and incentive awards. The Motion is based on this Notice of Motion, the Brief in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter raised or submitted at the hearing, and all of the documents in the record.

Dated: July 25, 2014

1

<u>**TABLE OF CONTENTS**</u>

2

I.  **INTRODUCTION** ...............................................................................................1

3

II.  **ARGUMENT** .................................................................................................1

4

    A.  **Under the Percentage-of-Recovery Method, Class Counsel's Proposed Fee Award Meets the 25% Benchmark Regularly Approved in the Ninth Circuit.** .......................2

5

        *1.  Class Counsel Achieved Excellent Results for an Enormous Class.* .........................4

6

        *2.  Class Counsel Assumed Substantial Risk by Litigating This Difficult and Complex Case on a Purely Contingent Basis.* ................................................5

7

8

        *3.  Litigating This Case and Negotiating Settlement Terms Required Substantial Skill and High Quality Representation from Class Counsel.* ...............................7

9

        *4.  Class Counsel Expended Considerable Time and Expense, with No Guarantee of Any Recovery.* ................................................................8

10

        *5.  The Requested Fee Award Is Consistent with Awards in Similar Cases.* ...................9

11

    B.  **A Lodestar Cross-Check Confirms That The Requested Fee Award Is Reasonable.** ..9

12

        *1.  Class Counsel's Current Lodestar of $966,598.75 Is Reasonable and Supports the Requested Fee Award.* ................................................................10

13

        *2.  Given the High-Risk and Complex Nature of this Action, Class Counsel is Entitled to a Multiplier of 2.2.* ................................................................11

14

    C.  **Class Counsel Reasonably Advanced $21,643.16 in Unreimbursed Costs.** ...............13

15

    D.  **Plaintiffs Gaos, Italiano, and Priyev Should Receive Reasonable Incentive Awards for Their Efforts on Behalf of the Plaintiff Class.** ................................................14

16

17

III.  **CONCLUSION** ................................................................................................15

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**

**CASES**

*Bankston v. Patenaude & Felix*, 2008 WL 4078451 (N.D. Cal. Aug. 29, 2008)............................ 11

*Blum v. Stenson*, 465 U.S. 886 (1984) ...................................................................... 10

*Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ................... 12

*Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001)............................ 14

*Edmonds v. United States*, 658 F. Supp. 1126 (D.S.C. 1987).............................................. 7

*Fischel v. Equitable Life Assur. Socy. of U.S.*, 307 F.3d 997 (9th Cir. 2002)....................... 1

*Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........... 14

*Hajro v. U.S. Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034 (N.D. Cal. 2012) ........... 10

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)................................................. 2

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ........................................................... 9, 12

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................... 2

*In re Consumer Privacy Cases*, 175 Cal. App. 4th 545 (1st Dist. 2009) ................................. 4

*In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303 (C.D. Cal. 1977) ................. 12

*In re Google Buzz Privacy Litig.*, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ........................ 3

*In re Heritage Bond Litig.*, 2005 WL 1594389 (C.D. Cal. June 10, 2005)............................ 6, 8

*In re HPL Tech., Inc. Sec. Litig.*, 366 F. Supp. 2d 912 (N.D. Cal. 2005) ............................ 12

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal 2007) ............................ 13

*In re Informix Corp. Sec. Litig.*, No. 97-cv-1289, Dkt. 471 (N.D. Cal. Nov. 23, 1999)................ 9

*In re Infospace, Inc. Sec. Litig.*, 330 F. Supp. 2d 1203 (W.D. Wash. 2004)........................... 12

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996) ........................... 13

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)............................ 2

*In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297 (E.D.N.Y. 2010) .......................... 3

*In re Netflix Privacy Litig.*, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)...................... 3, 4, 5, 9

*In re Patriot Am. Hospitality Inc. Sec. Litig.*, 2005 WL 3801595 (N.D. Cal. Nov. 30, 2005) ....... 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013)............ 2

*In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347 (E.D.N.Y. 2000)..................................... 3

*In re Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ........................ 2, 6

*Jacobs v. Cal. St. Auto. Assn. Inter-Ins. Bureau*, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) ... 14

*Knight v. Red Door Salons, Inc.,* 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................ 7, 8

*Lane v. Facebook, Inc.*, 2010 WL 2076916 (N.D. Cal. May 24, 2010) .................................... 9, 12

*Lane v. Facebook, Inc.*, 696 F.3d 811 (9th Cir. 2012) ........................................................... 3

*Lewis v. Anderson*, 692 F.2d 1267 (9th Cir. 1982) ................................................................. 1

*Morales v. City of San Rafael*, 96 F.3d 359 (9th Cir. 1996) ..................................................... 11, 12

*Nobles v. MBNA Corp.*, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ...................................... 9

*Ozga v. U.S. Remodelers, Inc.,* 2010 WL 3186971 (N.D. Cal. Aug. 9, 2010) ............................ 12

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ................................. 3

*Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000) ................................................................... 1

*Recouvreur v. Carreon*, 940 F. Supp. 2d 1063 (N.D. Cal. 2013) ............................................. 11

*Rodriguez v. West Publg. Corp.*, 563 F.3d 948 (9th Cir. 2009) ............................................... 14

