Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
Voice: (703) 203-3848
Email: tfrank@gmail.com

*Attorneys for Objectors Melissa Holyoak and Theodore H. Frank*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re GOOGLE REFERRER HEADER PRIVACY LITIGATION | Case No. 5:10-cv-04809-EJD |
| | **OBJECTION OF MELISSA HOLYOAK AND THEODORE H. FRANK** |
| MELISSA HOLYOAK and THEODORE H. FRANK, | |
| Objectors. | Date:        August 29, 2014<br>Time:        9:00 a.m.<br>Courtroom:   4<br>Judge:       Hon. Edward J. Davila |

Case No. 5:10-cv-04809-EJD

OBJECTION OF MELISSA HOLYOAK AND THEODORE H. FRANK

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES .......................................................................................... iii

INTRODUCTION ........................................................................................................... 1

   I.    The objectors are members of the class. .......................................................... 1

   II.   The court has a fiduciary duty to the unnamed members of this class. ......................................... 2

   III.   The settlement improperly favors third party charities over class members through its *cy pres* provision. ....................................................................................................... 3

   IV.   The Court must consider the pre-existing relationships between the cy pres recipients, class counsel and the defendant. ............................................................................................. 8

      A.   Cy pres beneficiaries should not have a pre-existing relationship with class counsel. ............ 9

      B.   Pre-existing relationships between the defendant and the cy pres recipients undermine the value of the settlement. ............................................................................................ 10

      C.   Frank further objects to AARP as a recipient. .......................................................... 12

   V.   In the alternative, if distributions to individual class members are impracticable, then a class action is not superior to other available methods of adjudicating the controversy. ......................... 12

   VI.   If the Court approves the certification and settlement, it should decline to award the $2.125 million attorneys' fees requested. ............................................................................ 13

   VII.   The notice plan is inadequate because it does not include direct notice for class members for whom Google has contact information. ......................................................................... 17

   VIII.   The parties have artificially burdened the right of objection and opt-out by requiring four separate paper-mail submissions for a class of internet users; no positive inference should be drawn from a low number of formal objectors ........................................................................... 19

CONCLUSION ............................................................................................................... 23

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp.*, L.P., 247 F.R.D. 156 (C.D. Cal. 2007) ............15

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373 (D. Kan. 1971) .....22

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 623 (1997) .........................................2, 3, 20

*Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010) .................................................12

*Better v. YRC Worldwide Inc.*, No. 11-cv-2072-KHV, 2013 U.S. Dist. LEXIS 163569 (D. Kan. Nov. 18, 2013) .................................................................................................................5

*Bieneman v. City of Chicago*, 864 F.2d 463 (7th Cir. 1988) ...........................................................14

*Boring v. Bed Bath & Beyond,* No. 12-cv-05259-JST (N.D. Cal. Nov. 21, 2013) ................................23

*Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998).................................... 8, 15

*Brown v. Wells Fargo & Co.*, No. 11-1362 (JRT/JJG), 2013 U.S. Dist. LEXIS 181262 (D. Minn. Dec. 30, 2013) ...........................................................................................................12

*Daniels v. Aeropostale West*, No. C 12-05755 WHA, 2014 U.S. Dist. LEXIS 74081 (N.D. Cal. May 29, 2014) ................................................................................................................12

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) ...............................................3, 4, 9, 10

*Dewey v. Volkswagen AG*, 681 F.3d 170 (3d Cir. 2012) .............................................................14

*Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989) ..................................2

*Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 176 (1974) ................................................... 19, 20

*Felix v. Northstar Location Servs.*, 290 F.R.D. 397 (W.D.N.Y. 2013) ..............................................21

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d. 939 (N.D. Cal. 2013)....................................................6

*Fraley v. Facebook, Inc.*, No. 11-cv-01726 RS (N.D. Cal. Jun. 7, 2013).........................................23

*Fraley v. Facebook*, No. C 11-1726 RS, 2012 U.S. Dist. LEXIS 116526, at *4-*7 (N.D. Cal. Aug. 17, 2012) ..............................................................................................................5, 6

*Fraser v. Asus Computer Int'l*, 2012 U.S. Dist. LEXIS 181315 (N.D. Cal. Dec. 21, 2012) ......................20

*Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148 (W.D. Mo. Oct. 12, 2012) ....................................................................................................22

*Galloway v. Kansas City Landsmen, LLC*, 2013 U.S. Dist. LEXIS 92650 (W.D. Mo. July 2, 2013) .........22

*Grove v. Principal Mut. Life Ins. Co.,* 200 F.R.D. 434 (S.D. Iowa 2001) ........................................21

*Hecht v. United Collection Bureau ,* 691 F.3d 218 (2d Cir. 2012) ...................................20

*In re Baby Prods. Antitrust Litig.,* 708 F.3d 163 (3d Cir. 2013)...................................... 4, 5, 7

*In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) ...................................3

*In re Dry Max Pampers Litig.,* 724 F.3d 713 (6th Cir. 2013) ...................................3

*In re EasySaver Rewards Litig.,* 921 F. Supp. 2d 1040 (S.D. Cal. 2013) ...................................

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995) ....... 21, 22

*In re Hotel Tel. Charges,* 500 F.2d 86 (9th Cir. 1974) ...................................11, 12

*In re Hydroxycut Mktg. & Sales Practices Litig.,* No. 09-md-2087 BTM (KSC), 2013 U.S. Dist. LEXIS 165225 (S.D. Cal. Nov. 19, 2013) ...................................6

*In re Livingsocial Mktg. and Sales Practices Litig.,* 298 F.R.D. 1 (D.D.C. 2013) ...................................6

*In re Lupron Mktg and Sales Practices Litig.,* 677 F.3d 21 (1st Cir. 2012) ...................................5

*In re Mercury Interactive Corp.,* 618 F.3d 988, 994–95 (9th Cir. 2010) ...................................2

*In re Motor Fuel Temperature Sales Practices Litig.,* 279 F.R.D. 598, 617 (D. Kan. 2012) ...................................20

*In re Motor Fuel Temperature Sales Practices Litig.,* No 07-md-01840-KHV-JPO, Order (Dkt. No. 3019) (D. Kan. Nov. 10, 2011) ...................................23

*In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333 (3d Cir. 2010) ...................................8

*In re Real Estate Title & Settlement Servs. Antitrust Litig.,* 869 F.2d 760 (3d Cir. 1989) ...................................20

*In re Thornburg Mortg., Inc. Secs. Litig.,* 885 F. Supp. 2d 1097 (D.N.M. 2012) ...................................8

*In re Wells Fargo Sec. Litig.,* 991 F. Supp. 1193 (N.D. Cal. 1998) ...................................10

*Ira Holtzman, C.P.A., & Assocs. v. Turza.,* 728 F.3d 682 (7th Cir. 2013)...................................

