1  KASSRA P. NASSIRI (215405)
   (knassiri@nassiri-jung.com)
2  NASSIRI & JUNG LLP
   47 Kearny Street, Suite 700
3  San Francisco, California 94108
   Telephone: (415) 762-3100
4  Facsimile: (415) 534-3200

5  MICHAEL J. ASCHENBRENER (277114)
   (mja@aschenbrenerlaw.com)
6  ASCHENBRENER LAW, P.C.
   795 Folsom Street, First Floor
7  San Francisco, CA 94107
   Telephone: (415) 813-6245
8  Facsimile: (415) 813-6246

9
   ILAN CHOROWSKY (*Admitted Pro Hac Vice*)
10 (ilan@progressivelaw.com)
   PROGRESSIVE LAW GROUP, LLC
11 1 N LaSalle Street, Suite 2255
   Chicago, IL 60602
12 Tel: (312) 787-2717
   Fax: (888) 574-9038
13

14
   Attorneys for Plaintiffs and the Putative Class
15
                  **UNITED STATES DISTRICT COURT**
16
               **NORTHERN DISTRICT OF CALIFORNIA**
17
                        **SAN JOSE DIVISION**
18

19
   In re GOOGLE REFERRER HEADER PRIVACY          Case No. 5:10-cv-04809-EJD
20 LITIGATION
                                                 CLASS ACTION
21
                                                 **PLAINTIFFS' REPLY**
22 _____             **MEMORANDUM IN SUPPORT**
                                                 **OF MOTION FOR FINAL**
23 This Document Relates To: All Actions         **APPROVAL OF CLASS ACTION**
                                                 **SETTLEMENT AND AWARD OF**
24                                               **ATTORNEYS' FEES, EXPENSES,**
                                                 **AND INCENTIVE AWARDS**
25
                                                 Date: August 29, 2014
26                                               Time: 9:00 a.m.
                                                 Place: Courtroom 4, 5th Floor
27                                               Judge: Hon. Edward J. Davila

28

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II. ARGUMENT ........................................................................................................2

    A.  The Proposed *Cy Pres* Distributions Meet Ninth Circuit Criteria For Final
        Approval. ..................................................................................................2

        1.  *Distributing The Common Fund Via* Cy Pres *Awards Is The Appropriate Method
            Of Relief For This Class.* ...............................................................................2

        2.  *The Proposed Organizations Have A Sufficient Nexus To The Class Claims.* .........3

        3.  *There Is No Improper Relationship Amongst The* Cy Pres *Recipients, Class
            Counsel, And Defendant Google.* ....................................................................4

    B.  The Notice Plan Was Appropriate Both In Substance And Execution. ......................7

        1.  *Notice By Publication Was Appropriate.* ...........................................................7

        2.  *The Cost And Methods Of The Notice Plan Were Appropriate.* ...............................9

        3.  *Requirements For Submitting Objections And/Or Exclusions Do Not Improperly
            Burden Class Members.* .................................................................................9

        4.  *Ninth Circuit Precedent Evaluates The Number Of Objections Relative To The
            Class Size To Assess Class Reaction To A Settlement.* ..........................................10

        5.  *Deadlines Described In Notice Were Appropriate And Thoroughly Communicated.*11

        6.  *The Substance Of The Notice Was Adequate.* .....................................................11

    C.  The Settlement's Permanent Prospective Relief Provides Valuable Benefits To The
        Class. .......................................................................................................12

        1.  *Objectors Misconstrue Allegations In Complaint.* ..............................................12

        2.  *The Permanent Prospective Relief Is Appropriate.* .............................................13

    D.  Class Counsel Are Entitled To Their Requested Attorneys' Fees ...........................14

    E.  Incentive Awards Are Presumptively Reasonable. .............................................15

    F.  A Class Action Is The Most Appropriate Mechanism For Achieving Relief For More
        Than 100 Million Similarly Situated Individuals. ..............................................16

    G.  The Court May Simultaneously Approve The Proposed Settlement While Also
        Fulfilling Its Fiduciary Duty To The Class. .....................................................18

    H.  The $8.5 Million Common Fund Is Sufficient. ..................................................19

    I.  Parties Complied With CAFA. ......................................................................20

    J.  The Scope Of The Release In This Settlement Is Appropriate. ..............................20

III. CONCLUSION......................................................................................................21

**TABLE OF AUTHORITIES**

Cases

*AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011) .................................................... 14

*Chun-Hoon v. McKee Foods Corp,* 716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................. 10

*Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ...................................... 10

*Cohorst v. BRE Props., Inc.*, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012) ................................... 8

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ................................ 11

*Daniels v. Aeropostale West*, 2014 WL 2215708 (N.D. Cal. May 29, 2014) ............................... 17

*Facebook, Inc. v. Jeremi Fisher*, 2009 WL 5095269 (N.D. Cal. Dec. 21, 2009) ........................ 14

*Fraley v. Facebook, Inc.*, 2012 WL 5838198 (N.D. Cal. Aug. 17, 2012) ...................................... 2

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................... passim

*Hopson v. Hanesbrands Inc.*, 2008 WL 928133 (N.D. Cal. Apr. 3, 2009) .................................. 16

*In re Apple In-App Purchase Litig*, 2013 WL 1856713 (N.D. Cal. May 2, 2013) ........................ 10

*In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ............................. 18

*In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040 (S.D. Cal. 2013) ..................................... 5

*In re Google Buzz Privacy Litig.*, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ................... passim

*In re Haier Freezer Consumer Litig*, 2013 WL 2237890 (N.D. Cal. May 2, 2013) ........................ 9

*In re HP Laser Printer Litig.*, 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ............................... 17

*In re Netflix Privacy Litig.*, 2013 WL 1120801 (N.D. Cal. March 18, 2013) .............. 15, 16, 19, 21

*In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ..................... 9

*In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995) .................................................... 19

*Jacobs v. Cal. St. Auto. Assn. Inter-Ins. Bureau*, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) ... 16

*Jermyn v. Best Buy Stores*, 2010 WL 5187746 (S.D.N.Y. Dec. 6, 2010) ....................................... 8

*Knutson v. Schwan's Home Serv., Inc.*, 2014 WL 3519064 (S.D. Cal. July 14, 2014) ................. 11

*Lane v. Facebook.* 696 F.3d 811 (9th Cir. 2012), *denying rehearing en banc*, 709 F.3d 791 (9th

Cir. 2013), *cert. denied sub nom.*, *Marek v. Lane*, 134 S. Ct. 8 (2013) ...................... passim

*Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832 (9th Cir. 1976) ................................... 10

*Moore v. City of San Jose*, 615 F.2d 1265 (9th Cir. 1980) ................................................. 9

