# Exhibit A

Aschenbrener Declaration

KASSRA P. NASSIRI (215405)
(kass@njfirm.com)
NASSIRI & JUNG LLP
47 Kearny Street, Suite 700
San Francisco, California 94108
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

MICHAEL ASCHENBRENER (277114)
(mja@aschenbrenerlaw.com)
ASCHENBRENER LAW, P.C.
795 Folsom Street, First Floor
San Francisco, CA 94107
Telephone: (415) 813-6245
Facsimile:  (415) 813-6246

ILAN CHOROWSKY (Admitted Pro Hac Vice)
(ilan@progressivelaw.com)
PROGRESSIVE LAW GROUP, LLC
1 N LaSalle Street, Suite 2255
Chicago, IL 60602
Telephone: (312) 787-2717
Facsimile: (888) 574-9038

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re GOOGLE REFERRER HEADER PRIVACY LITIGATION<br><br>_____<br><br>This Document Relates To: All Actions | Case No. 5:10-cv-04809-EJD<br><br><u>CLASS ACTION</u><br><br>**DECLARATION OF MICHAEL J. ASCHENBRENER IN SUPPORT OF PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FEES AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:       August 29, 2014<br>Time:       9:00 a.m.<br>Place:      Courtroom 4, 5th Floor<br>Judge:     Hon. Edward J. Davila |

1  Pursuant to 28 U.S.C. § 1746, I hereby declare and state as follows:

2      1.      I am an attorney admitted to practice in the States of California, Illinois, and

3  Minnesota, and represent Plaintiffs in the above-titled action. I am over the age of eighteen and am

4  fully competent to make this declaration. This declaration is based upon my personal knowledge,

5  except where expressly noted otherwise.

6      2.      I am the Managing Principal of Aschenbrener Law, P.C., which has been appointed

7  Class Counsel in this matter.

8      3.      As Class Counsel, I am familiar with (i) the claims, evidence, and legal arguments

9  involved in this settlement; (ii) the terms of the settlement; and (iii) the relevant defenses,

10  evidence, and legal arguments made to date.

11      4.      I obtained my law degree from Chicago-Kent College of Law in May 2007.

12      5.      I have no affiliation with the Berkman Center at Harvard, the Center for Internet

13  and Society at Stanford, or the Center for Information, Society and Policy at Chicago-Kent.

14      6.      As of July 11, 2014, the Los Angeles Hearing Department for the State Bar Court

15  of California recommended that counsel for Objector Jan, Mr. Joseph Darrell Palmer, be placed on

16  two years' stayed suspension and two years' probation on conditions, including a 90-day actual

17  suspension. See *In Matter of Joseph Darrell Palmer*, attached here as Exhibit A-1.

18      7.      The State Bar Court of California has found that Mr. Palmer made false statements

19  on three applications to appear *pro hac vice* that Palmer filed in various federal-court, class-action

20  lawsuits. See Exhibit A-1.

21      8.      On August 30, 2002, following his conviction in Colorado for failure to pay taxes,

22  Mr. Palmer was placed on interim suspension from the practice of law in California. This

23  suspension ended on September 23, 2002. Exhibit A-2;

24  http://members.calbar.ca.gov/fal/Member/Detail/125147.

25      9.      On November 30, 2013, *Law360* reported that Mr. Palmer and Mr. Theodore Frank

26  (who represents himself and Objector Melissa Holyoak in this matter) took unauthorized and

27  unapproved actions on behalf of objectors they claimed to represent in a class action settlement.

28

ASCHENBRENER DECLARATION
5:10-CV-04809

See "BP Deal Objectors Drop Appeal, Say Attys Misled Them," attached here as Exhibit A-3.

10.     On December 5, 2012, Mr. Palmer was held in contempt in a class action settlement to which he objected for failing to respond to a court order compelling discovery participation. See Order Re Civil Contempt and Award of Sanctions, *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 289 F.R.D. 548 (2013), attached as Exhibit A-4.

11.     Mr. Palmer has a long history of filing objections to class action settlement that are subsequently dismissed, abandoned, or withdrawn and/or appealing settlements without attaining settlement changes or additional benefits for the class. See Exhibit A-5.

Dated: August 22, 2014                    ASCHENBRENER LAW, P.C.

                                          s/ Michael Aschenbrener
                                          Michael Aschenbrener

# Exhibit A-1

*In re Matter of Joseph Darrell Palmer*

FILED JULY 11, 2014

STATE BAR COURT OF CALIFORNIA

HEARING DEPARTMENT – LOS ANGELES

| | | |
|---|---|---|
| In the Matter of | ) | Case No.:  **12-O-16924-LMA** |
| | ) | |
| **JOSEPH DARRELL PALMER,** | ) | |
| | ) | **DECISION** |
| **Member No.  125147,** | ) | |
| | ) | |
| A Member of the State Bar. | ) | |

## Introduction[1]

In this contested disciplinary proceeding, respondent **JOSEPH DARRELL PALMER** is

charged with three counts of willfully violating section 6106's proscription of acts involving

moral turpitude, dishonesty, or corruption.  Each count is based on the false statement, that

respondent made on or with respect to three applications to appear pro hac vice that he filed in

various federal-court, class-action lawsuits, to the effect that he had never been disciplined by a

court or state bar.

Respondent admits that he made these three statements and that they are false, but asserts

that he did not deliberately make the statements and that he made them inadvertently as a result

of negligence.  Even though the record fails to establish, by clear and convincing evidence, that

respondent deliberately made the false statements or that he made them with the intent to

mislead, the record does clearly establish that the false statements were not the results of

---

[1] Unless otherwise indicated, all references to rules are to the State Bar Rules of
Professional Conduct.  Furthermore, all statutory references are to the Business and Professions
Code unless otherwise indicated.

respondent's mere carelessness or negligence, but were the results of respondent's gross negligence.  As discussed *post*, the court finds that respondent is culpable as charged in each of the three counts because, even in the absence of an intent to mislead, a false statement made through or as a result of gross negligence involves moral turpitude in willful violation of section 6106.

In light of the found misconduct and the aggravating and mitigating circumstances, the court recommends that respondent be placed on two years' stayed suspension and two years' probation on conditions, including a 90-day actual suspension.

## Significant Procedural History

The Office of the Chief Trial Counsel of the State Bar of California (State Bar or California State Bar) initiated this proceeding by filing a notice of disciplinary charges (NDC) against respondent on December 6, 2013.  Respondent thereafter filed his response to the NDC on January 17, 2014.

On April 15, 2014, the parties filed a partial stipulation as to facts and admission of documents.  Also, on April 15, 2014, a one-day trial was held.  The court took the case under submission for decision after the parties made their closing arguments on April 15, 2014.

The State Bar was represented by Senior Trial Counsel Michael J. Glass.  Respondent was represented by Attorney Kenneth C. Kocourek.

## Findings of Fact and Conclusions of Law

Respondent was admitted to the practice of law in California on December 15, 1986, and has been a member of the State Bar of California since that time.  In addition, respondent has been admitted to practice in the State of Colorado since December 1993.  Respondent has also been admitted to practice in the State of Arizona since at least February 2003.

/ / /

/ / /

**Facts**

**Respondent's Criminal Conviction**

For about three or four years in the early to mid-1990's, respondent lived in Colorado where he owned and operated both American Family Homes, Inc. (AFH), which built and sold homes, and Tri-County Supply, LLC (Tri-County), which sold construction materials to home builders, including AFH.  During that time, respondent rarely practiced law.

In 2001, in a Colorado state court, respondent was charged with, pleaded guilty to, and was convicted on one felony count of violating Colorado sales-tax laws (Colorado Revised Statutes 39-21-118(2) and 39-26-120).  Respondent's conviction was based on Tri-County's failure to report and pay over to the Colorado Department of Revenue about $4,000 in sales taxes that it charged (and presumably collected from) AFH for construction supplies that it sold to AFH in 1995 and 1996 (Colorado Revised Statutes 39-26-104, 105, and 106).

Respondent did not deliberately violate the sales-tax laws or personally profit from Tri-County's failure to report and pay the sales taxes to Colorado.  In fact, a significant cause of this failure was a turnover in Tri-County's full-time accountants and accounting assistants.

Following respondent's conviction, the Colorado state court sentenced respondent to two years of unsupervised probation and ordered respondent to perform 200 hours of community service in Colorado.  Respondent thereafter successfully completed his probation and community service.

**Respondent's Discipline in Three States**

**Colorado**

Based on respondent's criminal conviction and on a stipulation that respondent and the Colorado Office of Attorney Regulation Counsel entered into in June 2002, the Colorado

Supreme Court entered an order on July 1, 2002, suspending respondent "from the practice of law [in Colorado] for a period of sixty days with all but thirty days stayed during a one-year period of probation [with conditions]."  The Colorado Supreme Court imposed that discipline on respondent under Colorado Rules of Civil Procedure, rule 251.5(b), which provides that any act or omission that violates, inter alia, Colorado's criminal laws is grounds for disciplining an attorney regardless of whether the attorney is ever charged with or convicted or acquitted of the violation in a criminal proceeding and regardless of whether the attorney committed the act or omission in the course of an attorney-client relationship.  In respondent's Colorado disciplinary proceeding, there were no findings of moral turpitude of dishonesty.  Nor were any aggravating circumstances found.  In mitigation, respondent did not have a prior disciplinary record, made full and free disclosure, had a cooperative attitude towards the proceeding, and was remorseful.

