UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
                         SAN JOSE DIVISION



    IN RE GOOGLE REFERRER HEADER      CASE NO.  CV-10-04809-EJD
    PRIVACY LITIGATION.
                                      SAN JOSE, CALIFORNIA

                                      AUGUST 29, 2014

                                      PAGES 1 - 68


                     TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE


                   A-P-P-E-A-R-A-N-C-E-S


    FOR THE PLAINTIFFS:   ASCHENBRENER LAW, P.C.
                          BY:  MICHAEL ASCHENBRENER
                          815 W. VAN BUREN STREET, SUITE 415
                          CHICAGO, ILLINOIS 60607

                          NASSIRI & JUNG LLP
                          BY:  KASSRA NASSIRI
                          47 KEARNEY STREET, SUITE 700
                          SAN FRANCISCO, CALIFORNIA 94108

                          PROGRESSIVE LAW GROUP, LLC
                          BY:  ILAN CHOROWSKY
                              ALEX STEPICK
                          1 N. LASALLE STREET
                          CHICAGO, ILLINOIS 60602

         (APPEARANCES CONTINUED ON THE NEXT PAGE.)



    OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR
                               CERTIFICATE NUMBER 8074

         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
    TRANSCRIPT PRODUCED WITH COMPUTER.

1

A P P E A R A N C E S: (CONT'D)

2


3     FOR THE DEFENDANTS:                    O'MELVENY & MYERS
                                             BY:  RANDALL W. EDWARDS
4                                            TWO EMBARCADERO CENTER
                                             28TH FLOOR
5                                            SAN FRANCISCO, CALIFORNIA
                                             94111
6


7                                            MAYER BROWN
                                             BY:  EDWARD JOHNSON
8                                            TWO PALO ALTO SQUARE
                                             SUITE 300
9                                            PALO ALTO, CALIFORNIA
                                             94306
10


11    ALSO PRESENT:


12                                           CCAF
                                             BY:  THEODORE H. FRANK
13                                           1718 M STREET NW, NO. 236
                                             WASHINGTON, DC 20036
14

15

16

17

18

19

20

21

22

23

24

25

```
 1    SAN JOSE, CALIFORNIA                      AUGUST 29, 2014

 2

 3                    P R O C E E D I N G S

 4        (COURT CONVENED.)

 5             THE CLERK:  CALLING CASE NUMBER 10-4809, IN RE

 6    GOOGLE REFERRER HEADER PRIVACY LITIGATION.

 7        ON FOR MOTION FOR CLASS ACTION SETTLEMENT AND MOTION FOR

 8    ATTORNEY'S FEES.

 9        COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

10             MR. JOHNSON:  GOOD MORNING, YOUR HONOR.  WARD

11    JOHNSON FOR GOOGLE.

12             THE COURT:  THANK YOU.  GOOD MORNING.

13             MR. EDWARDS:  GOOD MORNING, YOUR HONOR.  RANDALL

14    EDWARDS ALSO FOR GOOGLE.

15             THE COURT:  THANK YOU.  GOOD MORNING.

16             MR. ASCHENBRENER:  GOOD MORNING, YOUR HONOR.

17    MICHAEL ASCHENBRENER ON BEHALF OF PLAINTIFFS AND THE CLASS.

18             THE COURT:  THANK YOU.

19             MR. CHOROWSKY:  ILAN CHOROWSKY FOR THE PLAINTIFF AND

20    THE CLASS.

21             THE COURT:  GOOD MORNING.

22             MR. NASSIRI:  GOOD MORNING, YOUR HONOR.  KASSRA

23    NASSIRI FOR PLAINTIFFS.

24             THE COURT:  THANK YOU.  GOOD MORNING.

25             MR. STEPICK:  GOOD MORNING, YOUR HONOR.  ALAN
```

1      STEPICK FOR THE PLAINTIFFS.

2                    THE COURT:  THANK YOU VERY MUCH.

3                    MR. FRANK:  AND THEODORE H. FRANK FOR THE OBJECTOR.

4                    THE COURT:  THANK YOU.  THANK YOU FOR BEING HERE,

5      ALL OF YOU.  I APPRECIATE THAT.  I HAVE READ YOUR FILINGS AND

6      THANK YOU FOR THOSE.  THOSE HAVE BEEN VERY HELPFUL.

7           THIS IS ON TODAY FOR FINAL APPROVAL, AND I NOTE THAT --

8      ARE THERE ANY OTHER OBJECTORS PRESENT?  I SEE OR HEAR NO

9      RESPONSE.

10          AND I DO HAVE PLAINTIFFS' REPLY MEMORANDUM, AND THIS IS

11     DOC 75 IN SUPPORT OF THE FINAL APPROVAL.  THIS IS ON FOR FINAL

12     APPROVAL.

13          LET ME ASK YOU COUNSEL, ARE THERE ANY CHANGES, ADDITIONS,

14     DELETIONS, AUGMENTATIONS TO YOUR FILINGS IN REGARDS TO FINAL

15     APPROVAL?

16                    MR. NASSIRI:  NO, YOUR HONOR.

17                    MR. ASCHENBRENER:  NO, YOUR HONOR.

18                    THE COURT:  NOTHING FROM THE DEFENSE?

19                    MR. EDWARDS:  CORRECT, YOUR HONOR.

20                    THE COURT:  OKAY.  ANYTHING FROM THE OBJECTOR?

21     ANYTHING ADDITIONAL TO YOUR --

22                    MR. FRANK:  I THINK OUR PAPERS DESCRIBE OUR

23     POSITION.

24                    THE COURT:  OKAY.  THANK YOU.  WELL, I WILL HEAR

25     FROM THE PARTIES HERE AS WELL AS ANY OBJECTORS THAT ARE PRESENT

1    THAT WISH TO PLACE OBJECTIONS.

2        WHY DON'T I, WHY DON'T I GIVE THE FLOOR TO THE OBJECTOR,

3    MR. FRANK, IF I COULD FOR A MOMENT.  LET'S HEAR FROM HIM FIRST,

4    PLEASE.  THANK YOU.

5            MR. FRANK:  THANK YOU, YOUR HONOR.

6            THE COURT:  YOU'RE WELCOME.

7            MR. FRANK:  OUR PAPERS DESCRIBE THE POSITION.  IN

8    OUR VIEW, LANE, THE SUPREME COURT'S DENIAL OF CERTIORARI,

9    JUSTICE ROBERTS'S DECISION, RESPECTING DENIAL OF CERTIORARI

10   POINTED OUT THAT THE COURT WAS CONCERNED ABOUT CY PRES ISSUES

11   AND A VARIETY OF FACTORS RELATING TO CY PRES ISSUES.

12       AND I THINK THIS SETTLEMENT PRESENTS EXACTLY THE SORT OF

13   PROBLEMS THAT THE COURT WAS CONCERNED ABOUT.  THIS IS A $0

14   SETTLEMENT TO THE CLASS WHERE ALL OF THE MONEY GOES TO CY PRES

15   AND MOST, AND PERHAPS EVEN ALL OF THE CY PRES RECIPIENTS, ARE

16   RECIPIENTS THAT GOOGLE HAS ALREADY GIVEN MONEY TO.

17       IN FACT, SEVERAL OF THEM PROMINENTLY SAY WE'RE SUPPORTED

18   BY GOOGLE ON THEIR WEBSITE.  SO THIS IS NOT EVEN A NEW BENEFIT

19   TO THE CLASS.  IT'S A CHANGE OF ACCOUNTING ENTRIES TO JUSTIFY

20   THE ATTORNEY'S FEES.

21       SO THERE ARE TWO POSSIBILITIES HERE, EITHER IT'S FEASIBLE

22   TO DISTRIBUTE MONEY TO THE CLASS, AND WE CONTEND THAT IT IS

23   FEASIBLE TO DISTRIBUTE MONEY TO THE CLASS.

24           THE COURT:  HOW WOULD THAT WORK WITH THE SHEER SIZE

25   OF THE CLASS?

1            MR. FRANK:  WELL, OBVIOUSLY YOU CAN'T JUST MAIL A

2   CHECK FOR $0.06 TO EVERY CLASS MEMBER, BUT IF YOU HAVE A CLAIMS

3   PROCESS, THE REALITY IS 0.5 PERCENT OF MEMBERS OF THE CLASS

4   FILE CLAIMS ON AVERAGE, MAYBE LESS.

5        THE FRALEY VERSUS FACEBOOK SETTLEMENT, IT'S VERY SIMILAR

6   TO THIS ONE, GIGANTIC CLASS OF OVER 100 MILLION PEOPLE, THEY

7   JUST SAID, OKAY, WE'LL HAVE A CLAIMS PROCESS AND SEE WHO FILES

8   CLAIMS AND WE'LL GIVE EVERYBODY $10.  AND SO FEW PEOPLE FILE

9   CLAIMS THAT THEY ENDED UP GIVING EVERYBODY $15.

10       WE HAVE $6 AND A HALF MILLION HERE THAT COULD BE

11  DISTRIBUTED, MAYBE EVEN MORE IF THE ATTORNEY'S FEES --

12            THE COURT:  WHAT IS THE CLASS SIZE HERE?

13            MR. FRANK:  THE PAPERS SAY OVER A HUNDRED MILLION.

14  IT'S NOT CLEAR FROM WHAT I UNDERSTAND.

15            THE COURT:  BUT LET'S SAY IT'S 90 MILLION.

16            MR. FRANK:  WELL, EVEN IF IT IS 100 MILLION, AT A

17  1 PERCENT CLAIMS RATE, AND WE NEVER SEE 1 PERCENT CLAIMS RATE

18  IN A SETTLEMENT LIKE THIS, IT'S STILL FEASIBLE TO DISTRIBUTE

19  $6 MILLION TO A MILLION CLASS MEMBERS AND WHAT IS MORE LIKELY

20  IS A HALF A MILLION CLASS MEMBERS.

21            THE COURT:  WHAT IF THERE IS AN ABERRATION THAT WHEN

22  WE SEE 10 PERCENT, 15 PERCENT RESPONSE?

23            MR. FRANK:  WELL, THAT WOULD BE CLOSE TO

24  UNPRECEDENTED FOR A CONSUMER SETTLEMENT.

25            THE COURT:  THERE'S ALWAYS A FIRST, ISN'T THERE?

1           MR. FRANK:  THERE'S ALWAYS A FIRST.  AND AT THAT

2     POINT THE PARTIES CAN COME BACK AND SAY, WELL, THIS IS NOT

3     FEASIBLE AND IT WOULD BE MORE EXPENSIVE TO DISTRIBUTE AND THEN

4     AT THAT POINT CY PRES MAY BE APPROPRIATE, THOUGH THE CY PRES

5     WOULD NEED TO BE SOMETHING THAT ISN'T ALREADY AFFILIATED WITH

6     GOOGLE IF IT'S ACTUALLY GOING TO BE A CLASS BENEFIT AND THAT'S

7     DENNIS VERSUS KELLOG, THAT'S SECTION 3.07 AND THAT'S WHAT THE

8     COURT IMPLIES IN MAREK VERSUS LANE.

9           THE COURT:  WOULD THAT BE A SITUATION WHERE IF

10    GOOGLE WAS GENEROUS AND DONATED TO JUST ABOUT EVERY CHARITABLE

11    ORGANIZATION IN THE WORLD, WOULDN'T IT MEAN THAT ALL OF THOSE

12    PEOPLE WOULD BE CONFLICTED OUT?  IT'S MUCH LIKE A CLIENT GOING

13    TO TALK WITH ALL OF THE HIGH POWERED LAWYERS WHO SPECIALIZE IN

14    A PARTICULAR FIELD AND THEY CONFLICT OUT THOSE LAWYERS?

15          MR. FRANK:  WELL, I THINK GOOGLE'S MODEL IS DON'T BE

16    EVIL AND SO MAYBE THEY ARE GIVING TO EVERY CHARITY IN THE

17    WORLD.  THEY'RE NOT GIVING TO ME AND SO I AM CHARITY.

18          THE COURT:  ARE YOU A 501(C)3.

19          MR. FRANK:  I'M A 501(C)3.

20          THE COURT:  I SEE.

21          MR. FRANK:  BUT WE WOULDN'T TAKE CY PRES MONEY ANY

22    WAY.  BUT IN ANY EVENT, THERE ARE TWO POSSIBILITIES.  SO IT

23    EITHER IS FEASIBLE TO GIVE MONEY TO THE CLASS THROUGH SOME SORT

24    OF CLAIMS PROCESS IN WHICH CASE CY PRES IS APPROPRIATE OR LET'S

25    SAY THAT IT IS INFEASIBLE TO GIVE MONEY TO THE CLASS, AT WHICH

1    POINT, WELL, WHY IS THIS A CLASS ACTION THEN.

2         THE POINT -- A CLASS ACTION, BEFORE IT CAN BE CERTIFIED,

3    HAS TO BE SUPERIOR TO OTHER MEANS OF ADJUDICATION, AND WITH

4    OTHER MEANS OF ADJUDICATION CLASS MEMBERS GET NOTHING.  WITH

5    THIS MEANS OF ADJUDICATION, CLASS MEMBERS GET NOTHING.  THAT'S

6    NOT SUPERIOR.  THAT'S THE SAME.

7         THE ONLY BENEFICIARY ARE THE ATTORNEYS WHO GET $2 MILLION

8    AND GOOGLE, WHICH GETS A WAIVER, THE CLASS GETS NOTHING.

9         THEY POINT TO THE INJUNCTIVE RELIEF, BUT, AGAIN, THERE'S

10   ONE OF TWO THINGS HAPPENING HERE, EITHER GOOGLE IS DOING

11   SOMETHING ILLEGAL IN WHICH CASE THIS IS BEING SETTLED FOR FAR

12   TOO LITTLE, OR GOOGLE IS DOING SOMETHING ILLEGAL, AND IN WHICH

13   CASE WHY ARE THE ATTORNEYS COLLECTING $2 MILLION FOR A CHANGE

14   IN THE BUSINESS PRACTICES THAT IS MEANINGLESS?

15         THE COURT:  HOW WOULD YOU VALUE THE DAMAGE ISSUE IN

16   THIS CASE?

17         MR. FRANK:  WELL, I THINK THAT'S CERTAINLY A PROBLEM

18   IN BRINGING THE LITIGATION, AND THAT'S WHY IT'S SETTLING FOR SO

19   LITTLE.

20        BUT, YOU KNOW, WE DON'T CONTEST THAT GOOGLE HAS THE RIGHT

21   TO SETTLE THIS FOR VERY LITTLE MONEY BUT IF -- ONCE YOU REALIZE

22   THAT THE 6 MILLION BULK OF THE SETTLEMENT FUND IS JUST A CHANGE

23   IN ACCOUNTING ENTRIES, GOOGLE WAS GOING TO GIVE MONEY TO THE

24   HARVARD BERKMAN CENTER OR TO STANFORD AND IT'S NOW ATTRIBUTING

25   IT TO THE CLASS ACTION SETTLEMENT RATHER THAN TO THEIR NORMAL

1   OUTFLOW OF CHARITABLE FUNDS, THE ATTORNEYS ARE COLLECTING THE

2   ENTIRE BENEFIT.

3           THE COURT:  BUT WHAT WOULD, WHAT WOULD THE --

4   GETTING BACK TO MY QUESTION, WHAT IS THE DAMAGE TO THE CLASS?

5           MR. FRANK:  AGAIN, THAT'S UP FOR THE PLAINTIFFS TO

6   JUSTIFY WHY THEY HAVEN'T VIOLATED RULE 11 IN BRINGING THIS

7   LAWSUIT.

8       AGAIN, WE'RE NOT SAYING GOOGLE HAS TO SETTLE THIS FOR

9   $100 MILLION OR GOOGLE HAS TO SETTLE THIS FOR $200 MILLION.

10      GOOGLE CAN SETTLED THIS FOR BASICALLY WHAT IS $2 MILLION,

11  BUT WE PROTEST THAT THESE ATTORNEYS ARE GETTING ALL OF THAT

12  $2 MILLION AND NOBODY ELSE IS GETTING ANYTHING.

