United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE<br><br>GOOGLE REFERRER HEADER PRIVACY LITIGATION | Case No. 5:10-cv-04809-EJD<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS**<br><br>Re: Dkt. Nos. 65, 66 |

This consolidated internet privacy litigation against Defendant Google Inc. ("Google") returns for final approval of a class action settlement. See Docket Item No. 65. Representative Plaintiffs Paloma Gaos, Anthony Italiano and Gabriel Priyev ("Plaintiffs") also seek an order approving their request for attorneys fees, costs and incentive awards. See Docket Item No. 66.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1331. Having carefully considered the written briefing along with the arguments of counsel at the hearing on this matter, the court has determined the motions should be granted for the reasons explained below.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The court previously described the factual allegations underlying this lawsuit and repeats them again here. According to the Consolidated Class Action Complaint ("CCAC"), "searching" is one of the "most basic activities performed in the Internet," and Google's website offers "the most-used search engine in the world." See CCAC, Docket Item No. 50, at ¶¶ 15, 16. This case focuses on that proprietary search engine. Plaintiffs allege Google operated its search engine in a manner that violated their Internet privacy rights by disclosing personal information to third parties.

1

Specifically, Plaintiffs allege that Google's search engine intentionally and by default included the user's search terms in the resulting URL of the search results page. Id. at ¶ 56. Thus, when a user of Google's search engine clicked on a link from the search results page, the owner of the website subject to the click receives the user's search terms in the "referrer header" from Google. Id. at ¶ 57. This information is then disseminated further, since several web analytics services parse search query information from web server logs, or otherwise collect the search query from the referrer header transmitted by each user's web browser. Id. at ¶ 58. Indeed, Google's own analytics product provides webmasters with this information in the aggregate. Id.

According to Plaintiffs, the problem with Google's disclosure of users' search information to the third parties is that the referrer header - which displays the user's search terms - can sometimes contain certain personal information often subject to search queries, including "users' real names, street addresses, phone numbers, credit card numbers, social security numbers, financial account numbers and more, all of which increases the risk of identity theft." Id. at ¶ 3. "User search queries can also contain highly-personal and sensitive issues, such as confidential medical information, racial or ethnic origins, political or religious beliefs or sexuality, which are often tied to the user's personal information. Id. at ¶ 3.

Based on these allegations, Plaintiffs assert the following causes of action against Google: (1) violation of the Stored Communications Act ("SCA"), 18 U.S.C. § 2701; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) breach of implied contract; (5) unjust enrichment; and (6) declaratory and injunctive relief.

Gaos initiated an action in this court on October 25, 2010, and Priyev filed an action on February 29, 2012, in the Northern District of Illinois. On April 30, 2013, the cases were consolidated after the Priyev action was transferred to this court. On March 26, 2014, the court granted the parties motion for preliminary approval of the settlement, certified a settlement class and appointed counsel. These motions were filed upon completion of the notice plan.

The court received four written objections to the settlement from Kim Morrison, David

2
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

Weiner, Melissa Holyoak, Theodore H. Frank, and Cameron Jan. A hearing addressing final approval was held on August 29, 2014.

## II. LEGAL STANDARD

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). When the parties to a putative class action reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

"Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the final approval stage, the primary inquiry is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Having already completed an preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits. See, e.g., Churchill Village, LLC. v. Gen. Elec., 361 F.3d 566, 576 (9th Cir. 2004); Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants and their strategies, positions, and proof." Hanlon, 150 F.3d at 1026.

## III. DISCUSSION

### A. Continuing Certification of Settlement Class

This analysis begins with an examination of whether class treatment remains appropriate. The court found at the preliminary approval stage that Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequate protection by the named representatives were satisfied. As to those issues, Plaintiffs anticipated a class comprised of approximately 129 million individuals

3
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

who all share a common injury.  The existence of this injury for each class member could be determined by resolving one question: whether Google's system-wide practice and policy of storage and disclosure of their search query information was unlawful.  Plaintiffs' claims were also typical, if not identical, to that of other class members.  For that reason, there was no indication that Plaintiffs' interest would conflict with that of the class, and Plaintiffs and their counsel had proven a desire to vigorously pursue class claims as evidenced by prior motion practice.

