UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE GOOGLE REFERRER HEADER PRIVACY LITIGATION

Case No.  10-cv-04809-EJD

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 107

This is a class action concerning Defendant Google, LLC's alleged disclosure of users' search terms to third party servers; it was originally settled in 2013.  The case now returns to the Court upon remand from the U.S. Supreme Court, which vacated the settlement and instructed this Court to evaluate the plaintiffs' Article III standing in light of its decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  *See Frank v. Gaos*, 139 S. Ct. 1041, 1046 (2019).  The Court has now done so, aided by the parties' briefing and a hearing conducted on June 4, 2020.  The Court finds that Plaintiffs have standing to bring their claims and DENIES Defendant's motion to dismiss.

## I.    BACKGROUND

This suit's path to the present motion is a long and circuitous one; accordingly, a brief review of how we got here is in order.

Defendant Google, LLC ("Google") operates an Internet search engine, which allows users to search for websites based on a query of keywords or phrases.  Dkt. No. 51, Ex. A ("Consol. Compl.") ¶¶ 15-16.  Upon a search, Google displays the search results as a list of hyperlinks to the relevant websites; the user may click on a link to travel to the desired site.  *Id.* ¶¶ 56-57.  Plaintiffs

United States District Court
Northern District of California

1  allege that when a user clicks on a search result, Google transmits the user's search terms to the

2  third-party server that hosts the website the user seeks to view. *Id.* That is because the "Uniform

3  Resource Locator" ("URL") used to direct the user to the requested website contains the URL of

4  the last site the user visited—i.e., the page that "referred" them to the requested website; this

5  information is known is as the "referrer header." *Id.* ¶¶ 50-57; *see generally In re Zynga Privacy*

6  *Litig.*, 750 F.3d 1098, 1101 (9th Cir. 2014) (explaining URLs and referrer headers).

7  Believing that the disclosure of search terms to third parties violates users' statutory and

8  contractual privacy rights, Named Plaintiff Paloma Gaos filed the original Complaint in October

9  2010. Dkt. No. 1 ("Compl."). The case was assigned to the undersigned judge in April 2011, Dkt.

10  No. 25, and Plaintiff Gaos filed the First Amended Complaint ("FAC") in May 2011, Dkt. No. 26

11  ("FAC"). The FAC contains one federal claim for violation of the Electronic Communications

12  Privacy Act ("ECPA"), 18 U.S.C. § 2702(a), and six state law claims for fraudulent

13  misrepresentation, negligent misrepresentation, public disclosure of private facts, actual and

14  constructive fraud under Cal. Civ. Code §§ 1572, 1573, breach of contract, and unjust enrichment.

15  FAC ¶¶ 93-137. In May 2011, Defendant moved to dismiss the FAC pursuant to Federal Rules of

16  Civil Procedure 12(b)(1) and 12(b)(6), Dkt. No. 29. As relevant to the instant dispute, Defendant

17  argued that Plaintiff Gaos lacked standing to bring any of the claims in the FAC. *Gaos v. Google*

18  *Inc.*, No. 5:10-CV-4809 EJD, 2012 WL 1094646, at *1 (N.D. Cal. Mar. 29, 2012).

19  This Court granted the motion in part and denied it in part. *Id.*; Dkt. No. 38. First, the

20  Court found that Plaintiff Gaos had failed to adequately plead standing to bring her six state law

21  claims and dismissed those claims with leave to amend. *Gaos v. Google Inc.*, 2012 WL 1094646

22  at *2. On the other hand, Gaos's federal claim alleged a violation of her rights under Title II of the

23  ECPA, which is the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701 *et seq.* This Court

24  rejected Defendant's contention that Plaintiff Gaos had not adequately alleged an injury in fact, as

25  necessary for Article III standing. *Gaos v. Google Inc.*, 2012 WL 1094646 at *3-*4; *see* Dkt. No.

26  29 at 7-10. Citing *Edwards v. First American Corporation*, 610 F.3d 514 (9th Cir. 2010), the

27  Court observed that "[t]he injury required by Article III . . . can exist solely by virtue of 'statutes

28  Case No.: 10-cv-04809-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   creating legal rights, the invasion of which creates standing.'"  2012 WL 1094646 at *3 (quoting

2   *Edwards*, 510 F. 3d at 517).  The Court then recognized that "a violation of one's statutory rights

3   under the SCA" is, by itself, "a concrete injury" and found that Plaintiff Gaos had standing to

4   assert the SCA claim.  *Id.* (citing *Jewel v. National Security Agency*, 673 F.3d 902, 908 (9th Cir.

5   2011)).

6       In an effort to cure the standing deficiencies as to the state law claims, Gaos and an

7   additional named plaintiff (Anthony Italiano) filed the Second Amended Complaint ("SAC").

