KASSRA P. NASSIRI (215405)
(knassiri@njfirm.com)
NASSIRI & JUNG LLP
1700 Montgomery St, Suite 207
San Francisco, California 94111
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

MICHAEL J. ASCHENBRENER (277114)
(masch@kamberlaw.com)
KAMBERLAW, LLC
201 Milwaukee St, Suite 200
Denver, Colorado 80206
Telephone: (303) 222-0281

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| In re GOOGLE REFERRER HEADER PRIVACY LITIGATION | Case No. 5:10-cv-04809-EJD |
| | <u>CLASS ACTION</u> |
| This Document Relates To: All Actions | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Date: May 4, 2023<br>Time: 9:00 a.m.<br>Place: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that the Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant preliminary approval of the proposed class action settlement entered into by the Parties, on Thursday, May 4, 2023 at 9:00 a.m., or at such other time as may be set by the Court, at 280 South 1st Street, San Jose, California, Courtroom 4, 5th Floor, before the honorable Edward J. Davila.

Plaintiffs seek preliminary approval of this class action settlement, certification of the proposed Settlement Class, appointment of the Plaintiffs as Class Representatives, and appointment of their counsel as Class Counsel. The Motion is based on this Notice of Motion, the Brief in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter raised or submitted at the hearing, and all of the documents in the record.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the proposed Settlement is within the range of fairness, reasonableness, and adequacy as to warrant: (a) the Court's preliminary approval; (b) certification of a Settlement Class for settlement purposes; (c) the dissemination of Notice of the Settlement's terms to Settlement Class Members; and (d) setting a hearing date for final approval of the Settlement, as well as motion or other applications for Fees and Expense Award and for Service Awards;

2. Whether the proposed forms of Notice and Notice Plan adequately inform Settlement Class Members of the terms of the Settlement and their rights with respect to the Settlement;

3. Whether the selection of Kroll Settlement Administration as Settlement Administrator should be approved;

4. Whether the proposed distribution of the Settlement Fund should be preliminarily approved; and,

5. Whether the Claim Form and Opt-Out forms are sufficient.

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 1

II.   LITIGATION HISTORY ........................................................................................... 1

III.  SUMMARY OF SETTLEMENT TERMS ................................................................. 4

    1.    Settlement Class Definition ........................................................... 4

    2.    Settlement Fund Payments .............................................................. 5

    3.    Injunctive or Prospective Relief...................................................... 5

    4.    Other Relief..................................................................................... 6

    5.    Release ............................................................................................ 6

IV.  ARGUMENT ............................................................................................................ 7

    A.  The Court Should Certify the Proposed Class for Settlement Purposes. ........... 7

    1.    The Numerosity Requirement Is Satisfied ...................................... 8

    2.    The Commonality Requirement Is Satisfied.................................... 8

    3.    The Typicality Requirement Is Satisfied ...................................... 10

    4.    The Adequate Representation Requirement Is Satisfied ............... 11

    5.    The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements ......................... 12

    B.  The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate, and Falls Well
        Within the Range of Preliminary Approval.................................................... 15

    1.    The Proposed Settlement is a product of a Mediator's Proposal. .................................. 16

    2.    The stage of the proceedings and discovery completed support approval.................... 17

    C.  The Proposed Settlement satisfies the Procedural Guidance Factors for Class Action
        Settlements. .................................................................................................... 17

    1.    Guidance 1(a)—The Settlement Class is narrower than in the Complaint. ................... 17

    2.    Guidance 1(c)—The Proposed Settlement provides a favorable recovery. ................... 18

    3.    Guidance 1(e) & (f)—Proposed Allocation Plan and Likely Claims Rate. .................... 19

    4.    Guidance 2(a)—Administrator Proposals. ........................................ 20

5.     Guidance 2(b)—Administrator Procedures for Class Data. ............................ 20

6.     Guidance 3—How Notice Distribution Plan is Effective. ............................... 20

7.     Guidance 6—Attorneys' Fees. ....................................................................... 23

8.     Guidance 7—Service Awards. ........................................................................ 23

9.     Guidance 9—Timeline. ................................................................................... 24

10.   Guidance 10—CAFA. ..................................................................................... 25

11.   Guidance 11—Comparable Outcomes. .......................................................... 25

V.   CONCLUSION ...................................................................................................... 25

MOTION FOR PRELIMINARY APPROVAL
5:10-CV-04809

# TABLE OF AUTHORITIES

**CASES**

*Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005).................................................12

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)...........................................................8, 12, 14

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...............................................................8, 9, 10

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)........................................................................7

*Camilo v. Ozuna*, No. 18-cv-02842, 2020 WL 1557428 (N.D. Cal. April 1, 2020).......................16

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) ...........................................................16

*Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544 (N.D. Cal. 2007)........................................................8

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ....................................................7

*Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x 628 (9th Cir. 2020), *cert. denied sub nom. Threatt v. Farrell*, 142 S. Ct. 71 (2021)...........................................................................23

*Frank v. Gaos*, 138 S. Ct. 1697 (2018)..............................................................................................3

*Frank v. Gaos*, 139 S. Ct. 1041 (2019)..............................................................................................3

*Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008)...................13

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ...................7, 8, 9, 10, 11, 12, 14, 15, 16

*Harrison v. Bank of Am. Corp.*, No. 19-cv-00316, 2021 WL 5507175 (N.D. Cal. Nov. 24, 2021)23

*In re Abbott Labs. Norvir Antitrust Litig.,* 2007 WL 1689899 (N.D. Cal. June 11, 2007)...............8

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).......................................7

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg, Sales Practices, and Prods. Liab. Litig.*, No. 17-md-02777, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019) ...........................................................17

*In re Facebook Privacy Litig.*, No. 5:10-cv-2389 (N.D. Cal.)..........................................................12

*In re Google Referrer Header Privacy Litig.*, 869 F.3d 727 (9th Cir. 2017) ....................................3

*In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) ....................................13

*In re Indep. Energy Holdings PLC*, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ....................16

*In re MetLife Demutualization Litig.*, 262 F.R.D. 205 (E.D.N.Y. 2009)..........................................21

*In re Netflix Privacy Litig.*, No. 5:11-cv-00379, 2012 WL 2598819 (N.D. Cal. July 5, 2012).......17

*In re Syncor ERISA Litig.*, 516 F.3d 1095 (9th Cir. 2008) ........................................................15, 16

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007).......................................15

*In re Tik Tok, Inc. Consumer Privacy Litig.*, MDL No. 2498, Master Docket No. 20-cv-4699, 2021 WL 4478403 (N.D. Ill. Sept. 30, 2021) ...............................................................................20

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, No. 2672, 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)...............................................................................17

*In re Zynga Privacy Litig.*, No. 5:10-cv-4680 ...............................................................................12

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 6778406 (N.D. Cal. Nov. 16, 2016) ...............................................................................19

*Jacobs v. Cal. St. Auto. Assn. Inter-Ins. Bureau*, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009)....24

*Kang and Moses v. Wells Fargo Bank, N.A.*, No. 17-cv-06220, 2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ...............................................................................23

*LaDuke v. Nelson*, 762 F.2d 1318 (9th Cir. 1985)...............................................................................9

*Menagerie Productions v. Citysearch*, No. CV 08-4263 CAS (FMO), 2009 U.S. Dist. LEXIS 108768 (C.D. Cal. Nov. 9, 2009).13

