KASSRA P. NASSIRI (215405)
(knassiri@njfirm.com)
NASSIRI & JUNG LLP
1700 Montgomery St, Suite 207
San Francisco, California 94111
Telephone: (415) 762-3100
Facsimile: (415) 534-3200

MICHAEL ASCHENBRENER (277114)
(masch@kamberlaw.com)
KAMBERLAW, LLC
201 Milwaukee St, Suite 200
Denver, Colorado 80206
Telephone: (303) 222-0281

Attorneys for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re GOOGLE REFERRER HEADER PRIVACY LITIGATION<br><br>————————————————<br><br>This Document Relates To: All Actions | Case No. 5:10-CV-4809-EJD<br><br>CLASS ACTION<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: October 12, 2023<br>Time: 9:00 a.m.<br>Place: Courtroom 4, 5th Floor<br>Judge: Hon. Edward J. Davila |

## NOTICE OF MOTION

NOTICE IS HEREBY GIVEN that the Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(e), to grant final approval of the proposed class action settlement entered into by the Parties on October 12, 2023 at 9:00 a.m., or at such other time as set by the Court, at 280 South 1st Street, Courtroom 4, 5th Floor in San Jose, California, before the Honorable Judge Davila.

Plaintiffs seek an order granting final approval of the proposed class action Settlement. The Motion is based on this Notice of Motion, the Brief in Support of the Motion attached hereto and the authorities cited therein, oral argument of counsel, and any other matter raised or submitted at the hearing, and all of the documents in the record.

Dated: August 24, 2023

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should grant final certification of the Settlement Class under Rules 23(a) and 23(b)(3);

2. Whether the Court should grant final approval of the Settlement as fair, reasonable, and adequate based on the requirements of Rule 23 and due process, the Northern District of California's Procedural Guidance for Class Action Settlements ("Guidance"), and the settlement analysis and approval principles set forth in Ninth Circuit case law;

3. Whether the Court should enter judgment of dismissal of Plaintiffs' and Settlement Class Members claims against Defendant.

| | | |
|---|---|---|
| **I.** | **INTRODUCTION** | ....................................................................................................1 |
| **II.** | **FACTUAL BACKGROUND** | .....................................................................................1 |
| A. | Litigation and Settlement History | ..................................................................1 |
| B. | Status Report on Notice and Claims Process | .................................................1 |
| C. | Notice Program Satisfies Due Process | ...........................................................2 |
| D. | Class Response | ...............................................................................................2 |
| **III.** | **ARGUMENT** | .............................................................................................................3 |
| A. | The Settlement Between the Parties Should Be Approved. | ...........................3 |

1. The law favors voluntary dispute resolution, but provides no presumption of fairness. ...3

2. The Ninth Circuit factors to assess whether a settlement is fundamentally fair, adequate, and reasonable favor settlement for the Parties. ...................................................5

   a. The strength of Plaintiffs' case favors settlement. ..................................5

   b. The risk, expense, complexity, and likely duration of further litigation favors settlement. ....................................................................................................6

   c. The risk of maintaining class action status throughout the trial favors final approval of the Settlement. ..........................................................................7

   d. The amount offered in the Settlement is the best means of providing a benefit to the Class. .............................................................................................8

   e. Class Counsel have engaged in extensive motion practice and extensively negotiated the terms of the Settlement. ....................................................10

   f. Class Counsel have abundant experience and their opinion favoring settlement should be affirmed by this Court. ...................................................................10

   g. No government official has objected to the Settlement after receiving notice. ..........11

   h. The reaction of the Class members to the Settlement favors final approval. ...............11

   i. Given the absence of any signs of collusion, the Settlement is appropriate for final approval. ..............................................................................................13

| | | |
|---|---|---|
| B. | The Class Notice Comports with Due Process and Rule 23. | ........................14 |
| **IV.** | **CONCLUSION** | ......................................................................................................16 |

1

## __TABLE OF AUTHORITIES__

2

**CASES**

3  *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. 2013) ................................10

4  *Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 4155361 (S.D. Cal. Sept. 5, 2008) ................................9

5  *Byrd v. Civil Serv. Comm'n.*, 459 U.S. 1217 (1983)...............................................................4

6  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010)..........................11

7  *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)........................................3, 4, 5

8  *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) ......................................3

9  *Dennings v. Clearwire Corp.*, 2013 WL 185797 (W.D. Wash. May 3, 2013), *aff'd* (Sept. 9, 2013)9

10  *Fleming v. Impax Labs Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022)

11  ...........................................................................................................................2

12  *Four in One Co., Inc. v. S.K. Foods, L.P.*, 2014 WL 28808 (E.D. Cal. Jan. 2, 2014)....................15

13  *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............4, 5

14  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ...................................................7

15  *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).......................................................10