*State of Fla. v. Dunne*, 915 F.2d 542 (9th Cir. 1990) ............................................................... 2

*Tarlecki v. bebe Stores, Inc.,* 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009) .............................. 4

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995) .................................... 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) .............................................. 2, 4, 5, 9

*Wing v. Asarco Inc.*, 114 F.3d 986 (9th Cir. 1997) ............................................................... 12

**STATUTES**

28 U.S.C. § 1920 ......................................................................................................... 13

**RULES**

Fed. R. Civ. P. 54 ......................................................................................................... 13

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* (4th ed. 2002) ......................... 3

Brian T. Fitzpatrick, AN EMPIRICAL STUDY OF CLASS ACTION SETTLEMENTS AND THEIR FEE

  AWARDS, *Journal of Empirical Legal Studies*, December 2010 ........................................... 3

Dr. Michael Kavanaugh, *Laffey Matrix* ............................................................................... 13

## I.  INTRODUCTION

Counsel for the Plaintiffs, Aschenbrener Law, P.C., Nassiri & Jung LLP, and Progressive Law Group, LLC (collectively "Class Counsel") seek $2.125 million in attorneys' fees—equal to the 25% benchmark fee award for Ninth Circuit common fund cases—plus $21,643.16 in out-of-pocket costs, and $15,000 in incentive awards ($5,000 for each of the three Class Representatives), pursuant to the terms of the parties' Settlement. (*See* Motion for Final Approval, filed herewith).

Class Counsel skillfully negotiated a Settlement that confers a substantial benefit on the Plaintiff class. The Settlement mandates permanent prospective relief, creating an informed-consent regime for present and future users of Google Search, and confers substantial monetary benefit through *cy pres* awards to consumer privacy advocacy and research organizations. Class Counsel negotiated a Settlement that provides the best practicable relief for a class that likely exceeds one hundred million (100,000,000) members. Obtaining that Settlement required Class Counsel to engage in discovery, respond to multiple motions to dismiss, and engage in numerous, adversarial meetings with Defendant Google, Inc. Likewise, the Class Representatives are entitled to modest incentive awards for the time and effort they expended to stand up against a giant corporation and obtain lasting, meaningful relief for all Google users.

The amount sought by Class Counsel is reasonable, and in fact meets the standard 25% benchmark, under the percentage-of-recovery method the Ninth Circuit employs for common fund cases. Using the lodestar/multiplier method as a cross-check confirms that Class Counsel seeks reasonable compensation for their work.

## II.  ARGUMENT

When attorneys recover a common fund conferring a "substantial benefit" on class members, the attorneys are "entitled to recover their attorneys' fees from the fund." *Fischel v. Equitable Life Assur. Socy. of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002) (citing *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982)). District courts have "broad authority over awards of attorneys' fees." *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). Courts in the Ninth Circuit use "two separate methods for determining attorneys' fees, depending on the case:" the

1   percentage-of-recovery method and the lodestar/multiplier method. *Hanlon v. Chrysler Corp.*, 150

2   F.3d 1011, 1029 (9th Cir. 1998). While the percentage-of-recovery method is more commonly

3   employed for common fund cases like this one, *see In re Bluetooth Headset Prods. Liab. Litig.*,

4   654 F.3d 935, 942 (9th Cir. 2011),  "courts [ultimately] have discretion to employ either

5   [method]." *Id*. (citing *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir.

6   2010)). *See also In re Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1296 (9th Cir.

7   1994). Regardless of the method used, the fee award should take into account the particular factors

8   in the specific case and must be "reasonable under the circumstances." *State of Fla. v. Dunne*, 915

9   F.2d 542, 545 (9th Cir. 1990). Once the court determines an overall fee award, it may, in its

10  discretion, allocate that award among multiple firms to protect the class's interests and ensure that

11  all fees awarded satisfy the reasonableness requirement. *See, e.g., In re TFT-LCD (Flat Panel)*

12  *Antitrust Litig.*, 2013 WL 1365900 at \*\*9–14 (N.D. Cal. Apr. 3, 2013) (evaluating allocation

13  among 116 law firms of $308 million attorneys' fee award).

14      Class Counsel's request for fees and expenses is reasonable and appropriate under the

15  circumstances. It represents fair compensation for Class Counsel's hard work to obtain a

16  Settlement that provides significant relief to the Class.

17      **A.    Under the Percentage-of-Recovery Method, Class Counsel's Proposed Fee**

18          **Award Meets the 25% Benchmark Regularly Approved in the Ninth Circuit.**

19      The attorneys' fees sought here total 25% of the Settlement Fund.[1] This percentage takes

20  only the cash portion of the total recovery into account, and does not factor in the significant value

21  of the Settlement's substantial prospective relief.

22      A fee award totaling 25% of the Settlement Fund equals the "benchmark" set by the Ninth

23  Circuit for reasonable attorneys' fees in common fund cases. *Vizcaino v. Microsoft Corp.*, 290

24  F.3d 1043, 1047 (9th Cir. 2002) (citing *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268,

25

26  _____

[1] Class Counsel's request is supported by the sworn declarations of the lead attorney for each firm.
*See* Michael Aschenbrener Declaration ("Asch. Decl.") attached here as Exhibit 1; Kassra Nassiri

27  Declaration ("Nassiri Decl.") attached here as Exhibit 2; Ilan Chorowsky Declaration ("Choro. Decl.") attached here as Exhibit 3.