*Kamm v. California City Development Co.,* 509 F.2d 205 (9th Cir. 1975) ...................................12

*Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d 468 (5th Cir. 2011)...................................4, 5, 6, 8

*Kline v. Coldwell, Banker & Co.,* 508 F.2d 226 (9th Cir. 1974) ...................................12

*Lagarde v. Support.com, Inc.,* No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875 (N.D. Cal. May 13, 2013) ...................................7

*Lane v. Facebook,* 696 F.3d 811 (9th Cir. 2012) ...................................11

*Lane v. Facebook, Inc.,* 709 F.3d 791 (9th Cir. 2013) ...................................4, 11

*Larson v. AT&T Mobility LLC,* 687 F.3d 109 (3d Cir. 2012) ...................................20

*Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832 (9th Cir. 1976) .................................. 4, 19

*Marek v. Lane*, 134 S. Ct. 8 (2013) ........................................................................................... 4, 11

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677 (7th Cir. 1987) ............... 22

*Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) ..................................... 5

*Mayfield v. Dalton*, 109 F.3d 1423 (9th Cir. 1997) ..................................................................... 14

*McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) .......................................................................................................................... 24

*Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ............................................. 4

*Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) ................................................................. 3, 5

*Motor Fuel Temperature*, 2012 U.S. Dist. LEXIS 57981 (D. Kan. Apr. 24, 2012) ..................... 23

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ..................................... 19, 20

*Nachshin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2011) ........................................................ 4, 5, 9

*Newman v. Americredit Fin. Servs.*, No. 11-cv-3041 DMS (BLM), 2014 U.S. Dist. LEXIS 15728 (S.D. Cal. Feb. 3, 2014) ................................................................................................................... 22

*Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357 (N.D. Ill. Jan. 3, 2014) ...... 7

*Phillips v. Klassen*, 502 F.2d 362 (D.C. Cir. 1974) .............................................................. 14, 15

*Pickett v. Iowa Beef Processors*, 209 F.3d 1276 (11th Cir. 2000) .............................................. 14

*Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB ........................................................ 6

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167 (9th Cir. 2013) ................................ 8

*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) ............................. 15

*Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002) ........................................ 10

*Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486 (D.D.C. Nov. 6, 2013) ............ 22

*Silber v. Mabon,* 957 F.2d 697, 701 (9th Cir. 1992) .................................................................... 2

*Smith v. Levine Leichtman Capital*, 2012 U.S. Dist. LEXIS 163672 (N.D. Cal. Nov. 15, 2012) ........ 20, 23

*Sonmore v. CheckRite Recovery Servs.*, 206 F.R.D. 257 (D. Minn. 2001) .................................. 12

*Spillman v. RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ......................................................................................................................................... 6

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003) ........................................................................... 3

*Supler v. FKAACS, Inc.*, 2012 U.S. Dist. LEXIS 159210, at *10-11 (E.D.N.C. Nov. 6, 2012) ............ 11

*True v. American Honda Co.*, 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010) .................................................2

*Valley Drug Co. v. Geneva Pharm. Inc.*, 350 F.3d 1181 (11th Cir. 2003) .........................................14

*Vought v. Bank of Am.*, 901 F. Supp. 2d 1071 (C.D. Ill. 2012) .................................... 21, 22

*Webb v. Carter's*, 272 F.R.D. 489 (C.D. Cal. 2011) ................................................11

*Zapeda v. Paypal*, No. C 10-2500 SBA, 2014 U.S. Dist LEXIS 24388 (N.D. Cal. Feb. 24, 2014) ...........5

**Rules and Statutes**

Fed. R. Civ. P. 23(a)(4) .................................................................................................23

Fed. R. Civ. P. 23(b)(3) .................................................................................................20

Fed. R. Civ. P. 23(e)(5) ...................................................................................................7

**Other Authorities**

4 Newberg on Class Actions § 11:42 (4th ed. 2009) ................................................2

*74 Percent of Consumers Use Google Search, 60 Percent Own Gmail Accounts*, Brafton (Apr. 9, 2012), http://www.brafton.com/news/74-percent-of-consumers-use-google-search-60-own-gmail-accounts .................................................................................................19

7A Wright & Miller, *Federal Practice and Procedure* § 1768 (3d ed. 2012) ...................................14

American Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010) ...........................2, 5, 6, 8

American Law Institute, *Principles of the Law of Aggregate Litig.* § 3.07 (2010) ...............................2, 5, 6, 8

Andersen, Erika, *How Small Business Owners are Wrecking their own Chance for Success*, Forbes (Oct. 7, 2013), http://www.forbes.com/sites/erikaandersen/2013/10/07/how-small-business-owners-are-wrecking-their-own-chances-of-success/ ......................................13

http://aschenbrenerlaw.com/michael-aschenbrener/ .......................................................9

http://cyber.law.harvard.edu/about/support .................................................................10

http://cyberlaw.stanford.edu/about-us ......................................................................10

http://ebayfeaturedplusclassaction.com/#qf .................................................................23

http://njfirm.com/kassra-nassiri/ ...............................................................................9

http://www.copyrightclassaction.com/exclusion.php3 .....................................................23

http://www.fraleyfacebooksettlement.com/faq#Q14 ......................................................23

Klonoff, Robert H., *Making Class Actions Work: The Untapped Potential of the Internet,* 69 U. PITT. L. REV. 727, 766 n. 251 (2008) ..............................................................24

Krueger, George & Judd Serotta, Op-Ed, *Our Class-Action System is Unconstitutional*, WALL ST. J., Aug. 6, 2008.................................................................................................................................9

Lahav, Alexandra, *Fundamental Principles for Class Action Governance*, 37 IND. L. REV. 65 (2003) ...........18

Lahav, Alexandra, *Two Views of the Class Action*, 79 Fordham L. Rev. 1939 (2011) ...............................10

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007)....................................................................................... 21, 24

Levie, Shay, *Reverse Sampling: Holding Lotteries to Allocate the Proceeds of Small-Claims Class Actions*, 79 GEO. WASH. L. REV. 1065 (2011) ....................................................................................7

Liptak, Adam, *Doling out Other People's Money*, N.Y. TIMES, Nov. 26, 2007 ................................................9

Moth, David, *56% of Businesses Rely Exclusively on Google for Web Analytics: Report*, Econsultancy (July 9, 2013), https://econsultancy.com/blog/63026-56-of-businesses-rely-exclusively-on-google-for-web-analytics-report#i.8z845218jtfb9t ....................................................................................................13

Procedural Guidance for Class Action Settlements, *available at* http://cand.uscourts.gov/ClassActionSettlementGuidance ....................................................24

Redish, Martin H., Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010) ....................... 4, 5, 8

*The Value of Google Analytics*, EfficientWP (June 6, 2011), http://efficientwp.com/the-value-of-google-analytics.................................................................................................................13

Tidmarsh, Jay, *Cy Pres and the Optimal Class Action*, 82 GEO. WASH. L. REV. 767 (2013) ........................5

U.S. Census, *Statistics of US Businesses* (2011), http://www.census.gov/econ/susb/ ...........................13

## INTRODUCTION

Plaintiffs filed a complaint alleging trillions of dollars in statutory damages on behalf of a class consisting of more than one hundred million people, and then settled it for $8.5 million, of which the class members will see not one penny. Instead, the entire net settlement fund will go third-party *"cy pres"* recipients, even though it would be practicable to allow class members to recover through a claims-made process and/or a sampling lottery method. Moreover, several of the proposed *cy pres* recipients have prior relationships with class counsel or defendants. Preexisting relationships with the defendant undermine the value of the settlement to the class. Preexisting relationships with class counsel qualify as improper conflicts of interest. These defects render the settlement substantively unfair. *See infra* §§ III-IV.

Procedurally, notice to the class is inadequate under this proposed settlement because it fails to directly notify those class members for whom the defendant has contact information, thus depriving them of due process. The settlement makes objecting or opting out of the settlement artificially and needlessly burdensome by requiring paper-mail printouts from a class of internet users. *See infra* §§ VII-VIII.

The proposed settlement structure suggests that class certification is untenable. If in fact distributions to class members are impossible, then a class action is not superior to other methods of adjudicating the dispute. *See infra* § V.

Finally, in the alternative, if the Court overrules all the above objections, the Rule 23(h) request is excessive and should be reduced. *See infra* § VI.

## I.   The objectors are members of the class.

Objectors Theodore H. Frank and Melissa Holyoak are United States residents who have submitted at least one search query to Google between October 26, 2006 and the present. *See* Declaration of Theodore H. Frank ¶3; Declaration of Melissa Holyoak ¶3. They are therefore members of the settlement class with standing to object to the settlement. Fed. R. Civ. P. 23(e)(5).