*Moore v. Verizon Commn's Inc.*, 2013 WL 4610764 (N.D. Cal. Aug. 28, 2013) ......................... 10

*Nachsin v. AOL, LLC*, 663 F.3d 1034 (9th Cir. 2012) ........................................... 6, 7, 17

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ................ 10, 19

*Rodriguez v. West Publg. Corp.*, 563 F.3d 948 (9th Cir. 2009) ...................................... 10

*Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d. 103 (9th Cir. 1990) ................. 6, 7

*United States v. State of Oregon*, 913 F.2d 576 (9th Cir. 1990) ...................................... 9

*Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943 (9th Cir. 1976) ...................................... 18

*Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ................. 11

*Yeoman v. Ikea U.S. W., Inc.*, 2013 WL 5944245 (S.D. Cal. Nov. 5, 2013) ................................. 8

**RULES**

Fed. R. Civ. P. 23(c)(2)(B) ................................................................ 12

## I.     INTRODUCTION

In a class likely exceeding one hundred million members, a mere four objections were filed in opposition to final approval of the proposed Settlement. The objections mostly sound in philosophical postures, arguing for "different" terms or a "better" settlement, and largely fail to indicate a legal basis for denying final approval. When evaluating this Settlement, the Court need only determine whether the Settlement is fair, adequate, and free from collusion. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir. 1998). The Settlement meets this standard.

The substance of the objections can be broken into four general categories. A majority of the objections criticize the Settlement's use of *cy pres* funds in lieu of individual payments. Objections of this nature find no support in the law. The Ninth Circuit has affirmed the propriety of *cy pres* distributions on numerous occasions. Further, Plaintiffs have made a sufficient showing under the standards employed by the Ninth Circuit for evaluating *cy pres* awards to support such a distribution. Importantly, not a single objector criticizes the goals or objectives of the detailed proposals each potential *cy pres* recipient submitted.

Other objections take issue with the substance and implementation of the Notice Plan even though the approved and implemented Notice Plan satisfied Rule 23 and due process, and already was approved after scrutiny by this Court at the time of preliminary approval.

The third group of objections takes issue with the permanent, prospective relief provided for in the Settlement. The objections claim that the prospective relief here does not go far enough because it does not prevent Google from disclosing search queries via referrer headers, but rather only forces Google to disclose its practices. However, this group of objections misconstrues the nature of the underlying lawsuit. This lawsuit is about search query disclosure without notice and consent. The alleged wrongdoing is only unlawful because of the lack of notice and consent. With notice and consent—which this Settlement requires—Google's activities will not be unlawful.

Finally, objections are aimed at Class Counsel's request for attorneys' fees and incentive awards for the Class Representatives. These objections ignore well-established, binding precedent that routinely approves the Ninth Circuit's 25% benchmark in privacy consumer class action settlements. The objectors similarly provide no basis for objecting to the presumptively reasonable

1  incentive awards requested.

2      In light of the recovery Plaintiffs achieved on behalf of the Class, and the overwhelming

3  Class support for this Settlement, Plaintiffs respectfully request that this Court approve Plaintiffs'

4  Motion for Final Approval of the Class Action Settlement and Plaintiffs' Motion for Attorneys'

5  Fees, Expenses, and Incentive Awards.

6  **II.    ARGUMENT**

7      **A.    The Proposed *Cy Pres* Distributions Meet Ninth Circuit Criteria For Final**

8          **Approval.**

9          ***1.    Distributing The Common Fund Via* Cy Pres *Awards Is The Appropriate***

10             ***Method Of Relief For This Class.***

11     Objector Frank misconstrues the relevant standard the Ninth Circuit uses when assessing

12  the propriety of a *cy pres* award. Frank claims that "*Fraley* is the proof" that Plaintiffs' proposed

13  *cy pres* distribution is improper. (Dkt. 70 at 7.) Mr. Frank is incorrect.

14     Objector Frank relies heavily upon *Fraley v. Facebook* for the proposition that a settlement

15  that distributes the common fund only to *cy pres* recipients is not proper. *Fraley v. Facebook, Inc.*,

16  2012 WL 5838198 at *2 (N.D. Cal. Aug. 17, 2012). However, just one month later, the Ninth

17  Circuit affirmed the final approval of another settlement that provided only prospective relief and

18  *cy pres* awards in *Lane v. Facebook*. 696 F.3d 811, 816 (9th Cir. 2012), *denying rehearing en*

19  *banc*, 709 F.3d 791 (9th Cir. 2013), *cert. denied sub nom.*, *Marek v. Lane*, 134 S. Ct. 8 (2013).

20  This later Ninth Circuit decision trumps the earlier district court decision in *Fraley*.[1] Under *Lane*,

21  the proper inquiry here is whether the *cy pres* awards are "the next best distribution." 696 F.3d at

22  820. A *cy pres* distribution is the next best distribution where it "bears a substantial nexus to the

23  interests of the class members" and takes into consideration the nature of the plaintiffs' lawsuit,

24  the objectives of the underlying statutes, and the interests of the silent class members. *Id*. at 821.

25     Here, the proposed *cy pres* distributions satisfy this standard. This case is about Google's

---

[1] Mr. Frank should know that *Lane*, decided after *Fraley*, is the controlling precedent. After all, he filed the cert petition in *Lane* that the Supreme Court denied. *See Marek v. Lane*, 134 S. Ct. 8 (2013) (denying petition for writ of certiorari).

1  allegedly improper transmission of the Class's search queries via referrer headers to third parties

2  without notice and consent; in other words, it's about Internet privacy for consumers. (*E.g.* Dkt 50,

3  ¶ 121.) Each of the proposed *cy pres* recipients submitted specific proposals detailing how *cy pres*

4  funds from this Settlement would be used to educate consumers and improve online privacy.[2] The

5  proposed *cy pres* recipients are among the preeminent institutions in the nation for researching and

6  advocating for online privacy. (Dkt. 52 at 18.) In fact, nowhere in any of the objections do the

7  objectors take issue with the content or goals of the *cy pres* recipients' proposals. (*See generally*

8  Dkts. 68-71.) In light of the fact recognized by the Court that "the cost of sending out what would

9  likely be very small payments to millions of class members would exceed the total monetary

10  benefit obtained by the class" (Dkt. 63 at 10), the proposed *cy pres* awards are the next best

11  distribution.

12  **2.      The Proposed Organizations Have A Sufficient Nexus To The Class**

13  **Claims.**

14  Objector Weiner claims there is not a sufficient nexus between the underlying claims of

15  identity theft and the work of the proposed *cy pres* recipients. (Dkt 68). This case does not allege

16  that Google engaged in or encouraged identify theft; rather, the claims allege that Google failed to

17  properly disclose how and when it transmitted user search queries via referrer headers to third

18  parties. (*See generally* Dkt. 50). Weiner's objection for lack of sufficient nexus fails on this basis.