### California

Based on respondent's criminal conviction and a stipulation regarding facts, conclusions of law, and disposition that respondent and the California State Bar entered into in October 2002, the State Bar Court of California filed an order on November 4, 2002, in case number 02-C-11878 (California *Palmer* I) imposing on respondent a public reproval with conditions attached for 12 months that required respondent to complete his unsupervised criminal probation and community service; to keep the California State Bar apprised of his office address; to file quarterly reports;  and to attend  the California State Bar's Ethics School.  In California *Palmer* I, the parties  stipulated that neither respondent's criminal conviction nor the facts and circumstances surrounding his conviction involved moral turpitude, but that respondent's conviction involved other misconduct warranting discipline.  In addition, the parties stipulated that there were no aggravating circumstances and that in mitigation respondent did not have a prior record of discipline, promptly reported his conviction and Colorado discipline to the

California State Bar, and cooperated extensively with the California State Bar.  Moreover, the parties stipulated that, even though respondent was convicted of a felony in Colorado, the crime of which respondent was convicted does not, as a matter of law, rise to a felony in California.  Under California law, it is a felony to evade reporting, assessment, or payment of a tax only if the tax liability aggregates at least $25,000 in a consecutive 12-month period.  (Cal. Rev. & Tax. Code, § 7153.5.)  Respondent's conviction involved only about $4,000 in unpaid taxes over a 24-month period.

### Arizona

Based on the Colorado Supreme Court's July 1, 2002, disciplinary order, the Arizona Supreme Court filed an order February 13, 2003, suspending respondent "from the practice of law [in Arizona] for a period of sixty (60) days, thirty (30) days stayed, to run concurrent with Respondent's Colorado discipline…" and placing respondent "on probation for a period of one (1) year, under the same terms as and to run concurrent with Respondent's Colorado discipline."

### Respondent's False Statements

Notwithstanding the July 1, 2002, Colorado disciplinary order, the November 4, 2002, California disciplinary order, and the February 13, 2003, Arizona disciplinary order, respondent filed, on June 20, 2006, in a civil lawsuit styled *Ingolf R. Dinklage v. Holland America Line-Westours, Inc.* in the United States District Court for the Western District of Washington (*Dinklage*), an application for leave to appear pro hac vice in which respondent falsely declared under penalty of perjury:  "I have not been disbarred or formally censured by a court of record or by a state bar association…."[2]

_____

[2] In the present proceeding, respondent is not charged with making this false statement in his June 20, 2006, application in *Dinklage*.  Nonetheless, the court admitted that false statement into evidence because it is relevant on the issues of respondent's intent to mislead, negligence, and gross negligence.  (Cal. Evid. Code, § 1101, subd. (b).)  Moreover, the court considers that

/ / /

In addition, respondent made the same or a similar false statement in or in support of each of the following applications to appear pro hac vice that respondent filed in three separate federal-court lawsuits between 2010 and 2012 as charged in the NDC.

On June 2, 2010, respondent filed, in a class action lawsuit styled *James Gemelas v. The Dannon Company, Inc.* in the United States District Court for the Northern District of Ohio (*Dannon*), an affidavit in support of a motion for admission of counsel pro hac vice in which respondent falsely stated under oath: "I have never been the subject of disciplinary action of any kind before any bar or court."

On January 7, 2011, respondent filed, in a class-action lawsuit styled *Mark A. Arthur, et al. v. Sallie Mae, Inc.* in the United States District Court for the Western District of Washington (*Sallie Mae*) an application for leave to appear pro hac vice in which respondent falsely declared under penalty of perjury: "I have not been disbarred or formally censured by a court of record or by a state bar association…."

On July 5, 2012, respondent filed, in a class-action lawsuit styled *Alyson Herfert, et al. v. Crayola, LLC* in the United States District Court for the Western District of Washington (*Crayola*), an application for leave to appear pro hac vice in which respondent falsely declared under penalty of perjury: "I have not been disbarred or formally censured by a court of record or by a state bar association…." On August 10, 2012, the district court in *Crayola* filed an order to show cause (OSC) directing respondent to show cause why he should not be sanctioned for submitting a pro hac vice application that contained a false statement. Thereafter, on August 15, 2012, respondent filed an amended application for leave to appear pro hac vice in *Crayola* in

_____

uncharged false statement only for the limited purpose of determining respondent's intent, negligence, and gross negligence with respect to the three charged false statements.

which he disclosed his prior discipline in Colorado, California, and Arizona.  Respondent did

not, however, file such an amended application in *Sallie Mae* on August 15, 2012.  As noted

/ / /

*post*, respondent did not file an amended application in *Sallie Mae* until August 27, 2012.

Moreover, respondent never filed an amended application in *Dannon*.

On August 20, 2012, the district court in *Crayola* denied respondent's pro hac vice

application not because respondent had previously been disciplined in Colorado, California, and

Arizona, but because respondent failed to disclose his prior discipline and falsely stated in his

application that he had never been disciplined and because respondent failed to appear at a prior

hearing.  Also, on August 20, 2012, the plaintiffs in *Sallie Mae* filed a motion to revoke the order

granting respondent admission pro hac vice because of respondent's false statement in

respondent's January 7, 2011, pro hac vice application.

On August 27, 2012, respondent finally filed an amended pro hac vice application in

*Sallie Mae* disclosing his prior discipline in Colorado, California, and Arizona.  However, on

September 14, 2012, the district court in *Sallie Mae* revoked respondent's admission pro hac vice

in that case not because respondent had previously been disciplined, but because respondent

falsely stated that he had never been disciplined in his original application and because

respondent did not file an amended pro hac vice application in *Sallie Mae* until August 27, 2012,

instead of promptly filing one after his application in *Crayola* was challenged in August 10,

2012, OSC in that case.

**Conclusions**

> ***Count One - § 6106 [Moral Turpitude]***
> ***Count Two - § 6106 [Moral Turpitude]***
> ***Count Three - § 6106 [Moral Turpitude]***

- 7 -

Section 6106 provides, in part, that the commission of any act involving dishonesty, moral turpitude, or corruption constitutes cause for suspension or disbarment. Even though the term "moral turpitude" in section 6106 is defined very broadly (e.g., *Chadwick v. State Bar* (1989) 49 Cal.3d 103, 110), the Supreme Court has always required a certain level of improper intent or guilty knowledge before holding that an attorney's conduct involves moral turpitude. (e.g., *In the Matter of Temkin* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 321, 330; see also *Sternlieb v. State Bar* (1990) 52 Cal.3d 317, 332.)

Respondent credibly testified both that he did not make any of the three charged false statements deliberately or with any intent to mislead or deceive and that he made each of the false statements inadvertently. Respondent disclosed his prior discipline in Colorado, California, and Arizona in his applications for admission to the bar of a number of other federal courts. Moreover, respondent did not and could not have reasonably believed that his pro hac vice applications would be denied because of his prior discipline in in Colorado, California, and Arizona because the underlying misconduct was not serious (e.g., did not involve moral turpitude or dishonesty) and was wholly unrelated to the practice of law.

The court, however, rejects respondent's claim that he made the three false statement as a result of mere negligence. Without question, respondent was grossly negligent in signing and filing his affidavit in support of his pro hac vice applications in *Dannon* and in signing and filing his pro hac vice applications in *Sallie Mae* and *Crayola*, each of which contained a false statement to the effect that respondent had never been disciplined. This conclusion of gross negligence is clearly supported by the fact that, years earlier, respondent filed a pro hac vice application that contained a virtually identical false statement in *Dinklage*.

Even in the absence of an intent to mislead, a false statement made through or as a result of gross negligence involves moral turpitude in willful violation of section 6106. (*In the Matter*

*of Moriarty* (Review Dept. 1999) 4 Cal. State Bar Ct. Rptr. 9, 15, and cases there cited.)  A finding of gross negligence will support a charge of moral turpitude, even without an evil intent behind the act committed.  (*In the Matter of Myrdall* (Review Dept. 1995) 3 Cal. State Bar Ct. Rptr. 363, 384; *In the Matter of Dale* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 798, 808 [finding of gross negligence in creating a false impression involves moral turpitude in violation of section 6106].)  In short, just as an attorney may be discipline for a false statement made with reckless disregard for the truth (*In the Matter of Dixon* (Review Dept. 1999) 4 Cal. State Bar Ct. Rptr. 23, 29-30), an attorney may be disciplined for a false statement made through or as a result of gross negligence.

**Aggravation**[3]

### Prior Record of Discipline (Std. 1.5(a))

As noted *ante*, respondent has one prior record of discipline based on his criminal conviction in 2001.  The weight of that prior record is diminished because it is remote in time and because the underlying misconduct was not serious.

### Multiple Acts of Misconduct (Std. 1.5(b))

Respondent's present misconduct involves three acts of misconduct.

**Mitigation**

### Recognition of Wrongdoing (Std. 1.6(g))

Respondent revised his office procedures and now more thoroughly reviews all pleadings, applications, and declarations he signs.

### Good Character (Std. 1.6(f))

---

[3] All references to standards (stds.) are to the Rules of Procedure of the State Bar, title IV, Standards for Attorney Sanctions for Professional Misconduct.

Respondent presented very credible testimony from three attorneys as to his good character, honesty, and integrity.  Respondent, however, is entitled to limited mitigation for this testimony because, while three attorneys is a significant range of references in the legal profession, three attorneys are not a significant range of references in the general community.