13          THE COURT:  WHICH GETS BACK TO MY QUESTION IS HOW

14  MUCH, I SUPPOSE, SHOULD -- I'M ASKING YOU TO BE THE JURY, I

15  SUPPOSE, IN THE TRIAL.

16          MR. FRANK:  I'M NOT SAYING THAT GOOGLE CANNOT SETTLE

17  THIS FOR VERY LITTLE MONEY.  IF THE PARTIES IN AN ARM'S LENGTH

18  NEGOTIATION SAY THAT THIS IS HOW MUCH THE SETTLEMENT IS WORTH,

19  WE'RE NOT CHALLENGING THAT, WE'RE NOT PRIVACY EXPERTS.  WE'RE

20  CLASS ACTION PEOPLE.

21      AND WHAT WE'RE SAYING IS, IS THAT THE BULK OF THE

22  SETTLEMENT FUNDS ARE GOING TO THE CLASS COUNSEL AND THERE IS

23  THIS ILLUSORY $6 MILLION THAT THE CHANGE IN ACCOUNTING ENTRIES

24  TO JUSTIFY THE 2 MILLION FEE.

25          MAYBE THE PROPER RELIEF TO THE CLASS IS A PEPPERCORN AND

1    GOOGLE IS OVER PAYING, BUT IF GOOGLE IS OVERPAYING, THE CLASS

2    IS ENTITLED TO THE PROPORTIONATE SHARE OF THE OVERPAYING.

3              THE COURT:  IT SOUNDS LIKE YOU TAKE A LITTLE BIT OF

4    AN ISSUE WITH THE ATTORNEY'S FEES PORTION OF THE SETTLEMENT?

5    IS THAT AN UNDERSTATEMENT?

6              MR. FRANK:  WELL, THAT'S GENERALLY A PROBLEM WITH

7    CLASS ACTION LITIGATION AS DISCUSSED IN CASES LIKE EUBANK -- I

8    APOLOGIZE.  I'M TALKING WAY TOO FAST.  EUBANK VERSUS PELLA

9    CORPORATION, 753 F. 3D 718 AND A NUMBER OF OTHER CASES THAT

10   TALK ABOUT THE INHERENT CONFLICT OF INTEREST IN CLASS ACTION

11   SETTLEMENTS.

12        THE OPTIMAL SETTLEMENTS WHEN CLASS MEMBERS ARE ABSENT FROM

13   THE TABLE IS SOMETHING THAT PAYS THE ATTORNEYS A LOT AND THE

14   CLASS MEMBERS VERY LITTLE AND YOU STRUCTURE THE SETTLEMENT TO

15   CREATE THE ILLUSION OF RELIEF TO JUSTIFY THE ATTORNEY'S FEES,

16   TO JUSTIFY THE DEFENDANT GETTING OUT OF THE CASE.

17        AND EVERYBODY IS HAPPY AND EXCEPT FOR, PERHAPS, THE CLASS

18   MEMBERS WHO ARE FROZEN OUT BUT DON'T HAVE THE INCENTIVE TO COME

19   FORWARD AND OBJECT BECAUSE THEY HAVE TOO LITTLE AT STAKE.

20              THE COURT:  UH-HUH.  IT'S INTERESTING YOU BEING A

21   STUDENT AND ACADEMIC OF CLASS ACTIONS, I'M SURE YOU HAVE DONE A

22   HISTORICAL VIEW OF CLASS ACTION LITIGATION AND IT'S CHANGED,

23   HASN'T IT?

24        PERHAPS BECAUSE OF THE ELECTRONIC FRONTIER THAT WE NOW

25   LIVE ON.  CLASS ACTIONS IN THE PAST WERE SUING, PERHAPS, AN

1    AUTOMOBILE MANUFACTURER BECAUSE THE DOOR LOCK DIDN'T OPERATE

2    CORRECTLY.  AND I'M SURE THERE ARE STILL THOSE LAWSUITS, BUT

3    YOU COULD IDENTIFY WHO BOUGHT A FORD FAIRLANE -- AND I'M NOT

4    PICKING ON FORD OR ANYTHING, AND I'M JUST USING THEM AS AN

5    EXAMPLE HERE -- AND THAT'S A PRETTY IDENTIFIABLE CLASS AND

6    THERE WAS CY PRES, BUT IT REALLY WASN'T, HISTORICALLY I'M

7    TALKING ABOUT, AND YOU CAN PLEASE CORRECT ME HERE AND YOU CAN

8    TEACH ME THIS MORNING ABOUT THIS ANALYSIS, BUT THERE WASN'T

9    A -- CY PRES REALLY WASN'T THAT BIG OF AN ISSUE BECAUSE YOU

10   COULD USUALLY IDENTIFY YOUR CLASS.

11        AND, OF COURSE, THERE WERE SOME PEOPLE WHO MOVED FROM FORD

12   TO GENERAL MOTORS AND THEY DIDN'T CARE ANYMORE, PERHAPS.  SO

13   THERE WAS SOME REMAINDER.  AND IT WASN'T THAT, THAT BIG OF A

14   DEAL, TO PUT IT THAT WAY, INELEGANTLY.

15        NOW, HOWEVER, WHEN YOU HAVE GOT PEOPLE WHO ARE USING

16   GOOGLE AND ALL OF THESE OTHER TYPE OF INTERNET TYPE OF

17   COMPANIES AND THINGS WORLDWIDE, CLASSES, IT'S NO LONGER LIMITED

18   TO THE PEOPLE WHO BOUGHT A FORD FAIRLANE IN 1968.  IT'S NOW

19   JUST HUNDREDS OF MILLIONS OF PEOPLE.

20        AND THE LAW HAS TO -- CLASS ACTION LAW, YOU KNOW, YOU GET

21   THOSE SIZE OF CLASSES, AND IT'S MY GOODNESS, HOW DO YOU --

22   WHICH IS BACK TO MY POINT AGAIN, HOW DO YOU, HOW DO YOU

23   STRUCTURE SOMETHING THAT ALLOWS FOR CONSUMER RECOVERY UNDER

24   RULE 23 IN A CLASS ACTION LAWSUIT?

25        IT'S A CHALLENGE, ISN'T IT?

1            MR. FRANK: WELL, EITHER THE CASE IS MERITORIOUS AND

2   IN WHICH CASE YOU HAVE A LARGE CLASS AND YOU HAVE LARGE DAMAGES

3   OR THE CASE ISN'T MERITORIOUS IN WHICH CASE WHY ARE THE

4   ATTORNEYS COLLECTING SO MUCH OF WHAT THE SETTLEMENT BENEFIT IS?

5            THE COURT: HAVE YOU BEEN ENGAGED IN A TRIAL AND

6   SEEN A TRIAL INVOLVING 100 MILLION INDIVIDUALS IN A CLASS

7   ACTION?

8            MR. FRANK: AGAIN, I NEVER CONTESTED THE IDEA THAT A

9   CLASS CAN BE LARGE. AND, AGAIN, WE'RE NOT CONTESTING THAT

10   GOOGLE AND THE PLAINTIFFS CAN AGREE THAT THIS CASE ISN'T WORTH

11   VERY MUCH.

12     WHAT WE'RE CONTESTING IS THE CREATION OF THE ILLUSION OF

13   RELIEF CALLING WHAT IS REALLY A $2 MILLION SETTLEMENT AN $8 AND

14   A HALF MILLION SETTLEMENT AND HAVING THE ATTORNEYS COLLECT ALL

15   OF THAT $2 MILLION AND HAVING GOOGLE CHANGE ITS ACCOUNTING

16   ENTRIES TO RATIONALIZE THE ATTORNEY'S FEES WITHOUT THE CLASS

17   GETTING ANY ADDITIONAL BENEFIT.

18            THE COURT: OKAY. THANK YOU. WHAT ELSE WOULD YOU

19   LIKE ME TO KNOW, SIR?

20            MR. FRANK: IF YOU HAVE ANY QUESTIONS FOR ANYTHING

21   THAT IS IN OUR PAPERS, I THINK WE HAVE ACQUITTED OURSELVES

22   WELL.

23            THE COURT: THANK YOU FOR BEING HERE. I APPRECIATE

24   YOU BEING HERE. YOUR INPUT IS ALWAYS IMPORTANT, ALWAYS

25   IMPORTANT FOR THE COURT TO HAVE AS MUCH INFORMATION AS POSSIBLE

1   WHEN IT RULES ON A FINAL APPROVAL OF THE CLASS, ANY CLASS

2   ACTION.  THEY'RE ALL IMPORTANT.

3       SO I APPRECIATE YOU BEING HERE.  I'M SINCERE IN THAT.  I

4   APPRECIATE YOUR PAPERS.  I APPRECIATE THE TIME YOU TOOK IN

5   FILING YOUR PAPERS.  THEY HAVE BEEN HELPFUL, AND I THINK THEY

6   HAVE BEEN HELPFUL TO ALL OF US HERE.

7           MR. FRANK:  THANK YOU VERY MUCH, AND I'LL SEE YOU IN

8   A MONTH IN ANOTHER CASE.

9           THE COURT:  OH.  WELL, THANK YOU FOR THE HEADS UP.

10      ALL RIGHT.  COUNSEL, WHY DON'T I HEAR FROM PLAINTIFFS AS

11  TO YOUR THOUGHTS ON WHETHER OR NOT THE COURT SHOULD APPROVE

12  THIS.

13          MR. NASSIRI:  THANK YOU, YOUR HONOR.  IT IS AN

14  INTERESTING DISCUSSION ABOUT HOW CLASS ACTIONS HAVE CHANGED AND

15  THESE MEGA CLASS ACTIONS HAVE CHANGED THE LANDSCAPE, AND,

16  FRANKLY, CHANGED THE MECHANICS OF HOW THESE SETTLEMENTS WORK.

17      WE WORKED VERY -- THE $6 AND A HALF MILLION THAT WE'RE

18  PROPOSING FOR CY PRES HERE IS NOT ILLUSORY.

19      THE PROPOSALS, I THINK, WE TOOK MEASURES TO MAKE SURE THAT

20  THE PROPOSED RECIPIENTS, WHICH WE DID IT LIKE A GRANT PROPOSAL

21  AND WE TRIED TO IMPLEMENT BEST PRACTICES AND TRANSPARENCY, AND

22  WE HAVE OVER 100 PAGES OF DETAILED PROPOSALS FROM EACH OF THESE

23  RECIPIENTS, OR POTENTIAL RECIPIENTS AND THESE PROJECTS ARE

24  IMPRESSIVE AND SHOULD RESULT IN SUBSTANTIAL RELIEF FOR

25  CONSUMERS GOING FORWARD ON PRIVACY ISSUES.

1    YOU KNOW, IF WE WERE ABLE TO DISTRIBUTE MONEY TO THE CLASS

2    HERE, IT WOULD BE SOMETHING UNDER A DOLLAR PER CLASS MEMBER,

3    AND I DON'T KNOW WHAT THAT IS WORTH IN TODAY'S WORLD ANYWAY.

4         THE COURT:  IS IT WORTH $2 MILLION OF ATTORNEY'S

5    FEES?

6         MR. NASSIRI:  YES, YOUR HONOR, IT IS.  I MEAN, WHAT

7    WE'RE ASKING FOR HERE IS THE COMMON FUND.  WE'RE ASKING FOR A

8    NINTH CIRCUIT BENCHMARK.  IT'S UP TO THE COURT TO USE IT'S

9    DISCRETION AND JUDGMENT.

10   YOU KNOW, WITH RESPECT TO ATTORNEY'S FEES, THERE ARE NO

11   SIGNS OF COLLUSION HERE.  WE DIDN'T HAVE A CLEAR SAILING

12   AGREEMENT, AND WE LEAVE IT TO THE COURT'S DISCRETION TO

13   DETERMINE WHETHER OR NOT WE BROUGHT VALUE TO THE CLASS.

14        THE COURT:  SO LET ME -- I INTERRUPTED YOU, AND I

15   APOLOGIZE FOR THAT.  LET ME GO BACK.  YOU WERE TALKING ABOUT

16   THE CY PRES RECIPIENTS AND YOUR PROCESS, AND I DO HAVE SOME

17   QUESTIONS ABOUT THAT.

18   MY FIRST QUESTION WAS GOING TO BE WHETHER OR NOT YOU HAVE

19   CONSIDERED DIRECT PAYMENT TO THE CLASS, AND I THINK YOU JUST

20   TOUCHED ON THAT AND YOU SUGGESTED MAYBE IT WOULD BE A DOLLAR OR

21   SOMETHING LIKE THAT.

22        MR. NASSIRI:  OR LESS, YOUR HONOR.  THERE'S NO

23   EVIDENCE BEFORE THE COURT HERE THAT THE CLAIMS RATE WOULD BE

24   LOW ENOUGH TO MAKE DIRECT PAYMENTS FEASIBLE.

25        AND WHEN THINKING ABOUT THIS EX ANTE AND HOW WE WERE GOING

1    TO REACH A SETTLEMENT WITH THE DEFENDANT AND DESIGN A CLAIMS OR

2    SETTLEMENT PROCESS, THIS -- WE FOLLOWED IN THE FOOTSTEPS OF

3    SOME CASES BEFORE US, NETFLIX AND BEACON AND BUZZ AND OTHERS,

4    AND GIVEN THE TREMENDOUS SIZE OF THE CLASS HERE, IT'S JUST NOT

5    FEASIBLE UNDER ANY REASONABLE CIRCUMSTANCES TO MAKE A

6    DIRECT PAYMENT.

7            THE COURT:  OKAY.  WELL, I APPRECIATE YOUR

8    INVESTIGATION INTO THAT TOPIC.  I THINK THAT'S, PERHAPS, ONE OF

9    THE FIRST REVIEWS THAT A COURT SHOULD MAKE SAME AS FIDUCIARY

10   FOR THE CLASS AS TO WHAT IS THE BENEFIT, THE REAL BENEFIT FOR

11   THE CLASS AND CAN THEY HAVE SOME DIRECT BENEFIT.

12          AND YOU HAVE TALKED ABOUT THE SHEER NUMBERS HERE, AND WHAT

13   YOU'RE TELLING ME IS THAT YOU HAVE DONE THOROUGH INVESTIGATION

14   ON THAT ISSUE AND IN YOUR OPINION YOU FEEL LIKE IT WOULD BE

15   JUST DE MINIMUS.

16          MR. NASSIRI:  YES, YOUR HONOR.

17          THE COURT:  OKAY.  WELL, LET'S MOVE TO THE NEXT OF

18   THE CY PRES THAT YOU WERE TALKING ABOUT AS WELL.  YOU TALKED

19   ABOUT --

20          MR. NASSIRI:  YOUR HONOR, IS IT CY PRES OR IS IT

21   CYPRESS?  BECAUSE I HAVE BEEN TOLD IT'S CY PRES.

22          THE COURT:  WELL, IN THIS COURTROOM HERE I'M SAYING

23   CY PRES.

24          MR. NASSIRI:  THAT IS WHAT IT IS HERE TODAY.

25          THE COURT:  THAT'S HOW MY CIVIL PROCEDURE PROFESSOR

1     DRILLED IT INTO MY HEAD AND GOD FORBID HE SHOULD WALK IN AND

2     HEAR ME SAY SOMETHING ELSE.

3          SO LET'S TALK ABOUT THAT.  YOU DID TELL ME, YOU DID TELL

4     ME -- LET'S SEE, THAT WAS IN AUGUST, WASN'T IT?

5               MR. NASSIRI:  ALMOST A YEAR AGO.

6               THE COURT:  YEAH, YEAH.  WE ALL AGED WELL.

7               MR. NASSIRI:  THANK YOU.

8               THE COURT:  AND YOU TOLD ME BACK THEN THAT YOU WERE

9     RAISING THE BAR IN REGARDS TO CY PRES RECIPIENTS AND YOU SAID

10    I'M RAISING THE BAR, I THINK, RAISING THE BAR FOR ALL CY PRES

11    SETTLEMENTS LIKE THIS TO FOLLOW.

12         I REMEMBER THOSE WORDS, AND I ASKED STAFF TO GET THE

13    TRANSCRIPT TO SEE IF I HAD IT INCORRECTLY OR NOT.  AND YOU

14    SAID, AS YOU JUST DID, WE'RE TREATING THIS CY PRES ALLOCATION

15    LIKE A GRANT PROPOSAL OR A GRANT MAKING ORGANIZATION,

16    PROSPECTIVE GRANT.

17         AND I HAVE LOOKED AT SOME OF THE PROPOSALS AND THEY DO,

18    THEY DO SPEAK AS TO AN APPLICATION FOR A GRANT.

19         AND I GUESS MY THRESHOLD QUESTION IS WHAT WAS THE PROCESS

20    FOR -- WHAT WAS YOUR PROCESS USED TO PUBLICIZE THE GRANT

21    PROPOSALS?

22         WHAT DID YOU DO TO RAISE THAT BAR TO PUBLICIZE TO GET

23    PEOPLE TO RESPOND TO THIS GRANT PROPOSAL?

24               MR. NASSIRI:  WELL, TO CLARIFY, YOUR HONOR, THE VERY

25    FIRST STEP IN THE PROCESS WAS NOT LIKE A GRANT PROPOSAL.  WE

1    DIDN'T PUBLISH A GENERAL REQUEST FOR PROPOSAL LIKE YOU MIGHT IN

2    A GRANT PROPOSAL BECAUSE WE COULDN'T HERE, YOUR HONOR.

3         IT WAS A MATTER -- THE POTENTIAL CY PRES RECIPIENTS WERE

4    SUBJECT TO AGREEMENT BETWEEN THE PARTIES.

5         AND I BELIEVE WE BRIEFED UP AND OUR PRELIMINARY APPROVAL

6    PAPERS GENERALLY DESCRIBE THE PROCESS BY WHICH WE DECIDED ON

7    THE FINAL PROPOSED RECIPIENTS, WHICH, YOU KNOW, AT THIS POINT

8    WE'RE CALLING PROPOSED RECIPIENTS.

9         WE HAD TO GO THROUGH A PROCESS WITH THE DEFENDANTS OF

10   NARROWING DOWN POTENTIAL CY PRES RECIPIENTS.  SO THAT ASPECT OF

11   THE PROCESS WAS NOT LIKE A GRANT MAKING PROPOSAL.

12         THE COURT:  IS THAT TRANSPARENT ANYWHERE IN THE

13   PAPERS, THAT PROCESS, THAT NEGOTIATION WITH THE DEFENDANT HERE

14   IDENTIFYING THOSE?

15         MR. NASSIRI:  YES, YOUR HONOR, PROVIDED THAT SOME

16   DETAILS WERE WITHHELD BECAUSE THIS WAS IN THE CONTEXT OF A

17   CONFIDENTIAL MEDIATION, AND I BELIEVE YOUR HONOR SAID THAT YOU

18   DIDN'T WANT TO KNOW TOO MUCH ABOUT THE ACTUAL LIKE WHO WAS

19   CONSIDERED AND WHO WAS REJECTED AND THAT KIND OF THING.

20         BUT WE DID GENERALLY DESCRIBE THE NUMBER OF RECIPIENTS

21   PROPOSED OR POTENTIAL RECIPIENTS THAT WERE CONSIDERED IN ROUTE

22   TO NARROWING IT DOWN TO THE SIX AND NOW FIVE PROPOSED

23   RECIPIENTS.

24         THE COURT:  AND THESE ARE THE SAME ONES THAT YOU

25   MENTIONED IN AUGUST?

1             MR. NASSIRI:  THAT'S RIGHT, YOUR HONOR.

2             THE COURT:  SO IT BEGS THE QUESTION, WHAT HAS

3   CHANGED IN THE YEAR?  WE STAYED THE SAME WITH OUR YOUTHFUL

4   APPEARANCE, BUT WHAT HAS CHANGED AS FAR AS THE IDENTIFICATION,

5   THESE PEOPLE THAT YOU'VE -- YOU TOLD ME ABOUT THEM IN AUGUST

6   AND YOU WENT THROUGH THIS PROCESS THAT IS GOING TO RAISE THE

7   BAR FOR THIS CASE AND ALL CASES IN THE FUTURE.

8             MR. NASSIRI:  OH, I SEE, YOUR HONOR.

9             THE COURT:  AND IT'S THE SAME INDIVIDUALS.  WHAT HAS

10  CHANGED?

11            MR. NASSIRI:  THE PROCESS WAS THE PROCESS OF GETTING

12  THESE PROPOSALS TOGETHER, MAKING SURE THAT THE PROPOSALS MEET

13  THE CRITERIA SET BY THE NINTH CIRCUIT IN LANE AND JUST

14  GENERALLY CONSTITUTIONAL REQUIREMENTS FOR A CY PRES RECIPIENT

15  FOR SPENDING THE CY PRES FUNDS.

16     SO WHAT WE FOCUSSED ON WAS GETTING THESE PROPOSALS IN

17  FINAL FORM.  SO WE WORKED CAREFULLY.  AGAIN, WE DID NOT DICTATE

18  WHAT THESE PROJECTS WERE GOING TO BE THERE.  THEY ARE THE

19  PRIVACY EXPERTS.  WE'RE NOT.  THEY'RE ACADEMICS RESEARCH

20  INSTITUTIONS AND TECHNOLOGY DEVELOPERS.  BUT WHAT WE DID WAS WE

21  GUIDED THEM TO MAKE SURE THEY MET CERTAIN CRITERIA THAT WE