As to Rule 23(b), the court found that common questions predominate and that the class action mechanism was a superior process for this litigation.  The alternatives to class certification - millions of separate, individual and time-consuming proceedings or a complete abandonment of claims by a majority of class members - were not preferable.  Moreover, class treatment was appropriate because Defendant's policy was directed at all of its users as whole rather than at particular users of its search engine.  Since an adequate showing was made as to all of the Rule 23 factors, the court conditionally certified the class for settlement purposes.

The filings related to this motion do not compel an alteration to the prior findings under Rule 23.  Although Objectors Frank and Holyoak argue the class should be decertified unless the class members receive direct payments from the settlement fund, such an argument is unpersuasive under these circumstances.  Frank and Holyoak appear to generally contend that the only acceptable benefit is some form of monetary compensation.  If it is too costly to distribute settlement funds to class members, then Frank and Holyoak believe the class action mechanism is an inferior method of resolution under Rule 23(b).

This argument directed at the superiority element of Rule 23(b) is misplaced.  Within the context of a class action settlement, the superiority inquiry focuses on "whether the objectives of the particular class action procedure will be achieved in the particular case."  Hanlon, 150 F.3d at 1023.  Here, the primary objective of the class action procedure - to enable litigation where it would otherwise be economically infeasible - is achieved in this case.  Deposit Guar. Nat'l Bank

v. Roper, 445 U.S. 326, 339 (1980) ("Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."). As noted, the alternatives to a class action are not preferable since they involve either thousands of individual cases or a complete abandonment of millions of claims. Hanlon, 150 F.3d at 1023 (holding that a superiority determination "necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution.").

Moreover, a class-wide resolution is not rendered inferior simply because the settlement agreement calls for an indirect rather than a direct benefit to the class. Assuming the circumstances support it, a settlement calling for a cy pres remedy can be approved. See Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011) (recognizing that federal courts frequently use the cy pres doctrine where proof of individual claims would be overly-burdensome or distribution of damages too costly.); see also Lane v. Facebook, Inc., 696 F.3d 811, 826 (9th Cir. 2012) (affirming approval of class action settlement providing for $6.5 million distribution of funds to cy pres recipients where direct monetary payments to class members would be de minimis). This case is distinguishable from the one relied upon by Frank and Holyoak, In re Hotel Telephone Charges, 500 F.2d 86 (9th Cir. 1974), because, while the Court discussed the issue of de minimis recovery versus extraordinary costs of administration, the possibility of a cy pres distribution in place of direct payments to the class was not considered.

Accordingly, the objection of Frank of Holyoak on this topic is overruled. The class shall remain certified for settlement purposes.

**B. Appropriateness of the Notice Plan**

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." However, individual notice is not always practical. When that is the case, publication or some similar mechanism can be sufficient to provide notice to the individuals that will be bound by the

5

Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

class action judgment. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 315 (1950).

On the issue of appropriate notice, the court previously recognized the uniqueness of the class asserted in this case, since it could potentially cover most internet users in the United States. On that ground, the court approved the proposed notice plan involving four media channels: (1) internet-based notice using paid banner ads targeted at potential class members (in English and in Spanish on Spanish-language websites); (2) notice via "earned media" or, in other words, through articles in the press; (3) a website decided solely to the settlement (in English and Spanish versions); and (4) a toll-free telephone number where class members can obtain additional information and request a class notice. In addition, the court approved the content and appearance of the class notice and related forms as consistent with Rule 23(c)(2)(B).

The court again finds that the notice plan and class notices are consistent with Rule 23, and that the plan has been fully and properly implemented by the parties and the class administrator.

### C. Fairness of the Settlement

The court now reexamines the fairness of the proposed settlement, this time with the benefit of notice having been provided to the class. The settlement agreement contains the following major components:

- Google will pay a total amount of $8.5 million, which will constitute the entirety of the settlement fund. All payments will be made from this fund, including: (1) distributions to cy pres recipients, (2) attorneys fees and costs awards, (3) incentive awards to named plaintiffs, and (4) administration costs, including the costs due to the claims administrator. Funds that remain after all payments are made will not revert to Google.