8   Dkt. No. 39 ("SAC").  The SAC also contained new factual allegations that in October 2011,

9   Google changed its practice regarding referrer headers.  According to the SAC, Google's new

10  practice was to "scrub" search terms from the referrer headers on "regular, organic search results"

11  when users are logged into a Google service; however, Google would continue to include search

12  terms in referrer headers when users click on "paid links or advertisements."  SAC ¶¶ 6, 64-66.

13  Thus, in Plaintiffs' view, Google "is now effectively selling search queries to paying advertisers."

14  *Id.* ¶ 67.

15      Defendant again moved to dismiss the SAC for lack of Article III standing.  As to the state

16  law claims, Defendant argued that Plaintiffs had not cured the deficiencies in the FAC.  In

17  addition, Defendant renewed its standing challenge to the SCA claim.  Although Defendant

18  recognized that this Court had already rejected its argument on this front, the U.S. Supreme Court

19  had granted certiorari in *Edwards*, 510 F.3d 514; because this Court had relied in part on *Edwards*

20  in finding standing, Defendant urged the Court to reconsider its decision in the event *Edwards* was

21  reversed.  Dkt. No. 44 at 3.  When the Supreme Court dismissed *Edwards* as improvidently

22  granted, 567 U.S. 756 (2012), however, Defendant withdrew its standing argument against the

23  SCA claim.  Dkt. No. 46 at 2 n.2.

24      Then, before this Court made its ruling on Defendant's motion to dismiss the SAC, the

25  parties stipulated to the consolidation of Gaos and Italiano's case with another class action, and

26  Plaintiffs filed the now-operative Consolidated Complaint.  Dkt. Nos. 50, 51.  The motion to

27  dismiss the SAC was therefore terminated as moot.  Dkt. No. 51.

28  Case No.: 10-cv-04809-EJD
    ORDER DENYING MOTION TO DISMISS
                                    3

1          Shortly thereafter, in July 2013, the parties reached a classwide settlement.  The settlement

2    agreement provided, among other things, that Defendant would pay a settlement amount of $8.5

3    million, none of which would be distributed to absent class members; rather, any funds not used

4    for costs, attorney's fees, and incentive payments would be distributed to six *cy pres* recipients.

5    This Court granted preliminary and then final approval of the settlement, over the objections of

6    five class members.  Dkt. Nos. 63, 85; *see Frank v. Gaos*, 139 S. Ct. 1041, 1045 (2019).  Two of

7    the objectors appealed the settlement to the Ninth Circuit, challenging the propriety of *cy pres*

8    relief as well as the selection of the *cy pres* recipients.  The Ninth Circuit affirmed this Court's

9    approval of the settlement.  *In re Google Referrer Header Privacy Litigation*, 869 F.3d 737 (9th

10   Cir. 2017).

11         Undeterred, the objectors petitioned for certiorari before the U.S. Supreme Court, and their

12   petition was granted.  *Frank v. Gaos*, 138 S. Ct. 1697 (2018).  Instead of reaching the merits of the

13   *cy pres* issues, however, the Supreme Court identified a potential threshold obstacle: In 2016,

14   while the objectors' Ninth Circuit appeal was pending, the Supreme Court had issued its opinion

15   in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  The Supreme Court explained that *Spokeo*

16   "abrogated the ruling in *Edwards* that the violation of a statutory right automatically satisfies the

17   injury-in-fact requirement whenever a statute authorizes a person to sue to vindicate that right."

18   *Frank v. Gaos*, 139 S. Ct. at 1046.  But "[b]ecause Google withdrew its standing challenge after

19   we dismissed *Edwards* as improvidently granted, neither the District Court nor the Ninth Circuit

20   ever opined on whether any named plaintiff sufficiently alleged standing in the operative

21   complaint."  *Id.*  As this Court lacked power to approve the proposed class settlement if no named

22   plaintiff had standing, the Supreme Court concluded that this Court should "address the plaintiffs'

23   standing in light of *Spokeo*" in order to assure its jurisdiction.  *Id.*  The Supreme Court therefore

24   vacated the judgment and remanded the case to the Ninth Circuit, *id.*, which remanded the case to

25   this Court, Dkt. No. 99.

26         In accordance with the Supreme Court's order, Defendant filed a motion to dismiss the

27   operative Consolidated Complaint for lack of standing on March 20, 2020; that motion is now ripe

28   Case No.: 10-cv-04809-EJD
     ORDER DENYING MOTION TO DISMISS

                                                     4

1    for this Court's review.  Dkt. Nos. 107, 108, 109, 110.

2    **II.    LEGAL STANDARD**

3           The Court begins by reviewing the basic legal standards applicable to Defendant's motion

4    to dismiss, which is brought under Federal Rule of Civil Procedure 12(b)(1).  A Rule 12(b)(1)

5    motion tests whether the court has subject matter jurisdiction to hear the claims alleged in the

6    complaint.  Here, Defendant contends that Plaintiffs lack Article III standing, which "is a

7    necessary component of subject matter jurisdiction."  *In re Palmdale Hills Prop.*, LLC, 654 F.3d

8    868, 873 (9th Cir. 2011).