*Menagerie Productions*, 2009 U.S. Dist. LEXIS 108768, at 36...................................................13

*Mullane v. Central Hanover Bank Trust Co.*, 339 U.S. 306 (1950) ........................................21, 22

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) .......................................15

*Ortega v. Aho Enterprises, Inc.*, No. 19-cv-00404, 2021 WL 5584761 (N.D. Cal. Nov. 30, 2021) 7, 16, 19

*Orvis v. Spokane County*, 281 F.R.D. 469 (E.D. Wash. 2012) .........................................................14

*Parra v. Bashas', Inc.*, 536 F.3d 975 (9th Cir. 2008) ........................................................................9

*Priyev v. Google, Inc.*, No. 12-cv-1467 (N.D. Ill.) ............................................................................2

*Reynoso v. South County Concepts*, 2007 WL 4592119 (C.D. Cal. Oct. 15, 2007)........................14

*Rodriguez v. W. Publ'g. Corp.*, 563 F.3d 948 (9th Cir. 2009)...................................................16, 23

*Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200, 2020 WL 511953 (N.D. Cal Jan. 31, 2020) ...............................................................................18

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................................................................3

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ........................................................7

*Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...............................................................................16

*Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ...................19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................................9, 10

*Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168 (9th Cir. 2010)......................................10

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ...........................................12

STATUTES

18 U.S.C. § 2702 ...................................................................................................................1

18 U.S.C. § 2707 .................................................................................................................18

Cal. Civ. Code § 1638 ........................................................................................................13

Cal. Civ. Code § 1639 ........................................................................................................13

OTHER AUTHORITIES

5 JAMES WM. MOORE, *ET AL.*, MOORE'S FEDERAL PRACTICE (3d ed. 1999) ......................................9

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 11.25 (3rd ed. 1992).....15

ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 3.3 (4th ed. 2002)...........8

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004) .........................................................8

MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995) ...........................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

This proposed nationwide class action Settlement seeks to resolve two putative class actions filed against Google. In each action, Plaintiffs allege Google divulged user search queries to third parties without user knowledge or consent.

Plaintiffs Paloma Gaos, Anthony Italiano, and Gabriel Priyev (collectively, "Plaintiffs") respectfully request entry of the proposed Preliminary Approval Order, attached as Exhibit E.

The proposed Settlement provides a non-reversionary settlement fund of $23 million, which was the result of multiple mediation sessions with Mag. Judge Sallie Kim. Exhibit A, Asch. Decl. ¶¶ 21, 24, 26, 28. There is no clear sailing provision in the Agreement. *Id.* ¶ 33. The Claims Administrator was selected following competitive bidding and many discussions among Plaintiffs' and Defendant's counsel. *Id.* ¶ 41. In addition to the cash component, the proposed Settlement also requires Google to post disclosures on its website concerning user search queries. As a result of this Settlement, users will be given information about whether their search queries are transmitted to third parties and have the opportunity to make informed decisions about their privacy choices.

The Settlement creates real benefits for the class, and is within the range of an acceptable settlement. Furthermore, the proposed notice to Class Members is more than adequate under the applicable standards. Accordingly, Plaintiffs hereby move the Court for preliminary approval.

## II.   LITIGATION HISTORY

Plaintiff Paloma Gaos filed suit in October 2010 alleging that Google transmitted user search queries to third parties without knowledge or consent. ECF 1 ¶ 1. Plaintiff further alleged that Google's practice violated the Stored Communications Act ("SCA"), 18 U.S.C. § 2702(a) and other state laws. ECF 1.

Google moved to dismiss all claims under Rule 12(b)(1). The Court dismissed Plaintiff Gaos's Complaint with leave to amend. In her First Amended Complaint, Plaintiff Gaos alleged violations of the SCA, violations of Cal. Civ. Code §§ 1572-73, and multiple California common law claims. ECF 26.

1    Upon Google's Rule 12 Motion to dismiss, the Court dismissed Plaintiff Gaos's First

2  Amended Complaint with leave to amend. Plaintiff Italiano joined the Second Amended

3  Complaint, and together, Plaintiffs alleged Google's conduct violated the SCA and the UCL, and

4  also constituted breach of contract, or, in the alternative, unjust enrichment. ECF 39. Google

5  moved to dismiss the Second Amended Complaint, which the Court terminated as moot when it

6  consolidated the *Gaos* and *Priyev* actions. ECF 51.

7    From the beginning and while actively litigating, the Parties attempted to resolve the

8  matter without further litigation. Asch. Decl. ¶ 3. First, counsel for the Parties met in person in San

9  Francisco in January 2011 to discuss possible resolution; the meeting was not successful. *Id*. ¶ 4.

10  Counsel for the Parties met again in San Francisco in February 2011, but were again unsuccessful.

11  *Id*. ¶ 5. Counsel for the Parties met a third time to discuss resolution in June 2012, this time for an

12  all-day negotiating session, but were once again unsuccessful in coming to terms despite extensive

13  post-meeting discussions throughout the summer of 2012. *Id*. ¶ 6.

14    Plaintiff Gabriel Priyev filed a case, alleging claims inclusive of the conduct at issue in

15  *Gaos*, in the Northern District of Illinois in February 2012. *Priyev v. Google, Inc.*, No. 12-cv-1467

16  (N.D. Ill.). In an effort to advance the putative class's interests most efficiently and effectively,

17  counsel for Plaintiffs Gaos and Italiano and for Plaintiff Priyev decided to work cooperatively to

18  again attempt to resolve the matter. Asch. Decl. ¶ 7.

19    On January 28, 2013, in Oakland, California, the Parties mediated the case before Randall

20  Wulff. *Id*. ¶ 8. The arms-length negotiation went all day and long into the night, and based upon

21  his review of the facts and applicable law in this case, Mr. Wulff proposed a settlement amount in

22  the form of a "mediator's proposal" to the Parties. *Id.* ¶ 9. On March 16, 2013, the Parties

23  executed a settlement agreement. *Id.* ¶ 12.

24    On April 26, 2013, the parties jointly stipulated and requested that this Court approve their

25  Stipulation to consolidate the cases and filed a Proposed Consolidated Class Action Complaint,

26  5:10-cv-04809 EJD, ECF 50, which counsel for the parties drafted in unison in light of the

27  settlement of both cases. The Stipulation was granted on April 30, 2013. The Consolidated

28

Complaint, now the operative Complaint in this matter, incorporates claims and allegations from both the *Priyev* and *Gaos* matters.

In July 2013, Plaintiffs moved for preliminary approval of a class settlement that provided a cy pres fund of $8.5 million, among other things. ECF 52. The Court granted preliminary and then final approval over the objections of five class members. ECF 63, 85; *see Frank v. Gaos*, 139 S. Ct. 1041, 1045 (2019). Two of the objectors appealed the settlement to the Ninth Circuit, challenging the cy pres relief. The Ninth Circuit affirmed this Court's approval of the settlement. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 727 (9th Cir. 2017).

The objectors then petitioned for certiorari before the U.S. Supreme Court, which the Court granted. *Frank v. Gaos*, 138 S. Ct. 1697 (2018). The Supreme Court did not reach the merits of the case, but rather identified a potential standing issue. In 2016, while the objectors' Ninth Circuit appeal was pending, the Supreme Court issued its opinion in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The Supreme Court concluded that this Court needed to address standing in this case in light of *Spokeo*. *Frank*, 138 S. Ct. at 1046. The Supreme Court vacated the judgment and remanded the case to the Ninth Circuit, *id.*, which remanded the case to this Court (ECF 99).