16  *Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013)...........................7

17  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988) ...................................4, 13, 15

18  *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................4

19  *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 109 F.3d 602 (9th

20  Cir. 1997) ...............................................................................................14

21  *In re Google Buzz Privacy Litig.*, 2011 WL 7460099 (N.D. Cal. June 2, 2011) ..............................8

22  *In re HP Laser Printer Litig.*, 2011 WL 3861703 (C.D. Cal. Aug. 31, 2011) ..........................7, 13

23  *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573 (N.D. Cal. Sept. 15, 2015)...........................2

24  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000)...................................5, 10

25  *In re Netflix Privacy Litig.*, 2013 WL 1120801 (March 18, 2013) ....................................8

26  *In re OmniVision Tech, Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...............................4, 10

27  *In re TikTok Consumer Privacy Litig.*, 565 F. Supp. 3d 1076 (N.D. Ill. Sept. 30, 2021).................3

28  *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014).............................................6

1   *LaGarde v. Support.com, Inc.*, 2013 WL 1994703 (N.D. Cal. May 13, 2013) ...........................9, 11

2   *Laguna v. Coverall N. Am., Inc.*, 2014 WL 2465049 (9th Cir. June 3, 2014) ................................13

3   *Lane v. Facebook, Inc.,* 696 F.3d 811 (9th Cir. 2012)...................................................................7, 8

4   *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832 (9th Cir. 1976).....................................11

5   *Molski v. Gleichi,* 318 F.3d 937 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart*

6      *Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) ..................................................................................5

7   *Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 (E.D. Cal. Jan. 3, 2014)........................6

8   *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. Jan. 5, 2004) .2, 3, 11

9   *Officers for Justice v. Civil Srv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ...........................3, 4, 5, 13

10  *Pierce v. Rosetta Stone, Ltd.*, 2013 WL 5402120 (N.D. Cal. Sept. 26, 2013).................................4

11  *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198 (W.D. Mo. Mar. 14, 2017)........................3

12  *Powers v. Eichen*, 229 F.3d 1249 (9th Cir. 2000)..........................................................................13

13  *Rahman v. Gate Gourmet, Inc.*, 2021 WL 5973046 (N.D. Cal. Nov. 22, 2021) .............................4

14  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th. Cir. 2009)...................................5, 6, 7, 10

15  *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. April 21, 2011) .....................................6

16  *Tijero v. Aaron Bros., Inc.*, 2013 WL 6700102 (N.D. Cal. Dec. 19, 2013)...................................10

17  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ..................................................3, 4

18  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) ...........................15

19  *Vincent v. Reser*, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) .....................................................14

20  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)........................................................14

21  **OTHER AUTHORITIES**

22  2d Expert Decl. Prof. William B. Rubenstein, *In re Facebook*, ECF 517-2.....................................3

23  *Manual for Complex Litig. (4th)* § 21.61 (2004) ...........................................................................4

24

25

26

27

28

## I.      INTRODUCTION

The proposed Settlement is a successful outcome for the Class, which provides a non-reversionary settlement fund of $23 million and permanent changes to the way Defendant Google Inc. ("Google") informs users as to when and under what circumstances the content of users' search queries and web histories are disclosed to third parties. These disclosures represent a critical and long overdue transition to informed consent between Google and its users. Notably, Google has never agreed to make these crucial disclosures in the absence of litigation.

The details of the Settlement, the litigation history, settlement history, and Plaintiffs' and Class Counsels' efforts for this 13-year-old case are described in detail in Plaintiffs' motion for preliminary approval (ECF 165) and motion for attorneys' fees (ECF 181).

Thus far, over 2.5 million claims have been received, 2,530 opt-outs, and only two objections. In a Settlement class of nearly 200 million individuals, this is an excellent response to the Settlement, and each Class Member will receive approximately $7.16. In addition, there are no "red flags:" no disproportionate attorneys' fees being requested; no "clear sailing" provisions; and most importantly, the settlement fund is non-reversionary. Furthermore, approval of the Settlement is not conditioned to approval of any award of attorneys' fees. Finally, the releases required of Settlement Class members are not overbroad, but rather reach only the claims that were or could have been brought in this case. Because this Settlement is demonstrably fair, reasonable, and adequate, Plaintiffs respectfully request that this Court enter final approval of this Settlement.

## II.      FACTUAL BACKGROUND

### A.      Litigation and Settlement History

Plaintiffs incorporate by reference the Litigation History (pp. 1–4) and Summary of Settlement Terms (pp. 4–6) from their motion for preliminary approval.