28

_____

272 (9th Cir. 1989)). More generally, percentage-based attorneys' fees commonly range from 20% to 50%. *See* Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 14:6 (4th ed. 2002). Fee awards for Settlements generating a common fund less than $10 million—such as this one— tend to be in the range of 25% to 30%. *See* Brian T. Fitzpatrick, AN EMPIRICAL STUDY OF CLASS ACTION SETTLEMENTS AND THEIR FEE AWARDS, *Journal of Empirical Legal Studies*, December 2010, available at

http://www.americanbar.org/content/dam/aba/administrative/litigation/materials/2012_aba_annual/12_6.authcheckdam.pdf (last accessed 7/15/14), at 839.

Courts utilize the same percentage method and analysis regardless of whether class members benefit directly (in the form of direct payments from a settlement fund) or indirectly (in the form of, *e.g.*, fund distributions to *cy pres* recipients). *See, e.g.*, *In re Netflix Privacy Litig.*, 2013 WL 1120801 at *7 (N.D. Cal. Mar. 18, 2013) (quoting *In re Google Buzz Privacy Litig.*, 2011 WL 7460099 at *4 (N.D. Cal. June 2, 2011)) (direct *cy pres* distributions to existing organizations focused on Internet privacy policy or privacy education would "provide[] an indirect benefit to the Class Members consistent with the Class Members' claims"); *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 8, 187 L. Ed. 2d 392 (U.S. 2013) (observing that "[t]he district court's review of a class-action settlement that calls for a *cy pres* remedy is not substantially different from that of any other class-action settlement.").

Courts in the Ninth Circuit and elsewhere have approved similarly sized awards in analogous common fund cases. *See e.g. In re Netflix Privacy Litig.*, 2013 WL 1120801 at *15 (awarding 25% of a common fund where the only cash benefit of the settlement was a *cy pres* distribution); *In re Google Buzz*, 2011 WL 7460099 at *4 (awarding 25% of a $8.5 million fund distributed only to *cy pres* recipients); *In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 348 (E.D.N.Y. 2000) (awarding approximately 27% of a common fund, where the only cash benefit of the settlement was a *cy pres* distribution to state governments as *parens patriae* on behalf of resident consumers); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 358–59 (E.D.N.Y. 2010) (awarding 21% of a common fund, $2.5 million of which was marked for distribution via *cy pres*); *In re Consumer Privacy Cases*, 175 Cal. App. 4th 545, 549 (1st Dist.

1   2009) (affirming fee award based on common fund theory where relief secured included a $3.25

2   million *cy pres* distribution to privacy-related organizations).

3      The award sought by Class Counsel is also reasonable when evaluated according to the

4   non-exhaustive list of factors employed by Ninth Circuit courts. Courts consider: "(1) the results

5   achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent

6   nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar

7   cases." *Tarlecki v. bebe Stores, Inc.,* 2009 WL 3720872 at *4 (N.D. Cal. Nov. 3, 2009) (citing

8   *Vizcaino*, 290 F.3d at 1048–50).

9      All five of these factors support the reasonableness of the fee award sought by Class

10  Counsel.

11        ***1.  Class Counsel Achieved Excellent Results for an Enormous Class.***

12     Most importantly, the Settlement provides significant, permanent relief for the Class. The

13  Settlement provides both (1) prospective relief that directly addresses—and corrects—the very

14  conduct challenged by this case; and (2) indirect relief to the Class through an $8,500,000

15  Common Fund, which will be predominately distributed to approved *cy pres* recipients.

16     As briefed extensively in the Motion for Final Approval, filed concurrently, the

17  prospective relief component of the Settlement has already resulted in permanent changes to

18  Google's Privacy Policy and Terms of Service. These changes enact a regime of informed consent

19  for Google Search Users, who can now access complete and truthful information about the ways

20  Google handles user search queries before deciding whether to use Google Search, Google

21  Encrypted Search, or a competing search engine.

22     To supplement Google's disclosures, the Settlement also allocates funding to six of the

23  nation's leading organizations in the field of Internet user privacy. The bulk of the Settlement's

24  $8.5 million Common Fund will be used to create and maintain research, advocacy, and outreach

25  projects targeted at search engine users. Using funds in this manner goes to the heart of the

26  injuries alleged in this Complaint; namely, that Google failed to appropriately disclose how users'

27  search terms could be used and sold to third parties. (*See e.g.* Dkt. 50, ¶ 2.)