OBJECTION OF THEODORE H. FRANK AND MELISSA HOLYOAK

Frank's mailing address is 1718 M Street NW, #236, Washington DC 20036, his phone number is (703) 203-3848, and his email address is tfrank@gmail.com. Frank Decl. ¶2. Holyoak's mailing address is 1718 M Street NW, #236, Washington DC 20036, her phone number is (573) 823-5377, and her email address is melissaholyoak@gmail.com. Holyoak Decl. ¶2. Frank represents Holyoak, and himself *in pro per.* As discussed in their contemporaneously-filed Notice of Intent to Appear, Frank plans to attend the fairness hearing in this case, where he wishes to discuss matters raised in this objection. Objectors do not intend to call any witnesses at the fairness hearing, but reserve the right to make use of all documents entered on to the docket by any settling party or objector. Objectors reserve the right to cross-examine any witnesses who testify at the hearing in support of final approval. Objectors join the objections of any other objectors or *amici* to the extent those objections are not inconsistent with this one.

## II.    The court has a fiduciary duty to the unnamed members of this class.

A district court must act as a "fiduciary for the class," "with a jealous regard" for the rights and interests of absent class members. *In re Mercury Interactive Corp.*, 618 F.3d 988, 994–95 (9th Cir. 2010) (internal quotation and citation omitted); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617, 623 (1997) ("Rule 23(e) protects unnamed class members from 'unjust or unfair settlements' agreed to by 'fainthearted' or self-interested class 'representatives.'")). "Both the class representative and the courts have a duty to protect the interests of absent class members." *Silber v. Mahon,* 957 F.2d 697, 701 (9th Cir. 1992). *Accord Diaz v. Trust Territory of Pacific Islands,* 876 F.2d 1401, 1408 (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his fiduciary duty toward the absent class members").

There should be no presumption in favor of settlement approval: "[t]he proponents of a settlement bear the burden of proving its fairness." *True v. American Honda Co.*, 749 F. Supp. 2d 1052, 1080 (C.D. Cal. 2010) (*citing* 4 Newberg on Class Actions § 11:42 (4th ed. 2009)). *Accord* American Law Institute, *Principles of the Law of Aggregate Litig.* § 3.05(c) (2010) ("*ALI Principles*") ("In reviewing a

OBJECTION OF THEODORE H. FRANK AND MELISSA HOLYOAK

proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable.").

"[W]here the court is '[c]onfronted with a request for settlement-only class certification,' the court must look to the factors 'designed to protect absentees.'" *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003) (*quoting Amchem*, 521 U.S. at 620). "[S]ettlements that take place prior to formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953. "[P]re-certification settlement agreements require that we carefully review the entire settlement, paying special attention to 'terms of the agreement contain[ing] convincing indications that the incentives favoring pursuit of self-interest rather than the class's interest in fact influenced the outcome of the negotiations.'" *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (*quoting Staton v. Boeing*, 327 F.3d 938, 960 (9th Cir. 2003)). Where the Court confronts a pre-certification settlement, consideration of the eight *Churchill*[1] factors "alone is not enough to survive appellate review." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).

It is insufficient that the settlement happened to be at "arm's length" without express collusion between the settling parties. Because of the danger of conflicts of interest endemic to class action procedure, third parties must monitor the reasonableness of the settlement as well. *Bluetooth*, 654 F.3d at 948 (*quoting Staton*, 327 F.3d at 960). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 718 (6th Cir. 2013) (quoting *Dennis*, 697 F.3d at 864).

## III.   The settlement improperly favors third party charities over class members through its *cy pres* provision.

It is a foundational premise that the plaintiff-class itself as a legal entity "is not the client. [Rather,] the class attorney continues to have responsibilities to each individual member of the class

---

[1] *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

even when negotiating a settlement." *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 834-35 (9th Cir. 1976).

The legal construct of *cy pres* (from the French "*cy pres comme possible*"—"as near as possible") has its origins in trust law as a vehicle to realize the intent of a settlor whose trust cannot be implemented according to its literal terms. *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011). Imported to the class action context, it has become an increasingly popular method of distributing settlement funds to non-class third parties. *Marek v. Lane*, 134 S. Ct. 8, 9 (2013) (Roberts, C.J., respecting the denial of certiorari) ("*Cy pres* remedies…are a growing feature of class action settlements" that raise "fundamental concerns"); *Lane v. Facebook, Inc.*, 709 F.3d 791, 793 (9th Cir. 2013) (Smith, J., dissenting from denial of rehearing en banc).

Despite its growing popularity among some members of the class action bar, *cy pres* distributions are non-compensatory, disfavored among both courts and commentators alike, and remain an inferior avenue of last resort. *See e.g.*, *Klier*, 658 F.3d at 475 ("[The *cy pres*] option arises only if it is not possible to put those funds to their very best use: benefitting the class members directly."); *Dennis*, 697 F.3d at 868 (*cy pres* settlement can easily become "a paper tiger"); *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011) ("[A] growing number of scholars and courts have observed, the *cy pres* doctrine…poses many nascent dangers to the fairness of the distribution process") (citing authorities); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013) ("*Cy pres* distributions imperfectly serve that purpose by substituting for that direct compensation an indirect benefit that is at best attenuated and at worse illusory"); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("There is no indirect benefit to the class from the defendant's giving the money to someone else."); Martin H. Redish, Peter Julian, & Samantha Zyontz, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010).

One variety of class action *cy pres* is *ex ante cy pres*. It can be defined as an award "that was designated as part of a settlement agreement or judgment where: (1) an amount *and* at least one charity was named as a recipient of part of the fund from the outset and the charity's receipt of the award was not contingent on there being remaining/unclaimed funds in the settlement fund, or (2)

the entire award was given to at least one charity with no attempt to compensate the absent class. Redish et al., *Cy Pres Relief and Pathologies,* 62 FLA. L. REV. 617, 657 n.171. The relief here is a clear example of (2). Settlement Agreement (Dkt. 52-3) § 3. It provides that the entire $8.5 million settlement fund will be disbursed to non-class member charities, with no payments to the vast majority of class members who are not stakeholders in those charities.

As compared with *ex post cy pres*—third-party awards made only after class members fail to cash checks that are distributed—*ex ante cy pres* stands on even shakier footing. *See Molski*, 318 F.3d at 954-55 (rejecting all *cy pres* settlement as inadequate substitute to individual compensation); *Fraley v. Facebook*, No. C 11-1726 RS, 2012 U.S. Dist. LEXIS 116526, at *4-*7 (N.D. Cal. Aug. 17, 2012) ("*Fraley I*") (questioning propriety of an all *cy pres* settlement); *Zapeda v. Paypal*, No. C 10-2500 SBA, 2014 U.S. Dist LEXIS 24388, at *21 (N.D. Cal. Feb. 24, 2014) (expressing concern "that the only persons receiving any funds are persons *other than* class members" and denying settlement approval) (emphasis in original). "This form of *cy pres* stands on the weakest ground because *cy pres* is no longer a last-resort solution for a problem of claims administration. The concern for compensating victims is ignored (at least unless the indirect benefits of the *cy pres* award flow primarily to the victims)." Jay Tidmarsh, *Cy Pres and the Optimal Class Action*, 82 GEO. WASH. L. REV. 767, 770-71 (2013).

*Cy pres* is improper when it is feasible to make distributions to class members, at least where there is no other compelling reason for preferring non-class members. This "last-resort rule" is a well-recognized principle of law. §3.07(a) of the *ALI Principles* succinctly states the limitation: "If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members."[2] The last-resort rule follows from the precept that

---

[2] Numerous other courts have also endorsed §3.07 to a greater or lesser degree. *Nachshin*, 663 F.3d at 1039 n.2; *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 689-690 (7th Cir. 2013); *In re Lupron Mktg and Sales Practices Litig.*, 677 F.3d 21, 32-33 (1st Cir. 2012); *Klier*, 658 F.3d at 474-75 & nn. 14-16; *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007) (citing draft version); *Baby Prods.*, 708 F.3d at 173 (agreeing in part); *Better v. YRC Worldwide Inc.*, No. 11-cv-2072-

"[t]he settlement-fund proceeds, generated by the value of the class members' claims, belong solely to the class members." *Klier*, 658 F.3d at 474 (5th Cir. 2011) (citing *ALI Principles* §3.07 cmt. (b)).