19  Objector Weiner also contests the nexus between the *cy pres* recipients' proposals and the

20  underlying claims because the proposals "do nothing to right the wrongs caused by the underlying

21  suit: Google will continue to engage in the same practices as before the lawsuit." (Dkt. 68.) This

22  objection is misguided on two accounts. First, the Settlement's prospective relief *does* specifically

23  address the wrongs alleged in the lawsuit by requiring Google to permanently and fully disclose

24  how and when it transmits search queries in referrer headers. (Dkt. 52-3, ¶ 3.1.)

25  Second, as held by the Ninth Circuit in *Lane*, granting *cy pres* money in a consumer-

26

27  _____
   [2] http://www.googlesearchsettlement.com/hc/en-us/articles/202372170-Proposed-Cy-Pres-Recipients-and-Allocations (last visited August 13, 2014).

28

privacy class action to organizations that will use the funds to implement programs protecting consumers in online privacy matters is an appropriate use of the *cy pres* funds. *Lane v. Facebook*, 696 F.3d 811, 821 (9th Cir. 2012) (holding that *cy pres* awards bore a "direct and substantial nexus to the interests of absent class members" where *cy pres* money promoted causes of online privacy and security). Similarly, here Plaintiffs allege that the failure to disclose how class members' information may be disclosed is an unlawful violation of privacy. (Dkt. 50, ¶ 121.) The proposed *cy pres* recipients have, as acknowledged by Objector Weiner, proposed using the Settlement funds to "raise consumer awareness about privacy issues." (Dkt. 68.) The detailed *cy pres* proposals will fund initiatives to educate users about online privacy and to advance the state of privacy technology. (Dkt. 65 at 7.) These are appropriate uses of *cy pres* money, and none of the objectors have found issue with the content of the proposals.

Objector Jan[3] states that, with the exception of the World Privacy Forum, all of the proposed *cy pres* recipients "are not focused on privacy issues." (Dkt. 71 at 10.) Objector Jan provides no basis for his assertion and is simply wrong. Moreover, even a cursory glance at the published proposals reveals that each proposal is directly and specifically tailored to online privacy issues, and the organizations are well-positioned to undertake the proposals given their missions and prior experience.

### 3. There Is No Improper Relationship Amongst The Cy Pres Recipients, Class Counsel, And Defendant Google.

Objector Frank argues that because Class Counsel attended school at Harvard, Stanford, and Chicago-Kent, distributing *cy pres* money to any of these organizations is de facto improper. (Dkt. 70 at 9-10.) Objector Jan joins in this objection, and also claims the relationship is improper based upon Defendant's counsel Eric Evans having obtained his J.D. from Harvard.[4] (Dkt. 71 at

_____

[3] Objector Jan is represented by attorney Joseph Darrell Palmer, a professional objector whom the State Bar of California has recommended receive a two-year suspension from the practice of law for making false statements under oath on multiple occasions. (Asch. Decl., Ex. A-1-3.)

[4] In addition to being irrelevant, this statement is incorrect. Mr. Evans obtained his A.B. (1993) and A.M. (1997) from Harvard, but received his J.D. at the University of Michigan in 2004. http://www.mayerbrown.com/people/eric-b-evans/ (last accessed August 22, 2014).

10.) However, neither Frank nor Jan claim that Class Counsel (or Mr. Evans) have any relationships with the *cy pres* organizations beyond having attended these respected institutions. (*Id*.)

Being an *alma mater* of a *cy pres* recipient, without more, does not create an appearance of impropriety. In *In re EasySaver Rewards Litigation*, objectors to a class action settlement alleged that there was an appearance of impropriety where class counsel proposed giving *cy pres* money to USD Law School, a school three of the attorneys involved in the settlement had attended. *In re EasySaver Rewards Litig.*, 921 F. Supp. 2d 1040, 1050-51 (S.D. Cal. 2013). The court held that where the law school was not entitled to any greater award than the others, where there were "no suggestions that counsel [had] any further relationship with the school than simply graduating from there, and where there was a "rational connection between the chosen recipients and the nature of the settlement," it was not improper to grant *cy pres* money to an *alma mater* school. *Id*. In fact, the court noted that "simply by virtue of it being a law school, USD Law School may be in the best position to develop and research the legal issues associated with internet privacy and security underlying Plaintiffs' claims." *Id*. at 1051.

Here, the proposed proportional amounts to be distributed are: Carnegie Mellon (21%), World Privacy Forum (17%), Stanford Center for Internet and Society (16%), Chicago-Kent College of Law Center for Information, Society, and Policy (16%), AARP, Inc (15%), and Berkman Center for Internet and Society at Harvard University (15%).[5] As shown, two of the three non-*alma mater* proposed recipients would receive the largest proportions under the Settlement. Additionally, Class Counsel Kassra Nassiri and Michael Aschenbrener have no affiliation with Harvard's Berkman Center ("Berkman Center"), Stanford's Center for Internet and Society ("CIS"), or Chicago-Kent's Center for Information, Society and Policy ("CISP") other than obtaining degrees from the institutions housing these centers. (Declaration of Michael Aschenbrener ("Asch. Decl."), attached hereto as Exhibit A, at ¶ 5); (Declaration of Kassra Nassiri

---

[5] http://www.googlesearchsettlement.com/hc/en-us/articles/202372170-Proposed-Cy-Pres-Recipients-and-Allocations (last accessed August 21, 2014).

("Nassiri Decl.), attached hereto as Exhibit B, at ¶ 4.)

Furthermore, as the court noted in *In re EasySaver Rewards*, law schools by their very natures are often best situated to research legal issues related to the matters here, including the legality and adequacy of online privacy disclosures. The Berkman Center, as part of its mission, researches, teaches, and encourages engagement revolving around risks to privacy and reputation online.[6] CIS similarly "works in the public interest to empower and support user choice online."[7] Finally, CISP "promotes interdisciplinary research about privacy and information security issues raised by developing information technologies."[8] The aims of each of these proposed *cy pres* recipients fit squarely within Plaintiffs' underlying claims and meet the criteria for receiving funds from this Settlement.

Frank cites the Ninth Circuit's decision in *Naschin v. AOL* to support his criticism of *cy pres* donations to the *alma maters* of Class Counsel. *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2012). However, the problems with the *cy pres* awards in *Naschin* are not present in the instant case. In *Naschin*, the Ninth Circuit held that the proposed donations did not satisfy any of the guiding standards outlined in *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d. 103 (9th Cir. 1990). 663 F.3d at 1040. Because the proposed donations in *Naschin* were focused primarily on Los Angeles recipients in a national class action and because the donations were made to local charities (e.g. the Boys and Girls Club of Los Angeles) that had no relationship to the underlying claims of breach of electronic communications privacy, unjust enrichment and breach of contract, the Ninth Circuit refused to uphold the rewards. *Id*.