/ / /

### Discussion

The purpose of the State Bar disciplinary proceedings is not to punish the attorney, but to protect the public, to preserve public confidence in the profession, and to maintain the highest possible professional standards for attorneys.  (Std. 1.1; *Chadwick v. State Bar* (1989) 49 Cal.3d. 103, 111; *Cooper v. State Bar* (1987) 43 Cal.3d 1016, 1025.)

In determining the appropriate level of discipline, the court looks first to the standards for guidance.  (*Drociak v. State Bar* (1991) 52 Cal.3d 1085, 1090; *In the Matter of Koehler* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 615, 628).  The standards, however, "do not mandate a specific discipline."  (*In the Matter of Van Sickle* (Review Dept. 2006) 4 Cal. State Ct. Rptr. 980, 994.)  It is well established that the court is "not bound to follow the standards in talismanic fashion.  As the final and independent arbiter of attorney discipline, [the Supreme Court is] permitted to temper the letter of the law with considerations peculiar to the offense and the offender."  (*Howard v. State Bar* (1990) 51 Cal.3d 215, 221-222.)  Even though the standards are not binding, they are entitled to great weight.  (*In re Silverton* (2005) 36 Cal.4th 81, 92.)

The applicable sanction in this proceeding is set forth in standard 2.7, which provides: "Disbarment or actual suspension is appropriate for an act of moral turpitude, dishonesty, fraud, corruption or concealment of a material fact.  The degree of sanction depends on the magnitude of the misconduct and the extent to which the misconduct harmed or mislead the victim and related to the member's practice of law."

Respondent committed three acts involving moral turpitude in three separate client matters.  Thus, the magnitude of the misconduct is significant.  Furthermore, the acts of moral turpitude directly relate to and involve respondent's practice of law.  Thus, significant actual suspension from the practice of law is warranted under standard 2.7.  In addition, actual suspension is consistent with standard 1.8(a), which provides:  "If a member has a single prior record of discipline, the sanction must be greater than the previously imposed sanction unless the prior discipline was so remote in time and the previous misconduct was not serious enough that imposing greater discipline would be manifestly unjust."

Second, the court looks to decisional law.  (*Snyder v. State Bar* (1990) 49 Cal.3d 1302, 1310-1311; *In the Matter of Taylor* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 563, 580.) The court finds *In the Matter of Downey* (Review Dept. 2009) 5 Cal. State Bar Ct. Rptr. 151 and *In the Matter of Dahlz* (Review Dept. 2001) 4 Cal. State Bar Ct. Rptr. 269 instructive on the issue of discipline even though the misconduct and aggravation in both of those matters are greater than the misconduct and aggravation found here.

In *Downey*, the attorney signed and filed a verification in which he falsely attested under penalty of perjury that his clients were out of the county on a specific date.  Even though no intent to defraud was found based on the attorney's testimony, the attorney was found culpable of violating section 6106 when he filed the false verification because he was grossly negligent in concluding that his clients were absent from the county on the date he specified in the verification.  The attorney in *Downey* was also found culpable of violating section 6068, subdivision (j) because he failed to notify the State Bar's membership records office of his new office address until 28 months after he moved into the new office.  In mitigation, the attorney was given limited credit for the good character testimony he presented from six witnesses (four of whom were attorneys) and for cooperating with the State Bar by entering into a pretrial

- 11 -

stipulation of facts, which were not difficult to prove.  In aggravation, the attorney had a prior

record of discipline (the attorney was previously placed on one year's stayed suspension and

three years' probation on conditions, including a four-month actual suspension) and the

attorney's present misconduct was followed by dishonesty and concealment.  In *Downey*, the

/ / /

attorney was placed on two years' stayed suspension and two years' probation on conditions,

including a 150-day actual suspension.

In *Dahlz*, the attorney was found culpable, in a single client matter, of failing to perform,

improperly withdrawing from representation, and misrepresenting to a worker's compensation

insurance adjuster that his client no longer wanted to pursue her claim.  In aggravation, the

attorney committed multiple acts of misconduct, had one prior record of discipline, caused

significant client harm, and lacked candor toward the Court and the State Bar investigator.  The

lack of candor was egregious in that the attorney presented a false telephone log and a falsified

stipulation and falsely stated that he was in court when his client's claim was settled.  In

mitigation, slight weight was afforded for the limited pro bono services the attorney rendered.

As the review department recommended, the Supreme Court placed the attorney in Dahlz on four

years' stayed suspension and four years' probation on conditions, including a one-year actual

suspension

On balance, the court concludes that the appropriate level of discipline for the found

misconduct in the present proceeding is two years' stayed suspension and two years' probation

on conditions, including a ninety-day actual suspension.  (See also *Bach v. State Bar* (1987) 43

Cal.3d 848 [60-day actual suspension imposed for misleading a judge; aggravation for prior

public reproval, but no mitigation].)

### Recommendations

- 12 -

**Discipline**

It is recommended that respondent **JOSEPH DARRELL PALMER,** State Bar number

125147, be suspended from the practice of law in California for two years, that execution of that

/ / /

/ / /

period of suspension be stayed, and that respondent be placed on probation[4] for a period of two

years subject to the following conditions:

1. Respondent Joseph Darrell Palmer is suspended from the practice of law for the first 90 days of probation.

2. Respondent must comply with the provisions of the State Bar Act, the Rules of Professional Conduct, and all of the conditions of respondent's probation.

3. Within 10 days of any change in the information required to be maintained on the membership records of the State Bar pursuant to Business and Professions Code section 6002.1, subdivision (a), including respondent's current office address and telephone number, or if no office is maintained, the address to be used for State Bar purposes, respondent must report such change in writing to the Membership Records Office and the State Bar's Office of Probation.

4. Respondent must submit written quarterly reports to the Office of Probation on each January 10, April 10, July 10, and October 10. Under penalty of perjury, respondent must state whether respondent has complied with the State Bar Act, the Rules of Professional Conduct, and all of the conditions of respondent's probation during the preceding calendar quarter. In addition to all quarterly reports, a final report, containing the same information, is due no earlier than 20 days before the last day of the probation period and no later than the last day of the probation period.

5. Subject to the assertion of applicable privileges, Respondent must answer fully, promptly, and truthfully, any inquiries of the Office of Probation or any probation monitor that are directed to Respondent personally or in writing, relating to whether Respondent is complying or has complied with Respondent's probation conditions.

6. Within 30 days after the effective date of the Supreme Court order in this matter, respondent must contact the Office of Probation and schedule a meeting with respondent's assigned probation deputy to discuss these terms and conditions of probation. Upon the direction of the Office of Probation, respondent must meet with

---

[4] The period of probation will begin on the effective date of the Supreme Court order in this matter. (See Cal. Rules of Court, rule 9.18.)

the probation deputy either in person or by telephone.  Respondent must promptly meet with the probation deputy as directed and upon request.

7. Within one year after the effective date of the Supreme Court order in this matter, respondent must submit to the Office of Probation satisfactory evidence of completion of the State Bar's Ethics School and of passage of the test given at the end of that session.  This requirement is separate from any Minimum Continuing Legal Education (MCLE) requirement, and respondent is order not to claim any MCLE credit for attending Ethics School. (Accord, Rules Proc. of State Bar, rule 3201.)

8. At the expiration of the probation period, if respondent has complied with all conditions of probation, respondent will be relieved of the stayed suspension.

**Multistate Professional Responsibility Examination**

It is further recommended that respondent be ordered to take and pass the Multistate Professional Responsibility Examination (MPRE) within one year after the effective date of the Supreme Court order in this matter and to provide satisfactory proof of such passage to the State Bar's Office of Probation in Los Angeles within the same period.

**California Rules of Court, Rule 9.20**

It is further recommended that Respondent be ordered to comply with the requirements of rule 9.20 of the California Rules of Court and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of the Supreme Court order in this matter.  Failure to do so may result in disbarment or suspension.

**Costs**

Finally, it is recommended that costs be awarded to the State Bar in accordance with Business and Professions Code section 6086.10 and that the costs be enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment.

Dated:  July ___, 2014.

**LUCY ARMENDARIZ**
Judge of the State Bar Court

# Exhibit A-2

Joseph Darrell Palmer California State Bar Registration Report

THE STATE BAR OF CALIFORNIA

# ATTORNEY SEARCH

## Joseph Darrell Palmer - #125147

## Current Status:  Active

This member is active and may practice law in California.

See below for more details.

## Profile Information

*The following information is from the official records of The State Bar of California.*

| | | | | |
|---|---|---|---|---|
| **Bar Number:** | 125147 | | | |
| **Address:** | Law Offices of Darrell Palmer 2244 Faraday Ave Ste 121 Carlsbad, CA 92008 | **Phone Number:** | (858) 215-4064 | |
| | | **Fax Number:** | (866) 583-8115 | |
| | | **e-mail:** | darrell.palmer@palmerlegalteam.com" class="bluenormal">darrell.palmer@palmerlegalteam.com | |
| **County:** | San Diego | **Undergraduate School:** | No Information Available; | |
| **District:** | District 4 | | | |
| **Sections:** | None | **Law School:** | California Western SOL; San Diego CA | |

## Status History

| Effective Date | Status Change |
|---|---|
| Present | Active |
| 9/23/2002 | Active |
| 9/23/2002 | Inactive |
| 8/30/2002 | Not Eligible To Practice Law |
| 8/1/2002 | Inactive |
| 12/15/1986 | Admitted to The State Bar of California |

Explanation of member status

## Actions Affecting Eligibility to Practice Law

| Effective Date | Description | Case Number | Resulting Status |
|---|---|---|---|
| **Disciplinary and Related Actions** | | | |

Overview of the attorney discipline system.

| 12/6/2013 | Notice of Disc Charges Filed in SBCt | 12-O-16924 | |
| 11/26/2002 | Public reproval with/duties | 02-C-11878 | |

**Administrative Actions**

This member has no public record of administrative actions.