22  BELIEVE ARE IMPORTANT FOR A CY PRES RECIPIENT.

23           THE COURT:  AND SO HOW WERE THEY SELECTED?  I MEAN,

24  THE ELEPHANT IN THE ROOM, OF COURSE, IS THAT MANY OF THESE ARE

25  LAW SCHOOLS THAT YOU ATTENDED.

1          MR. NASSIRI:  YOUR HONOR, WE -- THERE IS A -- THERE

2    IS KIND OF A SHORT LIST OF ENTITIES, ORGANIZATIONS THAT DO THIS

3    KIND OF WORK.  LAW SCHOOLS ARE PROMINENT IN THAT LIST AS ARE

4    ORGANIZATIONS THAT ARE NOT AFFILIATED WITH LAW SCHOOLS.

5          AND WE DID -- WE CONDUCTED INDEPENDENT RESEARCH.  IT WAS

6    BASED ON OUR EXPERIENCE AND OUR KNOWLEDGE OF THE SPACE AND

7    ULTIMATELY OUT OF A LIST -- AND FORGIVE ME, YOUR HONOR, I

8    DIDN'T KNOW THIS WAS GOING TO COME UP AGAIN -- BUT I THINK WE

9    HAD 40 PROPOSED RECIPIENTS ON THE TABLE AND WE ULTIMATELY

10   NARROWED IT DOWN TO 6, AND IT WAS A MATTER OF WHAT WE COULD

11   AGREE TO, WHAT 6 WE COULD AGREE TO.

12          THE COURT:  YOU AND GOOGLE?

13          MR. NASSIRI:  THAT'S CORRECT.

14          THE COURT:  YOU TALK ABOUT THE ISSUE OF -- I DON'T

15   WANT TO USE THE WORD "COLLUSION" BUT PERHAPS CONFLICT OF

16   INTEREST WITH THE LAW SCHOOLS BEING LAW SCHOOLS THAT YOU ALL

17   GRADUATED FROM.  AND YOU POINT ME TO, I THINK IT WAS, WHAT WAS

18   IT AN EZ PAY CASE IN SAN DIEGO?

19          MR. ASCHENBRENER:  EASYSAVER, YOUR HONOR.

20          THE COURT:  YES, EASYSAVER, THANK YOU.  AND WHERE

21   THE GOOD JUDGE THERE SUGGESTED THE RECIPIENTS, AND THERE WASN'T

22   ANYTHING UNTOWARD ABOUT THAT, BUT PARTICULARLY WHERE THE

23   RECIPIENTS DIDN'T RECEIVE ANY LESS THAN THE GREATER SHARE.

24          AND I LOOK AT YOUR PLEADING, DOCUMENT NUMBER 75, PAGE 5,

25   YOUR PAGE 5, PAGE 9 ON THE ECF CALENDAR, AND YOU BREAK DOWN THE

```
1    PERCENTAGES, DON'T YOU, ABOUT THE RECIPIENTS?

2         AND YOU HAVE CARNEGIE MELLON AT 21 PERCENT; AND THE WORLD

3    PRIVACY FORUM AT 17 PERCENT; AND THEN THE ALUMNI RECIPIENTS, IF

4    YOU WILL, STANFORD, CENTER FOR INTERNET AND SOCIETY,

5    16 PERCENT; CHICAGO KENT, COLLEGE OF LAW CENTER FOR INFORMATION

6    SOCIETY AND POLICY, 16 PERCENT; AARP, 15; AND THE BERKMAN

7    CENTER, 15 PERCENT.

8         SO YOU'RE ABOUT FOUR POINTS, FIVE POINTS BELOW.

9         IT LOOKS LIKE IT WAS INTENTIONALLY CREATED --

10             MR. NASSIRI:  I CAN EXPLAIN HOW.

11             THE COURT:  -- TO STAY UNDER AND STAY WITHIN THE EZ

12   CASE IN SAN DIEGO.

13        I JUST TELL YOU THAT IT GIVES THAT BLUSH LIKE, YOU KNOW, I

14   TELL YOU, I REMEMBER A PHRASE, AND FORGIVE ME AND MAYBE I

15   SHOULDN'T USE THE PHRASE, BUT YOU REMEMBER THE OLD BASKETBALL

16   SCANDALS ABOUT POINT SHAVING.

17             MR. NASSIRI:  YES.

18             THE COURT:  IT LOOKS LIKE, WAS THIS -- IT HAD TO BE

19   CALCULATED TO KEEP THOSE PERCENTAGES UNDER THE MARK LIKE THE

20   GOOD JUDGE IN SAN DIEGO DID.

21             MR. NASSIRI:  IT WAS NOT, YOUR HONOR.

22             THE COURT:  OKAY.

23             MR. NASSIRI:  I'LL TELL YOU EXACTLY HOW WE ARRIVED,

24   AND WE THOUGHT ABOUT DIFFERENT WAYS TO -- DIFFERENT METHODS FOR

25   PROPOSING THE ALLOCATION.
```

1       IN THE END WHAT WE DID WAS WE ASKED THESE RECIPIENTS TO

2  GIVE US A BUDGET AND WE -- THESE NUMBERS ARE EXACTLY PRO RATA

3  AGAINST THE BUDGETS THAT THEY REQUESTED WITHOUT ANY INPUT FROM

4  US.

5       SO CARNEGIE MELLON IS GETTING THE MOST BECAUSE THEY ASKED

6  FOR THE MOST, AND HARVARD IS GETTING THE LEAST BECAUSE THEY

7  ASKED FOR THE LEAST.  IT WAS THAT SIMPLE.  IT WAS VERY

8  OBJECTIVE.

9       ALL OF THESE PROPOSALS WE'RE IMPRESSED WITH, AND WE

10  BELIEVE THAT THAT WAS THE MOST EFFICIENT, EQUITABLE WAY TO

11  ALLOCATE THE MONEY.

12            THE COURT:  SO YOU TOLD THESE PEOPLE THAT YOU HAD A

13  CERTAIN POOL OF MONEY AVAILABLE?

14            MR. NASSIRI:  CORRECT.

15            THE COURT:  AND CARNEGIE MELLON SAID WE WOULD LIKE

16  $1,249,656.34?

17            MR. NASSIRI:  TO THE PENNY.

18            THE COURT:  THE $0.34 IS IMPORTANT TO US.  CHICAGO

19  KENT COLLEGE SAID WE NEED 949,875 AND NO CENTS; AND,

20       BERKMAN SAID WE NEED $935,000; AND,

21       STANFORD SAID WE WOULD LIKE $971,400; AND,

22       THE WORLD PRIVACY FORUM SAID WE WOULD LIKE $1,020,000.

23            MR. NASSIRI:  CORRECT.

24            THE COURT:  IN THOSE FIGURES?

25            MR. NASSIRI:  EXACTLY THOSE FIGURES.  WE ADDED THEM

1    UP, AND THESE ARE THE PROPOSED ALLOCATIONS BASED ON THE

2    REQUESTED AMOUNTS, WHICH ALSO THE OTHER REASON WE DID IT THIS

3    WAY IS BECAUSE MORE OR LESS MONEY MAY BE AVAILABLE AND IT WILL

4    SCALE UP EASILY AS PERCENTAGE POINTS.

5        BUT THIS IS DIRECTLY DERIVED FROM WHAT THEY REQUESTED IN

6    THEIR BUDGETS.

7            THE COURT:  AND, AGAIN, GETTING BACK TO MY

8    TRANSPARENCY QUESTION, WAS THE INFORMATION, THE INVITATION TO

9    THE GRANT, WAS THAT SOMETHING THAT YOU WORKED OUT WITH GOOGLE

10   AS WELL?

11           MR. NASSIRI:  WE DID NOT, YOUR HONOR.  AND I BELIEVE

12   I ATTACHED EITHER TO OUR SUPPLEMENTAL DECLARATION IN SUPPORT OF

13   THE PRELIMINARY APPROVAL OR THE PRELIMINARY APPROVAL MOTION

14   E-MAILS THAT WE SENT TO THESE POTENTIAL RECIPIENTS LAYING OUT

15   WHAT THE REQUIREMENTS WERE FOR BEING CONSIDERED.

16           THE COURT:  YOU KNOW, I THINK I TALKED YOU AND I

17   USED THE WORD PERHAPS TOO COLLOQUIAL, BUT I THINK I USED THE

18   PHRASE "USUAL SUSPECTS."

19           MR. NASSIRI:  YES, YOUR HONOR.

20           THE COURT:  AND I DON'T MEAN AND I DID NOT MEAN AT

21   THAT POINT AND AT THAT TIME, AND I DON'T TODAY MEAN TO

22   DISPARAGE AT ALL THE GOOD WORK THAT ANY OF THESE IDENTIFIED

23   CY PRES RECIPIENTS DO.

24       I THINK, AND I HOPE YOU APPRECIATE THE SPIRIT OF MY

25   COMMENT WAS, BECAUSE THESE ISSUES WERE SO IMPORTANT, AS YOU

1    HAVE TOLD ME, SHOULD WE CAST A WIDER NET TO CAPTURE, PERHAPS,

2    ADDITIONAL RESEARCH FROM OTHER INDIVIDUALS?

3         AND THAT'S WHAT -- WHEN YOU TALKED TO ME ABOUT SETTING THE

4    BAR HIGHER FOR THIS CASE AND OTHERS TO FOLLOW, I'LL BE VERY

5    CANDID WITH YOU, I'LL BE VERY CANDID, THAT'S WHAT I THOUGHT YOU

6    WERE GOING TO DO.

7         I'LL TELL YOU CANDIDLY AGAIN THAT I'M DISAPPOINTED THAT

8    THE USUAL SUSPECTS ARE STILL USUAL.

9         YOU POINT OUT, I THINK, ON PAGE 7 OF DOCUMENT 75, YOUR

10   PAGE 7, IN FOOTNOTE 10 YOU TELL ME THAT, IN FACT, BERKMAN

11   CENTER HAS BEEN RECEIVED BEFORE SO YOU SHOULD APPROVE IT AGAIN.

12   I SUPPOSE THAT'S WHY YOU PUT THAT FOOTNOTE THERE.

13        YOU REMIND ME THAT IN GOOGLE BUZZ PRIVACY LITIGATION, A

14   $500,000 CY PRES DONATION OR CY PRES ALLOCATION WAS MADE THERE,

15   WHICH I THINK, IF YOU'LL PARDON ME, SUPPORTS MY VIEW OF USUAL

16   SUSPECTS.

17        AND I THINK I TRIED IN SOME CUMBERSOME WAY AT THAT TIME TO

18   SAY, YOU KNOW, THEY'RE DOING GOOD WORK AND I KNOW THIS IS A

19   MOVING TARGET AGAIN, AND IT'S A FLUID ISSUE, BUT IF THEIR JOB

20   IS TO GET NOTICE OUT AND TO INFORM PEOPLE ABOUT HOW BEST TO

21   PROTECT, EITHER THEIR LITERATURE IS NOT BEING READ OR IT'S

22   BEING IGNORED IN SOME FASHION.

23        AND, AGAIN, I'M NOT BEING CRITICAL OF THEIR GOOD WORKS.

24   PERHAPS IT'S JUST THE STATE OF THE AFFAIRS IN THIS REGARD AND

25   THERE IS A CERTAIN APATHY THAT EXISTS IN THE PUBLIC REGARDING

```
1    THESE ISSUES, I DON'T KNOW, WHICH THEN GETS TO THE VALUE OF THE

2    SETTLEMENT, DOESN'T IT?

3              MR. NASSIRI:  YOU KNOW WHAT IS INTERESTING, YOUR

4    HONOR, IS THAT IN LANE IN THE DISSENT -- YOU KNOW, THERE'S NO

5    CLEAR GUIDANCE FROM THE COURTS ON THIS ISSUE, BUT I WOULD SAY

6    THAT THE CONSENSUS SEEMS TO BE THAT THE INSTITUTIONS RECEIVING

7    THE MONEY SHOULD HAVE A TRACK RECORD.  AND, YOU KNOW, THE

8    DISSENT IN LANE HIGHLIGHTED THIS VERY CLEARLY.

9        WE DO HAVE A RELATIVE NEWCOMER IN CHICAGO KENT, AND AARP

10   IS NOT NECESSARILY A USUAL SUSPECT IN THIS KIND OF A CASE, BUT

11   THE OTHER PROPOSED RECIPIENTS, THEY DO FANTASTIC WORK.

12             THE COURT:  OH, I AM NOT -- AND I AGREE.  I AGREE.

13   I ABSOLUTELY AGREE.

14       AND IT'S NOT FOR ME TO TELL YOU I WANT YOU TO IDENTIFY

15   THIS PERSON OR THAT PERSON.  I'M NOT GOING TO DO THAT.

16       BUT I GUESS I THINK BETWEEN THE PACIFIC OCEAN AND THE

17   ATLANTIC, YOU KNOW, THESE INDIVIDUALS ARE IDENTIFIED, AND AS

18   YOU POINT OUT, BERKMAN HAS RECEIVED A LOT.  I JUST SCRATCH MY

19   HEAD AND THINK, AREN'T THERE OTHER -- AREN'T THERE OTHER

20   INSTITUTIONS IN THE BAY AREA?  ISN'T THERE A LAW SCHOOL ON THE

21   OTHER SIDE ON THE EAST BAY SOMEWHERE?  ISN'T THERE A LAW SCHOOL

22   ABOUT TEN MILES FROM HERE?  ISN'T THERE A LAW SCHOOL ABOUT

23   394 MILES IN SOUTHERN CALIFORNIA?  AND THERE'S A LOT OF THEM

24   DOWN THERE.  THERE'S ONE ON THE COAST.

25             SO I SCRATCH MY HEAD A LITTLE BIT, YOU KNOW?  THERE'S
```

```
 1        AROUND THE GREAT LAKES, I THINK THERE'S A COUPLE OF LAW SCHOOLS

 2        THERE THAT ARE ACCREDITED.

 3             YOUR COLLEAGUE IS EAGER TO SPEAK.

 4                  MR. NASSIRI:  HE IS EAGER TO SPEAK, AND I'M JUST

 5        HOGGING THE PODIUM.

 6                  MR. ASCHENBRENER:  YOUR HONOR, THERE ARE A COUPLE OF

 7        POINTS TO BE MADE THERE.  ONE, MR. NASSIRI IS RIGHT THAT THE

 8        GUIDANCE FROM CASE LAW SUGGESTS THAT IT IS GOOD THAT RECIPIENTS

 9        HAVE A TRACK RECORD.  AND IT'S A BIT OF A DOUBLE EDGE SWORD.

10                  THE COURT:  IT IS.

11                  MR. ASCHENBRENER:  TO PUT FORWARD POTENTIAL

12        RECIPIENTS WITHOUT TRACK RECORDS THEN WE WOULD POTENTIALLY BE

13        ATTACKED ON THAT BASIS.

14             AND IN TERMS OF GEOGRAPHY, IT'S A GOOD POINT YOUR HONOR

15        MAKES BECAUSE SOME OF THE GUIDANCE I BELIEVE IN EASYSAVER

16        SUGGESTS THAT IT'S A PROBLEM WHERE THE RECIPIENTS ARE NOT

17        GEOGRAPHICALLY DIVERSE AND HERE AARP AND THE WORLD PRIVACY

18        FORUM ARE NATIONAL IN SCOPE.  WE HAVE THE CENTER FOR INTERNET

19        AND SOCIETY AT STANFORD ON THE WEST COAST.  WE HAVE THE CENTER

20        FOR INTERNET -- OR INFORMATION SOCIETY AND POLICY IN CHICAGO.

21        WE HAVE CARNEGIE MELLON IN PENNSYLVANIA.  WE HAVE BERKMAN

22        CENTER IN MASSACHUSETTS.

23                  THE COURT:  YOU DIDN'T SAY PITTSBURGH.  DO YOU HAVE

24        SOMETHING AGAINST PITTSBURGH.

25                  MR. ASCHENBRENER:  I HAVE NOTHING AGAINST
```

1      PITTSBURGH.  I DO NOT HAVE EXPERIENCE IN PITTSBURGH ONE WAY OR

2      THE OTHER.

3          SO WE HAVE GEOGRAPHIC DIVERSITY THERE AND I BELIEVE WE

4      ALSO HAVE DEMOGRAPHIC DIVERSITY, WHICH IS IMPORTANT, ESPECIALLY

5      WITH THE INCLUSION OF AARP.  AND THAT LEADS REALLY TO WHAT

6      MR. NASSIRI WAS SPEAKING TO A YEAR AGO BEFORE THE COURT IN

7      TERMS OF WHAT WE FEEL IS RAISING THE BAR AND UNDERSTANDING THAT

8      THERE IS SOME MISUNDERSTANDING THERE AS TO WHAT WE MEANT.

9          BUT WHAT IS DIFFERENT HERE, WHAT HAS HAPPENED IN THE LAST

10     YEAR, TO ANSWER THAT QUESTION, YOUR HONOR, IS THAT THE

11     PROPOSALS WERE MADE.  AND INSTEAD WHAT WE HAVE SEEN IN PRIOR

12     CLASS ACTION SETTLEMENTS OF THIS NATURE ARE, WELL, HERE ARE

13     RECIPIENTS THAT GENERALLY DO THIS KIND OF WORK AND THEY WILL

14     USE IT FOR THIS PURPOSE, BUT HERE THE PUBLIC -- THERE'S

15     COMPLETE TRANSPARENCY.  THE CLASS, THE COURT, AND THE PUBLIC

16     GETS TO SEE EXACTLY HOW THE DOLLARS WILL BE SPENT AND WHAT THE

17     DELIVERABLES WILL BE.

18             THE COURT:  I APPRECIATE THE TRANSPARENCY.  AND IN

19     THAT REGARD YOU HAVE THAT BEFORE US.

20         I GUESS THE LACK OF TRANSPARENCY IS THE SELECTION PROCESS.

21             MR. ASCHENBRENER:  AND THAT WAS A NEGOTIATED POINT

22     IN THE SETTLEMENT PROCESS.

23             THE COURT:  I APPRECIATE THAT.  AND THAT RAISES, YOU

24     KNOW, CANDIDLY, IT RAISES A RED FLAG, AND I WON'T SAY A BANNER,

25     BUT I WILL SAY A FLAG, TO ME IN THAT IT SPEAKS, PERHAPS, TO

```
 1        SOMETHING THAT MR. FRANK TALKED ABOUT.  IT JUST -- WHEN I
 2        LOOKED AT THAT, AND I'M BEING VERY CANDID WITH YOU, AND I'M NOT
 3        BEING CRITICAL, YOU UNDERSTAND THAT, I'M BEING CANDID WITH YOU,
 4        WHEN I LOOK AT THE LACK OF TRANSPARENCY, I UNDERSTAND THIS WAS
 5        A MEDIATED PROCESS AND THAT'S PROTECTED AND THAT'S SACROSANCT
 6        AND WE CAN'T GET INTO THAT, BUT YOU ADD THAT FACT THAT THAT'S
 7        NOT PUBLIC INFORMATION.  AND THEN I LOOK AT IT AND I SAY, OKAY,
 8        AND THE PUBLIC SEES THAT ALL OF THE AFFILIATES -- NOT ALL,
 9        PARDON ME -- BUT A NUMBER OF THE AFFILIATES ARE ALUM, NOTHING
10        WRONG WITH THAT AS EASYSAVER TELLS US AND OTHER CASES TELL US
11        WHEN THE AMOUNTS ARE NOT GREATER THAN ANYONE ELSE.  AND I
12        LOOKED AT THE PERCENTAGES HERE AND THEY JUST, YOU KNOW, I'M
13        TRYING TO SQUEEZE A SIZE 9 AND A HALF INTO A SIZE 9 SHOE AND IT
14        FITS COMFORTABLY, AND I CAN DO THAT.
15              IT JUST LOOKS, HONESTLY, IT JUST GIVES ME -- IT DOESN'T
16        PASS THE SMELL TEST I GUESS IS THE EASIEST WAY FOR ME TO SAY
17        THAT.
18                MR. ASCHENBRENER:  YOUR HONOR, THE COURT AND THE
19        NINTH CIRCUIT IN LANE ADDRESSED MUCH OF THAT VERY CONCERN THAT
20        THE COURT HAS TODAY.
21              AND WHAT THE NINTH CIRCUIT SAID IN REGARD TO THAT AND THE
22        SPECIFIC CONTEXT IN LANE VERSUS FACEBOOK TO THIS POINT WAS THAT
23        WHERE THE RECIPIENTS OF FUNDS IN THAT CASE, WHERE ACTUALLY THE
24        BOARD WOULD BE HELD, POSITIONS ON THE BOARD WOULD BE HELD BY
25        MEMBERS OF FACEBOOK.
```