- Google will maintain information on its website under the "FAQ," "Key Terms," and "Privacy FAQ for Google Web History" webpages which discloses how information concerning users' search queries are shared with third parties. Specifically, the "FAQ" webpage will include an answer to the question "Are my search queries sent to websites when I click on Google Search results?" which notifies users that search terms

6

Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

1  may be disclosed to the destination webpage in the referrer header. In conjunction, the
2  "Key Terms" webpage will include a definition of "HTTP Referrer," and the "Privacy
3  FAQ for Google Web History" webpage will direct users to the Privacy Policy FAQ
4  for more information on how Google handles search queries generally. Importantly,
5  however, Google is not required to make changes to its homepage, www.google.com,
6  or to practices or functionality of Google Search, Google AdWords, Google Analytics
7  or Google Web History.

- As to particular payments to be made from the settlement fund, Plaintiffs request that each of the three representative plaintiffs receive incentive awards $5,000, and anticipate up to $1 million in claims administration costs. They also request the court approve their counsel's request for $2.125 million in fees and $21,643.16 in costs.

- After all contemplated payments are made from the fund, the balance will be distributed to the cy pres recipients previously approved by the court. To that end, Plaintiffs propose that Carnegie Mellon University receive 21% of the remainder, that the World Privacy Forum receive 17%, that Chicago-Kent College of Law Center for Information, Society and Policy receive 16%, that the Stanford Center for Internet and Society receive 16%, that the Berkman Center for Internet and Society at Harvard University receive 15%, and that the AARP Foundation receive 15%.

To determine whether a class action settlement is fair, adequate and reasonable, the court must balance a series of factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon, 150 F.3d at 1026. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id.

When, as here, settlement occurs before formal class certification, approval requires a higher standard of fairness in order to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the class. Lane, 696 F.3d at 819.

### i. Strength of Plaintiffs' Case

To assess strength of the case, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." Officers for Justice, 688 F.2d at 625 (internal quotations omitted). There is no "particular formula by which that outcome must be tested," (Rodriguez v. West Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)), and the district court is not required to render specific findings on the strength of all claims. Lane, 696 F.3d at 823. Instead, the court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." Garner v. State Farm Mutual Auto. Ins. Co., No. 08-CV-1365-CW, 2010 U.S. Dist. LEXIS 49477, at *24, 2010 WL 1687832 (N.D. Cal. April 22, 2010).

Here, Plaintiffs readily state that the alleged privacy violation underlying all of their claims is novel and was potentially one of first impression in this circuit. Thus, from the outset, there was no guarantee that any claims would survive pre-trial challenges if adversarial litigation had continued. Indeed, by the time the parties reached a settlement, some of the claims were facing a third motion to dismiss and the one claim that had survived the second dismissal motion, the SCA claim, was subsequently invalidated by the Ninth Circuit in a case presenting a similar theory. See In re Zynga Privacy Litig., 750 F.3d 1098, 1107 (9th Cir. 2014) (rejecting a claim under the SCA based on webpage disclosures in a referrer header).

Plaintiff also faced challenges had the case proceeded to trial. In light of the technology involved, the the jury would have been required to review complex technical evidence about the inner-workings of Google's search engine, leaving significant opportunity for misunderstanding. Furthermore, success at trial would not have equated to an ultimate success for the class. This is because the calculation of damages based on a potentially unquantifiable privacy injury would

8

Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

have posed a serious challenge to Plaintiffs in obtaining some type of valuable relief, and any meaningful monetary amount awarded to each class member would have resulted in an astronomical judgment far exceeding the value of Google, given the size of the class. For that reason, the judgment would undoubtedly have been met with a remittitur motion and an appeal.

This factor weighs strongly in favor of the settlement. Without a compromise, there was little guarantee of any benefit to the class without a substantial amount of further litigation.

### ii. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

This case was a particularly risky one for counsel because the type of privacy injury asserted by Plaintiffs renders it legally unproven, technically complex and potentially of little value. It also would have been expensive to litigate and try since expert testimony would be necessary to explain the referrer header technology and establish a basis for damages in an untested area.