9           The Supreme Court has repeatedly stated that the "irreducible constitutional minimum of

10   standing" consists of three elements, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992): "The

11   plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

12   conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision,"

13   *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  These elements are typically referred to as

14   injury in fact, causation, and redressability.  *See, e.g.*, *Planned Parenthood of Greater Washington*

15   *& N. Idaho v. U.S. Dep't of Health & Human Servs.*, 946 F.3d 1100, 1108 (9th Cir. 2020).

16   Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing the existence

17   of Article III standing and, at the pleading stage, "must clearly allege facts demonstrating each

18   element."  *Spokeo*, 136 S. Ct. at 1547 (internal quotations omitted); *see also Baker v. United*

19   *States*, 722 F.2d 517, 518 (9th Cir. 1983) ("The facts to show standing must be clearly apparent on

20   the face of the complaint.").

21          "In a class action, this standing inquiry focuses on the class representatives*." NEI*

22   *Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir.

23   2019).  The named plaintiffs "must allege and show that they personally have been injured, not

24   that injury has been suffered by other, unidentified members of the class to which they belong and

25   which they purport to represent."  *Warth v. Seldin*, 422 U.S. 490, 502 (1975).  Standing for the

26   putative class "is satisfied if at least one named plaintiff meets the requirements." *Bates v. United*

27   *Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  But if none of the named plaintiffs

28   Case No.: 10-cv-04809-EJD
     ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1  purporting to represent a class can establish standing to sue, the class action cannot proceed.  *See*

2  *NEI Contracting*, 926 F.3d at 532 (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

3        Where, as here, the Rule 12(b)(1) motion is a facial challenge to Plaintiffs' standing, the

4  court considers whether the allegations contained in the complaint are sufficient on their face to

5  invoke federal jurisdiction.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

6  2004).  That is, a district court "resolves a facial attack as it would a motion to dismiss under Rule

7  12(b)(6):  Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the

8  plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to

9  invoke the court's jurisdiction."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).  As with

10  a Rule 12(b)(6) motion, however, a court is not required "to accept as true allegations that are

11  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead*

12  *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008); *see also Thomas v. Mundell*, 572 F.3d 756,

13  763 (9th Cir. 2009) (finding allegations "too vague" to support standing).

14        Finally, the Court notes that the question of standing is "distinct from the merits" of a

15  plaintiff's claim.  *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011); *see also Warth v.*

16  *Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's

17  contention that particular conduct is illegal . . . .").  Hence, when considering whether a plaintiff

18  has standing, a federal court may assume *arguendo* the merits of the plaintiff's legal claim.

19  ## III.   DISCUSSION

20        The Court now turns to the substance of Defendant's motion.  The operative pleading is

21  the Consolidated Complaint, which contains six claims: (1) violation of the ECPA, 18 U.S.C.

22  § 2702(a), Consol. Compl. ¶¶ 130-141; (2) breach of contract, *id.* ¶¶ 142-47; (3) breach of the

23  covenant of good faith and fair dealing, *id.* ¶¶ 148-152; (4) breach of contract implied in law, *id.*

24  ¶¶ 153-58; (5) unjust enrichment, *id.* ¶¶ 159-163; (6) declaratory judgment and corresponding

25  injunctive relief under 28 U.S.C. §§ 2201-2202, *id.* ¶¶ 164-171.  Defendant contends that Plaintiffs

26  lack Article III standing to bring any of these claims.  Specifically, Defendant's motion concerns

27  the injury in fact element; it does not contest causation or redressability.  *See* Dkt. No. 107

28  Case No.: 10-cv-04809-EJD
ORDER DENYING MOTION TO DISMISS

("Mot.") at 9.

As set forth below, the Court concludes that Plaintiffs have met their burden of establishing injury in fact as to each of their claims for relief, wherefore Defendant's motion is DENIED.

### A.   ECPA Violation

First, the Court considers whether Plaintiffs have standing to assert Count 1, i.e., that Google violated Title II of the ECPA, 18 U.S.C. § 2702(a).

Injury in fact is the "first and foremost element" of standing, *Dutta v. State Farm Mut. Auto. Ins. Co.*, 895 F.3d 1166, 1173 (9th Cir. 2018); it serves "to ensure that the plaintiff has a personal stake in the litigation." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (internal quotations omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). In this case, the Supreme Court has instructed the Court to focus on the concreteness of Plaintiffs' injury in fact. Concreteness "requires an injury to be *de facto*, that is, to actually exist." *Spokeo*, 136 S. Ct. at 1543 (internal quotations omitted). Although concrete means "real, and not abstract," it is not "synonymous with 'tangible'"; intangible injuries can certainly be concrete. *Id.* at 1549. In determining whether an intangible injury is concrete, "both history and the judgment of Congress play important roles." *Id.* at 1548. "We consider history because 'it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.'" *Patel v. Facebook*, Inc., 932 F.3d 1264, 1270 (9th Cir. 2019) (quoting *Spokeo*, 136 S. Ct. at 1549). "We must also examine legislative judgment because legislatures are 'well positioned to identify intangible harms that meet minimum Article III requirements.'" *Id.* (quoting *Spokeo*, 136 S. Ct. at 1543).