In March 2020, Google filed a motion to dismiss for lack of standing. ECF 107. In June 2020, this Court denied Google's motion to dismiss. ECF 115. In July 2020, Google moved to certify the order for interlocutory appeal. In September 2020, the Court denied Google's motion.

In December 2020, the parties participated in a Settlement Conference before Mag. Judge Sallie Kim. ECF 139. The case did not settle.

Throughout 2021, Plaintiffs propounded and Google began responding to further written discovery requests. Asch. Decl. ¶ 22.

On September 1, 2021, Google filed a motion for judgment on the pleadings (ECF 152) to which Plaintiffs responded on September 15, 2021 (ECF 155) and Google replied on September 22, 2021 (ECF 158).

On September 15, 2021, Judge Kim held a further Settlement Conference with Plaintiffs only. ECF 154. On September 16, 2021, Judge Kim held a further Settlement Conference with

Google only. ECF 156.

On September 22, 2021, Google filed a motion for leave to file a motion for reconsideration of the Court's Order denying Google's 2020 motion to dismiss for lack of standing. ECF 157.

On September 23, 2021, the parties participated in another Settlement Conference with Judge Kim. ECF 159. The case did not settle. Judge Kim gave a Mediator's Proposal to all parties and were instructed to contact the Court with their respective responses no later than September 28, 2021. ECF 159. The Parties accepted the Mediator's Proposal.

On October 6, 2021, Plaintiffs filed a Notice of Settlement. ECF 160. Throughout the remainder of 2021 and most of 2022, the parties continued negotiating the details of what would become this proposed class-wide Settlement. Asch. Decl. ¶ 27. Despite agreeing in principle to the Mediator's proposal, negotiations over the Settlement details were thorough, hard-fought, difficult, and contentious, at times. *Id*. ¶ 28. On August 24, 2022, the parties fully executed the Settlement Agreement. *Id*. ¶ 29.

At all times, Google has denied and continues to deny any wrongdoing act or violation of the law whatsoever. Ex. B Recitals.

This case is now twelve 12 years old. The parties have litigated many motions to dismiss, engaged in discovery, litigated in the Ninth Circuit, litigated in the U.S. Supreme Court, and engaged in further contested litigation in this Court, including further discovery. Additionally, the parties have participated in 5 settlement conferences, plus two separate, individual settlement conferences. Let it not be said that either side has capitulated easily or quickly.

## III.   SUMMARY OF SETTLEMENT TERMS

The Parties seek preliminary Settlement approval. The terms of the Settlement are set forth in the Settlement Agreement and briefly summarized here as follows:

### 1.   *Settlement Class Definition*

The Settlement Agreement provides for a single Settlement Class, defined as follows:

1
2

> "Settlement Class" means all Persons in the United States who submitted a search query to Google and clicked on a search result at any time during the period commencing October 25, 2006, up to and including September 30, 2013.

3

Ex. B, Settlement Agreement, § 1.49.

4

### 2. Settlement Fund Payments

5
6
7
8
9
10

Google has agreed to pay the total amount of twenty-three million dollars ($23 million USD) in cash into a Settlement Fund—none of which will revert to Google under any circumstances—to be used for the payment of Settlement Administration Expenses, direct distributions to Settlement Class Members, any Fee Award or costs awarded to Class Counsel, and any incentive awards awarded to the Settlement Class Representatives and named Plaintiffs in the Related Actions. *Id*. § 3.1, 3.8. No portion of the Settlement Fund will revert to Google. *Id*. § 3.9.

11

The Net Settlement Fund shall be allocated to Claimants on a pro rata basis. *Id*., § 3.11.

12

### 3. Injunctive or Prospective Relief

13
14
15
16

Plaintiffs have maintained throughout the litigation and negotiations that any settlement would need to include injunctive relief designed to notify users as to Google's conduct so that users can make informed choices about whether and how to use Google Search. Asch. Decl. ¶ 30. The instant Settlement Agreement provides such relief. *Id*. ¶ 31.

17

Specifically,

18
19
20
21
22
23
24
25
26
27
28

> Google agrees to maintain certain Agreed-Upon Disclosures concerning search queries on or before the date of Notice of Proposed Class Action Settlement pursuant to the Notice Plan. These Agreed-Upon Disclosures will appear on Google's "FAQs" webpage currently located at http://www.google.com/policies/privacy/faq/, "Key Terms" webpage currently located at http://www.google.com/privacy/privacy/key-terms/, and the "Find & Control Your Web & App Activity" webpage currently located at https://support.google.com/websearch/answer/54068, as further described in Exhibit A. If a subsequent change to Google's services renders the Agreed-Upon Disclosures inaccurate, Google may make future changes to its disclosures to ensure continued accuracy. Likewise, Google may change the form or placement of the disclosures as part of future changes to its privacy policies, provided that the substance remains substantially the same and that it is provided as part of online locations containing significant disclosures and information about Google's privacy practices, which are reasonably accessible to the user. Google will not be required or requested to make any changes to its homepage www.google.com or to the practices

or functionality of Google Search, Google AdWords, Google Analytics, or Google Web History.

Ex. B § 3.7.

### 4. *Other Relief*

Google has also agreed to provide the following relief:

#### a. *Payment of Notice and Administration Fees*

The Settlement Agreement includes payment for all notice and administration costs, which will be paid out of the Settlement Fund. Ex. B § 3.1.

#### b. *Compensation for the Settlement Class Representatives*

The Parties have agreed that Named Plaintiffs may seek from the Settlement Fund, subject to Court approval, incentive awards for each Class Representative up to five thousand dollars ($5,000 USD) each. *Id*. § 11.4. It is not a condition of this Settlement that any particular amount of incentive awards be approved. *Id*. § 11.1.

#### c. *Payment of Attorneys' Fees and Expenses*

Plaintiffs may apply to the Court seeking a reasonable proportion of the Settlement Amount as payment of any reasonable attorneys' fees and costs ("Fee Award"). The Fee Award will be paid from the Settlement Fund. It is not a condition of this Settlement that any particular amount of attorneys' fees, costs, or expenses be approved by the Court, or that such fees, costs, or expenses be approved at all. *Id*. § 11.1. Plaintiffs have not negotiated, and do not intend to negotiate, a clear sailing provision for Plaintiffs' attorneys' fees and costs request. Asch. Decl. ¶ 33. As such, Google retains the right to oppose any fee request.

### 5. *Release*

In exchange for the relief described herein, and upon entry of a Final Order approving this Settlement, Google will be released from "any and all claims that any Releasing Party may now or at any time have up to the date of preliminary approval of this Agreement, whether or not known or existing at the time of this Agreement, arising out of the subject matter giving rise to the claims in the Actions." Ex. B § 1.42.

IV.    **ARGUMENT**

"In the Ninth Circuit, there is a 'strong judicial policy that favors settlements' of class actions." *Ortega v. Aho Enterprises, Inc.*, No. 19-cv-00404, 2021 WL 5584761, at *5 (N.D. Cal. Nov. 30, 2021) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). This judicial policy is founded in the public interest. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("There is an overriding public interest in settling and quieting litigation . . . particularly true in class actions suits.").