### B.      Status Report on Notice and Claims Process

Class members have filed 2,562,154 web claims and 2,528 paper claims for a total of

2,564,682 claims.[1] (Finegan Decl. ¶ 30.) This represents a claims rate of approx. 1.33%. (*Id*.) In a consumer privacy case with 193 million Class members, that is a very good claims rate. Eligible Class members have also filed 2,530 opt-outs, which amounts to an opt-out rate of just .0013%. (*Id*. at ¶ 33.) Finally, only 2 objections were received out of a class of 193 million. (*Id*.) These results are excellent for a consumer case of this size and nature, and demonstrate that the claims process worked smoothly for the Class.

## C.    Notice Program Satisfies Due Process

The Notice Plan exceeded expectations in terms of reach. The Notice Plan was designed to reach 76% of the Class, but the actual reach was 83%—well in excess of the designed reach and the FJC guidelines. (*Id*. at ¶ 4.) In total, the Notice Plan served over 600 million impressions. (*Id*.) As of August 2, 2023, over 5 million users have visited the settlement website. (*Id*. at ¶ 26.) In addition, toll-free number has received 4,127132 calls. (*Id*. at ¶ 27.) The Notice program more than satisfied due process.

## D.    Class Response

The Class's response thus far has been very positive and strongly supports final approval. *See Fleming v. Impax Labs Inc.*, No. 16-cv-06557-HSG, 2022 WL 2789496, at *7 (N.D. Cal. July 15, 2022) ("'[t]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members.'" (quoting *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. Jan. 5, 2004), and citing *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. Sept. 15, 2015), for proposition "'[a] low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.'"). Only two objections have been received, and the number of opt-outs represents a mere .0013% of the total Settlement class. (Finegan Decl. ¶ 33.)

To date, 2,564,682 claims have been filed for a claims rate of approximately 1.33%. (*Id*. at ¶ 30.) This number is in line with expectations—or even slightly better than expectations—for a

---

[1] The number of claims is subject to slight revision during the normal course of claims vetting.

Settlement class this numerous (approx. 193 million persons). *See In re TikTok Consumer Privacy Litig.*, 565 F. Supp. 3d 1076, 1090 n.6 (N.D. Ill. Sept. 30, 2021) ("[a]ccording to the plaintiff's expert in *In re Facebook*, the average claims rate for classes above 2.7 million class members is less than 1.5% (citing 2d Expert Decl. Prof. William B. Rubenstein ¶ 5, *In re Facebook*, ECF 517-2, and also citing, *inter alia*, *Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214–15 (W.D. Mo. Mar. 14, 2017), as "collecting cases that have approved settlements 'where the claims rate was less than one percent'").

## III.    ARGUMENT

The Settlement Agreement, reached by the Parties after arms'-length negotiations, provides immediate relief to the Class in the form of direct payments and permanent, prospective relief designed to inform Google search users about their rights to privacy and Google's use of search query information. Because the methods of notice to Class Members and the Agreement itself are appropriate, Plaintiffs request that this Court enter final approval of the Settlement.

### A.    The Settlement Between the Parties Should Be Approved.

The Settlement Agreement, mutually agreed upon by the Parties, is ripe for final approval. Plaintiffs request that this Court grant final approval to the Settlement because the law favors the voluntary settlement of disputes. Moreover, the Settlement is a fair and reasonable outcome based upon the *Churchill* factors, outlined below. *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

#### 1.    *The law favors voluntary dispute resolution, but provides no presumption of fairness.*

The law strongly favors parties voluntarily resolving their disputes. "Unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526. Settlements avoid the time, cost, and inconvenience of complex litigation. *See Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992); *Officers for Justice v. Civil Srv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). This is "particularly true in class action suits which are now an ever increasing burden to so many federal

1    courts." *Van Bronkhorst*, 529 F.2d at 950. Settling such complex cases relieves a heavy burden on

2    otherwise strained judicial resources and serves the interests of justice more efficiently. *See e.g.*

3    *Byrd v. Civil Serv. Comm'n.*, 459 U.S. 1217 (1983); *Churchill Village,* 361 F.3d at 576.

4           Nonetheless, strong judicial scrutiny of class action settlements is required of a pre-

5    certification settlement, like this one. *See, e.g., Rahman v. Gate Gourmet, Inc.*, 2021 WL 5973046,

6    at *4 (N.D. Cal. Nov. 22, 2021) (citing *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,

7    946–47 (9th Cir. 2011)). Plaintiffs do not suggest, and the Court should not apply, any

8    "presumption of fairness" to this proposed Settlement. Under Federal Rule of Civil Procedure

9    23(e), the court must approve any settlement, voluntary dismissal, or compromise of the claims,

10   issues, or defenses of a certified class. The court may only approve a settlement "after a hearing

11   and on finding that [the settlement] is fair, reasonable, and adequate." *Id.*; *see In re OmniVision*

12   *Tech, Inc.*, 559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008). A settlement is fair, reasonable, and

13   adequate where, as here, "the interests of the class are better served by the settlement than by

14   further litigation." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832 at *8 (N.D. Cal.