28     As in another recent common fund case, *In re Netflix*, 2013 WL 1120801, the Settlement's

1    *cy pres* distributions work in concert with the contemplated prospective relief to reshape the

2    landscape of Internet privacy protections. This boon to Internet users is of far greater value to each

3    class member than any *de minimis* cash payment (especially after deduction of the administrative

4    and notice costs required to make such payments). The settlement class in *Netflix* included

5    approximately 62 million members. *See id*. at *7. The size of the class here is even larger. The

6    Class Administrator estimates that approximately 72% of the United States population has used

7    Google within a six-month period. (Class Administrator Declaration ("Class Admin. Decl.")

8    attached here as Exhibit 4, ¶ 25). In all, the Class Administrator estimates that more than

9    100,000,000 Americans are potential class members. (Class Admin. Decl., ¶ 70). Cash payments

10   to this many individuals would be minute in the extreme, and individual distribution would be

11   overly burdensome and costly. (Class Admin Decl., ¶¶ 70–71.)

12       This combination of both prospective relief and monetary relief serves as an excellent

13   recovery for the Class. Pursuant to the Settlement, the Class will have the tools necessary to

14   determine whether and how to use Google Search. (Asch. Decl., ¶¶ 18–19); (Nassiri Decl., ¶¶ 11);

15   (Choro. Decl., ¶ 25). Class Members will also benefit from the efforts of organizations[2] that share

16   in the mission of protecting consumer privacy. Class Counsel should be appropriately awarded for

17   their efforts, especially since Class Counsel asks for a percentage of the Common Fund that falls

18   squarely within the Ninth Circuit's benchmark.

19       **2.    *Class Counsel Assumed Substantial Risk by Litigating This Difficult and***

20       ***Complex Case on a Purely Contingent Basis.***

21       Class Counsel accepted and pursued Plaintiffs' claims on a purely contingent basis and

22   invested considerable resources towards litigation of this matter in spite of substantial risk. This

23   investment justifies the requested fee. *See Vizcaino*, 290 F.3d at 1051 ("In common fund cases,

24   'attorneys whose compensation depends on their winning the case[] must make up in

25

26   ───────────────
     [2] The proposed *Cy Pres* Recipients include: AARP, Inc.; Carnegie-Mellon; Chicago-Kent College
     of Law Center for Information, Society, and Policy; Berkman Center for Internet and Society at
27   Harvard University; Stanford Center for Internet and Society; and World Privacy Forum. (Dkt. 63
     at 8.)
28

1   compensation in the cases they win for the lack of compensation in the cases they lose.'") (quoting

2   *In re Wash. Power Litig.*, 19 F.3d at 1300–01) (alteration in original).

3       "Courts have recognized that the novelty, difficulty and complexity of the issues involved

4   are significant factors in determining a fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389

5   at *20 (C.D. Cal. June 10, 2005). Novel theories of liability require more time and effort, and

6   counsel "should not be penalized for undertaking a case which may 'make new law' [but]

7   appropriately compensated for accepting the challenge." *See id*.

8       While attorneys always face the prospect of non-payment when working on contingency,

9   these Plaintiffs' claims were particularly risky. (Asch. Decl., ¶ 23); (Nassiri Decl., ¶¶ 13–16). This

10  case presents complex issues in a highly technical field. Without any precedent at the time of

11  filing to aid Class Counsel in predicting the success of Plaintiffs' claims, Class Counsel researched

12  the intricacies of referrer header technology, and drafted and subsequently amended a thorough

13  Complaint discussing the technical and specialized details of referrer header technology. (*See, e.g.*

14  Dkt. 50, ¶ 56.) Class Counsel brought suit against the world's most popular search engine, briefed

15  numerous motions to dismiss, and obtained discovery to support their allegations that, because

16  Google's financial success depends on relationships with third parties for search engine

17  optimization ("SEO") purposes, Google placed a high priority on revealing individual user search

18  queries to third parties in direct violation of its representations on its Privacy Policy and its

19  assertions to privacy regulators. (*Id*. at ¶ 60.)

20      The panoply of factual and legal defenses available to Google increased the risk faced by

21  Class Counsel. (*See* Asch. Decl., ¶ 24); (Nassir Decl., ¶ 15); (Choro. Decl., ¶ 14). Even if

22  successful at trial, Plaintiffs' claims would likely result in damages against Defendant Google

23  worth many times the value of the company itself. (*See* Dkt. 52 at 17.) An excessive damages

24  award would trigger *remittitur* and Due Process concerns. These Due Process concerns would

25  complicate the recovery process and further multiply the risk of an inadequate recovery, in the

26  absence of settlement.

27      To overcome these pitfalls, Class Counsel have dedicated extensive time to both litigating

28  and ultimately settling this case. To date, Class Counsel have spent a total of 2,085.6 hours, with a

value of $966,598.75 all while in the face of a potential zero recovery. (Asch. Decl., ¶ 32);
(Nassiri Decl., ¶ 26); (Choro. Decl., ¶ 29); (Declaration of Christopher Dore ("Dore Decl.")
attached hereto as Exhibit 5, ¶ 5). Class Counsel collectively fronted $21,643.16 in expenses with
no guarantee of reimbursement. (Asch. Decl., ¶ 32); (Nassiri Decl., ¶ 26); Choro. Decl. ¶ 34);
(Dore Decl. ¶ 6). Furthermore, Class Counsel must still continue to respond to Class Member
inquiries and reply to any objections raised to the Settlement. Should the Court approve the
Settlement, Class Counsel must also defend the Settlement against any appeals, and finally take
any and all steps necessary to carry to conclusion this Settlement on behalf of the Class. (Asch.
Decl., ¶ 31); (Nassiri Decl., ¶ 28); (Choro. Decl., ¶ 33).