While it may be true that the full statutory damages that would be owed to every class member in the event that plaintiffs were to prevail at trial would be greater than the market capitalization of Google, that is not the relevant question. The relevant question is whether it would be practicable to distribute the available $8.5 million settlement fund to class members through a lottery or claims-made process. The answer is yes. *See Fraley v. Facebook, Inc.*, 966 F. Supp. 2d. 939 (N.D. Cal. 2013) ("*Fraley II*"). In *Fraley*, the class of Facebook users numbered in the hundreds of millions, and the parties proposed a *cy pres*-only settlement to the court alleging that class distributions "[are] simply not practicable in this case, given the size of the class." *Fraley I.*, 2012 U.S. Dist. LEXIS 116526, at *6. Judge Seeborg refused to accept the proposal because "[m]erely pointing to the infeasibility of dividing up the agreed-to $10 million recovery...is insufficient...to justify resort to purely cy pres payments." 2012 U.S. Dist. LEXIS 116526, at *5. After the court denied approval, the agreement was then restructured as a claims-made settlement disbursing cash directly to class members. *See Fraley II*. Claimants under the amended agreement were so few in fact that the court would have been able to double the baseline $10 awards and did actually augment the awards by 50%. *Id.* at 944. Here too, the percentage of the 100+ million person class that will submit claims is likely low enough that a claims-made settlement would not be impracticable.

Recently, a well-respected settlement administration company conducted a wide-ranging survey that concluded "settlements with little or no direct mail notice will almost always have a claims rate of less than one percent (1%)." *Poertner v. The Gillette Co.*, No. 6:12-v-00803-GAP-DAB, Declaration of Deborah McComb re Settlement Claims (Dkt. 156) ¶5. Recent data points reveal that this is true in low-stakes settlements with or without direct notice. *In re Livingsocial Mktg. and Sales Practices Litig.*, 298 F.R.D. 1, 19 (D.D.C. 2013) (0.25% claims rate with direct email notice); *Spillman v.*

KHV, 2013 U.S. Dist. LEXIS 163569, at *19-*21 (D. Kan. Nov. 18, 2013) (rejecting settlement for non-compliance with §3.07); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09-md-2087 BTM (KSC), 2013 U.S. Dist. LEXIS 165225 (S.D. Cal. Nov. 19, 2013) (same).

*RPM Pizza, LLC*, No. 10-349-BAJ-SCR, 2013 U.S. Dist. LEXIS 72947, at *8 (M.D. La. May 23, 2013) (0.27% claims rate for $15 max claim); *Lagarde v. Support.com, Inc.*, No. 12-0609 JSC, 2013 U.S. Dist. LEXIS 67875, at *7 (N.D. Cal. May 13, 2013) ("[A] mere 1,259 timely claims were submitted for the $10 refund, which represents 0.17% of the total number of class members and 0.18% of the total number of class members who received notice."); *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *22 (N.D. Ill. Jan. 3, 2014) (0.25% claims rate overall where maximum claim was $12 without proof of purchase and $50 with proof of purchase). *Fraley* is the proof; even where a class numbers over one-hundred million, that a claims-made device can be feasible.

Even if it were not possible to distribute $8.5 million through a claims-made process, there is no legitimate reason why the parties should not randomly sample the class and/or accept claims submission, and then make payouts on a lottery basis. *See* Shay Levie, *Reverse Sampling: Holding Lotteries to Allocate the Proceeds of Small-Claims Class Actions*, 79 GEO. WASH. L. REV. 1065 (2011).

Which alternate method the parties elect is not crucial; what matters is that non-compensatory *cy pres* remains the last resort. As discussed thoroughly in the Third Circuit's *Baby Products* opinion, for individual class members, direct payment matters. "Class members are not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." 708 F.3d at 178; *id.* at 178-79 (counsel has "responsibility to seek an award that adequately prioritizes direct benefit to the class" and fees should reflect that fact). "Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlement funds." *Id.* at 174. If *cy pres* is an excessive share of the total relative to direct class recovery, a district court should consider whether to

> urge the parties to implement a settlement structure that attempts to maintain an appropriate balance between payments to the class and *cy pres* awards. For instance, it could condition approval of a settlement on the inclusion of a mechanism for additional payouts to individual class members if the number of claimants turns out to be insufficient to deplete a significant portion of the total settlement fund.

*Id.*

Furthermore, it is perhaps the case that some of the *cy pres* recipients are class members. There is no reason to favor those recipients in an uncertified subclass over other class members, and even less reason to favor non-class members over the actual class members.

Where there is a will, there is a way. But class counsel did not negotiate for using the fund to compensate class members, either on a claims-made, lottery, or some combination thereof basis. Rather, in dereliction of their fiduciary obligations, class counsel proposes to give that money away to non-class entities.[3] The bare legitimacy of *cy pres* in the class action context is controvertible with good reason. *See Klier*, 658 F.3d at 480-82 (Jones J., concurring); *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 358 (3d Cir. 2010) (Weis, J., concurring and dissenting); *In re Thornburg Mortg., Inc. Secs. Litig.*, 885 F. Supp. 2d 1097, 1105-12 (D.N.M. 2012) (collecting sources); Redish et al., *supra*. Although *cy pres* has been given a narrow berth in the Ninth Circuit, settled law requires that this application of *cy pres* be rejected for the foregoing reasons.

## IV.   The Court must consider the pre-existing relationships between the cy pres recipients, class counsel and the defendant.

The proposed *cy pres* recipients include institutions with prior relationships with both the defendant and class counsel. "A *cy pres* remedy should not be ordered if the court or any party has any significant prior affiliation with the intended recipient that would raise substantial questions about whether the award was made on the merits." *ALI Principles* §3.07 cmt. (b). Where, as here, class counsel are the alumni of several of the *cy pres* recipients, there is the appearance of divided loyalties of class counsel. And where the defendant is already an established donor to certain of the *cy pres* recipients, there is the significant risk that the value of the settlement will be less beneficial to the class than it would appear.

---

[3] If it was apathy toward class members or—worse yet—preference for non-class third-parties that drove the decision to prioritize *cy pres* distributions, that casts even further doubt on the adequacy of class representation. *See Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998) ("The premise of a class action is that litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members.").

**A.  Cy pres beneficiaries should not have a pre-existing relationship with class counsel.**

"The responsibility of class counsel to absent class members whose control over their attorneys is limited does not permit even the appearance of divided loyalties of counsel." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1167 (9th Cir. 2013) (internal quotation omitted). "Cy pres distributions present a particular danger" that "incentives favoring pursuit of self-interest rather than the class's interests in fact influenced the outcome of negotiations." *Dennis*, 858 F.3d at 867.

Yet undisclosed to the class is the fact that two of the three class attorneys who signed the settlement agreement, Kassra Powell Nassiri and Michael Aschenbrener, are alumni of three of the *cy pres* recipients. Settlement 16-17. Nassiri has a master's degree from Stanford and a juris doctorate from Harvard. Nassiri and Jung, LLP, http://njfirm.com/kassra-nassiri/ (last visited July 23, 2014). Aschenbrener received his juris doctorate from the Chicago-Kent College of Law. Aschenbrener Law, http://aschenbrenerlaw.com/michael-aschenbrener/ (last visited July 23, 2014). Harvard, Stanford, and Chicago-Kent are three of the four proposed university recipients. Preliminary Approval Order (Dkt. 63) ("PAO") at 8. These are not recipients that are "independent and free from conflict." *Id.* at 11 n.7; Motion for Final Approval (Dkt. 65) at 14 n.2.