In contrast here, the proposed *cy pres* recipients are geographically diverse, serving the interests of a nationwide class.[9] This geographical diversity favors, rather than detracts, from the

---

[6] http://p2.zdassets.com/hc/theme_assets/512007/200043500/Berkman_Center_at_Harvard.pdf (last visited Aug. 14, 2014).
[7] http://p2.zdassets.com/hc/theme_assets/512007/200043500/Stanford_CIS.pdf, (last visited Aug. 14, 2014).
[8] http://p2.zdassets.com/hc/theme_assets/512007/200043500/Chicago-Kent.pdf (last visited Aug. 14, 2014).
[9] The proposed *cy pres* recipients in this case are located in California, Illinois, Pennsylvania, Massachusetts, and Washington, D.C.

1   attractiveness of these recipients. *Compare Naschin*, 663 F.3d at 1036 (*cy pres* distributions not

2   appropriate where recipients geographically isolated and substantively unrelated to underlying

3   claims). And, as detailed above, the mission statements of the *cy pres* recipients align squarely

4   with Plaintiffs' claims in conformity with the guiding principles in *Six Mexican Workers*, 904 F.2d

5   at 1037 ("The district court's choice among distribution options should be guided by the

6   objectives of the underlying statute and the interests of the silent class members.").

7        Objector Frank also takes issue with the proposed *cy pres* donations to the Berkman

8   Center, CIS, CISP, and AARP because Frank claims Google "is already a regular contributor."

9   (Dkt. 70 at 11.) While Google has apparently donated to these institutions previously, Google has

10  never provided funding for the specific proposals submitted by the *cy pres* recipients. Thus,

11  Frank's conjecture that "Google is agreeing to do something that it was in all likelihood going

12  to do anyway" is incorrect and misplaced.[10] (Dkt. 70 at 11.)

13       Objector Jan also offers a variety of other organizations that he believes are "better aligned

14  with the interests of the Class members." (Dkt. 71 at 12.) Jan offers no specifics about the use of

15  the funds by his preferred recipients, however, or any criticism of the proposed use by the actually

16  selected proposed recipients. More fundamentally, where the proposed *cy pres* recipients already

17  meet the standards under *Lane*, the question is not whether the Settlement could be better, but

18  whether the Settlement is fair, adequate, and reasonable. *See Hanlon* 150 F. 3d at 1027.

19       **B.      The Notice Plan Was Appropriate Both In Substance And Execution.**

20            *1.      Notice By Publication Was Appropriate.*

21       Objector Frank and Objector Jan allege the Notice Plan, already approved by this Court

22  (Dkt. 63) and implemented by the Class Administrator (Dkt. 65-4) is not adequate because it did

23  not provide for email messages to class members with Gmail accounts. (Dkt. 70 at 17); (Dkt. 71 at

24  3). Frank reasons that when there is an identifiable group, that group—whether the entire class or a

25  subsection – should receive direct notice. (Dkt. 70 at 18.)

26  _____

27  [10] In fact, this district has approved proposed *cy pres* donations to the Berkman Center in previous
    class action litigation against Google. *In re Google Buzz Privacy Litig.*, 2011 WL 7460099 at *3
28  (N.D. Cal. June 2, 2011) (order approving $500,000 *cy pres* donation to Berkman Center).

As an initial matter, Objectors Frank and Jan have not provided any "newly discovered evidence, intervening change in law, or manifest injustice warranting reconsideration" of the Court's approval of the Notice. *Cohorst v. BRE Props., Inc.*, 2012 WL 153754 at *1 (S.D. Cal. Jan. 18, 2012).[11] The Court should reject this objection on this basis alone.

Moreover, Federal Rule of Civil Procedure 23 does not require individual notice where the notice would be overly broad or over-inclusive. *Yeoman v. Ikea U.S. W., Inc.*, 2013 WL 5944245 at *5 (S.D. Cal. Nov. 5, 2013). In *Yeoman*, defendant possessed a list of 1.6 million individual customer email addresses. *Id.* at *6. Nevertheless, the court in *Yeoman* found that sending notice to every individual on the list would be overbroad since not every individual who submitted an email would also be a class member in the pending settlement. *Id*. *See also Jermyn v. Best Buy Stores*, 2010 WL 5187746 at *9 (S.D.N.Y. Dec. 6, 2010) (holding that individual notice not required where it was not possible to identify which Best Buy customers were unsuccessful in seeking a price match). Similarly here, Google may have access to a list of Gmail account holders, but that does not mean that each Gmail account holder is also a Class Member.[12] Thus, sending notice emails to all Gmail users would likely be over-inclusive.

Objector Frank and Objector Jan also cite to an AYTM Market Research survey that found, based on unidentified and unverifiable sources, that 74% of all consumers use Google as their primary search engine and that 60% of all consumers use Google's Gmail as their primary email service. (Dkt 70 at 17.) From that unverified data, Frank speculates that "Google has contact information for approximately perhaps 80% of the class or more" without providing any other basis for this belief. (*Id*.) Objector Jan does not provide any supporting arguments to demonstrate individual notice was practicable, aside from citing to the popularity of Gmail and the results of the AYTM survey. (*See* Dkt. 71 at 3.)

---

[11] Class Counsel notes that if Objector Frank, an attorney with a career dedicated to class actions, had found the proposed Notice Plan so reprehensible, he had ample opportunity to reach out to Class Counsel after the submitted Motion for Preliminary Approval. (Dkt. 52.)

[12] Objector Frank also argues that the fact that class members will not receive an individual payout should not negate their right to direct notice. Plaintiffs do not argue that a less stringent standard for evaluating the Notice Plan applies where the Class does not receive an individual payout.

The reality is, while the class is readily define-able per the Class Definition (Dkt. 52-3, ¶ 1.4), locating each class member in a class likely exceeding 100 million is impracticable since Class Members did not need to register with Google to perform searches. (Dkt. 65-4, ¶ 20.) The already-approved Notice Plan was the best method under the circumstances, reaching over 70% of the Class an average of 2.2 times each. (*Id*. at ¶ 50.) The Notice Plan was also supplemented with messaging aimed at security-conscious Class Members; the plan reached over 90% of these individuals more than three times each. (*Id*. at ¶ 51.) Therefore, the Notice Plan was properly approved.