Copies of official attorney discipline records are available upon request.

Explanation of common actions

---

## State Bar Court Cases

> **NOTE:** *The State Bar Court began posting public discipline* documents *online in 2005. The format and pagination of documents posted on this site may vary from the originals in the case file as a result of their translation from the original format into Word and PDF. Copies of additional related documents in a case are* available upon request. *Only* Opinions designated for publication *in the* State Bar Court Reporter *may be cited or relied on as precedent in State Bar Court proceedings. For further information about a case that is displayed here, please refer to the State Bar Court's online docket, which can be found at:* http://apps.statebarcourt.ca.gov/dockets/dockets.aspx

> **DISCLAIMER:** *Any posted Notice of Disciplinary Charges, Conviction Transmittal or other initiating document, contains only allegations of professional misconduct. The attorney is presumed to be innocent of any misconduct warranting discipline until the charges have been proven.*

| Effective Date | Case Number | Description |
|---|---|---|
| Pending | 12-O-16924 | Initiating Document [PDF] |
| Pending | 12-O-16924 | Response [PDF] |
| Pending | 12-O-16924 | Decision [PDF] [WORD] |

---

## California Bar Journal Discipline Summaries

*Summaries from the California Bar Journal are based on discipline orders but are not the official records. Not all discipline actions have associated CBJ summaries. Copies of official attorney discipline records are* available upon request.

**August 30, 2002**

JOSEPH DARRELL PALMER [#125147], 45, of Fort Worth, Tex., was placed on interim suspension Aug. 30, 2002, following his conviction in Colorado for failure to pay over taxes. He was ordered to comply with rule 955. The interim suspension was terminated Sept. 23, 2002.

Start New Search »

# Exhibit A-3

*Law 360*: "BP Deal Objectors Drop Appeal, Say Attys Misled Them"



News, cases, compani [Search]

Advanced Search

Subscribe | Sign In



Sign In

News, cases, compani [ ]

- Subscribe
- Sign In
-



-

News, cases, compani [ ]

Advanced Search

# BP Deal Objectors Drop Appeal, Say Attys Misled Them

Share us on: By **Lance Duroni**

Law360, Chicago (November 26, 2013, 2:04 PM ET) -- Three Florida property owners who challenged BP PLC's estimated $9.2 billion Deepwater Horizon oil spill settlement dropped their appeal Friday, telling the Fifth Circuit that they were misled by their lawyers at every turn.

After retaining new counsel, the property owners filed a joint motion to voluntarily dismiss their appeal, accusing their prior counsel — Theodore Frank and Joseph Darrell Palmer — of taking "unauthorized and unapproved actions" on their behalf.

"Appellants now realize, much to their extreme chagrin, prior counsel's machinations and subterfuge, of which they were unaware and do not countenance, and appellants certainly wish to take remedial measures to rectify matters," their new attorney, Ronnie G. Penton, wrote in the motion.

The move comes three weeks after lawyers for the broader class of plaintiffs in the case moved to dismiss the appeal, arguing that the objectors — which also included a fourth property owner, James H. Kirby III, who hasn't dropped his appeal — were not actually part of the class. In an Oct. 31 filing, class counsel said that the three properties owned by the objectors were outside the affected region subject to the settlement

The objectors "are strangers to the settlement whose rights are unaffected by the settlement terms. As a result, they have no standing to appeal, and their appeals should be dismissed," lawyers for the class wrote.

According to Friday's withdrawal motion, Frank and Palmer failed to inform their clients of "most, if not all" significant developments in the case, and never told their clients about the need to post an appeal bond. They also kept their clients in the dark about "multiple factual inaccuracies" in various filings and oral arguments before the court, the motion said.

The two attorneys' misconduct was revealed to the objectors only when they appeared for their depositions last month, Penton wrote.

In addition to withdrawing the appeal, the three objectors asked the Fifth Circuit to release them from any personal liability under the appeal bond or for sanctions "due to the undeniably improper, undisclosed and unknown actions of prior counsel."

Frank, who founded the Washington-based Center for Class Action Fairness, told Law360 Tuesday that allegations that his clients were kept in the dark on important aspects of the case are simply not true.

"I don't know how their counsel could say that," he said. "They're entitled to decide that they no longer want to pursue their appeal, and we would have taken appropriate steps to do so."

Frank added that he and Palmer tried repeatedly to contact his former clients' new counsel, but they filed their motion to dismiss the appeal before ever speaking with the two.

Palmer, whose office is based in Carlsbad, Calif., did not immediately respond to a call seeking comment Tuesday.

BP faced a barrage of lawsuits from thousands of Gulf businesses asserting losses allegedly caused by the April 2010 Deepwater Horizon oil rig explosion and resulting spill. The following March, BP and plaintiffs' lawyers reached an $7.8 billion settlement — which has ballooned to an estimated $9.2 billion — that resolved most of the property damage, economic loss and medical claims in the multidistrict litigation.

The rising cost of the deal prompted BP to ask the Fifth Circuit last week to force the Louisiana federal judge overseeing the MDL to stop payments on the settlement, arguing that some claims could be fictitious. In an **emergency motion** seeking an injunction, BP asked the appeals court to enforce its **October order** that U.S. District Judge Carl Barbier stay some of the payments until he has sorted out which class members have legitimate claims.

The energy giant requested a decision on its motion for an injunction by Wednesday.

The objectors are represented by Ronnie G. Penton of the Penton Law Firm and James M. Garner, Martha Y. Curtis and Kevin M. McGone of Sher Garner Cahill Richter Klein & Hilbert LLLC.

The class is represented by Herman Herman & Katz LLC, Domengeaux Wright Roy & Edwards LLC, Levin Papantonio Thomas Mitchell Rafferty & Proctor PA, Lundy Lundy Soileau & South LLP and Weitz & Luxenberg PC, among others.

The defendants are represented by Gibson Dunn, Kirkland & Ellis LLP, Liskow & Lewis, Covington & Burling LLP, Arnold & Porter LLP, Dentons and Williams & Connolly LLP.

The case is In re: Deepwater Horizon — Appeals of the Medical Benefits Class Action Settlement, case number 13-30221, in the U.S. Court of Appeals for the Fifth Circuit.

--Additional reporting by Kurt Orzeck. Editing by Richard McVay.

## Related Articles

- BP's Tab Nears $5B In Deepwater Horizon Settlement
- BP To Halt Deepwater Loss Payments During Review
- 5th Circ. Grants BP's Bid To Halt Further Deepwater Payouts
- Clement Brief Backs BP In Row Over $8B Deepwater Settlement
- BP's Deepwater Medical Benefits Deal Unfair, 5th Circ. Hears

View comments

- Printable Version
- Rights/Reprints
- Editorial Contacts

## Related

**Sections**

- Appellate
- Class Action
- Energy
- Environmental
- Product Liability
- Texas

## Case Information

**Case Title**

In Re: Deepwater Horizon

**Case Number**

13-30221

**Court**

Appellate - 5th Circuit

**Nature of Suit**

3893 Environmental Matters

**Date Filed**

March 6, 2013

**Law Firms**

- Arnold & Porter
- Covington & Burling
- Dentons
- Domengeaux Wright
- Gibson Dunn
- Herman Herman
- Kirkland & Ellis
- Levin Papantonio
- Liskow & Lewis
- Lundy Lundy
- Sher Garner
- Weitz & Luxenberg
- Williams & Connolly

**Companies**

- BP p.l.c.

© 2014, Portfolio Media, Inc. About | Contact Us | Site Map | Legal Jobs | Careers at Law360 | Terms |
Privacy Policy **Beta Tools:** Track docs | Track attorneys | Track judges

# Exhibit A-4

*In re TFT-LCD (Flat Panel) Antitrust Litigation*, 289 F.R.D. 548 (2013)

289 F.R.D. 548
United States District Court,
N.D. California.

In re TFT–LCD (FLAT PANEL)
ANTITRUST LITIGATION.
This Order Relates to: INDIRECT–
PURCHASER PLAINTIFF CLASS ACTIONS.

No. M 07–1827 SI.    |    MDL
No. 1827.    |    Feb. 19, 2013.

**Synopsis**

**Background:** In antitrust class action against manufacturers, sellers, and distributors of thin film transistor liquid crystal display (TFT-LCD) panels and products, plaintiff moved for order to show cause why objectors and their attorney should not be held in civil contempt for failing to appear for deposition.

**[Holding:]** The District Court, Susan Illston, J., held that objectors to proposed settlement, and their attorney, were in civil contempt of court's order compelling depositions.

Contempt order entered and sanctions imposed.

West Headnotes (7)

**[1]**    **Contempt**
            🗝 Civil contempt
        **Contempt**
            🗝 Disobedience to Mandate, Order, or Judgment

"Civil contempt" consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.

Cases that cite this headnote

**[2]**    **Contempt**
            🗝 Disobedience to Mandate, Order, or Judgment

To hold an individual in civil contempt for violation of a court order, that order must be clear in its commands.

Cases that cite this headnote

**[3]**    **Contempt**
            🗝 Disobedience to Mandate, Order, or Judgment
        **Contempt**
            🗝 Weight and sufficiency

To succeed on a motion for civil contempt, moving party must show by clear and convincing evidence that nonmoving party violated a court order beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the order.