1          THE COURT:  SURE.

2          MR. ASCHENBRENER:  AND, OF COURSE, THAT SETTLEMENT

3    WAS AFFIRMED BY THE NINTH CIRCUIT AND REHEARING EN BANC WAS

4    DENIED AND CERT PETITION WAS DENIED.

5          BUT WHAT THE COURT SAID WAS THAT IT'S OKAY IF WHEN A

6    SETTLEMENT IS THE PRODUCT OF NEGOTIATION, AS IT ALWAYS IS, OF

7    COURSE IT'S GOING TO SERVE THE PARTY'S PROSPECTIVE INTEREST TO

8    SOME DEGREE OR ANOTHER.

9          AND SO EVEN THOUGH MEMBERS OF FACEBOOK WOULD BE ON THE

10   BOARD OF THAT, THAT'S ACCEPTABLE, THAT IS FAIR, ADEQUATE, AND

11   REASONABLE BECAUSE THE SETTLEMENT NECESSARILY IS GOING TO SERVE

12   THE INTEREST OF THE PARTIES.

13         AND SO HERE WE HAVE -- WE'RE AT LEAST ONE STEP, AND I

14   BELIEVE MULTIPLE STEPS REMOVED FROM THAT FACTUAL SCENARIO.

15   THERE ARE NO MEMBERS OF GOOGLE ON ANY BOARDS AND COUNSEL IS NOT

16   ON ANY BOARDS IN ANY OF THIS PROPOSED RECIPIENTS.

17         THE ALMA MATER INSTITUTIONS -- WHAT IS IMPORTANT HERE ON

18   MULTIPLE LEVELS IS THAT THERE ARE NO AFFILIATIONS WITH THE

19   ACTUAL CENTERS RECEIVING MONEY.

20         AND MR. FRANK HAS OBJECTED WITHIN THE INSTITUTION'S

21   HOUSING CENTERS, THE BERKMAN CENTER, FOR EXAMPLE, OR THE CENTER

22   FOR INFORMATION SOCIETY AND POLICY AT CHICAGO KENT.

23         AS I STATED IN MY DECLARATION, I HAVE NO AFFILIATION WITH

24   THAT.

25         MR. FRANK HAS ATTEMPTED TO COUCH THIS THAT THIS IS JUST AN

1    ACCOUNTING CHANGE FOR GOOGLE.  ONE, I TAKE ISSUE WITH THAT.  I

2    THINK THAT'S INCORRECT.  EVEN IF TRUE, AND IT'S NOT, BUT EVEN

3    IF TRUE, UNDER THE GUIDANCE IN LANE, THAT'S PROBABLY NOT A

4    PROBLEM.

5         BUT FORTUNATELY WE DO NOT HAVE THAT ISSUE HERE TODAY.

6    THESE ARE SPECIFIC PROPOSALS.  THE MONEY WILL BE USED FOR

7    SPECIFIC PURPOSES, WHICH MEANS THAT IT'S NOT JUST AN ACCOUNTING

8    CHANGE.

9              THE COURT:  I APPRECIATE THAT.

10             MR. NASSIRI:  YOUR HONOR, MAY I SAY ONE THING?

11             THE COURT:  I GUESS I'M RETURNING TO, YOU KNOW, MY

12   EXPECTATIONS RAISED AS WAS THE BAR PROMISED TO BE RAISED AND

13   THAT'S WHERE I HAVE SOME DISAPPOINTMENT, I GUESS, WHERE I LOOK

14   AT IT AS THE SONG WITH THE PHRASE GOING "THE SAME AS IT EVER

15   WAS."

16             MR. NASSIRI:  WELL, I BELIEVE THE TRANSPARENCY THAT

17   YOU HAVE ALREADY ACKNOWLEDGED, AND I'M HAPPY TO NOTE THAT YOU

18   HAVE ACKNOWLEDGED IT, I BELIEVE THAT RAISES THE BAR IN A

19   SUBSTANTIAL WAY.

20        BUT I WANT TO JUST SAY ONE MORE THING AT THE RISK OF

21   SAYING TOO MUCH, YOUR HONOR.  TO SOME DEGREE I HAVE TO DRAW ON

22   MY EXPERIENCE IN ORDER TO PROPOSE CY PRES RECIPIENTS.

23        AND I SAW WHAT THE BERKMAN CENTER DID FIRSTHAND, AND I

24   KNEW SOME OF THE PEOPLE WHO FOUNDED IT, AND CHARLIE NESSON WAS

25   MY TORTS PROFESSOR AND JOHN ZITTRAIN TAUGHT MY FIRST INTERNET

1    AND SOCIETY CLASSES AT 2L.

2         SO I CAN'T -- I MEAN, I THINK OF THEM AS LEADERS, SMART

3    PEOPLE WHO DO GOOD WORK AND CARE AND WHO HAVE INTERESTS THAT

4    ARE ALIGNED WITH WHAT IS UNDERPINNING THIS LAWSUIT.

5         AND THE FACT THAT I WENT THERE SHOULDN'T DISQUALIFY THEM

6    FROM MY MIND AS SOMEONE WHO COULD DO GREAT GOOD WITH THE MONEY

7    HERE.

8         SO IT'S NOT REALLY SURPRISING THAT I MIGHT THINK OF MY

9    ALMA MATER AND THE WORK THEY DO THERE AT THE BERKMAN CENTER.

10   AND JUST TO CLARIFY ON THE RECORD, I DON'T HAVE ANY AFFILIATION

11   AND I HAVE NEVER HAD ANY AFFILIATION WITH BERKMAN CENTER OR

12   WITH HARVARD SINCE LEAVING.  I SIMPLY GOT MY LAW DEGREE THERE,

13   AND THAT'S SIMPLY THE END OF IT.

14             MR. ASCHENBRENER:  AND, YOUR HONOR, TO BRING IT BACK

15   TO YOUR CENTRAL CONCERN, THE APPEARANCE OF THIS AND WHETHER THE

16   BAR WAS RAISED, WE CERTAINLY THINK IT WAS, BUT REGARDLESS, THE

17   STANDARD, OF COURSE, FOR FINAL APPROVAL IS WHETHER THE

18   SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE.  IT'S NOT WHETHER

19   THE PARTIES OR THE PLAINTIFFS RAISE THE BAR.

20        SO WHETHER WE DID OR DID NOT IS NOT THE STANDARD FOR

21   APPROVAL.  THE NINTH CIRCUIT HAS MADE CLEAR THAT THE

22   STANDARD --

23             THE COURT:  YOU'RE TELLING ME EVERYTHING I HAVE

24   TALKED ABOUT THIS MORNING DOESN'T MATTER?

25             MR. ASCHENBRENER:  NO, YOUR HONOR, I DON'T THINK

1    THAT'S TRUE.

2              THE COURT:  THAT'S WHAT I HEAR YOU SAYING.  JUDGE, I

3    APPRECIATE YOUR CONCERNS, YOU HAVE RAISED THEM, AND IT'S GOOD,

4    AND IT'S A NICE CONVERSATION FOR A FRIDAY BEFORE A THREE-DAY

5    WEEKEND, BUT IT DOESN'T MATTER, JUDGE, BECAUSE THE COURT SAYS

6    IF IT'S FAIR, ADEQUATE, AND REASONABLE, APPROVE IT AND ALL OF

7    THESE OTHER THINGS ARE JUST INCIDENTAL.

8              MR. ASCHENBRENER:  NO, YOUR HONOR, THAT'S NOT WHAT

9    I'M TRYING TO SUGGEST.  AND I APOLOGIZE IF THAT IS --

10             THE COURT:  NO, NO, NO.  I SAY THAT AND I HAVE SAID

11   THAT ONLY BECAUSE I WANT YOU TO KNOW THAT THIS IS VERY

12   IMPORTANT TO ME.

13             MR. ASCHENBRENER:  UH-HUH.

14             THE COURT:  AND I'M STRUGGLING WITH THIS BECAUSE ALL

15   OF THE THINGS I MENTIONED EARLIER, I THINK THEY'RE A PROBLEM.

16         AND I APPRECIATE YOUR HELPING ME OUT THROUGH THIS PROBLEM,

17   I DO.  I DO HAVE SOME PROBLEMS WITH THIS AND ALL OF THESE

18   LITTLE, THESE LITTLE ISSUES TO ME CREATE A LARGER ISSUE THAT

19   CAUSE ME SOME CONCERN, NOTWITHSTANDING IS THIS SETTLEMENT FAIR,

20   ADEQUATE, AND REASONABLE?  IT MAY BE, IT MAY VERY WELL BE, BUT

21   THE MECHANISMS, I THINK, ARE PROBLEMATIC, AND I AM HAVING SOME

22   PROBLEM WITH THAT.

23         AND, AGAIN, IT'S NOT BECAUSE, JUST BECAUSE -- I

24   APPRECIATE, MR. NASSIRI, YOU HAVE NO FURTHER AFFILIATION.  I'M

25   SURE HARVARD IS VERY DISAPPOINTED THEY'RE NOT RECEIVING ALUMNI

1    CHECKS FROM YOU, AND THAT'S BETWEEN YOU AND THEM.

2         BUT THESE TYPE OF CY PRES RECIPIENTS, THEY SHOULDN'T SERVE

3    AS A SUBSTITUTE, SHOULD THEY, FOR ALUMNI CHECKS?  AND THEY

4    SHOULDN'T SERVE AS A SUBSTITUTE FOR, OH, THIS IS ONE OF OUR

5    GRADS AND LOOK WHAT THEY'RE DOING IN THEIR LITIGATION, THEY'RE

6    DIRECTING CY PRES TO US.  YOU SHOULD BE FREE FROM THAT.

7              MR. NASSIRI:  ABSOLUTELY, YOUR HONOR.

8              THE COURT:  YOU SHOULD NOT -- I DON'T WANT TO PUT

9    EITHER OF YOU IN A SITUATION WHERE YOU'RE SUBJECT TO PERSONAL

10   CRITICISM FOR DIRECTING FUNDS TO YOUR ALMA MATERS IN SOME

11   UNTOWARD WAY.

12        SO IN ONE RESPECT I ALSO WANT TO PROTECT YOU

13   PROPHYLACTICALLY IN SOME TYPE OF WAY AND MEASURE TO MAKE SURE

14   THAT YOU ARE FREE FROM THAT TYPE OF CRITICISM.  AND I DON'T

15   WANT TO ELIMINATE YOUR PHILANTHROPIC IDEALS WHEN YOU DISCUSS

16   CY PRES.  THAT'S VERY IMPORTANT.

17        AGAIN, GETTING BACK TO THE OTHER QUESTION, I'D LIKE TO, IT

18   JUST SEEMS TO ME THAT A WIDER, A BROADER, A LARGER NET CAN BE

19   CAST TO CAPTURE PEOPLE WHO ARE DOING ADDITIONAL WORK.

20        YOU KNOW, IF YOU SAY, WELL, GEE, THESE PEOPLE ARE DOING

21   ALL OF THE WORK AND WE NEED TO HAVE A TRACK RECORD OF PEOPLE,

22   WELL, YOU KNOW WHAT THE SOCIAL IMPLICATIONS OF THAT ARE?

23              MR. NASSIRI:  YES.

24              THE COURT:  THAT'S WHY WE HAVEN'T HAD WOMEN BE

25   LAWYERS FOR THE LONG TIME BECAUSE, YOU KNOW, WE JUST DON'T

1    ALLOW THEM TO COME IN BECAUSE WE NEVER LOOKED AT THEM BEFORE

2    AND SO WHY SHOULD WE LET WOMEN PRACTICE LAW NOW.  YOU

3    UNDERSTAND THAT.  IT'S NOT IN THIS CASE.

4        BUT, AGAIN, I'M TALKING ABOUT IN A SOCIAL -- IN A GREATER

5    MEASURE.  THERE HAS TO BE A FIRST.

6            MR. NASSIRI:  I AGREE, YOUR HONOR.  THIS IS A VERY

7    INTERESTING ISSUE, AND THERE'S VERY LITTLE GUIDANCE.

8            THE COURT:  PERHAPS, WE'LL CREATE IT.  HERE'S A

9    WONDERFUL OPPORTUNITY FOR US TO GIVE GUIDANCE, AND I APPRECIATE

10   THE INVITATION.

11           MR. NASSIRI:  IT ALWAYS IS, YOUR HONOR, BUT WE DID

12   THE BEST WE COULD.

13           THE COURT:  NO, NO.  AND I'M NOT -- AGAIN, THIS IS

14   NOT CRITICISM, GENTLEMEN.

15           MR. NASSIRI:  I UNDERSTAND.

16           THE COURT:  IT'S AN EFFORT, IT'S AN EFFORT AND AN

17   INVITATION TO DO BETTER, I SUPPOSE.

18           MR. NASSIRI:  YES, YOUR HONOR.  YOU KNOW, I THINK AT

19   THE HEART OF THIS IN TERMS OF CY PRES'S PROPOSED RECIPIENTS,

20   THIS IS A SETTLEMENT AND THERE HAD TO BE SOME AGREEMENT SO WE

21   HAD TO NEGOTIATE THIS.

22        AND SO THAT DOES -- THAT'S A VERY REAL CONSTRAINT.

23           THE COURT:  SURE.

24           MR. NASSIRI:  AND I DON'T KNOW HOW WE GET AROUND

25   THAT EVEN WITH DIRECTION FROM THE COURT.

1          THE COURT:  I HOPE OUR CONVERSATION IS GOING TO

2     ASSIST YOU.  YOU HAVE BRILLIANT LAWYERS SITTING AT THE TABLE

3     OVER THERE, AND I KNOW THAT THEY'RE LISTENING TO THIS, AND

4     THEY'RE NOT HAVING TO STAND AND LISTEN TO IT.  THEY HAVE THE

5     PLEASURE OF BEING SEATED BEHIND YOUR BACKS AND LISTENING TO IT.

6          THEY'RE NOT GRINNING, AND THEY'RE NOT SMILING.  THEY'RE

7     TAKING NOTES AND ABSORBING THIS, I THINK.

8          WELL, LET ME MOVE TO ANOTHER ISSUE, IF I MAY, AND WE MAY

9     COME BACK TO THE CY PRES, BUT I THINK IT'S APPROPRIATE TO MOVE

10    TO THE NOTICE ISSUE.  AND I KNOW YOU WERE PRESENT IN COURT WHEN

11    I WAS DISCUSSING NOTICE WITH THE OTHER CASE EARLIER THIS

12    MORNING.  AND I TALKED ABOUT THE IMPRIMATUR OF A GOVERNMENT

13    SEAL OR SOMETHING LIKE THAT.  I THINK THAT APPEARS IN THIS?

14    DOES IT?  DO YOU HAVE SOMETHING LIKE THAT HERE?

15          MR. NASSIRI:  I BELIEVE IT'S THE SEAL BEHIND YOU,

16    YOUR HONOR.

17          THE COURT:  RIGHT, RIGHT.  NOT QUITE AS ELEGANT AND

18    MAJESTIC, THOUGH, ON YOUR NOTICE.  IT'S ONE DIMENSIONAL, OF

19    COURSE.  AND I LOOKED AT THAT AND I THOUGHT, THIS IS WHAT

20    RAISED THE QUESTION, AND, PERHAPS, I'M SEARCHING FOR NITS TO

21    PICK, BUT I THOUGHT DOES THIS APPEAR LIKE SOMETHING THAT, YOU

22    KNOW, LIKE THE E-MAIL FROM UNCLE GEORGE IN LONDON WHO LOST HIS

23    WALLET THAT WOULD GET IGNORED?

24          IT JUST, TO ME, IT LOOKED LIKE ONE OF THOSE, CANDIDLY, AND

25    THEN THAT CAUSED ME TO THINK ABOUT THE, AS YOU POINT OUT IN

1    YOUR PLEADINGS, THE OBJECTIONS WERE -- HOW MANY WERE THERE?

2    THERE WERE FOUR?  WHAT WERE THERE?

3              MR. NASSIRI:  THERE WERE 4 WITH 13 OPT-OUTS.

4              THE COURT:  RIGHT.  AND IN REGARDS TO THE CLASS, AND

5    YOU POINTED OUT, JUDGE, THIS MUST MEAN APPROVAL BECAUSE WE HAD

6    SO LITTLE, LITTLE NEGATIVE RESPONSE, IF YOU WILL, ADVERSE

7    RESPONSE TO THE SETTLEMENT, AND I APPRECIATE THAT THAT'S AN

8    OBSERVATION THAT COULD BE MADE.

9        THE OTHER SIDE OF THAT COIN IS THAT MAYBE THE NOTICE WAS

10   BAD AND PEOPLE DIDN'T GET IT, AND SO THEY DIDN'T KNOW TO

11   RESPOND?  MAYBE IT WAS THE UNCLE IN LONDON WITH THE LOST WALLET

12   AND THEY, YOU KNOW, CLICKED THE DELETE BUTTON BECAUSE IT WAS

13   SOMETHING THAT WAS NOT REAL TO THEM.

14             MR. NASSIRI:  ONE OF THE BENEFITS, YOUR HONOR, OF

15   TECHNOLOGY AND --

16             THE COURT:  IS IT BRINGS US THESE WONDERFUL CLASS

17   ACTION LAWSUITS?

18             MR. NASSIRI:  WELL, NO, NO, YOUR HONOR.  IT'S THAT A

19   NOTICE PROGRAM LIKE THE ONE WE IMPLEMENTED IS MEASURABLE.  AND

20   THIS WAS A VERY SUCCESSFUL NOTICE PROGRAM.  IT WOULD -- NONE OF

21   THIS COULD HAVE BEEN TREATED AS SPAM, AND WE CAN MEASURE THE

22   RESPONSE FROM THE CLASS MEMBER.

23       I BELIEVE WE HAD OVER 200 MILLION IMPRESSIONS AND WE --

24   RICHARD SIMMONS IS HERE, WHO WAS LEADING UP THE EFFORT ON

25   BEHALF OF THE SETTLEMENT ADMINISTRATOR IS HERE, AND HE IS

```
 1        AVAILABLE TO ANSWER DETAILED QUESTIONS IF YOUR HONOR WOULD
 2        LIKE.  BUT BASED ON THE MEASUREMENTS THAT HE TOOK, WE REACHED
 3        OVER 70 PERCENT OF THE CLASS WITH THIS NOTICE.
 4            NOW, I DON'T THINK THE MEASUREMENTS COULD TELL US EXACTLY
 5        WHAT THEY THOUGHT OF THE NOTICE, BUT I THINK WE HAD A HIGHLY
 6        EFFECTIVE SUCCESSFUL NOTICE CAMPAIGN.
 7                THE COURT:  YOU POINTED OUT THE NETFLIX CASE AS THE
 8        SIMILAR SIZE AND SIMILAR CASE, AND I NOTE IN THAT CASE THERE
 9        WERE, PERHAPS PROPORTIONATELY MORE, HUNDREDS OF RESPONSES.  I
10        MEAN, THEY GOT MORE RESPONSES IN THAT CASE.
11            AND DID YOU LOOK AT THEIR NOTICE AND COPY OF THEIR NOTICE?
12        AND I'M JUST CURIOUS --
13                MR. NASSIRI:  WE LOOKED AT THAT CASE CAREFULLY, YOUR
14        HONOR, ESPECIALLY SINCE IT CAME OUT OF YOUR COURTROOM, AND I
15        BELIEVE WE DID TAKE SOME LESSONS FROM IT, BUT THIS IS A
16        DIFFERENT CASE WITH A DIFFERENT CLASS AND WHY WE HIRED
17        MR. SIMMONS IS BECAUSE HE HAS EXPERTISE AND HELPED US DESIGN
18        THE BEST NOTICE PRACTICABLE HERE.
19                THE COURT:  I WAS CURIOUS ABOUT THAT AND I COMPARED
20        THAT, AND, OF COURSE, IT WAS A DIFFERENT CASE AND DIFFERENT
21        FACTS AND DIFFERENT PRODUCTS AND THINGS, AND MAYBE THE CLASS
22        THERE IS MORE IDENTIFIABLE.  MAYBE THEY'RE MORE INCLINED TO
23        RECEIVE THESE TYPES OF NOTICES FROM NETFLIX BEING A CONSUMER
24        SPECIFIC.
25                BUT THERE WERE MORE RESPONSES.  AND WHEN I LOOK AT THE --
```