Moreover, Google's denial of liability means Plaintiffs would continue to face "serious hurdles," including a motion for summary judgment, Daubert challenges, and inevitable appeals that would "likely prolong the litigation, and any recovery by class members, for years." Rodriguez, 563 F.3d at 966. Because a negotiated resolution provides for a certain recovery in the face of an uncertain legal theory, this factor favors the settlement. Curtis-Bauer v. Morgan Stanley & Co., Inc., No. 06-C-3903 TEH, 2008 U.S. Dist. LEXIS 85028, at *13, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### iii. The Risk of Maintaining Class Action Status

Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement. See Rodriguez, 563 F.3d at 966 (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982)). Here, there is little doubt that Google would have vigorously opposed class certification at every opportunity before the district and appellate courts. In addition, the sheer

9

Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

size of the class - essentially covering all persons in the United States who submitted a search query to Google for a period of years - all but invites challenges to class certification based on overbreadth or management difficulties, some of which could be considered meritorious. Thus, the very real risk of never obtaining or losing class status in the absence of settlement weighs in favor of approval.

### iv. The Amount Offered in Settlement

This settlement has a monetary component requiring Google to pay $8.5 million into a common fund and an injunctive component obligating certain disclosures on the Google website. After court-approved payments, the remainder of the fund will be distributed to identified cy pres recipients in proportions designated by Plaintiffs' counsel.

In support of final approval, Plaintiffs point out that the amount of the agreed-upon settlement fund compares favorably to that of other similar class actions. See, e.g., In re Google Buzz Privacy Litig., 2011 WL 7460099, at *3-4 (N.D. Cal. June 2, 2011) (approving $8.5 million settlement fund for unauthorized disclosure of email contact lists; Lane, 696 F.3d at 818 (approving $9.5 million settlement fund for unauthorized disclosure of online behavior); In re Netflix Privacy Litig., No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 372862013, at *16-18, WL 1120801 (N.D. Cal. March 18, 2013) (approving $ 9 million settlement fund for unauthorized storage of personal information). This comparison is instructive because, like those cases, the potential value of this case far exceeds that of the settlement fund. But also like those cases, a theoretical value in the trillions of dollars does not preclude approval here since a fund of $8.5 million is significant given the substantial legal obstacles to a recovery through litigation.

Plaintiffs also believe that a distribution of the settlement funds to cy pres recipients is appropriate in this case. Cy pres payments like those proposed for this case can be approved when actual funds are "non-distributable," or "'where the proof of individual claims would be burdensome or distribution of damages costly.'" Nachshin, 663 F.3d at 1038 (quoting Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990)). But due to a

10
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

heightened potential for collusion at the expense of absent class members, this form of settlement must be examined to ensure it is the "next best" remedy to direct payments to the class. See id.; see also Lane, 696 F.3d at 819 (holding that a class settlement should not be approved unless it was evaluated "to account for the possibility that class representatives and their counsel have sacrificed the interests of absent class members for their own benefit."). A district court should not approve a cy pres distribution "unless it bears a substantial nexus to the interests of the class members" such that it accounts for the nature of the lawsuit, the objectives of the underlying statutes, and the interests of the non-appearing class members. Lane, 696 F.3d at 821.

On this issue, the court echoes the comments it made at preliminary approval describing why a cy pres remedy is the "next best" result here. First, the settlement fund, while sizeable, is "non-distributable." Since the amount of potential class members exceeds one hundred million individuals, requiring proofs of claim from this many people would undeniably impose a significant burden to distribute, review and then verify. Similarly, the cost of sending out very small payments to millions of class members would exceed the total monetary benefit obtained by the class.

Second, the cy pres distribution accounts for the nature of this suit, meets the objectives of the SCA, and furthers the interests of class members. The recipients are established organizations chosen by Plaintiffs' counsel after considering whether they are independent and free from conflict, have a record of promoting privacy protection on the Internet, reach and target interests of all demographics across the country, were willing to provide detailed proposals, and are capable of using the funds to educate the class about online privacy risks.[1] Having carefully reviewed the

---

[1] Some of the proposed cy pres recipients are "usual suspects," or organizations that routinely receive distributions from class action settlements. At the two approval hearings held in this case, the court expressed a concern with using the same list of cy pres recipients in every internet privacy class action and observed that this practice discourages the development of other worthy organizations. This practice also raises questions about the effectiveness of those organizations that have received prior distributions. The court was somewhat surprised at the final list of distributees, since Plaintiffs' counsel suggested the selection process would potentially cast a wider net. See Tr. of Proceedings on Aug. 23, 2013, Docket Item No. 57, at p. 14:25-15:4 ("We

11
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

proposals submitted by counsel, the court is satisfied that the proposed cy pres distribution "bears a substantial nexus to the interests of the class members," as required by the Ninth Circuit. Id. at 821.