In this Court's 2012 order on Plaintiffs' standing to assert the FAC, the Court found that Defendant's alleged violation of the SCA is itself a concrete injury. *Gaos*, 2012 WL 1094646, at

United States District Court
Northern District of California

*1.  The Court based that finding on the Ninth Circuit's statement in *Edwards* that "[t]he injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing."  610 F.3d at 517 (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)).  In this case, the ECPA creates the relevant legal right, namely, a right against the disclosure of "the contents of any communication" that is "carried or maintained on," 18 U.S.C. § 2702(a)(2), or "in electronic storage by," *id.* § 2702(a)(1), an electronic communication service provider.  Because those provisions of the ECPA "provide[] a right to judicial relief . . . without additional injury," the Court held that any violation of these statutory rights is a concrete injury.  *Gaos*, 2012 WL 1094646, at *3 (citing *Jewel*, 673 F.3d at 908).

Pursuant to the Supreme Court's instruction, the Court now reevaluates this conclusion in light of *Spokeo*.

As the Supreme Court emphasized, *Spokeo* rejected the proposition that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right," *Frank*, 139 S. Ct. at 1045 (quoting *Spokeo*, 136 S. Ct. at 1549).  By way of example, the *Spokeo* Court stated that a "bare procedural violation, divorced from any concrete harm," does not "satisfy the injury-in-fact requirement of Article III."  *Spokeo*, 136 S. Ct. at 1549.  At the same time, however, *Spokeo* recognized that Congress may enact statutes that "'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate' to confer standing."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1549).  "A plaintiff in such a case need not allege any additional harm beyond the one Congress has identified."  *Spokeo*, 136 S. Ct. at 1549.

The Ninth Circuit has parsed these principles as follows: "When a legislature has enacted a 'bare *procedural*' protection, a plaintiff 'cannot satisfy the demands of Article III' by pointing only to a violation of that provision, but also must link it to a concrete harm."  *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020) (quoting *Spokeo*, 136 S. Ct. at 1550) (emphasis in original).  "When, however, a statutory provision identifies a *substantive* right that is

Case No.: 10-cv-04809-EJD
ORDER DENYING MOTION TO DISMISS
8

United States District Court
Northern District of California

1    infringed any time it is violated, a plaintiff bringing a claim under that provision need not allege

2    any further harm to have standing." *Id.* (internal quotations omitted) (emphasis in original).  The

3    upshot is that if the ECPA provisions alleged to be violated in Count 1 protect a substantive right

4    as opposed to a purely procedural one, Plaintiffs have pleaded the invasion of a legally protected

5    interest that is concrete.

6         The Court is satisfied that, under the Ninth Circuit's post-*Spokeo* case law, the answer is

7    yes.  The Ninth Circuit has identified several state and federal statutes that protect individuals'

8    substantive privacy interests.  For instance, in *Eichenberger v. ESPN, Inc.*, the court held that the

9    Video Privacy Protection Act of 1988 ("VPPA"), 18 U.S.C. § 2710(b)(1), "identifies a substantive

10   right to privacy that suffers *any time* a video service provider discloses otherwise private

11   information."  876 F.3d 979, 983-84 (9th Cir. 2017) (emphasis added).  Heeding the Supreme

12   Court's teaching to consider history, the Ninth Circuit observed that "[v]iolations of the right to

13   privacy have long been actionable at common law" and that those "privacy torts do not always

14   require additional consequences to be actionable."  *Id.*  Likewise, statutes like the VPPA do not

15   only protect against harms that come from the use of disclosed information; rather, they "protect[]

16   privacy interests more generally by ensuring that consumers retain control over their personal

17   information."  *Id.* at 983.  Thus, the court found, every violation of 18 U.S.C. § 2710(b)(1)

18   presents a concrete harm to the privacy interests Congress sought to protect in enacting the VPPA.

19   *Id.* at 984.