To grant *preliminary* approval, the Court need find only that the proposed Settlement falls within the range of possible final approval. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1022, 1026 (9th Cir. 1998). The Court also inquires into potential "red flags"—signs of collusion. *See Briseno v. Henderson*, 998 F.3d 1014, 1019 (9th Cir. 2021). "Red flags" can include: "(1) 'when counsel receive a disproportionate distribution of the settlement;' (2) 'when parties negotiate a clear sailing arrangement,' under which the defendant agrees not to challenge a request for an agreed-upon attorneys' fee; and (3) when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant rather than the class." *Id*. At 1023 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

The proposed Settlement contains none of these red flags or "so-called *Bluetooth* factors." *Briseno*, 998 F.3d at 1023. Class Counsel intends to seek the Ninth Circuit benchmark Fee Award of 25%, so counsel will not receive a disproportionate distribution of the Settlement. Class Counsel has not and will not negotiate a clear sailing arrangement. Finally, the Settlement expressly provides that no Settlement funds will revert to Google under any circumstances.

The proposed Settlement is well within the range of reasonableness and is completely devoid of any collusion (or even signs of collusion). Plaintiffs respectfully request that the Court grant preliminary approval, order that notice be issued to the Settlement Class, and set a hearing for the final fairness hearing.

**A.  The Court Should Certify the Proposed Class for Settlement Purposes.**

The Court must determine that the proposed Settlement Class is proper for settlement

purposes and thus appropriate for certification before granting preliminary approval of the settlement. Manual for Complex Litigation § 21.632 (4th ed. 2004); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is appropriate when the following elements are met: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

The Court found that a previously proposed settlement in this case satisfied the Rule 23 requirements. ECF 63. The primary difference between the prior proposed settlement and the current Proposed Settlement concerns the amount and type of relief obtained, not the Plaintiffs or composition or nature of the Settlement Class. In fact, the current Proposed Settlement stems from the same operative complaint with the same named Plaintiffs as the prior proposed settlement.

### 1. The Numerosity Requirement Is Satisfied

"The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting Fed. R. Civ. P. 23(a)(1)). "Where 'the exact size of the class is unknown, but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied.'" *In re Abbott Labs. Norvir Antitrust Litig.*, 2007 WL 1689899, 6 (N.D. Cal. June 11, 2007) (quoting ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 3.3 (4th ed. 2002)). Generally, the numerosity requirement is satisfied when the class comprises more than forty members. *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007). Here, the proposed Class consists of approx. 193 million persons. Ex. C ¶ 3. Accordingly, the proposed Class is so numerous that joinder of all claims is impracticable.

### 2. The Commonality Requirement Is Satisfied

The second threshold to certification requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). Commonality may be demonstrated when the claims of all class members "depend upon a

common contention" and "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal quotation omitted); *see also Hanlon*, 150 F.3d at 1019 ("[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class"). Commonality exists where, as here, a "lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong*, 275 F.3d at 868 (citing *LaDuke v. Nelson*, 762 F.2d 1318, 1332 (9th Cir. 1985); 5 James Wm. Moore, *et al.*, Moore's Federal Practice ¶ 23.23[5][f] (3d ed. 1999)).

The common contention must be of such a nature that it is capable of class-wide resolution, and that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551. Moreover, the permissive standard of commonality provides that "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978-79 (9th Cir. 2008).

In the instant case, all Members of the Settlement Class share common claims arising out of Google's alleged system-wide practice and policy of unlawful storage and disclosure of their search queries. Plaintiffs allege that Google uniformly divulges the search queries of Google Search users to third parties via referrer headers—affecting all Search users in the same way. Such allegations show that Plaintiffs and the proposed Settlement Class share common statutory claims under the SCA, as well as various state law claims, that likewise result in common and shared factual and legal questions, such as:

   a. whether and to what extent Google has disclosed its users' search queries to third parties, and whether the disclosure is ongoing;

   b. whether Google continues to use or store information that is part of Web History after users choose to delete, remove or no longer store with Google such information;

   c. whether Google's conduct described herein violates Google's Terms of Service,

Privacy Policy, Web History policy and representations to Plaintiffs and the Class;

d.   whether Google's conduct described herein violates the Electronic

Communications Privacy Act, 18 U.S.C. § 2702, *et seq*.;

e.   whether Google's conduct described herein constitutes a breach of contract or

implied contract;

f.   whether Google's conduct breached its duty of good faith and fair dealing;

g.   whether Google is unjustly enriched as a result of its conduct described herein; and

h.   whether Plaintiffs and members of the Settlement Class are entitled to injunctive

and other equitable relief.

In accordance with the Supreme Court's holding in *Wal-Mart*, answering these legal

questions would resolve the claims of all Class Members of the Class in one stroke. *Wal-Mart*,

131 S. Ct. at 2551. Thus, considering the nature of the issues and facts that bind each class

member together, the proposed settlement class satisfies the commonality requirement.

### 3.   The Typicality Requirement Is Satisfied

Rule 23 next requires that the representative plaintiff's claims are typical of those of the

putative class he or she seeks to represent. Fed. R. Civ. P. 23(a)(3). The typicality requirement

ensures that "the interest of the named representative aligns with the interests of the class." *Wolin*

*v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The typicality

requirement is met if the claims of each class member arise from the same course of conduct, and

the defendant's liability turns on similar legal arguments. *Armstrong*, 275 F.3d at 868. The

typicality determination is similar to the commonality inquiry; however, typicality focuses on a

comparison of the named plaintiffs' claims with those of the class. *Id.* at 868-69. Typicality is

measured under a permissive standard and does not require that the representative's claims be

identical, but only that they are "reasonably co-extensive with [the claims] of absent class

members. *Hanlon*, 150 F.3d at 1020.

Plaintiffs Paloma Gaos, Anthony Italiano, and Gabriel Priyev (collectively, "Plaintiffs")

are Google Search users. ECF 50, Ex. A, ¶¶ 7-9. Plaintiffs, like the putative Settlement Class

1   Members, each conducted Google searches during the class period; and allege that during this time

2   Google disclosed their search queries to third-parties, which Plaintiffs allege was contrary to

3   Google's promises to its users and without their authorization, per Google's standardized course

4   of conduct. *Id.*, ¶¶ 100-118.

5         Plaintiffs and the putative Settlement Class allege they were uniformly subjected to

6   Google's storage and disclosure of users' search queries without user consent. Plaintiffs allege that

7   such conduct violates both the SCA and state law, with respect to Plaintiffs and the Settlement

8   Class as a whole. And such conduct would provide identical statutory damages to all Members of

9   the proposed Settlement Class under the SCA. Plaintiffs' representation of the Settlement Class is

10  thus appropriate because they were subjected to the same alleged unlawful conduct flowing from

11  that uniform conduct. As such, Plaintiffs' claims for relief are typical of, if not identical to, those

12  of the proposed Settlement Class, and thus meet Rule 23(a)(3)'s requirements for typicality.

13               **4.   The Adequate Representation Requirement Is Satisfied**

14        The final Rule 23(a) prerequisite is that the proposed class representatives have and will

15  continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To

16  determine adequacy, the Court must ask "(1) do the named plaintiffs and their counsel have any

17  conflicts of interest with other class members and (2) will the named plaintiffs and their counsel

18  prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

19        Because the named Plaintiffs share the same interests of putative Settlement Class

20  Members in seeking relief for the alleged misconduct, and have no conflicts with putative

21  Members of the Settlement Class, they are adequate Class Representatives. Plaintiffs' interests are

22  entirely consistent with the interests of the proposed Settlement Class; Plaintiffs have lodged

23  representative claims for Google's alleged unlawful storage and disclosure of their search queries

24  to third parties. Also, Plaintiffs' active participation throughout the litigation demonstrates that

25  they have and will continue to protect the interests of the proposed Settlement Class.