15   Apr. 22, 2010) (quoting *Manual for Complex Litig. (4th)* § 21.61 (2004)).

16          While "the decision to approve or reject a settlement [under Rule 23(e)] is committed to

17   the sound discretion of the trial [j]udge[,]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th

18   Cir. 1988), the Court should nonetheless limit its inquiry to a determination "that the agreement is

19   not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that

20   the settlement taken as a whole, is fair, reasonable, and adequate to all concerned." *Officers for*

21   *Justice*, 688 F.2d at 625. *See also Pierce v. Rosetta Stone, Ltd*., 2013 WL 5402120 at *5 (N.D.

22   Cal. Sept. 26, 2013).

23          Here, the Settlement Agreement is fair, adequate, and reasonable. Not only was the

24   Settlement Agreement the product of adversarial negotiation, it was achieved by way of a

25   mediator's proposal following arms-length negotiation with Magistrate Judge Kim serving as the

26   mediator. (Asch. Decl., ECF 181-1, ¶¶ 6, 25, 28, 30). As the litigation and settlement history in

27   this case demonstrate, there is no concern of collusion between the parties.

28

---

FINAL APPROVAL BRIEF                                    5:10-CV-4809-EJD

2.       **The Ninth Circuit factors to assess whether a settlement is fundamentally fair, adequate, and reasonable favor settlement for the Parties.**

To assess whether a class action settlement is fair, adequate, and reasonable, courts in the Ninth Circuit generally consider the following non-exhaustive list of factors:

> "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement."

*Churchill Village* 361 F.3d at 575 (9th Cir. 2004); *see also Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th. Cir. 2009) (quoting *Molski v. Gleichi,* 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010)); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

Applying these factors to the proposed Settlement Agreement, each factor favors final approval.

a.       *The strength of Plaintiffs' case favors settlement.*

The first step in assessing the fairness of a class action settlement is to examine the strength of the plaintiff's case. The Court's analysis of this first factor is not rigid or beholden to any "particular formula by which the outcome must be tested," nor is the Court meant to "reach any ultimate conclusions of the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Garner*, 2010 WL 1687832 at *9 (quoting *Rodriguez*, 563 F.3d at 965). "Rather, the Court's assessment of the likelihood of success is 'nothing more than an 'amalgam of delicate balancing, gross approximations and rough justice.'" *Garner*, 2010 WL 1687832 at *9 (citing *Officers for Justice*, 688 F.2d at 625).

While Plaintiffs are confident in the strength of their claims and their ability to ultimately prevail at trial, Plaintiffs are also cognizant that litigation is inherently risky. (ECF 181-1, ¶ 36.) That is even more so where Defendant may raise credible substantive and/or procedural defenses to the Class's claims, including express defenses under the SCA. These potential defenses make

1    this Settlement all the more reasonable. (ECF 181-1, ¶ 37). *Cf. Rodriguez* 563 F.3d at 964

2    (defendants' substantive and procedural defense to the class's claims favored final approval of

3    class settlement agreement).

4          Proceeding to trial would carry significant risks, including the danger that a jury might not

5    properly grasp the technical concepts implicated by Plaintiffs' claims, or that key expert testimony

6    might be excluded. (*See* ECF 181-1, ¶ 36). Moreover, at the time Plaintiffs filed this action, some

7    of Plaintiffs' allegations and legal theories were matters of first impression within the Ninth

8    Circuit. Since then, the Ninth Circuit held in *In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir.

9    2014), that the plaintiffs' claims under the SCA against defendants for using plaintiffs' personal

10   information were not actionable. The *In re Zynga* SCA allegations are substantially similar to the

11   SCA allegations proffered by Plaintiffs here, and thus put the viability of some of Plaintiffs'

12   claims at risk.

13         Even a verdict in Plaintiffs' favor would bring additional challenges. Calculation of actual

14   damages suffered by Class Members would be inordinately difficult, while a full award of

15   statutory damages might reach into the trillions of dollars, a sum that would far exceed the value

16   of Google. Google would then be inclined to seek *remittitur*, on constitutional due process

17   grounds, again multiplying the risk to the Class.

18         Viewed against this backdrop, Plaintiffs justifiably accepted the Settlement, which offers

19   an immediate and certain award for the Class.

20              b.    *The risk, expense, complexity, and likely duration of further*

21                    *litigation favors settlement.*

22         When a party continues to deny liability, there is an inherent risk in continuing litigation.

23   In *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court

24   approved a settlement agreement in which the defendant specifically denied liability, noting that

25   such denial of liability posed a risk to continued litigation. *See also Mora v. Harley-Davidson*

26   *Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement

27   agreement where defendant denied any liability). Further, the court acknowledged that "even with

28   a strong case, litigation entails expense." *See Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 at *4

---

(N.D. Cal. Apr. 26, 2013).