### 3. Litigating This Case and Negotiating Settlement Terms Required Substantial Skill and High Quality Representation from Class Counsel.

Prosecuting a complex, nationwide class action against a large, international corporation
"requires unique skills and abilities." *Knight v. Red Door Salons, Inc.* 2009 WL 248367, *6 (N.D.
Cal. Feb. 2, 2009) (quoting *Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C. 1987)). In
a case where as many as 100 million Internet users asserted highly technical claims for recovery
against Google, a massive corporation with vast resources and a highly skilled legal team that
contested (and still contests under the terms of the Settlement) each of Plaintiff's claims, the
litigation and negotiation skills demanded of Class Counsel were high.

Achieving a settlement required Class Counsel to litigate the complex intricacies of online
privacy against a sophisticated company. Class Counsel extensively researched Google's privacy
representations, both on its own website and via statements to third parties, such as the FTC (Dkt.
50, ¶¶ 23–40); uncovered the multiple ways in which Google appeared to intentionally breach its
own privacy policies (*see generally* Dkt. 50); and, provided a detailed explanation of the
ramifications of referrer headers on a user's personal information (*id*.). Class Counsel also
litigated aggressively to advocate for the Class's interests. When strategically appropriate, Class
Counsel negotiated a Settlement to provide relief to a Class that likely exceeds 100 million
individuals. (Asch. Decl., ¶ 11–13.) This required copious hours spent meeting with Defendant's
counsel, exchange of numerous drafts of the Settlement Agreement and its related documents, and

dozens of other attorney tasks performed over the span of several months. (Asch. Decl., ¶ 11–17.)

Finally, the "single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *Bond Litig.*, 2005 WL 1594389 at *12 (C.D. Cal. June 10, 2005) (internal quotations omitted). Despite three separate motions to dismiss (Dkts. 19, 29, and 44), and lengthy negotiations, Class Counsel obtained a substantial recovery for the Class. The Settlement provides vital information about online privacy to millions of individuals, and permanently transforms the nature of Google's communications with its users. *See* Final Approval Brief, filed herewith.

### 4. *Class Counsel Expended Considerable Time and Expense, with No Guarantee of Any Recovery.*

A contingent fee arrangement allows skilled counsel to accept cases and provide professional representation in class actions for plaintiffs "who could not otherwise afford competent attorneys." *Knight,* 2009 WL 248367 at *6. The importance of assuring representation in these cases justifies providing contingent-fee attorneys a "larger fee than if they were billing by the hour or on a flat fee." *Id*.

To date, Class Counsel and supporting counsel have reasonably spent 2085.6 hours representing Plaintiffs and the Class without compensation, forgoing other paying work in order to do so. (Asch. Decl., ¶ 32); (Nassiri Decl., ¶ 26); (Choro. Decl., ¶ 29); (Dore Decl., ¶ 5). In connection with that representation, Class Counsel and supporting counsel have advanced $21,643.16 in out-of-pocket litigation expenses, with considerable risk of non-return. (Asch. Decl., ¶ 32); (Nassiri Decl., ¶ 26); (Choro. Decl. ¶ 34); (Dore Decl. ¶ 6). Finally, Class Counsel anticipate devoting further time and resources to this case as this case is guided through and beyond the final approval process. (Asch. Decl., ¶ 31); (Nassiri Decl., ¶ 28); (Choro. Decl., ¶ 33).

For the Court's convenience, Class Counsel provides a table with a breakdown of fees by law firm below[3]:

---

[3] More extensive breakdowns of the attorneys working on this matter at each firm, each individual attorney's hourly rate, and the total fees incurred by each attorney are available in Class Counsel's Declarations.

| Firm | Fees | Expenses | Total Cost |
|------|------|----------|-----------|
| Aschenbrener Law, P.C. | $321,184.00 | $5,844.54 | $327,028.54 |
| Nassiri & Jung LLP | $253,776.50 | $4,464.95 | $258,241.45 |
| Progressive Law Group | $331,967.25 | $7,551.27 | $339,518.52 |
| Edelson PC | $59,671.00 | $3,760.00 | $63,431.00 |
| **Totals** | $966,598.75 | $21,620.76[4] | $988,219.51 |

### 5.   *The Requested Fee Award Is Consistent with Awards in Similar Cases.*

Courts in the Ninth Circuit consistently approve attorney's fee awards at and above the 25% benchmark for common fund cases. *See, e.g., In re Netflix*, 2013 WL 1120801 at *15 (awarding class counsel fees amounting to 25% of settlement fund); *In re Google Buzz*, 2011 WL 7460099, at *4 (awarding class counsel attorney fees amounting to 25% of an $8,500,000 fund involving *cy pres* recipients arising from consumer privacy claims); *Lane v. Facebook, Inc.*, 2010 WL 2076916 at *2 (N.D. Cal. May 24, 2010) (awarding class counsel attorney fees of approximately 25% of a $9,500,000 fund involving *cy pres* recipients arising from consumer privacy claims); *Nobles v. MBNA Corp.*, 2009 WL 1854965 at *5 (N.D. Cal. June 29, 2009) (awarding class counsel attorney fees amounting to 25% of an approximately $9.3 million fund arising from a consumer fraudulent solicitation claim); *see also In re Informix Corp. Sec. Litig.*, No. 97-cv-1289, Dkt. 471 (N.D. Cal. Nov. 23, 1999) (30% of $137 million fund).