In *Nachshin*, the Ninth Circuit criticized *alma mater cy pres* distributions, suggesting that such dispensations present exactly the sort of conflicts of interest that are problematic. 663 F.3d at 1039. Other commentators are in accord, specifically identifying the *alma mater* problem as the type of conflict that is objectionable. *E.g.*, George Krueger & Judd Serotta, Op-Ed, *Our Class-Action System is Unconstitutional*, WALL ST. J., Aug. 6, 2008 ("Judges...have occasionally been known to order a distribution to some place like their own alma mater ..."); Adam Liptak, *Doling out Other People's Money*, N.Y. TIMES, Nov. 26, 2007 ("Lawyers and judges have grown used to controlling these pots of money, and they enjoy distributing them to favored charities, alma maters and the like."). In *Nachshin,* the court cited each of these three sources approvingly. 663 F.3d at 1039, 1039 n.2.

"Courts are wary of distributing cy pres funds to organizations that have a close relationship with class counsel given the appearance of a conflict of interest." *Weeks v. Kellogg Co.*, No. CV-09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *69 n.102 (C.D. Cal. Nov. 23, 2011); *see also*

*Schwartz v. Dallas Cowboys Football Club, Ltd.,* 362 F. Supp. 2d 574, 577 n.2 (E.D. Pa. 2005) (noting the appearance of impropriety in selecting a beneficiary (the University of Pennsylvania) with long established ties to the Eastern District bench). *Weeks* properly refused to ratify such a conflict. 2011 U.S. Dist. LEXIS 155472, at *70-*71. *Accord In re Linerboard Antitrust Litig.*, MDL No. 1261, 2008 U.S. Dist. LEXIS 77739, at *14-*15 (E.D. Pa. Oct. 3, 2008) (rebuffing proposed *cy pres* awards to institutions with preexisting relationships to class counsel); *but see In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1050-51 (S.D. Cal. 2013), *appeal pending* No. 13-55373 (9th Cir.) (overruling objection where one of three university *cy pres* recipients had *alma mater* affiliation with class counsel). This objection may have only scratched the surface; who knows what conflicts lurk deeper? Before the Court approves any award, it should require the parties to certify that the beneficiaries have no ties to the parties or the lawyers. *See In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. 1361, 2005 U.S. Dist. LEXIS 11332, at *4 (D. Me. June 10, 2005). This Court should not approve any settlement afflicted by such a conflict of interest.[4]

**B.    Pre-existing relationships between the defendant and the cy pres recipients undermine the value of the settlement.**

As the Ninth Circuit has warned, "[t]he issue of the valuation of [the *cy pres*] aspect of a settlement must be examined with great care to eliminate the possibility that it serves only the "self-interests" of the attorneys and the parties, and not the class, by assigning a dollar number to the fund that is fictitious." *Dennis*, 697 F.3d at 868. Google is already a donor to Berkman Center for Internet and Society at Harvard University; Stanford Center for Internet and Society; AARP; and Chicago-Kent.  *See*  http://cyber.law.harvard.edu/about/support  (last  visited  July  23,  2014); http://cyberlaw.stanford.edu/about-us          (last          visited          July          23,          2014).

---

[4] An all too rare best practice that mitigates this problem is to poll class members— efficiently done through the settlement website—as to which charities should be designated *cy pres* beneficiaries. *See, e.g., In re Wells Fargo Sec. Litig.*, 991 F. Supp. 1193, 1197 (N.D. Cal. 1998) (Walker, J.) ("The fact remains that this money belongs to class members, and it is they who should decide whether and to whom to donate it."); *see generally* Alexandra Lahav, *Two Views of the Class Action*, 79 FORDHAM L. REV. 1939, 1961-63 (2011) (recommending polling the class as a "modest proposal" to increase class members' voice).

http://www.google.com/publicpolicy/transparency.html (AARP) (last visited August 8, 2014); http://www.alumni.kentlaw.edu/s/815/index.aspx?sid=815&gid=1&pgid=773 (last visited August 8, 2014). When the defendant is already a regular contributor to the proposed *cy pres* recipient, there is no demonstrable value added by the defendant's agreement to give money to that institution. *See Dennis*, 697 F.3d at 867-68. Google is agreeing to do something that it was in all likelihood going to do anyway. Such an agreement is of little or no incremental value to the class. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 286 (7th Cir. 2002) (it is the "*incremental* benefits" that matter, not the "total benefits") (emphasis in original) ); *see also In re Hydroxycut Mktg. and Sales Practices Litig.*, No. 09-md-2087 BTM (KSC), 2013 U.S. Dist. LEXIS 165225 (S.D. Cal. Nov. 19, 2013) (rejecting *cy pres* that provided not additional benefit to class members beyond the status quo); American Law Institute, Principles of the Law of Aggregate Litig. § 3.13 (settlement benefit does not include gratuitous inclusion of actions that defendant was conducting pre-settlement). This Court should require additional disclosures from Google, as they are likely to have preexisting relationships with the other two *cy pres* recipients that are not readily publicly available.

Recently, a divided panel of the Ninth Circuit affirmed a *cy pres* distribution over an objector's challenge to the fact that the beneficiary was closely affiliated with the defendant. *Lane v. Facebook*, 696 F.3d 811 (9th Cir. 2012), *rehearing en banc den'd*, 709 F.3d 791 (2013), *cert den'd sub nom* 134 S. Ct. 8 (2013). In that case, however, the objectors argued that there was a per se conflict of interest when the defendant had a pre-existing relationship with a *cy pres* recipient. The rationale by which the *Lane* court sanctioned the *cy pres* award—that the terms of the settlement are "the offspring of compromise" that "necessarily reflect the interest of **both** parties"—has no application to this objection, where the assertion is that Google's promise to give money to organizations to which it was already giving money simply is not worth the release of individual class members' claims, nor commensurate with the attorneys' fees request. 696 F.3d at 821 (emphasis added).[5] *Cf.*

---

[5] *Lane* also has no application to a distribution that unjustifiably favors non-party class counsel. *See supra* § IV.A. Settlement concessions should reflect the interest of "both parties" —the class members themselves and the defendant—but not the interest of class counsel.

*Webb v. Carter's*, 272 F.R.D. 489, 504 (C.D. Cal. 2011) (rejecting class certification where the manufacturer of children's tagless clothes was already offering the relief sought by the putative class members).

**C. Frank further objects to AARP as a recipient.**

The AARP takes political positions opposed by many class members, including Frank. They should not be receiving *cy pres* funds.

**V. In the alternative, if distributions to individual class members are impracticable, then a class action is not superior to other available methods of adjudicating the controversy.**

One prerequisite of class certification is that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). If a *cy pres*-only settlement is necessary because it would be too costly to distribute the settlement funds to individual class members, then a class action is not an efficient and superior means of adjudicating this controversy. *Supler v. FKAACS, Inc.*, No.. 5-11-CV-00229-FL, 2012 U.S. Dist. LEXIS 159210, at *10-*11 (E.D.N.C. Nov. 6, 2012) (holding that, because "benefits to putative class members" from *cy pres* payments "are attenuated and insignificant…, class certification does not…promote judicial efficiency.") (internal quotations, ellipses, and citations omitted). The Ninth Circuit came to a similar conclusion in *In re Hotel Tel. Charges*, 500 F.2d 86 (9th Cir. 1974). There, the court reasoned that "[w]henever the principal, if not the only, beneficiaries to the class action are…not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute," and that, "[w]hen, as here, there is no realistic possibility that the class members will in fact receive compensation, then monolithic class actions raising mind-boggling manageability problems should be rejected." *Id.* at 91-92. In this case, the proposed settlement falls into that category. It provides at most an indirect and attenuated benefit to the class, justified on the grounds that individual distributions would be too costly because of the size of the class. PAO at 10-11.