### 2. *The Cost And Methods Of The Notice Plan Were Appropriate.*

Objector Jan argues that the methods of the approved and implemented Notice Plan were inadequate for a variety of reasons. Objectors Morrison and Jan also argue that the $1 million notice plan was too expensive. (Dkt. Nos. 67, 71.) In support of these objections, they cite to no cases or authority. But "in this Circuit, we have usually imposed the burden on the party objecting to the class action settlement." *See United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) (*citing Moore v. City of San Jose*, 615 F.2d 1265, 1272 (9th Cir. 1980) Thus, these Notice Plan objections necessarily fail. Furthermore, "the Notice Plan in this case utilized the most cost-effective method of notice available, and the cost of the Notice Plan was in line with notice plans in similar settlements." (Declaration of Class Administrator ("Class Admin Decl."), attached hereto as Exhibit C, ¶ 12.)

### 3. *Requirements For Submitting Objections And/Or Exclusions Do Not Improperly Burden Class Members.*

Objector Frank argues that the process for objecting to and opting out of the Settlement are unnecessarily burdensome. (Dkt. 70 at 20.) However, the Northern District has regularly approved notice plans that require notice to be sent via mail to the court and the parties' counsel. *See, e.g. In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544 at *5 (N.D. Cal. Dec. 22, 2008) (approving notice plan that required notice of objection to be sent by hand or mail and filed with both the court and counsel for the parties); *In re Haier Freezer Consumer Litig*, 2013 WL 2237890 at *6 (N.D. Cal. May 2, 2013) (approving notice plan requiring class members seeking to exclude

themselves or to object to the settlement to send notice via first class mail); *In re Apple In-App Purchase Litig*, 2013 WL 1856713 at *6 (N.D. Cal. May 2, 2013) (same). Also, requiring objections to be mailed is considered the norm in consumer class actions. (Class Admin. Decl., ¶ 14.) The Notice Plan here is in harmony with these cases and the experience of the Class Administrator, and is thus proper.

> **4.  Ninth Circuit Precedent Evaluates The Number Of Objections Relative To The Class Size To Assess Class Reaction To A Settlement.**

Objector Frank seeks to ignore well-established Ninth Circuit precedent by claiming that a minimal number of objections in relation to the overall size of a class does not indicate a positive class reaction. Objector Frank's reliance on a variety of non-binding and isolated snippets of case law cannot override the overwhelming support for this principle.

The Ninth Circuit considers the number of class members who object to a settlement when determining whether to grant final approval. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976). When the vast majority of a class has not objected to the terms of a proposed settlement, this factor weighs in favor of granting final approval. *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("holding that in the 'absence of a large number of objections to a proposed settlement, settlement actions are favorable to the class members"). *See also Rodriguez v. West Publg. Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming favorable class reaction where fifty-four objections submitted out of a putative class of 376,301); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming final approval of settlement where forty-five class members out of a class of 90,000 objected to the settlement); *Chun-Hoon v. McKee Foods Corp,* 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving settlement where no objections were voiced); *Moore v. Verizon Commn's Inc.*, 2013 WL 4610764 at *8 (N.D. Cal. Aug. 28, 2013) (approving proposed settlement where only twenty-eight individuals out of 8,089,893 class members objected to the settlement.)

Here, with a Class that likely exceeds 100 million class members, four filed objections evidences minimal opposition to the terms of the Settlement. The number of filed objections is a relevant consideration under Ninth Circuit precedent and, contrary to Frank's protestation,

represents a positive reaction to the proposed Settlement.

### 5. *Deadlines Described In Notice Were Appropriate And Thoroughly Communicated.*

Objector Weiner also takes issue with the deadline for exclusions. Objector Weiner finds the exclusion deadline "unreasonably short," without providing a basis for his assertion. The Court approved an exclusion deadline requiring members to opt out of the Settlement within ninety (90) days of the entry of the Order Granting Preliminary Approval. (Dkt. 63.) Ninety days is entirely reasonable, and is longer than many notice plans approved in other cases. *See Knutson v. Schwan's Home Serv., Inc.*, 2014 WL 3519064 (S.D. Cal. July 14, 2014) (approving notice plan where exclusions due within ninety days after notice received); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 304 (E.D. Cal. 2011) (approving notice plan requiring exclusions within forty-five days of entry of preliminary approval); *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390 at *9 (N.D. Cal. Nov. 21, 2012) (granting preliminary approval to sixty-day period).

Objector Weiner also finds the separate dates for the exclusion deadline (June 24, 2014) and the objection deadline (August 8, 2014) confusing, without elaborating upon the reasons why he finds these dates confusing. (Dkt. 68.) Each of these deadlines were proposed by Class Counsel and approved by this Court in its Preliminary Approval Order. (Dkt. 63.) The deadlines for exclusions and objections have also been readily available and prominently displayed on the landing page of the Settlement Website, www.googlesearchsettlement.com, throughout the entirety of the Notice period. If Objector Weiner was confused about the meanings of any of these deadlines, he was provided with ample opportunity to reach out to the Class Administrator via the Settlement Website, a toll-free phone number, or a P.O. Box address. (Dkt. 65-4, ¶¶ 56, 60-61.)

### 6. *The Substance Of The Notice Was Adequate.*

Objector Weiner states, without elaboration or supporting documentation, that class notice failed to adequately explain the claims, Defendant's alleged wrongdoing, and how the settlement benefits the class and addresses the harms alleged. (Dkt. 68.) Objector Jan similarly argues that the notice does not advise the Class about the nature of the claims. (Dkt. 71 at 5.) But the Notice satisfies all requirements of Rule 23, and is thus not subject to objection.

Rule 23 requires the following information in Class Notice, all of which is included in the Notice Plan in this case: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The Class Notice in this case describes the nature of the action in its introduction and Section 2. (Dkt. 65-4, Ex. 4.) It defines the Class in the introduction. (*Id.*) It describes the class claims in Section 2. (*Id.*) It states that Class Members may enter appearances through their own attorneys in Section 11. (*Id.*) It states that the Court will exclude Class Members who request to be excluded in Section 8. (*Id.*) It describes the time and manner for requesting exclusion in the introduction and Section 8. (*Id.*) And it describes the binding effect on Class Members in the introduction and Sections 6, 9, and 10. (*Id.*) Accordingly, the Notice is fully satisfactory.

### C. The Settlement's Permanent Prospective Relief Provides Valuable Benefits To The Class.

#### 1. *Objectors Misconstrue Allegations In Complaint.*

As a preliminary matter, Objector Morrison and Objector Weiner misunderstand the allegations set forth in the Complaint. Objector Morrison argues, in part, that the Settlement does not address the fact that "Google collected and sold for profit users' real names, street addresses, phone numbers, credit card numbers, social security numbers, financial account numbers and more." Objector Weiner similarly argues that "[n]one of the [*cy pres*] organizations have proposed to provide any identify theft protection to class members that may have had their personal/financial information disclosed . . . ." (Dkt. 68 at 2.)