Cases that cite this headnote

**[4]**    **Contempt**
            🗝 Disobedience to Mandate, Order, or Judgment

Party being held in civil contempt must show that he or she took every reasonable step to comply with court's order.

Cases that cite this headnote

**[5]**    **Contempt**
            🗝 Costs and fees

In fashioning civil contempt sanctions, court has discretion to award reasonable fees and costs as a remedial measure, regardless of whether party that is in contempt acted wilfully.

Cases that cite this headnote

**[6]**    **Federal Civil Procedure**
            🗝 Contempt

Objectors to proposed settlement of antitrust class action, and their attorney, were in civil contempt of court's order requiring objectors to appear for deposition, and their attorney to produce them; order clearly and specifically set forth that objectors were to be deposed and that it was their attorney's responsibility to

affirmatively communicate and coordinate with plaintiff's counsel to schedule the depositions, yet objectors and their attorney failed to take efforts to comply with the order, and provided no sufficient justification for their failure to do so. Fed.Rules Civ.Proc.Rule 37(b)(1), 28 U.S.C.A.

1 Cases that cite this headnote

**[7]** **Contempt**
👉 Nature and grounds in general

In determining appropriate sanctions for civil contempt, consideration of prejudice to the movant is only relevant in cases where severe sanctions, such as dismissal, may be awarded.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*549** Samuel W. Lanham, Jr., Lanham & Blackwell, Bangor, ME, Ian Otto, Straus & Boies LLP, Fairfax, VA, Mario Nunzio Alioto, Trump Alioto Trump & Prescott LLP, Eric B. Fastiff, Brendan Patrick Glackin, Richard Martin Heimann, Marc Pilotin, Lieff, Cabraser, Heimann & Bernstein LLP, Bruce Lee Simon, Aaron M. Sheanin, Thomas Kay Boardman, Pearson, Simon, Warshaw & Penny, LLP, Beatrice B. Nguyen, Gregory D. Call, Suzanne E. Rode, Nathanial John Wood, Crowell & Moring LLP, Douglas R. Young, Farella Braun & Martel LLP, Joseph M. Alioto, Sr., Theresa Driscoll Moore, Alioto Law Firm, Christopher T. Micheletti, Craig C. Corbitt, Francis Onofrei Scarpulla, Heather T. Rankie, Patrick Bradford Clayton, Qianwei Fu, Zelle Hofmann Voelbel & Mason LLP, Derek G. Howard, Jack Wing Lee, Minami Tamaki LLP, Judith A. Zahid, Zelle Hofmann Voelbel Mason & Gette, LLP, Tracy R. Kirkham, Cooper & Kirkham, P.C., Joseph R. Saveri, Saveri Law Firm, Blaire Zina Russell, John R. Foote, Karl David Belgum, Nixon Peabody LLP, Euphemia Nikki Thomopulos, Joren Surya Bass, Troy Philip Sauro, Perkins Coie LLP, David Mark Goldstein, Esq., Shannon Christine Leong, Stephen V. Bomse, Orrick, Herrington & Sutcliffe LLP, Margaret Branick-Abilla, Richard James Mooney, Bryan Cave LLP, Robert L. Stolebarger, Holmes Roberts & Owen LLP, Allan Steyer, Steyer Lowenthal Boodrookas Alvarez & Smith LLP, San Francisco, CA, Alberto Rodriguez, Vanek Vickers and Masini PC, Mark E. Ferguson, Mark S.

Ouweleen, Attorney at Law, Barlitt Beck Herman Palenchar & Scott, Kimball Richard Anderson, Winston and Strawn LLP, Blake Lee Harrop, Office of the Attorney General, David Paul Germaine, Chicago, IL, Jason C. Murray, Janet Irene Levine, Joshua Courtney Stokes, Robert Brian McNary, Crowell & Moring LLP, Robert William Finnerty, Girardi Keese, David Martinez, Elizabeth Diemphuc Le, Matthew David Taggart, Attorney at Law, Roman M. Silberfeld, Robins Kaplan Miller & Ciresi L.L.P., Marc M. Seltzer, Steven Gerald Sklaver, David Humberto Orozco, Susman Godfrey LLP, Mark D. Baute, Sean Adrian Andrade, Baute Crochetiere & Wang LLP, Los Angeles, CA, Daniel L. Warshaw, Clifford H. Pearson, Pearson, Simon, Warshaw & Penny LLP, Sherman Oaks, CA, Hilary Kathleen Ratway, Hausfeld, LLP, Astor Henry Lloyd Heaven, III, Jeffrey H. Howard, Jerome A. Murphy, David P. Ross, Crowell and Moring LLP, Christopher T. Leonardo, Kenneth L. Adams, R. Bruce Holcomb, Adams Holcomb LLP, William A. Isaacson, Boies Schiller & Flexner, Ross Christopher Paolino, Orrick Herrington Sutcliffe LLP, Melissa Willett, William A. Isaacson, Boies, Schiller & Flexner, Melissa B. Felder, Washington, DC, Andre Mauricio Pauka, Bryan Leach, Daniel R. Brody, Fred H. Bartlit, Jr., Karma Micaela Giulianelli, Lester Houtz, Bartlit Beck Herman Palenchar & Scott, Denver, CO, Brian Parker Miller, Donald MacKaye Houser, Edward Paul Bonapfel, Joann Elizabeth Johnston, Kacy Christine McCaffrey, Kevin Michael Pitre, Lisa Kathleen Bojko, Matthew D. Richardson, Peter Konito, Valarie Cecile Williams, Andrew Jacob Tuck, Debra Dawn Bernstein, Elizabeth Helmer Jordan, Matthew David Kent, Melissa Mahurin Whitehead, Michael P. Kenny, Rodney J. Ganske, Alston & Bird LLP, Matthew Scott Orrell, Atlanta, GA, Randall Lee Allen, Steven Daniel Hemminger, Alston and Bird, Menlo Park, CA, Richard W. Stimson, Alston & Bird LLP, Allan Diamond, Jason Paul Fulton, Jim McCarthy, **\*550** McCarthy D. James, Diamond McCarthy LLP, Lewis Titus LeClair, Mike McKool, Jr., Scott R. Jacobs, McKool Smith, P.C., Dallas, TX, Philip J. Iovieno, Christopher V. Fenlon, Boies Schiller & Flexner LLP, Anne M. Nardacci, Albany, NY, Daniel R. Shulman, Gray, Plant, Mooty, Mooty & Bennett, P.A., Elliot S. Kaplan, Laura Elizabeth Nelson, Robins Kaplan Miller & Ciresi, K. Craig Wildfang, Attorney at Law, Minneapolis, MN, Steven J. Foley, Hellmuth and Johnson PLLC, Edina, MN, Brady R. Johnson, Attorney General of Washington, Cori Gordon Moore, David Burman, Eric J. Weiss, Nicholas H. Hesterberg, Steven Douglas Merriman, Perkins Coie LLP, Jordan Connors, Parker C. Folse, III, Rachel S. Black, Brooke Ashley-May Taylor, Parker C. Folse, III, Susman

Godfrey L.L.P., Chase C. Alvord, Christopher Ian Brain, Kim D. Stephens, Tousley Brain Stephens PLLC, Seattle, WA, Michael E. Haglund, Michael Kevin Kelley, Michael G. Neff, Shay S. Scott, Haglund Kelley Horngren Jones & Wilder, LLP, Portland, OR, Tim David Nord, Oregon Department of Justice, Financial Fraud/Consumer Protection, Salem, OR, David Bedford Esau, James Blaker Baldinger, Carlton Fields PA, West Palm Beach, FL, Robert L. Ciotti, Carlton Fields, P.A., Tampa, FL, Anne E. Schneider, Attorney General of Missouri, Jefferson City, MO, David A. Curran, Kevin Wells, Arkansas Attorney General's Office, Little Rock, AR, Mary Elizabeth Lippitt, Michigan Attorney General, Assistant Attorney General, Lansing, MI, Douglas Lee Davis, Attorney General, Jill L. Miles, Assistant Attorney General, Charleston, WV, Gwendolyn J. Cooley, Wisconsin Attorney General, Madison, WI, Liz Ann Brady, Nicholas J. Weilhammer, Robert Scott Palmer, Office of the Attorney General, Gregory S. Slemp, Tallahassee, FL, Erica W. Harris, H. Lee Godfrey, Johnny William Carter, Jonathan Jeffrey Ross, Kenneth S. Marks, Adam Carlis, Susman Godfrey LLP, Houston, TX, Amy Elizabeth McFarlane, Geralyn Jeanette Trujillo, Jeremy R. Kasha, Richard L. Schwartz, Office of the Attorney General, Daniel B. Rapport, Edward A. Friedman, Hallie B. Levin, Jason C. Rubinstein, Alexander David Levi, Friedman Kaplan Seiler Adelman LLP, New York, NY, Stuart H. Singer, Boies, Schiller & Flexner, LLP, Fort Lauderdale, FL, Robert S. Green, Green & Noblin, P.C., Larkspur, CA, Barry R. Himmelstein, Himmelstein Law Network, Emeryville, CA, Mitchell E. Widom, Robert William Turken, Scott N. Wagner, Robert William Turken, Bilzin Sumberg Baena Price & Axelrod, LLP, Miami, FL, James Michael Terrell, Nicholas W. Armstrong, Phillip W. McCallum, Robert Gordon Methvin, Jr., McCallum Methvin & Terrell, P.C., Birmingham, AL, Julie A. Bays, P. Clayton Eubanks, Tom Bates, Office of the Oklahoma Attorney General, Oklahoma City, OK, Phillip F. Cramer, Ryan Thomas Holt, Sherrard and Roe, PLC, Nashville, TN, John Jacob Pentz, Class Action Fairness Group, Sudbury, MA, Joseph Darrell Palmer, Solana Beach, CA, for Plaintiffs.