1        JUST THE PARSE NUMBER OF RESPONSES, MY FIRST REACTION WAS THAT

2        IT MUST NOT HAVE BEEN AN APPROPRIATE NOTICE.  COULD THAT MANY

3        PEOPLE JUST COMPLETELY IGNORE THIS?  WOULD THEY?

4            WHAT ARE THE CONCLUSIONS WE DRAW FROM IT?

5                MR. ASCHENBRENER:  WELL, WE, AS MR. NASSIRI POINTED

6        OUT, ARE SOMEWHAT LEFT TO SPECULATE AS TO WHAT CONSUMERS

7        THOUGHT OF THE SUBSTANCE.

8                THE COURT:  SURE.

9                MR. ASCHENBRENER:  BUT WHAT WE DID IN WORKING WITH

10       ANALYTICS, THE CLASS ADMINISTRATOR, WAS RELIED ON THEIR

11       EXPERTISE PRIMARILY BUT WORKED WITH THEM TO DEVISE A NOTICE

12       PLAN THAT WE REALLY THOUGHT WOULD BE EFFECTIVE.

13           AND, AGAIN, I BELIEVE THAT'S THE ISSUE OF WHETHER THE

14       NUMBER OF OPT-OUTS AND OBJECTORS IS A DOUBLE EDGE SWORD BECAUSE

15       THE NINTH CIRCUIT GUIDANCE SAYS IF THAT'S A LOW NUMBER, THAT'S

16       GOOD.  OF COURSE, I UNDERSTAND THE COURT'S CONCERN THAT A LOW

17       NUMBER MAY INDICATE A LACK OF UNDERSTANDING OF THE SETTLEMENT

18       AND TOWARD THAT NOTICE WAS INEFFECTIVE.

19           BUT WHAT WE HAVE HERE IS WE USED THE MOST MEASURABLE MEANS

20       POSSIBLE FOR NOTICE CURRENTLY AND TOOLS TO EFFECTUATE NOTICE TO

21       THE GREATEST NUMBER OF PERSONS AND THEN WE WERE ABLE TO

22       MEASURE.

23           SO WE USED THE BEST TOOLS AVAILABLE TO US TO EFFECTUATE

24       NOTICE, AND THE NOTICE COMPORTS WITH THE GUIDELINES PROMULGATED

25       BY THE FEDERAL JUDICIAL CENTER.  AND SO WE WORKED WITH -- THERE

1    IS CLEAR GUIDANCE ON THIS ISSUE THAN, PERHAPS, IN, SAY,

2    CY PRES, AND WE WORKED WITHIN THOSE GUIDELINES AND TO MEET AND

3    EXCEED THAT WERE POSSIBLE AND UNLIKE, SAY, PRINT CAMPAIGNS OR

4    OTHER FORMS OF NOTICE, WE WERE ABLE TO BRING TO THE COURT FOR

5    THE HEARING TODAY, AND IN OUR PAPERS LEADING UP TO THIS, THE

6    MEASUREMENTS AS OPPOSED TO HAVING TO MAKE EVEN MORE GUESSES AS

7    WOULD BE NECESSARY IN OTHER SORTS OF CASES.

8            THE COURT:  OKAY.  THANK YOU.

9        WELL, LET'S TURN TO ATTORNEY'S FEES.  AND I HAVE YOUR

10   LODESTAR AMOUNT AND I READ, AS YOU DID, MR. FRANK'S OBJECTIONS.

11   AND WE KNOW, OF COURSE, NOW THE NINTH CIRCUIT'S OPINION OF AT

12   LEAST ONE OF THE CAUSES OF ACTION IN THIS PARTICULAR LAWSUIT.

13       WHAT WOULD HAPPEN?  LET ME JUST ASK THE HYPOTHETICAL, WHAT

14   WOULD HAPPEN IF THE CASE WERE TO GO TO TRIAL RIGHT NOW?

15           MR. NASSIRI:  NOBODY KNOWS BETTER THAN YOU, YOUR

16   HONOR.  WE DID GO THROUGH THIS IN OUR FACEBOOK CLASS ACTION

17   BEFORE THE NINTH CIRCUIT.

18       THESE ARE UNTESTED CLAIMS.  THE PRIMARY CLAIM HERE IS FOR

19   STATUTORY DAMAGES UNDER A STATUTE THAT IS HOPEFULLY OUTDATED.

20   WE BELIEVE THERE WAS A VIOLATION HERE, AND WE'RE READY AND ARE

21   READY AND WILLING TO TAKE THE CASE AS FAR AS WE CAN.

22       BUT THERE WERE -- THERE ARE TREMENDOUS RISKS INVOLVED HERE

23   AT EVERY STEP OF THE WAY GOING FORWARD FROM CLASS CERTIFICATION

24   TO SUMMARY JUDGMENT ON, YOU KNOW, WHETHER OR NOT WE STATED A

25   CLAIM, AND THEN IF WE DID STATE A CLAIM UNDER THE SCA, THEY'RE

1       WAITING IN THE WINGS AS A DUE PROCESS ARGUMENT THAT THESE

2       PENALTIES ARE TOO BIG.

3            SO I DON'T KNOW WHAT WOULD HAPPEN, YOUR HONOR.

4            AND WE BELIEVE THAT THE SETTLEMENT HERE IS A GOOD -- IT'S

5       A GOOD COMPROMISE.  IT PROVIDES FOR CERTAIN RELIEF AND, YOU

6       KNOW, WE STAND BEHIND THE SETTLEMENT.

7                THE COURT:  WELL, IN REGARDS TO RISK, A RISK

8       ANALYSIS IN THE ATTORNEY'S FEES DISCUSSION, WHAT DOES THAT

9       MEAN?  WHAT IS THAT?  WHAT IS THE RISK?

10               MR. ASCHENBRENER:  THE RISK IS OF NOT GETTING PAID

11      AT ALL AND OF THE CASE BEING DISPOSED OF IN THE DEFENDANTS'

12      FAVOR AND THAT THE PLAINTIFFS' LAWYERS WOULD RECEIVE NOTHING.

13               THE COURT:  THAT'S SOMETHING THAT -- ISN'T THAT IN

14      EVERY CASE THERE'S A RISK?  THAT'S UNIVERSAL IN THE PRACTICE OF

15      LAW, YOU MIGHT LOSE.

16               MR. ASCHENBRENER:  WELL, IT'S UNIQUE IN THE SENSE

17      THAT IN THESE CASES THE FEES ARE USUALLY PAID ON A CONTINGENT

18      BASIS.

19               THE COURT:  RIGHT.

20               MR. ASCHENBRENER:  AND SO I DON'T KNOW THE FEE

21      STRUCTURE BETWEEN DEFENDANTS' COUNSEL AND THE DEFENDANT, BUT

22      OFTENTIMES IT'S NOT CONTINGENT IN NATURE.  SO WIN, LOSE OR

23      DRAW, COUNSEL ON ONE SIDE GETS PAID WHILE COUNSEL ON THE OTHER

24      SIDE DOES NOT.

25               THE COURT:  SO THE RISK ANALYSIS FOR THE COURT TO

1    LOOK AT IS, JUDGE, WE'VE TAKEN ON THIS CASE AND ITS CONTINGENCY

2    AND IF WE LOSE THIS, WE COULD STAND TO LOSE THOUSANDS OF HOURS,

3    HUNDREDS OF HOURS OF LABOR.

4            MR. ASCHENBRENER:  THAT'S CORRECT, YOUR HONOR.

5            THE COURT:  AND, THEREFORE, THAT SHOULD BE A

6    CONSIDERATION IN GIVING US ATTORNEY'S FEES.

7            MR. ASCHENBRENER:  WELL, IT'S A CONSIDERATION IN

8    THIS CASE SPECIFICALLY -- YES, YOUR HONOR.  AND IN THIS CASE

9    SPECIFICALLY IT GOES TO THE LODESTAR CROSSCHECK.

10       OUR READING OF THE CASE LAW SUGGESTED IN THIS CASE THAT

11   THE PRIMARY MECHANISM FOR DETERMINING ATTORNEY'S FEES IS BASED

12   ON THE PERCENTAGE OF THE FUND, BUT THE COURT IS DIRECTED, WE

13   BELIEVE BY THE NINTH CIRCUIT, TO ALSO EMPLOY A LODESTAR

14   CROSSCHECK AND WITHIN THAT LODESTAR CROSSCHECK THE COURT IS

15   ALLOWED TO TAKE INTO ACCOUNT THE RISK FACTOR.

16           THE COURT:  AND I KNOW I'VE READ IN YOUR PLEADINGS,

17   YOU'RE A RESPECTED FIRM.  YOUR EXPERTISE IS IN THESE CLASSES.

18   SO AM I -- I JUST HAVE TO ASSUME THAT YOU'RE SKILLED, AS YOU

19   TOLD ME YOU WERE, RELYING ON YOUR EXPERTISE, MR. NASSIRI,

20   YOU'RE SKILLED AT PICKING WINNERS.  YOU REJECT A LOT OF CASES,

21   I'M CERTAIN, THAT COME IN THE DOOR BECAUSE THEY'RE EITHER

22   NONMERITORIOUS OR THEY'RE CASES THAT ARE NOT GOING TO BE

23   WINNERS, I MEAN, THEY'RE NOT GOING TO WIN.  YOU PICK WINNERS.

24   THAT'S THE NATURE OF THE PRACTICE, ISN'T IT?

25           MR. NASSIRI:  THAT IS CERTAINLY A CONSIDERATION.  WE

1      DO HAVE TO PAY THE BILLS AND KEEP THE LIGHTS ON.

2              THE COURT:  SURE.

3              MR. NASSIRI:  BUT THESE CASES WERE BIGGER RISKS

4      THAN, SAY, YOUR STANDARD WAGE AND HOUR CASE WHERE IT'S NOT A

5      NOVEL LEGAL THEORY.  IT'S NOT A CLASS THAT CAN FILL FOOTBALL

6      STADIUMS.

7          HERE THIS WAS AN EXTRA RISKY CASE TO TAKE ON BUT WHAT WE

8      BELIEVE A VERY MERITORIOUS CASE AND ONE THAT HAD ENOUGH

9      PROBABILITY OF SUCCESS THAT IT MET THAT CALCULUS.

10             THE COURT:  SO THE RELIEF HERE IS NOT A CHANGE IN

11     THE PRACTICE; IS THAT RIGHT?

12             MR. NASSIRI:  NO, YOUR HONOR.  OF COURSE, THERE IS

13     PROSPECTIVE RELIEF HERE THAT IS A CHANGE IN PRACTICE.

14         WE HAVE -- GOOGLE IS NOW OBLIGED PERMANENTLY GOING FORWARD

15     TO DISCLOSE HOW IT HANDLES SEARCH QUERIES AND IN PARTICULAR

16     WHETHER IT DISCLOSES THEM TO THIRD PARTIES IN URL'S.

17             THE COURT:  THAT'S THE CHANGE.

18             MR. NASSIRI:  THAT'S THE CHANGE.  AND JUST ONE

19     THING, YOUR HONOR, IS THAT TO THE EXTENT THAT THERE HAVE BEEN

20     OBJECTORS SAYING THAT GOOGLE COULD CONTINUE TO GO ON DOING ITS

21     LEGAL PRACTICE, WE HAVEN'T STOPPED THEM.

22         AGAIN, PARTICULARLY UNDER THE SCA, IF GOOGLE HAS USER

23     CONSENT TO DISCLOSE SEARCH QUERIES, THEN THERE'S NOTHING IN THE

24     LAW PREVENTING GOOGLE FROM DOING SO.  AND SO THE PROSPECTIVE

25     RELIEF HERE GOES DIRECTLY TOWARDS THE CONSENT PORTION OF THE

1    SCA.

2         SO WE HAVE ADDRESSED THE ISSUE AND GOOGLE -- THIS IS

3    PERMANENT PROSPECTIVE RELIEF, YOUR HONOR.

4              THE COURT:  I ASKED MR. FRANK THE QUESTION OF THE

5    EVALUATING OF THE DAMAGES.  CAN YOU ANSWER THAT QUESTION?

6              MR. NASSIRI:  BEST DAY IN COURT, TRILLIONS AND

7    TRILLIONS OF DOLLARS, YOUR HONOR.  IT'S ABSURD.  I BELIEVE

8    JUDGE SEEBORG SAID IN CASES LIKE THIS, ARE THEY TOO BIG TO

9    SETTLE OR TO RESOLVE OR TO BRING?  THEY'RE MONSTROUS.  THERE

10   ARE SOME ISSUES HERE, AND THIS IS ONE OF THOSE MEGA CASES.

11             THE COURT:  OKAY.  SO WHY SHOULD THE COURT GRANT A

12   MULTIPLIER IN THIS CASE?  WHY WOULD THAT BE APPROPRIATE IN THIS

13   CASE IF IT IS AT ALL?

14             MR. NASSIRI:  BECAUSE OF THE TREMENDOUS RISK THAT WE

15   TOOK, BECAUSE THE MAJORITY OF CASES, THESE PRIVACY CASES ARE

16   DISPOSED OF ON 12(B) MOTIONS, YOUR HONOR.  THERE AREN'T THAT

17   MANY CASES THAT SETTLE, AND WE BELIEVE IT WAS OUR GOOD WORK

18   THAT GOT US TO A SETTLEMENT THAT IS REASONABLE COMPARED TO A

19   HANDFUL OF PRIVACY CLASS ACTIONS THAT HAVE SETTLED BEFORE US.

20        AND, YOU KNOW, WE ALSO BELIEVE THAT THE CY PRES COMPONENT

21   OF THIS WE HAVE DONE BETTER THAN THE CASES BEFORE US.

22        SO WE'RE PROVIDING REAL RELIEF TO THE CASE, THE PERMANENT

23   PROSPECTIVE RELIEF REQUIRING DISCLOSURES FROM GOOGLE AND A

24   SIZEABLE CY PRES FUND THAT IS GOING TO BE USED FOR PROJECTS

25   SPECIFICALLY RELATED TO THE SUBJECT MATTER OF THE COMPLAINT.

1          THE COURT:  SOME OF THE PROPOSALS I LOOK AT, I THINK

2     IT WAS MAYBE OUR -- IT MIGHT HAVE BEEN CARNEGIE, THE LANGUAGE

3     WAS VERY GENERAL AS TO WHAT THEY WERE GOING TO DO.

4          IT ALMOST LOOKED LIKE THEY HAD A STANDARD, AND I DON'T

5     MEAN TO BE CRITICAL OF THEM, BUT IT LOOKED LIKE THE RESPONSES

6     WERE PIECES THAT DESCRIBE THE WORK THAT THE INSTITUTES DO IN

7     GENERAL.

8          AND THEN THERE WAS, YOU KNOW, INSERT HERE AND THEN THERE

9     WAS THE DESCRIPTION OF, YOU KNOW, WE'RE GOING TO DO STUDIES,

10    WE'RE GOING TO MEET WITH LEADERS IN THE FIELD, WE'RE GOING TO

11    THEN HAVE AN INVESTIGATION DONE, WE'RE GOING TO PUBLISH RECORDS

12    AND MEET WITH THE LEADERS TO INFORM THE PUBLIC BETTER, ET

13    CETERA, ET CETERA.

14         AND MAYBE THAT'S -- MAYBE THEY CAN'T BE MORE SPECIFIC THAN

15    THAT.  I THINK ONE OF THE OTHERS, AND I CAN'T REMEMBER WHICH,

16    AND I APOLOGIZE, SPOKE TO GOING TO WASHINGTON, D.C. AND MEETING

17    WITH LEADERS AND THEN HAVING SUBSEQUENT MEETINGS AND PUBLICITY

18    AND THAT WAS PROBABLY GREATER SPECIFICITY AS TO WHAT AT LEAST

19    THEIR GOALS WERE AS FAR AS THE PROJECT LINE BUT -- AND MAYBE IT

20    WAS TOO MUCH TO ASK THE RECIPIENTS TO GIVE US A TIMELINE OF

21    WHAT EXACTLY THEY'RE GOING TO DO WITH THESE PARTICULAR ISSUES.