Aside from the cy pres portion of the settlement, the court must also comment on the fact that Google's allegedly unlawful practice will not change as a result of this case. Instead, Google will be obligated to make certain "agreed-upon disclosures," or changes to certain portions of its website, the purpose of which is to better inform users how their search terms could be disclosed to third parties through a referrer header. It was noted previously that this relief is not the best result when compared to that sought in the CCAC, since the order contemplated by that pleading would have required Google to stop disclosing search queries altogether.

At the same time, a class action settlement does not need to embody the best possible result to be approved. The court's role is not to advocate for any particular relief, but instead to determine whether the settlement terms fall within a reasonable range of possible settlements, giving "proper deference to the private consensual decision of the parties" to reach an agreement rather than to continue litigating. Hanlon, 150 F.3d at 1027; see also In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Considering all of the circumstances which led to a compromise here, the relief obtained for the class falls within a reasonable range of possible settlements since it was entirely possible that nothing would be obtained if the case were to proceed further. Under the terms of the parties' agreement, and contrary to what the objectors

---

are raising the bar, and I think raising the bar for all cy pres settlements like this to follow. We're treating the cy pres allocation more like a grant making organization would treat grant - prospective grant recipients.").

Despite this concern, the court recognizes that failure to diversify the list of distributees is not a basis to reject the settlement, particularly when the proposed recipients otherwise qualify under the applicable standard. See Lane, 696 F.3d at 820-21 ("We do not require . . . that settling parties select a cy pres recipient that the court or class members would find ideal . . . . such an intrusion into the private parties' negotiations would be improper and disruptive to the settlement process."). However, if class action counsel truly seeks to raise the bar for cy pres settlements, they should consider contributing to organizations other than the same typical few.

12
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

argue, future users of Google's website will receive something from the injunctive relief: the capability to better understand Google's disclosure practices before conducting a search on its website, and the ability to make a better informed choice based on that information.

In sum, this factor favors settlement.

### v. The Extent of Discovery Completed and the Stage of the Proceedings

Prior to reaching a settlement, the parties had engaged in extensive document exchange and had fully briefed three motions to dismiss. They also met in person numerous times and engaged an experienced neutral to assist them in reaching a negotiated resolution. The extent of Plaintiffs' counsel factual investigation and the amount of pre-compromise litigation shows they "had a good grasp on the merits of their case before settlement talks began." Rodriguez, 563 F.3d at 967. As such, this factor weighs in favor of the settlement.

### vi. The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." Id. Consequently, "'[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'" In re Omnivision Techns., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2009) (quoting Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979)). Given the extensive experience of Plaintiffs' counsel with complex class action lawsuits of a similar size to the instant case, this factor favors approval of the settlement.

### vii. The Presence of a Governmental Participant

The Class Action Fairness Act, or "CAFA," requires that notice of a settlement be given to state and federal officials and provides those officials a window of time to comment. 28 U.S.C. § 1715(b). "Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." Garner, 2010 U.S. Dist. LEXIS 49477, at *37.

13
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

Here, the Class Administrator complied with the CAFA notice requirement on August 8, 2013. No objections from a government official have been received. Thus, this factor favors the settlement.

### viii. The Reaction of Class Members

A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval. See Hanlon, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); see also Nat'l Rural Telecomms. Coop., 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."). Here, out of a class of more than 100 million individuals, the Class Administrator received thirteen requests for exclusion and four written objections from five class members. These low rates of exclusion and objection can be characterized as, at most, a favorable reaction by the class, or at least, as an absence of an overwhelming negative reaction. This factor does weigh in favor of approval, albeit without significant force.

In sum, all of the applicable factors weigh in favor of finally approving the settlement.

## IV. ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

When attorneys fees and costs are requested by counsel for the class, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." Id. at 942. The former method is routinely used when "the relief sought - and obtained - is often primarily injunctive in nature and thus not easily monetized." Id. The figure is calculated "by

14

Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE
AWARDS

multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." Id. The court can "adjust [the figure] upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." Id. at 941-42 (internal quotations omitted). "Foremost among these considerations, however, is the benefit obtained for the class." Id. at 942.