20        Similarly, in *Van Patten v. Vertical Fitness Group, LLC*, the Ninth Circuit held that the

21   provisions in the Telephone Consumer Protection Act ("TCPA") prohibiting a telemarketer from

22   calling or texting a consumer without the consumer's consent "protect the plaintiff's substantive

23   right to privacy, namely the right to be free from unsolicited telemarketing phone calls or text

24   messages that 'invade the privacy and disturb the solitude of their recipients.'"  *Patel*, 932 F.3d at

25   1271 (quoting *Van Patten*, 847 F.3d 1037, 1041–43 (9th Cir. 2017)).  For that reason, the court

26   said, "a plaintiff alleging a violation under the TCPA need not allege any additional harm."  *Van*

27   *Patten*, 847 F.3d at 1043 (internal quotations omitted).  Illinois's Biometric Information Privacy

28   Case No.: 10-cv-04809-EJD
     ORDER DENYING MOTION TO DISMISS

1  Act ("BIPA") is yet another example of a statute that "protect[s] an individual's concrete interests

2  in privacy, not merely procedural rights."  *Patel*, 932 F.3d at 1274 (internal quotations omitted)

3  (holding that BIPA protects "the right not to be subject to the collection and use of . . . biometric

4  data").

5  Of particular relevance here, the Ninth Circuit has recognized that the ECPA—the very

6  statute at issue in this case—is among these statutes that "codify a context-specific extension of

7  the *substantive* right to privacy," the violation of which is a concrete harm.  *Campbell*, 951 F.3d at

8  1117 (internal quotation omitted) (emphasis in original); *see also In re Facebook, Inc. Internet*

9  *Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020).

10  Issued in March of this year, *Campbell* concerned provisions of the ECPA that provide a

11  private right of action against one who "intentionally intercepts or endeavors to intercept" any

12  wire, oral, or electronic communication, *see* 18 U.S.C. § 2511(1)(a), and against one who

13  "intentionally uses, or endeavors to use" the contents of a communication knowingly obtained

14  through such interception, *see id.* § 2511(1)(d).  *Campbell*, 951 F.3d at 1112.  The case also

15  involved analogous provisions of the California Invasion of Privacy Act ("CIPA"), *see* Cal. Penal

16  Code § 631(a).  *Id.*  As the Ninth Circuit explained, the ECPA and the CIPA "are targeted at the

17  substantive intrusion that occurs when private communications are intercepted by someone who

18  does not have the right to access them."  *Id.* at 1119.  The private rights of action contained

19  therein—like those examined in the above-cited cases—"bear a 'close relationship'" to traditional

20  privacy torts such as unreasonable intrusion upon seclusion.  *Id.* at 1117-18 (quoting *Spokeo*, 136

21  S. Ct. at 1549).  These provisions "represent statutory modernizations of the privacy protections

22  available at common law" in light of new technology.  *Id.* at 1118; *see also In re Facebook, Inc.*

23  *Internet Tracking Litig.*, 956 F.3d at 599 (emphasizing that "[a]dvances in technology can increase

24  the potential for unreasonable intrusions into personal privacy").  They also reflect the

25  "legislatures' judgment about the importance of the privacy interests violated when

26  communications are intercepted."  *Campbell*, 951 F.3d at 1118.  Accordingly, the Ninth Circuit

27  held, "*every* violation of the provisions of ECPA and CIPA at issue" is a clear de facto injury.  *Id.*

28  Case No.: 10-cv-04809-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

10

1         One month later, in *In re Facebook, Inc. Internet Tracking Litigation*, the Ninth Circuit

2   affirmed its determination that the ECPA "codif[ies] a substantive right to privacy, the violation of

3   which gives rise to a concrete injury sufficient to confer standing."  956 F.3d at 598.  Moreover,

4   whereas *Campbell* focused on the Wiretap Act portions of the ECPA (Title I), *In re Facebook*

5   made clear that the SCA portions of the ECPA (Title II) likewise protect "historical privacy

6   rights."  *Id.* at 598 (discussing 18 U.S.C. § 2701).  Specifically, the SCA "protects individuals'

7   privacy and proprietary interests" in communications stored with electronic communication

8   service providers.  *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004).

9         It does so by providing a private right of action against both unlawful *access* to

10  communications in electronic storage, *see* 18 U.S.C. § 2701, and unlawful *disclosure* of such

11  communications, *see* 18 U.S.C. § 2702.  The Ninth Circuit has analogized the unlawful access

12  provisions of the SCA to the common law tort of trespass: "Just as trespass protects those who rent

13  space from a commercial storage facility to hold sensitive documents, the Act protects users

14  whose electronic communications are in electronic storage with an ISP or other electronic

15  communications facility."  *Theofel*, 359 F.3d at 1072–73 (internal quotations and citations

16  omitted).  The unlawful disclosure provisions of the SCA, moreover, are closely analogous to the

17  common law tort of breach of confidence.  "A common law breach of confidence lies where a

18  person offers private information to a third party in confidence and the third party reveals that

19  information to another."  *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir.

20  2019).  Though Defendant resists this analogy, the Court believes the SCA "establishes a similar

21  relationship of trust between" user and electronic communication service provider; that

22  relationship renders a SCA violation sufficiently similar to a breach of confidence to satisfy

23  *Spokeo*.  *See id.* (analogizing a violation of the Fair and Accurate Credit Transactions Act of 2003

24  ("FACTA") to a breach of confidence based on the "relationship of trust" between consumer and

25  merchant under FACTA).