26        Further, proposed Class Counsel have regularly engaged in major complex litigation and

27  have extensive experience in consumer class action lawsuits that are similar in size, scope, and

28

complexity to the present case. Asch. Decl. ¶ 34; *see, e.g., In re Facebook Privacy Litig.*, No.

5:10-cv-2389 (N.D. Cal.); *In re Zynga Privacy Litig.*, No. 5:10-cv-4680; Firm Resumes of Nassiri

& Jung LLP (attached as Exhibit A-2), KamberLaw (attached as Exhibit A-1), and Progressive

Law Group LLC (attached as Exhibit A-3). Accordingly, both Plaintiffs and proposed Class

Counsel have and will continue to adequately represent the interests of the Settlement Class.

### 5. The Proposed Settlement Class Meets Rule 23(b)(3)'s Requirements

In addition to meeting the requirements of Rule 23(a), Plaintiffs must also meet one of the

three requirements of Rule 23(b) to certify the proposed Settlement Class. *Zinser v. Accufix*

*Research Inst., Inc.*, 253 F.3d 1180, 1186, amended by 273 F.3d 1266 (9th Cir. 2001). Class

certification pursuant to Rule 23(b)(3) requires that "the questions of law and fact common to

members of the class predominate over any questions affecting only individual members, and that

a class action mechanism is superior to the other available methods for the fair and efficient

adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Certification under Rule 23(b)(3) is

appropriate and encouraged "whenever the actual interests of the parties can be served best by

settling their differences in a single action." *Hanlon*, 150 F.3d at 1022.

#### a. Common Questions of Law or Fact Predominate Over Individual Issues

"The Rule 23(b)(3) predominance inquiry tests whether the proposed class[] [is]

sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.

Predominance exists "[w]hen common questions present a significant aspect of the case and they

can be resolved for all members of the proposed class in a single adjudication." *Hanlon*, 150 F.3d

at 1022. "In addressing the questions of law or fact common to the members, the Court looks at

common factual link[s] between all class members and the defendants for which the law provides

a remedy." *Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005). to litigate

individualized issues that would make a trial unmanageable, making common questions more

important in the relative analysis." *Jabbari v. Farmer*, 965 F.3d 1001, 1005–06 (9th Cir. 2020)

(citations and quotation marks omitted).

Here, common questions predominate because there are few, if any, individualized factual

1   issues, and because the operative facts involve Google's standardized conduct, which is uniformly

2   applicable to the class as a whole. The primary factual issue concerns whether Google divulged

3   the search queries of the proposed Settlement Class Members to third parties.

4        The primary legal issues concern whether Google's disclosures were unlawful—e.g.,

5   whether Google's alleged misconduct gives rise to liability under the SCA or breached its

6   promises or duty of good faith and fair dealing to its users.

7        Here too, the contractual writings at issue giving rise to Plaintiffs' claims for breach of

8   contract, duty of good faith and fair dealing, and authorization to disclose search queries consistent

9   with the SCA are applicable to the Settlement Class as a whole and the interpretation of these

10  writings predominate. *See, e.g.,* Cal. Civ. Code § 1639 (when a contract is reduced to writing, the

11  intention of the parties is to be ascertained from the writing alone, if possible); Cal. Civ. Code

12  § 1638 (the "language of a contract is to govern its interpretation"). *See also Menagerie Prods. v.

13  Citysearch*, No. CV 08-4263 CAS (FMO), 2009 U.S. Dist. LEXIS 108768, at *36 (C.D. Cal. Nov.

14  9, 2009) (certification of breach of contract claim where the plaintiffs' breach of contract claim

15  "arises from a standard form contract prepared by [defendant] to which all advertisers in the class

16  agreed."). That is particularly true in the settlement context, where the Ninth Circuit has held that

17  the presence of any "individualized issue" that "would only apply to a subset of the class" is one

18  that "would primarily implicate trial management issues, which we do not consider when

19  conducting a predominance analysis for a settlement class." *In re Hyundai and Kia Fuel Economy

20  Litig.*, 926 F.3d 539, 560 (9th Cir. 2019).

21       These issues can be resolved for all Members of the proposed Settlement Class in a single

22  adjudication. These common questions predominate because, in each case, "[t]he challenged

23  practice is a standardized one applied on a routine basis to all [Google users]." *Gutierrez v. Wells

24  Fargo Bank, N.A.*, 2008 WL 4279550, at *17 (N.D. Cal. Sept. 11, 2008). Thus, the alleged

25  wrongdoing predominates over any individual issues.

26           *b.   Class Treatment of These Claims Is a Superior Method of Adjudication*

27       A class action must be "superior to other available methods for the fair and efficient

28

---

MOTION FOR PRELIMINARY APPROVAL
5:10-CV-04809

adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "A class action is the superior method for managing litigation if no realistic alternative exists." *Reynoso v. South County Concepts,* 2007 WL 4592119, at *4 (C.D. Cal. Oct. 15, 2007) (quotations omitted). In addition, a class action is superior where, as here, classwide litigation of common issues "reduces litigation costs and promotes greater efficiency." *Orvis v. Spokane County,* 281 F.R.D. 469, 475 (E.D. Wash. 2012) (citation, quotations omitted).

In this matter, there is no realistic alternative to a class action, in large part because the proposed Settlement Class consists of tens of millions of Members. Moreover, most Members would find the cost of litigating individual claims to be prohibitive, and our court system could not handle millions of additional cases. Also, because the action will now settle, the Court need not consider issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 (citation omitted) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there would be no trial.") Accordingly, common questions predominate and a class action is the superior method of adjudicating this controversy.

The following matters may also be considered: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3); *see also Hanlon*, 150 F.3d at 1023. These factors favor approval. First, because Google's conduct affected the Settlement Class as a whole and was not directed at particular Members of the Class, and because affected consumers similarly used Google's search functionality, no single Settlement Class Member has an interest in controlling the prosecution of the litigation. Second, other than the consolidated actions, Plaintiffs are aware of no other pending litigation involving the controversy. Third, the Settlement Class is dispersed throughout the country, and it is desirable that litigation of the claims involved be concentrated in a single forum.

**B.  The Proposed Settlement Is Fundamentally Fair, Reasonable, and Adequate, and Falls Well Within the Range of Preliminary Approval.**

After certifying the proposed Class for the purpose of settlement, the Court should preliminarily approve the Settlement. The procedure for review of a proposed class action settlement is a well-established two-step process. Fed. R. Civ. P. 23(e); *see also* ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS, § 11.25, at 3839 (3d ed. 1992) (*quoting* MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed. 1995) *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The purpose of this hearing is not to determine the ultimate fairness of the Settlement; instead, its purpose is to determine whether there is any reason to notify the putative Settlement Class Members of the proposed Settlement and to proceed with a fairness hearing. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Notice of a settlement should be sent out where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." (*Id.*, *quoting* NEWBERG ON CLASS ACTIONS § 11.25 (3d ed. 1992)).