Similarly here, the terms of the Proposed Settlement include Defendant's absolute denial of any liability. (ECF 165-10.) Defendant has also vigorously litigated this case, filing four separate Motions to Dismiss in response to Plaintiffs' original complaints and subsequent amended complaints. Defendant's absolute denial of liability, paired with its concerted efforts to dismiss this case, favor granting final approval to the proposed Settlement Agreement. Otherwise, the Class is certain to face significant procedural hurdles, including anticipated motions for summary judgment, class certification, and possible appeals. *Rodriguez*, 563 F.3d at 966.

The degree of complex issues or facts facing the parties also favors settlement. *See e.g. Lane v. Facebook, Inc.,* 696 F.3d 811, 820 (9th Cir. 2012). Here, Plaintiffs allege Google violated both the SCA and California state laws. (ECF 50.) Moreover, the use of referrer headers is a highly technical, complex area of the law. This complexity, in conjunction with the now challenged viability of some of Plaintiffs' claims (as shown in the results in the *Zynga* case), counsels in favor of a certain and immediate settlement.

> c.   *The risk of maintaining class action status throughout the trial favors final approval of the Settlement.*

This factor also favors final approval. This factor is satisfied where a Court grants preliminary approval to a class certification for settlement purposes, and no developments occur between preliminary approval and final approval that warrant reexamining the certification. *See In re HP Laser Printer Litig*., 2011 WL 3861703, at *2 (C.D. Cal. Aug. 31, 2011) (finding that where the court previously granted plaintiffs' request to certify class for purposes of settlement, and where nothing changed since granting preliminary approval, final approval was appropriate.) Moreover, a district court has the ability to decertify a class at any time. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in light of subsequent developments in the litigation.").

Here, the Court approved class certification for purposes of settlement only. (ECF 177.) As in *In re HP Laser Printer Litig.*, there have not been any substantive changes to this Class's satisfaction of the numerosity, commonality, typicality, or adequacy of representation elements

---

pursuant to Fed. R. Civ. P. 23. As such, the Court need not reexamine its certification of this Class for settlement purposes.

Although Plaintiffs and Class Counsel believe they would be successful in obtaining certification of an adversarial class absent the Settlement, Google has made it clear that it would vigorously oppose class certification. (ECF 181-1, ¶ 36). As discussed in above, Defendant has forcefully litigated this matter, filing four separate Motions to Dismiss in an effort to terminate Plaintiffs' case. Plaintiffs have no doubt that Defendant will continue to litigate this case vigorously, should this Court decline to grant final approval to the Settlement Agreement, and Defendant will certainly contest class certification. Thus, the current Settlement is the best means of providing a benefit to the Class.

> d.   *The amount offered in the Settlement is the best means of providing a benefit to the Class.*

This Settlement contemplates both monetary relief ($23 million distributed pro rata via a Common Fund) and prospective relief (via Google's Agreed-Upon Disclosures). (ECF 165-10.) In combination, the terms of this Settlement provide the best means of conveying a benefit to the Class that directly addresses the substance of Plaintiffs' complaint: protecting consumers' privacy online and informing consumers of their rights.

> i.   *The $23 million Settlement Fund compares favorably to other similar consumer privacy settlements.*

The size of the recovery obtained by Class Counsel ($23 million) also strongly supports final approval. (ECF 165-10.) The substantial monetary value with direct payments to Class members in the amount of approx. $7.16 compares favorably to settlements in other Internet consumer privacy class action settlements that were cy pres only. *See, e.g. In re Google Buzz Privacy Litig.*, 2011 WL 7460099, at *3-4 (N.D. Cal. June 2, 2011) (unauthorized disclosure of email contact lists; $8.5 million settlement fund with *cy pres* payments); *Lane*, 696 F.3d at 818 (unauthorized disclosure of personal information; *cy pres* distribution of $9.5 million); and in *In re Netflix Privacy Litig.*, 2013 WL 1120801 at *6 (March 18, 2013) (unauthorized storage of personal information; *cy pres* distribution of $9 million).

ii.     *Google's disclosures are appropriate prospective relief for the Class.*

Noneconomic, prospective relief is appropriate where it provides a remedy to the violations alleged in a class action. *See Dennings v. Clearwire Corp.*, 2013 WL 185797 (W.D. Wash. May 3, 2013), *aff'd* (Sept. 9, 2013) (granting final approval where settlement provided non-monetary, programmatic relief to class members regarding defendant's deceptive advertising); *Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 4155361, at *9 (S.D. Cal. Sept. 5, 2008) (holding that injunction requiring defendant to implement company-wide training program to prevent collectors from making unwanted calls was appropriate settlement relief); *LaGarde v. Support.com, Inc.*, 2013 WL 1994703 (N.D. Cal. May 13, 2013) (granting final approval to settlement with terms proscribing noneconomic relief directing the defendant to create documentation for its product that more clearly and concisely described terms) .