### B.   A Lodestar Cross-Check Confirms That The Requested Fee Award Is Reasonable.

Under the lodestar/multiplier method, courts calculate attorneys' fees by multiplying the number of hours that the class counsel reasonably expended on litigation by a reasonable hourly rate that takes into consideration both the region and the experience of the lawyer. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts award fees for past work at present rates to

---

[4] Class Counsel also seeks reimbursement of an additional $22.40 in expenses advanced by Diemer, Whitman & Cardosi LLP as local counsel for Progressive Law Group.

1  compensate for the delay in receipt of payment, *Vizcaino*, 290 F.3d at 1051, and apply a multiplier

2  or enhancement to the lodestar to account for the substantial risk that class counsel undertook by

3  accepting a case where no payment would be received if the lawsuit did not succeed. *Id*.

**1.  Class Counsel's Current Lodestar of $966,598.75 Is Reasonable and**

**Supports the Requested Fee Award.**

6  Class Counsel's current lodestar supports its unopposed motion. To date, Class Counsel

7  have reasonably spent 2092.2 hours working on this case, resulting in a current base lodestar of

8  $970,828.75. (Asch. Decl., ¶ 32); (Nassiri Decl., ¶ 26); (Choro. Decl. ¶ 29); (Dore Decl. ¶ 5). The

9  hours submitted have been reviewed, and any unnecessary hours have been adjusted or removed.

10  (Asch. Decl., ¶ 33); (Nassiri Decl., ¶ 27); (Choro. Decl., ¶ 30). Moreover, the attorneys working

11  on this case bill at rates that correlate to their respective experience and that are reasonable for

12  their respective legal markets in Chicago and California. (Asch. Decl., ¶¶ 36–39); (Nassiri Decl.,

13  ¶¶ 29-33); (Choro. Decl., ¶ 31); (Dore Decl., ¶ 5).

14  When calculating a reasonable hourly rate, the Supreme Court has held that hourly rates

15  should be determined by the "prevailing market rates in the relevant community." *Blum v.*

16  *Stenson*, 465 U.S. 886, 895 (1984). For purposes of lodestar calculations, the "relevant

17  community" is generally considered the forum in which the district court sits. *Hajro v. U.S.*

18  *Citizenship & Immigration Servs.*, 900 F. Supp. 2d 1034, 1054 (N.D. Cal. 2012). Courts should be

19  guided by the prevailing community rate for similar work performed by attorneys of comparable

20  skill, experience, and reputation." *Id*.

21  Rates in the Bay Area for class action litigation can easily exceed $1,000 per hour, with the

22  average hourly rate for a partner exceeding $600 per hour. (*See* 2013 National Law Journal Billing

23  Survey, attached to Asch. Decl. as Exhibit 1-2.) Similarly, the average hourly rate for associates

24  exceeds $375 per hour. *Id*. Class Counsel's hourly rates are well within the range of rates for

25  similar work in the Bay Area. Aschenbrener Law, Co-Lead Counsel in this matter, seeks

26  reimbursement for its hours at a rate of up to $525 for its senior attorneys and $330 for its

27  associates. (Asch. Decl., ¶ 37.) Nassiri & Jung, Co-Lead Counsel in this matter, seeks

28  reimbursement for its hours as a rate of $590 per hour for partners, $370 for associates, and $125

for paralegals. (Nassiri Decl., ¶ 33.) Finally, Progressive Law Group has an hourly rates of up to $525 for senior attorneys and up to $320 for associates. (Choro. Decl., ¶ 29.) When compared against the average hourly rates for Bay Area firms (*see* Ex. 1-2), these rates are well within reason.

The Adjusted Laffey Matrix is also a helpful mechanism for determining a reasonable hourly rate. The Adjusted Laffey Matrix, developed by economist Dr. Michael Kavanaugh, is based upon the Consumer Price Index for the U.S. City Average Legal Services Fees maintained by the U.S. Department of Labor. Dr. Michael Kavanaugh, *Laffey Matrix*, http://www.laffeymatrix.com/expert.html (last visited July 24, 2014). It is often used by courts in and around the District of Columbia to determine reasonable hourly rates, but it has also been used by the Northern District of California to confirm that proposed hourly rates are reasonable. *Recouvreur v. Carreon*, 940 F. Supp. 2d 1063, 1070 (N.D. Cal. 2013), appeal dismissed (Sept. 18, 2013) (finding that applying the Adjusted Laffey Matrix to an attorney with over twenty years of experience confirmed that his requested hourly rate of $700 was reasonable.) *See also Bankston v. Patenaude & Felix*, 2008 WL 4078451 at *1 (N.D. Cal. Aug. 29, 2008).