If true, then these claims should proceed as individual actions. Under such actions, class members can seek statutory damages of up to $10,000. 18 U.S.C. § 2520(c)(2)(B) (authorizing

statutory damages for violations of the Electronic Communications Privacy Act). No matter how slim the possibility of attaining such damages, that possibility is superior to releasing those claims for no compensation. *See Brown v. Wells Fargo & Co.*, No. 11-1362 (JRT/JJG), 2013 U.S. Dist. LEXIS 181262, at *16-*17 (D. Minn. Dec. 30, 2013) (concluding that superiority was not satisfied where individuals would be "entitled to between $100 and $1,000 dollars in statutory damages" in successful individual litigation, but only $55 as a class member); *Sonmore v. CheckRite Recovery Servs.*, 206 F.R.D. 257, 265-66 (D. Minn. 2001) (holding that the discrepancy between the $25 that class members could recover and the $1000 in statutory damages they could recover individually meant that a class action was not superior); *cf. also Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234 n.5 (9th Cir. 1974) (finding no superiority where individual recoveries could have amounted to $1,875 and attorneys' fees and costs were statutorily recoverable); *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 716 (9th Cir. 2010) ("We think it clear that the Rule 23(b)(3) superiority analysis must be consistent with the congressional intent in enacting a particular statutory damages provision.").

Superiority must be contemplated from the perspective of putative absent class members, among other angles. *Bateman*, 623 F.3d at 713 (quoting *Kamm v. California City Development Co.*, 509 F.2d 205, 212 (9th Cir. 1975)). What is best for them? This settlement intends to release their rights in exchange for no compensatory relief. From the perspective of a class member, that cannot be a superior method of adjudicating this controversy. *Cf. Daniels v. Aeropostale West*, No. C 12-05755 WHA, 2014 U.S. Dist. LEXIS 74081, at *8 (N.D. Cal. May 29, 2014) ("No one should have to give a release and covenant not to sue in exchange for zero (or virtually zero) dollars. The collective-action opt ins would be better off simply walking away from this lawsuit with their rights to sue still intact."). A *cy pres* settlement, in which many of the beneficiaries are already receiving donations from the defendant, is not be superior in either fairness or efficiency to other methods of adjudication.

## VI. If the Court approves the certification and settlement, it should decline to award the $2.125 million attorneys' fees requested.

For several reasons, the settlement is substantively unfair (*see supra* §§ III-IV), procedurally unfair (*see infra* §§ VII-VIII), and premised on a theory that makes class certification untenable (*see*

OBJECTION OF THEODORE H. FRANK AND MELISSA HOLYOAK

*supra* § V). Nevertheless, if this Court disagrees with each of those propositions, it should still deem unreasonable the $2.125 million fee requested by plaintiffs. *See* Motion for Approval of Fees and Costs ("Fee Motion") (Dkt. 66).

Plaintiffs believe that the Ninth Circuit's 25% benchmark approach applies equivalently regardless of whether the defendant is obligated by a settlement to pay class members $8.5 million or obligated to pay non-class member third parties $8.5 million. Fee Motion at 2-4. Plaintiffs' belief is wrong as a matter of law and would be disastrous as a matter of public policy.[6]

As a matter of law, class members are simply "not indifferent to whether funds are distributed to them or to *cy pres* recipients, and class counsel should not be either." *Baby Prods.*, 708 F.3d at 178. When "class counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class," it is "appropriate for the court to decrease the award." *Id.* at 178-79 (citing, *inter alia*, two Ninth Circuit decisions and *ALI Principles* §3.13); *accord* Rhonda Wasserman, *Cy Pres in Class Action Settlements*, 88 S. CAL. L. REV.__ (forthcoming 2014), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2413951 (advocating for "presumptive reduction of attorneys' fees" where settlement includes significant *cy pres* component). Although obligating Google to donate to third parties may impose a cost on Google,[7] the Ninth Circuit has been clear that compensable value "is not how much money a company spends on purported benefits, but the value of those benefits to the class." *Bluetooth*, 654 F.3d at 944 (quoting *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)).

---

[6] One principle on which objectors can agree with plaintiffs is that any hypothetical value of the prospective injunctive relief should not be included in the denominator for purposes of making a percentage fee award. *See Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003) ("Precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund. We hold, therefore, that only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees."); *compare* Fee Motion at 2 (seeking a percentage upon "only the cash portion of the total recovery").

[7] Of course, it also may not impose very much of a cost at all. *See supra* § IV.B.

A dollar that goes to *cy pres* is less valuable than a dollar that goes directly to a class member. So, although plaintiffs reference a number of district court decisions that disregard this reality (*see* Fee Motion at 3 (citing cases)), plenty of courts have wisely concluded otherwise and have refused to value *cy pres* donations the same as a dollar to the class. *E.g., In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1077 (S.D. Tex. 2012) (discounting *cy pres* by 50% for purposes of awarding fees); *In re Livingsocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 19, 22 (D.D.C. 2013) (cutting fees to 18% in consideration of "proportion of the award that is going to *cy pres*."); *Weeks v. Kellogg Co.*, No. CV 09-08102 (MMM) (RZx), 2011 U.S. Dist. LEXIS 155472, at *111 (C.D. Cal. Nov. 23, 2011) (awarding 16.2% "in light of the fact that almost half of the settlement's value is guaranteed not to directly benefit individual class members."); *Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 123 n.9 (E.D. Pa. 2005) (excluding *cy pres* and non-economic injunctive relief benefits entirely). More importantly, the only Ninth Circuit case mustered by the plaintiffs, *Lane,* did not confront the question of whether the fee award in that case was excessive, nor whether the Ninth Circuit's benchmark should apply identically to *cy pres* only settlements. Rather, the objectors in *Lane* focused their attack solely on the substantive fairness of the settlement, not the fee award. 696 F.3d at 818, 820.

The "key consideration in determining a fee award is reasonableness in light of the benefit *actually conferred.*" *In re HP Inkjet Printer Litig.,* No. 5:05–cv-3580 JF, 2011 WL 1158635, at *10 (N.D. Cal. Mar. 29, 2011), *rev'd on other grounds* 716 F.3d 1173 (9th Cir. 2013) (emphasis in original) (internal citation and quotation omitted); *accord* Notes of Advisory Committee on 2003 Amendments to Rule 23(h) (in awarding fees the "fundamental focus is the result actually achieved *for class members*") (emphasis added). For this reason, where actual benefit is slim, courts will deviate downward from the 25% benchmark. *Pearson v. Nbty, Inc.*, No. 11-cv-7972, 2014 U.S. Dist. LEXIS 357, at *21-*27 (N.D. Ill. Jan. 3, 2014) (reducing 25% benchmark to 9.6% based on "low claims rate in combination with funds being remitted to *cy pres* in an amount greater than the actual benefit to the Class"); *Tarlecki v. Bebe Stores, Inc.*, No. C 05-1777 MHP, 2009 WL 3720872, 2009 U.S. Dist. LEXIS 102531, at *12 (N.D. Cal. Nov. 3, 2009) (reducing fee award to less than 13%) (cited by Fee Motion at 4).

If this Court endorses a rule that makes class counsel financially indifferent between a settlement that awards cash directly to class members and a *cy pres* only settlement, the parties will always agree to the *cy pres* arrangement and unnamed class members will be permanently left out in the cold. The reason that the parties will incline toward the *cy pres* arrangement is because of reasons related to those discussed *supra* at 9-10: defendants will prefer to make payments to third parties to whom they are already donating money rather than payments to absent class members. Donations may engender good will, and often merely replace or supplement donations that are already in the pipeline, or which the defendant has a habit of making: in the latter case, then the "relief" to the class is even more illusory, because it merely reflects a shift in accounting entries. Coupled with the class counsel's financial indifference, the defendant's preference *for* charitable donations means that the easy way of reaching settlement will be agreeing to *cy pres* only settlements.