At no point in the Complaint do Plaintiffs allege that Defendant Google enabled identity theft by selling users' financial account information, credit card numbers, social security numbers, or other sensitive personal information. (*See generally* Dkt. 50.) Rather, the Complaint alleges that Defendant Google transmitted individual users' search queries via referrer headers to third parties without Plaintiffs' or Class Members' consent. (*See e.g.* Dkt. 50, ¶ 156.) Plaintiffs simply never

alle that Google enabled identity theft (or that any class representatives or members experienced identity theft) or that Google sold personal information to third parties. Thus, Objector Morrison and Objector Weiner's concern that the Settlement does not address identity theft or the sale of personal information is misplaced.

Objector Weiner also argues that "none of the organizations have proposed to stop Google from engaging in unlawful practices in the future, which exposes both the class and the public to future harm." (Dkt. 68 at 2.) Unlike identity theft, though, which is always illegal, Google's alleged use of referrer headers is not illegal when properly disclosed to users. The proposed Settlement remedies the alleged injuries, by requiring Google to provide the agreed-upon disclosures. (Dkt. 52-3, ¶ 3.1.) The fact that the agreed-upon disclosures cure the alleged injuries also explains why none of the would-be *cy pres* recipients propose to stop Google from using referrer headers.

### 2. *The Permanent Prospective Relief Is Appropriate.*

Objector Morrison and Objector Jan take issue with the prospective relief provided for in the Settlement, which requires Defendant Google to make permanent disclosures in its "FAQs" webpage, "Key Terms" webpage, and "Privacy FAQ for Google Web History" webpage.[13] (Dkt. 52-3, ¶ 1.2.) Objector Morrison argues that these disclosures do not address Google's unlawful practices and, because Google is not required to change its practices through the Agreed-Upon Disclosures, it "will continue to engage in practices that subject the public to great harms." (Dkt. 67.)

Contrary to Objector Morrison's characterizations, the prospective relief addresses the precise allegations in the Complaint permanently. Namely, Google allegedly transmitted class members' search queries via referrer headers, *without class members' knowledge or consent.* (*E.g.*

---

[13] Objector Weiner also objects on the basis that the prospective relief and *cy pres* awards are repetitive of each other. However, Google's permanent, prospective relief via its disclosures addresses the immediate issue of uninformed and/or no consent that forms the basis of Plaintiffs' claims. The *cy pres* proposals, in tandem with these disclosures, aim to provide consumers with a variety of ways to identify similar privacy issues and protect themselves from future violations.

Dkt. 50, ¶ 36.) Google's liability arises from its alleged failure to properly disclose how and when it was using search query information, not the fact that Google transmits search query information to third parties.[14] (*Id.*) Under the terms of the Settlement, Google must forever disclose how it reveals user search queries via referrer headers. (Dkt. 52-3, ¶ 3.1.) This relief ensures that Defendant Google can no longer transmit class members' search queries via referrer headers to third parties without adequate disclosure and consent. (*See* Dkt. 50, ¶ 156.)

Finally, Objector Jan argues that the disclosures provide no meaningful relief because unlike *Lane v. Facebook*, where Facebook terminated the Beacon program, here Google does not promise to terminate the use of referrer headers. (Dkt. 71 at 6.) As discussed above, the prospective relief obtained in this Settlement provides permanent relief from the wrongdoing alleged in the Complaint, which is the undisclosed transmission of search queries via referrer headers, not the use of referrer headers generally. Moreover, Objector Jan's efforts to compare the relief approved in *Lane* to the relief proposed here highlights Jan's failure to grasp the standard of review of a proposed class action settlement. "[T]his Circuit has long deferred to the private, consensual decision of the parties." *Rodriguez v. West Publ'g Corp.,* 563 F.3d at 965 (citing *Hanlon*, 150 F.3d at 1027). The test when evaluating a settlement is not whether it could be "prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027. This Settlement, including its prospective relief, is fair, adequate, and free from collusion.

### D. Class Counsel Are Entitled To Their Requested Attorneys' Fees.

Objector Frank argues that the Court should not award the benchmark 25% fee award to Class Counsel in this case because the Settlement Fund will be distributed to *cy pres* recipients

---

[14] Objector Jan argues that Google's disclosures are ineffective because "internet users do not read privacy policies." (Dkt. 71 at 6.) However, it is a basic tenet of contract law that a party is bound by the terms of a contract. *E.g. AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1746 (2011) (holding that binding arbitration clause in consumer contract valid and enforceable); *Facebook, Inc. v. Jeremi Fisher*, 2009 WL 5095269 at *2-3 (N.D. Cal. Dec. 21, 2009) (granting injunctive relief to Facebook where users violated terms of use). Just as courts regularly uphold long, detailed consumer contracts with binding arbitration clauses (*e.g. Concepcion*) so too are these disclosures adequate and enforceable.

1   rather than directly to Class Members. (Dkt. 70 at 13-17.) Instead, Frank argues that the Court

2   should cut Class Counsel's fee award from 25% to 10% of the fund. (Dkt. 70 at 16-17.) But 25%

3   is the benchmark whether the Settlement Fund will be distributed to *cy pres* recipients or directly

4   to Class Members. *See, e.g. Lane*, 696 F.3d at 818 (affirming district court's award of $2,322,763

5   in attorneys' fees out of a $9.5 million common fund (or roughly 25%));[15] *In re Netflix Privacy*

6   *Litig.*, 2013 WL 1120801 at *15 (N.D. Cal. March 18, 2013) (awarding class counsel attorney fees

7   amounting to 25% of a $9,000,000 fund involving *cy pres* recipients arising from consumer

8   privacy claims); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099 at *2-4 (awarding

9   approximately 25% in attorneys' fees of an all *cy pres* fund).