Trump, Alioto, Trump & Prescott, pro se.

Chet Alan Kronenberg, Benjamin A. Gold, Simpson Thacher & Bartlett LLP, Gregory J. Weingart, Jonathan E. Altman, Munger, Tolles and Olson LLP, Jonathan Michael Weiss, Los Angeles, CA, Hojoon Hwang, Jerome Cary Roth, Munger Tolles & Olson LLP, Christopher Alan Nedeau, Nossaman LLP, Holly A. House, Kevin C. McCann, Lee F. Berger, Sean David Unger, Paul Hastings LLP, Michael Williams Stevens, San Francisco, CA, Arman Oruc, Jane Jung Ah

Lee, Xavier Blake Sparrow, Simpson Thacher and Bartlett LLP, Washington, DC, Jonathan Charles Sanders, Simpson Thacher Bartlett LLP, Roxana Niktab, Palo Alto, CA, Kevin J. Arquit, Simpson Thacher & Bartlett LLP, New York, NY, for Defendants.

**Opinion**

### ORDER RE CIVIL CONTEMPT AND AWARD OF SANCTIONS AGAINST OBJECTORS ALISON PAUL, LEVETA CHESSER, AND THEIR COUNSEL JOSEPH DARRELL PALMER

SUSAN ILLSTON, District Judge.

On December 5, 2012, class counsel for the Indirect–Purchaser Plaintiff Class Actions ("IPPs") filed a Renewed Motion for an Order to Show Cause re Finding of Civil Contempt and Award of Sanctions against Objectors Alison Paul, Leveta Chesser, and their counsel, Joseph Darrell Palmer. The Court **\*551** issued an Order to Show Cause on January 9, 2013, setting a deadline for Objectors and Palmer to respond and a hearing date of February 12, 2013. Docket No. 7465. Objectors and their counsel filed a Response on February 2, 2012, and IPP Counsel filed a Reply on February 6, 2012. Docket Nos. 7584 and 7590. A hearing was held on February 12, 2013; IPP class counsel and Palmer appeared. Having considered the parties' papers and the arguments of the parties, the Court hereby finds Alison Paul, Leveta Chesser, and Joseph Darrell Palmer in civil contempt and awards sanctions in the amount of $9,254.11.

### BACKGROUND

Objectors Alison Paul and Johnny Kessel, unnamed class members in the Indirect–Purchaser Class Action, first filed an objection around April 13, 2012, in response to the IPP Motion for Preliminary Approval to the Round 1 Settlements. Docket No. 5531. On April 20, 2012, IPP counsel served Paul and Kessel with deposition notices and document production demands. In response, Joseph Darrell Palmer, counsel to Paul and Kessel, sent a letter to IPP counsel explaining that he would not produce his clients for deposition without a court order. Docket No. 6885–13. The Court preliminarily approved the Round 1 Settlements on July 11, 2012, *see* Docket No. 6130, and Paul and Kessel filed a Notice of Appeal with the Ninth Circuit on August 6, 2012, *see* Docket No. 6388.

On September 6, 2012, IPP counsel served Paul with a subpoena issued from the Southern District of California, where she lives,[1] later following up with Palmer to schedule the deposition. Palmer reiterated that Paul would not appear for a deposition without a court order. Around the same time, IPP counsel requested that Palmer accept service on behalf of Kessel, since Kessel had failed to include his address on the objection, and informed Palmer that they would be seeking a court order compelling discovery participation.

In October of 2012, IPP counsel moved to compel the depositions of various objectors, including Paul and Kessel, see Docket No. 6884. Palmer opposed the motion, arguing that the Court lacked jurisdiction, that the objectors were not subject to the Special Master's jurisdiction, that IPP counsel sought privileged material as well as irrelevant material, and that the requests were unduly burdensome, see Docket No. 6952. In addition, a motion that Paul had filed in the Southern District of California, to quash the deposition subpoena served on Paul there, was transferred to this District for decision here; it was opposed by IPP counsel.

On October 18, 2012, the Special Master conducted a telephonic hearing on these issues,[2] and on October 19, 2012, issued a written order. The Special Master ordered Paul and Kessel to appear for deposition and produce documents, according to guidelines set out in the Order. Docket No. 7011. He denied the motion to quash the Paul subpoena issued by the Southern District of California. Id.

A few days before the Special Master issued this Order, Kessel and a new objector, Leveta Chesser,[3] both represented by Palmer, filed new objections to the Round 2 Settlements, again failing to include their addresses on the objection. See Docket No. 6991.[4]

IPP counsel followed up with Palmer by phone and email to schedule the depositions of Paul and Kessel, and requested that he accept service on behalf of Chesser. Palmer responded by email, threatening to bring claims of legal malpractice against the Zelle *552 Hoffman firm and "every firm you put on the signature pages for these subpoenas." Docket No. 7129–11. IPP counsel continued to follow up with Palmer about Chesser's deposition, and on the day of Chesser's noticed deposition, Paul and Kessel, via Palmer, filed objections to the Special Master's Order compelling their depositions, asserting the same arguments that the

Special Master had specifically overruled. See Docket No. 7096. The next day, IPP counsel followed up with Palmer, inquiring about the depositions, to which Palmer replied, "what depositions?" IPP counsel appeared at the scheduled depositions of Paul and Kessel on the noticed date of November 5, 2012, but neither Paul nor Kessel appeared.

In response to their objections to the Special Master's Order, IPP counsel filed a(1) Response to Paul and Kessel Objections to Special Master's Order and (2) Cross–Motion for Order to Show Cause regarding finding of Civil Contempt and Award of Sanctions Against Paul, Kessel, and Palmer. Docket No. 7129. The motion also requested that the Court compel Leveta Chesser to participate in discovery on the same terms as Paul and Kessel, as set out in the Special Master's Order. On November 14, 2012, this Court issued an Order (1) denying Paul's and Kessel's objections to Special Master's Order, (2) denying the IPP's requested OSC re civil contempt and sanctions, and (3) compelling the depositions of Paul, Kessel, and Chesser by November 21, 2012. Dkt. No. 7152. Palmer was specifically "ORDERED to communicate with and cooperate with IPP counsel in scheduling these depositions." Id. Kessel appeared for deposition on November 20, 2102, but Paul and Chesser did not.

IPP counsel thereafter filed a Renewed Motion for Order to Show Cause re Finding Civil Contempt and Award of Sanctions Against Paul, Chesser, and Palmer for failure to comply with the Court's November 14, 2012 Order and for Palmer's unprofessional conduct at Kessel's deposition. Docket No. 7296. IPP counsel seek a civil contempt finding and award of monetary and dismissal sanctions in the amount of $10,000 for attorneys' fees and $1,154.11 in costs associated with its efforts in pursuing these depositions. Id. Palmer filed an Opposition to the IPP's Renewed Motion raising the same objections as in previous briefings and arguing that IPP counsel exceeded the scope of permissible topics ordered by the Special Master at Kessel's deposition. Docket No. 7397.

On January 9, 2013, the issued an OSC, ordering Paul, Chesser, and Palmer to show cause why the Court should not find them in civil contempt and award sanctions. Docket. No. 7465.

## LEGAL STANDARD

**[1]   [2]   [3]   [4]**   Rule 37(b)(1) of the Federal Rules of Civil Procedure provides, "[i]f the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court." [5] Civil contempt consists of a party's disobedience to "a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1130 (9th Cir.2006). To hold an individual in civil contempt for violation of a court order, that order must be clear in its commands. *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir.1989) (court order must be "specific and definite"). To succeed on a **\*553** motion for civil contempt, the moving party must "show by clear and convincing evidence that [the nonmoving party] violated the [court order] beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [order]." *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir.1997). The party being held in contempt must show that he or she took every reasonable step to comply with the Court's order. *Sekaquaptewa v. MacDonald*, 544 F.2d 396, 404 (9th Cir.1976).

**[5]**   In fashioning civil contempt sanctions, the court has the discretion to award reasonable fees and costs as a remedial measure, regardless of whether the party that is in contempt acted wilfully. *Perry v. O'Donnell*, 759 F.2d 702, 704–705 (9th Cir.1985); *General Ins. Co. v. Eastern Consol. Util., Inc.*, 126 F.3d 215, 220 (3d Cir.1997) (upholding monetary sanction of expenses and attorney's fees for non-party's failure to appear at a deposition).