22         DO YOU WANT TO COMMENT ON THAT?

23         MR. NASSIRI:  YES, YOUR HONOR.  I NOTICED THE SAME

24    THING.  SOME PROPOSALS ARE MORE SPECIFIC THAN OTHERS.

25         CARNEGIE MELLON, YOUR HONOR, WAS ONE OF THE VERY SPECIFIC

1    ONES AND IN PART BECAUSE THE DELIVERABLE THAT THEY'RE ABLE TO

2    PROVIDE INCLUDES TECHNOLOGY.

3         SO, OF COURSE, WHEN YOU'VE GOT TECHNOLOGY AND YOU'RE

4    TRYING TO DEVELOP A SPECIFIC TOOL, IT'S PROBABLY EASIER TO

5    BRING SOME SPECIFICITY TO THE PROPOSAL.

6         AARP ON THE OTHER HAND IS PRIMARILY AN ORGANIZATION THAT

7    EDUCATES OLDER AMERICANS AND THEY WORK WITH LAW ENFORCEMENT AND

8    OTHER REGULATORY BODIES TO TRY AND MAKE SURE THAT PEOPLE'S

9    INTERESTS ARE PROTECTED.

10        SO I AGREE THAT THAT PROPOSAL WAS A LITTLE MORE GENERAL

11   AND IT TALKED ABOUT TRAINING TRAINERS, DEVELOPING TOOLKITS AND

12   THAT SORT.

13        BUT IT ALSO DOES HAVE SPECIFIC DELIVERABLES.  IT'S GOING

14   TO ADD SECTIONS TO ITS CALL CENTER TO ADDRESS ONLINE PRIVACY

15   PROTECTION ISSUES.

16        IT DID SAY IT WAS GOING TO OFFER A CONSUMER TOOL TO HELP

17   CONSUMERS EVALUATE THEIR CURRENT PRIVACY PRACTICES AND MAKE

18   THEIR CURRENT RECOMMENDATIONS.  THEY DIDN'T GO FURTHER THAN

19   THAT SO I DON'T KNOW WHAT THAT MEANS.

20        BUT THE OTHER THING THAT WE THOUGHT WAS IMPORTANT HERE WAS

21   TO REQUIRE EACH OF THESE ENTITIES TO PUBLISH REPORTS ON THE

22   RESULTS.

23        SO AARP, FOR EXAMPLE, AT THE END OF THIS, WILL LET US KNOW

24   WHETHER THEY REACHED THEIR STANDING GOAL OF SERVING AT LEAST 1

25   MILLION PEOPLE WITH -- THROUGH IT'S CALL CENTER OR THE NUMBER

```
1    OF PEOPLE THAT IT WAS ACTUALLY ABLE TO TRAIN WITH ITS TOOLKIT.

2         SO EACH ONE OF THESE PROPOSALS INCLUDES KIND OF A REPORT

3    CARD PHASE AT THE END AND SO WE CAN SEE WHAT HAPPENS.

4              THE COURT:  IS THAT SOMETHING THAT FUTURE COURTS CAN

5    LOOK AT WHEN THEY CONSIDER WHETHER OR NOT THE RECIPIENT IS

6    APPROPRIATE?

7              MR. NASSIRI:  ABSOLUTELY.  IT GOES A LITTLE BIT

8    OUTSIDE OF THE SCOPE OF THIS CASE, BUT IT STARTS TO CREATE MUCH

9    LIKE WHAT IS HAPPENING IN THE GRANT WORLD GENERALLY OR IN THE

10   CHARITY WORLD GENERALLY I SHOULD SAY.

11        IT STARTS TO BUILD ON THEIR REPUTATION SO THAT NEXT TIME

12   SOMEONE PROPOSES AARP TO RECEIVE MONEY IN THE CONTEXT OR

13   OUTSIDE OF THE CONTEXT OF THE LAWSUIT, THIS IS SOMETHING THAT

14   EVERYONE WILL BE ABLE TO LOOK AT.

15        SO, YES, ALL OF THESE REPORTS WILL BE PUBLISHED.

16             THE COURT:  HAS BERKMAN DONE THAT?  WE KNOW THAT

17   THEY RECEIVED AT LEAST HALF A MILLION DOLLARS IN A PREVIOUS

18   CASE.  DO WE HAVE A REPORT FROM THEM?

19             MR. NASSIRI:  YOUR HONOR, I DON'T KNOW IF THEY HAVE

20   DONE IT PREVIOUSLY, BUT WE DID REQUIRE THEM TO INCLUDE IT IN

21   THEIR PROPOSAL HERE, THAT THEY WILL DO IT HERE.

22        SO EVERYTHING THAT THEY DO IN TERMS OF THE RESEARCH AND

23   THE POLICIES THAT THEY PROPOSE, THE CONFERENCES WILL ALL BE

24   AVAILABLE ON THE WEBSITE.

25             AND THEY'RE ALSO PUBLISHING WHAT THEY'RE CALLING ONE
```

1    MIDTERM AND ONE FINAL REPORT, BECAUSE THEY'RE A SCHOOL, WHERE

2    THEY WILL REPORT ON HOW THE MONEY HAS BEEN SPENT AND WHAT HAS

3    HAPPENED.

4         THE COURT:  MAYBE THERE SHOULD BE -- MAYBE WE SHOULD

5    CREATE -- YOU KNOW, WHEN YOU SAID THERE'S NOT MUCH LAW IN THIS

6    AREA, MAYBE WE SHOULD CREATE SOME POLICY ON THIS SO THERE'S A

7    CY PRES CENTRAL SO THAT PEOPLE CAN GO TO THAT TO LOOK AT THE

8    GOOD WORKS THAT THESE ORGANIZATIONS DO.  JUST A THOUGHT.

9         ONE OF THE OTHER PROPOSALS, I CAN'T REMEMBER WHICH ONE

10   THOUGH WHEN I WENT DOWN THE LIST OF WORK THAT THEY WERE GOING

11   TO DO, THEY ALSO TALKED ABOUT SMARTPHONE PRIVACY WHICH HAS

12   LITTLE, I THINK, TO DO WITH THIS CASE, OR DOES IT?

13        MR. NASSIRI:  NO, IT HAS A LOT TO DO.  I MEAN, I

14   COULD TALK FOR DAYS --

15        THE COURT:  LET ME ASK COUNSEL IF THEY HAVE THE

16   TIME.

17        MR. NASSIRI:  DO YOU GUYS HAVE TIME?

18        WHILE THEY'RE LEADING THE EFFORT, THEIR CLIENT IS ANYWAY,

19   AND EVERYTHING IS MOVING TO THE MOBILE PLATFORM AND

20   PARTICULARLY SEARCH.

21        I MEAN, AT THE BOTTOM OF THIS CASE IS THIS NOTION THAT

22   WHEN WE SEARCH FOR THINGS, GOOGLE KNOWS WHAT WE'RE THINKING,

23   WHAT WE'RE LOOKING FOR, WHAT WE WANT, AND WHAT OUR HABITS ARE

24   AND ALL OF THAT.  AND RIGHT NOW IT'S CUMBERSOME, AND I THINK

25   WE'LL ONE DAY LOOK BACK AND IT'S A PRIMITIVE PROCESS WHERE WE

1    HAVE TO TYPE KEYWORD SEARCHES INTO A BOX ON A COMPUTER AND

2    SOMEWHERE DOWN THE ROAD THEY WILL JUST BE PLUGGED INTO THEIR

3    BRAIN.  AND I KNOW I SOUND CRAZY TO SOME PEOPLE, BUT THAT'S

4    KIND OF WHAT IS HAPPENING AND MOBILE IS FACILITATING THIS KIND

5    OF MORE FLUID COMMUNICATION WHERE CONSUMERS GET WHAT THEY WANT

6    AND GET THEIR QUESTIONS ANSWERED BY COMPANIES LIKE GOOGLE.

7         AND I THINK THERE IS AMPLE EVIDENCE.  AND YOU ASKED WHAT

8    HAS CHANGED IN THE LAST YEAR?  MORE AND MORE OF THE WORLD IS

9    MOVING TOWARDS MOBILE, MORE DEVELOPERS OF APPLICATIONS ARE

10   FOCUSSING ON MOBILE, AND ALL OF THE MAJOR PROVIDERS LIKE

11   GOOGLE, FACEBOOK, TWITTER, AND THE LIKE ARE FOCUSSING ON

12   MOBILE.

13        SO FOR STANFORD TO FOCUS ON MOBILE, AND I THINK STANFORD

14   IS THE PROPOSED RECIPIENT YOU'RE REFERRING TO, I THINK IT IS

15   GREAT BECAUSE THAT IS WHERE THE WORLD IS HEADED AND THAT'S

16   WHERE THE RESEARCH IS HEADED, YOUR HONOR.

17             THE COURT:  AND THAT HAS A NEXUS WITH THIS LAWSUIT

18   AND THE ISSUES ATTENDANT TO IT?

19             MR. NASSIRI:  ABSOLUTELY.

20             THE COURT:  SO I MADE MY COMMENTS ABOUT THE CY PRES.

21   I THINK, CANDIDLY, I AM TROUBLED BY THAT.  PERHAPS I HAD

22   GREATER EXPECTATIONS.

23        I HAVE SOME PROBLEMS WITH THAT WHOLE SELECTION PROCESS.

24   IT IS, YOU KNOW, TO USE THAT PARAPHRASE, IT IS THE SAME AS IT

25   EVER WAS.  IT WAS THE SAME WE TALKED ABOUT A YEAR AGO, THOSE

1      SAME GROUPS WERE LISTED.

2          WELL, LET ME HEAR FROM YOUR COLLEAGUES OPPOSITES,

3      MR. EDWARDS AND MR. JOHNSON, AND ANY COMMENTS THEY MIGHT HAVE.

4      THANK YOU VERY MUCH.

5          MR. NASSIRI:  THANK YOU, YOUR HONOR.

6          MR. JOHNSON:  THANK YOU, YOUR HONOR.

7          THE COURT:  GOOD MORNING.  YOU HAVE HAD THE

8      PRIVILEGE, I SUPPOSE, OF SITTING AND LISTENING TO OUR

9      CONVERSATION.

10         ANYTHING YOU WANT TO ADD TO THE CONVERSATION?

11         MR. JOHNSON:  WELL, I WOULD YIELD TO MY COLLEAGUE,

12     MR. EDWARDS, ON THE CY PRES ISSUE, BUT I WILL SAY THAT WE HAVE

13     LISTENED INTENTLY AND YOUR COMMENTS WERE VERY MUCH HEARD AND

14     REGISTERED, YOUR HONOR.

15         ONE OBSERVATION, THOUGH, I WOULD MAKE RIGHT OFF THE BAT IS

16     THAT NEITHER MR. EDWARDS NOR MY ALMA MATERS WERE COLEAD COUNSEL

17     IN THIS CASE AND WERE REPRESENTED IN ANY WAY IN THE SETTLEMENT.

18         THE COURT:  OKAY.  THANK YOU.  MR. EDWARDS.

19         MR. EDWARDS:  JUST TO START WITH, THAT WAS A

20     CRITICAL OPENING FACT.

21         THE COURT:  EXPERIENCED TRIAL LAWYERS KNOW WHEN TO

22     MAKE THE APPROPRIATE OPENING, DON'T THEY?

23         MR. EDWARDS:  JUST A FEW SUPPLEMENTAL POINTS AND

24     THEN, OF COURSE, I AM HAPPY TO ANSWER ANY QUESTIONS THAT YOU

25     MIGHT HAVE OF GOOGLE ON SOME OF THE ISSUES THAT YOU HAVE

1    RAISED.

2         BUT GOOGLE DOESN'T CONTROL AND DIDN'T CONTROL THE PROCESS

3    OF DEVELOPING THE SPECIFIC PROPOSALS.  IT DOESN'T CONTROL THE

4    EXPENDITURE OF THOSE FUNDS.

5         THE SETTLEMENT AGREEMENT IN PARAGRAPHS -- IN PARAGRAPH 3.3

6    HAS A SENTENCE THAT DESCRIBES THAT THE CY PRES FUNDS SHOULD BE

7    USED GENERALLY FOR INTERNET PRIVACY EDUCATIONAL PURPOSES.

8         AND THE REASON FOR THE INCLUSION OF THAT AND THE

9    SETTLEMENT AGREEMENT WAS TO ENSURE THAT THE CY PRES WAS

10   DIRECTIONALLY APPROPRIATE JUST FROM THAT LANGUAGE ALONE SO THAT

11   IT WASN'T A SITUATION WHERE WE'LL JUST GIVE MONEY TO THE

12   AMERICAN RED CROSS.  THEY DO GOOD WORK.

13        BUT THE DESIGN COMING OUT OF THE PRELIMINARY APPROVAL

14   PROCESS AND IMPLEMENTING THE SETTLEMENT WAS PLAINTIFFS HAD

15   RESPONSIBILITY AND DID SOLICIT VERY DETAILED PROPOSALS FROM THE

16   LIST OF CY PRES RECIPIENTS AND ENSURED AND ALLOWED THE COURT

17   AND THE PUBLIC AND THE OBJECTORS TO ALL EVALUATE THE VERY

18   DETAILED PROPOSALS THAT EACH OF THOSE RECIPIENTS PROVIDED.

19        ONE OF THE POTENTIAL RECIPIENTS THAT WAS IDENTIFIED IN THE

20   SETTLEMENT AGREEMENT ACTUALLY DROPPED OUT, YOUR HONOR MAY HAVE

21   NOTICED, BECAUSE THEY DIDN'T FEEL THEY WERE GOING TO BE ABLE TO

22   SUBMIT AN APPROPRIATE PROPOSAL WITH THE RIGHT CRITERIA AND THEY

23   WERE NOT THE RIGHT RECIPIENT IN THIS CASE.

24        AND I THINK THAT HELPS SPEAK TO THE APPROPRIATENESS OF

25   THIS PROCESS BECAUSE ULTIMATELY WHEN YOU'RE EVALUATING IS A

```
1        SETTLEMENT FAIR, REASONABLE, AND ADEQUATE -- ARE THESE
2        APPROPRIATE -- IS THIS AN APPROPRIATE USE OF CY PRES FUNDS?
3        YOU KNOW, THE PROOF IS IN THE PUDDING.  THE PROOF IS IN WHAT
4        THE PROPOSALS WILL DO.
5             AND IT MAY VERY WELL BE THAT HAD A DIFFERENT DEFENDANT AND
6        A DIFFERENT PLAINTIFF NEGOTIATED A PRIVACY SETTLEMENT ON A
7        SIMILAR SUBJECT MATTER THAT THEY MIGHT HAVE CHOSEN -- MY ALMA
8        MATER IS NORTHWESTERN, FOR INSTANCE, BUT THAT'S NOT WHAT
9        HAPPENED HERE.  THAT DOESN'T -- AND IT COULD HAVE BEEN
10       OBVIOUSLY AN UNAFFILIATED SCHOOL OR OTHER INSTITUTION OF SOME
11       KIND.
12            BUT HERE EACH OF THE INSTITUTIONS THAT ARE THE PROPOSED
13       RECIPIENTS HAVE IDENTIFIED VERY SPECIFICALLY, SOME A LITTLE
14       MORE DETAILED THAN OTHERS, BUT ALL MUCH MORE DETAILED THAN I
15       HAVE EVER SEEN BEFORE THE COURT IS EVALUATING FINAL FAIRNESS,
16       ARE THESE APPROPRIATE USES OF THE FUNDS CONSISTENT WITH KELLOG
17       AND THE OTHER CONTROLLING CASE LAW?
18            AND I WOULD SUBMIT THAT THEY CLEARLY SATISFY THAT.
19       THERE'S A CONNECTION BETWEEN THE WORK THAT IS PROPOSED AND
20       THERE IS, YOU KNOW, DETAIL AND ACCOUNTABILITY WITH ALL OF THAT
21       WORK AND THE GENERAL CONCERNS OF THE ALLEGATIONS IN THE CASE.
22            AND SO I THINK THAT PART OF THE PROCESS -- AND I
23       UNDERSTAND AND I HEARD YOUR HONOR'S COMMENTS ABOUT THE
24       SELECTION AND YOU MIGHT HAVE THOUGHT THAT THERE WOULD BE A
25       DIFFERENT OR SUPPLEMENTAL RECIPIENT AS WELL, BUT ONE OF THE
```