Under the latter method, the court awards as fees a percentage of the common fund in lieu of the lodestar amount. Id. "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." Id. Relevant factors to a determination of the percentage ultimately awarded include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." Tarlecki v. bebe Stores, Inc., No. C 05-1777 MHP, 2009 U.S. Dist. LEXIS 102531, at *10, 2009 WL 3720872 (N.D. Cal. Nov. 3, 2009).

"Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." Id.

### A. Percentage of the Fund

Plaintiffs' counsel seek a fee award of $2.125 million, which is equal to 25% of the settlement fund. According to counsel, the combination of monetary distrubtions and injunctive relief obtained in the settlement is an excellent result for the class because they "work in concert . . . . reshape the landscape of Internet privacy protections" and "enact a regime of informed consent for Google Search users, who can now access complete and truthful information about the ways Google handles user search queries before deciding whether to use Google Search, Google Encrypted Search, or a competing search engine."

Plaintiffs' counsel also believe they undertook substantial risk by agreeing to litigate this

15
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

case on a purely contingent basis given the unsettled legal issues, and, for that reason, spent considerable time and money with no guarantee of payment. In addition, they assert the novel nature of this case coupled with an opponent armed with substantial defenses and resources required sophisticated litigation and negotiation skills. Finally, counsel points out that the award requested is consistent with that awarded in other similar cases.

Having considered the relevant factors, the court agrees with Plaintiffs' counsel that this action posed a substantial risk and required significant time and skill to obtain a result for the class. This case was not one where settlement was easily secured; to the contrary, Plaintiffs' counsel was required to defend their claims against three motions to dismiss. An agreement only materialized after extensive in-person negotiations, first without and then including a professional neutral. Moreover, counsel's request is not disproportionate to the class benefit and is comparable to awards approved in other similar internet privacy class actions, including one previously approved by this court. See In re Netflix Privacy Litig., 2013 U.S. Dist. LEXIS 372862013, at *29 (approving benchmark award of $2.25 million). Accordingly, a benchmark fee award of amounting to 25% of the settlement fund is appropriate.

### B. Lodestar Comparison

The Ninth Circuit encourages district courts "to guard against an unreasonable result" by cross-checking attorneys fees calculations against a second method. In re Bluetooth, 654 F.3d at 944. Since a 25% benchmark award might be reasonable in some cases but arbitrary in cases involving an extremely large settlement fund, the purpose of the comparison is to ensure counsel is not overcompensated. In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig., 103 F.3d 602, 607 (9th Cir. 1997).

Here, Plaintiffs' counsel calculates a lodestar figure of $966,598.75 for 2085.6 billing hours from four law firms, to which they apply a 2.2 multiplier for a total amount of $2,126,517.25. They also seek compensation for total costs of $21,643.16. These amounts are attributable to each firm as follows:

16

Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

| Firm | Fees | Expenses | Total Cost |
|---|---|---|---|
| Aschenbrener Law, P.C. | $321,184.00 | $5,844.54 | $327,028.54 |
| Nassiri & Jung LLP | $253,776.50 | $4,464.95 | $258,241.45 |
| Progressive Law Group | $331,967.25 | $7,551.27 (+ $22.40) | $339,540.92 |
| Edelson PC | $59,671.00 | $3,760.00 | $63,431.00 |
| **Totals** | $966,598.75 | $21,643.16 | $988,241.91 |

Among the participating law firms, the hourly rates charged by attorneys range from $300 to $685. The hourly rate for law clerks is $75, and for paralegals is $125. Altogether, the average hourly rate for all work performed is $463.

Plaintiff's counsel has provided sufficient support for its proposed lodestar calculation. The amount of hours and other costs attributed to this case are reasonable in light of the efforts required to litigate and ultimately engage in a lengthy settlement process. In addition, the hourly rates charged fall within the range of those approved in other similar cases, and the suggested lodestar multiplier of 2.2 is comparable to that previously permitted by other courts in similar internet privacy cases. Accordingly, the lodestar cross-check confirms the reasonableness of the percentage-based calculation.

### C. Incentive Awards

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977. To determine the appropriateness of incentive awards a district court should use "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Id. (internal quotation marks omitted).