26        Of course, the SCA also "reflects Congress's judgment that users have a legitimate interest

27  in the confidentiality of communications in electronic storage at a communications facility."

28  Case No.: 10-cv-04809-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1   *Theofel*, 359 F.3d at 1072–73; *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at

2   598-99 (finding the SCA was enacted "to protect privacy interests in personal and proprietary

3   information").  The provision pertinent to this case, 18 U.S.C. § 2702, establishes that those

4   interests are concretely—though perhaps intangibly—harmed by the unauthorized disclosure of

5   the communications to a third party.

6          For all these reasons, the Court concludes that, as with the provisions of ECPA considered

7   in *Campbell* and *In re Facebook*, 18 U.S.C. § 2702 "guard[s] against invasions of concrete privacy

8   interests" such that every violation thereof causes concrete harm.  *Campbell*, 951 F.3d at 1118.

9   Plaintiffs have therefore pleaded a concrete injury by claiming that Google violated 18 U.S.C.

10  § 2702 when it disclosed their search terms to third parties without authorization.  *See id.* at 1119.

11         Defendant spends the bulk of its brief arguing that Plaintiffs cannot show the search terms

12  can or will be linked to a searcher's identity.  Mot. at 11.  In Defendant's view, if the searcher

13  cannot be identified, anonymized search terms could "rarely if ever could result in harm or

14  certainly impending harm."  Mot. at 11.  But that argument assumes that harm must take the form

15  of "individuals' discovered identities" being "exploit[ed] . . . to their detriment."  *Id.* at 19; *see*

16  *also id.* at 18-21.  Not so.  As just explained, 18 U.S.C. § 2702 protects users' privacy rights

17  against the mere disclosure of their communications; the statute makes such disclosure actionable

18  regardless whether those communications reveal the user's identity.  Congress has, in other words,

19  identified a concrete privacy interest in communications stored with electronic communication

20  service providers—even if those communications cannot be linked to the user.  After all,

21  information need not be personally identifying to be private.  Because Plaintiffs "need not allege

22  any additional harm beyond the one Congress has identified."  *Spokeo*, 136 S.Ct. at 1549, their

23  standing in no way depends on whether the search terms may be used to discover their identities.[1]

24  *See Campbell*, 951 F.3d at 1119.

25

26  _____

27  [1] Accordingly, the Court does not reach the issue of whether the risk of future harm—i.e., the risk
    that anonymized search terms will be "reidentified" with the users—is also an injury-in-fact that is
    "actual" and not "hypothetical."  *See* Dkt. No. 109 ("Opp.") at 8-9.

28  Case No.: 10-cv-04809-EJD
    ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    Defendant's attempt to distinguish *Campbell* and *In re Facebook* on the ground that the

2    information involved in those cases was personally identifying is similarly unavailing.  Mot. at 13;

3    *see also* Dkt. No. 110 ("Reply") at 2.  Again, the Ninth Circuit did not rest its decision in either

4    case on the particular type of data at issue.  Rather, it looked to Congress's definition of private

5    information as set forth in the ECPA, and the ECPA covers communications that are personally

6    identifying and communications that are not.  *See* 18 U.S.C. § 2510.

7    Finally, Defendant's related argument that Plaintiffs are not persons "aggrieved" within the

8    meaning of 18 U.S.C. § 2707(a) because the risk of identification is too speculative, Mot. at 17,

9    goes to the merits of Plaintiffs' SCA claim.  *See Jewel*, 673 F.3d at 907 n.4.  It presents no bar to

10   Plaintiffs' standing to assert the claim.

11   Having confirmed that Plaintiffs have claimed the invasion of their concrete legal rights

12   under the ECPA, the Court finds that they have standing to pursue Count 1.  Defendant's motion

13   to dismiss Count 1 is therefore DENIED.

14   **B.    Common Law Breach of Contract Claims**

15   Next, the Court considers Counts 2 and 3, which are breach of contract claims brought

16   under California law, *see* Consol. Compl. ¶¶ 11-12.  Both claims allege that Google breached its

17   Terms of Service by transmitting Plaintiffs' search terms to third parties through referrer headers.

18   Specifically, Count 2 alleges a breach of express terms in the Terms of Service, which allegedly

19   included promises not to disclose users' "web history" and other "personal information" except

20   under specified circumstances.  *Id.* ¶¶ 25-40.  Count 3 alleges a breach of the covenant of good

21   faith and fair dealing, which, under California law, is implied into every contract, *see Carma*

22   *Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 371 (1992).  Consol.