The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentation from the settling parties. MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process, which is the final approval hearing. NEWBERG, § 11.25, at 3939.[1]

Judicial policy strongly favors voluntary settlement of complex class action litigation. *In re Syncor*, 516 F.3d at 1101 (*citing Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982)). While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d at 1027. Further, a settlement negotiated with the assistance of an experienced private mediator is

---

[1] At Final Approval, the Court will need to apply a higher level of scrutiny because the Settlement was negotiated prior to class certification. *Hanlon*, 150 F.3d at 1026.

further proof that the settlement was reached fairly and provides adequate relief. *In re Indep. Energy Holdings PLC*, No. 00-cv-6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003). Ultimately, though, the court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *In re Syncor*, 516 F.3d at 1100.

In this case, the Settlement is fair, reasonable, and adequate, especially in light of the uncertainties detailed below. Under this Settlement, Google will notify its users about its search query disclosures and establish a $23 million common fund. (Exhibit B §§ 3.1, 3.7.)

### 1.  *The Proposed Settlement is a product of a Mediator's Proposal.*

"The Ninth Circuit 'put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution' in approving a class action settlement." *Ortega*, 2021 WL 5584761, at *9 (quoting *Rodriguez v. W. Publ'g. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). The Proposed Settlement certainly fits that description. Settlement is the product of a Mediator's Proposal by Mag. Judge Kim following two joint mediation sessions and two individual mediation sessions, as well as many informal discussions among the parties.

The parties never discussed attorneys' fees in any of the mediation sessions, nor did the parties negotiate any agreement on attorneys' fees while negotiating the specific terms of the Settlement Agreement. Class Counsel will make an application for fees from the Settlement Fund, and Google can oppose it, if it chooses.

Judge Kim's role also supports approval. *See Villegas v. J.P. Morgan Chase & Co.*, No. 09-cv-00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (mediation "tends to support the conclusion that the settlement process was not collusive"); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1122 (9th Cir. 2020); *Camilo v. Ozuna*, No. 18-cv-02842, 2020 WL 1557428, at *8 (N.D. Cal. April 1, 2020).

Following mediation, the parties continued difficult negotiations to finalize the Settlement Agreement over the course of most of a year. *See, e.g., Campbell*, 951 F.3d at 1106; *Hanlon*, 150 F.3d at 1026. Additionally, Google has been represented throughout the litigation and settlement process by highly experienced attorneys from two major law firms: Mayer Brown and O'Melveny

1   Myers. As a result, Google was and is well-represented by strong advocates, ensuring that the

2   Settlement would be hard-fought and that litigation would be challenging for Named Plaintiffs and

3   the Settlement Class. These factors also support preliminary approval.

4           **2.   *The stage of the proceedings and discovery completed support approval.***

5           In ruling on preliminary approval, the Court examines the work Class Counsel has

6   performed to investigate and support Plaintiffs' claims. *See In re Volkswagen "Clean Diesel"*

7   *Mktg., Sales Practices & Prods. Liab. Litig.*, No. 2672, 2016 WL 6248426, at *14 (N.D. Cal. Oct.

8   25, 2016). The voluminous pleadings, motions, and appellate filings demonstrate that Class

9   Counsel thoroughly informed themselves and understand the legal and factual arguments at issue

10  in this case. Class Counsel well understands the risks of summary judgment and trial in this case.

11  In light of that understanding, Class Counsel support the Proposed Settlement.

12  **C.   The Proposed Settlement satisfies the Procedural Guidance Factors for Class**

13          **Action Settlements.**

14          The Northern District's Procedural Guidance for evaluating class actions settlements

15  applies in this case. This Guidance supports preliminary approval.

16          **1.   *Guidance 1(a)—The Settlement Class is narrower than in the Complaint.***

17          Section 1(a) of the Guidance requires discussion of any differences between the Settlement

18  Class and the class proposed in the Operative Complaint (here, ECF 50, Ex. A). In this case, the

19  Settlement Class is narrower in time and scope than the class defined in the Operative Complaint.

20          Reflecting the compromises inherent in settlements and the necessity of corresponding

21  adjustments, courts routinely approve settlement classes defined differently from the operative

22  complaint's definition, and changes between claims released in a settlement and claims to be

23  certified for class treatment. *See, e.g., In re Netflix Privacy Litig.*, No. 5:11-cv-00379, 2012 WL

24  2598819, at *1 (N.D. Cal. July 5, 2012) (approving settlement class different from class defined in

25  Consolidated Class Action Complaint); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg, Sales*

26  *Practices, and Prods. Liab. Litig.*, No. 17-md-02777, 2019 WL 536661, at *3–7 (N.D. Cal. Feb.

27  11, 2019) (same); *Schneider v. Chipotle Mexican Grill, Inc.*, No. 16-cv-02200, 2020 WL 511953,

28

at 5–6 (N.D. Cal Jan. 31, 2020) (approving settlement class defined differently from classes certified). The class defined in the Consolidated Complaint (ECF 50, Ex. A, ¶ 119) is as follows:

> All persons in the United States who submitted a search query to Google at any time between October 25, 2006 and the date of notice to the class of certification (the "Class").

The Settlement Agreement (Ex. B, § 1.49) defines the Settlement Class as:

> [A]ll Persons in the United States who submitted a search query to Google and clicked on a search result at any time during the period commencing on October 25, 2006, up to and including September 30, 2013.

The changes conform the definition to discovery. On October 1, 2013, Google began displaying a notice on its website informing users the circumstances under which it may share search queries with third parties, pursuant to the Settling Parties' prior, vacated settlement. Asch. Decl. ¶ 38. Also, by this time, Google had ceased transmitting referrer headers containing search queries to third parties for most all searches. *Id*. ¶ 39. The change in scope also recognizes the fact that for Google to have had any potential liability (which it denies), users would have had to click on a search result, not just enter search terms. The Settlement Class definition is more accurate, and a reflection of the work Class Counsel has performed in litigating this case.

### 2. *Guidance 1(c)—The Proposed Settlement provides a favorable recovery.*

The proposed Settlement establishes a non-reversionary common fund of $23 million, from which Settlement Class Members will be eligible for pro rata direct distributions. The common fund will also be used for any approved attorneys' fees and costs, any approved service awards, and the costs of settlement notice and administration. Ex. B, § 3.1.

Plaintiffs' claim under the Stored Communications Act ("SCA"), 18 U.S.C. § 2707 provides for statutory damages in an amount not less than $1,000 per violation. The discount relative to statutory damages is justified by the complexity and difficulty of Plaintiffs' claims. Additionally, the $23 million fund, which is the result of a Mediator's Proposal, shows that it is likely one of the ten largest monetary settlements in data privacy class action history. *See* Guidance 11 below. Also, earlier in this case's history, the Court approved a settlement providing $8.5 million in cy pres relief. The Proposed Settlement is superior in that it provides both greater

1    monetary relief and direct payments.

2    　　Class Counsel strongly believe—particularly in light of Judge Kim's Mediator's

3    Proposal—the Proposed Settlement is in the best interests of the Settlement Class, which weighs

4    in favor of approval. *Ortega*, 2021 WL 5584761, at *8 ("The experience and views of counsel

5    weigh in favor of approving the settlement.").