In addition to the monetary award, this Settlement also contemplates non-monetary, permanent prospective relief.[2] Specifically, Defendant agrees to make certain "Agreed-Upon Disclosures" concerning search queries. Defendant will post these disclosures on Google's "FAQs" webpage, "Key Terms" webpage, and "Privacy FAQ for Google Web History" webpage. (ECF 165-10.)  These disclosures alert Google users to the ways in which their personal information or Google search web history could be used or compromised via referrer headers.[3] This permanent prospective relief weighs favorably as a factor toward granting final approval of this Settlement.

---

[2] Although the prospective relief is valuable, Class Counsel has not placed a specific monetary value on that relief.

[3] For example, on Google's Privacy FAQ webpage, www.google.com/policies/privacy/faq, Defendant now discloses as part of the Settlement that "When you click on a search result in Google Search, your web browser also may send the Internet address, or URL, of the search results page to the destination webpage as the Referrer URL. The URL of the search results page may sometimes contain the search query you entered. If you are using SSL Search (Google's encrypted search functionality), under most circumstances, your search terms will not be sent as part of the URL in the Referrer URL. There are some exceptions to this behavior, such as if you are using some less popular browsers. More information on SSL Search can be found here. Search queries or information contained in the Referrer URL may be available via Google Analytics or an application programming interface (API). In addition, advertisers may receive information relating to the exact keywords that triggered an ad click."

---

1                 *e.*        *Class Counsel have engaged in extensive motion practice and*

2                            *extensively negotiated the terms of the Settlement.*

3       The fifth *Churchill* factor requires the Court to consider both the extent of the discovery

4 conducted to date and the stage of the litigation as indicators of class counsel's familiarity with the

5 case and ability to make informed decisions. *OmniVision*, 559 F. Supp. 2d at 1042 (citing *In re*

6 *Mego Fin. Corp.*, 213 F.3d at 459).

7       Final approval is appropriate here because Class Counsel have engaged in extensive

8 motion practice and document exchange. Plaintiffs have fully briefed, argued, and opposed four

9 motions to dismiss. Furthermore, this Settlement is the product of arms'-length, serious, and

10 extensive discussion amongst the Parties. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459;

11 *Rodriguez*, 563 F.3d at 963; *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Barbosa v. Cargill*

12 *Meat Solutions Corp.*, 297 F.R.D. 431, 445 (E.D. Cal. 2013). *See also Tijero v. Aaron Bros., Inc.*,

13 2013 WL 6700102, at *7 (N.D. Cal. Dec. 19, 2013) (where settlement reached after parties

14 participated in private mediation, settlement was appropriate for final approval).

15       As detailed in their motions for preliminary approval and for attorneys' fees, Plaintiffs

16 extensively negotiated this settlement with the necessary aid of Mag. Judge Kim over an extended

17 period of time.

18       Settlement discussions were taken seriously by all Parties, and this Agreement is the result

19 of months of arms'-length negotiation. Therefore, this factor favors final approval.

20       Further, these negotiations occurred after multiple rounds of written discovery, thus

21 enabling Class Counsel to make informed decisions in regard to settlement.

22                 *f.*        *Class Counsel have abundant experience and their opinion favoring*

23                            *settlement should be affirmed by this Court.*

24       Class Counsel have regularly engaged in major complex litigation and have extensive

25 experience in consumer class action lawsuits that are similar in size, scope, and complexity to the

26 present case. (*See* Firm Resumes filed with Plaintiffs' Fee Motion.) In light of these credentials

27 and the experience of Class Counsel, this Court should award final approval to the settlement.

28

---

FINAL APPROVAL BRIEF                                                              5:10-CV-4809-EJD

g.      *No government official has objected to the Settlement after receiving notice.*

"Although CAFA does not create an affirmative duty for either the state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *LaGarde,* 2013 WL 1283325 at *7.

Here, the Parties directed the Class Administrator to comply with CAFA's notice requirement and the Class Administrator provided the appropriate notice on January 13, 2023. (Finegan Decl. ¶ 25.) A copy of the CAFA notice substantially similar to the notice sent is attached to the Declaration of the Class Administrator. To date, no state or federal officials have raised any objection to the Settlement. Therefore, this factor favors final approval of the Settlement.

h.      *The reaction of the Class members to the Settlement favors final approval.*

Courts in the Ninth Circuit consider the number of class members who object to a proposed settlement when determining whether to grant final approval to a settlement agreement. *Mandujano v. Basic Vegetable Prods. Inc*., 541 F.2d 832, 837 (9th Cir. 1976). Where the vast majority of class members have not objected to the terms of a proposed settlement, this factor weighs in favor of the court granting final approval. *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 526 (holding that "in the absence of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members.").