In light of the Adjusted Laffey Matrix (duplicated and attached to Asch. Decl. as Exhibit 1-3), Class Counsel's hourly rates are well within reason. Michael Aschenbrener, the principal of Aschenbrener Law and Co-Lead Counsel in this case, has an hourly rate of $525. (Asch. Decl., ¶ 37.) This rate falls well below the Adjusted Laffey Matrix rate of $567 per hour for an attorney of similar experience and tenure. (Ex. 1-3.) The rates charged by Kass Nassiri and Ilan Chorowski similarly fall at or below the Adjustetd Laffey Matrix rate for attorneys with similar experience. (Nassiri Decl., ¶ 33); (Choro. Decl., ¶ 29).

Class Counsel's hourly rates are well within the range of average hourly rates charged by attorneys performing similar work in the Bay Area, and are further affirmed by the Adjusted Laffey Matrix. As such, the Court should find Class Counsel's base lodestar number reasonable.

### 2. *Given the High-Risk and Complex Nature of this Action, Class Counsel is Entitled to a Multiplier of 2.2.*

The lodestar analysis is not limited to the initial mathematical calculation of class

1  counsel's base fee. *See Morales v. City of San Rafael*, 96 F.3d 359, 363–64 (9th Cir. 1996).

2  Rather, counsel's actual lodestar may be enhanced according to certain factors that have not been

3  "subsumed within the initial calculation of hours reasonably expended at a reasonable rate."

4  *Hensley*, 461 U.S. at 434; *Morales*, 96 F.3d at 364.

5      In the Ninth Circuit, multipliers at or above 2.0 are frequently awarded to compensate

6  attorneys who bring contingency fee suits in high-risk areas of law such as consumer class actions.

7  *See, e.g. Lane*, 2010 WL 2076916, at *2 (applying multiplier of 2). *See also In re Infospace, Inc.*

8  *Sec. Litig.*, 330 F. Supp. 2d 1203, 1216 (W.D. Wash. 2004) (awarding a multiplier of 3.5 in a

9  securities fraud class action); *In re HPL Tech., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 922–925

10  (N.D. Cal. 2005) (awarding multiplier of 2.87 in a securities action); *Wing v. Asarco Inc.*, 114

11  F.3d 986 (9th Cir. 1997) (affirming multiplier of 2.0 in 19 environmental contamination suits

12  brought on behalf of residential property owners); *Ozga v. U.S. Remodelers, Inc.,* 2010 WL

13  3186971 at *3 (N.D. Cal. Aug. 9, 2010) (awarding a multiplier of 2.3 in a wage-and-hour action);

14  *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977)

15  (awarding multiplier of 3 to attorneys who oversaw and were involved in every aspect of the

16  litigation); *In re Patriot Am. Hospitality Inc. Sec. Litig.*, 2005 WL 3801595 at *5 (N.D. Cal. Nov.

17  30, 2005) (holding multiplier of 2.63 appropriate where class members were satisfied with the

18  settlement and counsel performed well on behalf of class).

19      In fact, courts within the Northern District of California have regularly approved

20  multipliers well in excess of the 2.2 sought here by Class Counsel. *See Buccellato v. AT&T*

21  *Operations, Inc.*, 2011 WL 3348055 at *1–2 (N.D. Cal. June 30, 2011) (granting final approval of

22  attorneys' fees where fees represented 25% of the common fund and a lodestar multiplier of 4.3).

23  The Ninth Circuit has also affirmed multipliers higher than 3.0. *See Vizcaino*, 290 F.3d at 1043

24  (affirming award that was 28% of the common fund and had a lodestar multiplier of 3.65).

25      Here, a multiplier of 2.2, appropriately reflects the risk, complexity, and time involved, and

26  comports with multipliers awarded in similar cases. Moreover, this multiplier will only continue to

27  decrease as Class Counsel continues work toward the final fairness hearing and the Settlement's

28  implementation. Specifically, Class Counsel contemplate that they must still: (1) respond to any

1   Class Member inquiries that occur after the filing of this brief; (2) receive, review, and reply to

2   any objections raised to this Settlement; (3) prepare and appear for the final fairness hearing in this

3   matter on August 29, 2014; (4) respond to any concerns raised by the Court at and after the final

4   fairness hearing; (5) assuming the Court grants this Motion for fees and final approval of the

5   Settlement, take all subsequent steps necessary to implement this Settlement; and, (6) defend the

6   Settlement against any appeals. (Asch. Decl., ¶ 31); (Nassiri Decl., ¶ 28); (Choro. Decl., ¶ 33). For

7   these reasons, a 2.2 multiplier is wholly appropriate.

8           **C.      Class Counsel Reasonably Advanced $21,643.16 in Unreimbursed Costs.**

9           Reimbursement of taxable costs is governed by 28 U.S.C. § 1920[5] and Fed. R. Civ. P. 54[6].

10  Awards of expenses "should be limited to typical out-of-pocket expenses that are charged to a fee

11  paying client and should be reasonable and necessary." *In re Immune Response Sec. Litig.*, 497 F.