The percentage of recovery/ benchmark is the prevailing Ninth Circuit methodology because it aligns the incentives of class counsel and the class much better than does the competing lodestar method. *In re Apple Iphone/Ipod Warranty Litig.*, No. C 10-1610 RS, 2014 U.S. Dist. LEXIS 52050, at *8-*9 (N.D. Cal. Apr. 14, 2014) ("[A]pplying the lodestar to common fund cases does not achieve the stated purposes of proportionality, predictability and protection of the class. It encourages abuses such as unjustified work and protracting the litigation. It adds to the work load of already overworked district courts. In short, it does not encourage efficiency, but rather, it adds inefficiency to the process.") (internal quotation and ellipsis omitted); *see generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 TUL. L. REV. 1809 (2000) (observing "solid consensus that the contingent approach minimizes conflicts more efficiently than the lodestar"). To apply the benchmark equally regardless of whether the class actually recovers funds is to undermine its core benefit and to again misalign the interests of class counsel and its clients.

Put simply, "courts need to consider the level of direct benefit provided to the class in calculating attorneys' fees." *Baby Prods.*, 708 F.3d at 170. If the court it inclined to approve the

OBJECTION OF THEODORE H. FRANK AND MELISSA HOLYOAK

settlement and certification, to comply with Rule 23(h), it should reduce the fee award to no more than 10% of the $8.5 million *cy pres* fund.

**VII.    The notice plan is inadequate because it does not include direct notice for class members for whom Google has contact information.**

The principle of disclosure through notice has been referred to as the "first and perhaps most important principle for class action governance." Alexandra Lahav, *Fundamental Principles for Class Action Governance*, 37 IND. L. REV. 65, 118 (2003). While "direct notice to class members by mail, e-mail or other electronic individualized means [may be] impractical" for the entirety of the class, it is obligatory for those class members for whom the defendant has contact information. PAO at 12. And yet the notice plan here is publication only. *Id.*

Google would have contact information at least for all class members who have gmail accounts. According to AYTM Market Research, 74% of all consumers use Google as their primary search engine, and 60% of all consumers use Google's gmail as their primary email service, suggesting that, if an even higher percentage of class members (Google's search engine users) have gmail accounts, Google has contact information for approximately perhaps 80% of the class or more. *74 Percent of Consumers Use Google Search, 60 Percent Own Gmail Accounts*, Brafton (Apr. 9, 2012), http://www.brafton.com/news/74-percent-of-consumers-use-google-search-60-own-gmail-accounts (last visited July 25, 2014).

The *Mullane* constitutional imperative is that the settlement notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).   As *Mullane* held, "[w]here the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* at 318.

Likewise, in *Eisen v. Carlisle and Jacquelin*, the Supreme Court held that "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case….each class member who can be identified through reasonable effort must be notified." 417

U.S. 156, 176 (1974).  There, the class numbered approximately 6 million, with only a minority, 2.25 million, being identifiable to the defendant. *Id.* at 166-67. Nevertheless, the large size of the class and the expense of the notice did not obviate the need for individual notice where the requisite information was in the possession of the defendant.  *Id.* at 175-76.

Following these decisions, the Ninth Circuit holds that "[t]o comply with the spirit of [Rule 23 notice provisions], it is necessary that the notice be given in a form and manner that does not systematically leave an identifiable group without notice." *Mandujano*, 541 F.2d 832, 835. Class members for whom Google has contact information are just such an identifiable group. Even where only a limited percentage of the class can be reached through direct notice, direct notice is still mandatory for those class members. *Eisen*, *supra*; *Smith v. Levine Leichtman Capital*, 2012 U.S. Dist. LEXIS 163672, at *7-*8 (N.D. Cal. Nov. 15, 2012) (holding that "[n]otice to class…must be 'the best…practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort,'" and that even where only 75-85% of the class could be reached through direct mail, direct mail was still required.) (quoting *Amchem*); *Fraser v. Asus Computer Int'l*, 2012 U.S. Dist. LEXIS 181315, at *10-*12 (N.D. Cal. Dec. 21, 2012) (concluding that postal notice is required even when only would reach 30% of class, publication is not sufficient).

The fact that class members will not recover any money for themselves under this settlement in no way negates their right to direct notice. *Hecht v. United Collection Bureau*, 691 F.3d 218, 225 (2d Cir. 2012) (repudiating argument that "the negligible amount of money to be awarded per person under the…settlement justified lesser notice.")  "A cause of action for damages is a property right, and thus cannot be taken without due process." *In re Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 768 (3d Cir. 1989). In other words, at the very least whenever any monetary claims are released as part of a class action, the stringent due process standards of *Mullane* and *Eisen* apply. In this case, where the class members would be giving up their individual causes of action as part of the settlement, individual notice is necessary wherever possible.

Once it is established that the full rigors of due process notice apply, there should be no dispute that the publication only notice here is unacceptable when the defendant's records house

OBJECTION OF THEODORE H. FRANK AND MELISSA HOLYOAK

class members' contact information. *See, e.g., Larson v. AT&T Mobility LLC*, 687 F.3d 109, 122-31 (3d Cir. 2012) (reversing notice plan that did not require defendants to search through their record for the purpose of providing individual notice). "Plaintiffs' pocketbooks are not a factor—the mandatory notice requirement may not be relaxed based on the high cost of providing notice." *In re Motor Fuel Temperature Sales Practices Litig.*, 279 F.R.D. 598 (D. Kan. 2012) (citing *Amchem* and *Eisen*).

For the settling parties, meager notice means less resistance, and even more importantly, less cost to settlement. But for class members, it means an abridgment of statutory and constitutional rights. This Court should consider the wisdom of the Western District of New York in a recent decision. "If plaintiffs and their attorneys are acting like they have something to hide from the absent class members, perhaps it's because they do." *Felix v. Northstar Location Servs.*, 290 F.R.D. 397, 408 (W.D.N.Y. 2013).

## VIII.    The parties have artificially burdened the right of objection and opt-out by requiring four separate paper-mail submissions for a class of internet users; no positive inference should be drawn from a low number of formal objectors.

Almost any given class action settlement, no matter how much it betrays the interests of the class, will produce only a small percentage of objectors. The predominating response will always be apathy because objectors without counsel must expend significant resources on an enterprise that will create little direct benefit for themselves. *See Vought v. Bank of Am.*, 901 F. Supp. 2d 1071, 1093 (C.D. Ill. 2012) (citing, *inter alia*, a 1996 FJC survey that found between 42% and 64% of settlements engendered no filings by objectors). Another common response from non-lawyers will be the affirmative avoidance, whenever possible, of anything involving a courtroom.

Class counsel argues that this understandable tendency to ignore notices or free-ride on the work of other objectors is best understood as acquiescence or even affirmative support for the settlement. Motion for Final Approval (Dkt. 65) at 18-19. This is wrong. Silence is simply *not* consent. *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001). "Silence may be a function of ignorance about the settlement terms or may reflect an insufficient amount of time to object. But most likely, silence is a rational response to any proposed settlement even if that

settlement is inadequate. For individual class members, objecting does not appear to be cost-beneficial. Objecting entails costs, and the stakes for individual class members are often low." Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007).

Without *pro bono* counsel to look out for the interests of the class, filing an objection is economically irrational for any individual. "[A] combination of observations about the practical realities of class actions has led a number of courts to be considerably more cautious about inferring support from a small number of objectors to a sophisticated settlement." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (internal citation omitted). Moreover, "where notice of the class action is, again as in this case, sent simultaneously with the notice of the settlement itself, the class members are presented with what looks like a *fait accompli*." *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co..*, 834 F.2d 677, 680-81 (7th Cir. 1987).