10      Objector Weiner also objects to the attorneys' fees because he claims the "class has no

11  basis to evaluate the reasonableness or fairness of the requested fees" because Class Counsel did

12  not post their Motion for Fees, Costs, and Incentive Awards on the Settlement Website. (Dkt. 68 at

13  3.) But there is no obligation under the law (or under the terms of this Settlement Agreement) that

14  motions for fees in class actions must be posted to settlement websites. Despite this, as of August

15  5, 2014, Plaintiffs' Motion for Fees, Costs, and Incentive Awards was available on the Settlement

16  Website. (Class Admin. Decl., ¶ 4) Furthermore, Class Members have access to view all court

17  documents on PACER or to contact the Settlement Administrator via telephone, mail, or the

18  Settlement Website to ask questions. (*Id*. at ¶ 5.)

19      **E.      Incentive Awards Are Presumptively Reasonable.**

20      Objector Morrison claims that the requested incentive awards for Class Representatives

21  Gaos, Italiano, and Priyev are disproportionately large where the remainder of the class does not

22  receive an individual payout. Objector Jan also complains that the incentive award requests are not

23  appropriate. (Dkt. 71 at 13.) However, in this district, an incentive award of $5,000 is

24  "presumptively reasonable." *Jacobs v. Cal. St. Auto. Assn. Inter-Ins. Bureau*, 2009 WL 3562871 at

25

26  _____
    [15] Although Frank argues that the objectors to the Settlement in *Lane* only attacked the substantive
27  fairness of the settlement, rather than the attorneys' fees, as indicated above, the Ninth Circuit, in
    its independent analysis, has found that granting the benchmark in attorneys' fees for a monetary
28  settlement attributed only to *cy pres* organizations is appropriate.

*5 (N.D. Cal. Oct. 27, 2009). In other words, absent extraordinary circumstances, a $5,000 incentive award is well-justified. *See Hopson v. Hanesbrands Inc.*, 2008 WL 928133 at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable.")

Objector Jan argues that the Class Representatives should not receive an incentive award where they did not insure adequate notice was provided to the Class and where they agreed to an unfair settlement. However, this Court, applying Fed. R. Civ. P. 23, found the Notice Plan adequate. (Dkt. 63 at 13.) Moreover, Objector Jan's characterization of the Settlement as "unfair," without elaboration, is mere opinion and does not serve as a proper basis to deny the requested incentive awards.

As a final note, incentive awards may be properly awarded where the class does not receive an individual payout, but rather benefits from prospective relief and the work of *cy pres* recipients. *See In re Netflix Privacy Litig.*, 2013 WL 1120801 at *11 (awarding $30,000 in incentive awards where settlement solely contemplated *cy pres* awards rather than individual payouts); *In re Google Buzz Privacy Litig.*, 2011 WL 7460099 at *4 (granting incentive awards to class representatives where settlement only contemplated *cy pres* relief). In light of these decisions, Plaintiffs' request for incentive awards are similarly appropriate.

To the extent that Objector Morrison claims that "no document provides explanatory justification for the named plaintiffs' award," (Dkt. 67) the Class Representatives submitted declarations outlining their responsibilities and burdens attendant with serving as class representatives in a high-profile lawsuit. (Dkt. 66-6, 66-7, and 66-8.) The incentive awards are appropriate compensation for Plaintiffs associating their names with a high-profile case and incurring potential reputational risk. (*Id.*)

**F.      A Class Action Is The Most Appropriate Mechanism For Achieving Relief For More Than 100 Million Similarly Situated Individuals.**

Objector Frank, in a statement defying well-established precedent in the Ninth Circuit, argues that "[i]f a *cy pres*-only settlement is necessary because it would be too costly to distribute the settlement funds to individual class members, then a class action is not an efficient and

1 superior means of adjudicating this controversy." (Dkt. 70 at 12.) The flaws in this argument are

2 numerous,[16] especially when taken in light of the case law Objector Frank takes out of context in

3 an attempt to support his argument.

4 First, the Ninth Circuit has regularly and consistently approved *cy pres* settlements in class

5 actions where individual payments were not practicable. *See e.g., Naschin*, 663 F.3d at 1036

6 (holding that *cy pres* settlement appropriate where "the proof of individual claims would be

7 burdensome or distribution of damages costly"); *Lane*, 696 F.3d at 821 (holding that *cy pres*

8 distribution appropriate relief for class settlement). As a result, the thrust of Objector Frank's

9 argument ignores and contradicts binding precedent.

10 Because there is no support in this Circuit for his argument that where individual payouts

11 are not practicable, there should be no class action, Frank cites to a litany of irrelevant cases

12 regarding superiority. Notably, none of the cases to which Frank cites concern final approval of

13 class action settlements, and only one even concerns preliminary approval. Rather, those cases

14 concern superiority in the context of adversarial class certification. But there is no reason for the

15 Court to reconsider its class certification order at this time because nothing has changed since

16 granting preliminary approval (and no objectors have even argued that anything has changed since

17 preliminary approval). *In re HP Laser Printer Litig.*, 2011 WL 3861703, at *2 (C.D. Cal. Aug. 31,

18 2011) (holding that where court previously granted plaintiffs' request to certify class for purposes

19 of settlement, and where nothing changed since granting preliminary approval, final approval was

20 appropriate). Regardless, none of the cases to which Frank cites hold or even suggest that *cy pres*

21 settlements are not appropriate when individual payouts are impracticable.

22 Finally, Frank attempts to analogize an FLSA collective action settlement providing a

23 recovery structure that effectively meant that 60% of the class would not receive any recovery,

24 monetary or otherwise, in exchange for a class-wide release of liability. *Daniels v. Aeropostale*

25 *West*, 2014 WL 2215708 at *3 (N.D. Cal. May 29, 2014). In contrast here, while Class Members

---

[16] Frank inaccurately characterizes this Settlement as "*cy pres* only." In reality, the Settlement also contemplates permanent, prospective relief that requires Google to disclose to its users how Google may transmit personal information via referrer headers. (Dkt. 52-3, ¶ 3.1.)

1  will not receive individual payouts under the terms of the Settlement, they are entitled to both

2  prospective relief and to the benefits of the research and advocacy of the *cy pres* recipients. Thus,

3  *Daniels* is inapplicable to the instant case.

4      **G.      The Court May Simultaneously Approve The Proposed Settlement While Also**

5              **Fulfilling Its Fiduciary Duty To The Class.**

6      While Frank argues that there "should be no presumption in favor of settlement approval,"

7  the reality is that settlement is often a positive outcome for a class, providing immediate resolution

8  of a matter. *See Van Bronkhorst v. Safeco Corp.,* 529 F.2d 943, 950 (9th Cir. 1976) (noting that

9  there is an overriding public interest in settlement, which is "particularly true in class action suits

10  which are now an ever increasing burden to so many federal courts."). As briefed extensively in

11  Plaintiffs' Motion for Final Approval, the standard for judicial approval favors class action

12  settlements. (Dkt. 65 at 9.)

13      Objector Frank argues that this Settlement is subject to heightened scrutiny because the

14  Class was certified only for purposes of settlement. (*See* Dkt. 70 at 3.) Class Counsel

15  acknowledged in Plaintiffs' Motion for Final Approval that this Court should apply heightened

16  scrutiny to the proposed Settlement. (Dkt. 65 at 19-20.) However, where Plaintiffs have

17  demonstrated that none of the warning signs of collusion exist the proposed Settlement warrants

18  final approval. These signs include: (1) where class counsel receives a disproportionate

19  distribution of the settlement or when the class receives no monetary distribution but class counsel

20  is amply rewarded; (2) where unawarded attorneys' fees revert to defendants rather than the

21  settlement fund for the class; and (3) where there is a "clear sailing" fee arrangement. *In re*

22  *Bluetooth Headset Products Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011).