## DISCUSSION

The Court's January 9, 2013, Order required Objectors Paul and Chesser, and their counsel Palmer, to show cause why the Court should not find them in civil contempt and award sanctions. The Order set a hearing date of February 12, 2013. *See* Docket No. 7465. In their response, Objectors and Palmer argue that IPP counsel were attempting to conduct "needless depositions" of the Objectors; that Objectors and Palmer have not engaged in any sanctionable or improper conduct; and that IPP counsel have not shown any prejudice by the inability to conduct the depositions. Docket No. 7584. [6] Palmer also asserts that IPP counsel did not attempt to conduct the depositions after the Court's order compelling them on November 14, 2012. *Id.* In reply, IPP counsel rejects Palmer's

arguments and informs the Court that on February 1, 2013 (the day after Palmer's response was due) Palmer called IPP counsel and asked them if they would agree to take these contempt proceedings off-calendar in exchange for the deposition of Mr. Palmer's aunt, Ms. Chesser, in Little Rock, Arkansas, at an unspecified time in the future. *See* Docket No. 7590–1, Declaration of Patrick B. Clayton, ¶ 2. IPP counsel note that Palmer further stated that his wife, Alison Paul, would not appear for deposition as ordered. *Id.* IPP Counsel rejected Palmer's offer in writing that day. *Id.*

At the hearing on February 12, 2013, Palmer argued that his wife, Ms. Paul, did not want to appear for deposition, and Mr. Palmer knew of no precedent where an attorney could be held responsible for his client's failure to attend a deposition. He also challenged IPP's service of Paul, arguing that after the motion to quash the subpoena was transferred from the Southern District of California to the Northern District of California, the date for the noticed deposition had passed, and thus, IPP counsel were required to issue a new subpoena. IPP counsel asserted its repeated attempts, in light of each objectors' failure to provide their address on their objections, to serve objectors and their requests to Palmer that he accept service on their behalf.

**[6]**   The Court concludes that IPP counsel have demonstrated, by clear and convincing evidence, that Objectors Paul and Chesser, and their counsel, Palmer, violated the Court's November 14, 2012 Order requiring Paul and Chesser to appear for deposition. Although Palmer asserted at the hearing that he should not be held accountable for Paul's refusal to comply with the Court Order, the Court finds this assertion disingenuous. From the time Paul was served with a deposition notice on April 20, 2012, Palmer refused to produce his client without a Court order. Once a Court order was issued requiring his clients to appear for deposition, Palmer continued to refuse to produce his clients on the same grounds he had asserted to the Special Master and to the Court and that had been repeatedly rejected. He has never asserted in any briefing that Paul did **\*554** not want to appear, nor has he filed any declaration or provided any evidence that he attempted to persuade Paul to appear for deposition. In any event, the Court also ordered Palmer to affirmatively communicate and coordinate with IPP counsel to schedule the depositions. Thus, Palmer's argument that IPP counsel did not make efforts to conduct the depositions after the Order was entered is irrelevant. Palmer has failed to provide the Court with evidence that he affirmatively communicated with IPP counsel to schedule Paul and/or

Chesser's deposition after the Court order. This is further supported by IPP's assertion that Palmer continued to refuse to produce Paul for deposition as recently as February 1, 2012.[7]

 [7]    The Court also finds Palmer's assertion that IPP counsel were attempting to conduct "needless depositions" of Objectors without merit. This Court's Order compelling discovery participation of Paul and Chesser speaks to the contrary. The November 14, 2012 Order observed and approved the Special Master's order that the scope of document requests and depositions be limited to relevant information. Palmer also asserts that IPP counsel have not been prejudiced and thus, sanctions are unwarranted. Consideration of prejudice to the movant, however, is only relevant in cases where sever sanctions such as dismissal may be awarded. *See Adriana Intern. Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir.1990). The cases cited by Palmer similarly involve more severe sanctions than monetary sanctions. Although the Court could find that Palmer acted willfully, and thus award dismissal sanctions, the Court declines to strike the objections raised by Paul and Chesser. *See In re Phenylpropanolamine (PPA) Products Liability Litig.*, 460 F.3d 1217, 1233 (9th Cir.2006) ( [d]ismissal, the most drastic sanction, generally requires a finding that the conduct was "due to willfulness, bad faith or fault of the party," including "[d]isobedient conduct not shown to be outside the litigants's control."). As such, Palmer's argument is without merit.

Accordingly, because Paul, Chesser, and Palmer have failed to demonstrate that they took efforts to comply with the Court's order or provide sufficient justification for failing to comply with the Order, the Court hereby holds Paul, Chesser,

and Palmer in civil contempt and awards monetary sanctions to compensate IPP counsel for fees incurred pursuing the depositions after the Court issued its November 14, 2013 Order. The Court will award sanctions in the amount of $9,254.11, which represents $8,100 of attorneys' fees spent attempting to secure compliance with this Court's November 14, 2012 Order plus an additional $1,154.11 in costs. *See* Docket No. 7613, Supplemental Declaration of Patrick B. Clayton, ¶ 6; Docket No. 7296–1, Scarpulla Declaration, ¶ 4.

The Court therefore orders as follows:

1.  Pursuant to Fed.R.Civ.P. 37(b)(1), Joseph Darrell Palmer, Alison Paul, and Leveta Chesser are in civil contempt of this Court for their failure to comply with the Order filed on November 14, 2012, directing Paul and Chesser to appear for deposition and Palmer to communicate and coordinate with IPP counsel to schedule the depositions.

2.  Objectors Alison Paul and Leveta Chesser, and their counsel, Joseph Darrell Palmer, are SANCTIONED in the amount of $9,254.11, jointly and severally.

3.  This Order is stayed for ten days from the date of the Order to Show Cause hearing held on February 12, 2013, in order to allow contemnors to seek a stay from the Ninth Circuit Court of Appeals.

**IT IS SO ORDERED.**

**Parallel Citations**

2013-1 Trade Cases P 78,275

Footnotes

1    Alison Paul is attorney Palmer's wife.

2    Palmer did not appear for this telephonic hearing.

3    Leveta Chesser is Palmer's aunt.

4    In its Order for Final Approval of the Round 1 Settlements, the Court overruled objections to the Round 1 Settlements. *See* Docket No. 6130, ¶ 14. Alison Paul did not file objections to the Round 2 Settlement. However, the substance of Paul's Round 1 objections involved topics that were specifically reserved for later review in the Round 2 Settlement process. *See* Docket No. 6130, ¶ 15. As to such topics (class attorneys' fees, expenses, and awards, and allocation) Paul's objections remain at issue.

5    Although the deposition was noticed in the Southern District of California, where Paul lives, that court transferred Paul's motion to quash to the Northern District of California and held that "[a]ny determinations relating to the district court's jurisdiction pending the appeal to the Ninth Circuit should be made by the MDL court in Northern District of California." Thus, Rule 37(b)(1), which refers to "where the discovery is taken," will still be applicable here, in the Northern District of California. *See also* 28 U.S.C. § 1407(b) (authorizing the transferee judge to "exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions"); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 444 F.3d 462, 468–69 (6th Cir.2006) ("A judge presiding over an MDL case ... can compel production by an extra-district nonparty; enforce, modify, or quash a subpoena directed

to an extra-district nonparty; and hold an extra-district nonparty deponent in contempt, notwithstanding the nonparty's physical situs in a foreign district where discovery is being conducted.") (citing 28 U.S.C. § 1407(b)).

6   Palmer's response was due by 1/31/13 but was not filed until February 2, 2013. Palmer requested that the Court allow the late filing, offering several dramatic reasons for the late filing. *See* Dkt. No. 7584. The Court has allowed and considered the late filing, and the IPP's subsequent reply, in making its determination.

7   Palmer's conduct could be sanctioned under the Court's inherent authority. *See* 28 U.S.C. § 1927 ("Any attorney .... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct").

---

**End of Document**                              © 2014 Thomson Reuters. No claim to original U.S. Government Works.

# Exhibit A-5

Palmer Objection History, *Kramer v. Autobytel*, 4:10-cv-02722-CW, Dkt. 139-1

# EXHIBIT 1

## Motion to Compel Objector Discovery - Appendix A
## Examples of Cases in Which Darrell Palmer Has Filed Objections and Dismissed, Abandoned or Withdrawn the Objections or Appeal Without Attaining Settlement Changes or Additional Benefits for the Class

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *Berger v. Property I.D. Corp.* (C.D. Cal., No. CV 05-5373 GHK (CWx)) | Joseph Palmer – actually Darrell Palmer, appearing pro per, under his first name | Award of fees, to which Palmer had objected, granted 1/28/09 (Dkt. 899); final approval granted in separate order of that date (Dkt. 900). Objections not mentioned in either order. | Not filed. | Not applicable. |
| *In re Broadcom Corporation Class Action Litigation* (C.D. Cal., No. 06-cv-5036-R (CWx)) | Smokestack Lightening Ltd. "Marisco" | Overruled and $10,000 appeal bond required (Dkt. 356; 8/11/10). | Filed 9/10/10 (9th Cir., No. 10-56435). | Voluntarily dismissed (Dkt. 8, 11/4/10). |
| *Browning v. Yahoo! Inc., et al.* (N.D. Cal., No. C04-01463 HRL) | Norman Palmer[1], Richard Oster; Jeff Heinrichs | Overruled (2007 U.S. Dist. LEXIS 86266; 11/16/07). | Filed 12/14/07 (9th Cir., No. 07-17326). | Voluntarily dismissed (Dkt. 12, 5/2/08). |
| *In re Cellphone Termination Fee Cases* (Alameda Super. Ct., JCCP No. 4332) | Carol Barrett; Robert R. Oubre, Sr. | Final approval granted and fees awarded 7/21/10 in separate orders. Objections not mentioned in either of the orders. | Filed 9/17/10 (Cal. App. 1st Dist., No. A129887). | Voluntarily dismissed (3/10/11). |
| *In re Chiron Shareholder Deal Litig.* (Alameda Super. Ct., No. RG05230567) | Carrie B. Savage | Final approval granted and fees awarded 7/25/06 in separate orders. Objections not mentioned in either of the orders. | Filed 9/6/06 (Cal. App. 1st Dist., No. A115432). | Abandonment of appeal filed (10/18/06). |
| *Collins v. American Honda Motor Co.* (Alameda Super. Ct., No. RG03099677) | Elizabeth Blanks; Ancle W. Cummins, Jr.; Irving S. Bergrin | Final approval granted and fees awarded 12/28/06. The order states that the objections were considered but does not otherwise mention them. | Blanks/Cummins appeal filed 2/22/07 (Cal. App. 1st Dist., No. A117120); Bergrin appeal filed 2/26/07 (Cal. App. 1st Dist., No. A117125). | Blanks/Cummins and Bergrin appeals voluntarily dismissed (6/15/07). |

---

[1] Norman Palmer is Darrell Palmer's brother.