1    THINGS THAT THIS SETTLEMENT I THINK IS UNIQUE IN IS THE LEVEL

2    OF DETAIL THAT HAS BEEN PRESENTED TO THE COURT BUT HOW THE

3    MONEY IS ACTUALLY GOING TO BE USED.

4         SO FROM THAT PERSPECTIVE, I THINK THAT THAT REALLY

5    STRONGLY SUPPORTS THE FAIRNESS, THE REASONABLENESS, AND

6    ADEQUACY OF THE SETTLEMENT.

7              THE COURT:  OKAY.

8              MR. EDWARDS:  IN TERMS OF -- I THINK THAT ALSO

9    ADDRESSES THE SELECTION IN THE FOLLOWING SENSE, THAT THE

10   CONCERN WITH SELECTION IS THAT SETTLEMENT FUNDS MIGHT BE

11   STEERED INTO AN INAPPROPRIATE WAY.

12        AGAIN, USE THE RED CROSS AS AN EXAMPLE.  AND LET'S PRETEND

13   THAT MY SISTER WAS THE PRESIDENT OF THE AMERICAN RED CROSS AND

14   WE WOULD LIKE TO STEER THE FUNDS BECAUSE WE WOULD LIKE TO MAKE

15   HER LIFE BETTER.  I MEAN, HERE THE COURT CAN EVALUATE ARE THESE

16   APPROPRIATE USES OF THE FUNDS, AND ARE THESE INSTITUTIONS

17   CREDENTIALED, AND DO THEY HAVE A TRACK RECORD AND THE

18   EXPERIENCE TO ACTUALLY DO IT?  AND SO THAT WE'RE NOT THROWING

19   FUNDS THAT WON'T BE USED.

20        AND I BELIEVE THAT THE EXPERIENCE OF THESE INSTITUTIONS,

21   WHICH IS DETAILED, AND IT'S ALSO FOR, I BELIEVE ALL OF THEM OR

22   MOST OF THEM, FAIRLY KNOWN, BUT IT'S ALSO DETAILED THAT THEY'RE

23   EXPERIENCED AND THEY CAN DELIVER THE KINDS OF PROJECTS THAT

24   THEY DO AND THEY'RE DIFFERENT PROJECTS RANGING FROM TECHNOLOGY

25   DEVELOPMENT TO THE AARP PROPOSALS.

1       IT WAS NOT AS DETAILED TECHNICALLY, BUT THEY HAVE

2    EXPERIENCE AND THEY HAD A MULTIYEAR PLAN AND THIS IS WHAT WILL

3    HAPPEN IN YEAR ONE, YEAR TWO, YEAR THREE TO ACHIEVE THE GOALS

4    IN THEIR WAY THAT THEY BELIEVE ARE APPROPRIATE.

5       SO I THINK THAT THAT TOUCHES ON THE SELECTION PROCESS.

6    I'M HAPPY TO ANSWER ANY ADDITIONAL QUESTIONS THERE.

7            THE COURT:  OKAY.

8            MR. EDWARDS:  YOU KNOW, I GUESS MAY BE I SHOULD ADD

9    ONE ADDITIONAL POINT, WHICH IS MR. FRANK'S ARGUMENT THAT THIS

10   IS JUST A CHANGE IN GOOGLE ACCOUNTING ENTRIES.

11      AND, AGAIN, I THINK THE LEVEL OF DETAIL OF THESE PROGRAMS

12   AND THE LACK OF GOOGLE'S INVOLVEMENT IN THE DEVELOPMENT OF

13   THESE PROGRAMS REBUTS THAT.

14      THESE WERE, THESE WERE -- IT IS NOT JUST A DONATION TO THE

15   AMERICAN RED CROSS.  IT'S NOT EVEN JUST A DONATION TO AN

16   INSTITUTION THAT GOOGLE MAY AT SOME POINT IN THE PAST HAVE

17   PROVIDED SOME MONEY FOR FOR SOME PURPOSE.

18      THESE ARE VERY SPECIFIC PROPOSALS THAT ARE FUNDED OUT OF

19   VERY SPECIFIC FUNDS.  AND SO WHEN YOU COMPARE THIS TO, FOR

20   INSTANCE, THE CY PRES IN THE LANE VERSUS FACEBOOK CASE, THIS

21   IS, I BELIEVE, MULTIPLE STEPS AWAY FROM THAT IN TERMS OF THE

22   INVOLVEMENT OF THE DEFENDANT AND IN TERMS OF THE CONCRETENESS

23   OF WHAT MAY COME OUT OF AN APPROVAL OF THE SETTLEMENT THAT

24   ALLOWS THE FUNDS TO BE IMPLEMENTED IN THE WAY THAT HAS BEEN

25   DESCRIBED.

```
1         AND SO WE FULLY UNDERSTAND THAT, PERHAPS, THE PRELIMINARY

2    APPROVAL PROCESS THERE MAY HAVE BEEN A LITTLE BIT OF A

3    DISCONNECT IN TERMS OF COMMUNICATION WITH YOUR HONOR ABOUT

4    WHERE THE UNPRECEDENTED NATURE OF THE CY PRES PROCESS EXISTS

5    AND TO THE EXTENT THAT THE PARTIES DIDN'T COMMUNICATE THAT

6    APPROPRIATELY, WE OBVIOUSLY WANT TO ADDRESS AND REMEDY THAT

7    NOW.

8         WE THINK THAT THE SETTLEMENT AGREEMENT AND CERTAINLY THE

9    NOTICE IDENTIFIED THE RECIPIENTS AND NOW WE HAVE A MUCH MORE

10   ROBUST RECORD CONCRETELY OF WHAT WOULD HAPPEN.

11        AND WE THINK THAT THAT FULLY SUPPORTS THE APPROPRIATENESS

12   OF BOTH THE SELECTION AND THE USE OF THOSE FUNDS.

13        SO I'M HAPPY TO ADDRESS ISSUES THERE.

14            THE COURT:  WELL, THANK YOU.  SO I THINK THESE ARE

15   APPROPRIATE ISSUES TO DRILL DOWN AND TALK ABOUT WITH GREATER

16   DETAIL BECAUSE THIS IS A PURE CY PRES.  AND SO THE RECIPIENTS,

17   I THINK, ARE VERY IMPORTANT, AND THAT'S WHY I'M ASKING

18   QUESTIONS AND FOCUSSING SO MUCH OF OUR MORNING ON THAT, WHICH

19   DOES INCLUDE THE TRANSPARENCY OF THE SELECTION PROCESS, THE

20   PROTOCOL OF HOW THESE INSTITUTIONS, AND I REITERATE, I'M NOT

21   BEING CRITICAL OF THE WORK THAT THEY DO.  AND I THINK YOUR

22   POINT IS WELL TAKEN.  THEY'RE GUIDED AND THEY HAVE AN EXCELLENT

23   TRACK RECORD.

24        IT'S THE KIND OF WORK THAT IS APPROPRIATE TO THIS CLASS,

25   THE LAWSUITS, THE ISSUES THAT ARE IN THIS LAWSUIT.  SO I
```

```
 1        UNDERSTAND THAT AND PERHAPS MY GREATEST FOCUS IS ON JUST THE

 2        SELECTION PROCESS.

 3              AND AS I SAID EARLIER, WHEN YOU PUT AND WHEN I LOOK AT IT,

 4        THE USUAL SUSPECTS, I KEEP USING THAT INELEGANT PHRASE, BUT

 5        THAT AND THEN THE PERCENTAGES TO, PERHAPS, GET AROUND, I

 6        SUPPOSE, OR TO COME WITHIN THE OPINION AND IN THE EASYSAVER

 7        CASE, ALL OF THOSE THINGS, I LOOK AT IT AND IT JUST CAUSES SOME

 8        QUESTION.

 9              AND I'M NOT A NATURALLY SUSPICIOUS PERSON, I PROMISE YOU,

10        BUT IT JUST RAISES AN ISSUE FOR ME OF CAN WE DO BETTER?  AND IN

11        THIS CASE THAT WAS -- THE BAR WAS TO BE RAISED, NOT BY YOU, BUT

12        IN THE SELECTION PROCESS.

13              I UNDERSTAND NOW AND I LEARN TODAY THAT THAT'S PROTECTED

14        BECAUSE IT WAS PART OF MEDIATION, AND I HOPE YOU APPRECIATE HOW

15        THAT DOESN'T HELP MY THOUGHT PROCESS.  IT CREATES MORE

16        CURIOSITY, I SUPPOSE.

17              I'M NOT TRYING TO SAY THAT WE SHOULD NOT APPROVE THIS

18        BECAUSE THOSE ORGANIZATIONS AREN'T DESERVING, AND I'M NOT

19        TRYING TO SAY THAT YOU SHOULD FUND STARTUP ORGANIZATIONS

20        SOMEWHERE ELSE THAT CAN DO ADDITIONAL WORK, BECAUSE AS WE SAID,

21        A TRACK RECORD OR SOMETHING I NEED TO BE COGNIZANT OF.

22              BUT AT SOME POINT SHOULDN'T A WIDER NET BE CAST OR

23        SHOULDN'T THERE BE ADDITIONAL NUMBERS AND PARTICULARLY NUMBERS

24        OF APPLICATIONS AND PARTICULARLY HERE WHEN THAT ISN'T, TO ME,

25        TRANSPARENT.
```