The Settlement Agreement provides that the named Plaintiffs may receive incentive awards of up to $5,000 each. In this district, that amount is presumptively reasonable. Jacobs v. Cal. State Auto. Ass'n Inter-Ins. Bureau, No. C 07-00362 MHP, 2009 U.S. Dist. LEXIS 101586, at *13-14, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009). Since the named plaintiffs assumed the responsibilities and burdens of acting as representatives in this lawsuit, including providing documents, verifying allegations, and consulting with counsel, the court finds the incentive awards reasonable in light of the eligibility factors set forth in Staton.

**V.  OBJECTIONS**

The court now addresses the points raised in the four written objections, keeping in mind that objectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement. United States v. Oregon, 913 F.2d 576, 581 (9th Cir. 1990).

The objectors have not satisfied this burden. To begin, all four objectors take issue with the cy pres character of this settlement, or with cy pres settlements in general. These arguments overlook both the law of this circuit which permits cy pres settlements such as this one, and the indirect benefit provided by a cy pres settlements. See Lane, 696 F.3d at 819. In addition, the court has explained why Plaintiffs made a sufficient showing that the cost of distributing this or really any settlement fund to the class members would be prohibitive.

The objectors similarly argue that the size of the settlement fund is insufficient in comparison to the value of the case, and believe that a fair settlement would have resulted in an end to Google's "unlawful" practices. This contention is misguided, however, because the objectors do not account for the significant and potentially case-ending weakness in the SCA claim brought about by the Ninth Circuit's decision in Zynga Privacy Litigation. In light of this development, whether or not Google's practice of disclosing search queries can actually be characterized as unlawful is questionable. In the end, the parties fashioned a settlement in consideration of the favorable and unfavorable aspects of each side's case. And it is the parties

18
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

themselves, as opposed to the court or the objectors, who are in the best position to assess whether a settlement "fairly reflects" their "expected outcome in litigation." In re Pac. Ents. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995). Just because a settlement could be improved does not mean it is not fair, reasonable or adequate. Hanlon, 150 F.3d at 1027. Here, there is no reason to believe the settlement is inadequate when viewed against the diminished strength of the claims.

Objectors also argue that the cy pres recipients are unrelated to the subject matter of this case, and one claims there is a conflict of interest because some of the attorneys representing Plaintiffs attended Harvard University. The court rejects these arguments. The chosen recipients and their respective proposals are sufficiently related so as to warrant approval; they do not have to be the recipients that objectors or the court consider ideal. Lane, 696 F.3d at 820-21. Additionally, while the potential for a conflict of interest is noted, there is no indication that counsel's allegiance to a particular alma mater factored into the selection process. Indeed, the identity of potential cy pres recipients was a negotiated term included in the Settlement Agreement and therefore not chosen solely by Harvard alumni.

Some objections challenge the notice plan or the contents of the notice and describe alternative ways that notice could have been provided to the class. It may be true that other methods of notice exist. But here, the court approved one specific plan that satisfied the standard Rule 23(c)(2)(B) standard. Although the plan did not call for individual notice, that type of notice is not required in all cases. See Mullane, 339 U.S. at 315.

Finally, the objectors challenge the provisions of the Settlement Agreement which provide for attorneys fees and incentive awards. The court does not agree that the fees and incentive awards are inconsistent with the value of the class benefit, and notes that the approved amounts are consistent with the relevant Ninth Circuit authority on this topic.

For these reasons, the court is unpersuaded by the objections. They are each overruled.

## VI. CONCLUSION AND ORDER

Based on the preceding discussion, the court finds that the terms of the settlement,

19
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS

including the awards of attorneys fees, costs, and incentive awards, is fair, adequate, and reasonable; that it satisfies Federal Rule of Civil Procedure 23(e) and the fairness and adequacy factors; and that it should be approved and implemented.

The Motion for Final Approval (Docket Item No. 65) and the Motion for Attorneys Fees and Costs (Docket Item No. 66) are therefore GRANTED. The Clerk shall close this file upon entry of Judgment.

**IT IS SO ORDERED.**

Dated: March 31, 2015



EDWARD J. DAVILA
United States District Judge

20
Case No.: 5:10-cv-04809-EJD
ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEYS FEES, COSTS AND INCENTIVE AWARDS