23   Compl. ¶¶ 148-152.

24   Defendant argues that Plaintiffs have not pleaded the injury in fact necessary to pursue

25   these breach of contract claims.  Defendant again focuses on the risk that the search terms could be

26   linked to Plaintiffs' identities, which Defendant believes is too speculative to constitute injury in

27   fact.  Mot. at 20; Reply at 10.  Plaintiffs responds that actual damages are not required to establish

28   Case No.: 10-cv-04809-EJD
ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    standing for contractual claims under California law, which provides for nominal damages.  Dkt.

2    No. 109 ("Opp.") at 10-12.

3          The Court agrees with Plaintiffs that under California law, "[t]he failure to perform a duty

4    required by contract is a legal wrong, independently of actual damage sustained by the party to

5    whom performance is due."  *Kenyon v. W. Union Tel. Co.*, 100 Cal. 454, 458 (1893); *see also*

6    *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (1959).  Indeed, such is the longstanding common

7    law rule in most states.  *See generally* 22 Am. Jur. 2d Damages § 17 (collecting cases); *see also*

8    *Spokeo*, 136 S. Ct. at 1551 (Thomas, J., concurring) ("In a suit for the violation of a private

9    right"—including "contract rights"—"courts historically presumed that the plaintiff suffered a de

10   facto injury merely from having his personal, legal rights invaded.").  Pursuant to California Civil

11   Code § 3360, moreover, "a plaintiff who proves a 'breach of duty' (including breach of contract)

12   but fails to show any 'appreciable detriment'—i.e., damages—nevertheless 'may . . . recover'

13   nominal damages."  *Tribeca Companies, LLC v. First Am. Title Ins. Co.*, 239 Cal. App. 4th 1088,

14   1103 n.12 (2015) (quoting Cal. Civ. Code § 3360); *see also* 23 Cal. Jur. 3d Damages § 9; *Avina v.*

15   *Spurlock*, 28 Cal. App. 3d 1086, 1088 (Ct. App. 1972) ("Nominal damages are properly awarded .

16   . . [w]here there is no loss or injury to be compensated but where the law still recognizes a

17   technical invasion of a plaintiff's rights or a breach of a defendant's duty.").

18         Thus, "a breach of contract claim accrues at the moment of breach" and "the injury, for

19   standing purposes, is the breach itself."  *Alston v. Flagstar Bank, FSB*, 609 Fed. App'x 2, 3 (D.C.

20   Cir. 2015).  An individual to whom a contractual duty is owed may, therefore, allege a concrete

21   legal injury by virtue of the duty's breach, apart from any actual damages stemming from that

22   breach.  *Accord Strother v. Baldwin*, No. 216CV00255TLNCKD, 2017 WL 6017137, at *5 (E.D.

23   Cal. Dec. 5, 2017), *aff'd*, 774 Fed. App'x 1016 (9th Cir. 2019); *In re Facebook Privacy Litig.*, 192

24   F. Supp. 3d 1053, 1061 (N.D. Cal. 2016).  Nominal damages would redress that injury, "even if

25   only to a minimal extent."  *Skyline Wesleyan Church v. California Dep't of Managed Health*

26   *Care*, No. 18-55451, 2020 WL 2464926, at *8 (9th Cir. May 13, 2020) (holding plaintiff had

27   standing at least to seek nominal damages); *cf. Engebretson v. Mahoney*, 724 F.3d 1034, 1038 (9th

28   Case No.: 10-cv-04809-EJD
     ORDER DENYING MOTION TO DISMISS

United States District Court
Northern District of California

1    Cir. 2013) (finding that plaintiffs have standing to seek nominal damages for a violation of their

2    constitutional rights under 42 U.S.C. § 1983, "even without any actual injury for which they may

3    seek compensatory damages").

4         The Court acknowledges that other courts in this district have taken a contrary view.  *See*

5    *Svenson v. Google Inc.,* No. 13-CV-04080-BLF, 2016 WL 8943301, at *10 (N.D. Cal. Dec. 21,

6    2016); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 990-91 (N.D. Cal. 2015).  Nevertheless, for

7    the reasons already given, the Court believes its determination that the breach of a contractual

8    right is a concrete injury for Article III purposes is supported by *Spokeo* and California law.

9         Defendant is correct, of course, that "merely inserting a breach of contract claim into a

10   complaint" is not enough "to generate standing."  Reply at 11.  Although the merits of Plaintiffs'

11   contract claims are not at issue at the standing stage, Plaintiffs must identify the contractual duty

12   that is owed to them and the manner of breach by Google.  The Court finds that they have done so:

13   Plaintiffs allege that they agreed to use Google's search engine services in exchange for Google

14   abiding by its Terms of Service, which incorporate its "Web History Privacy Policy" and "Privacy

15   Policy."  Consol. Compl. ¶ 144.  Pursuant to certain express promises contained in the Terms of

16   Service and/or the implied covenant of good faith and fair dealing, Google was under a contractual

17   duty not to share Plaintiffs' "personal information" and "web history" except under certain

18   specified circumstances.  *Id.* ¶ 25, 29, 34.  Plaintiffs allege that Google breached that duty by

19   sending Plaintiffs' search terms to third parties via referrer headers.  *Id.* ¶ 36.