6    　　　　　　**3.**　　　***Guidance 1(e) & (f)—Proposed Allocation Plan and Likely Claims Rate.***

7    　　All Settlement Class Members will be entitled to an equal cash payment. Ex. B, § 3.11.

8    "[A]though it is possible that a more precise allocation plan could be fashioned, undertaking such

9    an effort would be time-consuming and costly. Moreover, the standard of review requires only an

10   allocation plan that has a 'reasonable, rational basis;' it does not require the best possible plan of

11   allocation." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 6778406,

12   at *3 (N.D. Cal. Nov. 16, 2016) (internal citations omitted) (quoting *Vinh Nguyen v. Radient*

13   *Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014)).

14   　　A claims process is required in this case because the Settlement Class is comprised of

15   anyone who performed a Google Search and clicked on a link during the relevant time period. No

16   one needs to have provided contact information to Google to have conducted a Google Search, so

17   a claims process is necessary to determine where to send the Settlement payments.

18   　　Payments to Settlement Class Members will be based on final claims rates and the size of

19   the Net Settlement Fund (the Settlement Fund minus notice and administration costs, approved

20   Attorneys' Fees and Costs, and approved Service Awards. Ex. B, § 1.30. A 2019 FTC study of

21   consumer class actions shows a weighted median claims rate for cases with email notice only at

22   2%.[2] Because the parties lack contact information for Settlement Class Members, notice will be by

23   publication only. The FTC study does not provide data for publication-only notice campaigns.

24   Additionally, a recent filing shows the "average claims rate for classes above 2.7 million class

25   members is less than 1.5%." *In re Tik Tok, Inc. Consumer Privacy Litig.*, MDL No. 2498, Master

26   _____

27   [2] Federal Trade Commission, Consumers and Class Actions: A Retrospective and Analysis of
     Settlement Campaigns (Sept. 2019) at p. 25, 27. Accessible at
     https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-

28   analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last reviewed Sept. 12, 2022).

Docket No. 20-cv-4699, 2021 WL 4478403, at *11, n.6 (N.D. Ill. Sept. 30, 2021). Because of the large class size (nearly 200 million persons) and because direct notice is not possible, Class Counsel estimate a claims rate under 1.5%.

In no event will any of the Settlement Fund revert to Defendant. Ex. B, § 3.9. If a residual amount of funds remains after distribution, then all remaining funds shall be distributed pro rata to timely Claimants, unless the cost of doing so exceeds the available balance—in which case the remaining funds will go to cy pres, but never back to Defendant. *Id*., § 3.12.

The Claims process will be very easy and straight-forward for Claimants. The Claim Form shall require Settlement Class Members to: (1) provide contact and payment information; (2) attest that they clicked on a Google Search during the Class Period; and, (3) affirm under oath that the information submitted is accurate, to the best of their knowledge. *Id*., § 4.1.

### 4.    *Guidance 2(a)—Administrator Proposals.*

The Parties request that the Court authorize the retention of Kroll as the Settlement Administrator. KamberLaw has worked previously with Kroll and is a nationally recognized notice and claims administration firm with extensive class action experience. Asch. Decl. ¶ 40.

The Parties solicited proposals from five other administrators and received proposals from four others. *Id*. ¶ 41. After comparing bids and negotiating with each administrator, as well conducting many follow-up discussions—both internal and external—the parties selected Kroll as the best choice for this case.

### 5.    *Guidance 2(b)—Administrator Procedures for Class Data.*

Kroll will use Settlement Class Member data for notice and Settlement Administration only. Fenwick Decl. ¶ 10. Kroll is CCPA, HIPAA, and GDPR compliant, and maintains industry certifications related to data security, including SOC2 and ISO 27001 certification. *Id*. ¶ 11. Kroll maintains robust policies and procedures for physical and electronic security. *Id*.

### 6.    *Guidance 3—How Notice Distribution Plan is Effective.*

To satisfy the requirements of both Rule 23 and Due Process, Rule 23(c)(2)(B) provides that, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best

1   notice practicable under the circumstances, including individual notice to all members who can be

2   identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

3        "The means (of notice) employed must be such as one desirous of actually informing the

4   absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional

5   validity of any chosen method may be defended on the ground that it is in itself reasonably certain

6   to inform those affected." *Mullane v. Central Hanover Bank Trust Co.*, 339 U.S. 306, 315 (1950).

7   "This Court has not hesitated to approve of resort to publication as a customary substitute in

8   another class of cases where it is not reasonably possible or practicable to give more adequate

9   warning." *Id.* at 317.

10        Here, the proposed Settlement Class likely numbers **nearly two hundred million**, making

11  any form of direct notice impracticable. Indeed, courts have interpreted Rule 23 and *Mullane* so as

12  not to require any form of direct notice—explicitly not requiring email notice—in much smaller

13  cases (with millions of class members):

14          The best practicable notice under the circumstance is notice by
15          publication in newspapers. In view of the millions of members of the
            class, notice to class members by individual postal mail, email or
16          radio or television advertisements, is neither necessary nor
            appropriate. The publication notice ordered is appropriate and
17          sufficient in the circumstances. The timeline for notice provides
            reasonable, appropriate and ample opportunity for class members to
18          oppose the settlement if they wish to do so.

19  *In re MetLife Demutualization Litig.*, 262 F.R.D. 205, 208 (E.D.N.Y. 2009). Plaintiffs propose a

20  comprehensive Internet publication notice plan that is designed expressly "to inform those

21  affected." *Mullane*, 339 U.S. 306 at 315.

22        As in *MetLife*, the best practicable notice given the enormous Settlement Class size here is

23  publication notice. The proposed notice plan in this case goes several steps beyond the approved

24  notice plan in *MetLife*, though. Rather than notifying the Settlement Class of the Settlement

25  through mere newspaper publication, Plaintiffs propose a comprehensive Internet and Print Notice

26  Plan designed to notify at least 76% of the Settlement Class approximately three times each. (Ex.

27  C, Finegan Decl. ¶ 41.) This plan meets or exceeds the requirements of due process and the

28

MOTION FOR PRELIMINARY APPROVAL
5:10-CV-04809

guidelines set forth by the Federal Judicial Center. And because the proposed notice plan primarily uses the Internet as its medium, the plan's implementation can be measured in real-time and adjustments to the placements can be made to meet its goals. As a result, this plan is more than "reasonably certain to inform those affected" because all Settlement Class Members are by definition, Internet users, and in fact search for content online. *Mullane*, 339 U.S. at 315. Thus, the proposed Notice Plan is appropriate for this specific Settlement Class.

In this case, the Class Administrator will be allocated up to $1 million out of the Settlement Amount to implement the following Notice Plan. (Ex. B, § 6.1.)

**Settlement Website.** The Settlement Administrator shall create and maintain a Settlement Website until at least thirty days after Effective Date of the Settlement, which is roughly sixty days after the Court enters an order granting final approval of the Settlement. The Settlement Website shall (i) post, without limitation, the operative Complaint(s), this Settlement Agreement, Long Form Notice, Claim Form, and Opt-Out Form; (ii) notify Settlement Class Members of their rights to object or opt out; (iii) inform Settlement Class Members that they should monitor the Settlement Website for developments; and (iv) provide current estimates of the minimum and (after 30 days of operation) maximum estimates of the claim based on the number of participating Settlement Class Members; and (v) notify Settlement Class members that no further notice will be provided to them once the Court enters the Final Order and Judgment, other than through updates on the Settlement Website. The Settlement Website will include a Claim Form and Opt-Out Form; answers to frequently asked questions; a list of important deadlines; case documents; and, contact information for the Settlement Administrator. Ex. B § 6.6. The Settlement Website will go live within seven (7) days of the entry of an order granting preliminary approval. *Id*. § 6.5.