The Class Administrator received only two timely objections (and zero untimely objections) to the Settlement. (Finegan Decl., ¶ 33.) This strongly indicates a favorable class reaction, especially in a class of nearly 200 million individuals. *See Chun-Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (approving settlement where no objections raised to settlement).

Where exclusions and opt-outs are low, there is also a presumption of a favorable class reaction. *Id.* at 850 (granting final approval where sixteen out of 329 class members excluded

themselves from the settlement (4.9% opt-out rate)).

Here, the exclusion period has passed, and the total number of exclusions pales in comparison to the number of Class Members who have opted to remain within the class. The Class Administrator received only 2,530 exclusion forms by the opt-out deadline of July 31, 2023. (Finegan Decl. ¶ 33.) This minimal number of exclusions—representing approximately 0.0013% of the Class—paired with only two objections, demonstrates a favorable class reaction.

### *Adams Objection (Objection 1/2)*

Objector Boyd Adams filed a written objection (ECF 180) on the basis that he thinks Google should not be able "to share anything [he does]," that Google must admit wrongdoing, that no one should be able to opt out, and that the value of the Settlement is too small. Mr. Adams closes his objection with his view that no one should be able to sue Google for this offense again. Mr. Adams did file a claim, despite his objections to the Settlement. Mr. Adams indicated he does not plan to appear at the Final Fairness Hearing.

### *Weiler Objection (Objection 2/2)*

Objector Clifford Weiler filed a written objection (ECF 185) on the basis that there were too many "hoops" to jump through to make a claim—to the degree that it would dissuade most people from making claims, and that the value of the Settlement was too small. Mr. Weiler's objections are belied by the facts: over 2.5 million individuals filed claims, thus indicating that there were not too many "hoops" for Claimants and that the value of the Settlement was not too low. Mr. Weiler also does not describe the so-called "hoops" or explain how any part of the claims process could have been improved. Moreover, Mr. Weiler successfully filed a claim, so it was apparently not too difficult or de minimis for him to submit a claim. Finally, Mr. Weiler mentions that he searched with Microsoft, not Google. If true and not a typo, Mr. Weiler is potentially not even a Class member. Mr. Weiler did not indicate whether he plans to appear at the Final Fairness Hearing.

Plaintiffs respect the Objectors' right to state their positions, but do not find their objections warrant any changes to the Settlement.

1             i.      *Given the absence of any signs of collusion, the Settlement is*

2                                   *appropriate for final approval.*

3       Because collusion is not always evident on the face of a settlement, the Court may be

4 required to look to these signs for evidence that counsel have pursued their own interests at the

5 cost of the interests of the class. *Officers for Justice,* 688 F.2d at 625. The Ninth Circuit has

6 instructed courts to carefully scrutinize cases that are settled without adversarial certification for

7 possible collusion. *Hanlon,* 150 F.3d at 1026. In particular, courts are to be aware of certain signs

8 that warrant heightened scrutiny of the negotiation process, including: (1) where class counsel

9 receives a disproportionate distribution of the settlement or when the class receives no monetary

10 distribution; (2) where unawarded attorneys' fees revert to defendants rather than the settlement

11 fund for the class; and (3) where there is a "clear sailing" fee arrangement. *Laguna v. Coverall N.*

12 *Am., Inc.*, 2014 WL 2465049 at *5 (9th Cir. June 3, 2014).

13       Here, the Class was certified for purposes of settlement only, and therefore was not the

14 product of adversarial certification. (ECF 177.) Nonetheless, even when examined under

15 heightened scrutiny, this Settlement is wholly free of collusion. First, the terms of the Settlement

16 do not raise the concern that counsel is receiving a disproportionate distribution of the settlement.

17 Here, Class Counsel seek the Ninth Circuit's "benchmark" twenty-five percent (25%) fee award of

18 the $23 million common fund. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We

19 have . . . established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees

20 calculations under the percentage-of-recovery approach").

21       Second, this Settlement does not provide for payment of attorneys' fees separate and apart

22 from funds paid to the Class. (ECF 165-10.) Rather, Class Counsel seek a percentage of the

23 common fund from which distributions will be made—and any funds not awarded in fees will

24 simply be distributed to Claimants rather than reverting to Google. (ECF 165-10, § 11.1); *compare*

25 *In re HP Laser Printer Litigation*, 2011 WL 3861703 at *4 (It is a sign of collusion "when the

26 parties arrange for fees to revert to the defendant instead of to the class fund or a *cy pres* fund.").