12  Supp. 2d 1166, 1177 (S.D. Cal. 2007). "The reimbursement for travel expenses, both under 28

13  U.S.C. § 1920 and [Rule] 54(d) is within the broad discretion of the Court." *Id*. at 1177 (quoting *In*

14  *re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1369 (N.D. Cal. 1996)). It is also proper to

15  provide reimbursement for reasonable mediation expenses. *Id*.

16          Here, Class Counsel requests reimbursement for $21,643.16 in expenses. (Asch. Decl.,

17  ¶ 32); (Nassir Decl., ¶ 26); (Choro. Decl., ¶ 34); (Dore Decl., ¶ 6). These expenses reflect

18  reimbursement for reasonable costs associated with travel, filing fees, and mediation costs. These

19  expenses were necessary litigation costs that were expended by Class Counsel and were made

20  without any assurance that they would be repaid. (*See* Ex. A, ¶ 10.1) (Settlement not contingent

21  upon any award of fees, costs or expenses); *see also Van Vranken v. Atl. Richfield Co.*, 901 F.

22

23  _____
    [5] Pursuant to 28 U.S.C. § 1920: "a judge or clerk of any court of the United States may tax as cost

24  the following: (1) fees of the clerk and marshall; (2) fees of the court reporter for all or any part of
    stenographic transcript necessarily obtained for use in the case; (3) fees and disbursement for

25  printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for
    use in the case; (5) compensation of court appointed experts, compensation of interpreters, and

26  salaries, fees, expenses, and costs of special interpretation services under section 1828 of this
    title."

27  [6] Fed. R. Civ. P. 54 provides that, except "when express provision therefor is made either in a
    statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of

28  course to the prevailing party unless the court otherwise directs…"

1  Supp. 294, 299 (N.D. Cal. 1995) (awarding class counsel over $2,000,000 in reasonable litigation

2  expenses). For these reasons, Class Counsel requests reimbursement for all reasonable costs

3  incurred.

4           **D.      Plaintiffs Gaos, Italiano, and Priyev Should Receive Reasonable Incentive**

5                    **Awards for Their Efforts on Behalf of the Plaintiff Class.**

6           In the Ninth Circuit, incentive awards for Class Representatives are "fairly typical in class

7  action cases." *Rodriguez v. West Publg. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Incentive

8  awards are intended to "compensate the named plaintiff for any personal risk incurred by the

9  individual or any additional effort expended by the individual for the benefit of the lawsuit."

10  *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 at *17 (N.D. Cal. Apr. 22, 2010)

11  (*quoting Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118, 143 (S.D.N.Y. 2001)). In the

12  Northern District, an incentive award of $5,000 is "presumptively reasonable." *Jacobs v. Cal. St.*

13  *Auto. Assn. Inter-Ins. Bureau*, 2009 WL 3562871 at * 5 (N.D. Cal. Oct. 27, 2009).

14          Each of the three Class Representatives—Plaintiff Gaos, Plaintiff Italiano, and Plaintiff

15  Priyev—seeks an incentive award of $5,000, for a total of $15,000 in incentive awards. (Dkt. 52-3,

16  ¶ 10.2.) The Settlement Agreement provides that the Incentive Award will be paid out of the

17  Common Fund of $8.5 million dollars. *Id*. This request, as indicated above in *Jacobs*, is

18  presumptively reasonable. The requested incentive award is further justified because each Class

19  Representative has admirably stood up to Google, the world's most popular search engine.

20  (Paloma Gaos Declaration ("Gaos Decl.") attached here as Exhibit 6, ¶ 4); (Anthony Italiano

21  Declaration ("Italiano Decl.") attached here as Exhibit 7, ¶ 4); (Gabriel Priyev Declaration

22  ("Priyev Decl.") attached here as Exhibit 8, ¶ 4). Each Class Representative has accepted the

23  responsibilities and burdens attendant to serving as a class representative in a high-profile lawsuit.

24  (Gaos Decl, ¶ 5); (Italiano Decl., ¶ 5); (Priyev Decl., ¶ 5). None of the Class Representatives were

25  promised an incentive award and the requested award is in no way tied to the relief obtained for

26  the Class. (Gaos Decl, ¶ 6); (Italiano Decl., ¶ 6); (Priyev Decl., ¶ 6). Rather, the requested reward

27  is solely designed to compensate the three representatives for their efforts in this case and

28  willingness to serve as Class Representatives despite any associated reputational risks.

1      As such, the Court should approve the agreed-upon cumulative incentive award of $15,000

2  to these individuals.

3  **III.      CONCLUSION**

4      For the foregoing reasons, Plaintiffs, on behalf of the Class, respectfully request that this

5  Court grant Plaintiffs' Motion for Approval of Attorneys' Fees, Expenses, and Costs, and award

6  such and further relief as the Court deems equitable and just.

7

8  Dated: July 25, 2014                              ASCHENBRENER LAW, P.C.

9                                                    /s/ Michael J. Aschenbrener
                                                     Michael J. Aschenbrener
10

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on July 25, 2014 he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: July 25, 2014                                      ASCHENBRENER LAW, P.C.


By: /s/ Michael J. Aschenbrener
Michael J. Aschenbrener