"[T]he absence or silence of class parties does not relieve the judge of his duty and, in fact, adds to his responsibility." *Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971). The Court should draw no inference in favor of the settlement from the number of objections, especially given the vociferousness of the objectors that do appear. *GM Trucks*, 55 F.3d at 812-13; *Vought*, 901 F. Supp. 2d. at 1093. "One good objector may be worth many frivolous objectors in ascertaining the fairness of a settlement." *Richardson v. L'Oreal USA, Inc.*, __F. Supp. 2d__, 2013 WL 5941486, at *14 (D.D.C. Nov. 6, 2013) (sustaining Ms. Holyoak's objection).

Yet more conducive to apathetic inaction, the parties have elected a process of objecting and opting out which is "unnecessarily burdensome." *Newman v. Americredit Fin. Servs.*, No. 11-cv-3041 DMS (BLM), 2014 U.S. Dist. LEXIS 15728, at *17 (S.D. Cal. Feb. 3, 2014) ("The Court is not inclined to approve a settlement which makes it unnecessarily burdensome to submit a claim or opt out. The class members are required to submit claim forms and opt out requests by mail, although the settlement administrator is obligated to provide a phone number and a website. The only justification offered for the mailing requirement is that the claim forms require an affirmation.

Plaintiff does not explain why an affirmation could not be provided through an online form or by phone with adequate identification of the class member.") (internal citations omitted); *Galloway v. Kan. City Landsmen*, No. 4:11-1020-CV-W-DGK, 2012 U.S. Dist. LEXIS 147148, at *16 (W.D. Mo. Oct. 12, 2012) (denying settlement in part based on parties' failure to allow class members to opt out via email alone), *later proceeding reported at* 2013 U.S. Dist. LEXIS 92650, at *10-*11 (W.D. Mo. Jul. 2, 2013) (noting that after the initial settlement rejection "[t]he parties have simplified the opt-out provision so that in order to opt-out, class members need only send a single email to defense counsel."). The requirement that objectors print and post multiple copies of their objection/exclusion is both expensive and outdated in 2014. *E.g.*, *Newman*, *supra*; *Smith*, 2012 U.S. Dist. LEXIS 163672, at *8-*9 ("[T]he parties have made the procedures for filing objections unduly burdensome. There is no reason to require…the objectors to mail their objections to three different locations.").

Rather than requiring class members to snail-mail an objection to four recipients, other cases permit the relatively efficient (indeed, close to costless) method of transmitting objections and by a single electronic submission. *See e.g., In re Motor Fuel Temperature Sales Practices Litig.*, No 07-md-01840-KHV-JPO, Order (Dkt. No. 3019), at 2 (D. Kan. Nov. 10, 2011) ("If Costco plans to proceed with email notification, it must allow class members to opt out of the class and object to the settlement electronically"); *Boring v. Bed Bath & Beyond,* No. 12-cv-05259-JST (N.D. Cal. Nov. 21, 2013) ("The Court notes that the filing of objections with the Court constitutes service upon counsel for the parties, as the parties' counsel are registered to receive filings through the Court's Electronic Case Filing system."). Likewise, there is no valid reason why a class member in this settlement should have to download, print, fill out and mail an exclusion in this day and age. *See, e.g.,* http://ebayfeaturedplusclassaction.com/#qf (allowing email opt out); http://www.copyrightclassaction.com/exclusion.php3 (online opt out); http://www.fraleyfacebooksettlement.com/faq#Q14 (same).

Where electronic modes of opting-out and objecting are available, the "vast majority" of participating class members will use those avenues. *Motor Fuel Temperature*, 2012 U.S. Dist. LEXIS

57981, at *76 (D. Kan. Apr. 24, 2012); *id.* at *74 n.13 (nearly three times more people opted-out electronically than by mail); *Fraley v. Facebook, Inc.*, No. 11-cv-01726 RS (N.D. Cal. Jun. 7, 2013), Declaration of Jennifer M. Keough Regarding Settlement Administration (Dkt. 341) at ¶12 (6,884 of 6,946 opt-out requests (99.1%) were submitted electronically via the settlement website when that option was available). This is especially true of course, when, as here, the class consists entirely of internet users. *See* Declaration of Richard W. Simmons (Dkt. 65-4) ¶16 ("By definition, all of the interaction between Google and class members occurred on-line.")

At the very least it is improper for the parties to require objectors to mail their objections to **four** different locations. *See* Procedural Guidance for Class Action Settlements, *available at* http://cand.uscourts.gov/ClassActionSettlementGuidance ("The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. All objections will be scanned into the electronic case docket and the parties will receive electronic notices of filing.").

Imposing a costly, inefficient alternative over affordable, seamless electronic processes can only give rise to the inference that the parties wished to undermine the autonomous decisions of class members. It has been known for at least a half-decade that "the ease and cost-efficiency of such direct internet submissions increases the likelihood of absent class member participation." Robert H. Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet,* 69 U. PITT. L. REV. 727, 766 n. 251 (2008); Leslie, *The Significance of Silence*, 59 FLA. L. REV. at 128-29. Indeed, notice was almost entirely distributed via the internet, yet absent class members' expressions of dissent cannot be made in the same medium. Class counsel is not licensed to consign objectors or opt-outs to second class status.

"One hallmark of a reasonable settlement agreement is that it makes participation as easy as possible, whether class members wish to make a claim, opt out, or object." *McClintic v. Lithia Motors*, No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *17 (W.D. Wash. Jan. 12, 2012) (critiquing comparable opt-out and objection process and ultimately rejecting settlement). Together, the hurdles imposed on exclusion and objection do not appropriately respect class members' Fed. R. Civ. P. 23

OBJECTION OF THEODORE H. FRANK AND MELISSA HOLYOAK

rights. Moreover, the court loses the benefit of valuable adversarial perspectives that objectors can bring to the evaluation of a settlement's fairness.  Not only do the hurdles constitute a reason to reject the settlement in this case, they provide an added reason to discredit any argument that the lack of objectors signals the class members' approval of the settlement.

## CONCLUSION

For the forgoing reasons, the settlement cannot be approved. It asks class members to surrender their individual claims in exchange for a few million dollars being given to unrelated third parties, many of whom have prior relationships to the defendant or class counsel. The settlement does not afford effective notice to the class and makes objecting or opting out needlessly and artificially burdensome. The class itself is not certifiable, both because, if individual recoveries are genuinely impossible, then a class action is not superior to other methods of adjudication.  If the Court decides to approve the settlement anyhow, it should drastically pare down the requested fee award.

Dated: August 8, 2014                    Respectfully submitted,

*/s/ Theodore H. Frank*
Theodore H. Frank (SBN 196332)
**CENTER FOR CLASS ACTION FAIRNESS**
1718 M Street NW
No. 236
Washington, DC 20036
Email: tfrank@gmail.com
Voice: (703) 203-3848

*Attorney for Objectors Holyoak and Frank*

OBJECTION OF THEODORE H. FRANK AND MELISSA HOLYOAK

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing Objection using the CM/ECF filing system thus effectuating service of such filing on all ECF registered attorneys in this case. I further certify that, in accordance with the class notice, I caused the foregoing document to be sent via first class mail to the following individuals at the addresses listed below:

| | |
|---|---|
| U.S. District Court<br>Clerk's Office<br>280 S. 1st Street<br>San Jose, CA 95113 | Edward D. Johnson<br>Mayer Brown LLP<br>Two Palo Alto Square, Suite 300<br>3000 El Camino Real<br>Palo Alto, CA 94306-2112 |
| Kassra Nassiri<br>Nassiri & Jung LLP<br>47 Kearny Street, Suite 700<br>San Francisco, CA 94108 | Google Referrer Header Privacy Litigation<br>Settlement Administrator<br>P.O. Box 2002<br>Chanhassen, MN 55317-2002 |

DATED this 8th day of August, 2014.

*/s/ Theodore H. Frank*

Theodore H. Frank