23      As demonstrated in Plaintiffs' Motion for Fees, Costs, and Incentive Awards, Class

24  Counsel have not sought a disproportionate amount of the Fund, but rather the 25% benchmark

25  regularly approved in the Ninth Circuit. (See Section II(D).) The Settlement does not contain a

26  clause reverting fees to Google (*see generally* Dkt. 52-3), and there was no clear sailing fee

27  arrangement (*id.*). Plaintiffs have already answered Objector Frank's call for heightened scrutiny.

28

**H.      The $8.5 Million Common Fund Is Sufficient.**

Objector Morrison and Objector Jan[17] expressed concern that an $8.5 million settlement would not adequately "disgorge" Google of unlawful profits. But the $8.5 million dollar Common Fund created by this Settlement falls in line with other large privacy consumer class action settlements. *See In re Google Buzz Privacy Litigation*, 2011 WL 7460099 at *4 (approving settlement that included $8.5 million in *cy pres* awards for a class estimated to be in the tens of millions); *In re Netflix Privacy Litig.*, 2013 WL 1120801 at *1 (approving settlement providing for $9 million *cy pres* common fund for a class of more than 62 million members); *Lane*, 696 F.3d at 823-24 (affirming district court's finding that based upon the risks of litigation the "9.5 million offered in settlement is substantial.").

Furthermore, Objector Morrison and Objector Jan fail to understand the Court's role in reviewing a settlement. It is outside the scope of the Court's role in final approval to substitute its judgment for that which was mutually agreed upon by the Parties. *See Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528 (quoting *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.")). Rather, a court evaluates whether a Settlement is "fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Here, Plaintiffs' agreement to the $8.5 million Settlement was appropriate and well-reasoned. Due to the overwhelming size of the class, which likely exceeds 100 million, the statutory damages available under the Stored Communications Act (Count I of the Complaint) would likely amount to trillions of dollars, far exceeding the value of Defendant. (Dkt. 52 at 22.) These damages would, in turn, likely prompt Google to challenge or seek *remittitur* on the

---

[17] Objector Jan also argues that Google should pay a larger portion of its advertising revenues into the Settlement Fund since Google gained its advertising revenue through the sale of users' private information. However, the Complaint does not allege that Google *sold* user information, merely that it was transmitted via referrer headers. Notwithstanding this inaccuracy, determining an appropriate settlement amount should not rest on total advertising revenues but rather whether the Settlement is fair, adequate, and reasonable. Jan's discussion of Google's total advertising revenue is overbroad and irrelevant.

grounds of constitutional due process, thus further delaying and potentially jeopardizing any relief to the Class. (*Id.*) Cognizant of these risks, Class Counsel vigorously negotiated a Settlement and ultimately reached a monetary value that compares favorably to similar large privacy class actions.

Objector Weiner similarly takes issue with the Settlement amount because he argues that Class Members cannot evaluate the Settlement if they do not know how much the Class may be entitled to recover. (Dkt. 68.) However, while a district court must assess claims in a class action to determine the strength of their case relative to the risks of continued litigation, the court does not need to come to a specific finding of fact regarding the potential recovery for each of plaintiffs' causes of action. *Lane,* 696 F.3d at 823. "Not only would such a requirement be onerous, it would often be impossible" because "the amount of damages a given plaintiff (or class of plaintiffs) has suffered is a question of fact that must be proved at trial." *Id.* In light of this standard, neither this Court nor Class Counsel need to provide a specific dollar valuation of potential damages in order for this Settlement to receive final approval.

**I. Parties Complied With CAFA.**

Objector Morrison claims that the Parties failed to comply with the requirements of the Class Action Fairness Act (CAFA) by failing to provide notice of the proposed settlement to state and federal authorities. This is patently false. As detailed in the Plaintiffs' Motion for Final Approval, the Class Administrator provided appropriate notice to state and federal officials on August 8, 2013. (Dkt. 65 at 18). As of the date of Plaintiffs' Motion for Final Approval, no state or federal official objected to the terms of the Settlement. *Id.* Moreover, no government official has since raised an objection between the time of Plaintiffs' Motion for Final Approval and the present day. (Class Admin. Decl., ¶ 6.)

**J. The Scope Of The Release In This Settlement Is Appropriate.**

Objector Weiner opposes the language of the release in the proposed Settlement, claiming it is overbroad. (Dkt. 68.) Objector Weiner proposes that the Court "narrow the release to the specific claims in the case." (*Id.*) However, the plain language of the Settlement demonstrates that the release is explicitly limited by the claims brought in the Complaint, and is thus appropriate.

The proposed Settlement defines "Released Claims" as "any and all claims that any Class

Member may now or at any time have up to the date of preliminary approval of this Agreement, whether or not known or existing at the time of this Agreement, ***arising out of the subject matter giving rise to the claims in the Actions***." (Dkt. 52-3, ¶ 1.34 (emphasis added).) Contrary to Objector Weiner's assertion, the release does not release Google from "all known and unknown claims related to how Google collects and shares information." (Dkt. 68.) The release is thus narrowly tailored to and limited by the claims brought in the Complaint and centers on the adequacy of Google's disclosures as they relate to how user search queries may be disclosed to third parties. (*E.g.*, Dkt. 50, ¶ 121.)

Releases are an integral part of settlements generally, and class action settlements specifically. *See Hanlon*, 150 F.3d at 1025; *In re Netflix Privacy Litig.*, 2013 WL 1120801 at *2; *In re Google Buzz Privacy Litig.*, 2011 WL 7460099 at *4. The release here is in line with those regularly granted in this Circuit and should not stand as an impediment to final approval.

## III.     CONCLUSION

For these reasons, Plaintiffs, on behalf of the Class, respectfully request that this Court grant final approval to Plaintiffs' Motion for Final Approval of the Class Action Settlement and Plaintiffs' Motion for Fees, Expenses, and Incentive Awards.


Dated: August 22, 2014                                           ASCHENBRENER LAW, P.C.


                                                                 s/ Michael Aschenbrener

                                                                 Michael Aschenbrener
                                                                 ON BEHALF OF ATTORNEYS FOR
                                                                 PLAINTIFFS AND THE CLASS

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 22, 2014, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: August 22, 2014                     ASCHENBRENER LAW, P.C.


                                           By: s/ Michael Aschenbrener
                                           Michael Aschenbrener