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *In re: Countrywide Financial Corp. Customer Data Security Breach Litig.* (W.D. Ky., No. 08-MD-01998) | Winfield C. Scott | Memorandum Opinion on final approval and fees found objections to be without merit (Dkt. 297, 8/23/10). | Filed 9/22/10 (6th Cir., No. 10-6194). | Voluntarily dismissed (Doc. No. 006110805529, 12/2/10). |
| *In Re: Currency Conversion Fee Antitrust Litig.* (S.D.N.Y., No. 1:01-MD-01409) | Richard Melton Construction, Inc.; Dirk F. Sutro | Final approval granted and fees awarded on 10/22/09 (263 F.R.D. 110). There were 76 objectors to the settlement.  For each of their points, the court said the objections were either without merit or moot.<br><br>Certain objectors sought fees.  "The objectors in this case did little to aid this Court.  While there were modifications to the notice program, these modifications were entirely on the Court's initiative and devised by the Special Master and the parties.  As for fees, the objections were so general and repetitive that they were of no assistance to an area with which this Court is intimately familiar." *Id.* at 132. | Not filed. | Not applicable. |
| *Dervaes v. California Physicians' Service d/b/a Blue Shield of California* (Alameda Super. Ct., No. RG06262733) | Alison H. Paul | Final approval granted and fees awarded 4/2/10.  Objections not mentioned in order and judgment. | Filed 6/1/10 (Cal. App. 1st Dist., No. A128696). | Abandonment of appeal filed (6/4/10). |
| *Elihu v. Toshiba America Information Systems* (Los Angeles Super. Ct., No. BC328556) | David Schaefer | Judgment entered 5/31/07. | Filed 7/27/07 (Cal. App. 2nd Dist., No. B201331). | Voluntarily dismissed (4/24/08). |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *In re Enron Corporation Securities Litig.* (S.D. Tex., No. H-01-3624) | Larry Fenstad; Dorothy Lancaster McCoppin | On 9/8/08, all objections were overruled or found to be without merit in the order awarding fees (586 F.Supp.2d 732) and the plan of allocation of the settlement proceeds (2008 U.S. Dist. LEXIS 84656). | Filed 10/3/08 (5th Cir., No. 08-20648). | Stipulated dismissal filed 9/10/09 (Doc. No. 0051920399). |
| *In re: Epson Ink Cartridges* (Los Angeles Super. Ct., JCCP 4347) | Elaine Savage; Edward Siegel; Andy Lui; Albert Lui | Judgment entered 10/23/06. | Filed 12/18/06 (Cal. App. 2nd Dist., No. B195818). | Voluntarily dismissed (1/29/07 – Savage, Andy Lui and Albert Lui; 3/13/07 – Siegel). |
| *In re: Ford Explorer Cases* (Sacramento Super. Ct., JCCP Nos. 4266 and 4270) | JWC Construction, Inc.; Misty Carter | Objections overruled in 6/27/08 fee order and 7/30/08 judgment. | Filed 9/26/08 (Cal. App. 3rd Dist., No. C060067). | Abandonment of appeal filed (11/21/08). |
| *Friedman v. 24 Hour Fitness USA, Inc.* (C.D. Cal., No. CV-06-06282) | Toni Ozen | Overruled 7/12/10. | Filed 8/11/10 (9th Cir., No. 10-56289). | Stipulated dismissal (Dkt. 3, 8/20/10). |
| *Gemelas v. Dannon Co.* (N.D. Ohio, No. 08-CV-236) | Steven P. Cope | Judgment, Final Order and Decree (Dkt. 71, 6/24/10) indicates objections were considered.<br><br>In his Order on Plaintiff's Motion for a Bond to Secure Payment of Costs and Attorneys' Fees on Appeal, Judge Dan Aaron Polster stated, "The only objections to the settlement were lodged by what now appear to be 'serial objectors.'" 2010 U.S. Dist. LEXIS 99503, *5 (N.D. Ohio Aug. 31, 2010). | Not filed. | Not applicable. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|------|-----------|---------------------|--------|-------------------|
| *In re General Motors Dex-Cool Gasket Cases* (Alameda Super. Ct., JCCP No. 4495) | Jonathan L. Booze | Overruled in 10/23/08 final approval and fee order.<br><br>On 12/5/08, all of the objectors filed a joint notice of withdrawal of their objections. | Not filed. | Not applicable. |
| *Hoffman v. Citibank (South Dakota) N.A.* (C.D. Cal., No. No. CV-06-00571) | Joseph Balla; Andrew J. Cesare; Todd Bates | Fees awarded (12/17/10 and 12/22/10) and settlement approved (12/22/10) in separate orders.  Objections not mentioned in the orders. | Filed 1/18/11 (9th Cir., No. 11-55106). | Voluntarily dismissed (Dkt. 7, 3/23/11). |
| *Koller v. Int'l. Rectifier Corp.* (C.D. Cal., No. CV-07-02544) | Cascia II, LLC | Objection filed 1/25/10; withdrawn 2/1/10. | Not filed. | Not applicable. |
| *In re: Lifelock, Inc. Marketing and Sales Practices Litig.* (D. Ariz., No. 2:08-MD-01977-MHM) | Billy Daniels | The final approval and fee order of 8/31/10 (Dkt. 218) states: "[T]he Parties demonstrated in their Response to Objections that none of the asserted bases for objection is valid."  Slip op. at 9. | Filed 9/30/10 (9th Cir., No. 10-17177). | Voluntarily dismissed (Dkt. 16, 1/5/11). |
| *Papadakis v. Northwestern Mutual Life Ins. Co.* (Los Angeles Super. Ct., No. BC322788) | Marci R. Frenkel; Eric Zeigenhorn; Norma Hoffman; Stuart Mintz; Kirk Stewart; Steven Sindell; Paul M. Kaufman | Final approval order and judgment entered 2/20/09. | Filed 4/2/09 (Cal. App. 2nd Dist., No. B214789). | Voluntarily dismissed (8/24/10). |
| *Salcido v. Iovate Health Sciences USA, Inc.* (Los Angeles Super. Ct., No. BC387942) | Cassie Griffin | Objection filed 8/28/09; withdrawn 9/24/09. | Not filed. | Not applicable. |

| Case | Client(s) | Outcome of Objection | Appeal | Outcome of Appeal |
|---|---|---|---|---|
| *Savaglio v. Wal-Mart Stores, Inc.* (Alameda Super. Ct., No. C-835687) | Joseph D. Wilkins; Evelyn Zientek | Final approval of settlement granted 4/8/10, overruling objections except as to amount of attorneys' fees.  The 9/10/10 order on fees indicated that the court had "rejected all objections to the requested fee award." | Not filed. | Not applicable. |
| *In re Smokeless Tobacco Cases I, II* (San Francisco Super. Ct., JCCP Nos. 4250, 4258, 4259, 4262) | Norman D. Palmer | At the 3/12/08 final approval hearing, Judge Richard A. Kramer questioned Darrell Palmer at length about Norman; earlier that day, the objection was withdrawn. | Not filed. | Not applicable. |
| *Troyk v. Farmers Group, Inc.* (San Diego Super. Ct., No. GIC836844) | Arthur Carapia | Judgment entered 11/23/10. | Filed 1/15/10 (Cal. App. 4th Dist., Div. 1, No. D056803). | Abandonment of appeal filed (3/4/10). |
| *In re Vitamins Antitrust Litig.* (D.D.C., MDL No. 1285) | Neil Freedman; Teri Cunningham | Objections found to be without merit in final approval order (Dkt. 4888, 6/25/10). | Filed 7/23/10 (D.C. Cir., No. 10-7096). | Stipulated dismissal entered 9/2/10 (Doc. No. 1263938). |
| *In re: Wal-Mart Stores, Inc. Wage and Hour Litig.* (N.D. Cal., No. 06-CV-02069 SBA) | Joseph D. Wilkins; Nicole Clemente; Lolita Wells | Objections filed 9/7/10; withdrawn 11/6/10. | Not filed. | Not applicable. |
| *Wilson v. Airborne, Inc.* (C.D. Cal., No. CV-05-00770) | Denise Fairbank; Falicia Estep | Objections overruled in final approval and fee order (Dkt. 170, 8/13/08). | Filed 11/4/08 (9th Cir., No. 08-56819). | Voluntarily dismissed (Dkt. 10, 2/20/09). |
| *Yeagley v. Wells Fargo & Co.* (N.D. Cal., No. C-05-3403-CRB) | Rose A. Munoz | Objection filed 6/8/07; withdrawn as indicated in 10/18/07 order stating that plaintiffs' counsel had agreed to pay the objectors' attorneys fees. | Not filed. | Not applicable. |

3225507v3