1          MR. EDWARDS:  WELL, LET ME TRY TO ADDRESS AS MUCH OF

2    THAT AS I CAN BEFORE I GET UNCOMFORTABLE WITHOUT TALKING TO

3    COUNSEL.

4          THE COURT:  SURE, OF COURSE.

5          MR. EDWARDS:  BUT LET ME START WITH THE ALLOCATIONS.

6    JUST TO BE CLEAR, GOOGLE DID NOT HAVE INVOLVEMENT, AND I THINK

7    MR. NASSIRI EXPLAINED, YOU KNOW, PLAINTIFFS RECEIVED PROPOSALS

8    AND NOT EVERYONE CHOSE THE EXACT SAME NUMBERS.

9          AND THEN DEPENDING ON WHAT YOUR HONOR'S DECISIONS ARE ON

10   THE ATTORNEY FEE ISSUE, I SUPPOSE THAT WILL INFLUENCE THE TOTAL

11   DOLLARS THAT ARE OTHERWISE AVAILABLE.

12         BUT GOOGLE DIDN'T IDENTIFY IN THE PROPOSALS AND DIDN'T SAY

13   THAT WE WANT YOU TO SUBMIT FOR X DOLLAR AMOUNT.

14         AND SO, YOU KNOW, THERE WAS NO INVOLVEMENT FROM MY CLIENT

15   AND FROM EVERYTHING THAT I UNDERSTAND FROM PLAINTIFFS EITHER IN

16   TERMS OF STEERING WE WANT 1 PERCENT LESS OF ONE FROM ONE TO

17   ANOTHER.

18         THESE ARE ALL GENERALLY WITHIN THE BALLPARK.  A COMMENT

19   THAT GOOGLE DID SHARE AT THE OUTSET WAS THAT ALTHOUGH IT WAS

20   NOT TAKING THOSE SPECIFIC PROPOSALS AND DICTATING DOLLAR

21   AMOUNTS, IT WOULD HAVE BEEN DISAPPOINTED AND WOULD HAVE HAD

22   SIGNIFICANT ISSUES IF, ONE, RECIPIENT HAD RECEIVED 95 PERCENT

23   OF ALL OF THE FUNDS AND THE OTHER RECIPIENTS RECEIVED $10 EACH.

24         BUT BEYOND THAT EXTREME SITUATION THAT WAS NOT AN AREA

25   WHERE THERE WAS ANY INFLUENCE EXERCISED OR DECISION MADE BY

1    GOOGLE ABOUT HOW THOSE DOLLARS CAME IN, THEY COME IN AT

2    SLIGHTLY DIFFERENT AMOUNTS BECAUSE OF THE DIFFERENT NATURES OF

3    BOTH I SUPPOSE WHAT WAS BEING PROPOSED AND ALSO WHAT EACH OF

4    THESE PROPOSED RECIPIENTS THOUGHT THEY COULD GET AND JUSTIFY.

5         SO I DON'T KNOW THAT I CAN SAY MUCH MORE THAN THAT BECAUSE

6    THERE WAS NO INVOLVEMENT BY GOOGLE IN THE SELECTION OF THAT.

7         I THINK THAT THEY ALL ARE -- THERE WAS INVOLVEMENT BY

8    GOOGLE AS WELL AS PLAINTIFFS, OF COURSE, IN IDENTIFYING THE

9    RECIPIENTS.

10        AND THE THINKING IS THAT YOU DON'T WANT TO HAVE 100

11   RECIPIENTS NECESSARILY.  ALL KINDS OF REASONS.

12            THE COURT:  SURE.

13            MR. EDWARDS:  AND IN THIS CASE THE DECISION WAS MADE

14   ON BOTH SIDES THAT YOU ALSO DON'T WANT TO HAVE ONE OR TWO.

15   IT'S A NICE CROSS-SECTION.  THEY'RE DOING DIFFERENT KINDS --

16   DIFFERENT RECIPIENTS ARE DOING DIFFERENT KINDS OF THINGS AND

17   IT'S A MANAGEABLE NUMBER, AND IT'S A NUMBER IN WHICH AS WE CAN

18   SEE FROM LOOKING AT THE PROPOSALS WE CAN GET LEGITIMATE

19   SIGNIFICANT PROPOSALS THAT ADDRESS THE SUBJECT MATTER.

20        AND I, YOU KNOW, IN A COUNTER-FACTUAL WORLD WE CAN

21   SPECULATE IF WE DOUBLED THE NUMBER OF RECIPIENTS AND CUT IT IN

22   HALF, EACH OF THE PROPOSALS, WHAT WOULD THOSE PROPOSALS LOOK

23   LIKE?  PERHAPS IT WOULD ALSO BE FAIR, ADEQUATE, AND REASONABLE

24   TO DO SOMETHING LIKE THAT.  PERHAPS.  I CAN'T JUDGE.

25        BUT WHAT WE CAN JUDGE IS I THINK A HALF A DOZEN, I THINK

1    ORIGINALLY SEVEN, HALF A DOZEN, CAME THROUGH THE PROCESS WITH

2    PROPOSALS FOR WHICH THEY'RE BROADLY SPEAKING IS THE APPROPRIATE

3    AMOUNT OF MONEY REQUESTED TO DO THINGS THAT WE BELIEVE ARE

4    APPROPRIATE OR CERTAINLY SUPPORTABLE.

5         AGAIN, IT'S NOT A GOOGLE DESIGN AND CHOSE THESE SPECIFIC

6    RESEARCH PROJECTS AND DEVELOPMENT PROJECTS, BUT CERTAINLY

7    WITHIN THE RANGE IS THIS A FAIR, REASONABLE, AND ADEQUATE PART

8    OF A PACKAGE IN TERMS OF THE SETTLEMENT COUPLED WITH THE

9    DISCLOSURE PROVISION?

10        YOU KNOW, I THINK THAT -- I'LL END ON THIS NOTE WHERE I

11   BEGAN WHICH IS THE PROOF IS IN THE PUDDING.  YOU CAN LOOK AT IT

12   AND YOU CAN SEE.  THERE MAY BE OTHER SETTLEMENTS WHERE YOU CAN

13   HAVE A DIFFERENT GROUP OF RECIPIENTS BUT THERE'S NOTHING WRONG

14   WITH THIS GROUP IN TERMS OF THEIR CREDENTIALS AND WHAT THEY

15   WOULD DO AND HEARKENING BACK TO LANE, WELL WITHIN THE BOUNDS OF

16   WHAT PRECEDENT WOULD SAY IS APPROPRIATE.

17        THE COURT:  I GUESS THE DISTINCTION HERE MIGHT BE

18   THE CONFLICT OF INTEREST ISSUE WHICH GETS TO -- AND I TALKED

19   ABOUT WITH MR. NASSIRI AND WHETHER OR NOT THAT'S A REAL ISSUE,

20   WHETHER OR NOT IT'S SOMETHING THAT THE COURT SHOULD BE

21   CONCERNED ABOUT.

22        AND TO THAT END, I WAS CURIOUS ABOUT, AGAIN, THE

23   PUBLICATION OF THE REQUEST FOR AN INVITATION TO APPLY I

24   SUPPOSE.  THAT WOULD HAVE BEEN INTERESTING TO KNOW WHAT THAT

25   PROCESS WAS AND WHAT WAS THE TARGET AUDIENCE FOR THOSE ROI'S,

1      OR WHATEVER IT WAS THAT WAS SENT OUT.  THAT WOULD HAVE BEEN

2      NICE TO KNOW.

3          AND THE RESPONSE RATE TO THAT WOULD HAVE BEEN INSTRUCTIVE

4      ALSO.  YOU KNOW, WAS BERKELEY ONE OF THOSE TARGETED PEOPLE?

5      WAS USD, SANTA CLARA?  I CAN NAME ANY SCHOOL.  AND DO THEY HAVE

6      PROGRAMS THAT MIGHT, MIGHT ALSO FALL UNDER THE LANE RUBRIC OF

7      APPROVAL?

8          AND, AGAIN, GETTING BACK TO THE HISTORY OF THIS CASE,

9      THESE RECIPIENTS WERE NAMED PREVIOUSLY, AND SO I GUESS THAT'S

10     THE DISAPPOINTMENT, IF I HAVE ANY.  WHAT IS DIFFERENT NOW THAN

11     IN AUGUST OF 2013.

12             MR. EDWARDS:  WELL, LET ME TRY TO ANSWER THAT

13     STARTING WITH YOUR LAST POINT WHAT IS DIFFERENT NOW THAN IN

14     AUGUST OF 2013?

15         IN TERMS OF THE RECIPIENTS, YOU KNOW, IT'S NOT AS IF THERE

16     WERE ADDITIONAL RECIPIENTS ADDED.  I THINK MR. NASSIRI

17     ACKNOWLEDGED THAT AS WELL.

18         WHAT IS DIFFERENT IS THE VERY DETAILED SUBMISSION.  HOW

19     ARE THESE FUNDS TO BE USED?  ARE THESE APPROPRIATE USES FOR THE

20     FUNDS?  DOES IT FIT WITHIN THE CONFINES OF KELLOG AND LANE AND

21     THE OTHER PRECEDENTIAL AUTHORITIES ON THIS POINT?

22         AND THAT IS REALLY WHAT IS NEW.

23         IN FACT, YOU KNOW, FROM PRELIMINARY APPROVAL UNTIL NOW,

24     YOU KNOW, AT THE TIME WE HAD AN AGREED UPON LIST OF WHAT WE

25     BELIEVED WOULD BE APPROPRIATE ORGANIZATIONS, AND AS WE NOTED

1    EARLIER, AND THE MACARTHUR FOUNDATION DROPPED OUT BECAUSE THEY,

2    LIKELY APPROPRIATELY, DECIDED THAT THEY DIDN'T FEEL THAT THEY

3    COULD SUBMIT A PROPOSAL THAT WOULD SATISFY THE CRITERIA THAT

4    THE SETTLEMENT CONTEMPLATED HERE.

5         BUT AT THE TIME THAT THEY WERE IDENTIFIED FOR PRELIMINARY

6    APPROVAL THAT, YOU KNOW, WE HAVE THIS, WHAT WE BELIEVE WAS A

7    REASONABLE NUMBER, AN APPROPRIATE CROSS-SECTION OF RECIPIENTS,

8    NOW LET'S GO AND MAKE SURE THAT THEY CAN DO WHAT THE AGREEMENT

9    IS THAT THEY WILL DO AND DO SOMETHING THAT THE COURT WILL FIND

10   TO BE APPROPRIATE IN TERMS OF A DIRECTION FOR THE CY PRES

11   FUNDS.

12        AND THAT'S, YOU KNOW, AND THAT'S WHAT WAS DELIVERED THEN

13   COMING BACK.

14             THE COURT:  OKAY.  WELL, LET ME ASK YOU WHAT MIGHT

15   BE AN UNCOMFORTABLE QUESTION, BUT DO YOU WISH TO COMMENT ON ANY

16   OF THE OTHER TOPICS THAT I RAISED, THE NOTICE TOPIC AND THE

17   ATTORNEY'S FEES TOPIC?

18             MR. EDWARDS:  SO LET ME TURN IT OVER TO MR. JOHNSON

19   TO ADDRESS NOTICE AND THE OTHER ASPECTS OF THE SETTLEMENT.

20        ON THE ATTORNEY FEE ISSUE, GOOGLE IS NOT GOING TO ASSERT

21   -- THERE'S NO CLEAR SAILING PROVISION IN THE SETTLEMENT, BUT

22   WE'RE NOT ASSERTING A POSITION ON THAT.  WE BELIEVE THAT'S

23   APPROPRIATELY DECIDED BY YOUR HONOR AND THE AGREEMENT DEFINES,

24   YOU KNOW, WHATEVER YOUR HONOR'S AWARD IS.

25        THE MONIES ARE NOT REVERTED BACK TO GOOGLE AND THAT'S

```
1    REALLY THE ONLY THING WE HAVE TO SAY ON THE ATTORNEY FEE POINT.

2              THE COURT:  OKAY.  THANK YOU VERY MUCH.

3              MR. JOHNSON:  YOUR HONOR, ON NOTICE, WE BELIEVE THAT

4    THE PLAN THAT THE COURT APPROVED ITS PRELIMINARY APPROVAL WAS A

5    GOOD ONE AND A SOUND ONE AND MR. SIMMONS IS HERE TO TALK ABOUT

6    ITS IMPLEMENTATION WHICH SEEMS TO BE EQUALLY SOUND.

7         I WOULD JUST MAKE THE OBSERVATION, AND IT WAS CITED IN THE

8    PLAINTIFFS' BRIEF, THE COHORST CASE, WHICH IS AT A FINAL

9    APPROVAL, ABSENT NEWLY DISCOVERED EVIDENCE SOME KIND OF A

10   PROBLEM, NOTICE THAT HAS GONE OUT TYPICALLY IS NOT RECONSIDERED

11   AT FINAL APPROVAL.

12             THE COURT:  THANK YOU.  I APPRECIATE THAT.  I RAISE

13   THE TOPIC THIS MORNING BECAUSE OF THE, CANDIDLY, THE LOW

14   RESPONSE.

15             MR. JOHNSON:  AND I THINK I FELT AND TOOK THE IMPORT

16   OF YOUR HONOR'S COMMENTS, AND, YOU KNOW, YOU READ THE STATS

17   HERE AND YOU SEE WHAT WAS DONE.

18        IT WAS REASONABLE, IT WAS TRIED AND TRUE METHODS.  IT'S --

19   I UNDERSTAND AND SENSE MAYBE ALMOST A DISAPPOINTMENT IN THAT IT

20   IS LIKE AN ELECTION IS WELL TURNED OUT.

21        BUT SOMETIMES IT COULD DEPEND NOT ON THE VEHICLE OR NOT ON

22   HOW PEOPLE VOTE BUT ON HOW EXCITING THE CANDIDATES ARE AND HOW

23   STRONGLY THEY FEEL ABOUT THE CONDUCT ALLEGED HERE.

24             THE COURT:  WHICH GETS BACK TO THE DAMAGE QUESTION

25   THAT I WAS ASKING MR. NASSIRI EARLIER, PERHAPS.
```

```
 1          ALL RIGHT.  ANYTHING FURTHER YOU WOULD LIKE ME TO KNOW?

 2                MR. EDWARDS:  NO, YOUR HONOR.

 3                MR. JOHNSON:  NO, YOUR HONOR.

 4                THE COURT:  THANK YOU VERY MUCH.

 5                MR. EDWARDS:  THANK YOU.

 6                THE COURT:  MR. NASSIRI, YOU ARE ON YOUR FEET.

 7                MR. NASSIRI:  MAY I ADDRESS THE COURT BRIEFLY?

 8                THE COURT:  YES.

 9                MR. NASSIRI:  AGAIN, AT THE RISK OF SAYING TOO MUCH

10     BUT THIS IS INTERESTING BECAUSE IT IS NEW AND YOU FOCUSSED SOME

11     TIME THIS MORNING ON THE SELECTION PROCESS, AND I'M TRYING TO

12     IMAGINE WHAT AN ALTERNATIVE SELECTION PROCESS WOULD LOOK LIKE.

13          IF YOU OPEN IT UP TO THE PUBLIC, I MEAN, YOU CAN HAVE AN

14     AMERICAN IDOL TYPE COMPETITION WHERE IT'S OPEN TO VOTES BUT

15     PEOPLE OPPOSE -- THE PUBLIC ISN'T A COMMON WISDOM AND

16     OUTSOURCING IS NOT ALWAYS THE BEST WAY TO MAKE A SELECTION LIKE

17     THIS AND IT MAY NOT STAND UP TO CONSTITUTIONAL SCRUTINY.

18                THE COURT:  I AM NOT ADVOCATING FOR THAT.  I

19     APPRECIATE YOU ARE NOT.

20                MR. NASSIRI:  I AM BRAIN STORMING, YOUR HONOR.  AND

21     WE THOUGHT ABOUT THIS GOING INTO THE SETTLEMENT, TOO.

22          THE OTHER THING IS THAT IF WE HAD SAID, OKAY, LET'S HAVE

23     AN OPEN BID PROCESS AND THEN WE'LL DECIDE.  I MEAN, AGAIN, THIS

24     IS A SETTLEMENT.  WE HAVE TO GET SIGNOFF FROM GOOGLE.  IT'S

25     UNAVOIDABLE.
```

1       IT MAY HAVE BEEN -- WE MAY HAVE BEEN WORSE OFF, AND I'LL

2  TELL YOU WHY.  ONE THING WE HAD TO FIGHT FOR WAS CONTROL OVER

3  THE PROCESS ONCE THE RECIPIENTS, PROPOSED RECIPIENTS WERE

4  SELECTED.

5       THE COURT:  SO I DON'T WANT YOU TO SPEAK TO ANYTHING

6  IN REGARDS TO YOUR MEDIATION.

7       MR. NASSIRI:  I WON'T, YOUR HONOR.  I WON'T CROSS

8  OVER ANY LINES.  LET ME KNOW IF I DO.

9       BUT IT WAS IMPORTANT THAT THESE ENTITIES WERE ABLE TO

10 DECIDE HOW TO BEST SPEND THE MONEY IN A WAY WHERE THEY WEREN'T

11 UNDER THE INFLUENCE FROM, IN MY PERSPECTIVE, FROM DEFENDANTS.

12      AND YOU'LL SEE THAT SOME OF THESE PROPOSALS GO DIRECTLY

13 TOWARDS GOOGLE AND ARE AIMED DIRECTLY AT GOOGLE AND IN MAKING

14 SURE THAT GOOGLE IS ACCOUNTABLE AND IT ADHERES TO ITS PRIVACY

15 POLICIES.

16      I'M THINKING SPECIFICALLY ABOUT CARNEGIE MELLON'S PROPOSAL

17 FOR CREATING A TOOL THAT WOULD ALLOW THIRD PARTIES, REGULATORS,

18 POLICY MAKERS, POLICY ADVOCATES TO, FROM OUTSIDE OF THE GOOGLE

19 ECOSPHERE, TO SEE WHETHER OR NOT GOOGLE WAS ACTUALLY ADHERING

20 TO ITS PRIVACY POLICIES.  THAT'S NOT SOMETHING THAT GOOGLE

21 WOULD NECESSARILY AGREE TO FUND.

22      STANFORD, THE F.T.C. FINE OF $22 AND A HALF MILLION

23 DOLLARS BECAUSE GOOGLE CIRCUMVENTED THE APPLE SAFARI PRIVACY

24 BROWSER SELECTION, THAT WAS A RESULT OF STANFORD'S WORK.

25      SO BY -- IF WE HAD HAD AN OPEN BID PROCESS, I'LL CIRCLE

1    BACK NOW TO MY POINT, IF WE HAD AN OPEN BID PROCESS WHERE WE

2    TOOK BIDS AND PROPOSALS FROM 100 POTENTIAL RECIPIENTS AND THEN

3    MADE OUR DECISION, WE MAY HAVE BEEN WORSE OFF BECAUSE ANYTHING

4    THAT GOOGLE FOUND TO BE THREATENING THAT WE THOUGHT WAS

5    ACTUALLY VERY EFFECTIVE, THEY MIGHT NOT HAVE EVER AGREED TO.

6         SO WE BELIEVE THIS IS A GOOD PROCESS, AND I THINK

7    MR. EDWARDS PUT IT WELL, WE ENDED UP WITH PROPOSALS WHERE IF

8    YOU LOOK AT THE PROPOSALS ON THE MERITS, THEY'RE VERY GOOD

9    PROPOSALS AND VERY EFFECTIVE, AND I THINK THEY SHOULD BE

10   APPROVED, YOUR HONOR.

11              THE COURT:  OKAY.  MR. FRANK, YOU'RE ON YOUR FEET.

12              MR. FRANK:  THANK YOU, YOUR HONOR.  TWO THINGS VERY

13   QUICKLY, AND I'M GOING TO AVOID REPEATING MYSELF, BUT IF YOU GO

14   TO THE STANFORD WEB PAGE AND YOU LOOK AT THEIR DONERS, NUMBER

15   ONE RIGHT THERE IS GOOGLE.

16        AND SO, YES, THIS IS A SEPARATE PROGRAM, BUT, YOU KNOW, I

17   HAVE APPLIED FOR SEPARATE GRANTS FOR PROGRAMS, AND, AGAIN, IT'S

18   JUST AN ACCOUNTING ENTRY.  YOU CAN'T TELL ME THAT GOOGLE IS NOT

19   GOING TO HAVE ANY INFLUENCE OF WHAT STANFORD DOES WITH ITS

20   MONEY BECAUSE STANFORD DEPENDS HEAVILY ON THAT FUNDING.

21        AND YOU GO TO THE WEB PAGE AND NUMBER ONE WAS GOOGLE AND

22   RIGHT UNDER IT IS ALL OF THE LAW FIRMS THAT HAVE GIVEN IT

23   CY PRES.

24              THE COURT:  AND DID THE FOUNDERS OF GOOGLE ATTEND

25   THAT INSTITUTION?

1          MR. FRANK:  AND FOUNDERS OF GOOGLE ATTENDED

2     STANFORD.  THAT IS WHERE THEY STARTED.

3          THE PARTIES RELY A LOT ON THE EASYSAVER CASE AND THE COURT

4     INDICATED IT WAS GIVING IT SOME CONSIDERATION, AND I WOULD

5     CAUTION AGAINST THAT.  WE HAVE THAT CASE ON APPEAL.  I HAVE

6     BRIEFED IT.  WE'LL ARGUE IT AT SOME TIME IN 2015 OR 2016, OR

7     WHENEVER THE NINTH CIRCUIT SCHEDULES IT, BUT I INVITE THE COURT

8     TO READ THOSE BRIEFS AT 13-55373 AND I -- IT'S A FOOL'S ERRAND

9     TO PREDICT EVER WHAT THE NINTH CIRCUIT IS EVER GOING TO DO BUT

10    IF YOU PUT A GUN TO MY HEAD ON ANY NINTH CIRCUIT CASE, THAT'S

11    THE ONE I WOULD STAKE MY LIFE ON.

12         IF YOU HAVE ANY OTHER QUESTIONS, I'D BE HAPPY TO ANSWER

13    THEM.

14          THE COURT:  NO.  THANK YOU.  I APPRECIATE YOUR

15    PARTICIPATION.

16          MR. FRANK:  THANK YOU.

17          THE COURT:  ANYTHING FURTHER FROM YOUR TABLE,

18    MR. NASSIRI?

19          MR. NASSIRI:  NO, YOUR HONOR.

20          THE COURT:  MR. JOHNSON?

21          MR. JOHNSON:  NO, YOUR HONOR.

22          THE COURT:  WELL, THANK YOU FOR THE CONVERSATION

23    THIS MORNING.  I APPRECIATE YOU SUFFERING MY CONCERNS, AND I

24    APPRECIATE THE CONVERSATION.

25         I DO HAVE REAL CONCERNS, AND I NEED TO GIVE IT SOME

1    ADDITIONAL THOUGHT HERE.

2         I SHOULD TELL YOU IN REVIEWING MY NOTES AND REVIEWING YOUR

3    PLEADINGS, WHICH WERE HELPFUL, INCLUDING MR. FRANK'S, MY

4    INITIAL REACTION WAS IN MY NOTE TO SELF HERE AND IN MY PAPER IN

5    FRONT OF ME SAYS TO NOT APPROVE AND GET AN ORDER OUT TELLING

6    YOU WHAT I THINK NEEDS FIXING.

7         AND THAT'S PROBABLY WHAT I'M GOING TO DO.  I DON'T WANT

8    YOU TO BE IN SUSPENSE LEAVING HERE WAITING FOR THE ORDER, BUT

9    I'LL TELL YOU THAT'S PROBABLY WHAT -- I DO HAVE SOME CONCERNS.

10        AND THEY MIGHT BE, YOU KNOW, THEY MIGHT BE NITS THAT I'M

11   PICKING HERE AND MAYBE PLAINTIFFS' TABLE WILL, YOU KNOW, STRIKE

12   THEIR FOREHEADS AND SAY, GEE, WHAT IS THIS GUY THINKING?  AND

13   AT LEAST I'LL SHARE MY THOUGHTS WITH YOU IN AN ORDER.

14        YOU'VE BEEN HELPFUL TODAY DESCRIBING TO ME AND FOR ME THE

15   PROCESS BUT I JUST, I THINK I HAVE INDICATED THOSE INDICATORS

16   THAT CAUSE ME SOME CONCERN, AND I DO FEEL THAT THE TRANSPARENCY

17   ABOUT THE SELECTION PROCESS HAS NOT BEEN GREAT, NOTWITHSTANDING

18   YOUR EXPLANATION OF IT.  I APPRECIATE THAT.

19        I GUESS IT GETS BACK TO THIS WHOLE NET ISSUE AND WHETHER

20   OR NOT IT SHOULD BE LARGER OR NOT, PARTICULARLY WHEN THERE'S

21   THE ALLEGED CONFLICT OF INTEREST.  I'M NOT GOING TO CALL IT A

22   REAL CONFLICT OF INTEREST, JUST THIS ALLEGATION OF THAT, THE

23   PERCENTAGES, YOU KNOW, WHY CARNEGIE MELLON THINKS $0.34 IS

24   APPROPRIATE TO ASK FOR IN THEIR RESPONSE IS INTERESTING TO ME.

25        AND, AGAIN, I'M NOT BEING CRITICAL OF THOSE ORGANIZATIONS

1    AND THE WORK THEY DO, IT'S JUST THAT WHOLE PROCESS CAUSES ME

2    SOME CONCERN.

3         THE ATTORNEY'S FEES PORTION IS INTERESTING, AND MAYBE,

4    MR. NASSIRI, IF YOU WOULD RISE TO SPEAK FURTHER AS TO, AGAIN,

5    WHY YOU THINK A MULTIPLIER IS APPROPRIATE IN THIS CASE, I

6    SHOULD AFFORD YOU THAT OPPORTUNITY.

7              MR. NASSIRI:  WELL, YOUR HONOR, AGAIN, THIS WAS A

8    VERY RISKY CASE, AND THESE ARE VERY DIFFICULT CASES.  AND THE

9    MAJORITY OF THEM ARE DISMISSED WITHOUT ANY RELIEF WHATSOEVER TO

10   THE CLASS.

11        GOOGLE OBVIOUSLY HAD NOT JUST ONE BUT TWO NATIONALLY

12   PROMINENT RECOGNIZED LAW FIRMS AND THEY'RE FANTASTIC LAWYERS.

13        AND WE DON'T HAVE A LOT OF PRECEDENT TO WORK WITH, SO

14   WE'RE KIND OF, YOU KNOW, WORKING IN A LITTLE BIT -- THERE'S NOT

15   A LOT OF MODELING IN HERE SO WE HAD TO BE INNOVATIVE AND

16   CREATIVE, AND I BELIEVE WE WERE ABLE TO GET PERMANENT

17   PROSPECTIVE RELIEF AND A SUBSTANTIAL SUM OF MONEY THAT IS A

18   TESTAMENT TO THE GOOD WORK THAT WE DID OVER THE COURSE OF YEARS

19   NOW.

20        I BELIEVE IT'S ALSO APPROPRIATE FOR THE COURT TO CONSIDER

21   THE LIKELIHOOD THAT SHOULD WE GET APPROVAL, THAT THIS WILL GO

22   UP ON APPEAL AND MAYBE UP AGAIN AND IT COULD BE SIX OR EIGHT

23   YEARS FROM THE TIME THAT WE FILED AND STARTED PUTTING MONEY

24   INTO THIS CASE THAT WE EVER GET PAID, IF AT ALL.

25        I RUN A SMALL FIRM.  THIS IS -- THIS WAS A BIG RISK AND A

1    BIG INVESTMENT, AND SO I BELIEVE THAT THE RESULTS JUSTIFY THIS.

2    THIS IS COMPARABLE TO THE MEGA PRIVACY CLASS ACTION SETTLEMENTS

3    THAT HAVE COME BEFORE OURS.  IT'S NO WORSE.  AND IN SOME WAYS I

4    BELIEVE IT'S BETTER, YOUR HONOR.

5         THE COURT:  OKAY.  THANK YOU VERY MUCH.

6         MR. NASSIRI:  ONE MORE THING, YOUR HONOR.  I MEAN,

7    IF THERE'S -- THE SELECTION PROCESS AND TO THE EXTENT THAT IT'S

8    COVERED BY THE MEDIATION PROCESS, IF THAT IS AN IMPEDIMENT HERE

9    AND IF IT WOULD MAKE ANY DIFFERENCE TO THE COURT'S RULING, YOU

10   KNOW, MAYBE WE COULD CONFER WITH THE DEFENSE COUNSEL NOW AND

11   THERE'S NOT A WHOLE LOT MORE TO TELL YOU TO BE HONEST.  IT WAS

12   A NEGOTIATION, BUT, YOU KNOW, WE MIGHT BE ABLE TO OFFER YOU

13   MORE INFORMATION IF WE CAN AGREE AND IT WOULD BE USEFUL TO THE

14   COURT.  MAYBE IT WOULD AND MAYBE IT WOULDN'T.

15        THE COURT:  WELL, YOU HAVE HEARD MY CONCERNS, AND I

16   SUPPOSE THEY'RE BASED ON OUR CONVERSATION A YEAR AGO AND PART

17   AND PARCEL IN THE TRANSCRIPT THAT I READ TO YOU.

18        MR. NASSIRI:  AND I TRY NEVER TO SET EXPECTATIONS

19   WITH MY CLIENTS THAT ARE INCORRECT, AND I AM KICKING MYSELF

20   NOW.  I THOUGHT I WAS CLEAR, YOUR HONOR, AND APPARENTLY I

21   WASN'T.

22       BUT, YOU KNOW, WE HAD OUR LIST OF PROPOSED RECIPIENTS IN

23   THE SETTLEMENT AGREEMENT.  IT HAS BEEN FIXED BECAUSE IT WAS A

24   MATTER OF AGREEMENT.

25        THE COURT:  NO.  I APPRECIATE THAT.  YOU MENTION

1     THEM AND THEN YOU TALKED ABOUT SETTING THE BAR HIGH AND THE

2     PROCESS.

3              MR. NASSIRI:  YEAH.

4              THE COURT:  AND IT GETS BACK TO MY REJOINDER ABOUT,

5     WELL, WHAT IS DIFFERENT?  OTHER THAN WE KEEP GETTING YOUNGER.

6     THAT'S THE ONLY DIFFERENCE I SUPPOSE.

7          WELL, THANK YOU.  THANK YOU VERY MUCH, AND WE'LL GET THE

8     ORDER OUT, AND WE'LL SEE WHERE IT GOES.

9              MR. NASSIRI:  THANK YOU, YOUR HONOR.

10             MR. JOHNSON:  THANK YOU, YOUR HONOR.

11             MR. EDWARDS:  THANK YOU, YOUR HONOR.

12        (COURT CONCLUDED AT 10:55 A.M.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                        <u>CERTIFICATE OF REPORTER</u>

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15                        _____

16                        IRENE RODRIGUEZ, CSR, CRR
                          CERTIFICATE NUMBER 8076
17

18                        DATED:  SEPTEMBER 8, 2014

19

20

21

22

23

24

25