20        Now, Defendant disputes that the search terms qualify as "personal information" and that

21   their actions amount to a breach.  But that dispute goes to the merits of Plaintiffs' contract claims,

22   not to their standing to assert these claims.  Plaintiffs have identified a concrete contractual duty

23   that was allegedly owed to them and that was breached by Defendant; that suffices to demonstrate

24   injury in fact at the pleading stage.  Defendant's motion to dismiss Counts 2 and 3 for lack of

25   standing is DENIED.

26        **C.    Quasi-contract Claims**

27        Counts 4 and 5 are quasi-contract claims: Count 4 alleges a claim for breach of implied-in-

28

law contract and Count 5 alleges, in the alternative, a claim for unjust enrichment.  Consol.

Compl. ¶¶ 153-163.  The gravamen of both is that Google has "increased its revenues and profits"

by "sharing its users' search queries third parties without their consent."  *Id.* ¶¶ 156, 160.

Plaintiffs allege that Google has done this by "in effect, selling individual user search queries to

advertisers," in that, as of October 2011, Google scrubs the search terms from organic search

results but not from paid listings; thus, receiving search terms in referrer headers is part of what

Google's advertisers now pay for.  *Id.* ¶ 6.  Therefore, in Plaintiffs' view, Google has been

unjustly enriched through the use of Plaintiffs' search terms.  *Id.* ¶¶ 158, 163.

"California law recognizes a right to disgorgement of profits resulting from unjust

enrichment, even where an individual has not suffered a corresponding loss."  *In re Facebook, Inc.*

*Internet Tracking Litig.*, 956 F.3d at 599–600 (citing *Cty. of San Bernardino v. Walsh*, 158 Cal.

App. 4th 533, 542 (2007) and *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996)).  As a result, the

Ninth Circuit has explained, "an entitlement to unjustly earned profits" is "sufficient to confer

Article III standing."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 600.

To show an entitlement to unjustly earned profits, a plaintiff must show that he or she

"retain[s] a stake in the profits . . . because 'circumstances are such that, as between the two

parties, it is *unjust* for Facebook to retain it.'"  *In re Facebook, Inc. Internet Tracking Litig.*, 956

F.3d at 600 (alterations omitted) (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 389

(2004)).  The Ninth Circuit found this test was satisfied in *In re Facebook*, which involved

allegations of unjust enrichment that are similar to the ones in this case.  There, the Ninth Circuit

determined that plaintiffs' allegations that Facebook had unjustly profited from disclosing users'

browsing histories sufficed to demonstrate standing.  956 F.3d at 600.  As the court explained, the

"unauthorized use of [Plaintiffs'] information for profit would entitle Plaintiffs to profits unjustly

earned."  *Id.* at 601.  That is so, moreover, "regardless of whether an individual planned to sell his

or her data or whether the individual's data is made less valuable."  *Id.* at 600.

The Plaintiffs in this case have, in like manner, adequately demonstrated their entitlement

to unjustly earned profits.  The Consolidated Complaint plausibly pleads that receiving search

terms in referrer headers is one of the services that Google offers its advertisers, and that Google thus profits from the disclosure of Plaintiffs' search terms. Plaintiffs have also shown that they "retain a stake in the profits garnered" from their search terms in that the search terms were disclosed without Plaintiffs' consent and in spite of Google's promises to the contrary. *Id.* at 600. The Court therefore concludes that Plaintiffs have "sufficiently alleged a state law interest whose violation constitutes an injury sufficient to establish standing." *Id.* at 601. Defendant's motion to dismiss Counts 4 and 5 is DENIED.

**D.     Standing to Seek Injunctive Relief**

The Consolidated Complaint seeks, in addition to damages, to enjoin Defendant's practice of transmitting search terms in referrer headers. *See* Consol. Compl. ¶¶ 164-171 (Count 6). "A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). For injunctive relief, which is a prospective remedy, Plaintiffs must show "either continuing, present adverse effects' due to their exposure to [Google's] past illegal conduct or a sufficient likelihood that they will again be wronged in a similar way." *Campbell*, 951 F.3d at 1119–20 (internal quotations and alterations omitted). However, Defendant does not specifically argue that Plaintiffs lack standing for injunctive relief, nor does it suggest that it has ceased the practices giving rise to Plaintiffs' claims. The Court therefore sees no obstacle to Plaintiffs' standing to seek injunctive relief.

**IV.     CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss the Consolidated Complaint for lack of standing is DENIED.

**IT IS SO ORDERED.**

Dated: June 5, 2020

EDWARD J. DAVILA
United States District Judge

Case No.: 10-cv-04809-EJD
ORDER DENYING MOTION TO DISMISS

17