**Publication Notice.** The Parties shall also implement a comprehensive publication plan that conforms to all applicable rules and guidelines. Finegan Decl. ¶ 7. More specifically, the plan is projected to include more than 420 million impressions of online advertisements linking to the Settlement Website. *Id*. ¶ 3. As a result, over 76% of the proposed Settlement Class will see the advertisements an average of 3 times. *Id.*

1    The Notice Plan will be established and publication will begin within seven (7) days of the

2    entry of an order by the Court granting preliminary approval of the proposed Settlement. Ex. B,

3    § 6.5. All costs associated with implementing the Notice Plan, including the fees and costs of the

4    Class Administrator, will be paid out of the Settlement Fund.

5    Under these facts, the proposed Notice Plan constitutes the best notice practicable.

6    ### 7.    Guidance 6—Attorneys' Fees.

7    Class Counsel anticipate requesting an award of attorneys' fees up to 25% of the

8    Settlement Fund, or $5.75 million, plus reimbursement of reasonable out-of-pocket expenses.

9    Google has the right to object, but the award is appropriate due to the effort and results.

10    "When the settlement involves a common fund, courts typically award attorney's fees

11    based on a percentage of the settlement fund." *Harrison v. Bank of Am. Corp.*, No. 19-cv-00316,

12    2021 WL 5507175, at *8 (N.D. Cal. Nov. 24, 2021). This is because of "'[t]he recognized

13    advantages of the percentage method—including relative ease of calculation, alignment of

14    incentives between counsel and the class, a better approximation of market conditions in a

15    contingency case, and the encouragement it provides counsel to seek an early settlement and avoid

16    unnecessarily prolonging the litigation.'" *Kang and Moses v. Wells Fargo Bank, N.A.*, No. 17-cv-

17    06220, 2021 WL 5826230, at *16 (N.D. Cal. Dec. 8, 2021). The Ninth Circuit "has consistently

18    refused to adopt a crosscheck requirement," (*Farrell v. Bank of Am. Corp., N.A.*, 827 F. App'x

19    628, 630 (9th Cir. 2020), *cert. denied sub nom. Threatt v. Farrell*, 142 S. Ct. 71 (2021)), though

20    courts in the Ninth Circuit often do anyway.

21    As of December 1, 2022, the combined lodestar for Plaintiffs' Counsel is approximately

22    $4.43 million on approximately 5,862 total hours. This results in a multiplier of approximately 1.3.

23    By the time this case is complete, the multiplier will be closer to 1—well within range of approval.

24    ### 8.    Guidance 7—Service Awards.

25    In the Ninth Circuit, incentive awards for Class Representatives are "fairly typical in class

26    action cases." *Rodriguez v. West Publg. Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In this district,

27    an incentive award of $5,000 is "presumptively reasonable." *Jacobs v. Cal. St. Auto. Assn. Inter-*

28

*Ins. Bureau*, 2009 WL 3562871, at *5 (N.D. Cal. Oct. 27, 2009).

Each of the three Class Representatives may seek an incentive award of $5,000, for a total of $15,000 in incentive awards. Ex. B, § 11.4. The Settlement is not conditioned on approval of any incentive award. *Id.*, § 11.1. The requested incentive award is further justified because each Class Representative has stood up to Google—one of the world's largest and most powerful companies—for over a decade. Moreover, the total requested amount of $15,000 represents a mere .065% of the Settlement Fund, which demonstrates the absence of preferential treatment. *See In re Online DVD Rental Antitrust Litig.*, 779 F.3d 934, 947–48 (9th Cir. 2015).

### 9. *Guidance 9—Timeline.*

| Event | Timing |
|---|---|
| Deadline for Class Administrator to implement the Notice Plan, including the Settlement Website and the Publication Plan | Within seven (7) days of entry of the Preliminary Approval Order |
| Deadline to submit Requests for Exclusion (the "Opt-Out Deadline") | Within ninety (90) days of entry of the Preliminary Approval Order |
| Deadline for Class Administrator to provide the Parties with a list of all Persons who opted out by validly requesting exclusion | Within ten (10) calendar days after the Opt-Out Deadline |
| Deadline to apply for an award of Attorneys' Fees and Costs | Not later than thirty-five (35) calendar days before the Final Approval Hearing |
| Deadline to submit objections to the Settlement | Not later than twenty-one (21) calendar days before the Final Approval Hearing |
| Deadline to respond to any objections to the Settlement or Attorneys' Fees and Costs and to submit briefing in support of final approval of the Settlement | Not later than seven (7) days before the Final Approval Hearing |
| Final Approval Hearing | Not less than one hundred twenty (120) calendar days after entry of the Preliminary Approval Order |

1

### 10.     Guidance 10—CAFA.

Within ten (10) days after filing of this Settlement Agreement with the Court, the Settlement Administrator, on Google's behalf, shall notify the appropriate state and federal officials of this Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. Before the Preliminary Approval hearing, the Settlement Administrator shall provide proof of service of such notice for filing with the Court. Ex. B, § 6.9.

### 11.     Guidance 11—Comparable Outcomes.

Here is a chart of select data privacy settlements (not including data breach, TCPA, BIPA, and other similar-but-distinct case types):

| Case | Fund | Class Size | Claims Info |
|---|---|---|---|
| *In Re: Zoom Video Comm's. Inc., Privacy Litig.*, 20-cv-02155-LB (N.D. Cal.) | $85,000,000 | 158,000,000 | Claims Rate: <1%<br>Paid Class: $95.51/claimant<br>User Claim: $29.68/claimant<br>25% attorneys' fees |
| *Fraley v. Facebook, Inc.*, 11-cv-01726 (N.D. Cal.) | $20,000,000 | 125,000,000 | Claims Rate: approx. 1%<br>$15/claimant<br>25% attorneys' fees |
| *In re Vizio, Inc. Consumer Privacy Litig.*, 8:16-ml-2693 (C.D. Cal.) | $17,000,000 | 16,000,000 | Claims Rate: approx. 3%<br>Approx. $22.50/claimant<br>33% attorneys' fees |
| *Harris v. ComScore, Inc.*, 1:11-cv-5807 (N.D. Ill.) | $14,000,000 | millions | Approx. $500/claimant<br>33 1/3% attorneys' fees |
| *In re Google Street View Electronic Comm's Litig.*, 3:10-md-02184-CRB (N.D. Cal.) | $13,000,000 (cy pres) | >10,000,000 | No claims<br>25% attorneys' fees |
| *In re Google Plus Profile Litig.*, 5:18-cv-06164-EJD (N.D. Cal.) | $7,500,000 | 300,000,000 | Claims Rate: <1%<br>$2.15/claimant<br>25% attorneys' fees |

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement Agreement, certify the Settlement Class, appoint, Paloma Gaos, Anthony Italiano, and Gabriel Priyev as Class Representatives, appoint Kassra P. Nassiri of Nassiri & Jung LLP, Michael Aschenbrener of KamberLaw, LLC and Mark Bulgarelli of Progressive Law Group LLC as Class Counsel, approve the form and manner of Notice described above, and award such other relief as the Court deems equitable and just.

Dated: January 4, 2023

Respectfully submitted,

KAMBERLAW, LLC

s/ Michael Aschenbrener
Michael Aschenbrener

ATTORNEYS FOR PLAINTIFFS AND THE
PROPOSED SETTLEMENT CLASS