27

28

---

Third, this Settlement does not contain a "clear sailing" provision.[4] (ECF 165-10, § 11.1) ("Google expressly reserves the right to oppose the motion seeking a Fee, Cost, and Expense Award.") The absence of a "clear sailing" provision supports a finding of non-collusion. In fact, the Settlement is not contingent on the Court awarding a specific fee to Class Counsel. Rather, the Parties have agreed to an overall Settlement Fund and have left the division of that fund as between the Class and Counsel to the district court, as is usual in common fund cases. (*Id.*); *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

Finally, although not dispositive, the presence of a mediator supports a finding of non-collusion. *Vincent v. Reser*, 2013 WL 621865 at *4 (N.D. Cal. Feb. 19, 2013). As described *supra*, the complete process resulting in the Settlement was done at arms'-length, by well-represented parties, and under the supervision of a neutral mediator. (ECF 181-1, ¶ 6). In fact, the terms of the Settlement were based upon the mediator's proposal that Mag. Judge Kim made to the parties. (ECF 181-1, ¶ 30).

Accordingly, the non-collusive nature of this Settlement, reached after a series of arms'-length negotiations and contested mediations, should dispel any concern of the signs of collusion that appear in some class actions but are completely absent here.

### B.      The Class Notice Comports with Due Process and Rule 23.

In order for a court to grant final approval of a class action settlement, the class must be provided with notice of the settlement that complies both with the requirements of due process and Federal Rule of Civil Procedure ("Rule") 23(e)(1). Class notice satisfies these requirements where the notice states in plain, easily understood language "the nature of the action; the definition of the class certified; the claims, issues or defense; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). *See also Four in One*

---

[4] A "clear sailing" provision refers to a settlement term in which a defendant agrees not to challenge class counsels' fee request up to an agreed amount.

*Co., Inc. v. S.K. Foods, L.P.*, 2014 WL 28808 at *12-13 (E.D. Cal. Jan. 2, 2014); *Hanlon*, 150 F.3d at 1024.

Here, notice requirements have been appropriately satisfied. The Class Administrator was allocated $1.0 million to implement the Notice Plan (ECF 165-10, § 6.1), and this Court approved the Plan. (*Id.*) The Class Administrator used multiple media channels: (1) internet-based notice using paid banner ads targeted at potential class members; (2) Google keyword search advertising; (3) publication via Gmail ads; (4) publication via social media advertising through Facebook, Instagram, Twitter, and YouTube; (5) publication via specialty class action new websites; (6) publication in a nationally circulated print magazine; (7) a press release in English and in Spanish; (8) CAFA Notice; (9) a website decided solely to the settlement; and (10) a toll-free telephone number where class members can obtain additional information and request a class notice. (Finegan Decl., ¶ 5.) This plan employed best-in-class tools, technology, and optimizations to reach an estimated 83% of potential Settlement Class members. (*Id.* at ¶ 4.)

As a result of the Notice Plan, over 5 million unique visitors visited the Settlement Website. (*Id.* at ¶ 26.) These visits resulted in over 2.5 million claims. (*Id.* at ¶ 30.) Furthermore, per Rule 23, the notice language used simple, plain language regarding the nature of the lawsuit and the operative complaint, the terms of the Settlement, and how a Class member could participate in, object to, or be excluded from the Settlement. The Notice also provided the dates and deadlines for making claims and otherwise responding to the Notice, as well informing Class Members that the Settlement would be binding.

Notice on the Settlement Website was also supplemented with paid advertising and earned media. There were 600 million views of these ads by an estimated 83% of the Settlement Class. (*Id.* at ¶ 4.)

Lastly, 4,271 individuals have used the toll-free number to contact the Class Administrator. (*Id.* at ¶ 27.)

The notice terms fall in line with other, similar, class action notice plans. *See e.g. Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114 (E.D. Cal. 2009) (finding proposed settlement notice appropriate where it generally described the nature of the litigation, the essential terms of

the Settlement, how to make a claim, object to or comment on or elect not to participate in the settlement). Because notice to the Class complied with the Preliminary Approval Order (ECF 177), Rule 23, and Due Process, it comprised the best practicable notice under the circumstances.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs, on behalf of the Class, respectfully request that this Court grant Plaintiffs' Motion for Final Approval of the Class Action Settlement Agreement, and award such and further relief as the Court deems equitable and just.

Dated: August 24, 2023                          KAMBERLAW, LLC

s/ Michael Aschenbrener
Michael Aschenbrener

ATTORNEYS FOR PLAINTIFFS
AND THE CLASS

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on August 24, 2023, he caused this document to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of filing to counsel of record for each party.

Dated: August 24, 2023                                    KAMBERLAW, LLC


By: s/ Michael Aschenbrener
Michael Aschenbrener